IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) NO. 3:14-01849-P |
| v. | ) |
| | ) |
| OCULUS VR, LLC, PALMER LUCKEY, and FACEBOOK, INC., | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

**DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S
MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................................... 2

III.    LEGAL STANDARD............................................................................................ 5

IV.     ARGUMENT ..................................................................................................... 6

      A.      The Court Should Stay All Discovery Pending Resolution of Defendants'
             Motions to Dismiss ................................................................................... 6

      B.      The Court Should Stay All Discovery Pending an Identification of
             Plaintiffs Trade Secrets with Particularity ............................................... 9

            1.      Plaintiffs Must Identify Their Trade Secrets with Sufficient
                  Particularity To Give the Defendants Notice of the Claim........................ 9

            2.      Plaintiffs Have Not Identified Their Alleged Trade Secrets with
                  Reasonable Particularity ........................................................................ 10

            3.      The Court Should Not Require Discovery Until the Trade Secrets
                  Are Identified ........................................................................................ 13

V.      CONCLUSION.................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Applied Materials, Inc. v. Advanced Micro-Fab. Equip. (Shanghai) Co., Ltd.*,
    No. C 07-5248 JW (PVT), 2008 WL 183520 (N.D. Cal. Jan. 18, 2008)................................10

*Automed Tech., Inc. v. Eller*,
    160 F. Supp. 2d 915 (N.D. Ill. 2001) ....................................................................................12

*Brown v. DFS Servs., LLC*,
    434 Fed. Appx. 347 (5th Cir. 2011)........................................................................................6

*Cargile v. Baylor Health Care Sys.*,
    No. Civ.A.3:04-CV-1365-B, 2005 WL 2445482 (N.D. Tex. Aug. 10, 2005)..........................6

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
    No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012)...............................................11, 12

*Corwin v. Marney, Orton Invs.*,
    843 F.2d 194 (5th Cir. 1988) ...................................................................................................6

*Crawford-El v. Britton*,
    523 U.S. 574 (1998).................................................................................................................5

*DeRubeis v. Witten Tech., Inc.*,
    244 F.R.D. 676 (N.D. Ga. 2007)...........................................................................................10

*Dolenz v. Akin*,
    129 F.3d 612 (5th Cir. 1997) ...................................................................................................6

*Dura Global Tech., Inc. v. Magna Donnelly Corp.*,
    No. 07-CV-10945, 2007 WL 4303294 (E.D. Mich. Dec. 7, 2007) ........................................11

*Institut Pasteur v. Chiron*,
    315 F. Supp. 2d 33 (D.D.C. 2004) ..........................................................................................7

*L-3 Commc'ns Corp. v. Reveal Imaging Tech., Inc.*,
    No. 035810BLS, 2004 WL 2915743 (Mass. Sup. Ct. Dec. 2, 2004)......................................10

*Landry v. Air Line Pilots Ass'n International AFL-CIO*,
    901 F.2d 404 (5th Cir. 1990) ...................................................................................................7

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009).............................11

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Petrus v. Bowen*,
    833 F.2d 581 (5th Cir. 1987) ...................................................6

*Porus Media Corp. v. Midland Brake, Inc.*,
    187 F.R.D. 598 (D. Minn. 1999)...........................................12

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
    No. 3:12CV220 (WWE), 2012 WL 3113162 (D. Conn. July 31, 2012) ............................9, 10

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
    No. H–08–cv–0857, 2008 WL 8465061 (S.D. Tex. Aug. 11, 2008)........................................6

*Scroggins v. Air Cargo, Inc.*,
    534 F.2d 1124 (5th Cir. 1976) ...................................................6

*StoneEagle Servs., Inc. v. Valentine*,
    No. 3:12–cv–1687–P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ..........................10, 11, 13

*Switch Comm. Group v. Ballard*,
    No. 2:11-cv–00285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012)...................9, 10

*Tostado v. Citibank (South Dakota), N.A.*,
    No. SA–09–CV–549–XR, 2009 WL 4774771 (W.D. Tex. Dec. 11, 2009) .............................6

*United Servs. Auto. Assoc. v. Mitek Sys., Inc.*,
    289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013) ....................................13, 14

*Von Drake v. Nat'l Broad. Co.*,
    No. 3-04-CV-0652R, 2004 WL 1144142 (N.D. Tex. May 20, 2004) ..................................6, 7

*Wichita Falls Office Assocs. v. Banc One Corp.*,
    978 F.2d 915 (5th Cir. 1992) ...................................................5

**STATUTES**

Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A ................................3, 5

**RULES**

Fed. R. Civ. P. 12(a)(4).........................................................7

Fed. R. Civ. P. 12(e) ............................................................13

Fed. R. Civ. P. 16.................................................10, 13, 14

Fed. R. Civ. P. 26(c) ..........................................................1, 5, 6

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

Fed. R. Civ. P. 26(d) .................................................................................................................1, 5

Pursuant to Fed. R. Civ. P. 26(c) and 26(d), defendants Oculus VR, LLC, Palmer Luckey, and Facebook, Inc. (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Protective Order seeking a stay of discovery pending resolution of their respective motions to dismiss and pending resolution of the alternative request for a more particular identification of the allegedly misappropriated trade secrets of Plaintiffs ZeniMax Media Inc. ("ZeniMax") and id Software LLC (collectively, "Plaintiffs").

## I.     INTRODUCTION

Currently pending before the Court are Facebook's motion to dismiss all claims asserted against it in the First Amended Complaint ("FAC") (Dkt. No. 47) and Oculus and Luckey's motion to dismiss the core claims surrounding misappropriation of trade secrets that are at the center of this dispute (Dkt. No. 45). Among other defects, the FAC fails to identify with reasonable particularity the trade secrets that Plaintiffs claim have been misappropriated. Nor have Plaintiffs yet answered that gating question in discovery. Rather, both the FAC and Plaintiffs' discovery responses suggest that Plaintiffs believe that providing such an identification is premature. The moving parties disagree.

At this stage of the case, two fundamental reasons exist to stay discovery from Defendants. First, the Court's decision on the pending motions to dismiss may remove Facebook from the case or otherwise significantly narrow the claims allowed. Both events will have a material impact on the permissible scope of discovery.

Second, it is common practice in trade secrets cases to first mandate that plaintiffs identify with reasonable particularity the trade secrets at issue. This requirement protects the defendants from a fishing expedition in discovery where plaintiffs rummage through defendants' technology in the hope of later finding an actionable trade secret that derives from a prior disclosure from plaintiffs.

Here, Plaintiffs purported to serve discovery on Facebook even before Facebook's response to the FAC was due and continue pursuing written and document discovery against

Oculus and Luckey without having sufficiently identified the trade secrets that are the subjects of the requests. Discovery in this case will necessarily be expensive and burdensome under any circumstances, but it will be made inordinately so if Plaintiffs are allowed to proceed without more particular identification of the trade secrets they allege Defendants misappropriated and before the Court has had the opportunity to determine the proper scope of valid claims in the FAC.

Accordingly, good cause exists here to stay discovery until the motions to dismiss have been resolved and until Plaintiffs have provided a written identification of the claimed trade secrets with reasonable particularity.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Just after Facebook publicly announced its approximately $2 billion acquisition of Oculus, Plaintiffs filed this lawsuit (Dkt. No. 1). In it, Plaintiffs claim that they disclosed some unidentified trade secrets pursuant to an alleged Non-Disclosure Agreement ("NDA") between Plaintiff ZeniMax and Defendant Luckey. Plaintiffs claim Oculus improperly incorporated that undefined technology into its virtual reality headset called the "Rift." Plaintiffs claim this alleged NDA binds Oculus even though Oculus never signed it (in fact, Oculus did not even exist when ZeniMax and Luckey signed it). Shortly before Plaintiffs filed the Original Complaint, counsel for Plaintiffs and counsel for Oculus exchanged a series of letters about Plaintiffs' allegations. Appendix in Support of Defendants' Motion for Protective Order to Stay Discovery ("App.") at 6-12. Specifically, in letters dated April 24 and May 9, 2014, Oculus and Luckey requested that Plaintiffs' provide them with copies of the materials on which Plaintiffs base their claims. App. at 6-8, 11-12. Plaintiffs did not respond to those requests. App. at 9-10.

On July 9, 2014, Oculus and Luckey renewed their demand that Plaintiffs articulate their allegedly misappropriated trade secrets at the in-person Rule 26(f) conference and again Plaintiffs failed to identify what specific technology they claimed as a trade secret beyond the vague assertion it was something that gave the Rift a "wow" factor. App. at 43. Following that conference, Defendants sent multiple letters asking again for a more specific identification of the

relevant trade secrets.    App. at 42-44, 113-17.    Defendants also served a First Set of Interrogatories on July 11, 2014, which included an interrogatory specifically seeking an identification of trade secrets at issue with reasonable particularity.    App. at 38-39.    Plaintiffs responded on August 11, 2014 by copying (almost verbatim) the same general categories listed in the Original Complaint.    App. at 104-06.    On August 22, 2014, Defendants requested a supplemental response and explained again that pre-discovery identification of trade secrets was crucial to protect Defendants' rights and mandated by the law.    App. at 113-17.    On August 28, 2014, Plaintiffs refused to supplement their responses, insisting that the level of detail was sufficient and that they expected to learn more in discovery.    App. at 118-22.    As such, Defendants have been told that a lengthy list of generic categories of software and hardware elements somehow, in some undefined way, create a "wow" factor for the Rift and that is what is to be litigated.

On August 28, 2014, after refusing to supplement their disclosure of trade secrets, Plaintiffs filed the FAC (Dkt. No. 38).    In the FAC, Plaintiffs repeat the same allegations against Oculus and Luckey and further claim that Facebook interfered with the alleged NDA in acquiring Oculus even though -- according to Plaintiffs -- Luckey violated the same NDA long before Oculus began negotiating the acquisition with Facebook.    Plaintiffs also purport to sue Facebook for common law trade secret misappropriation, even though the only allegations against Facebook post-date September 1, 2013, which means that the Texas Uniform Trade Secrets Act (the "TUTSA") -- not common law -- must govern any claims against Facebook (Plaintiffs bring no claims alleging violation of the TUTSA).

Through letters dated September 3, 2014, Plaintiffs began pushing Oculus and Luckey to supplement their discovery responses and purported to serve discovery upon Facebook.    App. at 123-26, 127-30, 131-48.    In responding to those letters on September 10, 2014, Facebook explained that its deadline to respond to the FAC had not passed and that its response could impact the scope of discovery applicable to Facebook.    App. at 153-54.    Facebook also reminded Plaintiffs that Facebook was not a party to the Rule 26(f) conference, nor did Plaintiff indicate at

the Rule 26(f) conference that it would be naming Facebook as a defendant. App. at 153-54. Oculus and Luckey also responded to Plaintiffs' letter on September 10, 2014, and in that response, they maintained their objection that unless and until Plaintiffs sufficiently disclosed its allegedly misappropriated trade secrets, Oculus and Luckey could not supplement their discovery responses related to the trade secret issues. App. at 149-52. Oculus and Luckey further invited Plaintiffs to schedule a telephone conference to discuss the issues. App. at 152. Plaintiffs responded the same day suggesting that a telephone conference was not necessary and that Plaintiffs intended to approach the Court. App. at 155-57. Defendants responded the same day and stated that they believed a telephone conference was appropriate and proposed to have a call on September 12, 2014. App. at 158-60. As discussed below, the parties had that call but did not resolve the issues.

Plaintiffs have also sought discovery from third parties. On September 10, 2014 -- the same day that the parties exchanged correspondence about scheduling a meet and confer about discovery issues -- Plaintiffs served eleven subpoenas seeking private and sensitive phone records of John and Anna Carmack, Palmer Luckey, Brendan Iribe, Oculus, Michael Antonov, Matthew Hooper, J.P. Waveren, Jason Kim, Jonathan Wright, and Christian Antkow.

On September 11, 2014, Defendants advised Plaintiffs that they intended to move for a protective order to stay discovery. On September 12, 2014, the parties met and conferred concerning Plaintiffs' suggested motion to compel and Defendants' motion for protective order. Plaintiff would not agree to stay discovery, so Defendants bring this motion.

On September 12, 2014, Plaintiffs filed a motion to compel against Oculus and Luckey (Dkt. No. 40). On September 19, 2014, Defendants filed two motions seeking dismissal of the FAC. In Oculus and Luckey's motion (Dkt. No. 45), Oculus and Luckey move to dismiss Count 1 (Common Law Misappropriation of Trade Secrets), Count 3 (Breach of Contract), and Count 6 (Unjust Enrichment) because virtually all of Plaintiffs' allegations depend on the enforceability of the alleged NDA or on alleged trade secrets that Plaintiffs say they must have discovery to even identify.

The second motion to dismiss (Dkt. No. 47), simultaneously filed by Facebook, incorporated certain of Oculus and Luckey's arguments as appropriate.  In addition, Facebook moves to dismiss on the grounds that the TUTSA either controls or preempts Plaintiffs' claims against Facebook for misappropriation of trade secrets, tortious interference with contract, unfair competition, and unjust enrichment.  Because Plaintiffs do not assert a TUTSA claim, Facebook moved the Court to dismiss these claims against Facebook.  Further, Facebook also moved the Court to dismiss these same claims and the copyright infringement claim against Facebook for the independent reason that they fail to state a claim for relief consistent with the standards mandated by the United States Supreme Court.

On September 22, 2014, Defendants again advised Plaintiffs that they intended to move for a protective order to stay discovery and inquired whether Plaintiffs would agree to a stay of discovery pending resolution of the motions to dismiss and seeking a more definitive statement of trade secrets in the alternative.  App. at 311.  On September 24, 2014, Plaintiffs and Defendants conferred, and Plaintiffs again refused to agree to a stay of discovery.  App. at 4.

The Court's ruling on the pending motions to dismiss may entirely or partially moot Plaintiffs' discovery requests.  In light of Plaintiffs' refusal to agree to a stay of discovery, Defendants file this motion for protective order seeking a stay of discovery pending resolution of Defendants motions to dismiss and pending Plaintiffs' identification of their trade secrets with particularity.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) gives this Court broad authority to issue orders "for good cause" to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."  Rule 26(d) provides that methods of discovery may be used in any sequence "[u]nless, on motion, the court orders otherwise for the parties' and witnesses' convenience and the interests of justice . . . ."  This rule vests the court with "broad discretion" to control "the timing and sequence of discovery."  *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998); *see also Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992) ("The

trial judge's decision to curtail discovery is granted great deference . . . ."); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").

## IV.   ARGUMENT

### A.   The Court Should Stay All Discovery Pending Resolution of Defendants' Motions to Dismiss

Good cause exists to stay discovery if a motion may substantially narrow (for Oculus and Luckey) or dispose of (for Facebook) the case. *See generally* Fed. R. Civ. P. 26(c). The Fifth Circuit Court of Appeals has repeatedly held that district courts acted properly in entering stays of discovery while dispositive motions were pending in a case. *See, e.g.*, *Brown v. DFS Servs., LLC*, 434 Fed. Appx. 347, 354 (5th Cir. 2011) ("It is properly within the province for the district court to stay discovery pending resolution of dispositive motions, as the court has wide latitude to order proceedings in the interest of justice and judicial economy."); *Dolenz v. Akin*, 129 F.3d 612, 612 (5th Cir. 1997) ("The district court did not abuse its discretion in refusing to allow Dolenz to engage in further discovery pending its determination of the referenced motions to dismiss."); *Corwin v. Marney, Orton Invs.*, 843 F.2d 194, 200 (5th Cir. 1988) ("[W]e have held that a trial court may properly exercise its discretion to stay discovery pending a decision on a dispositive motion.") (citing *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976)).

Consistent with these directives, district courts in this District and elsewhere routinely stay discovery pending resolution of motions to dismiss, particularly where, as here, no discovery is necessary to resolve the dispositive motion. *See, e.g.*, *Tostado v. Citibank (South Dakota), N.A.*, No. SA–09–CV–549–XR, 2009 WL 4774771, at *1-*2 (W.D. Tex. Dec. 11, 2009) (staying discovery pending disposition of motion to dismiss); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, No. H–08–cv–0857, 2008 WL 8465061, at *2 (S.D. Tex. Aug. 11, 2008) (same); *Cargile v. Baylor Health Care Sys.*, No. Civ.A.3:04-CV-1365-B, 2005 WL 2445482, at *2 (N.D. Tex. Aug. 10, 2005) (noting that discovery was stayed pending resolution of motions to dismiss); *Von Drake v. Nat'l Broad. Co.*, No. 3-04-CV-0652R, 2004 WL 1144142,

at *1 (N.D. Tex. May 20, 2004) (staying discovery pending disposition of motion to dismiss); *see also Institut Pasteur v. Chiron*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) ("[I]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the [c]omplaint is pending.").

In considering a motion to stay discovery, "[a]mong the factors that inform the court's discretion are: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake*, 2004 WL 1144142, at *1 (citations omitted).   Further, a discovery stay may be appropriate where the disposition of a motion to dismiss "might preclude the need for the discovery altogether thus saving time and expense." *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (citations omitted).

Here, these factors all apply and good cause exists.   First, Defendants have substantial arguments for dismissal of all of the claims against Facebook and the core claims against Oculus and Luckey, as set forth in the motions to dismiss.

Second, under Fed. R. Civ. P. 12(a)(4), until the Court rules on Facebook's motion to dismiss, its answer to the FAC is not due.   Even if the Court denies Facebook's motion, it has fourteen days from the Court's denial to answer the lawsuit. Fed. R. Civ. P. 12(a)(4)(A).   On the other hand, if the Court grants Facebook's motion to dismiss, the case against it may be disposed of in its entirety and Facebook will not have to respond to Plaintiffs' discovery requests at all. To require Facebook to respond to discovery at this time would impose a potentially unnecessary, costly, and expensive burden on it.

Third, Oculus and Luckey have filed a partial motion to dismiss, seeking dismissal of, among other things, Plaintiffs' core claims for misappropriation of trade secrets (Count 1) and breach of the alleged NDA (Count 3).   If the Court dismisses these claims, the scope of discovery in this case will significantly narrow.   The Fifth Circuit has made clear that "[d]iscovery is not justified when cost and inconvenience will be its sole result." *Landry*, 901

7

F.2d at 436 (citations omitted).  Discovery in the present dispute on these claims would do nothing else.

Fourth, many of the interrogatories and document requests served on Defendants are exceedingly broad.   For example, Plaintiffs served document requests requesting all communications between Plaintiffs and Defendants (Request No. 1), all communications involving John Carmack from January 1, 2012 to the present (Request No. 2), all documents reflecting or referring to "Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials" (Request No. 11), all communications concerning "Defendants' Products" (Request No. 27), and all documents that identify and describe persons or entities that "have or had access to Defendants' Products" (Request No. 41).  App. at 13-29.  Even setting aside the overbreadth of these requests, Plaintiffs' discovery necessarily includes large amounts of information from Defendants relating to multiple custodians and involves searching numerous electronic databases for responsive information.[1]  App. at 13-29.  For example, Defendants will have to pull and search emails and other electronically stored information  ("ESI") from several custodians.  To produce such information, Defendants will likely have to review hundreds of thousands, if not millions, of pages of documents for responsiveness and privilege, much of which will be for naught if the Court grants the motions to dismiss even in part.

It is also inefficient and wasteful to require Defendants to undertake a massive collection, review, and production of documents related to claims not subject to dismissal and then redo that effort in the event Defendants' motions to dismiss are not granted in whole.  Under that scenario, Defendants would have to run new ESI searches and review the resulting data for responsiveness and privilege.  Given the overlapping time-frame and custodians at issue, however, Defendants would likely need to review many of the same documents a second time to assess responsiveness as to the additional claims.  Defendants estimate that effort could consume thousands of

_____

[1] For the reasons stated in Defendants Oculus and Luckey's Responses and Objections to Plaintiffs First Set of Document Requests, the requests are objectionable for several reasons, including without limitation with respect to how Plaintiffs define Plaintiffs' "Confidential Information" and "Copyrighted Materials."  App. at 45-92.

additional person-hours and thousands, if not millions, of dollars in attorney review time and vendor costs.

Given this burden, Defendants should not have to do such an ESI review twice at their expense.  Particularly at this early stage of the case, the most logical and efficient approach is to stay all discovery pending resolution of the motions.  This will avoid undertaking expensive and unnecessary discovery in the event the motions are granted *and* avoid redoing ESI searches and the like in the event the motions are not granted in whole.

**B.      The Court Should Stay All Discovery Pending an Identification of Plaintiffs Trade Secrets with Particularity**

Independent of the Court's consideration of the motions to dismiss, Plaintiffs must identify the allegedly misappropriated trade secrets with particularity ***before discovery commences on those claims***.  To date and despite incessant and repeated demands, Plaintiffs have not disclosed their allegedly misappropriated trade secrets with sufficient particularity.  Therefore, to avoid duplicating discovery efforts if and when Plaintiffs make a sufficient disclosure, the Court should stay all discovery until Plaintiffs make that disclosure.

**1.      Plaintiffs Must Identify Their Trade Secrets with Sufficient Particularity To Give the Defendants Notice of the Claim**

A defendant only has fair notice of a trade secret misappropriation claim, and can only begin preparing its defenses, if the plaintiff identifies those alleged trade secrets with reasonable particularity.  Indeed, many potential defenses to a trade secret claim -- e.g., that the accused party did not actually receive the information from the complaining party, that the accused party did not misuse the information, that the accused party had already developed the same information independently, or that the information is not secret (e.g., in the public domain) -- depend on the accused party having adequate notice of what the plaintiff accuses it of misappropriating.  *See, e.g.*, *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220 (WWE), 2012 WL 3113162, *1 (D. Conn. July 31, 2012) ("[E]arly identification of trade secrets . . . permits defendant to mount a defense."); *Switch Comm. Group v. Ballard*, No. 2:11-cv–

00285-KJD-GWF, 2012 WL 2342929, at *4-*5 (D. Nev. June 19, 2012); ("[I]t is difficult for a defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated") (citing *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007)); *DeRubeis*, 244 F.R.D. at 682 ("Until the defendant knows what information is at issue, it cannot attempt to rebut the plaintiff's charges of misappropriation"). This rule exists because, unlike with other types of intellectual property claims such as those over patents and copyrights where a government-registered document discloses the information at issue with particularity, no such documents exists to shed light for a trade secret defendant.

Requiring identification of trade secrets at the outset of the case -- before discovery commences -- avoids a situation in which the plaintiff, like here, does not have valid claims, but instead molds its claims around whatever it finds in the defendant's discovery in order to prolong the case. *See Powerweb Energy, Inc.*, 2012 WL 3113162 at *2 ("[E]arly identification of trade secrets . . . prevents frivolous lawsuits" by preventing the plaintiff from tailoring its trade secret claims to the defendant's discovery); *DeRubeis*, 244 F.R.D. at 681 (same). Unless the plaintiff first identifies its trade secrets, the Court and the parties lack sufficient information to set an appropriate scope of discovery and to determine whether particular disputed discovery fall within that scope. *See Switch Comm. Group*, 2012 WL 2342929 at *4; *Applied Materials, Inc. v. Advanced Micro-Fab. Equip. (Shanghai) Co., Ltd.*, No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008); *DeRubeis*, 244 F.R.D. at 681; *L-3 Commc'ns Corp. v. Reveal Imaging Tech., Inc.*, No. 035810BLS, 2004 WL 2915743, at *13 (Mass. Sup. Ct. Dec. 2, 2004).

These rules apply with particular force here, where Plaintiffs alleged only general categories of information and admitted they could not provide any further detail without invasive, costly discovery.

### 2.    Plaintiffs Have Not Identified Their Alleged Trade Secrets with Reasonable Particularity

The Court in *StoneEagle Servs., Inc. v. Valentine*, addressing a motion for more definite statement of trade secrets under Fed. R. Civ. P. 16, described several types of trade secret

allegations that do not satisfy the "reasonable particularity" standard, namely: (1) laundry list of general categories, (2) lengthy, descriptive, but non-specific paragraphs, (3) generally listing software, algorithms, and processes that a plaintiff developed, (4) disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, or (5) concepts, elements, or components that make up designs.  *StoneEagle Servs., Inc.*, No. 3:12–cv–1687–P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013); *see also Dura Global Tech., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945, 2007 WL 4303294, at *4 (E.D. Mich. Dec. 7, 2007) (finding that plaintiff's  "list of general categories" of information failed to identify trade secrets with particularity).

Plaintiffs violate each of the five rules detailed in the *Stone Eagle* case.  Plaintiffs allege that:

> ZeniMax is the owner of valid and enforceable trade secrets in the ZeniMax VR Technology ("ZeniMax Trade Secrets"), including but not limited to confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the  display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset.

Am. Compl. at ¶ 117.

These alleged information categories are not trade secrets.  These allegations describe categories of technologies and concepts within which trade secrets may or may not exist.  Courts reject trade secret allegations with similar wording.  *See, e.g.*, *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420,, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (finding that plaintiff's use of the phrase "technical and financial information" failed to identify trade secrets with sufficient particularity); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (finding that plaintiff's use of the phrases

"methodologies, formulas, devices, and compilations of information" failed to identify trade secrets with sufficient particularity); *Automed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 925-26 (N.D. Ill. 2001) (finding that plaintiff's list of generalities such as "software, designs, and research" and high-level references to the names of three research projects failed to identify trade secrets with sufficient particularity); *Porus Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (finding that plaintiff's use of phrases such as "manufacturing process information" and "detailed drawings" failed to identify trade secrets with sufficient particularity).

As problematic, Plaintiffs do not distinguish between supposed trade secret information and non-trade secret confidential information, or between either of those categories and the allegedly copyrighted information. Even if the alleged NDA is an enforceable agreement (it is not), the fact that information was disclosed pursuant to a non-disclosure agreement without more does nothing to establish that the information merits trade secret status. *See Clearline Technologies Ltd.*, 2012 WL 43366, at *11 ("[T]he Court will not infer that trade secrets exist merely from the existence of a proprietary information agreement."). Without identifying the specific trade secrets, Defendants are left to guess whether Plaintiffs allege that every technology, every bit of code, every hardware component within the broad swath of categories quoted above are confidential ***and/or*** a trade secret ***and/or*** copyrighted. For example, Plaintiffs appear to claim that John Carmack's work concerning "latency mitigation," as described and openly published in a white paper with Plaintiffs' consent in 2013, somehow constitutes trade secret information, when Carmack's public disclosure of that work makes that impossible. Am. Compl. ¶ 32. In this case, where both trade secret and copyright claims are at issue, "reasonable particularity" means that Plaintiffs must provide a list that (1) separately breaks out each of the individual alleged trade secrets that Plaintiffs claim Defendants have misappropriated; and (2) identifies all such claims with sufficient particularity so that the reader understands how each claim differs from public domain information. Plaintiffs have not done so.

### 3. The Court Should Not Require Discovery Until the Trade Secrets Are Identified

Even if the Court does not dismiss Plaintiffs' trade secret claim pursuant to the pending motions, it may require a more definite statement pursuant to Fed. R. Civ. P. 12(e).  Moreover, Courts routinely stay discovery until a plaintiff provides such definitive statement.  *See* Fed. R. Civ. P. 16(c)(2)(L) (providing that the Court may "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"); *StoneEagle Servs., Inc.*, 2013 WL 9554563; *United Servs. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013) (relying on Fed. R. Civ. P. 16 as grounds for requiring a pre-discovery identification of alleged trade secrets with particularity).  Federal courts have increasingly adopted specific procedures to enforce this required trade secret identification.  *See StoneEagle Servs., Inc.,* 2013 WL 9554563 at *2.

This Court's ruling in the *StoneEagle* case supports requiring such a pre-discovery disclosure.  *See StoneEagle Servs., Inc.*, 2013 WL 9554563.  There, the plaintiffs alleged that defendants utilized plaintiffs' trade secrets to create a medical payment system similar to the system created by plaintiffs.  *Id.* at *1.  The defendants asserted they could not properly prepare their case or engage in discovery without a more defined list of allegedly misappropriated trade secrets.  Noting that "[t]he growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue," the Court granted defendants' motion.  *Id.* at *2 citing *Mitek Sys., Inc.*, 289 F.R.D. 244.  In doing so, the Court rejected plaintiffs' argument that the procedure would cause delay:

> By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to more accurately determine relevant responses and appropriate objections.  Plaintiffs will not be required to sift through mounds of irrelevant information produced by Defendants because they were uncertain as to what information was relevant.  And Defendants will not be required to waste time guessing at the basis of Plaintiffs' claims.

Id. at *3.

13

The Western District of Texas' decision granting a similar motion in *Mitek* further supports requiring a more detailed **pre-discovery** identification of trade secrets here.  In *Mitek*, the plaintiff asserted patent infringement and misappropriation of trade secret claims.   In considering the defendant's motion for identification of trade secrets, the court noted that Rule 16(c)(2)(L) "provides the district court with **broad discretion** to 'adopt special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'"  *Mitek Sys., Inc.*, 289 F.R.D. at 248 (emphasis in original).  The *Mitek* court held that, pursuant to Rule 16, the court can require **pre-discovery** trade secret identification to assist a court in managing cases that may involve complex issues or unusual proof problems:  "The purpose for this procedural rule is to prevent trade secret related discovery from beginning before a particular trade secret has been identified."  *Id.* at 248-249 (internal quotation marks omitted).

As noted by the *Mitek* court, this procedure has many advantages.  Pre-discovery identification of trade secrets (1) allows "well-investigated claims to proceed while discouraging meritless trade secret claims . . ."; (2) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; (3) "provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense"; and (4) "allows the [c]ourt to utilize its resources more effectively by exposing the viable claims, permitting early dismissal of the nonviable claims, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses."  *Id.*

Each of the justifications for pre-discovery identification of trade secrets described in *Mitek* applies here.  Even if the Court chooses not to simply dismiss Plaintiffs trade secret claim given their failure to sufficiently identify allegedly misappropriated trade secrets, it may order Plaintiffs to identify their trade secrets with reasonable particularity.  Until Plaintiffs provide such identification, the Court should stay all discovery so that Defendants are not exposed to the expense and burden of duplicative discovery.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order staying all discovery until Defendants' motions to dismiss are resolved and Plaintiffs sufficiently identify the allegedly misappropriated trade secrets that are at the center of this dispute.

Dated:  September 24, 2014          Respectfully submitted,

**OCULUS VR, LLC, PALMER LUCKEY, and FACEBOOK, INC.**

By Their Attorneys,

/s/ Linda R. Stahl
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

## CERTIFICATE OF CONFERENCE

On September 24, 2014, the undersigned conferred with counsel for Plaintiff concerning the substance of this Motion.   Counsel for Plaintiff, P. Anthony Sammi, stated that Plaintiffs oppose the relief requested herein.

/s/ Joshua M. Dalton
Joshua M. Dalton

**CERTIFICATE OF SERVICE**

I, Linda R. Stahl, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 24, 2014.


/s/ Linda R. Stahl
Linda R. Stahl