IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) NO. 3:14-01849-P |
| v. | ) |
| | ) |
| OCULUS VR, LLC, PALMER LUCKEY, and | ) |
| FACEBOOK, INC., | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |
| | ) |

**APPENDIX OF DOCUMENTS SUBMITTED IN SUPPORT OF DEFENDANTS
OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR
PROTECTIVE ORDER TO STAY DISCOVERY
PART 1**

Dated:  September 24, 2014          Respectfully submitted,

**OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.,**

By Their Attorneys,


/s/ Linda R. Stahl
_____
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

**CERTIFICATE OF SERVICE**

I, Linda R. Stahl, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 24, 2014.

/s/ Linda R. Stahl
Linda R. Stahl

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:14-01849-P |
| v. | ) ) | |
| OCULUS VR, INC., PALMER LUCKEY, and FACEBOOK, INC., | ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS
OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR
PROTECTIVE ORDER TO STAY DISCOVERY**

I, Geoffrey M. Howard, declare as follows:

1.      I am a partner at the law firm Bingham McCutchen LLP.  Bingham McCutchen LLP is counsel of record for defendants Oculus VR LLC ("Oculus"), Palmer Luckey, and Facebook, Inc. (collectively, the "Defendants") in the above-captioned case.  I make this declaration in support of Defendants' Motion for Protective Order to Stay Discovery.

2.      I have personal knowledge of the facts recited in this declaration and, if called as a witness, could and would testify competently to them.

3.      On April 24, 2014, I sent a letter to Mitchell Ettinger, counsel for plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "Plaintiffs"), responding to letters from Plaintiffs' dated April 10 and April 18, 2014.  Attached to this Declaration as Exhibit A is a true and correct copy of the letter from me to Mr. Ettinger dated April 24, 2014.

4.      On May 5, 2014, P. Anthony Sammi, counsel for Plaintiffs, sent a letter to me, responding to my letter dated April 24, 2014.  Attached to this Declaration as Exhibit B is a true and correct copy of the letter from Mr. Sammi to me dated May 5, 2014.

5.      On May 9, 2014, I sent a letter to Mr. Sammi, responding to Mr. Sammi's letter dated May 5, 2014.  Attached to this Declaration as Exhibit C is a true and correct copy of the letter from me to Mr. Sammi dated May 9, 2014.

6.      On May 21, 2014, Plaintiffs filed the Original Complaint against Defendants (Dkt. No. 1).

7.      On July 9, 2014, I attended an in-person Rule 26(f) conference with Plaintiffs' counsel.  During that meeting, I asked Mr. Sammi several times to identify what intellectual property is in dispute.  He responded that it was "something" that John Carmack did to the Rift that gave it the "wow" factor. Mr. Sammi did not provide any more details concerning the supposed "wow" factor that Plaintiffs allegedly contributed to the Rift.

8.      On July 9, 2014, Plaintiffs served a First Set of Requests for Production and Inspection.  Attached to this Declaration as Exhibit D is a true and correct copy of Plaintiffs' First Set of Requests for Production and Inspection.

9.      On July 11, 2014, Oculus and Luckey served a First Set of Interrogatories, which included an interrogatory seeking an identification of trade secrets with particularity.  Attached to this Declaration as Exhibit E is a true and correct copy of Oculus and Luckey's First Set of Interrogatories.

10.     On July 25, 2014, I sent a letter to Mr. Sammi.  Attached to this Declaration as Exhibit F is a true and correct copy of the letter from me to Mr. Sammi dated July 25, 2014.

11.     On August 8, 2014, Oculus and Luckey served their responses and objections to Plaintiffs' First Set of Requests for Production and Inspection.  Attached to this Declaration as Exhibit G is a true and correct copy of Oculus and Luckey's Responses and Objections to Plaintiffs' First Set of Requests for Production and Inspection.

12.     On August 11, 2014, Plaintiffs served their responses and objections to Oculus and Luckey's First Set of Interrogatories.  Attached to this Declaration as Exhibit H is a true and correct copy of Plaintiffs' Responses and Objections to Oculus and Luckey's First Set of Interrogatories with addresses and phone numbers redacted.

13.     On August 22, 2014, I sent a letter to Mr. Sammi concerning alleged deficiencies in Plaintiffs' responses to Oculus and Luckey's First Set of Interrogatories.  Attached to this Declaration as Exhibit I is a true and correct copy of the letter from me to Mr. Sammi dated August 22, 2014.

14.     On August 28, 2014, Mr. Sammi responded to my letter dated August 22, 2014.  Attached to this Declaration as Exhibit J is a true and correct copy of the letter from Mr. Sammi to me dated August 28, 2014.

15.     On August 28, 2014, Plaintiffs filed the Amended Complaint (Dkt. No. 38).

16.     On September 3, 2014, Mr. Sammi sent three letters to me concerning discovery issues.  Attached to this Declaration as Exhibit K, L, and M are true and correct copies of the letters from Mr. Sammi to me dated September 3, 2014.

17.     On September 10, 2014, I sent letters to Mr. Sammi, responding to Mr. Sammi's letters dated September 3, 2014.  Attached to this Declaration as Exhibit N and O are true and correct copies of the letters from me to Mr. Sammi dated September 10, 2014.

18.     On September 10, 2014, Mr. Sammi sent an email to me, responding to my letter dated September 10, 2014.  Attached to this Declaration as Exhibit P is a true and correct copy of the email from Mr. Sammi to me dated September 10, 2014.

19.     On September 10, 2014, Joshua Dalton, counsel for Defendants, sent an email to Mr. Sammi, responding to Mr. Sammi's email dated September 10, 2014.  Attached to this Declaration as Exhibit Q is a true and correct copy of the email from Mr. Dalton to Mr. Sammi September 10, 2014.

20.     On September 10, 2014, Plaintiffs served eleven subpoenas.  Attached to this Declaration as Exhibit R is a true and correct copy of the subpoenas served by Plaintiffs on September 10, 2014 with phone numbers and addresses redacted.

21.     On September 11, 2014, Mr. Dalton sent an email to Mr. Sammi, responding to an email from Mr. Sammi dated the same day.  Attached to this Declaration as Exhibit S is a true and correct copy of the email from Mr. Dalton to Mr. Sammi dated September 11, 2014.

22.     On September 12, 2014, I attended a meet and confer telephone conference concerning Plaintiffs' suggested motion to compel and Defendants' motion for protective order. Plaintiffs again refused to identify their trade secrets with particularity, stating that they could not provide anything further without discovery.  Plaintiff would not agree to stay discovery.

23.     On September 22, 2014, Mr. Dalton sent an email to Mr. Sammi concerning Defendants' motion for protective order.  Attached to this Declaration as Exhibit T is a true and correct copy of the email from Mr. Dalton to Mr. Sammi dated September 22, 2014 with telephone conference numbers redacted.

24.     On September 24, 2014, Mr. Dalton attended a meet and confer telephone conference concerning Defendants' motion for protective order.  Plaintiff again refused to agree to stay discovery.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on this 24th day of September 2014, in San Francisco, California.

Geoffrey M. Howard

# EXHIBIT A

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

# BINGHAM

Geoffrey M. Howard
Direct Phone: +1.415.393.2485
Direct Fax:    +1.415.262.9212
geoff.howard@bingham.com

April 24, 2014

**Via E-Mail** *(mitchell.ettinger@skadden.com)*

Mitchell S. Ettinger, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005

Dear Mr. Ettinger:

We have been retained by Oculus VR, Inc. ("Oculus") with regard to certain of the allegations made in your letters to Jon Daryanani dated April 10 and April 18. We understand that Mr. Daryanani had indicated a response by this date. Given our relative newness to this dispute, and the nature of the investigation you have requested, we are not in a position yet to provide you with a detailed response, although we expect to have that to you in due course. In the meantime, please be advised that Oculus is taking all appropriate measures to preserve the information you have identified. In that regard, we request your confirmation that ZeniMax, and any related entities and individuals, have forensically preserved and collected all relevant information, including without limitation the following:

1. All documents (including internal correspondence in whatever form it may take, such as email, instant message, text, etc.) regarding Mr. Carmack's request for and use of Palmer Luckey's Oculus Rift prototype at E3 2012.
2. All documents relating to ZeniMax's contributions or lack thereof to Palmer Luckey's Oculus Rift prototype and the Oculus Rift technology.
3. All software, firmware and hardware provided to ZeniMax and/or Mr. Carmack by Mr. Luckey or by Oculus at any time.
4. All documents related to ZeniMax's plans or lack thereof to develop, pursue, invest in, abandon or reject VR technology.
5. All documents related to ZeniMax's belief in the viability or lack thereof of VR technology generally, and Palmer Luckey's Oculus Rift prototype and Oculus Rift and related technology in particular.
6. All documents related that reflect any novel contribution ZeniMax claims to have made to VR technology generally and Palmer Luckey's Oculus Rift prototype and the Oculus Rift Development Kit One in particular.
7. All code (object and source) that ZeniMax claims to have authored related to VR technology, including any that it claims was developed specifically for either Oculus generally or specifically the Oculus Rift.
8. All communications between and among current and former ZeniMax employees, including without limitation John Carmack, Todd Hollandsworth, Vlatko Andonov, and Robert Altman, regarding VR technology, Mr. Luckey, Oculus, use of Palmer Luckey's Oculus Rift prototype at E3 2012, use of Oculus Rift prototypes at QuakeCon, and other uses of an Oculus Rift or Palmer Luckey's Oculus Rift prototype by ZeniMax.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

Mitchell S. Ettinger, Esq.
April 24, 2014
Page 2

9.  All communications between and among current and former ZeniMax
    employees, including without limitation John Carmack, Todd Hollandsworth,
    Vlatko Andonov, and Robert Altman, regarding the circumstances
    surrounding Mr. Carmack's departure from ZeniMax and work for Oculus.

10. All documents related to an assessment or valuation of the technology
    provided to ZeniMax and/or Mr. Carmack by Mr. Luckey or by Oculus at any
    time.

11. All documents related to any potential equity position in Oculus by ZeniMax,
    including any and all communications between Robert Altman or Vlatko
    Andonov regarding such equity position.

12. All software, firmware and hardware provided to ZeniMax and/or
    Mr. Carmack by Mr. Luckey or by Oculus at any time.

13. All documents related to the deployments of any ZeniMax or Bethesda games
    on any Oculus Rift or Oculus Rift Prototype device, including without
    limitation Doom 3, Doom 3 BFG, and Rage.

14. All draft and final contracts and related correspondence between ZeniMax and
    Mr. Carmack.

15. All documents related to any effort by ZeniMax to copyright or patent any
    software code, technology involving VR, or technology involving
    Mr. Carmack, including all diligence performed by ZeniMax to determine
    original authorship of all such materials.

16. All material or information that ZeniMax claims it disclosed to Mr. Luckey
    or anyone else pursuant to, or which is subject to, any legal agreement,
    including without limitation the "legal agreement with ZeniMax in which he
    [Mr. Luckey] expressly agreed to ZeniMax's continued ownership of the VR
    technology used by him for the Oculus Rift," as stated in your April 10, 2014
    letter.

Please do not hesitate to contact me with any questions. Also, it would be most helpful
for my client if you could provide copies of the materials to which you have made
reference to in your letters to me as soon as possible, so that my client can understand the
basis for the claims that ZeniMax is making.

After you and your client have had the opportunity to review the forthcoming response to
your letters that we will provide, I suggest that we discuss the appropriate next steps.

Sincerely yours,

Geoffrey M. Howard

cc:  Daniel Offner, Esq.
     Jon Daryanani, Esq.

# EXHIBIT B

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 5, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California  94111
geoff.howard@bingham.com

RE:    Oculus VR, Inc.

Dear Mr. Howard,

This is in response to your letter to my colleague Mitchell Ettinger dated April 24, 2014, in which you committed to providing a response "in due course" to ZeniMax Media's contention that Oculus utilizes and relies upon technology developed and owned by ZeniMax.  Public statements aside, you have not provided us with a substantive response.  Although we understand that this matter apparently was referred to Bingham recently, we note that your firm represents Oculus in connection with the pending sale to Facebook, and certainly is well acquainted with the genesis and technical aspects of the sole product offered for sale by Oculus.

We request a substantive response from your client no later than May 9, 2014. Certainly, if Oculus does not intend to engage in meaningful discussions to bring this matter to resolution, we would expect that you would so advise ZeniMax without further delay.

Very truly yours,

P. Anthony Sammi

cc:    Grif Lesher, Esq. (glesher@zenimax.com)

1100216.02-NYCSR01A

# EXHIBIT C

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

# BINGHAM

Geoffrey M. Howard
Direct Phone: +1.415.393.2485
Direct Fax:    +1.415.262.9212
geoff.howard@bingham.com

May 9, 2014

**Via E-Mail** *(anthony.sammi@skadden.com)*

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Mr. Sammi:

We are in receipt of your letter dated May 5, 2014.

We have conducted a thorough investigation into the claims made in Mitchell Ettinger's prior letters dated April 10, 2014 and April 18, 2014. We see no conceivable basis for your claim that Oculus uses virtual reality technology "developed and owned" by ZeniMax. To the contrary, based on our investigation to date, we believe ZeniMax knows full well it has no claim to any Oculus technology.

In our letter of April 24, 2014, we requested that you share with Oculus any materials on which you base your allegations (if any exist). We reiterate that request here so that we can have an informed discussion about your claims.

Your May 5 letter also does not address our request for confirmation that ZeniMax has forensically preserved and collected all relevant information, including those materials specifically identified in our April 24 letter. As you will recall, our April 24 letter responded to ZeniMax's preservation request and confirmed Oculus' preservation and collection. We assume that ZeniMax would not have sent its letters without first comprehensively preserving and collecting, in a forensically defensible manner, all relevant materials. However, we again ask that ZeniMax respond to our preservation and collection request and confirm that it has done so.

Please do not hesitate to contact me with any questions.

Sincerely yours,

Geoffrey M. Howard

cc:   Daniel Offner, Esq.
      Jon Daryanani, Esq.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

# EXHIBIT D

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | § § § | |
| Plaintiffs, | § § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| v. | § § | |
| OCULUS VR, INC. and PALMER LUCKEY, | § § § | |
| Defendants. | § | |

**ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S FIRST SET OF REQUESTS FOR PRODUCTION AND INSPECTION TO OCULUS VR, INC. AND PALMER LUCKEY**

Pursuant to Federal Rules of Civil Procedure 26 and 34, ZeniMax Media Inc. and id Software LLC, by and through their attorneys, hereby direct the following Requests for Production to Oculus VR, Inc. and Palmer Luckey. Plaintiffs request that Defendants produce or make the requested documents and things available for inspection and/or copying in accordance with the Definitions and Instructions set forth below, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036, within 30 days after service hereof.

**REQUESTS FOR INSPECTION**

**REQUEST FOR INSPECTION NO. 1:**

All iterations of the Oculus Rift and its Software Development Kit in an operable condition, including but not limited to those versions or iterations created prior to April 2012, whether consumer-facing or otherwise.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All Communications between Plaintiffs and Palmer Luckey and/or Oculus from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 70, 74, 75, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**REQUEST FOR PRODUCTION NO. 2:**

All Communications involving John Carmack from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all Documents or Communications concerning the Non-Disclosure Agreement referenced in ¶¶ 32-36 of the Complaint, including but not limited to the Non-Disclosure Agreement itself.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all Documents referring to negotiations between the Parties for an equity stake in Oculus, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all versions of Source Code, including but not limited to object code, associated with each of Defendants' Products, including but not limited to the Oculus Rift, whether that Source Code is contained in electronic work directories (including, without limitation, the work directories of each of Plaintiffs' Former Employees), shared drives, common directories, or libraries.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents relating to or evidencing Communications between Palmer Luckey and/or Oculus and Facebook, including but not limited to any Communications, term sheets, agreements, documents in a "data room," or other deal documents generated by Palmer Luckey, Oculus, or Facebook in reference to the proposed acquisition announced on March 25, 2014 and discussed in ¶ 101 of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

To the extent not requested by the prior Requests contained herein, any and all Documents in Plaintiffs' control or possession that originated at ZeniMax or id, or are derived from Documents that originated at ZeniMax or id, including by way of example only the Documents discussed in ¶¶ 43 and 44 of the Complaint.

2

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning any representations made by Palmer Luckey or Oculus to any party regarding Defendants' ownership of any intellectual property, including, by way of example, the ownership and/or licensing discussed at Page 5 of the Answer, and further including but not limited to any such representations made by Palmer Luckey and Oculus to Facebook.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents or Communications relating to requests for technology, advice, information or assistance from either Plaintiff or their current or former employees for the development of the Oculus Rift or otherwise.

**REQUEST FOR PRODUCTION NO. 10:**

To the extent not requested by the prior Requests contained herein, any and all Communications between either or both Defendants and any of Christian Antkow, John Carmack, Katherine Kang, Matthew Hooper, Gloria Kennickell, Jason D. Kim, Jan Paul Van Waveren, Jonathan E. Wright, or other of Plaintiffs' Former Employees prior to such Person's respective first day of employment with Oculus.

**REQUEST FOR PRODUCTION NO. 11:**

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications reflecting or referring to materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials, including Documents and Communications regarding the use or disclosure of such materials in the development or marketing of Defendants' Products.

### Requests Concerning Oculus's Structure And Management

**REQUEST FOR PRODUCTION NO. 12:**

Any and all Documents sufficient to identify and reflect Oculus's organizational structure, including but not limited to company directories, and the identification of Oculus's corporate and/or business departments, whether formally or informally delineated, Oculus's total number of employees, and each employee's title, job description, and reporting chain.

**REQUEST FOR PRODUCTION NO. 13:**

All corporate Documents of or relating to Oculus, including but not limited to articles of incorporation and all amendments thereto, by-laws, corporate resolutions, minutes of shareholders' meetings, minutes of directors' meetings, slide or presentation decks prepared for directors' meetings, "board packets," binders prepared for directors' meetings, written consents of officers and directors, and any agreements between and among investors, shareholders,

3

directors and/or third parties.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all Documents concerning meetings of Oculus's board of directors, executives or management team at which ZeniMax, id, or any of Plaintiffs' past or present employees or consultants were discussed.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents that identify those Persons or entities that own or possess, or will own or possess, an ownership or proprietary interest in Oculus or Oculus's Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all Documents referring to negotiations between Defendants and third parties for an equity stake in Oculus or Defendants' Products, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

**REQUEST FOR PRODUCTION NO. 17:**

All investment memoranda, proposals, or other Documents relating or referring to Oculus's business and/or valuation.

**REQUEST FOR PRODUCTION NO. 18:**

All federal or state tax returns filed by or on behalf of Palmer Luckey or Oculus.

**REQUEST FOR PRODUCTION NO. 19:**

All quarterly or annual financial statements of Oculus.

<u>**Requests Concerning Defendants' Products**</u>

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify each and every Product of Defendants, including but not limited to the Oculus Rift, specifically the dates of conception and reduction of practice for each Product, and the names and roles of any Oculus Employees involved in the development of each Product.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all manuals, instructions and instructional material, design drawings or renderings, and technical Documents or Communications relating to Defendants' Products,

4

including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all Documents concerning any problems, complaints or issues (*e.g.*, bugs, missing features, missed deadlines, or product failures) with Defendants' Products, including, but not limited to concerns communicated by Plaintiffs, John Carmack, media, developers, customers, or other third parties.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all Documents and Communications concerning the marketing or publicity for each version of each of Defendants' Products, including but not limited to press releases, product launch announcements, fact sheets, presentations, fundraising materials, sales literature, brochures, catalogs, trade letters, press releases, audio or video files, materials posted on internet websites and message boards, information prepared for electronics or gaming shows and conventions, and other marketing materials.

**REQUEST FOR PRODUCTION NO. 24:**

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications relating to Defendants' involvement with demonstrations, booths, presentations, and panels at electronics or gaming shows or conferences, including any Documents identifying attendees at each electronics or gaming show or conference.

**REQUEST FOR PRODUCTION NO. 25:**

To the extent not requested by the prior Requests contained herein, any and all Communications regarding joint displays or demonstrations of Defendants' Products, including but not limited to the Oculus Rift, with ZeniMax or id.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all documents regarding any patent applications filed by any of Oculus's employees or Palmer Luckey.

**REQUEST FOR PRODUCTION NO. 27:**

To the extent not requested by the prior Requests contained herein, any and all Communications relating to Defendants' products.

**Requests Concerning Source Code**

**REQUEST FOR PRODUCTION NO. 28:**

Any and all versions of Source Code, including but not limited to source code comments

5

(*i.e.*, the narratives that programmers write to assist others analyzing code) and object code, for each of Defendants' Products, including, but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents that reflect current or past revisions or additions to any and all versions of the Source Code for each of Defendants' Products, including but not limited to the Oculus Rift, specifically those Documents that reflect the author of each revision or addition and the date on which each revision or addition was made.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all Documents and Communications concerning any similarities or differences between the Parties' Source Code or software products, including, without limitation, any Documents and Communications regarding the testing thereof.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all Documents concerning the destruction or loss of any Source Code or object code for any of Defendants' Products.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all Documents regarding the reimplementation or modification by John Carmack or any other Oculus employee of any Source Code provided by Plaintiffs to Defendants at any time.

### Requests Concerning Former ZeniMax Employees

**REQUEST FOR PRODUCTION NO. 33:**

Any and all Communications between Palmer Luckey and/or Oculus and John Carmack regarding or relating in any way to ZeniMax, id, or the work John Carmack performed for Plaintiffs at any time.

**REQUEST FOR PRODUCTION NO. 34:**

Any Documents relating to patents for technology of Oculus, including, without limitation, communications with John Carmack and Documents relating to the White Paper of John Carmack discussed in ¶ 30 of the Complaint.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents relating to John Carmack's employment with Oculus, including compensation and equity ownership.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to identify each of Plaintiffs' Former Employees and the job responsibilities for each of Plaintiffs' Former Employees with Oculus, including with respect to each of Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 37:**

Any and all Documents and Communications referring to or relating to the departure of, or the recruitment, solicitation, interviewing, consideration for hire, or hiring of Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 38:**

Any and all Documents and Communications referring to or relating to any employment, confidentiality, non-compete, or non-disclosure agreements between ZeniMax and/or id and Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 39:**

Oculus's employee or personnel file for each of Plaintiffs' Former Employees, including any employment, confidentiality, non-compete, or non-disclosure agreements between Oculus and Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 40:**

Any and all Documents and Communications reflecting the steps Oculus has taken, or plans to take, regardless of the degree of certainty, to ensure that Oculus and its employees will not be in violation of the NDA and/or any employment, confidentiality, non-compete, or non-disclosure agreement between ZeniMax and/or id and Plaintiffs' Former Employees.

## Requests Related To Plaintiffs' Proprietary Materials

**REQUEST FOR PRODUCTION NO. 41:**

All Documents that identify and describe those Persons or entities that have or have had access to Defendants' Products, including but not limited to suppliers, vendors, visitors to Defendants' facilities and displays or demonstrations at electronics or gaming shows or conventions, technicians, partners, consultants, and customers.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents that constitute, refer to, relate to, or concern in any way any efforts or attempts by Palmer Luckey or Oculus to obtain, use or utilize information, technology or know-how of ZeniMax or id.

**REQUEST FOR PRODUCTION NO. 43:**

Any and all Documents concerning any investigation into whether Defendants possess or have used or disclosed materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials.

## Requests Related To Financial And Market Information

**REQUEST FOR PRODUCTION NO. 44:**

Any and all competitive analyses of ZeniMax, id or the virtual reality market.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to identify each version or iteration of Oculus's agreements or contracts with its past, present, or potential suppliers, contractors, and customers.

**REQUEST FOR PRODUCTION NO. 46:**

Any and all Documents and Communications related to Oculus's sale or licensing of, or attempted or potential sale or licensing of, any of Defendants' Products, including but not limited to Documents and Communications related to discussions, terms, proposals, arrangements for compensation, and/or agreements between Oculus and any of Epic, Valve, NVidia, Hewlett-Packard, or Dell regarding actual or potential sale or licensing of any Oculus product, and further including any Documents and Communications related to discussions, terms, proposals, arrangements for compensation, and/or agreements between Oculus and Sony regarding actual or potential sale or licensing of any Oculus product as reported in the press in June 2014 (for example, in an article titled "Oculus VR Looking for Help to Build its Headsets" on Gamespot.com, dated June 26, 2014).

**REQUEST FOR PRODUCTION NO. 47:**

Any and all Documents concerning business plans, forecasts, financial statements or analyses, or projections concerning Oculus and Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 48:**

Documents sufficient to determine Oculus's total profits and revenue, and profits and revenue derived from each of Defendants' Products, including but not limited to the Oculus Rift, for each fiscal year and quarter from Oculus's inception to the present.

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to identify costs incurred by Defendants to develop their Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 50:**

Any and all Documents relating to pricing or pricing plans for Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 51:**

Any and all Documents that relate to the commercial viability of Defendants' Products, including but not limited to the Oculus Rift.

### Other Requests

**REQUEST FOR PRODUCTION NO. 52:**

Any and all Documents or Communications relating to the affirmative defenses alleged by Defendants in this Action.

**REQUEST FOR PRODUCTION NO. 53:**

Any and all Documents and Communications that you identify, reference, use, or rely upon in responding to Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents considered or relied upon by a Person with whom you will call to provide expert testimony in this Action.

**REQUEST FOR PRODUCTION NO. 55:**

All reports, opinions, and curriculum vitae of any Person(s) whom you expect to present at trial as an expert witness.

**REQUEST FOR PRODUCTION NO. 56:**

To the extent not requested by the prior Requests contained herein, all Documents Oculus will, or anticipates that it will, rely upon at trial in this Action, without regard to the date of such Documents.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to identify and reflect Oculus's Document preservation policies and/or practices, including but not limited to its policies and/or practices in relation to preservation of e-mail and electronically stored Documents and Communications.

## DEFINITIONS

1.      As used herein, "Plaintiffs" refers to ZeniMax Media Inc. ("ZeniMax"), id Software LLC ("id"), or both, as appropriate to the Request.

2.      As used herein, "Defendants" refers to Palmer Luckey, Oculus VR, Inc. and its corporate predecessors, including Oculus LLC ("Oculus"), or both, as appropriate to the Request.

3.      As used herein, "Party" refers to Plaintiffs or Defendants, and "Parties" refers to both Plaintiffs and Defendants.

4.      As used herein, the terms Plaintiffs or Defendants, as well as a Party's full or abbreviated name, or a pronoun referring to a Party (*e.g.*, "you" or "your"), means the Party and, where applicable at the relevant time, its agents, representatives, members, officers, directors, employees, consultants, partners, corporate parents, subsidiaries, attorneys, superiors, principals, or affiliates.

5.      As used herein, the term "Action" refers to *ZeniMax Media Inc. et al v. Oculus VR, Inc. et al*, Case No. 3:14-cv-01849-P (N.D. Tex.).

6.      As used herein, the term "Complaint" refers to Plaintiffs' Complaint filed in this Action, Docket No. 1.

7.      As used herein, the term the "Answer" refers to Defendants' Answer and Affirmative Defenses filed in this Action, Docket No. 26.

8.      As used herein, the term "Facebook" refers to Facebook, Inc.

9.      As used herein, the term "Plaintiffs' Former Employees" refers to any former employees of Plaintiffs that were or are employed by Defendants, including but not limited to Christian Antkow, John Carmack, Matthew Hooper, Gloria Kennickell, Jason D. Kim, Jan Paul van Waveren, and Jonathan E. Wright.

10.     As used herein, the terms "Defendants' Product(s)" or "Product(s) of Defendants" refers to all versions and iterations of Defendants' devices, programs, hardware, software, and other technologies and projects, regardless of whether the aforementioned were previously developed, are in development, or are planned for development, and regardless of whether the aforementioned were released to the public or offered for sale. The terms Defendants' Product(s) or Product(s) of Defendants include, but are not limited to, Defendants' Oculus Rift virtual reality headset ("Oculus Rift"), including any consumer-facing version of the Oculus Rift, and the Oculus Rift's Software Development Kit.

11.     As used herein, the term "Confidential Information" refers to proprietary or commercially-sensitive information, or other information that qualifies for protection under Federal Rule of Civil Procedure 26(c), including, without limitation: (i) Source Code; (ii) trade secrets, including "negative trade secrets"; (iii) technical and customer information, including

10

know-how and proprietary data, schematics, communications, and other technical work product; (iv) information related to unreleased products and processes in development; (v) damages-related information, including but not limited to financial, business, or marketing plans, projections, forecasts, strategies or analyses, and sales, cost, profit, pricing or margin information; and (vi) confidential regulatory materials.

12.     As used herein, the term "Source Code" refers to computer code and related information, including, without limitation: (i) computer source code; (ii) object code, (iii) coding comments and other Documents that describe encoding or decoding algorithms used in computer source code; (iv) comments and revision histories associated with computer code; and (v) formulas, engineering specifications or schematics that define or otherwise describe the algorithms or structure of software or hardware designs.

13.     As used herein, the term "Copyrighted Materials" includes, without limitation, Plaintiffs' copyrights in the: (i) "*Doom 3: BFG Edition*" computer program, (ii) ZeniMax VR Testbed Code; and (iii) ZeniMax VR Implementation Code.

14.     As used herein, the term "Trademarked Materials" includes, without limitation, the following U.S. Trademark Registrations by Plaintiffs: (i) No. 2,050,083 for "DOOM"; (ii) No. 2,928,605 for "DOOM 3"; (iii) No. 2,303,100 for "DOOM II" and design; (iv) No. 2,165,125 for "ID"; (v) No. 3,923,244 for "RAGE"; (vii) No. 4,198,972 for "RAGE" and design; (viii) No. 4,094,299 for "RAGE" and design; (ix) No. 3,972,050 for "RAGE" and design; (x) No. 4,080,839 for "SKYRIM"; (xi) No. 4,097,150 for "SKYRIM"; and (xii) No. 4,280,859 for "SKYRIM".

15.     As used herein, the term "Person" shall be construed to include, in addition to the natural person, any and all other legal entities.

16.     As used herein, references to any legal entity shall include, in addition to the entity, any agent, representative, officer, member, director, employee, consultant, partner, corporate parent, subsidiary, attorney, superior, principal, or affiliate thereof.

17.     As used herein, the terms "Communication(s)" means any contact or the transmittal of any information in the form of facts, ideas, inquiries, or otherwise, whether formal or informal, oral or documentary, electronic or in writing, by video, telephone, or in any other form. Communication(s) include but are not limited to messages, e-mail, facsimiles, file transfers, message board posts and private messages, internet communications, internal or external memoranda, notes, meetings, calls, audio or visual messages or recordings, and cellular telephone messaging.

18.     As used herein, the term "Document(s)" is used in its broadest sense and includes, without limitation, original and all non-identical copies (including drafts and those with any notations) of all documents, writings, recordings, and photographs of the type designated in Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001. The term Document(s) encompasses materials in digital form, including, without limitation, e-mail, electronically stored documents, and other records on any device such as desktop or laptop

11

computer, portable hard-drive or thumb-drive, mobile phone, or smart phone (*e.g.*, Blackberry or iPhone). The term Document(s) includes, but is not limited to, any book, pamphlet, periodical, letter, memorandum, diary, file, note, calendar, newspaper, magazine, statement, bill, invoice, order, policy, telegram, correspondence, summary, receipt, opinion, investigation statement or report, schedule, annual report, financing statement, audit report, tax return, record, study, handwritten note, drawing, working paper, chart, index, tape (audio or visual), microfilm, and data sheet, however produced. For the purposes of these Requests, Document shall be construed to also include "things" (*i.e.*, any physical object).

19. As used herein, the term "evidencing" means tending to show, in any probative manner, the existence or nonexistence of any matter.

20. As used herein, the terms "concern(s)" or "concerning" mean in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, constituting, containing, pertaining to, relevant to, material to, affecting, considering, embodying, concerning, showing, comprising, reflecting, identifying, stating, dealing with, commenting on, responding to, describing, involving, discussing, recording, supporting, or negating a given subject matter.

21. As used herein, the term "identify" shall mean, when used with reference to:

(a) <u>Person or Persons</u>. His or her full name, present or last known employer, job title, present or last known residence addresses and telephone numbers, and present or last known business addresses and telephone numbers;

(b) <u>Business Entity</u>. The full name and address of the entity and the names and positions of the individual or individuals connected with such entity who have knowledge of the information requested;

(c) <u>Oral or Written Communications or Documents</u>. The type of Communication or Document (*e.g.*, letter, memorandum, report, notes, etc.), its date, author(s) or originator(s), addressee(s), the organization, if any, with which the addressee(s) are or were connected, all individuals who received copies of the Document, the identity of Persons known or presumed by you to have present possession, custody or control of the Document, a detailed description of the substance of the Document or Communication, and the Bates numbers or other label(s) associated with the Document. Any request to identify Communications or Documents should also provide the present location of the Document and each known copy thereof, including the title, index number and location, if any, of the file in which the Document is kept by Defendants or the file from which such Document was removed, and identify of all Persons responsible for the filing or other disposition of the Document.

(d) <u>Product</u>. The name, version, release, number, designation, trademark or any other designation customarily used by the Party concerned to designate such product. Any request to identify the product shall also include dates of conception, reduction to practice, and first sale, and a list of all employees who have worked on that product, and their roles in the creation, development, production or other activity related to the product.

12

22.     As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

23.     As used herein, the term "any" or "each" shall be construed to include "all."

24.     As used herein, the use of the term "the" shall not be construed as limiting the scope of any Request.

25.     As used herein, the term "including" shall not be construed as limiting any Request, and shall mean "including, but not limited to."

26.     As used herein, the singular also includes the plural, and vice-versa.

## INSTRUCTIONS

The following instructions apply:

1.     Answer each Request separately by listing the responsive Documents and by describing them as defined below.  All Documents shall be: (i) organized and designated to correspond to the categories in these Requests or, if not, (ii) produced as they are maintained in the normal course of business, and in either case: (a) all associated file labels, file headings, and file folders shall be produced together with the responsive Documents and each file shall be identified as to its owner or custodian; (b) all Documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies (but Plaintiffs reserve the right to inspect the originals); and (c) each page shall be given a discrete production number and produced in Bates-numbered form.

2.     Documents stored electronically must be produced in the form or forms in which they are ordinarily maintained. Producing electronic Documents in the "form or forms in which they are ordinarily maintained" does not include printing those Documents and scanning them in a PDF format.

3.     All Source Code must be produced in native format.

4.     These Requests call for Documents that are known or available to Defendants, or in the possession, custody, or control of Defendants, including all Documents known or available to attorneys, agents, representatives, investigators, or any other Person acting on behalf of Defendants or under the direction or control of Defendants, its attorneys, agents, representatives, or investigators.

5.     Possession, custody and control does not require that you have actual physical possession; instead, if you have physical control or a superior right to compel production from another, the requested Document must be produced.

6.     In the event that multiple copies of a Document exist, produce every copy on which any notations or markings of any sort not appearing on any other copies exist.

13

7.      If any of the Documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying the reasons for the inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the unproduced portion.

8.      If you or your attorneys know of the existence, past or present, of any Document described in any of these Requests, but such Document is not presently in your possession, custody, or control or in the possession, custody or control of your agents, representatives, or attorneys, you shall so state in response to the Request.  For any such Documents, provide the disposition of each such Document, including the date of, method of and reasons for such disposition, and the name and address, if known, of any Person who has seen the Document or who now has custody, control or possession thereof.   If such Document no longer exists, state when, how, and why such Document ceased to exist.

9.      If in answering these Requests you claim any ambiguity in either a Request or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

10.      If you object to any Request or part thereof, produce all relevant Documents to which your objection does not apply.

11.      If any Documents are withheld under a claim of privilege, produce all relevant Documents to which your claim of privilege does not apply, and also state the nature of the privilege claimed and provide sufficient information to permit a full determination of whether the claim is valid. For allegedly privileged Documents, include: (i) any privilege or immunity from discovery asserted; (ii) the nature of the Document (letter, memorandum, notes, etc.); (iii) the author; (iv) the addressee, including recipients of copies; (v) the date; (vii) each and every Person who has seen such Document or a portion of such Document; (viii) the subject matter and general nature of the information; and (ix) all other facts which are alleged to support the assertion of privilege or immunity.

12.      These Requests are intended as continuing, requiring you to supplement your production of Documents pursuant to Federal Rules of Civil Procedure 26 and 34.

Dated: July 9, 2014

<div style="margin-left:40%">

s/ P. Anthony Sammi

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
   **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*

</div>

15

## CERTIFICATE OF SERVICE

I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing ZeniMax Media Inc. and id Software LLC's First Set of Requests for Production to Oculus VR, Inc. and Palmer Luckey to be sent by hand delivery to counsel for Defendants.

Dated: July 9, 2014          s/ James Y. Pak

# EXHIBIT E

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | NO. 3:14-01849-P |
| ) | |
| v. ) | |
| ) | |
| OCULUS VR, INC. and PALMER LUCKEY, ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |
| ) | |

**DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS
(INTERROGATORIES NOS. 1-5)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, defendants Oculus VR, Inc.

("Oculus VR") and Palmer Luckey ("Luckey") (collectively, "Defendants") hereby request that

plaintiffs ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively,

"Plaintiffs") respond to the following Interrogatories, separately and fully, under oath and in

writing within thirty days after service of these Interrogatories.

**DEFINITIONS AND INSTRUCTIONS**

1.      The terms "ZeniMax," "Plaintiffs," "you," and "your" shall mean and include

plaintiff ZeniMax Media Inc., and where applicable, its officers, directors, current and former

employees, partners, corporate parent, subsidiaries (including but not limited to id Software

LLC), or affiliates and all those persons acting on its behalf.

2.      The term "id Software" shall mean and include plaintiff id Software LLC, and

where applicable, its officers, directors, current and former employees, partners, corporate parent,

subsidiaries, or affiliates and all those persons acting on its behalf.

3.      The terms "Oculus VR" shall mean and include defendant Oculus VR, Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

4.      The term "Luckey" shall mean defendant Palmer Luckey.

5.      The term "Defendants" shall mean "Oculus VR" and "Luckey"

6.      The term "Complaint" shall mean the Complaint Plaintiffs filed in the above-captioned matter on May 21, 2014.

7.      The term "Answer" shall mean the Answer Defendants filed in the above-captioned matter on June 25, 2014.

8.      The term "HMD" shall mean head-mounted display.

9.      The term "Oculus DK1" shall mean the first development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

10.     The term "Oculus DK2" shall mean the second development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

11.     The term "Rift" shall mean the Oculus Rift HMD, including without limitation, all prototypes, successors, and components, Oculus DK1, and Oculus DK2, whether or not altered or modified.

12.     The term "SDK" shall mean the Oculus software development kit, including without limitation, all versions of the Oculus software development kit, whether or not released to Plaintiffs or any Third Parties.

13.     The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2

14.     The term "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or being in any other way relevant to the particular subject matter identified.

15.     The term "document" is defined to be synonymous in meaning and equal is scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

16.     The term "things" shall mean any tangible item, including, without limitation, models, prototypes, and samples of any composition, device, or apparatus.

17.     The terms "person" and "persons" shall mean any natural person or any business, legal, or governmental entity or association.

18.     The term "related to" shall be understood to be synonymous with "concerning."

19.     The following rules of construction shall apply to all interrogatories as necessary to bring within the scope of discovery interrogatories all responses that might otherwise be construed to be outside of its scope:

    a.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition, or instruction more inclusive;

    b.     The terms "any" and each" shall be construed to include and encompass "all";

    c.     The term "including" means including but not limited to;

    d.     Use of the word "the" shall not be construed as limiting the scope of any request;

    e.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in context.

3

20.     The words "identify", "identifying", "identity" or "identification" shall mean and include:

     a.     When used in reference to a document:

          i.   to describe the date it was prepared or created, the identity of its author or originator, the type of document (e.g., letter, telegram, chart, photograph, sound recording, etc.), the identity of its recipient or addressee, its present location, the identity of its present custodian(s), and the Bates stamp number or other reference number, if such document has been produced in response to Defendants' First Request For Production of Documents and Things or in response to any subsequent Requests For Production of Documents and Things by Defendants, or in lieu of providing the requested information about the identity of the document, to the extent that the document itself contains the requested information, you may attach the document to your answers; and

         ii.  if the document has been destroyed or is otherwise no longer in existence or cannot be found, the reason why such document no longer exists, the identity of the person(s) responsible for the destruction or loss of the document, and the identity of its last known custodian(s).

     b.     When used in reference to a natural person:

          i.   state such person's name;

4

    ii.  state such person's present residential address and telephone number (or if not known or ascertainable, the last known address indicating that it is the last known address);

    iii.  state such person's present place of business and present business address and telephone number (or if not known or ascertainable, the last known place of business and business address indicating that it is the last known place of business and business address); and

    iv.  state such person's job title and employer (or if not known or ascertainable, the last known employer indicating that it is the last known employer).

   c.    When used with reference to any person other than a natural person:

    i.  state its full name;

    ii.  state the address and telephone number of its principal place of business;

    iii.  state the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation;

    iv.  identify all individuals who acted and/or who authorized another to act on its behalf in connection with the matters referred to;

    v.  in the case of a corporation, identify its directors and principal officers; and

    vi.  in the case of an entity other than a corporation, identify its partners, principals and all individuals who acted or who

5

authorized another to act on its behalf in connection with the

matters referred to.

    d.    When used with reference to a communication:

        i.  state whether the communication was written or oral;

        ii.  state the date of the communication;

        iii.  identify the parties to the communication;

        iv.  describe in as much detail as possible the substance of the

communication; and

        v.  identify all documents which refer to, evidence, describe or

constitute the communication.

21.    All interrogatories must be answered fully, completely and in writing, and signed by someone with authority to make binding judicial admission on behalf of Plaintiffs.  In the event that any interrogatory cannot be answered fully after the exercise of reasonable diligence, you shall furnish as complete an answer as you can, and shall explain in detail the reasons why you cannot give a full answer, including a statement as to what is needed in order that you may be in a position to answer the interrogatory fully.

22.    These interrogatories shall be deemed continuing so as to require prompt, further supplementation (without further request by Defendants or their attorneys) if you obtain additional information responsive to the request at any time prior to trial herein.

23.    If you withhold any information covered by these interrogatories under a claim of privilege (including attorney work-product), furnish a list specifying (a) the nature of the privilege claimed, and, if the privilege is being asserted in connection with state law, the state's privilege rule being invoked; (b) the identity of the person making the communication; (c) the

6

identity of each person present while the communication was made; (d) the date and place of the communication; (e) the subject matter of the communication; and (f) the interrogatory to which the withheld information is responsive.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person known to you or your attorney who has or is believed to have any knowledge of any facts pertaining to any claims, defenses, facts or allegations contained in the Complaint and/or Answer. With respect to each person, said identification should include, without limitation:

(a) his or her full name;

(b) his or her present or last-known addresses;

(c) his or her present or last-known telephone numbers; and

(d) his or her present or last-known position and business affiliation.

### INTERROGATORY NO. 2:

Identify each person whom Plaintiffs expect to provide sworn testimony in this matter, at trial or otherwise, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. For each witness you expect to call to offer evidence you believe is admissible under Federal Rules of Evidence 701, 702, 703, 704, or 705, include in your description of the subject matter on which each witness is expected to testify, the substance of the facts to which each such witness is expected to testify, the substance of any opinions to which each such witness is expected to testify, and a summary of the grounds for each such opinion.

### INTERROGATORY NO. 3:

Identify all proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint.

7

**INTERROGATORY NO. 4:**

Identify with particularity the "ZeniMax VR Technology" referred to in the Complaint, including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed by ZeniMax employees, or otherwise allegedly owned by ZeniMax.  With respect to each alleged technology, said identification should include without limitation a specific description of every component of the technology, how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift,SDK, or any other Oculus VR product.

**INTERROGATORY NO. 5:**

Identify with particularity all trade secrets ZeniMax alleges Defendants misappropriated, including all "ZeniMax Trade Secrets" referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

(a) "confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset" referenced in the Complaint; and/or

8

(b) the "enforceable trade secret[] in the confidential, proprietary components of ZeniMax's "DOOM 3: BFG Edition" computer program code" referenced in the Complaint. With respect to each such alleged trade secret, said identification should include without limitation a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, what component or element or combination of components or elements renders the secret novel or unique, and what component or element or combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product.

9

Dated:  July 11, 2014                     Respectfully submitted,

                                          **Oculus VR, INC. and PALMER Luckey,**

                                          By Their Attorneys,


                                          /s/ Joshua M. Dalton
                                          _____

                                          E. Leon Carter
                                          Texas Bar No. 03914300
                                          lcarter@carterscholer.com
                                          Linda R. Stahl
                                          Texas Bar No. 00798525
                                          lstahl@carterscholer.com
                                          **CARTER SCHOLER**
                                          Campbell Centre II
                                          8150 N. Central Expressway, 5th Floor
                                          Dallas, Texas 75206
                                          T: 214.550.8188
                                          F: 214.550.8185

                                          Geoffrey M. Howard (*pro hac vice*)
                                          geoff.howard@bingham.com
                                          John A. Polito (*pro hac vice*)
                                          john.polito@bingham.com
                                          Lucy Wang (*pro hac vice*)
                                          lucy.wang@bingham.com
                                          **BINGHAM MCCUTCHEN LLP**
                                          Three Embarcadero Center
                                          San Francisco, California  94111-4067
                                          T: 415.393.2000
                                          F: 415.393.2286

                                          Joshua M. Dalton (*pro hac vice*)
                                          josh.dalton@bingham.com
                                          **BINGHAM MCCUTCHEN LLP**
                                          One Federal Street
                                          Boston, MA  02110-1726
                                          T: 617.951.8000
                                          F: 617.951.8736

10

**CERTIFICATE OF SERVICE**

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing

Defendants' First Set of Interrogatories Plaintiffs to be sent by e-mail to counsel for Plaintiffs on

July 11, 2014 at phillip.philbin@haynesboone.com, michael.karson@haynesboone.com, and

dlpzenimax@skadden.com.


/s/ Joshua M. Dalton
Joshua M. Dalton

11

# EXHIBIT F

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

# BINGHAM

Geoffrey M. Howard
Direct Phone:  +1.415.393.2485
Direct Fax:    +1.415.262.9212
geoff.howard@bingham.com

July 25, 2014

**Via E-Mail** (*anthony.sammi@skadden.com*)

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Tony:

We are in receipt of your letters regarding "Settlement Discussions" dated July 22, 2014.

Since your clients first accused our clients of stealing intellectual property, we have asked you repeatedly to identify what it is that you believe our clients stole.  In my letter of April 24, 2014, for example, we asked that you provide materials that form the basis of your claims so that we could understand the accusations.  You did not do so.

Nonetheless, we conducted a thorough investigation of any potential allegation that ZeniMax "developed and owned" virtual reality technology now used by Oculus VR.  As we informed you in my letter of May 9, 2014, we did not find any basis for such a claim. Therefore, we reiterated our request that you share the materials on which you base your claims.  As we explained,  such materials were necessary "so that we [could] have an informed discussion about your claims."  You again did not provide any materials or even seek to have any discussion with us.

Instead of attempting to resolve - or at least clarify - any misunderstanding between the parties, your clients filed a complaint.  Despite the lengthy allegations, the complaint does not identify any stolen technology.  Instead, the complaint refers vaguely to "concepts," "research," and "know-how."  After reviewing the complaint and conducting further investigation, we are still at a loss as to what intellectual property your clients claim to own.

Hence, during our meeting on July 9, 2014, we asked you several times to identify what is the intellectual property in dispute.  You responded that it was "something" that John Carmack did to the Rift that gave it the "wow factor."  Without more to go on, however, we have exhausted our means for understanding what is that proprietary "wow factor."

Even so, we remained open to pursuing settlement discussions.  We discussed the pros and cons of various ways to proceed, but we expressly left open the format and timing of any future discussion.  Whatever the format or timing, however, we asked that you first make a demand so that we can all better assess the options on the table.  We understand from your letter that your client is refusing to make a demand.

Without any demand, or even a clear understanding of the dispute, it is difficult to see how the parties could have a productive discussion about settlement.  Hence, we have

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

P. Anthony Sammi, Esq.
July 25, 2014
Page 2

proposed a mediation to facilitate the parties' understanding of their respective settlement positions as well as the underlying claims. You effectively have rejected that route too, by demanding that Oculus pick up the entire cost of the mediation.

With respect to timing, we disagree that parties would be in a better position to discuss settlement in late August to early September (as you proposed) versus late September to early October (as we proposed). In either case, the parties would be participating in a mediation during the course of fact discovery, which is an entirely common practice. Indeed, if what you mean is that you refuse to engage in any settlement discussing during discovery, then that time has passed already and we also seriously doubt the Court would find that position reasonable. If anything, the additional month of discovery may allow for a more informed discussion as we expect that your discovery responses, or ensuing motion practice, will finally specify the alleged proprietary technology and provide supporting documents or make clear there is no specificity to provide.

Likewise, we disagree that we have somehow deprived your clients of any "benefit" with respect to the close of the deal with Facebook. Your clients only initiated this dispute after the Facebook acquisition was announced on March 25, 2014. As recently as our July 9 meeting in Dallas, we confirmed that the deal was on track to close imminently. At no point did you indicate that any specific closing date would "have informed [y]our consideration of [a proposed mediation]." Nor do we understand how it could have done so.

In short, by the tone and content of your letter, your refusal to respond to our inquiries and your refusal to mediate on a bilateral basis, it appears to us that ZeniMax is not serious about any settlement discussion. If that changes, please let us know. We remain available for a mediation on the time frame previously indicated.

Sincerely yours,

*Geoffrey M. Howard*  / *L.W.*

Geoffrey M. Howard

cc:    Daniel Offner, Esq.

# EXHIBIT G

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| ZeniMax MEDIA INC. and id Software LLC, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:14-01849-P |
| v. | ) ) | |
| Oculus VR, INC. and PALMER Luckey, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANT OCULUS VR, LLC (SUCCESSOR BY MERGER TO OCULUS VR, INC.) AND PALMER LUCKEY'S RESPONSES TO ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S FIRST SET OF REQUESTS FOR PRODUCTION AND INSPECTION**

Pursuant to Federal Rule of Civil Procedure 34(b), defendants Defendant Oculus VR, LLC (successor by merger to Oculus VR, Inc.) ("Oculus VR") and Palmer Luckey ("Luckey") (collectively, "Defendants") submit their responses to plaintiff ZeniMax Media Inc. and id Software LLC's (collectively, "Plaintiffs" or "ZeniMax") First Set of Requests for Production and Inspection ("Document Requests"). Defendants' responses and specific objections follow Defendants' General Objections. Accordingly, each of Defendants' responses is subject to and without waiver of both the general and specific objections asserted below.

1. The specific response set forth below is for the purposes of discovery only and Defendants neither waive nor intend to waive, but expressly reserves, any and all objections they may have to the relevance, competence, materiality, admissibility, or use at trial of any information, documents, or writings produced, identified, or referred to herein, or to the introduction of any evidence at trial relating to the subjects covered by such response. All such objections may be made at any time up to and including the time of trial.

2.      Defendants reserve the right to decide whether the documents produced for inspection shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the Document Requests, in accordance with Federal Rule of Civil Procedure 34(b).

3.      Defendants' response to the Document Requests is made to the best of Defendants' present knowledge, information, and belief.  This response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendants' recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Defendants' further discovery or investigation.  Defendants reserve the right to supplement and amend their response and, if necessary, to assert additional objections arising from further investigation.

4.      Defendants reserve the right to make any use of, or to introduce at any hearing and at trial, information, and/or documents responsive to the Document Requests but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery herein.  Defendants' investigation is continuing and ongoing and Defendants expressly reserve the right to revise and/or supplement these responses.

5.      The specific response set forth below is based upon Defendants' interpretation of the language used in the Document Requests, and Defendants reserve their right to amend or supplement further their response in the event that Plaintiffs assert an interpretation that differs from Defendants' interpretation.

6.      Defendants' response to a particular Document Request shall not be interpreted as implying that responsive documents and things exist or that Defendants acknowledge the appropriateness of the Document Request.

<div align="center">2</div>

7.     Defendants reserve the right to object on any ground to such other or supplemental requests for production involving or relating to the subject matter of these Document Requests.

## **GENERAL OBJECTIONS**

The following general objections are incorporated into each of Defendants' responses as if fully set forth in them. Defendants' responses to these Document Requests shall not be deemed a waiver of any General Objection.

1.     Defendants object to the Document Requests to the extent that they are overly broad and unduly burdensome.

2.     Defendants object to the Document Requests to the extent they seek information not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

3.     Defendants object to the Document Requests to the extent they seek documents or information that is protected from discovery by any privilege or protection, including the attorney-client privilege or the work product doctrine.  Defendants construe the Document Requests as not seeking such documents or information, and such documents or information shall not be produced in response to the Document Request.  Any inadvertent disclosure or production thereof shall not be deemed a waiver of any privilege or immunity with respect to such documents or information or of any work-product protection which may attach thereto.

4.     If one or more documents are produced that are privileged or otherwise protected from disclosure, such production is inadvertent and is not intended as a waiver of such privilege or protection.

5.     Defendants object to the Document Requests to the extent the requests are vague,

3

ambiguous, and/or unintelligible or to the extent they require legal conclusion.

6.      Defendants object to the Document Requests as overly broad and unduly burdensome to the extent they seek proprietary and/or confidential marketing and business information that is not relevant to any claim or defense of any party in this litigation nor likely to lead to the discovery of admissible evidence.

7.      Defendants object to the Document Requests, definitions, and instructions to the extent that they purport to give meaning to words different from their ordinary English meaning or definitions set forth in applicable statutes or rules.

8.      Defendants object to the Document Requests, definitions, and instructions to the extent they purport to require Oculus to produce documents or information that are not in Defendants' possession, custody, or control or to the extent that such Document Requests impose obligations upon Defendants not required by the Federal Rules of Civil Procedure or applicable law, including without limitation instructions concerning the identification of privileged and/or work product protected documents and to the extent the instructions require a log of privileged communications post-dating the filing of the Complaint.

9.      Defendants object to the fourth definition set forth by ZeniMax as being overly broad and invasive of the attorney-client privilege and attorney work product doctrine, to the extent that the definition includes Defendants' counsel.  Defendants further object to the definition to the extent that it fails to recognize that actions taken by past or current employees outside the scope of their employment and/or actions taken without Defendants' knowledge are not attributable to Defendants.  In responding to these requests, Defendants will respond on the basis that the terms "Defendants," "Oculus, VR, Inc." and "Palmer Luckey" refer only to Oculus, VR, Inc., Oculus VR, LLC and Palmer Luckey, respectively.

4

10.     Defendants object to the definition of "Plaintiffs' Former Employees" to the extent it assumes that Defendants are aware of all people previously employed by Plaintiffs. References to "Plaintiffs' Former Employees" in these responses refer to the seven specifically named persons in the definition of Plaintiffs' Former Employees.

11.     Defendants object to the definition of the terms "Defendants' Products" and "Products of Defendants" as vague and ambiguous in their use of the terms "technologies" and "projects" and overbroad to the extent the definition is intended to encompass products other than the Oculus Rift and its associated Software Development Kits.  References to "Defendants' Products" in these responses refer to the Oculus Rift and its associated Software Development Kits.

12.     Defendants object to the definition of the term "Copyrighted Materials" as vague and ambiguous in that it does not define the "ZeniMax VR Testbed Code" or the "ZeniMax VR Implementation Code."

13.     Defendants object to the definition of the term "Trademarked Materials" in that it provides no definition but rather only has an "includes" clause.  Defendants therefore limit their responses to only those trademarks identified within the "includes" clause.

14.     Defendants object to the Document Requests to the extent that they seek information already known to Plaintiffs or information that is available to Plaintiffs through other sources, which are more convenient, less burdensome, and less expensive, including without limitation those requests that call for production of documents which are publicly available or are already in Plaintiffs' possession, custody, or control.

15.     Defendants object to the Document Requests to the extent that they call for "all documents" that relate to a given topic as premature, in that discovery is ongoing, and Defendants

5

have yet to receive discovery from Plaintiffs and/or relevant third parties.

16.     Defendants object to the Document Requests to the extent that they call for "all documents" that relate to a given topic as overly broad and unduly burdensome.

17.     Defendants object to the Document Requests to the extent they are unlimited or otherwise overly broad in time.

18.     Defendants object to the Document Requests to the extent they seek documents and information that contain confidential information or trade secrets of Defendants, the disclosure of which would be unduly prejudicial to Defendants.  Defendants will not produce any documents until the parties agree upon and the Court enters an appropriate protective order.

19.     Defendants object to the Document Requests to the extent they make inquiries about matters the disclosure of which is prohibited or protected by statute, regulation or other applicable laws.

20.     Defendants object to the Document Requests to the extent that they request not only written responses within thirty days but also complete production of documents within thirty days.  Defendants will produce documents responsive to the Document Requests at a mutually agreeable time and place.

21.     Defendants object to the Document Requests to the extent they seek information that Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties.  Defendants will do so only in accordance with an appropriate Protective Order to be negotiated and entered in this case and only after providing any required notice to third parties and/or obtaining any required authority to disclose such information from third parties.

6

22.     Defendants object to the Document Requests to the extent they seek to elicit information that is subject to a right of privacy under the relevant provisions of federal and state law.

23.     Defendants object to the Document Requests to the extent they make assumptions of facts.

<div align="center">

**SPECIFIC RESPONSES AND OBJECTIONS**

**REQUESTS FOR INSPECTION**

</div>

**REQUEST FOR INSPECTION NO. 1:**

All iterations of the Oculus Rift and its Software Development Kit in an operable condition, including but not limited to those versions or iterations created prior to April 2012, whether consumer-facing or otherwise.

**RESPONSE TO REQUEST FOR INSPECTION NO. 1:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available. Defendants further object to this request as overly broad and unduly burdensome in requesting *all iterations* of the Oculus Rift and its Software Development Kit.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.

Subject to and without waiving their objections, upon the entry of a protective order and agreement to mutually agreeable inspection protocols and procedures, Defendants will make available for inspection a single iteration of each version of the Oculus Rift that is in Defendants' possession, custody or control, and that is responsive to this request.

<div align="center">

7

</div>

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Communications between Plaintiffs and Palmer Luckey and/or Oculus from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in 43, 44, 49, 70, 74, 75, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* communications between Plaintiffs and Defendants from January 1, 2012 to present and *all* documents incorporating or referencing those communications.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 2:**

All Communications involving John Carmack from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 84, 85, 86,

8

and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* communications involving John Carmack from January 1, 2012 to present and *all* documents incorporating or referencing those communications. Defendants further object to this request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available.  Defendants object to this request to the extent it seeks documents and things outside of Defendants' possession, custody or control.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all Documents or Communications concerning the Non-Disclosure Agreement referenced in ¶¶ 32-36 of the Complaint, including but not limited to the Non-Disclosure Agreement itself.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad

9

and unduly burdensome in requesting *any* and *all* documents and communications concerning the Non-Disclosure Agreement referenced in the Complaint.  Defendants further object to this request to the extent that it seeks documents and things already known to Plaintiffs or information that is available to Plaintiffs through other sources, which are more convenient, less burdensome, and less expensive, including Plaintiffs' own files.  Defendants object to this request to the extent it seeks documents and things outside of Defendants' possession, custody or control.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 4:

Any and all Documents referring to negotiations between the Parties for an equity stake in Oculus, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the terms "equity stake" and "negotiation strategy."

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

10

**REQUEST FOR PRODUCTION NO. 5:**

Any and all versions of Source Code, including but not limited to object code, associated with each of Defendants' Products, including but not limited to the Oculus Rift, whether that Source Code is contained in electronic work directories (including, without limitation, the work directories of each of Plaintiffs' Former Employees), shared drives, common directories, or libraries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to this request as overly broad and unduly burdensome in requesting *all* versions of Source Code associated with *each* of Defendants' Products. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court. Defendants further object to this request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents relating to or evidencing Communications between Palmer Luckey and/or Oculus and Facebook, including but not limited to any Communications, term sheets, agreements, documents in a "data room," or other deal documents generated by Palmer Luckey, Oculus, or

11

Facebook in reference to the proposed acquisition announced on March 25, 2014 and discussed in ¶ 101 of the Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to the use of the phrase "data room" as vague and ambiguous in that it is an undefined term. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent it seeks highly sensitive and confidential documents bearing no relevance to this dispute, the disclosure of which would be unduly prejudicial to Defendants.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request concerning Defendants' Products.

## REQUEST FOR PRODUCTION NO. 7:

To the extent not requested by the prior Requests contained herein, any and all Documents in Plaintiffs' control or possession that originated at ZeniMax or id, or are derived from Documents that originated at ZeniMax or id, including by way of example only the Documents discussed in ¶¶ 43 and 44 of the Complaint.

12

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the terms "originated" and "derived."  Defendants further object to this request to the extent that it seeks documents and things already known to Plaintiffs or information that is available to Plaintiffs through other sources, which are more convenient, less burdensome, and less expensive, including Plaintiffs' own files.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning any representations made by Palmer Luckey or Oculus to any party regarding Defendants' ownership of any intellectual property, including, by way of example, the ownership and/or licensing discussed at Page 5 of the Answer, and further including but not limited to any such representations made by Palmer Luckey and Oculus to Facebook.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents concerning *any* representations made by Defendants to *any* party regarding Defendants' ownership of *any* intellectual property.  Defendants further object to this request to the extent that it seeks

13

documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request concerning Defendants' ownership of any intellectual property in Defendants' Products.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents or Communications relating to requests for technology, advice, information or assistance from either Plaintiff or their current or former employees for the development of the Oculus Rift or otherwise.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to this request as vague and ambiguous in its use of the term "otherwise." Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents and communications concerning requests for technology, advice, information or assistance from either Plaintiff or their current or former employees for the development of the Oculus Rift *or otherwise*.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

14

**REQUEST FOR PRODUCTION NO. 10:**

To the extent not requested by the prior Requests contained herein, any and all Communications between either or both Defendants and any of Christian Antkow, John Carmack, Katherine Kang, Matthew Hooper, Gloria Kennickell, Jason D. Kim, Jan Paul Van Waveren, Jonathan E. Wright, or other of Plaintiffs' Former Employees prior to such Person's respective first day of employment with Oculus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request as overly broad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 11:**

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications reflecting or referring to materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials, including Documents and Communications regarding the use or disclosure of such materials in the development or marketing of Defendants' Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent that Plaintiffs have failed to identify what "Confidential Information" or "Copyrighted Materials" of Plaintiffs that Defendants are alleged to have misappropriated.

15

**Requests Concerning Oculus's Structure And Management**

**REQUEST FOR PRODUCTION NO. 12:**

Any and all Documents sufficient to identify and reflect Oculus's organizational structure, including but not limited to company directories, and the identification of Oculus's corporate and/or business departments, whether formally or informally delineated, Oculus's total number of employees, and each employee's title, job description, and reporting chain.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendants incorporate all of their General Objections.  Defendants further object to this request as unlimited or otherwise overly broad in time. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 13:**

All corporate Documents of or relating to Oculus, including but not limited to articles of incorporation and all amendments thereto, by-laws, corporate resolutions, minutes of shareholders' meetings, minutes of directors' meetings, slide or presentation decks prepared for directors' meetings, "board packets," binders prepared for directors' meetings, written consents of officers and directors, and any agreements between and among investors, shareholder, directors and/or third parties.

16

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this request to the extent it seeks documents and things that Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties.  Defendants further object to this request as overly broad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all Documents concerning meetings of Oculus's board of directors, executives or management team at which ZeniMax, id, or any of Plaintiffs' past or present employees or consultants were discussed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as vague and ambiguous in its use of the term "consultants."  Defendants further object to this request as overly broad and unduly burdensome.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request concerning meetings of

17

Oculus's board of directors, executives or management team at which Plaintiffs' intellectual property claims in the Complaint were discussed.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents that identify those Persons or entities that own or possess, or will own or possess, an ownership or proprietary interest in Oculus or Oculus's Products, including but not limited to the Oculus Rift.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to this request to the extent it seeks documents and things that Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties. Defendants further object to this request as overly broad and unduly burdensome to the extent it seeks the identity of each person who owns an Oculus Rift.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all Documents referring to negotiations between Defendants and third parties for an equity stake in Oculus or Defendants' Products, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client

18

privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the terms "equity stake" and "negotiation strategy."  Defendants further object to this request to the extent it seeks documents and things that Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 17:**

All investment memoranda, proposals, or other Documents relating or referring to Oculus's business and/or valuation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents relating or referring to Oculus's business.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

19

**REQUEST FOR PRODUCTION NO. 18:**

All federal or state tax returns filed by or on behalf of Palmer Luckey or Oculus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information of Defendants.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 19:**

All quarterly or annual financial statements of Oculus.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information of Defendants.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

<div align="center"><strong>Requests Concerning Defendants' Products</strong></div>

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify each and every Product of Defendants, including but not limited to the Oculus Rift, specifically the dates of conception and reduction of practice for each Product, and the names and roles of any Oculus Employees involved in the development of each Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Defendants incorporate all of their General Objections.  Defendants further object to this

<div align="center">20</div>

request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as overly broad and unduly burdensome in requesting documents sufficient to identify *any* Oculus Employees involved in the development of *each* Product. Defendants further object to this request as vague and ambiguous in its use of the term "involved."  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 21:

Any and all manuals, instructions and instructional material, design drawings or renderings, and technical Documents or Communications relating to Defendants' Products, including but not limited to the Oculus Rift.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the term "technical."  Defendants further object to this request to the extent that Plaintiffs have failed to identify what "Confidential Information" or "Copyrighted Materials" of Plaintiffs that Defendants are alleged to have misappropriated. Defendants further object to this request to the extent that it seeks documents and things not

21

relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all Documents concerning any problems, complaints or issues (e.g., bugs, missing features, missed deadlines. or product failures) with Defendants' Products, including, but not limited to concerns communicated by Plaintiffs, John Carmack, media, developers, customers, or other third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it requires Defendants to produce documents or information that are not in Defendants' possession, custody, or control. Defendants further object to this request as vague and ambiguous in its use of the terms "issues" and "concerning." Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents concerning *any* problems, complaints or issues with Defendants' Products. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all Documents and Communications concerning the marketing or publicity for each version of each of Defendants' Products, including but not limited to press releases, product launch announcements, fact sheets, presentations, fundraising materials, sales literature, brochures, catalogs, trade letters, press releases, audio or video files, materials posted on internet

22

websites and message boards, information prepared for electronics or gaming shows and conventions, and other marketing materials.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it requires Defendants to produce documents or information that are not in Defendants' possession, custody, or control, are publicly available or are more easily available through other sources, which are more convenient, less burdensome, and less expensive. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents concerning the publicity for *each* version of *each* of Defendants' Products.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 24:

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications relating to Defendants' involvement with demonstrations, booths, presentations, and panels at electronics or gaming shows or conferences, including any Documents identifying attendees at each electronics or gaming show or conference.

23

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the term "attendees."  Defendants further object to this request as unlimited or otherwise overly broad in time.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 25:**

To the extent not requested by the prior Requests contained herein, any and all Communications regarding joint displays or demonstrations of Defendants' Products, including but not limited to the Oculus Rift, with ZeniMax or id.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Defendants incorporate all of their General Objections.  Defendants further object to this request as overly broad and unduly burdensome.  Defendants further object to this request as vague and ambiguous in its use of the term "joint displays." Defendants further object to this request to the extent that it seeks documents and things already known to Plaintiffs or information that is available to Plaintiffs through other sources, which are more convenient, less burdensome, and less expensive, including Plaintiffs' own files.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this

24

litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all documents regarding any patent applications filed by any of Oculus's employees or Palmer Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 27:**

To the extent not requested by the prior Requests contained herein, any and all Communications relating to Defendants' products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* communications relating to Defendants' products. Defendants further object to this request to the extent it requires Defendants to produce

25

documents or information that are not in Defendants' possession, custody, or control, are publicly available or are more easily available through other sources, which are more convenient, less burdensome, and less expensive. Defendants further object to this request as vague and ambiguous in its use of the term "products." Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**Requests Concerning Source Code**

**<u>REQUEST FOR PRODUCTION NO. 28</u>:**

Any and all versions of Source Code, including but not limited to source code comments (*i.e.*, the narratives that programmers write to assist others analyzing code) and object code, for each of Defendants' Products, including, but not limited to the Oculus Rift.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 28</u>:**

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent it is duplicative of Request for Production No. 5. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to this request as overly broad and unduly burdensome in requesting *all versions* of Source Code for *each* of Defendants' Products. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court. Defendants further object to this

26

request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents that reflect current or past revisions or additions to any and all versions of the Source Code for each of Defendants' Products, including but not limited to the Oculus Rift, specifically those Documents that reflect the author of each revision or addition and the date on which each revision or addition was made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* Documents that reflect any revisions or additions to *all versions* of Source Code for *each* of Defendants' Products.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court. Defendants further object to this request to the extent it seeks documents and things already within Plaintiffs' possession and control or information that is publicly available.

27

**REQUEST FOR PRODUCTION NO. 30:**

Any and all Documents and Communications concerning any similarities or differences between the Parties' Source Code or software products, including, without limitation, any Documents and Communications regarding the testing thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.   Defendants further object to this request as vague and ambiguous in its use of the terms "similarities" and "differences" and "testing."  Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all Documents concerning the destruction or loss of any Source Code or object code for any of Defendants' Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to

28

the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the term "loss."  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence" Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court.

**REQUEST FOR PRODUCTION NO. 32:**

Any and all Documents regarding the reimplementation or modification by John Carmack or any other Oculus employee of any Source Code provided by Plaintiffs to Defendants at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request as assuming the fact that Plaintiffs provided Defendants with any Source Code. Defendants further object to this request to the extent it seeks confidential source code of Defendants before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

29

**Requests Concerning Former ZeniMax Employees**

**REQUEST FOR PRODUCTION NO. 33:**

Any and all Communications between Palmer Luckey and/or Oculus and John Carmack regarding or relating in any way to ZeniMax, id, or the work John Carmack performed for Plaintiffs at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendants incorporate all of their General Objections.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* Communications between Defendants and John Carmack relating *in any way* to the work John Carmack performed for Plaintiffs at *any* time.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 34:**

Any Documents relating to patents for technology of Oculus, including, without limitation, communications with John Carmack and Documents relating to the White Paper of John Carmack discussed in 30 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this

30

request as overly broad and unduly burdensome in requesting *all* documents relating to patents

for technology of Oculus.  Defendants further object to this request to the extent that Plaintiffs

have failed to identify what "Confidential Information" or "Copyrighted Materials" of Plaintiffs

that Defendants are alleged to have misappropriated.

## REQUEST FOR PRODUCTION NO. 35:

All Documents relating to John Carmack's employment with Oculus, including

compensation and equity ownership.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Defendants incorporate all of their General Objections.  Defendants further object to this

request to the extent that it calls for the production of documents subject to the attorney-client

privilege and work-product protection.  Defendants further object to this request to the extent

that it seeks documents and things not relevant to the subject matter of this litigation, and is not

reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object

to this request as overly broad and unduly burdensome.  Defendants further object to this request

to the extent it seeks personal information of Mr. Carmack that violates his right to privacy.

## REQUEST FOR PRODUCTION NO. 36:

Documents sufficient to identify each of Plaintiffs' Former Employees and the job

responsibilities for each of Plaintiffs' Former Employees with Oculus, including with respect to

each of Defendants' Products, including but not limited to the Oculus Rift.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Defendants incorporate all of their General Objections.  Defendants further object to this

request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants

further object to this request to the extent that it seeks documents and things not relevant to the

subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 37:**

Any and all Documents and Communications referring to or relating to the departure of, or the recruitment, solicitation, interviewing, consideration for hire, or hiring of Plaintiffs' Former Employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.

**REQUEST FOR PRODUCTION NO. 38:**

Any and all Documents and Communications referring to or relating to any employment, confidentiality, non-compete, or non-disclosure agreements between ZeniMax and/or id and Plaintiffs' Former Employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants

further object to this request to the extent it seeks documents and things already within Plaintiffs'

possession and control.

## REQUEST FOR PRODUCTION NO. 39:

Oculus's employee or personnel file for each of Plaintiffs' Former Employees, including

any employment, confidentiality, non-compete, or non-disclosure agreements between Oculus

and Plaintiffs' Former Employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

Defendants incorporate all of their General Objections.  Defendants further object to this

request to the extent that it calls for the production of documents subject to the attorney-client

privilege and work-product protection.  Defendants further object to this request to the extent

that it seeks documents and things not relevant to the subject matter of this litigation, and is not

reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object

to this request to the extent it seeks documents and things that Defendants are not permitted to

disclose pursuant to confidentiality obligations to third parties.  Defendants further object to this

request to the extent it seeks personal information of Plaintiffs' Former Employees that violates

their right to privacy.

## REQUEST FOR PRODUCTION NO. 40:

Any and all Documents and Communications reflecting the steps Oculus has taken, or

plans to take, regardless of the degree of certainty, to ensure that Oculus and its employees will

not be in violation of the NDA and/or any employment, confidentiality, non-compete, or

non-disclosure agreement between ZeniMax and/or id and Plaintiffs' Former Employees.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Defendants incorporate all of their General Objections.  Defendants further object to this

33

request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request as assuming the fact that an NDA and/or employment, confidentiality, non-compete, or non-disclosure agreement exists between Plaintiffs and Plaintiffs' Former Employees.

### Requests Related To Plaintiffs' Proprietary Materials

### REQUEST FOR PRODUCTION NO. 41:

All Documents that identify and describe those Persons or entities that have or have had access to Defendants' Products, including but not limited to suppliers, vendors, visitors to Defendants' facilities and displays or demonstrations at electronics or gaming shows or conventions, technicians, partners, consultants, and customers.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object to this request as overly broad and unduly burdensome in requesting *all* Documents that identify and describe Persons or entities that have or have had *access* to Defendants' Products. Defendants further object to this request to the extent it seeks documents and things that Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties. Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject

34

matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this request to the extent that Plaintiffs have failed to identify what "Confidential Information" or "Copyrighted Materials" of Plaintiffs that Defendants are alleged to have misappropriated.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents that constitute, refer to, relate to, or concern in any way any efforts or attempts by Palmer Luckey or Oculus to obtain, use or utilize information, technology or know-how of ZeniMax or id.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 43:**

Any and all Documents concerning any investigation into whether Defendants possess or have used or disclosed materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client

35

privilege and work-product protection.  Defendants further object to this request as vague and

ambiguous in its use of the term "investigation."  Defendants further object to this request to the

extent that Plaintiffs have failed to identify what "Confidential Information" or "Copyrighted

Materials" of Plaintiffs that Defendants are alleged to have misappropriated.

<p align="center">**Requests Related to Financial and Market Info**</p>

**<u>REQUEST FOR PRODUCTION NO. 44</u>:**

Any and all competitive analyses of ZeniMax, id or the virtual reality market.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 44</u>:**

Defendants incorporate all of their General Objections.  Defendants further object to this

request to the extent that it calls for the production of documents subject to the attorney-client

privilege and work-product protection.  Defendants further object to this request as vague and

ambiguous in its use of the term "competitive analysis."  Defendants further object to this request

to the extent that it seeks documents and things not relevant to the subject matter of this litigation,

and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants

further object to this request to the extent that it seeks documents and things already known to

Plaintiffs or information that is available to Plaintiffs through other sources, which are more

convenient, less burdensome, and less expensive, including Plaintiffs' own files.  Defendants

further object to this request to the extent it seeks documents and things outside of Defendants'

possession, custody, or control.

Subject to and without waiving their objections, upon the entry of a protective order,

Defendants will produce non-privileged, non-work product documents, if any, in their possession,

custody, or control that are relevant and responsive to this request.

<p align="center">36</p>

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to identify each version or iteration of Oculus's agreements or contracts with its past, present, or potential suppliers, contractors, and customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *each* version or iteration of Oculus's agreements with its past, present or potential suppliers, contractors, and customers.  Defendants further object to this request to the extent that Plaintiffs have failed to identify what "Confidential Information" or "Copyrighted Materials" of Plaintiffs that Defendants are alleged to have misappropriated.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 46:**

Any and all Documents and Communications related to Oculus's sale or licensing of, or attempted or potential sale or licensing of, any of Defendants' Products, including but not limited to Documents and Communications related to discussions, terms, proposals, arrangements for compensation, and/or agreements between Oculus and any of Epic, Valve, NVidia, Hewlett-Packard, or Dell regarding actual or potential sale or licensing of any Oculus product,

37

and further including any Documents and Communications related to discussions, terms, proposals, arrangements for compensation, and/or agreements between Oculus and Sony regarding actual or potential sale or licensing of any Oculus product as reported in the press in June 2014 (for example, in an article titled "Oculus VR Looking for Help to Build its Headsets" on Gamespot.com, dated June 26, 2014).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 46:

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* documents related to Oculus's sale or licensing of *any* of Defendants' Products.  Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or relevant third parties.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 47:

Any and all Documents concerning business plans, forecasts, financial statements or analyses, or projections concerning Oculus and Defendants' Products, including but not limited to the Oculus Rift.

38

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as overly broad and unduly burdensome in requesting *all* Documents *concerning* business plans, forecasts, financial statements or analyses, or projections *concerning* Oculus and Defendants' Products.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request concerning Defendants' Products.

**REQUEST FOR PRODUCTION NO. 48:**

Documents sufficient to determine Oculus's total profits and revenue, and profits and revenue derived from each of Defendants' Products, including but not limited to the Oculus Rift, for each fiscal year and quarter from Oculus's inception to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

39

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to identify costs incurred by Defendants to develop their Products, including but not limited to the Oculus Rift.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the term "develop."  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 50:**

Any and all Documents relating to pricing or pricing plans for Defendants' Products, including but not limited to the Oculus Rift.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and

40

ambiguous in its use of the term "pricing."  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 51:

Any and all Documents that relate to the commercial viability of Defendants' Products, including but not limited to the Oculus Rift.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 51:

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request as vague and ambiguous in its use of the term "commercial viability."  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

41

**Other Requests**

## REQUEST FOR PRODUCTION NO. 52:

Any and all Documents or Communications relating to the affirmative defenses alleged by Defendants in this Action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 52:

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request as overly broad and unduly burdensome in requesting *all* Documents or Communications *relating to* the affirmative defenses alleged by Defendants in this Action. Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants. Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or relevant third parties.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

## REQUEST FOR PRODUCTION NO. 53:

Any and all Documents and Communications that you identify, reference, use, or rely upon in responding to Plaintiffs' First Set of Interrogatories to Defendants.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 53:

Defendants incorporate all of their General Objections. Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection. Defendants further object to this request to the extent it

42

seeks confidential information or trade secrets of Defendants.  Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or relevant third parties.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product non-public documents cited by Defendants in their written responses to Plaintiff's First Set of Interrogatories to Defendants, if any, in their possession, custody, or control that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents considered or relied upon by a Person with whom you will call to provide expert testimony in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or relevant third parties.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request at the time and to the extent it is required to do so by the Federal Rules of Civil Procedure, the Local Rules or any relevant order by the Court in this matter.

43

**REQUEST FOR PRODUCTION NO. 55:**

All reports, opinions, and curriculum vitae of any Person(s) whom you expect to present at trial as an expert witness.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or relevant third parties.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request at the time and to the extent it is required to do so by the Federal Rules of Civil Procedure, the Local Rules or any relevant order by the Court in this matter.

**REQUEST FOR PRODUCTION NO. 56:**

To the extent not requested by the prior Requests contained herein, all Documents Oculus will, or anticipates that it will, rely upon at trial in this Action, without regard to the date of such Documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent it seeks confidential information or trade secrets of Defendants.  Defendants further object to this request to the extent that it calls for the production of documents subject to

44

the attorney-client privilege and work-product protection.  Defendants further object on grounds that this request is premature as Defendants have not yet obtained discovery from Plaintiffs and/or third parties, and this case is still in its early stages.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request at the time and to the extent it is required to do so by the Federal Rules of Civil Procedure, the Local Rules or any relevant order by the Court in this matter.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to identify and reflect Oculus's Document preservation policies and/or practices, including but not limited to its policies and/or practices in relation to preservation of e-mail and electronically stored Documents and Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Defendants incorporate all of their General Objections.  Defendants further object to this request to the extent that it calls for the production of documents subject to the attorney-client privilege and work-product protection.  Defendants further object to this request to the extent it seeks confidential information.  Defendants further object to this request to the extent that it seeks documents and things not relevant to the subject matter of this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving their objections, upon the entry of a protective order, Defendants will produce non-privileged, non-work product documents, if any, in their possession, custody, or control that are relevant and responsive to this request.

45

Dated: August 8, 2014

Respectfully submitted,

**OCULUS VR, LLC (SUCCESSOR BY MERGER TO OCULUS VR, INC.) and PALMER LUCKEY,**

By Their Attorneys,


/s/ Joshua M. Dalton

E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California 94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA 02110-1726
T: 617.951.8000
F: 617.951.8736

46

**CERTIFICATE OF SERVICE**

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing

Defendants' Responses to First Production of Documents to Plaintiffs to be sent by e-mail

delivery to counsel for Plaintiffs on August 8, 2014 at phillip.philbin@haynesboone.com,

michael.karson@haynesboone.com, and dlpzenimax@skadden.com.


/s/ Joshua M. Dalton
Joshua M. Dalton

47

# EXHIBIT H

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| OCULUS VR, INC. and PALMER LUCKEY, | § § § | |
| Defendants. | § § | |

## ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to the Federal Rules of Civil Procedure, ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively, "Plaintiffs") hereby serve these Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs.

## GENERAL RESPONSES AND OBJECTIONS

Plaintiffs assert the following General Objections. Each individual Response to the Interrogatories is subject to, and limited in accordance with, the following General Objections, which are incorporated as if fully set forth therein. The following General Objections are not waived, or in any way limited by, the Specific Responses and Objections. Although Specific Objections are also interposed in response to individual Interrogatories, Plaintiffs' failure to repeat any part of their General Objections shall not be construed as a waiver of those objections.

1.     The Responses set forth below are for the purposes of discovery only, and Plaintiffs expressly reserve any and all objections they may have to the relevance, competence, materiality, admissibility, or use at deposition, hearing or trial of any information stated, produced, identified, or referred to herein. Plaintiffs also expressly reserve their right to rely, at

1

any later time including at deposition, hearing or trial, upon additional documents or information not included in the Specific Responses.

2.     An objection to a specific Interrogatory or a willingness to provide a response, does not imply, and should not be construed as an acknowledgement, that complete answers to that Interrogatory are available or exist.

3.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they purport to impose discovery obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, or any other applicable law or rule.

4.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are vague, ambiguous, non-specific or confusing and, thus, not susceptible to a reasoned interpretation or response.

5.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they seek information that is not relevant to the claims or defenses of either party, and thus not reasonably calculated to lead to the discovery of admissible evidence.

6.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are duplicative, cumulative, and/or seek information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome and/or less expensive.

7.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent they are overly broad, overly expansive, oppressive and/or unduly burdensome and would impose upon Plaintiffs an unreasonable burden of inquiry, or to the extent they seek information not within Plaintiffs' possession, custody or control.  Plaintiffs also object to the Interrogatories,

Definitions, and Instructions as unduly burdensome to the extent that the information requested is within the knowledge of Defendants, can be determined by referring to documents within the possession, custody or control of Defendants, is within the public domain, or is otherwise more readily or equally available to Defendants and thus more conveniently obtained by Defendants.

8.     The Responses set forth below are based upon Plaintiffs' interpretation of the language used in the Interrogatories, Definitions, and Instructions.  Plaintiffs reserve their right to amend or to supplement their Responses to the Interrogatories in the event Defendants assert, or the Court adopts, an interpretation that differs from Plaintiffs' interpretation.

9.     Plaintiffs object to Defendants' Definition of "ZeniMax," "Plaintiffs," "you," and "your" in Definition No. 1 and "id Software" in Definition No. 2 as overly broad and/or unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  For purposes of answering these Interrogatories, Plaintiffs use the term "ZeniMax" to mean ZeniMax Media Inc., "id Software" to mean id Software LLC, and "Plaintiffs" to mean both ZeniMax Media Inc. and id Software LLC, only.

10.    Plaintiffs object to Defendants' Definition of "identify," "identifying," "identity," or "identification" as unduly burdensome, beyond the discovery obligations set forth in the Federal Rules of Civil Procedure, and not reasonably calculated to lead to the discovery of admissible evidence.  For the purposes of answering these Interrogatories, Plaintiffs use and interpret the terms "identify," "identifying," "identity," or "identification" according to their plain meaning and common sense usage.

11.    Plaintiffs object to the Interrogatories to the extent they seek confidential and proprietary information, including but not limited to trade secrets, source code, and competitively sensitive business information, particularly where the marginal benefits of

3

producing such information are outweighed by the burden of producing such highly sensitive materials. Plaintiffs further object to the Interrogatories to the extent they seek confidential and proprietary information absent an agreed-upon Protective Order.

12.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they call for the production of information or documents subject to a claim of privilege or immunity, including the attorney-client privilege, the attorney work-product doctrine, or any other applicable evidentiary privilege or immunity from disclosure. Nothing contained in these Responses is intended to be nor should be considered as a waiver of any attorney-client privilege, work-product protection, or any other applicable evidentiary privilege or immunity. The inadvertent production of any response or document subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

13.     The Responses and Objections herein are based on Plaintiffs' present knowledge, information and belief. Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct or clarify any of the Responses and/or Objections herein, and indeed Plaintiffs expect to amend and revise these Responses as discovery proceeds in this action.

Each of the foregoing General Responses and Objections are incorporated by reference into each and every Specific Response set forth below. Subject to the General Responses and Objections, and without waiver, modification or limitation thereof, Plaintiffs' Specific Responses and Objections to the Interrogatories are set forth below.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify each person known to you or your attorney who has or is believed to have any knowledge of any facts pertaining to any claims, defenses, facts or allegations contained in the Complaint and/or Answer. With respect to each person, said identification should include, without limitation:

(a) his or her full name;

(b) his or her present or last-known addresses;

(c) his or her present or last-known telephone numbers; and

(d) his or her present or last-known position and business affiliation.

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature, as discovery has just commenced. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Defendant Oculus VR, Inc. ("Oculus"), and not Plaintiffs, employs the majority of persons with knowledge of the circumstances of this this case, including several of Plaintiffs' former employees.

Subject to and without waiving these objections, Plaintiffs respond as follows:

5

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Persons having knowledge of the "claims, defenses, facts or allegations contained in the Complaint and/or Answer" may include the persons listed below:

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|------|----------------------------------|------------------------------------------------------------------|
| Abrash, Michael | Chief Scientist, Oculus | REDACTED REDACTED |
| Andonov, Vlatko | President, Bethesda Softworks | REDACTED REDACTED |
| Antkow, Christian | Engineer, Oculus | REDACTED REDACTED |
| Antonov, Michael | Chief Software Architect, Oculus | REDACTED REDACTED |
| Carmack, John | Chief Technical Officer, Oculus | REDACTED REDACTED |
| Duffy, Robert | Programming Director, id Software | REDACTED REDACTED REDACTED |
| Forsyth, Tom | Software Architect, Oculus | REDACTED REDACTED |
| Hollenshead, Todd | Former President, id Software | REDACTED REDACTED |
| Hooper, Matthew | Director of Development, Oculus | REDACTED REDACTED |

6

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Iribe, Brendan | Chief Executive Officer, Oculus | REDACTED REDACTED |
| Kang, Katherine | Co-founder, Armadillo Aerospace | REDACTED REDACTED |
| Kennickell, Gloria | Engineer, Oculus | REDACTED REDACTED |
| Kim, Andrew | Director of Business Development, Oculus | REDACTED REDACTED |
| Kim, Jason D. | Product Manager, Oculus | REDACTED REDACTED |
| Leder, James | Chief Operating Officer, ZeniMax | REDACTED REDACTED |
| Luckey, Palmer | Founder, Oculus | REDACTED REDACTED |
| Malamed, Laird | Chief Operating Officer, Oculus | REDACTED REDACTED |
| McCauley, Jack | Vice President of Engineering, Oculus | REDACTED REDACTED |
| Mitchell, Nate | Vice President of Product, Oculus | REDACTED REDACTED |

7

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|------|------|------|
| Patel, Nirav | Engineer, Oculus | REDACTED REDACTED |
| Thompson, Tracey | Public Relations Director, ZeniMax | REDACTED REDACTED |
| van Waveren, Jan Paul | Senior Engineer, Oculus | REDACTED REDACTED |
| Willits, Tim | Studio Director, id Software | REDACTED REDACTED |
| Wright, Jonathan E. | Senior Engineer, Oculus | REDACTED REDACTED |
| Zuckerberg, Mark | Chief Executive Officer, Facebook, Inc. | REDACTED REDACTED |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to further amend the foregoing Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response.

**INTERROGATORY NO. 2:**

Identify each person whom Plaintiffs expect to provide sworn testimony in this matter, at trial or otherwise, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. For each witness you expect to call to offer evidence you believe is admissible under Federal Rules of Evidence 701, 702, 703, 704, or 705, include in your description of the subject matter on which each witness is expected to testify, the substance of the facts to which each such witness is expected to testify, the substance of any opinions to which each such witness is expected to testify, and a summary of the grounds for each such opinion.

8

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.  Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity.  Plaintiffs also object to this Interrogatory as premature with respect to its request for "the substance of the facts to which each such witness is expected to testify," "the substance of any opinions to which each such witness is expected to testify," and "a summary of the grounds for each such opinion," particularly given that discovery has not commenced and the Parties have not yet designated expert witnesses or exchanged witness lists.  Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Oculus, and not Plaintiffs, employs the majority of persons who will testify or provide opinions in this matter.  In addition, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 1.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

"[P]erson[s] whom Plaintiffs expect to provide sworn testimony in this matter" and "witness[es] [Plaintiffs] expect to call to offer evidence" include the following persons:

| Name | Subject Matter |
|---|---|
| Abrash, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Andonov, Vlatko | Relationship between the Parties |
| Antkow, Christian | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Antonov, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

9

| Name | Subject Matter |
|---|---|
| Carmack, John | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Forsyth, Tom | Relationship between the Parties;<br>Defendants' product development |
| Hollenshead, Todd | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development |
| Hooper, Matthew | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Iribe, Brendan | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Kang, Katherine | Relationship between the Parties;<br>Plaintiffs' product development;<br>Defendants' product development |
| Kennickell, Gloria | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Kim, Andrew | Defendants' marketing, business practices, and finances |
| Kim, Jason D. | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Leder, James | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Plaintiffs' business practices and finances |
| Luckey, Palmer | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Malamed, Laird | Relationship between the Parties;<br>Defendants' product development;<br>Defendants' business practices and finances |
| McCauley, Jack | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

10

| Name | Subject Matter |
|---|---|
| Mitchell, Nate | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Patel, Nirav | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| van Waveren, Jan Paul | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Wright, Jonathan E. | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Zuckerberg, Mark | Defendants' product development;<br>Defendants' product demonstrations;<br>Acquisition of Oculus by Facebook, Inc. |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to supplement this Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response. Plaintiffs further reserve the right to rely in this litigation on the persons identified in this Response for testimony outside of the respective subject matter(s) identified in this Response.

**INTERROGATORY NO. 3:**

Identify all proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs further object to this Interrogatory as premature, given that discovery has

11

just commenced and the Parties have not yet designated experts.  In addition, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants were provided with ZeniMax virtual reality ("VR") Technology.  ZeniMax VR Technology consists of Plaintiffs' valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience.  ZeniMax VR Technology includes but is not limited to confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to commercially-viable virtual reality headsets, including the following:

(i)     interfaces between virtual reality headsets and interactive entertainment content and/or software;

(ii)    sensor and optical component calibration;

(iii)   latency reduction;

(iv)    low-latency head-tracking, including positional and absolute tracking;

(v)     head and neck modeling;

(vi)    predictive tracking;

(vii)   chromatic aberration reduction;

(viii)  distortion, motion blur, and jitter/judder reduction;

(ix)    pre-warping of displayed images;

(x)     combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience;

(xi)    minimizing or removing the "screen door" effect on the display;

(xii)   minimizing simulator sickness and/or motion sickness for users.

12

The ZeniMax VR Technology provided to Defendants also includes components of "DOOM 3: BFG Edition" computer program code.

Certain of Plaintiffs' former employees — specifically, John Carmack, Jan Paul van Waveren, Jonathan Wright, Jason Kim, Gloria Kennickell, Christian Antkow, and Matt Hooper — provided certain ZeniMax VR Technology to Defendants while they were still employed by Plaintiffs. They may have provided further ZeniMax VR Technology to Defendants after those employees were recruited for employment and hired by Oculus. In addition, certain ZeniMax VR Technology was identified in e-mail communications from certain of Plaintiffs' former employees to Defendants.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

**INTERROGATORY NO. 4:**

Identify with particularity the "ZeniMax VR Technology" referred to in the Complaint, including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed by ZeniMax employees, or otherwise allegedly owned by ZeniMax. With respect to each alleged technology, said identification should include without limitation a specific description of every component of the technology, how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift,SDK, or any other Oculus VR product.

13

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that Defendants, and <u>not</u> Plaintiffs, are in the best position to know "what component or combination of components are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to the request for "a specific description of every component of the technology, how the components operate, how the components are combined, [and] what component or combination of components renders the technology novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 3.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and

14

may amend and revise this Response in the course of litigation to reflect that additional

information.  Additional information responsive to this Interrogatory may also be provided in

Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in

this case.

## INTERROGATORY NO. 5:

Identify with particularity all trade secrets ZeniMax alleges Defendants misappropriated, including all "ZeniMax Trade Secrets" referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

(a) "confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset" referenced in the Complaint; and/or

(b) the "enforceable trade secret[] in the confidential, proprietary components of ZeniMax's "DOOM 3: BFG Edition" computer program code" referenced in the Complaint. With respect to each such alleged trade secret, said identification should include without limitation a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, what component or element or combination of components or elements renders the secret novel or unique, and what component or element or combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product.

## RESPONSE TO INTERROGATORY NO. 5:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-

client privilege, the work product doctrine or any other applicable evidentiary privilege or

immunity.  Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that

Defendants, and <u>not</u> Plaintiffs, are in the best position to know "what component or element or

<div align="center">15</div>

combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to its request for "a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, [and] what component or element or combination of components or elements renders the secret novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatories No. 3 and 4.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

16

Dated: August 11, 2014

Respectfully submitted,

_____

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*

17

## CERTIFICATE OF SERVICE

I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing *ZeniMax Media Inc. and id Software LLC's Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs* to be served on Defendants by electronic mail to the following addresses: lcarter@carterscholer.com, lstahl@carterscholer.com, and oculus-zenimax@bingham.com.

Dated: August 11, 2014

James Y. Pak

18

## **VERIFICATION**

I, James L. Leder, state under penalty of perjury that I have read the foregoing Responses to Interrogatory Nos. 1, 2, 3, 4, and 5, and that based upon matters within my personal knowledge and upon information that has been assembled and provided to me, the foregoing responses are correct, to the best of my knowledge and belief.

Dated: August 11, 2014

James L. Leder
Chief Operating Officer, ZeniMax Media Inc.

on behalf of Plaintiffs
ZeniMax Media Inc. and id Software LLC

# EXHIBIT I

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

**BINGHAM**

Geoffrey M. Howard
Direct Phone:  +1.415.393.2485
Direct Fax:     +1.415.262.9212
geoff.howard@bingham.com

August 22, 2014

**Via E-Mail** *(anthony.sammi@skadden.com)*

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Tony:

We are in receipt of Plaintiffs ZeniMax Media, Inc. and id Software, LLC's (collectively, "Plaintiffs") Objections and Responses to Defendants Oculus VR, LLC (successor by merger of Oculus VR, Inc.) and Palmer Luckey's (collectively, "Defendants") First Set of Interrogatories.  Among numerous deficiencies, the Objections and Responses fail to identify the trade secrets that Plaintiffs allege Defendants misappropriated.  For this and other reasons discussed more fully below, Plaintiffs have failed to provide adequate responses to Defendants' First Set of Interrogatories.  Pursuant to Local Rule 7.1, we propose a telephone conference to resolve these issues.

\*       \*       \*

**Interrogatory No. 1**

Defendants are entitled to learn the identity of those individuals (whether or not employees of Plaintiffs) who are most knowledgeable about the facts relevant to this litigation.  Although Plaintiffs have identified twenty-five individuals that "may" have knowledge about facts relevant to this litigation, all but one of those individuals is either an employee of Oculus VR, Facebook, Plaintiffs or an affiliate of Plaintiffs. Conspicuously absent from Plaintiffs' response is a complete list of relevant third parties that may have knowledge about facts relevant to the litigation.  As such, as written, Plaintiffs' response is incomplete and evasive. See Fed. R. Civ. Proc. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

Without waiving Defendants' right to receive a complete response to this interrogatory as written, Plaintiffs must supplement their response to Interrogatory No. 1 to identify all persons, including third parties, that Plaintiffs believe may have knowledge about facts relevant to this litigation.  Please confirm that Plaintiffs will supplement their responses accordingly no later than one week from today.

**Interrogatory Nos. 3, 4 and 5**

Plaintiffs filed a Complaint alleging misappropriation of trade secrets.  Plaintiffs must identify with particularity all trade secrets that Defendants allegedly misappropriated, including without limitation the "ZeniMax VR Technology" referred to in the Complaint.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

P. Anthony Sammi, Esq.
August 22, 2014
Page 2


*See, e.g., StoneEagle Servs., Inc., v. Valentine*, No. 12-1687, 2013 WL 9554563 (N.D. Tex. June 5, 2013); *U.S. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. Feb. 15, 2013)). Defendants cannot proceed with discovery or otherwise respond to the claims without knowing what proprietary technology is at issue. To that end, we have asked you several times in our prior letters and conversations to identify the alleged trade secrets. We then served Interrogatories that asked Defendants to identify the alleged proprietary technology that formed the basis of the Complaint. The Objections and Response, however, repeat the generic categories of "know-how" alleged in the Complaint without identifying any particular technology that Plaintiffs believe Defendants stole. Instead, Plaintiffs state that they hope to ascertain through discovery what technology was actually stolen.

As this Court recently confirmed, there is a "growing consensus" across courts "requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue." *StoneEagle*, 2013 WL 9554563 at *2 (*citing Mitek*, 289 F.R.D. 244). Following courts in multiple jurisdictions, the *StoneEagle* court granted defendants' motion for order requiring pre-discovery identification of trade secret claims. *Id.* at *5. As the *Mitek* court articulated, pre-discovery identification of trade secrets is essential to weeding out meritless trade secret claims and avoiding needless discovery disputes:

> [Pre-discovery identification of trade secrets] allows [1] "well-investigated claims" to proceed while discouraging meritless trade secret claims ... [2] "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope" ... [3] provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense ... [and] [4] allows the Court to utilize its resources more effectively by exposing the viable claims, permitting early dismissal of the nonviable claims, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses.

*Mitek*, 289 F.R.D. at 248 (citations omitted).

Plaintiffs' response to Interrogatory No. 3 (which Plaintiffs improperly incorporated by reference into their responses to Interrogatory Nos. 4 and 5) is just the type of non-answer that this very Court has described as not satisfying the "reasonable particularity" standard. *See StoneEagle*, 2013 WL 9554563 at *4 (identifying (1) "laundry list of general categories", (2) "lengthy, descriptive, but non-specific paragraphs", (3) "generally listing software, algorithms, and processes that a plaintiff developed", (4) "disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets", and (5) "concepts, elements, or components that make up designs" as not satisfying the reasonable particularity standard).

Plaintiffs' responses to Interrogatory No. 3 (and thus, Interrogatory Nos. 4 and 5) parrot the language from the Complaint by identifying high-level, generic categories such as

P. Anthony Sammi, Esq.
August 22, 2014
Page 3

"know-how" and "concepts", disclosures that only reveal the end results of, or functions performed by, the claimed proprietary information, and concepts, elements, or components that make up designs. This fails to meet the "reasonable particularity" standard by a wide margin.

Providing a litany of whole areas of technology, general challenges faced in creating a VR product, and other vague concepts does nothing to actually identify any trade secrets, let alone how Plaintiffs allege any specific trade secrets were misappropriated. Pre-discovery identification of allegedly misappropriated trade secrets is the only way that Defendants can get fair notice of the trade secret misappropriation charges, and thus begin preparing relevant defenses. Indeed, many potential defenses to a trade secret claim – *e.g.*, that the accused party did not actually receive the information from the complaining party, that the accused party did not misuse the information, that the accused party had already developed the same information independently, or that the information is not secret – depend on the accused party having adequate notice of what it is accused of misappropriating.

Where both trade secret and copyright claims are at issue, "reasonable particularity" requires that Plaintiffs provide a list that (1) separately breaks out, for each Defendant, each of the individual alleged trade secrets that Plaintiffs claim Defendants have misappropriated; (2) identifies, for each Defendant, all such claims with sufficient particularity so that the reader understands how each such claim differs from public domain information. Thus, Plaintiffs must, as already requested, provide a list that:

> (1) separately breaks out, for each Defendant, each of the individual alleged trade secrets that Plaintiffs claim that Defendant misappropriated including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed or owned by Plaintiffs; and

> (2) identifies, for each Defendant, all such claims with sufficient particularity so that the reader understands how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift, SDK, or any other Oculus VR product.

Additionally, Plaintiffs' response to Interrogatory No. 3 is improper because it is not clear if it answers the question asked. Interrogatory No. 3 asks for Plaintiffs to identify all proprietary information Plaintiffs allegedly provided to Defendants pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint. Plaintiffs, however, do not distinguish between information that they claim is "confidential" information under the so-called NDA as opposed to information that they claim is a "trade secret."

Please confirm whether Plaintiffs are alleging that all information disclosed under the so-called NDA was a "trade secret" and therefore that Plaintiffs did not disclose any

P. Anthony Sammi, Esq.
August 22, 2014
Page 4

confidential, non-trade secret information under the so-called NDA.  If Plaintiffs are drawing any lines between categories of information labeled as "trade secret" and those labeled as "confidential, non-trade secret" information, then Plaintiffs must supplement their responses to identify where those lines should be drawn.

Finally, Plaintiffs' response to Interrogatory No. 3 (as incorporated by reference into their responses to Interrogatory Nos. 4 and 5) that "certain" of their former employees provided "certain" "VR Technology" to Defendants and that "certain" of that technology "was identified in e-mail communications from certain of Plaintiffs' former employees to Defendants" lacks sufficient specificity to convey which of the seven former employees are alleged to have disclosed trade secret information to Defendants or what trade secret information is alleged to have been disclosed.  Similarly, the e-mail communications between Defendants and the former employees that Plaintiffs purport to have and the alleged trade secret information disclosed in those e-mails should be readily identifiable, but Plaintiffs fail to disclose it.

Plaintiffs must supplement their responses to identify which of the seven former employees they allege disclosed trade secret information to Defendants and identify – with the specificity the law requires – what trade secret information was allegedly disclosed.  Plaintiffs must also supplement their responses to identify the "email communications" referenced in their responses, including what trade secret information was disclosed in those e-mails.

Please confirm that Plaintiffs will supplement their responses accordingly no later than one week from today.

<div align="center">*       *       *</div>

In the event that we do not receive confirmation that Plaintiffs will supplement their responses to Interrogatory Nos. 1, 3, 4 and 5, we will have no choice but to seek appropriate relief from the Court.

Nothing in this letter waives any of Defendants' rights, all of which are expressly reserved.

Please feel free to contact me with any questions.

Sincerely yours,

*Geoffrey M. Howard / L.N.*

Geoffrey M. Howard

cc:     Joshua M. Dalton, Esq.

# EXHIBIT J

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August 28, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Responses to Defendants' First Set Of Interrogatories
      *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

I write in response to your letter of August 22, 2014 regarding Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs.

As you know, Defendants served their First Set of Interrogatories to Plaintiffs on July 11, 2014. Plaintiffs timely responded and objected to those Interrogatories, and served their Responses and Objections on August 11, 2014. At the time Plaintiffs served those Responses and Objections (and indeed, as I write this letter), Defendants had not made any substantive production of documents in response to Plaintiffs' First Set of Requests for Production and Inspection to Defendants on July 9, 2014.[1] Nor have any depositions been taken in this action.

Accordingly, in those responses, Plaintiffs stated as follows:

The Responses and Objections herein are based on Plaintiffs' present knowledge, information and belief. Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct or clarify any of the Responses and/or Objections herein, and indeed

---

[1]  Plaintiffs commenced their rolling production of documents with an initial production on August 22, 2014. To date, Defendants have not made any substantive production of documents.

Geoffrey Howard
August 28, 2014
Page 2

> _Plaintiffs expect to amend and revise these Responses as discovery_
> _proceeds in this action._

(Plaintiffs' Responses & Objections, ¶ 13 (emphasis added).)

With that background as context, I now address the purported concerns raised by your letter:

With respect to Interrogatory No. 1, which requested that Plaintiffs identify persons with knowledge of the facts and allegations set forth in the Complaint and Answer, your letter acknowledges that Plaintiffs identified no fewer than twenty-five (25) persons, including one individual who is not employed by any party. That is a very complete response given that Plaintiffs have not yet had any substantive document or deposition discovery in this action. Your contention that the response is "evasive" is self-discrediting. Plaintiffs expect to supplement that response as discovery continues in this action, including by identifying additional third-party individuals who have knowledge of your clients' wrongful conduct.

With respect to Interrogatories No. 3, 4, and 5, which respectively request that Plaintiffs identify proprietary information provided to Defendants under the NDA, ZeniMax's VR Technology, and trade secrets misappropriated by Defendants, your letter asserts that Plaintiffs' response "parrot[s] the language from the Complaint." In view of the fact that Plaintiffs filed a highly detailed and particularized Complaint without the benefit of pre-suit discovery, and as yet have had no substantive document or deposition discovery in this action, Defendants should not be surprised that Plaintiffs' response to these interrogatories — at this very early stage in the proceedings — substantially tracks the information provided in Plaintiffs' Complaint. As discovery proceeds in this action, Plaintiffs expect to supplement those responses by identifying additional facts regarding Defendants' misappropriation of Plaintiffs' trade secrets and proprietary information in violation of the NDA.

More generally, there is no need for Defendants to seek the Court's imposition of any "pre-discovery identification of trade secrets" procedure here. Defendants had the Complaint for more than two months before the parties filed their Joint Proposal for Contents of Scheduling and Discovery Order (ECF No. 31) on July 28, 2014, and never proposed including any such procedure. Further, Texas law imposes no such pre-discovery identification requirement, and even if it did, Plaintiffs have already identified the trade secrets at issue with "reasonable particularity." The Complaint describes the trade secrets in detail, and specifies how and when they were conveyed to Defendants, including in e-mail communications

Geoffrey Howard
August 28, 2014
Page 3

between specified personnel for Plaintiffs and Defendants and via a file transfer protocol site set up to transfer certain identified source code. Accordingly, your assertion that the Complaint describes only "high-level generic categories such as 'know-how' and 'concepts'" is not correct. Your further demand that Plaintiffs identify specific e-mails is also premature in view of the fact that Defendants have not yet produced any e-mails.

Your purported concern that additional detail should be required now in order to "avoid[] needless discovery disputes" and to "fram[e] the appropriate scope of discovery" is misplaced. Those concerns may be implicated in cases involving different facts, but in this action, there can be no doubt whatsoever regarding the subject matter of Plaintiffs' claims. Defendant Oculus has <u>one</u> product, a virtual reality headset. In April 2012, Mr. Luckey had a commercially non-viable prototype of that headset. By the end of May 2012, Mr. Luckey had formalized a NDA with Plaintiffs, and a new version of that headset — modified to include Plaintiffs' proprietary technology — was being demonstrated to acclaim at an industry conference. By July 2012, just weeks later, Plaintiffs were seeking compensation from Mr. Luckey and Oculus for their contribution to this commercial venture (and no compensation has ever been provided). All of these facts are set forth in detail in Plaintiffs' Complaint. If Defendants profess that they do not "know[] what proprietary technology is at issue" in this case, they are being disingenuous.

Nor is it unreasonable for Plaintiffs here to "hope to [further] ascertain through discovery what technology was actually stolen." Some of the technology provided to Defendants was provided to Defendants via e-mail or as part of computer program code. Much of this email was sent by Plaintiffs' former employees now employed by Defendants. Moreover, as Defendants are well aware, there were also informal consultations throughout the relevant period between Plaintiffs and Defendants' personnel. We expect that discovery will clarify the full scope of what proprietary information was provided by Plaintiffs and how Defendants made use of it. In this regard, I note that Plaintiffs are unable to confer with John Carmack, Technical Director for id Software during the relevant period, because Mr. Carmack is now employed by Oculus. We expect that the deposition of Mr. Carmack and other former employees of Plaintiffs now employed by Oculus will also provide important insights about what proprietary information Defendants received from Plaintiffs and how they made use of it.

Your citation to the court's slip opinion in *StoneEagle Servs. Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ignores important distinctions between that action and this one. The *StoneEagle* case was one of several related actions, and the parties in that action were able to make use of

Geoffrey Howard
August 28, 2014
Page 4

discovery that had already been conducted in a related action that had commenced a
year earlier. Accordingly, Magistrate Judge Horan concluded that "the unique
history of this case," *id.* at *4, made it appropriate to require the plaintiffs there to
provide further specificity as to the trade secrets at issue. Here, Plaintiffs have had
no meaningful document or deposition discovery, and it is appropriate for Plaintiffs
to have the opportunity to supplement their responses to Defendants' contention
interrogatories as discovery proceeds.[2]

I am traveling this week but will be prepared to discuss these issues by
telephone at some mutually convenient time during the week of September 2, 2014,
if you believe that any further discussion of these matters is necessary. (We believe
it is not, including for the reasons stated above.)

I would add that if Defendants are seeking to use a cynical profession of
bafflement as to the subject matter of this action as a means of delaying their
document production in this action, Plaintiffs will move to compel and seek
appropriate sanctions. Defendants have been squarely informed of what is at issue,
the Court has set a schedule for discovery, and it is time for that discovery to move
forward.

Very truly yours,

P. Anthony Sammi

---

[2]   Your reference to *U.S. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. 2013)
similarly ignores important distinctions between that action in this one. In *Mitek*, the defendant
objected to generic trade secret disclosures that included such non-specific designations as the
"[i]nvention," "commercial information related to the … [invention]," and "proprietary
algorithms, concepts . . . and development plans related to the [invention]." (*See U.S. Auto.
Assoc. v. Mitek Sys., Inc.*, Case No. 5:12-cv-00282 (W.D. Tex.), Dkt. No. 51 at 3.) Here,
Plaintiffs' identification of trade secrets — both in Plaintiffs' Complaint and in Plaintiffs'
responses and objections to interrogatories — includes a highly particularized list of specific
intellectual property, not merely "high-level categories." (*Id.*) The defendant in *Mitek* also
requested pre-discovery identification of trade secrets because it purportedly did not "understand
how the trade secret claims differ[ed] from the patent claims" in that case, which necessarily
involved non-secret information. (*Id.* at 2.) Here there is no such confusion.

# EXHIBIT K

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE
OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

September 3, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Deficiencies in Defendants' Interrogatory Responses
     *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

I write pursuant to N.D. Tex. L.R. 7.1(a), (h) on behalf of Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") to request a telephonic meet and confer regarding Defendants' responses to Plaintiffs' First Set of Interrogatories.

Specifically, we may need to confer regarding the following issues:

1.    Failure to Identify Documentary Support
      (*Interrogatories No. 1-8*)

In each of its Interrogatories No. 1 through 8, ZeniMax requests the factual basis for certain affirmative defenses pleaded in Defendants' Answer, along with an identification of documents in support of that affirmative defense. Defendants' responses to these Interrogatories were not accompanied by a document production, and do not contain document citations. Please confirm that Defendants will promptly amend or supplement their responses to Interrogatories No. 1 through 8 to include the requested identification of documents.

Geoffrey Howard
September 3, 2014
Page 2


2.    Applicability of Factual Allegations
      *(Interrogatories No. 7 and 8)*

In its Interrogatories No. 7 and 8, ZeniMax requests the factual basis for Defendants' Tenth and Thirteenth Affirmative Defenses, respectively. Defendants' Tenth Affirmative Defense alleges that Plaintiffs provided Defendants "express or implied permission" to use their trademarks. (Answer, at p. 29.) Defendants' Thirteenth Affirmative Defense alleges that Plaintiffs' request for statutory damages and attorney's fees is barred. (*See id.*)

It is unclear whether Defendants' response to each of Interrogatories No. 7 and 8 is intended to be limited to a certain subset of ZeniMax's trademarks and copyrights. For example, Defendants' response to Interrogatory No. 7 alleges facts related to Plaintiffs' trademark in *DOOM 3: BFG Edition*, but does not mention Plaintiffs' other trademarks listed in the Complaint. Similarly, Defendants' response to Interrogatory No. 8 alleges facts related only to the ZeniMax VR Testbed Code and ZeniMax VR Implementation Code, but does not mention Plaintiffs' copyright registration in the *DOOM 3: BFG Edition* computer program.

Please confirm which of ZeniMax's trademarks and copyrights the factual allegations contained in Defendants' responses to Interrogatory No. 7 and 8 are intended to address.

3.    Failure to Provide the Requested Information; Incomplete Responses
      *(Interrogatory No. 9)*

In its Interrogatory No. 9, ZeniMax requests information about demonstrations of Oculus's products, including identification of certain individuals who were involved in or attended those demonstrations. In response, Defendants attached as Exhibit A to their Responses a chart listing demonstrations of the Rift. That chart only generally describes the "Attendees" or "Non Oculus VR Employees Involved in Conducting" demonstrations of the Rift without identifying any specific individuals (*i.e.*, the names of the "MTBS3D forum members" or game conference attendees who viewed Defendants' product demonstrations). ZeniMax must have this information at an early stage of the case in order to efficiently conduct third-party discovery. Accordingly, if Defendants have the names of individuals who attended or were involved in particular demonstrations, it must provide them. Please confirm whether Defendants will amend or supplement their response to this Interrogatory.

*            *            *

Geoffrey Howard
September 3, 2014
Page 3


Please advise whether Defendants will be amending and/or supplementing their responses by September 10, 2014, or whether Defendants will be otherwise available to meet and confer to discuss these issues at a mutually convenient time.  I look forward to your response.

Very truly yours,

P. Anthony Sammi

# EXHIBIT L

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE
OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

September 3, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:   Deficiencies in Defendants' Responses to Document Requests
*ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

I write pursuant to N.D. Tex. L.R. 7.1(a), (h) on behalf of Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") to request a telephonic meet and confer regarding Defendants' deficient responses to Plaintiffs' First Set of Requests for Production and Inspection.

Specifically, I would like to confer to address the following issues:

1.      Refusal to Produce Source Code and Related Materials
        *(Requests for Production No. 5, 28, 29, 31)*

In this action, ZeniMax contends that Defendants have misappropriated its confidential programming code and infringed on its copyrights in source code and computer programs.   (Compl. ¶¶ 105-127.)   Defendants are in possession of ZeniMax's source code (*see, e.g., id.* ¶¶ 43-44) and Defendant Oculus has hired a number of employees who may be re-implementing source code that had been previously written while working for ZeniMax.   (*Id.* ¶ 103.)   Accordingly, in its Requests for Production No. 5, 28, and 29, ZeniMax requests the source code for Defendants' products, including any revisions or additions to Defendants' code.   For the same reasons, in its Request No. 31, ZeniMax also requests any documents concerning the destruction of source code.

Geoffrey Howard
September 3, 2014
Page 2

It appears that Defendants are refusing to produce the source code and other documents that ZeniMax requested in the above-referenced Requests. Please confirm whether or not Defendants will produce documents in response to Document ZeniMax's Requests No. 5, 28, 29, and 31.

2.  Refusal to Produce Documents Re: Former ZeniMax Employees
    (*Requests for Production No. 34-40*)

In its Requests for Production No. 34 through 40, ZeniMax requests certain information about the activities of its former employees who are now working at Oculus. Between August 2013 and February 2014, Defendants hired a number of senior employees of ZeniMax — including id Software's Technical Director, John Carmack — who worked on virtual reality technologies and had access to ZeniMax's trade secrets and copyrighted materials. (Compl. ¶¶ 93-98, 113, 122.) ZeniMax is entitled to inquire into the terms of employment for its former employees now working at Oculus, and into the specific activities those employees performed while working there. Please confirm whether or not Defendants will produce documents in response to ZeniMax's Requests No. 34 through 40.

3.  Refusal to Produce Documents Regarding Access to Technology
    (*Requests for Production No. 41 and 45*)

To understand the scope of any infringement or misappropriation of ZeniMax's intellectual property, and to efficiently conduct third-party discovery, it is critical that ZeniMax obtain identification of all persons or entities who have had access to their technology. Yet, Defendants refuse to provide any documents identifying their suppliers, contractors, customers, or other persons who had or have access to ZeniMax's intellectual property. Please confirm whether or not Defendants will produce documents in response to ZeniMax's Requests No. 41 and 45.

4.  Refusal to Produce Documents Regarding Prior Investigations
    (*Document Request No. 43*)

In its Request for Production No. 43, ZeniMax requests documents concerning any investigation conducted by Defendants into whether they possess, or have used or disclosed, ZeniMax's intellectual property. Defendants cannot withhold non-privileged documents and information regarding their investigation into these matters. Accordingly, please confirm whether or not Defendants will produce documents in response to ZeniMax's Request No. 43.

\*        \*        \*

Geoffrey Howard
September 3, 2014
Page 3


Please advise whether Defendants will be amending and/or supplementing their responses by September 10, 2014, or whether Defendants will be otherwise available to meet and confer to discuss these issues at mutually convenient time.  I look forward to your response.

Very truly yours,

P. Anthony Sammi

# EXHIBIT M

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
―――
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
―――
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

September 3, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  First Set of Requests for Production to Facebook, Inc.
     *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

In view of the fact that Facebook, Inc. ("Facebook") was added as a defendant in this action on August 28, 2014, Plaintiffs ZeniMax Media Inc. and id Software LLC hereby propound their First Set Of Requests For Production And Inspection, which were served on Defendants Oculus and Palmer Luckey on July 9, 2014, to Defendant Facebook. Please serve Facebook's responses and objections to those Requests within the time provided by the Rules.

This letter and the enclosed Requests are directed to you based on our understanding that you and your firm are representing Facebook in this action, even though you have not yet entered your appearance on behalf of Facebook. In that regard, please be advised that Plaintiffs would assent to the Court's extending the scope of your and your colleagues' pro hac vice admission in this action to include that additional representation. If, however, Facebook is represented by other counsel in this action, please inform us of the identity of that counsel, so that we may either serve that counsel or make arrangements for service on Facebook itself. If you are representing Facebook, please confirm that Facebook agrees to service by e-mail in this action on the terms previously agreed to by the other parties.

Very truly yours,

P. Anthony Sammi

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and | § | |
| ID SOFTWARE LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| v. | § | |
| | § | |
| OCULUS VR, INC. and | § | |
| PALMER LUCKEY, | § | |
| | § | |
| Defendants. | § | |

**ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S FIRST SET OF REQUESTS FOR PRODUCTION AND INSPECTION TO OCULUS VR, INC. AND PALMER LUCKEY**

Pursuant to Federal Rules of Civil Procedure 26 and 34, ZeniMax Media Inc. and id Software LLC, by and through their attorneys, hereby direct the following Requests for Production to Oculus VR, Inc. and Palmer Luckey. Plaintiffs request that Defendants produce or make the requested documents and things available for inspection and/or copying in accordance with the Definitions and Instructions set forth below, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036, within 30 days after service hereof.

**REQUESTS FOR INSPECTION**

**REQUEST FOR INSPECTION NO. 1:**

All iterations of the Oculus Rift and its Software Development Kit in an operable condition, including but not limited to those versions or iterations created prior to April 2012, whether consumer-facing or otherwise.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All Communications between Plaintiffs and Palmer Luckey and/or Oculus from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 70, 74, 75, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**REQUEST FOR PRODUCTION NO. 2:**

All Communications involving John Carmack from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all Documents or Communications concerning the Non-Disclosure Agreement referenced in ¶¶ 32-36 of the Complaint, including but not limited to the Non-Disclosure Agreement itself.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all Documents referring to negotiations between the Parties for an equity stake in Oculus, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all versions of Source Code, including but not limited to object code, associated with each of Defendants' Products, including but not limited to the Oculus Rift, whether that Source Code is contained in electronic work directories (including, without limitation, the work directories of each of Plaintiffs' Former Employees), shared drives, common directories, or libraries.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents relating to or evidencing Communications between Palmer Luckey and/or Oculus and Facebook, including but not limited to any Communications, term sheets, agreements, documents in a "data room," or other deal documents generated by Palmer Luckey, Oculus, or Facebook in reference to the proposed acquisition announced on March 25, 2014 and discussed in ¶ 101 of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

To the extent not requested by the prior Requests contained herein, any and all Documents in Plaintiffs' control or possession that originated at ZeniMax or id, or are derived from Documents that originated at ZeniMax or id, including by way of example only the Documents discussed in ¶¶ 43 and 44 of the Complaint.

2

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning any representations made by Palmer Luckey or Oculus to any party regarding Defendants' ownership of any intellectual property, including, by way of example, the ownership and/or licensing discussed at Page 5 of the Answer, and further including but not limited to any such representations made by Palmer Luckey and Oculus to Facebook.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents or Communications relating to requests for technology, advice, information or assistance from either Plaintiff or their current or former employees for the development of the Oculus Rift or otherwise.

**REQUEST FOR PRODUCTION NO. 10:**

To the extent not requested by the prior Requests contained herein, any and all Communications between either or both Defendants and any of Christian Antkow, John Carmack, Katherine Kang, Matthew Hooper, Gloria Kennickell, Jason D. Kim, Jan Paul Van Waveren, Jonathan E. Wright, or other of Plaintiffs' Former Employees prior to such Person's respective first day of employment with Oculus.

**REQUEST FOR PRODUCTION NO. 11:**

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications reflecting or referring to materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials, including Documents and Communications regarding the use or disclosure of such materials in the development or marketing of Defendants' Products.

### Requests Concerning Oculus's Structure And Management

**REQUEST FOR PRODUCTION NO. 12:**

Any and all Documents sufficient to identify and reflect Oculus's organizational structure, including but not limited to company directories, and the identification of Oculus's corporate and/or business departments, whether formally or informally delineated, Oculus's total number of employees, and each employee's title, job description, and reporting chain.

**REQUEST FOR PRODUCTION NO. 13:**

All corporate Documents of or relating to Oculus, including but not limited to articles of incorporation and all amendments thereto, by-laws, corporate resolutions, minutes of shareholders' meetings, minutes of directors' meetings, slide or presentation decks prepared for directors' meetings, "board packets," binders prepared for directors' meetings, written consents of officers and directors, and any agreements between and among investors, shareholders,

3

directors and/or third parties.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all Documents concerning meetings of Oculus's board of directors, executives or management team at which ZeniMax, id, or any of Plaintiffs' past or present employees or consultants were discussed.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents that identify those Persons or entities that own or possess, or will own or possess, an ownership or proprietary interest in Oculus or Oculus's Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all Documents referring to negotiations between Defendants and third parties for an equity stake in Oculus or Defendants' Products, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

**REQUEST FOR PRODUCTION NO. 17:**

All investment memoranda, proposals, or other Documents relating or referring to Oculus's business and/or valuation.

**REQUEST FOR PRODUCTION NO. 18:**

All federal or state tax returns filed by or on behalf of Palmer Luckey or Oculus.

**REQUEST FOR PRODUCTION NO. 19:**

All quarterly or annual financial statements of Oculus.

**Requests Concerning Defendants' Products**

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify each and every Product of Defendants, including but not limited to the Oculus Rift, specifically the dates of conception and reduction of practice for each Product, and the names and roles of any Oculus Employees involved in the development of each Product.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all manuals, instructions and instructional material, design drawings or renderings, and technical Documents or Communications relating to Defendants' Products,

4

including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all Documents concerning any problems, complaints or issues (*e.g.*, bugs, missing features, missed deadlines, or product failures) with Defendants' Products, including, but not limited to concerns communicated by Plaintiffs, John Carmack, media, developers, customers, or other third parties.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all Documents and Communications concerning the marketing or publicity for each version of each of Defendants' Products, including but not limited to press releases, product launch announcements, fact sheets, presentations, fundraising materials, sales literature, brochures, catalogs, trade letters, press releases, audio or video files, materials posted on internet websites and message boards, information prepared for electronics or gaming shows and conventions, and other marketing materials.

**REQUEST FOR PRODUCTION NO. 24:**

To the extent not requested by the prior Requests contained herein, any and all Documents and Communications relating to Defendants' involvement with demonstrations, booths, presentations, and panels at electronics or gaming shows or conferences, including any Documents identifying attendees at each electronics or gaming show or conference.

**REQUEST FOR PRODUCTION NO. 25:**

To the extent not requested by the prior Requests contained herein, any and all Communications regarding joint displays or demonstrations of Defendants' Products, including but not limited to the Oculus Rift, with ZeniMax or id.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all documents regarding any patent applications filed by any of Oculus's employees or Palmer Luckey.

**REQUEST FOR PRODUCTION NO. 27:**

To the extent not requested by the prior Requests contained herein, any and all Communications relating to Defendants' products.

**Requests Concerning Source Code**

**REQUEST FOR PRODUCTION NO. 28:**

Any and all versions of Source Code, including but not limited to source code comments

5

(*i.e.*, the narratives that programmers write to assist others analyzing code) and object code, for each of Defendants' Products, including, but not limited to the Oculus Rift.

## REQUEST FOR PRODUCTION NO. 29:

All Documents that reflect current or past revisions or additions to any and all versions of the Source Code for each of Defendants' Products, including but not limited to the Oculus Rift, specifically those Documents that reflect the author of each revision or addition and the date on which each revision or addition was made.

## REQUEST FOR PRODUCTION NO. 30:

Any and all Documents and Communications concerning any similarities or differences between the Parties' Source Code or software products, including, without limitation, any Documents and Communications regarding the testing thereof.

## REQUEST FOR PRODUCTION NO. 31:

Any and all Documents concerning the destruction or loss of any Source Code or object code for any of Defendants' Products.

## REQUEST FOR PRODUCTION NO. 32:

Any and all Documents regarding the reimplementation or modification by John Carmack or any other Oculus employee of any Source Code provided by Plaintiffs to Defendants at any time.

### Requests Concerning Former ZeniMax Employees

## REQUEST FOR PRODUCTION NO. 33:

Any and all Communications between Palmer Luckey and/or Oculus and John Carmack regarding or relating in any way to ZeniMax, id, or the work John Carmack performed for Plaintiffs at any time.

## REQUEST FOR PRODUCTION NO. 34:

Any Documents relating to patents for technology of Oculus, including, without limitation, communications with John Carmack and Documents relating to the White Paper of John Carmack discussed in ¶ 30 of the Complaint.

## REQUEST FOR PRODUCTION NO. 35:

All Documents relating to John Carmack's employment with Oculus, including compensation and equity ownership.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to identify each of Plaintiffs' Former Employees and the job responsibilities for each of Plaintiffs' Former Employees with Oculus, including with respect to each of Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 37:**

Any and all Documents and Communications referring to or relating to the departure of, or the recruitment, solicitation, interviewing, consideration for hire, or hiring of Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 38:**

Any and all Documents and Communications referring to or relating to any employment, confidentiality, non-compete, or non-disclosure agreements between ZeniMax and/or id and Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 39:**

Oculus's employee or personnel file for each of Plaintiffs' Former Employees, including any employment, confidentiality, non-compete, or non-disclosure agreements between Oculus and Plaintiffs' Former Employees.

**REQUEST FOR PRODUCTION NO. 40:**

Any and all Documents and Communications reflecting the steps Oculus has taken, or plans to take, regardless of the degree of certainty, to ensure that Oculus and its employees will not be in violation of the NDA and/or any employment, confidentiality, non-compete, or non-disclosure agreement between ZeniMax and/or id and Plaintiffs' Former Employees.

## Requests Related To Plaintiffs' Proprietary Materials

**REQUEST FOR PRODUCTION NO. 41:**

All Documents that identify and describe those Persons or entities that have or have had access to Defendants' Products, including but not limited to suppliers, vendors, visitors to Defendants' facilities and displays or demonstrations at electronics or gaming shows or conventions, technicians, partners, consultants, and customers.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents that constitute, refer to, relate to, or concern in any way any efforts or attempts by Palmer Luckey or Oculus to obtain, use or utilize information, technology or know-how of ZeniMax or id.

7

**REQUEST FOR PRODUCTION NO. 43:**

Any and all Documents concerning any investigation into whether Defendants possess or have used or disclosed materials that are, or that Plaintiffs have asserted are, Plaintiffs' Confidential Information, Copyrighted Materials, or Trademarked Materials.

## Requests Related To Financial And Market Information

**REQUEST FOR PRODUCTION NO. 44:**

Any and all competitive analyses of ZeniMax, id or the virtual reality market.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to identify each version or iteration of Oculus's agreements or contracts with its past, present, or potential suppliers, contractors, and customers.

**REQUEST FOR PRODUCTION NO. 46:**

Any and all Documents and Communications related to Oculus's sale or licensing of, or attempted or potential sale or licensing of, any of Defendants' Products, including but not limited to Documents and Communications related to discussions, terms, proposals, arrangements for compensation, and/or agreements between Oculus and any of Epic, Valve, NVidia, Hewlett-Packard, or Dell regarding actual or potential sale or licensing of any Oculus product, and further including any Documents and Communications related to discussions, terms, proposals, arrangements for  compensation, and/or agreements between Oculus and Sony regarding actual or potential sale or licensing of any Oculus product as reported in the press in June 2014 (for example, in an article titled "Oculus VR Looking for Help to Build its Headsets" on Gamespot.com, dated June 26, 2014).

**REQUEST FOR PRODUCTION NO. 47:**

Any and all Documents concerning business plans, forecasts, financial statements or analyses, or projections concerning Oculus and Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 48:**

Documents sufficient to determine Oculus's total profits and revenue, and profits and revenue derived from each of Defendants' Products, including but not limited to the Oculus Rift, for each fiscal year and quarter from Oculus's inception to the present.

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to identify costs incurred by Defendants to develop their Products, including but not limited to the Oculus Rift.

8

**REQUEST FOR PRODUCTION NO. 50:**

Any and all Documents relating to pricing or pricing plans for Defendants' Products, including but not limited to the Oculus Rift.

**REQUEST FOR PRODUCTION NO. 51:**

Any and all Documents that relate to the commercial viability of Defendants' Products, including but not limited to the Oculus Rift.

<div align="center"><u>**Other Requests**</u></div>

**REQUEST FOR PRODUCTION NO. 52:**

Any and all Documents or Communications relating to the affirmative defenses alleged by Defendants in this Action.

**REQUEST FOR PRODUCTION NO. 53:**

Any and all Documents and Communications that you identify, reference, use, or rely upon in responding to Plaintiffs' First Set of Interrogatories to Defendants.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents considered or relied upon by a Person with whom you will call to provide expert testimony in this Action.

**REQUEST FOR PRODUCTION NO. 55:**

All reports, opinions, and curriculum vitae of any Person(s) whom you expect to present at trial as an expert witness.

**REQUEST FOR PRODUCTION NO. 56:**

To the extent not requested by the prior Requests contained herein, all Documents Oculus will, or anticipates that it will, rely upon at trial in this Action, without regard to the date of such Documents.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to identify and reflect Oculus's Document preservation policies and/or practices, including but not limited to its policies and/or practices in relation to preservation of e-mail and electronically stored Documents and Communications.

<div align="center">9</div>

## DEFINITIONS

1.    As used herein, "Plaintiffs" refers to ZeniMax Media Inc. ("ZeniMax"), id Software LLC ("id"), or both, as appropriate to the Request.

2.    As used herein, "Defendants" refers to Palmer Luckey, Oculus VR, Inc. and its corporate predecessors, including Oculus LLC ("Oculus"), or both, as appropriate to the Request.

3.    As used herein, "Party" refers to Plaintiffs or Defendants, and "Parties" refers to both Plaintiffs and Defendants.

4.    As used herein, the terms Plaintiffs or Defendants, as well as a Party's full or abbreviated name, or a pronoun referring to a Party (*e.g.*, "you" or "your"), means the Party and, where applicable at the relevant time, its agents, representatives, members, officers, directors, employees, consultants, partners, corporate parents, subsidiaries, attorneys, superiors, principals, or affiliates.

5.    As used herein, the term "Action" refers to *ZeniMax Media Inc. et al v. Oculus VR, Inc. et al*, Case No. 3:14-cv-01849-P (N.D. Tex.).

6.    As used herein, the term "Complaint" refers to Plaintiffs' Complaint filed in this Action, Docket No. 1.

7.    As used herein, the term the "Answer" refers to Defendants' Answer and Affirmative Defenses filed in this Action, Docket No. 26.

8.    As used herein, the term "Facebook" refers to Facebook, Inc.

9.    As used herein, the term "Plaintiffs' Former Employees" refers to any former employees of Plaintiffs that were or are employed by Defendants, including but not limited to Christian Antkow, John Carmack, Matthew Hooper, Gloria Kennickell, Jason D. Kim, Jan Paul van Waveren, and Jonathan E. Wright.

10.    As used herein, the terms "Defendants' Product(s)" or "Product(s) of Defendants" refers to all versions and iterations of Defendants' devices, programs, hardware, software, and other technologies and projects, regardless of whether the aforementioned were previously developed, are in development, or are planned for development, and regardless of whether the aforementioned were released to the public or offered for sale. The terms Defendants' Product(s) or Product(s) of Defendants include, but are not limited to, Defendants' Oculus Rift virtual reality headset ("Oculus Rift"), including any consumer-facing version of the Oculus Rift, and the Oculus Rift's Software Development Kit.

11.    As used herein, the term "Confidential Information" refers to proprietary or commercially-sensitive information, or other information that qualifies for protection under Federal Rule of Civil Procedure 26(c), including, without limitation: (i) Source Code; (ii) trade secrets, including "negative trade secrets"; (iii) technical and customer information, including

10

know-how and proprietary data, schematics, communications, and other technical work product; (iv) information related to unreleased products and processes in development; (v) damages-related information, including but not limited to financial, business, or marketing plans, projections, forecasts, strategies or analyses, and sales, cost, profit, pricing or margin information; and (vi) confidential regulatory materials.

12.     As used herein, the term "Source Code" refers to computer code and related information, including, without limitation: (i) computer source code; (ii) object code, (iii) coding comments and other Documents that describe encoding or decoding algorithms used in computer source code; (iv) comments and revision histories associated with computer code; and (v) formulas, engineering specifications or schematics that define or otherwise describe the algorithms or structure of software or hardware designs.

13.     As used herein, the term "Copyrighted Materials" includes, without limitation, Plaintiffs' copyrights in the: (i) *"Doom 3: BFG Edition"* computer program, (ii) ZeniMax VR Testbed Code; and (iii) ZeniMax VR Implementation Code.

14.     As used herein, the term "Trademarked Materials" includes, without limitation, the following U.S. Trademark Registrations by Plaintiffs: (i) No. 2,050,083 for "DOOM"; (ii) No. 2,928,605 for "DOOM 3"; (iii) No. 2,303,100 for "DOOM II" and design; (iv) No. 2,165,125 for "ID"; (v) No. 3,923,244 for "RAGE"; (vii) No. 4,198,972 for "RAGE" and design; (viii) No. 4,094,299 for "RAGE" and design; (ix) No. 3,972,050 for "RAGE" and design; (x) No. 4,080,839 for "SKYRIM"; (xi) No. 4,097,150 for "SKYRIM"; and (xii) No. 4,280,859 for "SKYRIM".

15.     As used herein, the term "Person" shall be construed to include, in addition to the natural person, any and all other legal entities.

16.     As used herein, references to any legal entity shall include, in addition to the entity, any agent, representative, officer, member, director, employee, consultant, partner, corporate parent, subsidiary, attorney, superior, principal, or affiliate thereof.

17.     As used herein, the terms "Communication(s)" means any contact or the transmittal of any information in the form of facts, ideas, inquiries, or otherwise, whether formal or informal, oral or documentary, electronic or in writing, by video, telephone, or in any other form.  Communication(s) include but are not limited to messages, e-mail, facsimiles, file transfers, message board posts and private messages, internet communications, internal or external memoranda, notes, meetings, calls, audio or visual messages or recordings, and cellular telephone messaging.

18.     As used herein, the term "Document(s)" is used in its broadest sense and includes, without limitation, original and all non-identical copies (including drafts and those with any notations) of all documents, writings, recordings, and photographs of the type designated in Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001.  The term Document(s) encompasses materials in digital form, including, without limitation, e-mail, electronically stored documents, and other records on any device such as desktop or laptop

11

computer, portable hard-drive or thumb-drive, mobile phone, or smart phone (*e.g.*, Blackberry or iPhone). The term Document(s) includes, but is not limited to, any book, pamphlet, periodical, letter, memorandum, diary, file, note, calendar, newspaper, magazine, statement, bill, invoice, order, policy, telegram, correspondence, summary, receipt, opinion, investigation statement or report, schedule, annual report, financing statement, audit report, tax return, record, study, handwritten note, drawing, working paper, chart, index, tape (audio or visual), microfilm, and data sheet, however produced. For the purposes of these Requests, Document shall be construed to also include "things" (*i.e.*, any physical object).

19.    As used herein, the term "evidencing" means tending to show, in any probative manner, the existence or nonexistence of any matter.

20.    As used herein, the terms "concern(s)" or "concerning" mean in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, constituting, containing, pertaining to, relevant to, material to, affecting, considering, embodying, concerning, showing, comprising, reflecting, identifying, stating, dealing with, commenting on, responding to, describing, involving, discussing, recording, supporting, or negating a given subject matter.

21.    As used herein, the term "identify" shall mean, when used with reference to:

(a)    <u>Person or Persons</u>.  His or her full name, present or last known employer, job title, present or last known residence addresses and telephone numbers, and present or last known business addresses and telephone numbers;

(b)    <u>Business Entity</u>.  The full name and address of the entity and the names and positions of the individual or individuals connected with such entity who have knowledge of the information requested;

(c)    <u>Oral or Written Communications or Documents</u>.  The type of Communication or Document (*e.g.*, letter, memorandum, report, notes, etc.), its date, author(s) or originator(s), addressee(s), the organization, if any, with which the addressee(s) are or were connected, all individuals who received copies of the Document, the identity of Persons known or presumed by you to have present possession, custody or control of the Document, a detailed description of the substance of the Document or Communication, and the Bates numbers or other label(s) associated with the Document. Any request to identify Communications or Documents should also provide the present location of the Document and each known copy thereof, including the title, index number and location, if any, of the file in which the Document is kept by Defendants or the file from which such Document was removed, and identify of all Persons responsible for the filing or other disposition of the Document.

(d)    <u>Product</u>.  The name, version, release, number, designation, trademark or any other designation customarily used by the Party concerned to designate such product. Any request to identify the product shall also include dates of conception, reduction to practice, and first sale, and a list of all employees who have worked on that product, and their roles in the creation, development, production or other activity related to the product.

12

22.     As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

23.     As used herein, the term "any" or "each" shall be construed to include "all."

24.     As used herein, the use of the term "the" shall not be construed as limiting the scope of any Request.

25.     As used herein, the term "including" shall not be construed as limiting any Request, and shall mean "including, but not limited to."

26.     As used herein, the singular also includes the plural, and vice-versa.

## INSTRUCTIONS

The following instructions apply:

1.     Answer each Request separately by listing the responsive Documents and by describing them as defined below.  All Documents shall be: (i) organized and designated to correspond to the categories in these Requests or, if not, (ii) produced as they are maintained in the normal course of business, and in either case: (a) all associated file labels, file headings, and file folders shall be produced together with the responsive Documents and each file shall be identified as to its owner or custodian; (b) all Documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies (but Plaintiffs reserve the right to inspect the originals); and (c) each page shall be given a discrete production number and produced in Bates-numbered form.

2.     Documents stored electronically must be produced in the form or forms in which they are ordinarily maintained. Producing electronic Documents in the "form or forms in which they are ordinarily maintained" does not include printing those Documents and scanning them in a PDF format.

3.     All Source Code must be produced in native format.

4.     These Requests call for Documents that are known or available to Defendants, or in the possession, custody, or control of Defendants, including all Documents known or available to attorneys, agents, representatives, investigators, or any other Person acting on behalf of Defendants or under the direction or control of Defendants, its attorneys, agents, representatives, or investigators.

5.     Possession, custody and control does not require that you have actual physical possession; instead, if you have physical control or a superior right to compel production from another, the requested Document must be produced.

6.     In the event that multiple copies of a Document exist, produce every copy on which any notations or markings of any sort not appearing on any other copies exist.

13

7.      If any of the Documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying the reasons for the inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the unproduced portion.

8.      If you or your attorneys know of the existence, past or present, of any Document described in any of these Requests, but such Document is not presently in your possession, custody, or control or in the possession, custody or control of your agents, representatives, or attorneys, you shall so state in response to the Request.  For any such Documents, provide the disposition of each such Document, including the date of, method of and reasons for such disposition, and the name and address, if known, of any Person who has seen the Document or who now has custody, control or possession thereof.   If such Document no longer exists, state when, how, and why such Document ceased to exist.

9.      If in answering these Requests you claim any ambiguity in either a Request or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

10.      If you object to any Request or part thereof, produce all relevant Documents to which your objection does not apply.

11.      If any Documents are withheld under a claim of privilege, produce all relevant Documents to which your claim of privilege does not apply, and also state the nature of the privilege claimed and provide sufficient information to permit a full determination of whether the claim is valid. For allegedly privileged Documents, include: (i) any privilege or immunity from discovery asserted; (ii) the nature of the Document (letter, memorandum, notes, etc.); (iii) the author; (iv) the addressee, including recipients of copies; (v) the date; (vii) each and every Person who has seen such Document or a portion of such Document; (viii) the subject matter and general nature of the information; and (ix) all other facts which are alleged to support the assertion of privilege or immunity.

12.      These Requests are intended as continuing, requiring you to supplement your production of Documents pursuant to Federal Rules of Civil Procedure 26 and 34.

14

Dated: July 9, 2014

s/ P. Anthony Sammi

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
    **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*

15

## CERTIFICATE OF SERVICE

      I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing ZeniMax Media Inc. and id Software LLC's First Set of Requests for Production to Oculus VR, Inc. and Palmer Luckey to be sent by hand delivery to counsel for Defendants.

      Dated: July 9, 2014          <u>s/ James Y. Pak</u>

# EXHIBIT N

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

**BINGHAM**

Geoffrey M. Howard
Direct Phone:  +1.415.393.2485
Direct Fax:     +1.415.262.9212
geoff.howard@bingham.com

September 10, 2014

**Via E-Mail (*anthony.sammi@skadden.com*)**

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Tony:

I write in response to your letters dated September 3, 2014 regarding Oculus VR, Inc. and Palmer Luckey's (collectively, "Defendants") responses to ZeniMax Media Inc. and id Software LLC's (collectively, "Plaintiffs") First Set of Interrogatories and First Set of Requests for Production and Inspection.

*Interrogatories*

1.      Failure to Identify Documentary Support
         (*Interrogatories No. 1-8*)

Production and identification of documents supportive of Defendants' affirmative defenses is premature in light of both Plaintiffs' failure to identify the alleged trade secrets at issue in this litigation and Defendants' pending response to the Amended Complaint.  Defendants will supplement their responses to Interrogatories No. 1-8 when appropriate.

2.      Applicability of Factual Allegations
         (*Interrogatories No. 7 and 8*)

The facts described in Defendants' response to Interrogatory No. 7 are relevant to all trademarks and copyright registrations alleged in the Complaint.  Defendants may supplement their response to Interrogatory Nos. 7 and 8 as appropriate.

3.      Failure to Provide Requested Information; Incomplete Responses
         (*Interrogatory No. 9*)

Defendants provided reasonably available information regarding which individuals attended or were involved in the demonstrations listed in Exhibit A to Defendants' Responses to Plaintiffs' First Set of Interrogatories.  As explained in their response to Interrogatory No. 9, Defendants may supplement their response as additional information is discovered, as appropriate.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

+1.415.393.2000
+1.415.393.2286
bingham.com

P. Anthony Sammi, Esq.
September 10, 2014
Page 2

### *Requests for Production and Inspection*

1.   Refusal to Produce Source Code and Related Materials
     (*Requests for Production No. 5, 28, 29, 31*)

As explained above, production and inspection of Source Code and related materials is premature in light of both Plaintiffs' failure to identify the alleged trade secrets at issue in this litigation and Defendants' pending response to the Amended Complaint. Moreover, Defendants maintain their objections to Requests No. 5, 28, 29, and 31, including the objection to the production or inspection of Source Code before a protective order containing appropriate source code specific provisions has been agreed to between the parties and entered by the Court.

2.   Refusal to Produce Documents Re: Former ZeniMax Employees
     (*Requests for Production No. 34-40*)

As explained above, production of documents related to the hiring and activities of former ZeniMax employees is premature in light of both Plaintiffs' failure to identify the alleged trade secrets at issue in this litigation and Defendants' pending response to the Amended Complaint. Moreover, Defendants maintain their objections to Requests No. 34-40, including the objection that certain of the requests seek documents and things that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

3.   Refusal to Produce Documents Re: Access to Technology
     (*Requests for Production No. 41 and 45*)

As explained above, production of documents sufficient to identify all Persons or entities that have had access to Defendant's products and each version or iteration of Oculus's agreements or contracts with its past, present, or potential suppliers, contractors, or customers is premature in light of both Plaintiffs' failure to identify the alleged trade secrets at issue in this litigation and Defendants' pending response to the Amended Complaint. Moreover, Defendants maintain their objections to Requests No. 41 and 45, including the objections that the requests are overly broad, unduly burdensome, and seek documents and things not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

4.   Refusal to Produce Documents Regarding Prior Investigations
     (*Requests for Production No. 43*)

As explained above, production of documents regarding prior investigations into whether Defendants possess or have used or disclosed materials that are, or that Plaintiffs have asserted are, Confidential Information, Copyrighted Materials, or Trademarked Materials is premature in light of both Plaintiffs' failure to identify the alleged trade secrets at issue in this litigation and Defendants' pending response to the Amended Complaint. Moreover, Defendants maintain their objections to Request No. 43, including the

Bingham McCutchen LLP
bingham.com

P. Anthony Sammi, Esq.
September 10, 2014
Page 3

objections that the request seeks documents subject to the attorney-client privilege and work product protection and that the request is vague and ambiguous.

We trust our responses have sufficiently addressed your stated issues.   Should this be incorrect, please let us know so that we may schedule a time to speak.

Sincerely yours,

*Geoffrey M. Howard / Sw.*

Geoffrey M. Howard

cc:    Joshua M. Dalton, Esq.

Bingham McCutchen LLP
bingham.com

# EXHIBIT O

# TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

**BINGHAM**

Geoffrey M. Howard
Direct Phone: +1.415.393.2485
Direct Fax:    +1.415.262.9212
geoff.howard@bingham.com

September 10, 2014

**Via E-Mail** *(anthony.sammi@skadden.com)*

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Tony:

I write in response to your letter dated September 3, 2014.  We confirm that we are representing Facebook, Inc. ("Facebook") in the litigation and accept service of the Amended Complaint on Facebook's behalf.  We note that the deadline for Facebook to respond to the Amended Complaint has not passed and Plaintiffs and Facebook have not held a Rule 26(f) conference.  We further note that the scope of discovery may be impacted by Facebook's response to the Amended Complaint.  Thus, service of discovery on Facebook is premature.

Sincerely yours,

*Geoffrey M. Howard / L.W.*

Geoffrey M. Howard

cc:    Joshua M. Dalton, Esq.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

+1.415.393.2000
+1.415.393.2286
bingham.com

# EXHIBIT P

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

**Stanley, Lawrence T., Jr.**

| | |
|---|---|
| **From:** | Sammi, P. Anthony <Anthony.Sammi@skadden.com> |
| **Sent:** | Wednesday, September 10, 2014 6:05 PM |
| **To:** | Wang, Lucy |
| **Cc:** | DLPZENIMAX@skadden.com; phillip.philbin@haynesboone.com; michael.karson@haynesboone.com; zzm oculus/zenimax (ext); lcarter@carterscholer.com; lstahl@carterscholer.com |
| **Subject:** | Re: ZeniMax/Oculus |

Counsel,

 Thank you for this letter.  We do not see any reason to believe that conferring further regarding these issues would be productive, and accordingly we will seek relief from the Court.  If you think otherwise, please let us know when you are available to confer by phone tomorrow.


Regards,
Tony


_____
P. Anthony Sammi
Partner

Skadden, Arps et al.
Four Times Square
New York, New York 10036

Direct: 212.735.2307
Facsimile: 917.777.2307
Email:  Anthony.Sammi@Skadden.com

On Sep 10, 2014, at 5:45 PM, "Wang, Lucy" <lucy.wang@bingham.com> wrote:

> Tony,
>
> Please see the attached correspondence.
>
> Best,
> Lucy
>
>
> **Lucy Wang** | **Bingham McCutchen LLP**
> Three Embarcadero Center | San Francisco, CA 94111
> **T** (415) 393-2060 | **F** (415) 393-2286
> lucy.wang@bingham.com | www.bingham.com
>
>
> _____
> Confidentiality Notice: The information in this e-mail (including attachments, if any) is
> considered confidential and is intended only for the recipient(s) listed above. Any review,

use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of
the intended recipient. If you have received this email in error, please notify me
immediately by reply email, delete this email, and do not disclose its contents to anyone.

<2014_09_10_Howard Letter re RFPs and ROGs.pdf>

2

# EXHIBIT Q

## TO  DECLARATION OF GEOFFREY M. HOWARD IN SUPPORT OF DEFENDANTS OCULUS VR, LLC, PALMER LUCKEY, AND FACEBOOK, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY

**Stanley, Lawrence T., Jr.**

| | |
|---|---|
| **From:** | Dalton, Joshua M. |
| **Sent:** | Wednesday, September 10, 2014 8:47 PM |
| **To:** | Sammi, P. Anthony |
| **Cc:** | Wang, Lucy; DLPZENIMAX@skadden.com; phillip.philbin@haynesboone.com; michael.karson@haynesboone.com; zzm oculus/zenimax (ext); lcarter@carterscholer.com; lstahl@carterscholer.com |
| **Subject:** | Re: ZeniMax/Oculus |

Tony:

We do believe a call is appropriate. I would like Geoff involved and he's in deposition tomorrow I believe. How are you Friday morning?

Best.

-Josh

On Sep 10, 2014, at 6:05 PM, "Sammi, P. Anthony" <Anthony.Sammi@skadden.com> wrote:

> Counsel,
>
>  Thank you for this letter.  We do not see any reason to believe that conferring further regarding these issues would be productive, and accordingly we will seek relief from the Court.  If you think otherwise, please let us know when you are available to confer by phone tomorrow.
>
>
> Regards,
> Tony
>
>
> _____
> P. Anthony Sammi
> Partner
>
> Skadden, Arps et al.
> Four Times Square
> New York, New York 10036
>
> Direct: 212.735.2307
> Facsimile: 917.777.2307
> Email:  Anthony.Sammi@Skadden.com
>
> On Sep 10, 2014, at 5:45 PM, "Wang, Lucy" <lucy.wang@bingham.com> wrote:
>
>> Tony,
>>
>> Please see the attached correspondence.
>>
>> Best,
>> Lucy

1

**Lucy Wang** | **Bingham McCutchen LLP**
Three Embarcadero Center | San Francisco, CA 94111
**T** (415) 393-2060 | **F** (415) 393-2286
lucy.wang@bingham.com | www.bingham.com

---

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

<2014_09_10_Howard Letter re RFPs and ROGs.pdf>