IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
(A) DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY
AND (B) MOTION TO QUASH AND FOR PROTECTIVE ORDER
RE: PLAINTIFFS' SUBPOENAS FOR PHONE RECORDS**

Phillip B. Philbin
Michael D. Karson
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

P. Anthony Sammi
Kurt Wm. Hemr
James Y. Pak
Kristen Voorhees
**SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

*Attorneys for Plaintiffs
ZeniMax Media Inc. and id Software LLC*

Dated: October 1, 2014
         Dallas, Texas

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT .................................................................................................. 5

I.    DISCOVERY SHOULD NOT BE STAYED, AND DEFENDANTS SHOULD
      BE DIRECTED TO PROCEED WITH DISCOVERY FORTHWITH ........................... 5

      A.    Discovery Should Continue On The Schedule Set By The Court;
            Defendants' Motions To Dismiss Would Not Dispose Of This Action And
            Would Not Avoid ZeniMax's Need For Discovery On Its Claims ........................ 5

      B.    Defendants' Belated Request For A Stay Of Discovery Is Disingenuous
            Given That Discovery Has Already Commenced ..................................................... 7

      C.    Defendants Rely On Inapposite Cases In Which Courts Stayed Discovery
            From The Outset Of An Action Pending Resolution Of A Motion That
            Could Resolve The Entire Case ............................................................................... 8

      D.    ZeniMax's Discovery Requests Are Reasonable, And Defendants'
            Objections To Those Requests Can Be Addressed In The Usual Manner ............ 10

      E.    Defendants' Motions To Dismiss Lack Merit, Which Further Militates
            Against Staying Discovery Until Those Motions Are Adjudicated ...................... 11

II.   ZENIMAX HAS IDENTIFIED THE TRADE SECRETS MISAPPROPRIATED
      BY DEFENDANTS WITH A HIGH LEVEL OF DETAIL, AND DISCOVERY
      SHOULD NOT BE INTERRUPTED NOW SO THAT DEFENDANTS MAY
      ARGUE THE ULTIMATE MERITS OF ZENIMAX'S TRADE SECRET
      CLAIM ............................................................................................................................ 13

      A.    ZeniMax's Pleadings Specify In Detail The Trade Secrets That Defendants
            Misappropriated ..................................................................................................... 13

      B.    Defendants Have Shown That They Are Not Unable To Answer Or To
            Proceed With Discovery ......................................................................................... 16

      C.    Defendants' True Purpose Here Is To Litigate The Ultimate Merits Of
            ZeniMax's Claims Without Allowing ZeniMax To Take Discovery ................... 17

      D.    The Case Law On Which Defendants Rely Is Inapposite .................................... 19

III.   ZENIMAX'S SUBPOENAS FOR TELEPHONE RECORDS ARE LIKELY TO ELICIT ADMISSIBLE AND RELEVANT EVIDENCE, ARE NARROWLY TAILORED, AND SHOULD NOT BE QUASHED ........................................................21

    A.   ZeniMax's Subpoenas Are Likely To Elicit Admissible And Relevant Evidence..............................................................................................................21

    B.   ZeniMax's Subpoenas Seek Records Only For Particular Individuals, And For A Limited Time Period...................................................................................23

    C.   The Precedents On Which Defendants Rely Are Readily Distinguishable ...........24

CONCLUSION..............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Modular Sputtering, Inc. v. Superior Court*,
33 Cal. Rptr. 3d 901 (Cal. Ct. App. 2005) ...................................................................14, 15

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
No. C 07-5248-JW (PVT), 2008 WL 183520 (N.D. Cal. Jan. 18, 2008) ........................ 20

*AutoMed Tech., Inc. v. Eller*,
160 F. Supp. 2d 915 (N.D. Ill. 2001) ............................................................................... 20

*Brescia v. Angelin*,
90 Cal. Rptr. 3d 842 (Cal. Ct. App. 2009) .............................................................15, 17, 18

*Brown v. DFS Services, LLC*,
434 Fed. App'x 347 (5th Cir. 2011) .................................................................................8, 9

*Cargile v. Baylor Health Care System*,
No. Civ.A.3:04-CV-1365-B, 2005 WL 2445482 (N.D. Tex. Aug. 10, 2005) ....................9

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012) .............................................20

*Corwin v. Marney, Orton Investments*,
843 F.2d 194 (5th Cir. 1988) ............................................................................................9

*DeRubeis v. Witten Tech., Inc.*,
244 F.R.D. 676  (N.D. Ga. 2007) .....................................................................................20

*Dolenz v. Akin*,
No. 97-10081, 1997 WL 681280 (5th Cir. Oct. 23, 1997) .................................................9

*Dura Global Techs., Inc. v. Magna Donnelly Corp.*,
No. 07-cv-10945, 2007 WL 4303294 (E.D. Mich. Dec. 6, 2007) ....................................20

*Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*,
No. 3-08-CV-0774-L, 2008 WL 2930482 (N.D. Tex. July 23, 2008) ........................7, 10

*Innovative BioDefense, Inc. v. VSP Technologies., Inc.*,
No. 12 Civ. 3710 (ER), 2013 WL 3389008 (S.D.N.Y. July 3, 2013) ...............................15

*Institut Pasteur v. Chiron Corp.*,
315 F. Supp. 2d 33 (D.D.C. 2004) ..................................................................................10

*L-3 Commc'ns Corp. v. Reveal Imaging Techs., Inc.*,
   No. 035810BLS, 2004 WL 2915743 (Mass. Super. Ct. Dec. 2, 2004) ...........................20

*Landry v. Air Line Pilots Ass'n International AFL-CIO*,
   901 F.2d 404 (5th Cir. 1990) ........................................................................6, 9

*Lugo v. Alvarado*,
   819 F.2d 5 (1st Cir. 1987)................................................................................5

*Medafor, Inc. v. Starch Med. Inc.*,
   No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009) .....................20

*Mintz v. Mark Bartelstein & Associates, Inc.*,
   885 F. Supp. 2d 987 (C.D. Cal. 2012) ..................................................................21, 22

*In Re Moor*,
   No. 14-12-00933-CV, 2012 WL 5463193 (Tex. App. Nov. 8, 2012)...............................24

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th Cir. 1989) ........................................................................19

*Porous Media Corp. v. Midland Brake, Inc.*,
   187 F.R.D. 598 (D. Minn. 1999)..........................................................................20

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
   No. 3:12CV220 (WWE), 2012 WL 3113162 (D. Conn. July 31, 2012) ..........................20

*Prolifiq Software Inc. v. Veeva Systems Inc.*,
   No. C 13-03644 SI, 2014 WL 2527148 (N.D. Cal. June 4, 2014)...................................18

*Rawlings v. D.M. Oliver, Inc.*,
   159 Cal. Rptr. 119 (Cal. Ct. App. 1979) ...............................................................12

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
   No. H-08-cv-0857, 2008 WL 8465061 (S.D. Tex. Aug. 11, 2008)...................................9

*River's Edge Pharmaceuticals, LLC v. Gorbec Pharmaceutical Services, Inc.*,
   No. 1:10CV991, 2012 WL 1439133 (M.D.N.C. Apr. 25, 2012)...............................15, 16

*S.E.C. v. Provident Royalties, LLC*,
   No. 3:09-cv-1238-L-BH, 2010 WL 3784195 (N.D. Tex. Sept. 25, 2010) ......................17

*Simpson v. Specialty Retail Concepts, Inc.*,
   121 F.R.D. 261 (M.D.N.C. 1988) .........................................................................5

*Stark v. University of Southern Mississippi*,
   Civ. A. No. 2:13-cv-31-KS-MTP, 2014 WL 1342973 (S.D. Miss. Apr. 3, 2014) ..........6, 7

*StoneEagle Services Inc. v. Valentine,*
    No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) .................................19

*Switch Commc'ns Group v. Ballard,*
    No. 2:11-cv-00285, 2012 WL 2342929 (D. Nev. June 19, 2012) ....................................20

*Systems Products & Solutions, Inc. v. Scramlin,*
    No. 13-cv-14947, 2014 WL 3894385 (E.D. Mich. Aug. 8, 2014)....................................22

*United Services Automobile Ass'n v. Mitek Sys., Inc.,*
    289 F.R.D. 244 (W.D. Tex. 2013) (Primomo, Mag. J.), *aff'd* No. SA-12-CA-282-
    FB, 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013) (Biery, J.).........................................19

*Tostado v. Citibank (South Dakota), N.A.,*
    No. SA-09-CV-549-XR, 2009 WL 4774771 (W.D. Tex. Dec. 11, 2009).........................10

*Turnbow v. Life Partners, Inc.,*
    No. 3:11-1030, 2013 WL 1632795 (N.D. Tex. Apr. 16, 2013) ........................................25

*Winter v. Bisso Marine Co.,*
    No. 13-5191, 2014 WL 3778833 (E.D. La. July 29, 2014) ..............................................25

**STATUTES**

18 U.S.C. §§ 2701-2711 ...........................................................................................................22

Cal. Civ. Proc. Code § 2019.210 (West 2005)...................................................................15, 18

Tex. Civ. Prac. & Rem. Code § 134A (2013)............................................................................12

Tex. S.B. 953, 83d Leg., § 3 (2013)..........................................................................................12

## PRELIMINARY STATEMENT

Defendants' Motion For Protective Order to Stay Discovery (Dkt. No. 55) and Motion to Quash Plaintiffs' Subpoenas (Dkt. No. 54) (the "Motions") are a cynical attempt to override the Court's Scheduling Order and to prevent Plaintiffs from obtaining any discovery in this case. Plaintiffs have been fully engaged in responding to Defendants' discovery requests and have produced nearly 14,000 pages of documents, while Defendants have produced almost nothing. Defendants now ask the Court to stop this case in its tracks, disregard the Scheduling Order, and allow Defendants to evade all discovery obligations — including discovery obligations relating to several claims that are not addressed by the pending motions to dismiss.  Respectfully, the Court should not countenance such gamesmanship.

Plaintiffs' Amended Complaint (Dkt. No. 38) tells a straightforward story:

- Virtual reality technology is a complex combination of cutting edge hardware and software which a number of major technology companies, including Plaintiffs, had been researching and developing. (*Id.* ¶ 27.)

- In April 2012, college-aged Palmer Luckey, self-describing himself as someone who "can't do software at all," began corresponding with John Carmack — a world-renowned programmer who was at that time the Technical Director of Plaintiff id Software LLC — regarding a prototype virtual reality headset.  (*Id.* ¶¶ 4-5, 69.)

- Luckey sent Carmack a crude headset which consisted of little more than a display panel, but lacked even the most basic technology needed to create a viable product.  (*Id.* ¶¶ 30-31.)

- With Plaintiffs having spent years working on virtual reality technology, Carmack made heavy modifications to the prototype headset and, in addition, developed software to demonstrate how this technology worked. (*Id.* ¶¶ 6, 31-33.)

- Luckey entered into a Non-Disclosure Agreement with ZeniMax Media Inc. (collectively with id Software LLC, "ZeniMax" or "Plaintiffs"), which expressly provided that Plaintiffs owned the virtual reality technology furnished to Luckey. (*Id.* ¶¶ 34-38.)

- In June 2012, Carmack demonstrated the modified prototype headset and software at an industry convention to widespread acclaim.  (*Id.* ¶ 42.)  Without ZeniMax's

involvement, Luckey then formed a company, Oculus LLC, the legal predecessor to Oculus VR, LLC ("Oculus"), to commercialize the headset and use as its own the proprietary VR technology that had been provided by Plaintiffs. (*See, e.g., id.* ¶¶ 42-44, 47-49, 64-68, 93.)

• Under the Non-Disclosure Agreement, ZeniMax provided confidential and trade secret information to Luckey and Oculus. (*Id.* ¶¶ 45-49, 86-89.)

• Oculus attracted substantial investor interest, and in 2013, Carmack was recruited to work for Oculus. (*Id.* ¶¶ 65-66, 95-97.)

• In August 2014, Defendant Facebook, Inc. ("Facebook") acquired Oculus for two billion dollars. (*Id.* ¶¶ 103, 107-112.)

• Despite ZeniMax's efforts to negotiate with Oculus, ZeniMax has never been compensated for Defendants' misappropriation of its valuable intellectual property. (*Id.* ¶¶ 95, 115.)

Defendants, for their part, strain to insist that Luckey accomplished what several large companies who invested years and many millions of dollars in researching virtual reality technology could not. Defendants posit that Luckey was a "gifted teenage inventor" who conceived, tested, implemented, and finally perfected a groundbreaking virtual reality headset as <u>a solo act</u> – after having worked closely with ZeniMax on the very same technology. Remarkably, Defendants contend that ZeniMax "<u>never</u> has contributed <u>any</u> intellectual property or technology to Oculus[.]" (Dkt. No. 26, at 2 (emphasis added).) The record will clearly show otherwise. While a jury will decide which narrative is correct, discovery must first proceed so that ZeniMax may establish the full factual record that will prove the merit of its claims.

ZeniMax's filing of its Amended Complaint does not present any reason for delay in proceeding with discovery here. Oculus and Luckey already had answered the substantively identical claims asserted against them in the initial Complaint. (Dkt. No. 26.) Half of the claims alleged against Oculus and Luckey are not subject to any motion to dismiss. (Dkt. No. 38, Counts 1-3, 5-8; Dkt. No. 45, at 1.) Oculus and Luckey have participated in a Rule 26(f) conference, negotiated and proposed a pre-trial schedule (*see* Dkt. No. 31, at 1), and propounded

a full spectrum of discovery requests, all without asserting that they could not or would not participate in discovery.  Yet, Defendants have unilaterally refused to proceed with producing documents in violation of this Court's August 7, 2014 Scheduling Order, which provides that the discovery which was already under way when that Order issued would continue up to July 16, 2015.  (Dkt. No. 34, ¶ 7.)

In particular, Defendants' pending Motions to Dismiss (Dkt. Nos. 45, 47) do not present a sufficient ground for staying discovery in this action.  All of ZeniMax's claims in this action are based on related courses of misconduct by Defendants, and Defendants' motions to dismiss do <u>not</u> purport to seek dismissal of all those claims.  Accordingly, even if, *arguendo*, Defendants were to prevail on every single point raised by their motions to dismiss, numerous claims would remain on which ZeniMax would be entitled to discovery.  Defendants have vast resources, and are not harmed if they must respond to ZeniMax's discovery requests. Defendants cite no case in which a court has stayed discovery that was already underway in order to consider a motion that could resolve only part of the case.  Indeed, courts routinely <u>deny</u> such motions.  For the same reason, Defendants' Motion For Protective Order to Stay Discovery should be denied here.  (*See* Part I *infra*.)

Nor should discovery in this action be stayed on the ground that "pre-discovery identification" of trade secrets is required.  Neither Texas law nor the Federal Rules of Civil Procedure require that protocol, and Defendants never proposed such a protocol in the parties' joint submission under Rule 26(f).  In any event, ZeniMax's pleadings identify those trade secrets with a high level of detail.  In addition, from the outset of this case, Defendants have had in their possession e-mails from ZeniMax to Luckey and Oculus personnel reflecting the transfer of significant proprietary ZeniMax information to Defendants.  Given the way Defendants obtained

3

the virtual reality technology used to establish their business (*i.e.*, under a signed Non-Disclosure Agreement), it is preposterous for them to say they do not know what ZeniMax is talking about. Two Defendants have already answered substantively identical claims. (*See* Dkt. No. 26.) Defendants have more than enough detail to enable them to answer ZeniMax's Amended Complaint and proceed with discovery here. (*See* Part II *infra*.)

Defendants' Motion to Quash Plaintiffs' Subpoenas seeking records of telephone calls for key individuals involved in the misconduct alleged by the Amended Complaint should also be denied. Those subpoenas are narrowly tailored, reasonably likely to provide evidence relevant to ZeniMax's claims, and are commonly used in cases of this nature. ZeniMax does not intend to use those records for any purpose unrelated to this litigation. (*See* Part III *infra*.)

ZeniMax respectfully requests that this Court move quickly to avoid allowing Defendants to cause further disruption to the pre-trial schedule set forth in this Court's Scheduling Order. ZeniMax moved on September 12, 2014, to overrule Defendants' objections to discovery and to compel Defendants to proceed with discovery. (Dkt. No. 40.) ZeniMax expects to complete its document production in or about November 2014. Defendants have produced, to date, a paltry 23 pages of documents to ZeniMax.[1] ZeniMax will need to take a substantial number of depositions of fact witnesses in this action. If Defendants do not commence their production of

---

[1] Following public announcement of the closing of the Facebook/Oculus transaction, ZeniMax asked Defendants to promptly produce a set of the closing documents for that transaction so that ZeniMax could make an informed determination regarding amendment of its complaint. (App'x (Vol. 1) at Exs. 1-2.) In response to that request, Defendants produced 23 pages of documents on July 25 and 28, 2014, including publicly available documents, which fell far short of what was requested. (App'x (Vol. 1) at Exs. 3-4.) Defendants' position today is squarely at odds with their counsel's statement then: "We will respond to your document requests consistent with the [FRCP] and will produce responsive documents in accordance with those Rules." (App'x (Vol. 1) at Ex. 3.)

documents promptly, ZeniMax will be unable to analyze those documents and conduct depositions of fact witnesses in a timely manner.

Accordingly, this Court should deny the Motions, and enter an order directing Defendants to proceed immediately with discovery.

## ARGUMENT

### I.   DISCOVERY SHOULD NOT BE STAYED, AND DEFENDANTS SHOULD BE DIRECTED TO PROCEED WITH DISCOVERY FORTHWITH

#### A.   Discovery Should Continue On The Schedule Set By The Court; Defendants' Motions To Dismiss Would Not Dispose Of This Action And Would Not Avoid ZeniMax's Need For Discovery On Its Claims

Numerous courts have observed that "a request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case." *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) (citing *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987)).   Here, even if Defendants were to prevail on each and every point raised in their pending motions to dismiss, ZeniMax would nevertheless require discovery on the claims not addressed by those motions.   That discovery should therefore proceed now notwithstanding those motions.

As the Amended Complaint explains, all of ZeniMax's claims concern related misconduct on the part of Defendants.  Oculus and Luckey have <u>not</u> moved to dismiss ZeniMax's claims for copyright infringement (Count 2), unfair competition (Count 5, against Oculus), trademark infringement (Count 7), and false designation (Count 8).  The discovery necessary for those claims is substantially the same even though the underlying misconduct may differ from claim to claim.  And even if all of ZeniMax's claims against Facebook were dismissed, third-party discovery would also be required from Facebook in its capacity as the corporate parent of Oculus.  Accordingly, regardless of the purported merit of any legal issue raised by Defendants'

motions to dismiss, discovery in this case can and should continue on the schedule that this Court has already set. The Court may, if it chooses, address the issues raised by Defendants' motions while that discovery proceeds.

Courts in the Fifth Circuit have declined to stay discovery pending resolution of a defendant's dispositive motion where, as here, that motion will not resolve the entire case. In *Stark v. University of Southern Mississippi*, No. 2:13cv31-KS-MTP, 2014 WL 1342973 (S.D. Miss. Apr. 3, 2014), the individual defendant in a case brought by a former university employee moved to dismiss the employee's federal claims. The court granted that motion in part but allowed certain federal claims to proceed against the individual defendant. *Id.* at *4. The individual defendant later moved to dismiss the employee's state law claims against her, and she also moved to stay discovery while that new motion was pending. *Id.* at *2. The court denied her motion for stay:

> [The individual defendant] Dr. Saunders' request for the dismissal of the Plaintiff's state law causes of action fails to establish good cause for a stay of discovery. The grant of the Motion to Dismiss as to State Law Claims will not dispose of the Plaintiff's federal claims against Dr. Saunders, or the Plaintiff's federal and state law claims against the other Defendants. It would be inefficient and imprudent to stay all discovery as to Dr. Saunders based on a motion that is not dispositive of her status as a party Defendant. Plaintiff's argument that Dr. Saunders "is a vital witness" in this case also suggests that she may be exposed to discovery regardless of her party status. As a result, the Court's resolution of Dr. Saunders' pending dismissal motion will not "preclude the need for the discovery altogether thus saving time and expense."

*Id.* at *3 (record citations omitted) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990)). Likewise, in this case, Oculus's and Luckey's motion to dismiss is, on its face, not "dispositive of [their] status as . . . party Defendant[s]." *Id.* Further, even assuming *arguendo* that Facebook was dismissed from this action, it would continue to be "exposed to discovery regardless of [its] party status" as the corporate parent of

Oculus.  *Id.*  Accordingly, a stay will not result in any "'saving [of] time or expense'" here.  *Id.* (citation omitted).  Defendants' Motion to Stay Discovery should therefore be denied.

### B.   Defendants' Belated Request For A Stay Of Discovery Is Disingenuous Given That Discovery Has Already Commenced

Courts also routinely decline defendants' requests to stay discovery where, as here, a pre-trial schedule has been set and discovery is already proceeding in accordance with that schedule. For example, in *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 WL 2930482 (N.D. Tex. July 23, 2008), the parties had submitted a 26(f) report to the court which included proposed discovery deadlines (*see* Dkt. No. 9 in that action, at pp. 3-4), and Judge Lindsay had set a pre-trial schedule based on the parties' proposals.  (*See* Dkt. No. 10 in that action.)  The defendant thereafter moved to dismiss, and also moved for a stay of discovery pending resolution of that motion.  Magistrate Judge Kaplan denied the motion to stay:

> The court declines to stay discovery merely because defendant believes it will prevail on its motion to dismiss.  Although the magistrate judge cannot predict the outcome of the motion, it is not as "clear cut" as defendant alleges.  Moreover, in the Rule 26(f) status report filed by the parties on June 9, 2008, defendant did not even contemplate filing a motion to dismiss, much less request a stay of discovery pending the disposition of such a motion. . . .  For defendant to now suggest that there will be no delay or prejudice if all discovery is stayed for several months while the court considers its Rule 12(b)(6) motion is, at the very least, disingenuous.

*Glazer's Wholesale*, 2008 WL 2930482, at *1 (citations omitted).  Here, Defendants' conduct is even more disingenuous.  Oculus and Luckey did not raise the arguments in their Motion to Dismiss in response to the initial Complaint as they could have done, but chose instead to answer and avail themselves of discovery.  (Dkt. No. 26.)  In particular, Oculus and Luckey have:

(i)     participated in a court-ordered conference in this action (*see* Dkt. No. 29);

(ii)    exchanged initial disclosures with ZeniMax (App'x (Vol. 1) at Ex. 5);

(iii)   propounded multiple and highly-detailed discovery requests to ZeniMax (*see* App'x (Vol. 1) at Exs. 6-7);

(iv)   proposed a pre-trial schedule, including a close of discovery date (Dkt. No. 31);

(v)   awaited Court's pre-trial schedule, setting a close of discovery date (Dkt. No. 34);

(vi)   received ZeniMax's written responses and objections to their discovery requests (App'x (Vol. 1) at Exs. 8-9); and

(vii)   received nearly 14,000 pages of documents from ZeniMax in response to their document requests (App'x (Vol. 1) at Exs. 10-14).

The Court should not now call a halt to that ongoing discovery because Oculus and Luckey would like the Court to address legal issues which are germane to only some of ZeniMax's claims, and which they could have raised before they answered ZeniMax's initial Complaint. Nor is it reasonable to seek a halt to discovery after ZeniMax has responded to Defendants' discovery requests in a substantial and timely manner, and received almost nothing in return.

### C.   Defendants Rely On Inapposite Cases In Which Courts Stayed Discovery From The Outset Of An Action Pending Resolution Of A Motion That Could Resolve The Entire Case

Pointedly, Defendants do not cite <u>any</u> case in which a court stayed ongoing discovery so that the parties could engage in motion practice on a motion that would not resolve the entire case — which is what Defendants urge the Court to do here.  Rather, they cite numerous cases in which discovery was stayed from the outset of a case pending resolution of a motion that promised to resolve the entire case, which is a very different procedural posture.

For example, in *Brown v. DFS Servs., LLC*, 434 F. App'x 347 (5th Cir. 2011), an employee of a small business allegedly signed the business up for a health plan without having been authorized to do so, and the business owner thereafter sued the health plan alleging various causes of action.  The defendants promptly sought dismissal on the ground that the business

owner had already received a full refund, and also sought a stay of discovery pending resolution of that issue.[2] The defendants in that case also flagged the issue in the parties' 26(f) report:

> Defendants anticipate filing a Rule 12(b)(6) motion on Plaintiff's claims within the next 30 days, and in advance of the initial scheduling conference with the Court, and will request that any discovery beyond initial disclosures be postponed pending the Court's ruling on their motion.

Joint Discovery/Case Mgmt. Plan Under Rule 26(f) Fed. Rules of Civil Procedure at 3, *Brown*, 434 F. App'x 347, (Civ. No. 4:09-cv-03449) (S.D. Tex. Dec. 30, 2009), Dkt. No. 14.   Here, Defendants Oculus and Luckey did not propose a discovery stay in the parties' 26(f) submission, but instead proposed a discovery deadline.  They propounded discovery to ZeniMax, and did not seek a discovery stay until almost two months after this Court had issued its Scheduling Order. Nor have they made a motion that would dispose of the entire case.

The other cases on which Defendants rely also involve motions that were made at the outset of a case, before discovery had commenced in earnest, and where the motion had the potential to resolve the entire case.[3]  In one case cited by Defendants, the motion for a discovery

---

[2]   *See* Motion To Quash Written Discovery & For Protective Order, *Brown*, 434 F. App'x 347 (Civ. No. 4:09-cv-03449) (S.D. Tex. Dec. 30, 2009), Dkt. No. 8.

[3]   *Dolenz v. Akin*, No. 97-10081, 1997 WL 681280 (5th Cir. 1997) (discovery in action against state court judge held properly stayed until threshold issue of judge's Eleventh Amendment immunity defense was resolved); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436-36 (5th Cir. 1990) (court stayed discovery in favor of resolution of early summary judgment motions); *Corwin v. Marney, Orton Invs.*, 843 F.2d 194, 199-200 (5th Cir. 1988) (trial court limited discovery to threshold statute of limitations issues that defendants' motions to dismiss raised as to federal claims which provided jurisdictional predicate; in reversing trial court for the second time in that case, Fifth Circuit expressed skepticism of stay); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, No. H-08-cv-0857, 2008 WL 8465061 (S.D. Tex. Aug. 11, 2008) (after hearing, discovery stayed pending resolution of threshold motion to dismiss antitrust action); *Cargile v. Baylor Health Care Sys.*, No. Civ.A.3:04-CV-1365-B, 2005 WL 2445482, at *2 (N.D. Tex. Aug. 10, 2005) (discovery stayed from outset pending resolution of threshold motion to dismiss); *see* Order Granting Mot. to Stay Disc., *Cargile v. Baylor Health Care Sys.*, No. Civ.A.3:04-CV-1365-B, 2005 WL 2445482 (N.D. Tex. Jan 21, 2005), Dkt. No. 45.

stay pending resolution of a motion to dismiss was unopposed, which is not the case here.[4]   In

another, a motion for discovery stay was <u>denied</u> in favor of expedited proceedings on the

applicability of an agreement to arbitrate.[5]

### D.   ZeniMax's Discovery Requests Are Reasonable, And Defendants' Objections To Those Requests Can Be Addressed In The Usual Manner

Defendants also assert that a stay is warranted on the purported ground that ZeniMax's

discovery requests are "exceedingly broad."  (Dkt. No. 55, at 8.)   ZeniMax's discovery requests

are reasonable, but if Defendants have objections to those requests, Defendants can make them in

the usual manner, and the parties can confer regarding those objections and/or seek judicial

resolution.   An objection to breadth is not an excuse to produce nothing at all.   As Magistrate

Judge Kaplan observed in *Glazer's Wholesale*:

> Nor is the court persuaded that discovery should be stayed because defendant objects to certain document requests.  If plaintiffs wish to challenge objections asserted by defendant to written discovery, or defendant seeks a protective order on grounds other than a blanket stay of all discovery, the parties may file an appropriate motion . . . .

*Glazer's Wholesale*, 2008 WL 2930482, at *1.   Nor are Defendants' objections to ZeniMax's

discovery requests well taken.   For example, ZeniMax has requested production of all

communications between Plaintiffs and Defendants.   Those communications can be identified

and produced mechanically, and their production will be necessary regardless of how

Defendants' motions to dismiss are resolved.

---

[4]   *Tostado v. Citibank (S.D.), N.A.*, No. SA-09-CV-549-XR, 2009 WL 4774771, at *1 (W.D. Tex. Dec. 11, 2009).

[5]   *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33 (D.D.C. 2004).

**E.      Defendants' Motions To Dismiss Lack Merit, Which Further
          Militates Against Staying Discovery Until Those Motions Are Adjudicated**

Even if Defendants had adduced authority holding that a stay of discovery is appropriate where a defendant belatedly makes a meritorious partial motion to dismiss, Defendants' motions to dismiss here are <u>not</u> meritorious.  Those motions principally make the following contentions:[6]

(i)      Defendants Oculus and Luckey contend that the Non-Disclosure Agreement is a non-binding "agreement to agree," purportedly for the reason that although that agreement contemplates that the parties might enter into a further business relationship involving the use of information disclosed under the agreement, that agreement does not specifically set out the terms of any such further relationship.  (Dkt. No. 45, at IV.A.1-3; *see also* IV.B.1.)  But the purpose of such non-disclosure agreements between businesses is to permit disclosure of proprietary material on a confidential basis precisely so that those businesses may consider whether and on what terms to engage in a further business relationship.  Defendants cite no authority holding that Texas law treats non-disclosure agreements entered into for that purpose as unenforceable, and it would be remarkable if this Court were to so hold.  Defendants' proposition is particularly absurd given that they refused to negotiate a future business arrangement with ZeniMax, and now cite their failure to reach future agreements as a basis to nullify the existing Non-Disclosure Agreement.  (*See* Dkt. No. 38, ¶¶ 75-85.)  (Tellingly, Oculus and Luckey did not move to dismiss ZeniMax's initial Complaint on this basis, even though that pleading made substantially identical allegations against them.)

(ii)     Defendant Oculus contends that it is not bound by the Non-Disclosure Agreement because ZeniMax never asked it to sign the agreement.  (Dkt. No. 45, at IV.B.1.)   Yet,

---

[6]    ZeniMax will oppose those motions comprehensively in due course, and reserves all of its rights and arguments with respect to those motions.

Defendants have admitted that Luckey formed Oculus under California law to continue the business activity that Luckey had undertaken as an individual. (*See* Dkt. No. 26, at ¶¶ 5, 8-9 & ¶¶ 16-17.)   California recognizes the doctrine of successor liability as applicable to sole proprietorships.[7]   Also, ZeniMax expects that the discovery that it has requested (and which Defendants are refusing to provide) will show that Luckey assigned his rights and obligations related to his pre-Oculus business activities to Oculus.   ZeniMax further expects that investors in Oculus required documentation of that assignment as a condition of their investment.

　　　　(iii)     Defendant Facebook contends it is not liable for common law misappropriation of trade secrets because of the enactment of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A  (2013).  (Dkt. No. 47, at IV.A.)  In enacting TUTSA, the Texas legislature specified that any "continuing misappropriation" that began prior to its effective date remained subject to common law.[8]   When Facebook acquired Oculus and announced its intention to integrate Oculus's misappropriated technology into its business (*see* Dkt. No. 38, ¶¶ 112, 114-115), Facebook became a party to Oculus's and Luckey's continuing misappropriation.   ZeniMax's claims against Facebook are therefore governed by common law.  But even if TUTSA governed here, ZeniMax has pled facts supporting a claim under TUTSA.

　　　　For that further reason, a discovery stay is not warranted here.

---

[7]   *See, e.g.*, *Rawlings v. D.M. Oliver, Inc.*, 159 Cal. Rptr. 119, 124 (Cal. Ct. App. 1979) (corporation that succeeded business of sole proprietorship held liable for product of sole proprietorship).  By reason of its conduct, Oculus is bound by the Non-Disclosure Agreement on numerous grounds, of which successor liability is only one.  (Dkt. No. 38, at ¶¶ 142-152.) Other grounds will be addressed in ZeniMax's opposition to Oculus's Motion to Dismiss.

[8]   "[A] continuing misappropriation beginning before the effective date of this Act [is] governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose."   Tex. S.B. 953, 83d Leg., § 3 (2013).

## II. ZENIMAX HAS IDENTIFIED THE TRADE SECRETS MISAPPROPRIATED BY DEFENDANTS WITH A HIGH LEVEL OF DETAIL, AND DISCOVERY SHOULD NOT BE INTERRUPTED NOW SO THAT DEFENDANTS MAY ARGUE THE ULTIMATE MERITS OF ZENIMAX'S TRADE SECRET CLAIM

ZeniMax's claims here are not limited to misappropriation of trade secrets, but include claims for breach of contract and copyright and trademark infringement. The discovery that ZeniMax seeks from Defendants is relevant to all of those claims. Defendants should not be permitted to withhold all discovery on the theory that ZeniMax's trade secret claim lacks specificity. That said, ZeniMax's trade secret claim has been pleaded with a high level of detail.

### A. ZeniMax's Pleadings Specify In Detail The Trade Secrets That Defendants Misappropriated

In both its initial Complaint and in its Amended Complaint, ZeniMax has specified in detail the trade secrets that Defendants misappropriated:



(Dkt. No. 38, ¶ 117.) While ZeniMax's public pleading does not reveal the trade secrets, it does

13

identify them for Defendants.  ZeniMax's counsel referred Defendants' counsel to the initial

Complaint's detailed description (Dkt. No. 1, ¶ 106) at the July 9, 2014, Rule 26(f) conference in

this matter.  (App'x (Vol. 1) at Ex. 15, ¶ 5.)[9]

In addition, as the Appendix (Vol. 2) that will be filed under seal[10] by ZeniMax sets forth

in detail, from the very beginning of this case, Defendants have had in their possession e-mails

from ZeniMax to Luckey and Oculus concerning each and every one of the items referenced

above by exhibit number.  ZeniMax's Amended Complaint further specifies how, when, and

through whom Defendants came to obtain those ZeniMax trade secrets, including via particular

program code and even via specific e-mails (*see, e.g.*, Dkt. No. 38, ¶¶ 45-48, 57-58, 86-91), and

how Defendants misappropriated those trade secrets to develop and commercialize Oculus's sole

product, the Rift and its associated software (*e.g.*, *id.* ¶¶ 47, 51, 64-68, 89, 92, 114-15).

Additional "pre-discovery identification of trade secrets" — that is, identification above and

beyond what is required by the notice pleading standard of Fed. R. Civ. P. 8(a) — is not required

by the Federal Rules of Civil Procedure or by Texas law.

Indeed, the detail that ZeniMax has provided here would satisfy the standards of

jurisdictions that require a pre-discovery identification procedure.  In *Advanced Modular

Sputtering, Inc. v. Superior Court of Santa Barbara*, 33 Cal. Rptr. 3d 901 (Cal. Ct. App. 2005), a

California appellate court applying that state's pre-discovery identification statute, Cal. Civ. Proc.

---

[9]   Defendants assert that at this conference, ZeniMax's counsel could not identify the
misappropriated trade secrets "beyond the vague assertion [that] it was something that gave
the Rift a 'wow' factor."  (Dkt. No. 55, at 2.)  That misrepresents that discussion.  (App'x
(Vol. 1) at Ex. 15.)

[10]   Volume 2 of ZeniMax's Appendix contains e-mails which ZeniMax has produced in this
litigation and marked as highly confidential, which ZeniMax would propose to file under
seal.  A Bates-numbered index of such documents is provided in the Table of Contents of
Volume 1.  ZeniMax has requested that Defendants advise whether they oppose sealing those
documents, and will move for leave to file them under seal when so informed.

Code § 2019.210 (West 2005) discussed the limited nature of the identification required by that section:

> "Reasonable particularity" . . . does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation.  Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence.  Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational under all of the circumstances . . . .

*Advanced Modular Sputtering*, 33 Cal. Rptr. 3d at 908 (citations omitted); *accord Brescia v. Angelin*, 90 Cal. Rptr. 3d 842, 847-54 (Cal. Ct. App. 2009) (citing *Advanced Modular*).  ZeniMax has met that standard here.  Defendants cannot delay discovery to force a premature adjudication of the merits of ZeniMax's trade secret claim.

In that regard, the recent decision of Judge Ramos of the Southern District of New York in *Innovative BioDefense, Inc. v. VSP Techs., Inc.*, No. 12 Civ. 3710(ER), 2013 WL 3389008 (S.D.N.Y. July 3, 2013) is especially informative.  There, a licensee of technology sued its licensors for not providing technical support for the technology.  *Id.* at *1.  The licensors asserted counterclaims relating to that same technology.  *Id*.  The licensee contended that those counterclaims required application of the California statute requiring pre-suit identification of trade secrets (as noted above, Texas has no such comparable statute).  *Id*.  at *2.  Judge Ramos held that if the California statute applied, the Defendants' counterclaim satisfied that statute:

> As Defendants *gave* the trade secrets at issue to Plaintiff under the Agreements, the sole requirement of § 2019.210 has already been satisfied; i.e., the trade secrets at issue have been identified.

*Id.* at *7 (emphasis in original).[11]  So too here:  in this action, ZeniMax has alleged that

---

[11]   *Accord River's Edge Pharms., LLC v. Gorbec Pharm. Servs., Inc.*, No. 1:10CV991, 2012 WL 1439133 (M.D.N.C. Apr. 25, 2012).  In *River's Edge*, one business retained another business to develop intellectual property, and subsequently sued that business for having misappropriated the trade secrets that were developed at its expense.  The defendant business

*(cont'd)*

proprietary information that it provided to Luckey and Oculus under a Non-Disclosure Agreement constitutes trade secrets which Defendants have misappropriated.  That suffices to identify those misappropriated trade secrets, notwithstanding any arguments that Defendants might make about the ultimate merits of ZeniMax's trade secret claim.

### B.    Defendants Have Shown That They Are Not Unable To Answer And To Proceed With Discovery

Defendants had in hand ZeniMax's initial Complaint asserting a trade secret claim <u>for more than two months</u> before Defendants proposed a pre-trial schedule to the Court — a proposal to which ZeniMax largely agreed, and which the Court ordered with modifications. (*See* Dkt. No. 31, at 13-16; Dkt. No. 34.)  That proposal did not include any suggestion that discovery be stayed for some period of time so that Defendants could seek further "identification" of the trade secrets that they misappropriated.  Defendants should not be heard to demand that procedure now.  The pre-trial schedule entered by the Court provides for ten remaining months of fact and expert discovery (Dkt. No. 34, at 1), which is sufficient if that time is efficiently used.  The procedural detour that Defendants now demand would require rewriting this Court's Scheduling Order.

In any event, Defendants' suggestion that "discovery cannot proceed" (App'x (Vol. 1) at Ex. 16) without further specification of ZeniMax's trade secret claims is refuted by the record of Defendants' own voluntary participation in discovery in this action.    Defendants have

_____

(cont'd from previous page)

moved to dismiss, asserting that the plaintiff business had failed to sufficiently identify those trade secrets.  The court rejected that argument:  "Based on the alleged relationship between the parties . . . the Court finds that Plaintiff's identification of the claimed trade secrets . . . enables both [Defendant] Gorbec and the Court to delineate what Gorbec is accused of misappropriating."  *Id.* at *14.  Here, the relationship between ZeniMax and Defendants, described in detail in the Amended Complaint, puts Defendants on notice of what they have been accused of misappropriating.

propounded 110 requests for documents and 8 interrogatories to ZeniMax, to which ZeniMax has responded, including by producing nearly 14,000 pages of documents to date.  (*See* App'x (Vol. 1) at Exs. 6, 10-14.)   Defendants' unilateral decision not to provide discovery is unfairly prejudicial to ZeniMax.   By refusing to provide reciprocal discovery, Defendants ensure that their counsel have time to analyze ZeniMax's production while ZeniMax is deprived of corresponding access to Defendants' documents and information.

Nor do Defendants require further specification of ZeniMax's trade secret claims to answer ZeniMax's Amended Complaint.   Defendants were able to answer ZeniMax's initial Complaint, which provided the same level of detail regarding ZeniMax's misappropriated trade secrets. (*See* Dkt. No. 26.) They cannot now suddenly and inexplicably pretend that they are unable to answer the Amended Complaint.  *See S.E.C. v. Provident Royalties, LLC*, No. 3:09-CV-1238-L-BH, 2010 WL 3784195 (N.D. Tex. Sept. 25, 2010) (denying motion for more definite statement) ("Because the same allegations in the amended complaint were also made in the original complaint, Movants' original answer shows that they can reasonably prepare a response.").

### C.    Defendants' True Purpose Here Is To Litigate The Ultimate Merits Of ZeniMax's Claims Without Allowing ZeniMax To Take Discovery

Defendants propose that not only must ZeniMax identify its trade secrets, but ZeniMax must also specifically explain "how each [trade secret] differs from public domain information." (Dkt. No. 55, at 12.)   Defendants would presumably then engage in protracted motion practice seeking to litigate the ultimate merits of ZeniMax's trade secret claims without permitting ZeniMax to take any discovery.   But even jurisdictions which require pre-suit identification of trade secrets recognize that that protocol should not be used for that improper purpose.   For example, in *Brescia*, an inventor alleged that a competitor had stolen his recipe and

17

manufacturing process for a high-protein pudding sold to bodybuilders.  After extended motion

practice, the trial court held that the inventor had failed to comply with the California trade secret

identification statute because he had purportedly failed to describe "why this formula is unique

and not known to others."  *Brescia*, 90 Cal. Rptr. 3d at 847.  The California appellate court

reversed:

> The two most important goals of the statute . . . are to help the court shape discovery, and to give the defendant the opportunity to develop defenses.  Obviously, a reasonably particularized description aids the court in determining the scope of relevant discovery and fashioning protective orders.  It also provides the opponent with notice of what information has allegedly been misappropriated, thus permitting the investigation of available defenses.  Absent a showing that elaboration is required to serve these goals, section 2019.210 should not be construed to require the claimant to explain why the alleged trade secret differs from matters already known in the industry.

*Id.* at 853 (citation omitted).  Here, too, Defendants have the information they need to proceed

with discovery in this action.  Tellingly, Defendants complain here that ZeniMax has not

specified how its trade secrets differ from information presented in a 2013 white paper.  (Dkt.

No. 55, at 12.)  Although ZeniMax disagrees that that white paper discloses any trade secrets,

and reserves all of its rights in that regard, the fact that Defendants have identified and raised that

challenge indicates that they have been provided with sufficient information to proceed.[12]

Interrupting ongoing discovery to require ZeniMax to provide a detailed description of

why the information that it provided to Defendants differed from public domain information

would be particularly unreasonable here.  As the e-mails submitted in the Appendix (Vol. 2) to

be filed under seal demonstrate, Luckey and other Oculus personnel specifically and repeatedly

---

[12]  *See, e.g.*, *Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (citing *Brescia* and denying motion for protective order) ("Indeed, the fact that Veeva is able to craft detailed arguments for why Prolifiq's information does not constitute trade secrets means that Prolifiq has sufficiently identified that information to Veeva so that it may investigate the merits of Prolifiq's claim.").

sought out ZeniMax for its expertise on technical matters and asked very detailed questions. (*See, e.g.*, App'x (Vol. 2) at Exs. 22, 34, 37, 44-45.)  If Defendants could have readily obtained that information from a book or from an internet search, presumably they would have done so.

### D.     The Case Law On Which Defendants Rely Is Inapposite

Defendants cite *StoneEagle Services Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) (cited in Dkt. No. 55 at 10, 11, 13), but ignore important distinctions between that action and this one.  That action was one of several related actions, and the parties in that action were able to make use of discovery that had already been conducted in a related action that had commenced a year earlier.  Accordingly, Magistrate Judge Horan concluded that "the unique history" of that case made it appropriate to require further specificity as to the trade secrets at issue.  *Id.* at *4.[13]  Here, ZeniMax has not had such discovery.

In the cases on which Defendants rely, the allegedly misappropriated trade secrets were described with far less specificity than the description provided in ZeniMax's Amended Complaint, or were not described at all.  For example, in *United Servs. Automobile Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. 2013) (Primomo, Mag. J.), the defendant objected to generic disclosures such as the "[i]nvention," "commercial information related to the . . . [i]nvention," and "proprietary algorithms, concepts . . . and development plans related to the [invention]."  Mitek Sys., Inc.'s Motion for an Order Requiring Prediscovery Identification of

---

[13]   ZeniMax twice explained why the *StoneEagle* case is distinguishable for this reason: (i) in its August 28, 2014 correspondence with Defendants (App'x (Vol. 1) at Ex. 17, at 284-285), and (ii) in its September 12, 2014 Motion to Overrule Defendants' Objections to Discovery (Dkt. No. 40, at 9-10).  Yet, in Oculus and Luckey's Motion to Dismiss (Dkt. No. 45, at 15) and Defendants' Motion for Stay (Dkt. No. 55, at 10-11), they have cited *StoneEagle* for a <u>third</u> and a <u>fourth</u> time without addressing the distinctions identified by ZeniMax.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) (court will not address argument raised for the first time on reply).

Trade Secret Claims at 3 (Dkt. No. 51), *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. 2013) (No. 5:12-cv-00282-FB).[14]   Other cases on which Defendants rely are simply not informative here.[15]

---

[14]   *See also Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 3:12CV220, 2012 WL 3113162 (D. Conn. July 31, 2012) (plaintiff alleged that "[t]he Powerweb Technology consists of trade secrets that Powerweb owns"; *see* Dkt. No. 1 in that action, ¶ 58); *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) ("Clearline alleges only that Cooper B-Line 'has used Clearline's trade secrets, including but not limited to technical and financial information.'"); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) ("The complaint describes the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information, including suppliers and customers . . . .'"); *L-3 Commc'ns Corp. v. Reveal Imaging Techs., Inc.*, No. 035810BLS, 2004 WL 2915743, at *8 (Mass. Super. Ct. Dec. 2, 2004) (trade secrets described as "'trade secrets and other proprietary information, including inventions and trade secrets the defendants themselves had invented and developed while they were employed as high-level executives at [plaintiff]'"); *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("[d]etailed drawings," "[r]esearch and test data," and "[m]anufacturing process information").

In *DeRubeis v. Witten Tech., Inc.*, 244 F.R.D. 676  (N.D. Ga. 2007), a company asserting claims against two of its former employees who were competing against the company appeared to have simply listed all categories of the company's trade secrets to which the employees had access.  *See id.* at 679.  In *AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001), the court found that references to "Staffing Simulation software and the source code for PPS software" <u>were</u> sufficiently particularized, but "generic references to . . . three research projects" were not.  *Id.* at 921.  Significantly, that court ordered that "[d]iscovery should proceed unhindered on the other counts" (*i.e.*, claims other than the trade secret claim).  *Id.* at 926.

[15]   In *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-5248, 2008 WL 183520 (N.D. Cal. Jan. 18, 2008), a plaintiff was merely ordered to comply with the California trade secret identification statute, *see id.* at *1 n.2, and that order specifically made no finding that plaintiff's prior description of trade secrets was inadequate. *Id.* at *1 n.4.  The order in *Switch Commc'ns Group v. Ballard*, No. 2:11-cv-00285, 2012 WL 2342929 (D. Nev. June 19, 2012), requiring a plaintiff to make further responses to contention interrogatories was entered long after discovery had commenced in that action, and more than a year after the defendant had made a comprehensive document production. *See, e.g.*, Motion to Compel at 3, *Switch Commc'ns Grp. L.L.C. v. Ballard*, No. 2:11-cv-00285 (D. Nev. filed May 27, 2011) (Dkt. No. 23).  In *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, No. 07-cv-10945, 2007 WL 4303294 (E.D. Mich. Dec. 6, 2007), the description of the trade secrets which was found deficient was placed under seal and is not described in the court's opinion.  *Id.* at *4.

### III. ZENIMAX'S SUBPOENAS FOR TELEPHONE RECORDS ARE LIKELY TO ELICIT ADMISSIBLE AND RELEVANT EVIDENCE, ARE NARROWLY TAILORED, AND SHOULD NOT BE QUASHED

#### A. ZeniMax's Subpoenas Are Likely To Elicit Admissible And Relevant Evidence

ZeniMax has issued subpoenas in this action seeking telephone records for individuals who had significant involvement in the misappropriation of trade secrets and other misconduct described in its Amended Complaint.  It is likely that those individuals had telephone conversations among themselves in which they discussed ZeniMax's proprietary technology and the transfer of that technology to Defendants.  ZeniMax would have difficulty obtaining evidence that those conversations occurred by other means:  even a truthful and forthcoming witness might have difficulty testifying as to whether and when a particular telephone conversation occurred.  Even if a witness cannot recall the content of a particular telephone conversation, the record that such a conversation occurred at a particular time may allow the finder of fact to draw inferences regarding what was discussed.

Subpoenas for telephone records are commonplace in cases involving allegations of misappropriation of intellectual property and business goodwill.  For example, in *Mintz v. Mark Bartelstein & Associates, Inc.*, 885 F. Supp. 2d 987 (C.D. Cal. 2012), an agency representing professional athletes subpoenaed one year's worth of telephone records for an agent who had left to join a competitor.  The court denied the agent's motion to quash that subpoena in its entirety, holding that "the telephone records . . . are relevant under Federal Rule of Civil Procedure 26(b)(1) to Defendants' counterclaims that Plaintiff made false and defamatory statements about Priority Sports and improperly solicited Priority Sports clients while still employed at Priority Sports." *Id.* at 999.  The court further observed that "the disclosure of telephone numbers and cell site information, as well as the date, time, and duration of calls does not represent a

significant intrusion of Plaintiff's privacy, particularly because the Court can issue an appropriate protective order." *Id.* at 999-1000. Here, ZeniMax commits not to use the subpoenaed information for any purpose unrelated to this litigation. The court in *Mintz* quashed the subpoena in part only insofar as it sought the content of text messages, which may not be subpoenaed by reason of the Stored Communications Act, 18 U.S.C. §§ 2701-2711. Here, ZeniMax has drafted its subpoenas to avoid requesting that statutorily-protected content. (*See e.g.*, Dkt. No. 54-1, at 11.)

Recently, in *Systems Products & Solutions, Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385 (E.D. Mich. Aug. 8, 2014), a business alleged that its former employee "breached his employment agreement and fiduciary duties by appropriating, stealing, and marketing proprietary information related to a bid for a federal government contract," and subpoenaed the employee's 2013 telephone records and e-mails from telephone providers. *Id.* at *1. The court denied the employee's motion to quash, except as to the content of text messages and e-mails:

> Under Rule 26, [plaintiff] SPS is entitled to learn whether [its employee] Scramlin was in contact with [plaintiff's competitor] Macik and/or other individuals or entities concerning the information protected by the applicable employment agreement and fiduciary duties. Because SPS's theory is that Scramlin breached his duties through such contacts, the information sought would touch on matters that fall within the heartland of what is relevant to SPS's claims. Thus, the information requested by the subpoenas is within the scope of discovery.
>
> The Court rejects Scramlin's argument — lacking citation to any law — that the subpoenas are harassing. Harassment is typically found where a party requests information that is only remotely connected to the case, or a party has sent subpoenas for an improper purpose. Here, as noted above, the subpoenas target relevant information. Furthermore, the Court does not discern an improper purpose. As the SCA protects the contents of Scramlin's emails, and the Court has ordered that the subpoenas be modified for the provision only of metadata — not content — the subpoenas do not intrude into potentially sensitive matters.

*Id.* at *9 (citations omitted). Here, ZeniMax's subpoenas exclude protected content, and accordingly should not be quashed or modified in any respect.

22

**B.     ZeniMax's Subpoenas Seek Records Only For
            Particular Individuals, And For A Limited Time Period**

ZeniMax has issued subpoenas seeking telephone records for the following individuals

who were involved in the facts alleged in ZeniMax's Amended Complaint:

(i)     Defendant Palmer Luckey, the founder of Oculus (*see* Dkt. No. 38 *passim*);

(ii)    former ZeniMax employees who were recruited to join Oculus, including John
         Carmack, who now serves as Chief Technical Officer of Oculus (*id.* ¶¶ 97,
         99);[16]

(iii)   Brendan Iribe, Oculus's Chief Executive Officer, to whom the Oculus Rift was
         demonstrated in 2012, who solicited technical assistance from ZeniMax on
         behalf of Oculus, and who negotiated with ZeniMax regarding compensation
         for ZeniMax's intellectual property (*id.* ¶¶ 66, 72, 76-77, 87, 91); and

(iv)   Michael Antonov, Oculus's Chief Software Architect, who also solicited
         technical assistance from Plaintiffs on behalf of Oculus (*id.* ¶¶ 87-88).

ZeniMax sought personal telephone records for these individuals because evidence shows

that individuals used their personal mobile devices for business purposes.  Indeed, John Carmack

once had to ask a colleague at ZeniMax how to operate his office telephone:

> **From:**       John Carmack [johnc@idsoftware.com]
> **To:**           Duncan Welch
> **Subject:**    outside line?
> **Date:**        8/10/2011 3:52:36 PM
> **CC:**
> **BCC:**
>
> **Message:**
> What do you dial to get an outside line on the cisco phones?  I left my cell at home, and nobody down
> here actually knows how to use the phones... (probably a good comment on their value)
>
> John Carmack

---

[16]   Specifically, in addition to Mr. Carmack: Matthew Hooper, Jan Paul van Waveren, Gloria
       Kennickell, Jason Kim, Jonathan Wright, and Christian Antkow.  ZeniMax also sought
       records for accounts that may be registered in the name of Mr. Carmack's wife, Katherine
       Kang, because upon information and belief such accounts were likely used by Mr. Carmack.

(App'x (Vol. 1) at Ex. 18.)   ZeniMax requested those records from April 1, 2012, through February 28, 2014, *i.e.*, the period beginning approximately when contact between ZeniMax and Luckey began (Dkt. No. 38, ¶ 30), and ending when Oculus recruited a number of ZeniMax employees to join Oculus.  (*Id.* ¶¶ 99-100.)  ZeniMax believes that this time period is most likely to identify evidence relevant to its claims in this proceeding, but reserves its rights to seek records for other periods.

Defendants object that ZeniMax's subpoenas "ask for records for *every single incoming or outgoing call and text message*" for that period.  (Dkt. No. 54, at 3 (emphasis in original).)  To be sure, ZeniMax has no interest in obtaining records of telephone calls that were made in order to wish an aunt a happy birthday or to reminisce with a school friend, and ZeniMax commits to use all records only for purposes related to this litigation.   But the subpoenaed telecommunications providers cannot fashion their production to exclude irrelevant calls.  Nor is it reasonable to ask ZeniMax to subpoena those providers repeatedly to seek records relating to specific dates on which telephone calls might have occurred, including for the reason that many telephone calls will likely not be discussed in other documents.

### C.  The Precedents On Which Defendants Rely Are Readily Distinguishable

In *In re Moor*, No. 14-12-00933-CV, 2012 WL 5463193 (Tex. App. Nov. 8, 2012) (cited at Dkt. No. 54, at 4-5), a motorist who collided with a go-cart driven by two boys sought telephone records of one boy's mother around the time of the accident, and also around the time of a threatening telephone call that the motorist subsequently received, allegedly from the injured boy's mother.  The trial court denied the mother's motion to quash.  On mandamus, the appellate court upheld the trial court's denial of the motion to quash insofar as it sought telephone records around the time of the accident, but held that the subsequent telephone call was irrelevant to the boy's claims or the motorist's defenses.  *Id.* at *3-4.  The facts of this case involve a longer course

24

of misconduct, not an accident which occurred in a moment, but in any event ZeniMax has limited the period for which it seeks records to focus on that course of conduct.

In *Winter v. Bisso Marine Co.*, No. 13-5191, 2014 WL 3778833 (E.D. La. July 29, 2014) (cited at Dkt. No. 54, at 5), a Jones Act case, the defendant subpoenaed the mobile phone records of an injured seaman for a year before and after the date of an accident, on the theory that "the frequency and duration of plaintiff's use of the cell phone . . . will reflect the degree of his impairments after the accident." *Id.* at *2. The court quashed the subpoena, holding that "[t]he assumptions behind this contention are too tenuous." *Id.* Here, ZeniMax is seeking telephone records of particular individuals <u>not</u> to test those individuals' capacity to use a telephone, but rather to identify calls made by particular individuals that were part of a course of misconduct.[17]

## CONCLUSION

For all of the foregoing reasons, this Court should deny Defendants' Motion For Protective Order to Stay Discovery (Dkt. No. 55) and Motion to Quash Plaintiffs' Subpoenas (Dkt. No. 54), and enter an order (i) overruling Defendants' objections to proceeding with discovery and (ii) directing Defendants to substantially complete their document production in or around November 2014.

---

[17] Compare *Turnbow v. Life Partners, Inc.*, No. 3:11-1030, 2013 WL 1632795 (N.D. Tex. Apr. 16, 2013) (cited at Dkt. No. 54, at 4), which relates to a subpoena to a party's auditor seeking audit and accounting documents, and is not informative here.

Dated: October 1, 2014                    Respectfully submitted,

                                          *s/ Phillip B. Philbin*
                                          PHILLIP B. PHILBIN
                                          Texas State Bar No. 15909020
                                          E-mail: phillip.philbin@haynesboone.com
                                          MICHAEL D. KARSON
                                          Texas State Bar No. 24090198
                                          E-mail: michael.karson@haynesboone.com
                                          **HAYNES AND BOONE LLP**
                                          2323 Victory Avenue, Suite 700
                                          Dallas, Texas 75219
                                          Telephone No.: 214-651-5000
                                          Facsimile No.: 214-651-5940

                                          P. ANTHONY SAMMI
                                          E-mail: Anthony.Sammi@skadden.com
                                          KURT WM. HEMR
                                          E-mail: Kurt.Hemr@skadden.com
                                          JAMES Y. PAK
                                          Texas State Bar No. 24086376
                                          E-mail: James.Pak@skadden.com
                                          KRISTEN VOORHEES
                                          E-mail: Kristen.Voorhees@skadden.com
                                          (admitted *pro hac vice*)
                                          **SKADDEN, ARPS, SLATE,**
                                          **   MEAGHER & FLOM LLP**
                                          Four Times Square
                                          New York, New York 10036
                                          Telephone No.: 212-735-3000
                                          Facsimile No.: 212-735-2000

                                          *Attorneys for Plaintiffs*
                                          *ZeniMax Media Inc. and id Software LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

On October 1, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: October 1, 2014 *s/ Phillip B. Philbin*
Phillip B. Philbin

27