# EXHIBIT 1

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADOEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTOH
CHICAGO
HOUSTOH
LOS ANGELES
PALO ALTO
WASHINGTOH, D.C.
WILMIHGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

July 22, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Facebook's Acquisition of Oculus VR
     *ZeniMax Media Inc. et al. v. Oculus VR, Inc. et al.*, No. 3:14-cv-01849

Dear Geoff:

News reports state that Facebook has closed on its acquisition of defendant Oculus VR. Please inform us by close of business tomorrow whether (i) Oculus VR, or a successor to Oculus VR will continue to exist as an operating concern (and identify the successor, if any), and (ii) whether Facebook has any intention to remove assets, including without limitation intellectual property assets, from Oculus VR, LLC or any successor entity.

Additionally, please produce the transaction documents – which are called for by our document requests propounded on July 9 – by close of business tomorrow so that we may determine whether our clients need to seek relief from the Court. We provided a proposed form of protective order to you on July 9, on which you have not yet commented, but we would treat those documents as for outside-counsel's-eyes-only until the Court enters a protective order.

Very truly yours,

P. Anthony Sammi

ZENIMAX APPENDIX (VOL. 1) TO ITS OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO QUASH

# EXHIBIT 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522
———
TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 24, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111-4067
geoff.howard@bingham.com

      RE:    <u>Facebook's Acquisition of Oculus VR, Inc.</u>
                <u>*ZeniMax Media Inc. et al. v. Oculus VR, Inc. et al.*</u>, No. 3-14-cv-01849

Dear Geoff:

      Public documents indicate that on Monday, your client, a necessary party in this case, ceased to exist in its previous corporate form.  We asked you to provide information and documents necessary to determine that defendant's legal status, what party or parties retain the liability of that defendant, and whether our clients' intellectual property has been transferred to additional unauthorized parties.  The transaction documents – a small set of readily identifiable and easily producible documents that you already have – would address those questions.  Your July 23 letter refuses to produce them promptly.

      Please provide a time later today when you (or one of your colleagues) are available for a meet and confer call on our anticipated motion for expedited discovery.

           Very truly yours,

           P. Anthony Sammi

392950-NYCSR10A - MSW

# EXHIBIT 3

# BINGHAM

Geoffrey M. Howard
Direct Phone:  +1.415.393.2485
Direct Fax:      +1.415.262.9212
geoff.howard@bingham.com

July 25, 2014

**Via E-Mail** *(anthony.sammi@skadden.com)*

P. Anthony Sammi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York 10036

Dear Tony:

I write in response to your letter dated July 24, 2014, in which you request an immediate meet and confer conference in advance of a purported emergency motion for expedited discovery.

We continue to fail to see the urgency of your demand for the immediate production of documents that have already been requested in your document requests dated July 9, 2014.  ZeniMax has known of the impending Facebook acquisition since it was publicly announced on March 25, 2014.  Indeed, in connection with discussing the discovery schedule at our Dallas meeting, you asked about the status of the acquisition, and I responded that the closing was on track.  Thus, you knew that the closing was imminent but made no mention of any supposed urgency that would arise from the closing.

We will respond to your document requests consistent with the Federal Rules of Civil Procedure and will produce responsive documents in accordance with those Rules.  In the interim, in an attempt to address your immediate concerns over the corporate status of Oculus VR, Inc., the merger agreement between Oculus VR, Inc. and Facebook, Inc. may be found at the link: http://www.sec.gov/Archives/edgar/data/1326801/000132680114 000023/fb-3312014xex22.htm.  Additionally, enclosed are documents filed with the Delaware Secretary of State.  The documents confirm what we have already told you, namely that Oculus VR, LLC is the successor by merger to Oculus VR, Inc., and that Oculus VR, LLC is a wholly-owned subsidiary of Facebook, Inc.  We will be filing a Supplemental Certificate of Interested Persons to that effect shortly.

We trust that these documents address your concerns.  To the extent you claim that ZeniMax has an interest in knowing "whether [its] intellectual property has been transferred to [an] unauthorized party," ZeniMax has no interest in or ownership over any of Defendants' intellectual property, and we reiterate our repeated requests for ZeniMax to identify, with specificity, the intellectual property it claims has been misappropriated.  To date, ZeniMax's allegations have lacked any degree of specificity sufficient for Defendants to understand what source code or technology of ZeniMax it claims is in the Oculus Rift or SDK.

If you continue to wish to discuss these issues, I am unavailable today or Monday for a meet and confer, but my partner Josh Dalton can be available on Monday, July 28, 2014

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
Santa Monica
Silicon Valley
Tokyo
Washington


Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

P. Anthony Sammi, Esq.
July 25, 2014
Page 2

from 1:00-2:00pm Eastern Time or 3:00-5:00pm Eastern Time to discuss your demands.
If you wish to schedule such a call, please let Josh know what time works for you.

Please do not hesitate to contact me with any questions.

Sincerely yours,

Geoffrey M. Howard

Encl.

cc:   Daniel Offner, Esq.
      Joshua M. Dalton, Esq.

# *Delaware*

PAGE  1

### *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"OCULUS VR, INC.", A DELAWARE CORPORATION,

WITH AND INTO "INCEPTION ACQUISITION SUB II, LLC" UNDER THE NAME OF "OCULUS VR, LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FIRST DAY OF JULY, A.D. 2014, AT 8:21 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

**5501511  8100M**

**140974353**

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1550039

DATE: 07-21-14

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 08:34 AM 07/21/2014*
*FILED 08:21 AM 07/21/2014*
*SRV 140974353 - 5501511 FILE*

# CERTIFICATE OF MERGER
## FOR THE MERGER OF
## OCULUS VR, INC.
## WITH AND INTO
## INCEPTION ACQUISITION SUB II, LLC

July 21, 2014

Pursuant to Section 264(c) of the
General Corporation Law of the State of Delaware
and Section 18-209 of the Delaware Limited Liability Company Act

Inception Acquisition Sub II, LLC, a Delaware limited liability company ("**Merger Sub II**"), does hereby certify to the following facts relating to the merger (the "**Merger**") of Oculus VR, Inc., a Delaware corporation (the "**Company**"), with and into Merger Sub II, with Merger Sub II continuing as the surviving entity of the Merger (the "**Surviving Entity**"):

FIRST:     The constituent business entities participating in the Merger herein certified are (i) the Company, a corporation, which is incorporated under the laws of the State of Delaware and (ii) Merger Sub II, a limited liability company, which is organized under the laws of the State of Delaware.

SECOND:    An Agreement and Plan of Merger (as amended from time to time in accordance with its terms, the "**Merger Agreement**"), has been approved, adopted, certified, executed and acknowledged by Merger Sub II and the Company in accordance with the provisions of § 18-209(b) of the Delaware Limited Liability Company Act and in accordance with the provisions of §§ 228 and 264(c) of the Delaware General Corporation Law.

THIRD:     Pursuant to § 18-209(c)(4) of the Delaware Limited Liability Company Act, the first paragraph of the Certificate of Formation, relating to the name of Merger Sub II, is hereby amended to read in its entirety as follows: "The name of the limited liability company is **Oculus VR, LLC**." The Certificate of Formation of Merger Sub II, as amended by the immediately preceding sentence, shall continue to be the Certificate of Formation of the Surviving Entity until amended or changed pursuant to the provisions of the Delaware Limited Liability Company Act.

FOURTH:    The name of the Surviving Entity in the Merger herein certified is **Inception Acquisition Sub II, LLC**, which shall continue its existence as said surviving limited liability company under the name **Oculus VR, LLC** upon the effective date of the Merger, pursuant to the provisions of the Delaware Limited Liability Company Act.

FIFTH:     The executed Merger Agreement is on file at the principal place of business of the Surviving Entity, 1601 Willow Road, Menlo Park, CA 94025.

SIXTH:     A copy of the executed Merger Agreement will be furnished by the Surviving Entity on request and without cost, to any member of Merger Sub II or any stockholder of the Company.

SEVENTH:   The Merger shall become effective upon filing of this Certificate of Merger with the Secretary of State of the State of Delaware.

**IN WITNESS WHEREOF,** Merger Sub II has caused this Certificate of Merger to be executed by its duly authorized person as of the date first above written.

**INCEPTION ACQUISITION SUB II, LLC**

By:
Name:   David Kling
Title:   Chief Executive Officer, President and
Secretary

[SIGNATURE PAGE TO SECOND CERTIFICATE OF MERGER]

# *Delaware*

PAGE  1

### *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"INCEPTION ACQUISITION SUB, INC.", A DELAWARE CORPORATION,

WITH AND INTO "OCULUS VR, INC." UNDER THE NAME OF "OCULUS VR, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-FIRST DAY OF JULY, A.D. 2014, AT 7:58 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

5320960   8100M

140974305

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1549977

DATE: 07-21-14

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 08:06 AM 07/21/2014*
*FILED 07:58 AM 07/21/2014*
*SRV 140974305 - 5320960 FILE*

**CERTIFICATE OF MERGER**
**FOR THE MERGER OF**
**INCEPTION ACQUISITION SUB, INC.**
**WITH AND INTO**
**OCULUS VR, INC.**

July 21, 2014

Pursuant to Section 251(c) of the
General Corporation Law of the State of Delaware

Oculus VR, Inc., a Delaware corporation (the "***Company***"), does hereby certify to the following facts relating to the merger (the "***Merger***") of Inception Acquisition Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Facebook, Inc., a Delaware corporation ("***Merger Sub***"), with and into the Company, with the Company remaining as the surviving corporation of the Merger (the "***Surviving Corporation***"):

FIRST: The Company's name is Oculus VR, Inc., and it is incorporated pursuant to the General Corporation Law of the State of Delaware ("***DGCL***"). Merger Sub's name is Inception Acquisition Sub, Inc., and it is incorporated pursuant to the DGCL. The Company and Merger Sub are the constituent corporations in the Merger.

SECOND: An Agreement and Plan of Merger has been approved, adopted, executed and acknowledged by the Company and by Merger Sub in accordance with the provisions of subsection (c) of Section 251 of the DGCL.

THIRD: The name of the Surviving Corporation of the Merger shall be Oculus VR, Inc., which shall continue its existence as the surviving corporation under the name Oculus VR, Inc.

FOURTH: Upon the effectiveness of the filing of this Certificate of Merger, the Certificate of Incorporation of the Company, as amended to date, shall be amended and restated to read in its entirety by reason of the Merger herein certified as set forth in <u>Exhibit A</u> attached hereto and shall continue as the restated Certificate of Incorporation of the Surviving Corporation until further amended in accordance with the provisions of the DGCL.

FIFTH: The Surviving Corporation shall be a corporation formed and existing under the laws of the State of Delaware.

SIXTH: The executed Agreement and Plan of Merger is on file at the principal place of business of the Surviving Corporation, at 1601 Willow Road, Menlo Park, California 94025.

26246/00261/DOCS/3140935.5A

SEVENTH:    A copy of the executed Agreement and Plan of Merger will be furnished by the Surviving Corporation, on request and without cost, to any stockholder of any constituent corporation of the Merger.

EIGHTH:    The Merger shall become effective immediately upon filing of this Certificate of Merger with the Secretary of State of the State of Delaware in accordance with the provisions of Sections 103 and 251(c) of the DGCL.

*[**Remainder of Page Intentionally Left Blank**]*

IN WITNESS WHEREOF, Oculus VR, Inc. has caused this Certificate of Merger to be executed in its corporate name by its duly authorized officer as of the date first above written.

OCULUS VR, INC.

By: _____

Name:   Brenden Iribe Trexler

Title:   Chief Executive Officer

26246/00261/DOCS/3140935.3

**EXHIBIT A**

**CERTIFICATE OF INCORPORATION OF**
OCULUS VR, INC.

**ARTICLE I**

The name of the corporation is Oculus VR, Inc. (the "*Corporation*").

**ARTICLE II**

The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, County of New Castle, 19808. The name of its registered agent at such address is Corporation Service Company.

**ARTICLE III**

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "*DGCL*").

**ARTICLE IV**

The total number of shares of stock which the Corporation has authority to issue is 100 shares, all of which shall be Common Stock, $0.0001 par value per share.

**ARTICLE V**

The Board of Directors of the Corporation shall have the power to adopt, amend or repeal Bylaws of the Corporation.

**ARTICLE VI**

Election of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

**ARTICLE VII**

Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide. The books of the Corporation may be kept (subject to any provision contained in the DGCL) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws of the Corporation.

**ARTICLE VIII**

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

## ARTICLE IX

To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification (and advancement of expenses) to agents of the Corporation (and any other person to which the DGCL permits the Corporation to provide indemnification) through bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the DGCL, subject only to limits created by applicable law (statutory or non-statutory), with respect to actions for breach of duty to the Corporation, its stockholders and others.  Any amendment, repeal or modification of the forgoing provisions of this Article IX shall not adversely affect any right or protection of a director, officer, agent or other person existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director, officer or agent occurring prior to, such amendment, repeal or modification.

## ARTICLE X

A director of the Corporation shall, to the fullest extent permitted by the DGCL as it now exists or as it may hereafter be amended, not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL or (iv) for any transaction from which the director derived any improper personal benefit.  If the DGCL is amended, after approval by the stockholders of this Article, to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended.

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "INCEPTION ACQUISITION SUB II, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE EIGHTEENTH DAY OF JULY, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "INCEPTION ACQUISITION SUB II, LLC" WAS FORMED ON THE TWENTY-FIRST DAY OF MARCH, A.D. 2014.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.

Jeffrey W. Bullock, Secretary of State

**5501511  8300**

**140971365**

AUTHENTICATION: 1547875

DATE: 07-18-14

You may verify this certificate online at corp.delaware.gov/authver.shtml

# EXHIBIT 4

**From:**      Dalton, Joshua M. [josh.dalton@bingham.com]
**To:**        Sammi, P. Anthony (NYC)
**Subject:**   RE: call
**Date:**      7/28/2014 1:50:08 PM
**CC:**        Project ZeniMax IP DL; zzm oculus/zenimax (ext)
**BCC:**

**Message:**

Tony:


Attached please find the Initial Operating Agreement of Inception Acquisition Sub II, LLC and the Joint Action by Written Consent of the Managers and Sole Member of Inception Acquisition Sub II, LLC.  Consistent with your prior undertaking to do so, please treat these two documents as Attorney's Eyes Only.


You now have more than enough to confirm who the proper party is and where the Oculus VR, Inc. IP went (or didn't go).  Please send over a draft of your motion to substitute parties so we can move that process forward.


Rgds.


-Josh




From: Sammi, P. Anthony [mailto:Anthony.Sammi@skadden.com]
Sent: Friday, July 25, 2014 5:56 PM
To: Dalton, Joshua M.
Cc: DLPZENIMAX@skadden.com; zzm oculus/zenimax (ext)
Subject: RE: call


Josh,

1

Thank you for your e-mail. The information you provided does not resolve our concerns. You have not provided any documents to date other than certain publicly available documents which represent a small part of the complete set of transaction documents. For obvious reasons, we cannot rely on representations of counsel on this critical issue.

We look forward to the production of documents early next week referenced in your e-mail and will reach out to you to confer further once we have reviewed those documents. That said, we could avoid this back and forth altogether if Defendants would simply produce the complete set of transaction documents.

Regards,

Tony

From: Dalton, Joshua M. [mailto:josh.dalton@bingham.com]
Sent: Friday, July 25, 2014 5:09 PM
To: Sammi, P. Anthony (NYC)
Cc: Project ZeniMax IP DL; zzm oculus/zenimax (ext)
Subject: RE: call

Tony,

When we spoke earlier this afternoon, you explained that the urgency for your demands was to understand who the named defendant should be and to understand who owns the IP assets that were previously owned by Oculus VR, Inc. As I just explained by phone, and detailed below, the documents and information we have now provided definitively answer those questions. The answer to both is Oculus VR, LLC.

To your specific requests:

2

1.     You already have access to the Merger Agreement through publicly available sources. The schedules and exhibits to that agreement are not needed to understand the structure of the merger or where the IP that was at Oculus VR, Inc. ended up (again, it ended up at Oculus VR, LLC).  Thus, we do not agree to produce the schedules and exhibits on the expedited basis you have demanded.

2.     We (Bingham) do not have the requested copies of the certificates of formation and organizing agreements.  We are looking into it.

3.     Perhaps most importantly to addressing your concerns, we have confirmed that there are no licensing agreements concerning IP assets.  That is, there were no in-licenses or out-licenses in connection with this merger.  We understand that ZeniMax feared that Oculus VR, Inc. sold its IP assets to Facebook and that Facebook licensed the IP assets to Oculus VR, LLC.  That is not how this merger was structured.  Oculus VR, LLC now owns the IP assets that were previously owned by Oculus VR, Inc.

Particularly with these confirmations, ZeniMax plainly has sufficient information to answer to questions you posed during our call today. As stated in prior communications, we will be filing a Supplemental Corporate Disclosure Statement shortly.  We will also work with you to substitute Oculus VR, LLC for Oculus VR, Inc. as needed.

If you have any questions or wish to discuss this issue after receiving the documents next week, please let me know.  I have, as you requested, reserved some time Monday should you feel such a discussion is necessary.

Rgds.

-Josh

3

From: Sammi, P. Anthony [mailto:Anthony.Sammi@skadden.com]
Sent: Friday, July 25, 2014 2:35 PM
To: Dalton, Joshua M.
Cc: DLPZENIMAX@skadden.com
Subject: RE: call


Josh,


Thank you for calling me back this afternoon.  To summarize our discussion:  You told me that you could not give me a response to my question because you did not know the answer.  I understand that you are now looking into it and will provide an answer by 5 p.m. (ET) today as to whether you will provide the transaction documents requested. You told me that while you cannot commit to a specific day for production, it is your present understanding that there is no reason why you cannot send those transaction documents (if such documents exist) by early next week.


As I discussed on the call, by "transaction documents," I mean the set of documents that law firms such as our respective firms typically assemble for significant corporate acquisition transactions.  That set of documents is not limited to public filings, but also such documents as (i) the complete merger agreement, and any amended or restated merger agreements, and all exhibits and schedules thereto; (ii) certificates of formation as well as organizing agreements for any entities created in connection with the transaction, included but not limited to Oculus VR, LLC; and (iii) any licensing agreements or other agreements for the transfer of intellectual property entered into in connection with the acquisition transaction.


In light of your statements on the call, I agreed to wait for your answer by 5pm (ET).  I look forward to hearing from you on or before that time.   I hope we resolve this issue promptly, thanks.


Regards,

Tony

-----Original Message-----
From: Dalton, Joshua M. [mailto:josh.dalton@bingham.com]
Sent: Friday, July 25, 2014 1:34 PM
To: Sammi, P. Anthony (NYC)
Subject: Re: call


Ok. Give me a few minutes to get to my desk and I will call you.


Best.


-Josh


> On Jul 25, 2014, at 1:31 PM, "Sammi, P. Anthony" <Anthony.Sammi@skadden.com <mailto:Anthony.Sammi@skadden.com> > wrote:

>

> Let's please talk now as we agreed.  It is 1:30pm.  Thank you.

> T.

>

> -----Original Message-----

> From: Dalton, Joshua M. [mailto:josh.dalton@bingham.com <mailto:josh.dalton@bingham.com> ]

> Sent: Friday, July 25, 2014 1:22 PM

> To: Sammi, P. Anthony (NYC)

> Subject: Re: call

>

> Tony:

5

>

> Thanks for the email. Unless you object, I will call you back as soon as I have an answer to your questions.

>

> Best.

>

> -Josh

>

> On Jul 25, 2014, at 1:12 PM, "Sammi, P. Anthony" <Anthony.Sammi@skadden.com<mailto:Anthony.Sammi@skadden.com <mailto:Anthony.Sammi@skadden.com%3cmailto:Anthony.Sammi@skadden.com> >> wrote:

>

> Josh,

>

> Yes, please call my direct line 212.735.2307.  On that call, I am looking for the answer to the following question:

>

> Will you produce the following set of transaction documents which your clients have on hand, by sending them to me via email on a date certain next week, which I will agree to keep them as "for outside counsel only" until a protective order has been entered:

>

>

> (i)          the complete merger agreement, and any amended or restated merger agreements, and all exhibits and schedules thereto;

>

> (ii)         all certificates of formation and organizing agreements for any entities created in connection with that transaction, included but not limited to Oculus VR, LLC; and

6

.

>

> (iii)          any licensing agreements or other agreements for the transfer of intellectual property entered into in connection with that transaction.

>

> Regards,

> Tony

>

>

> From: Dalton, Joshua M. [mailto:josh.dalton@bingham.com <mailto:josh.dalton@bingham.com> ]

> Sent: Friday, July 25, 2014 1:07 PM

> To: Sammi, P. Anthony (NYC)

> Subject: call

>

> Tony:

>

> Saw you called.  Are you free around 1:30?

>

> -Josh

>

>

> _____

> Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the

7

intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

>

> -----------------------------------------------------------------------------

> *************************************************

> This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

>

> Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

> *************************************************

>

===================================================================
==========

>


**Attachments:**
    Initial Operating Agt (Inception Acquistion Sub II, LLC).pdf
    23. Merger Sub II - Organizational Resolutions -.pdf

8

**INITIAL OPERATING AGREEMENT**

**OF**

**INCEPTION ACQUISITION SUB II, LLC**





2



3



**JOINT ACTION BY WRITTEN CONSENT**

**OF THE MANAGERS AND SOLE MEMBER**

**OF INCEPTION ACQUISITION SUB II, LLC**















# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>OCULUS VR, INC. and PALMER LUCKEY, )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 3:14-01849-P<br><br><br>JURY TRIAL DEMANDED |

**OCULUS VR, LLC (SUCCESSOR BY MERGER TO OCULUS VR, INC.) AND
PALMER LUCKEY'S INITIAL DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), and the agreement of the parties, Defendants Oculus VR, LLC (successor by merger to Oculus VR, Inc.) ("Oculus VR") and Palmer Luckey (collectively, "Defendants") make the following initial disclosures to Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax").

**I.      IDENTIFY OF FACT WITNESSES.**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), and based on its investigation to date, Defendants believe that one or more of the individuals identified below are likely to have discoverable information relevant to Defendants' claims and defenses that Defendants may use to support their claims or defenses, other than those solely for impeachment.  The subject areas for which these individuals are identified are preliminary and subject to change as Defendants' investigation continue.  The identification of a particular subject matter is not a representation that the individual has full knowledge of that subject matter area, or that his or her knowledge is limited to that subject matter area.  In addition to other sources, ZeniMax may reference documents produced in this matter for further information regarding the listed individuals.

| | Possible Witness | Possible Subjects |
|---|---|---|
| 1. | Presently unknown ZeniMax personnel<br><br><br><br><br><br>Address and phone number unknown | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 2. | Robert A. Altman<br><br><br><br><br><br>Address and phone number unknown | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 3. | J. Griffin Lesher<br><br><br><br><br><br>Address and phone number unknown | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 4. | James L. Leder<br><br><br><br><br><br>Address and phone number unknown | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 5. | Vlatko Andonov<br><br><br><br><br><br>Address and phone number unknown | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 6. | Todd Hollenshead<br><br>*Contact through counsel:*<br>*D. Wade Cloud Jr.*<br>*Hiersche, Hayward, Drakeley & Urbach, P.C,*<br>*15303 Dallas Parkway, Suite 700 Addison, TX 75001* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |

| | Possible Witness | Possible Subjects |
|---|---|---|
| | *972-701-7013* | |
| 7. | Palmer Luckey<br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 8. | John Carmack<br><br>*Contact through counsel:*<br>*Richard A. Smith*<br>*Lynn Tillotson Pinker & Cox, LLP*<br>*2100 Ross Avenue, Suite 2700,*<br>*Dallas, TX 75201*<br>*214-981-3824* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 9. | Brendan Iribe<br><br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 10. | Nate Mitchell<br><br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 11. | Laird Malamed<br><br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 12. | Michael Antonov<br><br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 13. | Jack McCauley | ZeniMax's claims including Defendants' |

- 3 -

|     | **Possible Witness** | **Possible Subjects** |
| --- | --- | --- |
|     | *Contact through counsel at Bingham McCutchen LLP* | alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 14. | Nirav Patel<br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 15. | Steve LaValle<br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 16. | Brant Lewis<br><br><br>*Contact through counsel at Bingham McCutchen LLP* | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 17. | Hillcrest Labs, Inc.<br>15245 Shady Grove Road, Suite 400<br>Rockville, MD 20850<br>240-386-0600 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 18. | eMagin Corp.<br>3006 Northup Way, Suite 103<br>Bellevue, WA 98004<br>425-284-5200 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 19. | Virtual Realities Ltd.<br>2600 South Shore Boulevard, Suite 300<br>League City, Texas 77573<br>800-683-2917 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark |

|  | **Possible Witness** | **Possible Subjects** |
|---|---|---|
|  |  | infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 20. | Sony Corporation Ltd. 1-7-1 Konan, Minato-ku, Tokyo 108-0075, Japan 81-3-6748-2111 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 21. | NVIDIA Corporation 2701 San Tomas Expressway Santa Clara, CA 95050 408-486-2000 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |
| 22. | Intel Corporation 2200 Mission College Blvd. Santa Clara, CA 95054 408-765-8080 | ZeniMax's claims including Defendants' alleged misappropriation of ZeniMax's trade secrets, copyright infringement, breach of contract, unjust enrichment, trademark infringement, false designation and Oculus VR's alleged unfair competition; Defendants' affirmative defenses |

## II.    DOCUMENTS SUPPORTING DEFENDANTS' POSITION.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), Defendants identify the following categories of documents, data compilations, and tangible things, some of which may be in Defendants' possession, custody or control, that they may use to support their claims or defenses:

- documents related to Defendants' products or other works at issue in this action;

- documents demonstrating that Defendants did not infringe ZeniMax's intellectual property;

- documents demonstrating that Defendants did not misappropriate any confidential information or trade secrets from ZeniMax;

- documents demonstrating that Defendants did not unfairly compete with ZeniMax;

- 5 -

- documents demonstrating that ZeniMax's claims are barred by the doctrines of acquiescence, laches, equitable estoppel, waiver and/or unclean hands;

- documents demonstrating that ZeniMax's claims are barred to the extent the allegedly unlawful or infringing use of the works at issue was licensed or otherwise authorized by persons or entities with the right to license or authorize such use;

- documents demonstrating that ZeniMax's trademark-based claims are barred because Defendants' use of any ZeniMax owned trademarks was pursuant to ZeniMax's express or implied permission;

- documents demonstrating that ZeniMax's breach of contract claims are barred because there was no meeting of the minds with respect to the alleged Non-Disclosure Agreement sufficient to form a valid contract;

- documents demonstrating limitations on damages available to ZeniMax.

This disclosure does not constitute an admission as to the admissibility or relevance of materials or a waiver of the attorney-client privilege, the protections of the work product doctrine, or any other applicable privilege or discovery protection.  The documents and things that are in the possession, custody, or control of Defendants are likely to be located at Oculus VR's Irvine offices at 19900 MacArthur Blvd, Suite 400, Irvine CA 92612 and 19800 MacArthur Blvd, Suite 200, Irvine, CA 92612; Oculus VR's Dallas offices at 8750 North Central Expressway, Dallas, TX 75231; Oculus VR's Seattle offices at 601 108th Avenue Northeast, 19th Floor, Bellevue, WA 98004; or at the offices of Defendants' counsel.  In addition to the documents referenced in these initial disclosures, Defendants expect to discover additional documents and things within the custody, possession or control of others, including ZeniMax, upon which Defendants may rely to support its claims or defenses.

## III.    DAMAGE COMPUTATION.

Defendants do not believe that any damages are owed to ZeniMax and reserve the right to respond to any damages computation that ZeniMax may present.

- 6 -

## IV.     INSURANCE AGREEMENTS.

Defendants are investigating insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment.

## V.      SUPPLEMENTATION AS APPROPRIATE.

These disclosures are based on Defendants' investigation and analysis to date and ZeniMax's assertions to date.  Defendants' investigation continues, and Defendants reserve the right to supplement these disclosures as appropriate.

Dated:  July 23, 2014                    Respectfully submitted,

                                         **Oculus VR, LLC (successor by merger to Oculus VR,
                                         Inc.) and Palmer Luckey,**

                                         By Their Attorneys,


                                         /s/ Joshua M. Dalton
                                         _____

                                         E. Leon Carter
                                         Texas Bar No. 03914300
                                         lcarter@carterscholer.com
                                         Linda R. Stahl
                                         Texas Bar No. 00798525
                                         lstahl@carterscholer.com
                                         **CARTER SCHOLER**
                                         Campbell Centre II
                                         8150 N. Central Expressway, 5th Floor
                                         Dallas, Texas 75206
                                         T: 214.550.8188
                                         F: 214.550.8185

                                         Geoffrey M. Howard (*pro hac vice*)
                                         geoff.howard@bingham.com
                                         John A. Polito (*pro hac vice*)
                                         john.polito@bingham.com
                                         Lucy Wang (*pro hac vice*)
                                         lucy.wang@bingham.com
                                         **BINGHAM MCCUTCHEN LLP**
                                         Three Embarcadero Center
                                         San Francisco, California  94111-4067
                                         T: 415.393.2000
                                         F: 415.393.2286

                                         Joshua M. Dalton (*pro hac vice*)
                                         josh.dalton@bingham.com
                                         **BINGHAM MCCUTCHEN LLP**
                                         One Federal Street
                                         Boston, MA  02110-1726
                                         T: 617.951.8000
                                         F: 617.951.8736

- 8 -

**CERTIFICATE OF SERVICE**

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing Oculus VR, LLC (successor by merger to Oculus VR, Inc.) and Palmer Luckey's Initial Disclosures to be sent by e-mail delivery to counsel for Plaintiffs on July 23, 2014 at phillip.philbin@haynesboone.com, michael.karson@haynesboone.com, anddlpzenimax@skadden.com.

/s/ Joshua M. Dalton
Joshua M. Dalton

# EXHIBIT 6

# BINGHAM

Joshua M. Dalton
Direct Phone:  +1.617.951.8284
Direct Fax:     +1.617.428.6305
josh.dalton@bingham.com

July 11, 2014

**Via E-Mail**

Kurt Wm. Hemr, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
500 Boylston Street
Boston, MA  02116-3740

**Re:  ZeniMax Media Inc., et al. v. Oculus VR, Inc., et al., No. 3:14-cv-01849**

Dear Mr. Hemr:   *Kurt*

Enclosed herewith please find (1) Defendants' First Set of Interrogatories to Plaintiffs
(Interrogatories Nos 1-5) and (2) Defendants' First Set of Requests for Production of
Documents and Things to Plaintiffs (Requests for Production Nos. 1-110).

Please let me know if you have any questions or comments regarding the foregoing.

Sincerely, yours,

Joshua M. Dalton

Enclosures

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
One Federal Street
Boston, MA  02110-1726

T +1.617.951.8000
F +1.617.951.8736
bingham.com        A/76239088.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, ) | |
| ) | CIVIL ACTION |
| Plaintiffs, ) | NO. 3:14-01849-P |
| ) | |
| v. ) | |
| ) | |
| OCULUS VR, INC. and PALMER LUCKEY, ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |
| ) | |

## DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS
### (INTERROGATORIES NOS. 1-5)

Pursuant to Federal Rules of Civil Procedure 26 and 33, defendants Oculus VR, Inc.

("Oculus VR") and Palmer Luckey ("Luckey") (collectively, "Defendants") hereby request that

plaintiffs ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively,

"Plaintiffs") respond to the following Interrogatories, separately and fully, under oath and in

writing within thirty days after service of these Interrogatories.

### DEFINITIONS AND INSTRUCTIONS

1.     The terms "ZeniMax," "Plaintiffs," "you," and "your" shall mean and include

plaintiff ZeniMax Media Inc., and where applicable, its officers, directors, current and former

employees, partners, corporate parent, subsidiaries (including but not limited to id Software

LLC), or affiliates and all those persons acting on its behalf.

2.     The term "id Software" shall mean and include plaintiff id Software LLC, and

where applicable, its officers, directors, current and former employees, partners, corporate parent,

subsidiaries, or affiliates and all those persons acting on its behalf.

3.      The terms "Oculus VR" shall mean and include defendant Oculus VR, Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

4.      The term "Luckey" shall mean defendant Palmer Luckey.

5.      The term "Defendants" shall mean "Oculus VR" and "Luckey"

6.      The term "Complaint" shall mean the Complaint Plaintiffs filed in the above-captioned matter on May 21, 2014.

7.      The term "Answer" shall mean the Answer Defendants filed in the above-captioned matter on June 25, 2014.

8.      The term "HMD" shall mean head-mounted display.

9.      The term "Oculus DK1" shall mean the first development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

10.     The term "Oculus DK2" shall mean the second development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

11.     The term "Rift" shall mean the Oculus Rift HMD, including without limitation, all prototypes, successors, and components, Oculus DK1, and Oculus DK2, whether or not altered or modified.

12.     The term "SDK" shall mean the Oculus software development kit, including without limitation, all versions of the Oculus software development kit, whether or not released to Plaintiffs or any Third Parties.

13.     The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2

14.     The term "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or being in any other way relevant to the particular subject matter identified.

15.     The term "document" is defined to be synonymous in meaning and equal is scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

16.     The term "things" shall mean any tangible item, including, without limitation, models, prototypes, and samples of any composition, device, or apparatus.

17.     The terms "person" and "persons" shall mean any natural person or any business, legal, or governmental entity or association.

18.     The term "related to" shall be understood to be synonymous with "concerning."

19.     The following rules of construction shall apply to all interrogatories as necessary to bring within the scope of discovery interrogatories all responses that might otherwise be construed to be outside of its scope:

      a.    The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition, or instruction more inclusive;

      b.    The terms "any" and each" shall be construed to include and encompass "all";

      c.    The term "including" means including but not limited to;

      d.    Use of the word "the" shall not be construed as limiting the scope of any request;

      e.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in context.

3

20.    The words "identify", "identifying", "identity" or "identification" shall mean and include:

 a.    When used in reference to a document:

  i.    to describe the date it was prepared or created, the identity of its author or originator, the type of document (e.g., letter, telegram, chart, photograph, sound recording, etc.), the identity of its recipient or addressee, its present location, the identity of its present custodian(s), and the Bates stamp number or other reference number, if such document has been produced in response to Defendants' First Request For Production of Documents and Things or in response to any subsequent Requests For Production of Documents and Things by Defendants, or in lieu of providing the requested information about the identity of the document, to the extent that the document itself contains the requested information, you may attach the document to your answers; and

  ii.    if the document has been destroyed or is otherwise no longer in existence or cannot be found, the reason why such document no longer exists, the identity of the person(s) responsible for the destruction or loss of the document, and the identity of its last known custodian(s).

 b.    When used in reference to a natural person:

  i.    state such person's name;

4

  ii. state such person's present residential address and telephone number (or if not known or ascertainable, the last known address indicating that it is the last known address);

  iii. state such person's present place of business and present business address and telephone number (or if not known or ascertainable, the last known place of business and business address indicating that it is the last known place of business and business address); and

  iv. state such person's job title and employer (or if not known or ascertainable, the last known employer indicating that it is the last known employer).

 c. When used with reference to any person other than a natural person:

  i. state its full name;

  ii. state the address and telephone number of its principal place of business;

  iii. state the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation;

  iv. identify all individuals who acted and/or who authorized another to act on its behalf in connection with the matters referred to;

  v. in the case of a corporation, identify its directors and principal officers; and

  vi. in the case of an entity other than a corporation, identify its partners, principals and all individuals who acted or who

5

authorized another to act on its behalf in connection with the matters referred to.

d.  When used with reference to a communication:

  i.  state whether the communication was written or oral;

  ii.  state the date of the communication;

  iii.  identify the parties to the communication;

  iv.  describe in as much detail as possible the substance of the communication; and

  v.  identify all documents which refer to, evidence, describe or constitute the communication.

21.  All interrogatories must be answered fully, completely and in writing, and signed by someone with authority to make binding judicial admission on behalf of Plaintiffs.  In the event that any interrogatory cannot be answered fully after the exercise of reasonable diligence, you shall furnish as complete an answer as you can, and shall explain in detail the reasons why you cannot give a full answer, including a statement as to what is needed in order that you may be in a position to answer the interrogatory fully.

22.  These interrogatories shall be deemed continuing so as to require prompt, further supplementation (without further request by Defendants or their attorneys) if you obtain additional information responsive to the request at any time prior to trial herein.

23.  If you withhold any information covered by these interrogatories under a claim of privilege (including attorney work-product), furnish a list specifying (a) the nature of the privilege claimed, and, if the privilege is being asserted in connection with state law, the state's privilege rule being invoked; (b) the identity of the person making the communication; (c) the

6

identity of each person present while the communication was made; (d) the date and place of the communication; (e) the subject matter of the communication; and (f) the interrogatory to which the withheld information is responsive.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person known to you or your attorney who has or is believed to have any knowledge of any facts pertaining to any claims, defenses, facts or allegations contained in the Complaint and/or Answer.  With respect to each person, said identification should include, without limitation:

(a)  his or her full name;

(b)  his or her present or last-known addresses;

(c)  his or her present or last-known telephone numbers; and

(d)  his or her present or last-known position and business affiliation.

### INTERROGATORY NO. 2:

Identify each person whom Plaintiffs expect to provide sworn testimony in this matter, at trial or otherwise, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. For each witness you expect to call to offer evidence you believe is admissible under Federal Rules of Evidence 701, 702, 703, 704, or 705, include in your description of the subject matter on which each witness is expected to testify, the substance of the facts to which each such witness is expected to testify, the substance of any opinions to which each such witness is expected to testify, and a summary of the grounds for each such opinion.

### INTERROGATORY NO. 3:

Identify all proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint.

7

**INTERROGATORY NO. 4:**

Identify with particularity the "ZeniMax VR Technology" referred to in the Complaint, including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed by ZeniMax employees, or otherwise allegedly owned by ZeniMax.  With respect to each alleged technology, said identification should include without limitation a specific description of every component of the technology, how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift,SDK, or any other Oculus VR product.

**INTERROGATORY NO. 5:**

Identify with particularity all trade secrets ZeniMax alleges Defendants misappropriated, including all "ZeniMax Trade Secrets" referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

(a) "confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset" referenced in the Complaint; and/or

8

(b) the "enforceable trade secret[] in the confidential, proprietary components of ZeniMax's "DOOM 3: BFG Edition" computer program code" referenced in the Complaint. With respect to each such alleged trade secret, said identification should include without limitation a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, what component or element or combination of components or elements renders the secret novel or unique, and what component or element or combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product.

9

Dated:  July 11, 2014

Respectfully submitted,

**Oculus VR, INC. and PALMER Luckey,**

By Their Attorneys,


/s/ Joshua M. Dalton
_____

E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

10

## CERTIFICATE OF SERVICE

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing Defendants' First Set of Interrogatories Plaintiffs to be sent by e-mail to counsel for Plaintiffs on July 11, 2014 at phillip.philbin@haynesboone.com, michael.karson@haynesboone.com, and dlpzenimax@skadden.com.


/s/ Joshua M. Dalton
Joshua M. Dalton

11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZeniMax MEDIA INC. and id Software LLC,<br><br>                                    Plaintiffs,<br><br>        v.<br><br>Oculus VR, INC. and PALMER Luckey,<br><br>                                    Defendants. | CIVIL ACTION<br>NO. 3:14-01849-P<br><br><br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS (REQUESTS FOR PRODUCTION NOS. 1-110)

Pursuant to Federal Rules of Civil Procedure 26 and 34, defendants Oculus VR, Inc. ("Oculus VR") and Palmer Luckey ("Luckey") (collectively, "Defendants") hereby request that plaintiffs ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively, "Plaintiffs") produce the documents and things requested below for inspection and copying within thirty days at the Office of Bingham McCutchen LLP, Three Embarcadero Center, San Francisco, CA 94111-4067.

### DEFINITIONS

1.      The terms "ZeniMax," "Plaintiffs," "you," and "your" shall mean and include plaintiff ZeniMax Media Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries (including but not limited to id Software LLC), or affiliates and all those persons acting on its behalf.

2.      The term "id Software" shall mean and include plaintiff id Software LLC, and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all those persons acting on its behalf.

3.      The terms "Oculus VR" shall mean and include defendant Oculus VR, Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

4.      The term "Luckey" shall mean defendant Palmer Luckey.

5.      The term "Defendants" shall mean "Oculus VR" and "Luckey"

6.      The term "Third Party" shall mean any person other than Plaintiffs and Defendants.

7.      The term "Carmack" shall mean John Carmack.

8.      The term "CES 2013" shall mean the International Consumer Electronics Show held in Las Vegas, Nevada under that name in January 2013.

9.      The term "Complaint" shall mean the Complaint Plaintiffs filed in the above-captioned matter on May 21, 2014.

10.     The term "E3 2012" shall mean the Electronic Entertainment Expo industry convention held in Los Angeles, California under that name in June 2012.

11.     The term "eMagin" shall mean eMagin Corp., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

12.     The term "Gamescom 2012" shall mean the video game trade fair held in Cologne, Germany under that name in August 2012.

13.     The terms "HMD" shall mean head-mounted display.

14.     The term "Hillcrest Labs" shall mean Hillcrest Labs, Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

2

15.     The term "Intel" shall mean Intel Corporation, and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

16.     The term "NVIDIA" shall mean NVIDIA Corporation, and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

17.     The term "Oculus DK1" shall mean the first development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

18.     The term "Oculus DK2" shall mean the second development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

19.     The term "PaxPrime 2012" shall mean the Penny Arcade Expo held in Seattle, Washington under that name on or about August 31 to September 2, 2012.

20.     The term "QuakeCon 2012" shall mean the computer game convention sponsored by Plaintiffs and held in Dallas, Texas under that name in August 2012.

21.     The term "Rift" shall mean the Oculus Rift HMD, including without limitation, all prototypes, successors, and components, Oculus DK1, and Oculus DK2, whether or not altered or modified.

22.     The term "SDK" shall mean the Oculus software development kit, including without limitation, all versions of the Oculus software development kit, whether or not released to Plaintiffs or any Third Parties.

23.     The term "Sony" shall mean Sony Corporation, and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

3

24.     The term "Source Code" shall mean computer code and related information, including without limitation, computer source code, object code, coding comments and other documents that describe encoding or decoding algorithms used in computer source code, comments and revision histories associated with computer source code, and formulas, engineering specifications or schematics that define or otherwise describe the algorithms or structure of software or hardware designs.

25.     The term "Unite 2012" shall mean the Unity Technologies Unite developer conference held in Amsterdam, Netherlands under that name in August 2012.

26.     The term "Virtual Realities" shall mean Virtual Realities Ltd., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on its behalf.

27.     The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

28.     The term "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or being in any other way relevant to the particular subject matter identified.

29.     The term "document" is defined to be synonymous in meaning and equal is scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

30.     The term "things" shall mean any tangible item, including, without limitation, models, prototypes, and samples of any composition, device, or apparatus.

31.     The terms "person" and "persons" shall mean any natural person or any business, legal, or governmental entity or association.

4

32.     The term "related to" shall be understood to be synonymous with "concerning."

33.     The following rules of construction shall apply to all Requests as necessary to bring within the scope of discovery Request all responses that might otherwise be construed to be outside of its scope:

    a.     The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition, or instruction more inclusive;

    b.     The terms "any" and each" shall be construed to include and encompass "all";

    c.     The term "including" means including but not limited to;

    d.     Use of the word "the" shall not be construed as limiting the scope of any request;

    e.     The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in context.

## INSTRUCTIONS

A.     Documents shall be produced either as kept in the usual course of business or shall be organized and labeled to correspond with the number of each request to which a produced document is responsive.  If you choose to produce documents as they are as kept in the usual course of business, the documents are to be produced in the boxes, file folders, bindings, and other containers in which the documents are found.  The titles, labels, and other description on the boxes, file folders, bindings, and other containers are to be left intact.

B.     If you claim any form of privilege or discover protection as a ground for not producing or for redacting any document, provide the following information for each document withheld or redacted: (1) the document's preparation date and the date appearing on the document; (2) the name, present and last known home and business addresses, the telephone

5

numbers, the title (and position), and the occupation of those individuals who prepared, produced, and reproduced, and who were the recipients of said document; (3) the number of pages withheld; and (4) a description sufficient to identify the document without revealing the information for which the privilege is claimed, including the general subject matter and character of the document (e.g., letter, memorandum, notes).

C.      If only a portion of a responsive document is privileged or otherwise protected against disclosure, you must produce the responsive non-privileged portion of the document in redacted form, provided that the redacted material is identified and the basis for the claim of privilege stated as provided in instruction B above.

D.      Each requested document is to be produced in its entirety without deletion and excision (except as qualified by instructions B and C above), regardless of whether you consider the entire document to be relevant or responsive to these Requests for Production.

E.      If you have no documents responsive to a particular request in your possession, custody or control, please so state in your written response to the particular request.

F.      For those produced documents that are not in the English language, please produce English translations thereof.

G.      Pursuant to Federal Rule of Civil Procedure Rule 26(e), your responses to the following Requests for Production are to be promptly supplemented to include any subsequently acquired documents and information.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All communications between you and Oculus VR or Luckey.

6

**REQUEST FOR PRODUCTION NO. 2:**

All documents and things concerning your communications to investors, media, and other Third Parties concerning this litigation, Oculus VR or Luckey.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and things produced to you by any Third Party concerning the subject matter of this litigation, Oculus VR or Luckey.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and things concerning your document retention policies, practices and procedures, including without limitations those relating to electronic data retention, preservation, and destruction, and the retention, preservation, and destruction of paper documents.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to identify all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to identify all "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" described as "VR Technology" in paragraph 26 of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and things concerning the claim that Oculus VR or Luckey misappropriated trade secrets owned by you.

7

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify all "ZeniMax Trade Secrets" described in paragraph 106 of the Complaint.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and things concerning your precautions to "maintain the secrecy of the ZeniMax Trade Secrets," including the confidentiality provisions in key employment agreements, password-protected and confidentiality agreements with third-parties to whom the information is disclosed.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and things concerning the claim that Oculus VR or Luckey infringed copyrights owned by you.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things concerning any attempts to obtain copyright registration for software concerning virtual reality, whether successful or unsuccessful, including all correspondence, applications, responses, documents or other materials concerning said registrations.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and things concerning Copyright Registration No. PA0001851913, U.S. Copyright Office Application Service Request No. 1-1446269781, and U.S. Copyright Office Application Service Request No. 1-1446391151, without limitation all correspondence, applications, responses, documents or other materials concerning said registrations.

8

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things concerning the research and development of the "ZeniMax Copyrighted Materials" as described in paragraph 121 of the Complaint.

**REQUEST FOR PRODUCTION NO. 14:**

All versions of the "ZeniMax Copyrighted Materials" as described in paragraph 121 of the Complaint, that you allegedly provided to Oculus VR or Luckey.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things concerning the claim that Oculus VR or Luckey breached any contracts with you.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things concerning the claim that Oculus VR or Luckey unfairly competed with you.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and things concerning the claim that Oculus VR or Luckey committed any wrongful conduct constituting unjust enrichment.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and things concerning the claim that Oculus VR or Luckey violated violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things concerning the claim that Oculus VR or Luckey violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things concerning the preparation, filing, prosecution and/or renewal of any applications for registration of the "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to identify each good or service sold in the United States under or in connection with the "ZeniMax Marks" described in paragraph 160 of the Complaint, including any documents concerning the date the good or service was first offered for sale or in commerce.

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to identify, by year and product or service, the volume or business or transactions generated in connection with the "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 23:**

Copies of all past, current, and/or prospective advertisements and promotional marketing materials for products and services with the "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things sent or received from any Third Party concerning Oculus VR or Luckey's alleged use of any "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 25:**

All documents or things concerning statements, inquiries, comments, complaints or other communications by or from customers, competitors, or other Third Parties, either written or oral, concerning misdirected mail, telephone calls, or orders and/or concerning any confusion,

10

suspicion, belief or doubt on the part of said customer, competitor, or other Third Party as to the relationship between, on the one hand Oculus VR or Luckey and, on the other hand you, concerning the parties' respective products and services.

**REQUEST FOR PRODUCTION NO. 26:**

All documents or things concerning any actual or possible consumer confusion or mistake as to the source, affiliation, association or sponsorship or any kind between your products and services offered in connection with any "ZeniMax Marks" described in paragraph 160 of the Complaint and any products or services offered by Oculus VR or Luckey.

**REQUEST FOR PRODUCTION NO. 27:**

All documents or things concerning whether you and Oculus VR or Luckey are competitors in any product or service market.

**REQUEST FOR PRODUCTION NO. 28:**

All documents or things concerning use by any Third Party of any "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 29:**

All documents or things concerning any objection, litigation, proceeding or other disputes relating to the use of any "ZeniMax Marks" described in paragraph 160 of the Complaint.

**REQUEST FOR PRODUCTION NO. 30:**

All documents or things concerning how and when you first became aware of Oculus VR or Luckey's alleged use of any "ZeniMax Marks" described in paragraph 160 of the Complaint and any documents and things regarding any subsequent communications concerning such use.

11

**REQUEST FOR PRODUCTION NO. 31:**

All documents and things concerning any alleged harm or damages suffered by you from any of the conduct alleged in the Complaint.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and things that tend to support or undermine any of your claims in this litigation.

**REQUEST FOR PRODUCTION NO. 33:**

All documents and things relating to your investigation of the allegations made in the Complaint.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to identify your current and former officers, directors, managers, employees and consultants with personal knowledge of your alleged research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 35:**

All draft and final employment agreements concerning proprietary information including employment agreements, invention assignment agreements, non-disclosure agreements and the like and all related communications between you and any current and former officers, directors, managers, employees and consultants with personal knowledge of your alleged research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 36:**

A forensic image of all USB drives, hard drives, and similar removable media, whether contained in laptops or desktops, used by any current and former officers, directors, managers,

12

employees and consultants with personal knowledge of your alleged research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 37:**

A forensic image of all laptops or desktops used by any current and former officers, directors, managers, employees and consultants with personal knowledge of your alleged research or experimentation concerning virtual reality, including without limitation the "ZeniMax computers" described in paragraph 4 of the Complaint.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and things concerning your alleged investment or abandonment thereof in virtual reality technology including without limitation all financial records, analyses, strategies, budgets, projections, plans, notes, reports, recommendations and documents sufficient to identify all amounts described in paragraph 4 of the Complaint.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and things concerning your belief in the viability or lack thereof of virtual reality technology, including without limitation the Rift.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and things concerning your evaluation of virtual reality technology, including without limitation the Rift

**REQUEST FOR PRODUCTION NO. 41:**

All documents and things concerning your alleged research and experimentation concerning virtual reality, including without limitation all designs, notes, charts, schematics, specifications and plans.

13

**REQUEST FOR PRODUCTION NO. 42:**

All documents and things concerning your decision to stop research and experimentation concerning virtual reality, including without limitation all communications concerning the direction you allegedly provided to Carmack referenced in paragraph 92 of the Complaint.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and things concerning your attempts to patent any technology relating to virtual reality.

**REQUEST FOR PRODUCTION NO. 44:**

All documents and things concerning all versions and prototypes of virtual reality HMDs and related tangible equipment that you obtained, developed, or tested, including without limitation the "off-the-shelf headsets" described in paragraph 25 of the Complaint, the equipment pictured in paragraph 27 of the Complaint, and all equipment you received from Virtual Realities, eMagin, or Sony.

**REQUEST FOR PRODUCTION NO. 45:**

All documents and things concerning "customized firmware" referenced in paragraph 55 of the Complaint.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and things concerning Hillcrest Labs, including without limitation all communications with Third Parties regarding motion sensors and related firmware offered by Hillcrest Labs.

**REQUEST FOR PRODUCTION NO. 47:**

All documents and things concerning the application of any of your games in virtual reality, including without limitation *Doom 3 BFG*, *Rage* and *Skyrim*.

14

**REQUEST FOR PRODUCTION NO. 48:**

All documents and things concerning your requests for, receipt of, or use of any hardware, software, firmware or information concerning virtual reality from Oculus VR or Luckey.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and things concerning your alleged research and experimentation concerning the Rift, including without limitation all hardware, software and firmware "modifications" "improvements" "enhancements" described in Paragraphs 3-9 and 29-31 of the Complaint.

**REQUEST FOR PRODUCTION NO. 50:**

All documents and things concerning any hardware, software, firmware or information concerning virtual reality you allege you provided to Oculus VR or Luckey, including without limitation any information you provided via a file transfer protocol.

**REQUEST FOR PRODUCTION NO. 51:**

All documents and things concerning the Oculus DK1, including without limitation documents sufficient to identify any technology you allege to have contributed.

**REQUEST FOR PRODUCTION NO. 52:**

All documents and things concerning the Oculus SDK, including without limitation your review of the SDK prior to its publication and documents sufficient to identify any code you allege to have contributed.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and things concerning game demonstrations you scheduled or conducted on or around E3 2012, including without limitations the game demonstration described in paragraphs 7 and 37-41 of the Complaint.

15

**REQUEST FOR PRODUCTION NO. 54:**

All documents and things concerning your efforts to generate publicity for *Doom 3 BFG*, including without limitation financial records, analyses, strategies, budgets, projections, plans, notes, reports, recommendations, marketing materials, advertisements, presentations, promotions, and discounts offers.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things concerning your plans to develop, pursue, invest in, abandon or reject Rift support for *Doom 3 BFG*.

**REQUEST FOR PRODUCTION NO. 56:**

All documents and things concerning game demonstrations you scheduled or conducted on or around QuakeCon 2012.

**REQUEST FOR PRODUCTION NO. 57:**

All documents and things concerning demonstrations of Rift prototypes scheduled or conducted on or around QuakeCon 2012.

**REQUEST FOR PRODUCTION NO. 58:**

All documents and things concerning the panel discussion described in paragraph 67 of the Complaint.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and things concerning Oculus VR or Luckey developing, designing, programming, testing, demonstrating, and marketing of the Rift, including without limitation demonstrations conducted at QuakeCon 2012, Unite 2012, PaxPrime 2012, Gamescom 2012, and CES 2013.

16

**REQUEST FOR PRODUCTION NO. 60:**

All documents and things concerning game demonstrations you scheduled or conducted on or around CES 2013.

**REQUEST FOR PRODUCTION NO. 61:**

Oculus VR and Luckey request that you permit the inspection of all versions and prototypes of virtual reality hardware or software that you allege contain your proprietary information including without limitation all hardware and software described in paragraphs 4, 24, at 155 of the Complaint.

**REQUEST FOR PRODUCTION NO. 62:**

Oculus VR and Luckey request that you permit the inspection of all versions and prototypes of virtual reality HMDs and related tangible equipment that you obtained, developed, or tested, including without limitation the "off-the-shelf headsets" described in paragraph 25 of the Complaint, the equipment pictured in paragraph 27 of the Complaint, and all equipment you received from Virtual Realities, eMagin, or Sony.

**REQUEST FOR PRODUCTION NO. 63:**

Oculus VR and Luckey request that you permit the inspection of all hardware, software or firmware you received from Oculus VR or Luckey, including without limitations all versions and prototypes of the Rift prototype(s) and related tangible equipment you received in advance of E3 2012 or QuakeCon 2012.

**REQUEST FOR PRODUCTION NO. 64:**

Oculus VR and Luckey request that you permit the inspection of all tangible equipment used or brought by you to E3 2012 for use in game demonstrations.

17

**REQUEST FOR PRODUCTION NO. 65:**

Oculus VR and Luckey request that you permit the inspection of all tangible equipment used or brought by you to QuakeCon 2012 for use in game demonstrations.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and things concerning the alleged "Non-Disclosure Agreement" between you and Luckey, including without limitation all draft documents and alleged final documents and related communications.

**REQUEST FOR PRODUCTION NO. 67:**

All written documents you allege modified or amended the alleged "Non-Disclosure Agreement" between you and Luckey.

**REQUEST FOR PRODUCTION NO. 68:**

All written documents you allege define the term "Proper Purpose" referenced in paragraph 34 of the Complaint.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things concerning your performance or nonperformance pursuant to the alleged "Non-Disclosure Agreement" between you and Luckey.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things concerning your allegation that Oculus VR "knew and had reason to know that Luckey received [proprietary] information pursuant to the Non-Disclosure Agreement" in paragraph 135 of the Complaint.

**REQUEST FOR PRODUCTION NO. 71:**

All documents and things concerning your allegation that Oculus VR was bound by the "Non-Disclosure Agreement" by its "action and conduct" as reference in paragraphs 136 and 142 of the Complaint.

**REQUEST FOR PRODUCTION NO. 72:**

All documents and things concerning any alleged breach of the "Non-Disclosure Agreement" by Luckey or Oculus VR.

**REQUEST FOR PRODUCTION NO. 73:**

All documents and things concerning proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement."

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things concerning any employment agreements between you and Carmack, including without limitation all drafts, revisions, modifications, amendments of the employment agreements and related communications.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things concerning your ownership or lack thereof of any intellectual property created by Carmack while Carmack was employed by you.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things concerning your performance or nonperformance pursuant to the employment agreement between you and Carmack.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things concerning any alleged breach the employment agreement between you and Carmack.

19

**REQUEST FOR PRODUCTION NO. 78:**

All documents and things concerning the expiration or renewal of employment agreement between you and Carmack, including without limitation all term sheets, draft documents and related communications.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and things concerning the alleged technical advisor agreement between you and Carmack, including without limitation all term sheets, draft documents and related communications.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and things concerning Carmack's publication of Latency Mitigation Strategies on or about February 22, 2013, including without limitation any communications between you and Carmack "allowing [Carmack] to publish this openly."

**REQUEST FOR PRODUCTION NO. 81:**

All documents and things concerning Carmack's communications with any HMD makers other than Oculus VR or Luckey, including but not limited to Virtual Realities, eMagin, and Sony.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and things concerning Carmack's communications with any makers of game consoles, platforms, peripherals, accessories, graphics cards, other than Oculus VR or Luckey including but not limited to Sony, NVIDIA, and Intel.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and things concerning the employment of Carmack or any of your former employees by Oculus VR.

20

**REQUEST FOR PRODUCTION NO. 84:**

All documents and things concerning the resignation of your former employees on or around February 17, 2014.

**REQUEST FOR PRODUCTION NO. 85:**

If you contend that any of your former employees other than Carmack who are currently employed by Oculus VR had access to your proprietary information regarding virtual reality, documents sufficient to identify all such former employees and all such proprietary information regarding virtual reality.

**REQUEST FOR PRODUCTION NO. 86:**

All documents and things concerning the Kickstarter campaign for the Oculus Rift referenced in paragraphs 48-49 and 57-63  of the Complaint.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things concerning any partnership with, investment in, equity ownership of Oculus VR by you, including without limitation the proposals referenced in paragraphs 50, 53, 71, 74, 77-79, 82-23, 88, 91.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and things concerning seed funding, Series A funding or Series B funding for Oculus VR, including without limitation the "investor prospectus[es]" described in paragraphs 80 and 88 of the Complaint .

**REQUEST FOR PRODUCTION NO. 89:**

All documents and things concerning the announcement of the proposed acquisition of Oculus VR referenced in paragraph 101 of the Complaint.

21

**REQUEST FOR PRODUCTION NO. 90:**

All versions of virtual reality-related Source Code you obtained, developed, or tested, including without limitation, all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

**REQUEST FOR PRODUCTION NO. 91**

All documents and things concerning any similarities or differences between the parties' Source Code or software products, including without limitation, all documents and things concerning the testing thereof.

**REQUEST FOR PRODUCTION NO. 92:**

All documents and things concerning the destruction or loss of any virtual reality-related Source Code, including without limitation, all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and things concerning any reimplementation or modification by John Carmack or any ZeniMax employee of any Source Code provided by Defendants to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 94:**

All documents and things concerning any reimplementation or modification by John Carmack or any ZeniMax employee of any Source Code provided by Defendants to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 95:**

All documents sufficient to describe the history of your business, including without limitation the date of founding, ownership changes, name changes, names of all predecessors entities, and all subsidiaries and affiliates.

22

**REQUEST FOR PRODUCTION NO. 96**:

All documents sufficient to demonstrate your internal organization and personnel structure, such as organization charts, internal directories, or personnel lists for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 97**:

All documents and things concerning your revenues, earnings, or profits including without limitation investor presentations, annual reports, annual statements, corporate statements, financial statements, income statements, balance sheets, budgets, projections, business plans, marketing plans, pro formas, and the like for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 98**:

All documents and things concerning your annual management meetings, including without limitation meeting agendas, presentations, reports, notes, minutes, and the like for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 99**:

All documents and things concerning the management committee of id Software including without limitation meeting agendas, presentations, reports, notes, minutes, and the like for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things concerning your communications to investors, media, and other Third Parties concerning virtual reality.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and things concerning your acquisition of id Software, including without limitation all communications, meeting notes, projections models, valuations, memoranda, correspondence, agreements, proposals and presentations concerning all id Software "intellectual property and franchise assets" you claim were acquired in paragraph 21 of the Complaint.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and things upon which you intend to question any witness, whether at deposition, hearing or trial, or that you intend to introduce at the trial of this matter.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and things provided to any individual who you may use to present evidence of the kind admissible under Federal Rules of Evidence 701, 702, 703, or 705.

**REQUEST FOR PRODUCTION NO. 104:**

All documents in any way concerning this action provided to, reviewed by, relied upon or created by any expert witness disclosed by you pursuant to Federal Rule of Civil Procedure 26(a)(2).

**REQUEST FOR PRODUCTION NO. 905:**

All documents and things relating to experts or consultants retained by you in connection with this litigation, including any retainer or consulting agreement, any *curriculum vitae*, and the expert's or consultant's articles or other publications.

**REQUEST FOR PRODUCTION NO. 106:**

All documents and things furnished to, or discussed with, any fact witness contacted, interviewed, or consulted by you or your agents or attorneys in connection with this litigation.

**REQUEST FOR PRODUCTION NO. 107:**

All documents and things identified, relied upon, or referred to in preparing your responses to interrogatories, requests for production, or requests for admission in this litigation.

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things identified, relied upon, or referred to in preparing subpoenas, interrogatories, requests for production, or requests for admission in this litigation.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and things referenced, described or categorized in your Rule 26 initial disclosures.

**REQUEST FOR PRODUCTION NO. 110:**

All documents and things concerning any communication to or from any of the individuals identified in in your Rule 26 initial disclosures concerning the subject matter of this litigation, Oculus VR or Luckey.

25

Dated:  July 11, 2014

Respectfully submitted,

**Oculus VR, INC. and PALMER Luckey,**

By Their Attorneys,

/s/ Joshua M. Dalton
_____

E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

26

**CERTIFICATE OF SERVICE**

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing Defendants' First Set of Requests for Production of Documents and Things to Plaintiffs to be sent by e-mail delivery to counsel for Plaintiffs on July 11, 2014 at phillip.philbin@haynesboone.com, michael.karson@haynesboone.com, and dlpzenimax@skadden.com.

/s/ Joshua M. Dalton
Joshua M. Dalton

27

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC,   ) <br>   ) <br> Plaintiffs,   ) <br>   ) <br> v.   ) <br>   ) <br> OCULUS VR, INC. and PALMER LUCKEY,   ) <br>   ) <br> Defendants.   ) <br>   ) | CIVIL ACTION <br> NO. 3:14-01849-P <br><br><br> JURY TRIAL DEMANDED |

## DEFENDANTS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS (INTERROGATORIES NOS. 6-8)

Pursuant to Federal Rules of Civil Procedure 26 and 33, defendants Oculus VR, Inc. ("Oculus VR") and Palmer Luckey ("Luckey") (collectively, "Defendants") hereby request that plaintiffs ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively, "Plaintiffs") respond to the following Interrogatories, separately and fully, under oath and in writing within thirty days after service of these Interrogatories.

### DEFINITIONS AND INSTRUCTIONS

1.      The terms "ZeniMax," "Plaintiffs," "you," and "your" shall mean and include plaintiff ZeniMax Media Inc., and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries (including but not limited to id Software LLC), or affiliates and all those persons acting on its behalf.

2.      The term "id Software" shall mean and include plaintiff id Software LLC, and where applicable, its officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all those persons acting on its behalf.

A/76249490.4

3.      The terms "Oculus VR" shall mean and include defendant Oculus VR, Inc. and Oculus VR, LLC, and where applicable, their respective officers, directors, current and former employees, partners, corporate parent, subsidiaries, or affiliates and all of those persons acting on their behalf.

4.      The term "Luckey" shall mean defendant Palmer Luckey.

5.      The term "Defendants" shall mean "Oculus VR" and "Luckey"

6.      The term "Complaint" shall mean the Complaint Plaintiffs filed in the above-captioned matter on May 21, 2014.

7.      The term "Answer" shall mean the Answer Defendants filed in the above-captioned matter on June 25, 2014.

8.      The term "HMD" shall mean head-mounted display.

9.      The term "Oculus DK1" shall mean the first development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

10.     The term "Oculus DK2" shall mean the second development kit sold by Oculus VR, including without limitation, all prototypes, successors, and components.

11.     The term "Rift" shall mean the Oculus Rift HMD, including without limitation, all prototypes, successors, and components, Oculus DK1, and Oculus DK2, whether or not altered or modified.

12.     The term "SDK" shall mean the Oculus software development kit, including without limitation, all versions of the Oculus software development kit, whether or not released to Plaintiffs or any Third Parties.

13.     The term "ZeniMax Marks" shall mean United States Trademark Registrations No. 2,050,083 for "DOOM"; No. 2,928,605 for "DOOM 3"; No. 2,303,100 for "DOOM II" and

2

design; No. 2,165,125 for "ID"; No. 3,923,244 for "RAGE"; No. 4,198,972 for "RAGE" and design; No. 4,094,299 for "RAGE" and design; No. 3,972,050 for "RAGE" and design; No. 4,080,839 for "SKYRIM"; No. 4,097,150 for "SKYRIM"; and No. 4,280,859 for "SKYRIM" .

14.     The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

15.     The term "concerning" shall mean relating to, referring to, describing, evidencing, constituting, or being in any other way relevant to the particular subject matter identified.

16.     The term "document" is defined to be synonymous in meaning and equal is scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

17.     The term "things" shall mean any tangible item, including, without limitation, models, prototypes, and samples of any composition, device, or apparatus.

18.     The terms "person" and "persons" shall mean any natural person or any business, legal, or governmental entity or association.

19.     The term "related to" shall be understood to be synonymous with "concerning."

20.     The following rules of construction shall apply to all interrogatories as necessary to bring within the scope of discovery interrogatories all responses that might otherwise be construed to be outside of its scope:

  a. The words "and" and "or" shall be used conjunctively or disjunctively, whichever makes the request, definition, or instruction more inclusive;

  b. The terms "any" and each" shall be construed to include and encompass "all";

3

c.  The term "including" means including but not limited to;

d.  Use of the word "the" shall not be construed as limiting the scope of any request;

e.  The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in context.

21.  The words "identify", "identifying", "identity" or "identification" shall mean and include:

a.  When used in reference to a document:

i.  to describe the date it was prepared or created, the identity of its author or originator, the type of document (e.g., letter, telegram, chart, photograph, sound recording, etc.), the identity of its recipient or addressee, its present location, the identity of its present custodian(s), and the Bates stamp number or other reference number, if such document has been produced in response to Defendants' First Request For Production of Documents and Things or in response to any subsequent Requests For Production of Documents and Things by Defendants, or in lieu of providing the requested information about the identity of the document, to the extent that the document itself contains the requested information, you may attach the document to your answers; and

ii.  if the document has been destroyed or is otherwise no longer in existence or cannot be found, the reason why such document no longer exists, the identity of the person(s) responsible for the

4

destruction or loss of the document, and the identity of its last known custodian(s).

b.     When used in reference to a natural person:

     i.   state such person's name;

     ii.   state such person's present residential address and telephone number (or if not known or ascertainable, the last known address indicating that it is the last known address);

     iii.   state such person's present place of business and present business address and telephone number (or if not known or ascertainable, the last known place of business and business address indicating that it is the last known place of business and business address); and

     iv.   state such person's job title and employer (or if not known or ascertainable, the last known employer indicating that it is the last known employer).

c.     When used with reference to any person other than a natural person:

     i.   state its full name;

     ii.   state the address and telephone number of its principal place of business;

     iii.   state the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation;

     iv.   identify all individuals who acted and/or who authorized another to act on its behalf in connection with the matters referred to;

5

v.   in the case of a corporation, identify its directors and principal officers; and

vi.   in the case of an entity other than a corporation, identify its partners, principals and all individuals who acted or who authorized another to act on its behalf in connection with the matters referred to.

d.   When used with reference to a communication:

i.   state whether the communication was written or oral;

ii.   state the date of the communication;

iii.   identify the parties to the communication;

iv.   describe in as much detail as possible the substance of the communication; and

v.   identify all documents which refer to, evidence, describe or constitute the communication.

22.     All interrogatories must be answered fully, completely and in writing, and signed by someone with authority to make binding judicial admissions on behalf of Plaintiffs.  In the event that any interrogatory cannot be answered fully after the exercise of reasonable diligence, you shall furnish as complete an answer as you can, and shall explain in detail the reasons why you cannot give a full answer, including a statement as to what is needed in order that you may be in a position to answer the interrogatory fully.

23.     These interrogatories shall be deemed continuing so as to require prompt, further supplementation (without further request by Defendants or their attorneys) if you obtain additional information responsive to the request at any time prior to trial herein.

6

24.     If you withhold any information covered by these interrogatories under a claim of privilege (including attorney work-product), furnish a list specifying (a) the nature of the privilege claimed, and, if the privilege is being asserted in connection with state law, the state's privilege rule being invoked; (b) the identity of the person making the communication; (c) the identity of each person present while the communication was made; (d) the date and place of the communication; (e) the subject matter of the communication; and (f) the interrogatory to which the withheld information is responsive.

## INTERROGATORIES

**INTERROGATORY NO. 6:**

State the factual basis for any alleged conduct described in the Complaint as improper, including without limitation identifying all communications, documents and things you assert support the allegations that:

 (a) Oculus VR or Luckey misappropriated any trade secrets owned by you;

 (b) Oculus VR or Luckey infringed any copyrights owned by you;

 (c) Oculus VR or Luckey breached any contracts with you;

 (d) Oculus VR or Luckey unfairly competed with you; or

 (e) Oculus VR or Luckey infringed any ZeniMax Marks or otherwise violated the Lanham Act.

**INTERROGATORY NO. 7:**

Identify and describe all agreements between you on the one hand and Oculus VR or Luckey on the other, including without limitation (a) the date(s) said agreement(s) were reached, (b) the date(s) during which said agreement(s) were negotiated, (c) the individuals involved in negotiating said agreement(s), and (d) all documents evidencing said agreement(s) or negotiations.

7

**INTERROGATORY NO. 8:**

State the factual basis for any alleged harm or damages suffered by you from any of the conduct alleged in the Complaint, including without limitation the form and amount of damages to which you claim you are entitled, including business losses, if any, and the factual bases, documents, calculations, and legal theories supporting or concerning that contention; if such contention regarding damages includes a claim of entitlement to statutory damages under 17 U.S.C. § 504(c), identify each work for which you believe you are entitled to recover such damages.

8

Dated:  August 1, 2014

Respectfully submitted,

**OCULUS VR, INC. AND PALMER LUCKEY,**

By Their Attorneys,

/s/ Joshua M. Dalton

E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

9

A/76249490.4

## CERTIFICATE OF SERVICE

I, Joshua M. Dalton, hereby certify that I caused a true and correct copy of the foregoing Defendants' First Set of Interrogatories Plaintiffs to be sent by e-mail to counsel for Plaintiffs on August 1, 2014 at phillip.philbin@haynesboone.com, michael.karson@haynesboone.com, and dlpzenimax@skadden.com.

/s/ Joshua M. Dalton
Joshua M. Dalton

10

# EXHIBIT 8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August 11, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Responses to Defendants' First Discovery Requests
     *ZeniMax Media Inc. et al. v. Oculus VR, Inc. et al.*, No. 3:14-cv-01849

Dear Geoff:

Please find enclosed: (i) ZeniMax Media Inc. and id Software LLC's
Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs,
and (ii) ZeniMax Media Inc. and id Software LLC's Responses and Objections to
Defendants' First Set of Requests for Production of Documents and Things to
Plaintiffs.

Very truly yours,

P. Anthony Sammi

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| OCULUS VR, INC. and PALMER LUCKEY, | § § § | |
| Defendants. | § § | |

## ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to the Federal Rules of Civil Procedure, ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively, "Plaintiffs") hereby serve these Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs.

## GENERAL RESPONSES AND OBJECTIONS

Plaintiffs assert the following General Objections. Each individual Response to the Interrogatories is subject to, and limited in accordance with, the following General Objections, which are incorporated as if fully set forth therein. The following General Objections are not waived, or in any way limited by, the Specific Responses and Objections. Although Specific Objections are also interposed in response to individual Interrogatories, Plaintiffs' failure to repeat any part of their General Objections shall not be construed as a waiver of those objections.

1.    The Responses set forth below are for the purposes of discovery only, and Plaintiffs expressly reserve any and all objections they may have to the relevance, competence, materiality, admissibility, or use at deposition, hearing or trial of any information stated, produced, identified, or referred to herein. Plaintiffs also expressly reserve their right to rely, at

1

any later time including at deposition, hearing or trial, upon additional documents or information not included in the Specific Responses.

2.      An objection to a specific Interrogatory or a willingness to provide a response, does not imply, and should not be construed as an acknowledgement, that complete answers to that Interrogatory are available or exist.

3.      Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they purport to impose discovery obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, or any other applicable law or rule.

4.      Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are vague, ambiguous, non-specific or confusing and, thus, not susceptible to a reasoned interpretation or response.

5.      Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they seek information that is not relevant to the claims or defenses of either party, and thus not reasonably calculated to lead to the discovery of admissible evidence.

6.      Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are duplicative, cumulative, and/or seek information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome and/or less expensive.

7.      Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent they are overly broad, overly expansive, oppressive and/or unduly burdensome and would impose upon Plaintiffs an unreasonable burden of inquiry, or to the extent they seek information not within Plaintiffs' possession, custody or control.  Plaintiffs also object to the Interrogatories,

Definitions, and Instructions as unduly burdensome to the extent that the information requested is within the knowledge of Defendants, can be determined by referring to documents within the possession, custody or control of Defendants, is within the public domain, or is otherwise more readily or equally available to Defendants and thus more conveniently obtained by Defendants.

8.      The Responses set forth below are based upon Plaintiffs' interpretation of the language used in the Interrogatories, Definitions, and Instructions.  Plaintiffs reserve their right to amend or to supplement their Responses to the Interrogatories in the event Defendants assert, or the Court adopts, an interpretation that differs from Plaintiffs' interpretation.

9.      Plaintiffs object to Defendants' Definition of "ZeniMax," "Plaintiffs," "you," and "your" in Definition No. 1 and "id Software" in Definition No. 2 as overly broad and/or unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  For purposes of answering these Interrogatories, Plaintiffs use the term "ZeniMax" to mean ZeniMax Media Inc., "id Software" to mean id Software LLC, and "Plaintiffs" to mean both ZeniMax Media Inc. and id Software LLC, only.

10.     Plaintiffs object to Defendants' Definition of "identify," "identifying," "identity," or "identification" as unduly burdensome, beyond the discovery obligations set forth in the Federal Rules of Civil Procedure, and not reasonably calculated to lead to the discovery of admissible evidence.  For the purposes of answering these Interrogatories, Plaintiffs use and interpret the terms "identify," "identifying," "identity," or "identification" according to their plain meaning and common sense usage.

11.     Plaintiffs object to the Interrogatories to the extent they seek confidential and proprietary information, including but not limited to trade secrets, source code, and competitively sensitive business information, particularly where the marginal benefits of

producing such information are outweighed by the burden of producing such highly sensitive materials. Plaintiffs further object to the Interrogatories to the extent they seek confidential and proprietary information absent an agreed-upon Protective Order.

12.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they call for the production of information or documents subject to a claim of privilege or immunity, including the attorney-client privilege, the attorney work-product doctrine, or any other applicable evidentiary privilege or immunity from disclosure. Nothing contained in these Responses is intended to be nor should be considered as a waiver of any attorney-client privilege, work-product protection, or any other applicable evidentiary privilege or immunity. The inadvertent production of any response or document subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

13.     The Responses and Objections herein are based on Plaintiffs' present knowledge, information and belief. Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct or clarify any of the Responses and/or Objections herein, and indeed Plaintiffs expect to amend and revise these Responses as discovery proceeds in this action.

Each of the foregoing General Responses and Objections are incorporated by reference into each and every Specific Response set forth below. Subject to the General Responses and Objections, and without waiver, modification or limitation thereof, Plaintiffs' Specific Responses and Objections to the Interrogatories are set forth below.

4

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify each person known to you or your attorney who has or is believed to have any knowledge of any facts pertaining to any claims, defenses, facts or allegations contained in the Complaint and/or Answer.  With respect to each person, said identification should include, without limitation:

(a) his or her full name;

(b) his or her present or last-known addresses;

(c) his or her present or last-known telephone numbers; and

(d) his or her present or last-known position and business affiliation.

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity.  Plaintiffs also object to this Interrogatory as premature, as discovery has just commenced.  Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Defendant Oculus VR, Inc. ("Oculus"), and not Plaintiffs, employs the majority of persons with knowledge of the circumstances of this this case, including several of Plaintiffs' former employees.

Subject to and without waiving these objections, Plaintiffs respond as follows:

5

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Persons having knowledge of the "claims, defenses, facts or allegations contained in the Complaint and/or Answer" may include the persons listed below:

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Abrash, Michael | Chief Scientist, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Andonov, Vlatko | President, Bethesda Softworks | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| Antkow, Christian | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Antonov, Michael | Chief Software Architect, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Carmack, John | Chief Technical Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Duffy, Robert | Programming Director, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Forsyth, Tom | Software Architect, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Hollenshead, Todd | Former President, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Hooper, Matthew | Director of Development, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |

6

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Iribe, Brendan | Chief Executive Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kang, Katherine | Co-founder, Armadillo Aerospace | 201 Laurence Drive PMB# 512 Heath, TX 75032 Unknown |
| Kennickell, Gloria | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kim, Andrew | Director of Business Development, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kim, Jason D. | Product Manager, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Leder, James | Chief Operating Officer, ZeniMax | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| Luckey, Palmer | Founder, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Malamed, Laird | Chief Operating Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| McCauley, Jack | Vice President of Engineering, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Mitchell, Nate | Vice President of Product, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |

7

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Patel, Nirav | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Thompson, Tracey | Public Relations Director, ZeniMax | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| van Waveren, Jan Paul | Senior Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Willits, Tim | Studio Director, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Wright, Jonathan E. | Senior Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Zuckerberg, Mark | Chief Executive Officer, Facebook, Inc. | 1601 Willow Road Menlo Park, CA 94025 (650) 543-4800 |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to further amend the foregoing Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response.

**INTERROGATORY NO. 2:**

Identify each person whom Plaintiffs expect to provide sworn testimony in this matter, at trial or otherwise, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. For each witness you expect to call to offer evidence you believe is admissible under Federal Rules of Evidence 701, 702, 703, 704, or 705, include in your description of the subject matter on which each witness is expected to testify, the substance of the facts to which each such witness is expected to testify, the substance of any opinions to which each such witness is expected to testify, and a summary of the grounds for each such opinion.

8

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature with respect to its request for "the substance of the facts to which each such witness is expected to testify," "the substance of any opinions to which each such witness is expected to testify," and "a summary of the grounds for each such opinion," particularly given that discovery has not commenced and the Parties have not yet designated expert witnesses or exchanged witness lists. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Oculus, and not Plaintiffs, employs the majority of persons who will testify or provide opinions in this matter. In addition, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 1.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

"[P]erson[s] whom Plaintiffs expect to provide sworn testimony in this matter" and "witness[es] [Plaintiffs] expect to call to offer evidence" include the following persons:

| Name | Subject Matter |
| --- | --- |
| Abrash, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Andonov, Vlatko | Relationship between the Parties |
| Antkow, Christian | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Antonov, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

9

| Name | Subject Matter |
|------|----------------|
| Carmack, John | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Forsyth, Tom | Relationship between the Parties;<br>Defendants' product development |
| Hollenshead, Todd | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development |
| Hooper, Matthew | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Iribe, Brendan | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Kang, Katherine | Relationship between the Parties;<br>Plaintiffs' product development;<br>Defendants' product development |
| Kennickell, Gloria | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Kim, Andrew | Defendants' marketing, business practices, and finances |
| Kim, Jason D. | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Leder, James | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Plaintiffs' business practices and finances |
| Luckey, Palmer | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Malamed, Laird | Relationship between the Parties;<br>Defendants' product development;<br>Defendants' business practices and finances |
| McCauley, Jack | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

10

| Name | Subject Matter |
|------|----------------|
| Mitchell, Nate | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Patel, Nirav | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| van Waveren, Jan Paul | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Wright, Jonathan E. | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Zuckerberg, Mark | Defendants' product development;<br>Defendants' product demonstrations;<br>Acquisition of Oculus by Facebook, Inc. |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to supplement this Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response. Plaintiffs further reserve the right to rely in this litigation on the persons identified in this Response for testimony outside of the respective subject matter(s) identified in this Response.

## INTERROGATORY NO. 3:

Identify all proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 3:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs further object to this Interrogatory as premature, given that discovery has

11

just commenced and the Parties have not yet designated experts.  In addition, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants were provided with ZeniMax virtual reality ("VR") Technology.  ZeniMax VR Technology consists of Plaintiffs' valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience.  ZeniMax VR Technology includes but is not limited to confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to commercially-viable virtual reality headsets, including the following:

(i)     interfaces between virtual reality headsets and interactive entertainment content and/or software;

(ii)    sensor and optical component calibration;

(iii)   latency reduction;

(iv)    low-latency head-tracking, including positional and absolute tracking;

(v)     head and neck modeling;

(vi)    predictive tracking;

(vii)   chromatic aberration reduction;

(viii)  distortion, motion blur, and jitter/judder reduction;

(ix)    pre-warping of displayed images;

(x)     combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience;

(xi)    minimizing or removing the "screen door" effect on the display;

(xii)   minimizing simulator sickness and/or motion sickness for users.

12

The ZeniMax VR Technology provided to Defendants also includes components of "DOOM 3: BFG Edition" computer program code.

Certain of Plaintiffs' former employees — specifically, John Carmack, Jan Paul van Waveren, Jonathan Wright, Jason Kim, Gloria Kennickell, Christian Antkow, and Matt Hooper — provided certain ZeniMax VR Technology to Defendants while they were still employed by Plaintiffs. They may have provided further ZeniMax VR Technology to Defendants after those employees were recruited for employment and hired by Oculus. In addition, certain ZeniMax VR Technology was identified in e-mail communications from certain of Plaintiffs' former employees to Defendants.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

**INTERROGATORY NO. 4:**

Identify with particularity the "ZeniMax VR Technology" referred to in the Complaint, including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed by ZeniMax employees, or otherwise allegedly owned by ZeniMax. With respect to each alleged technology, said identification should include without limitation a specific description of every component of the technology, how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift,SDK, or any other Oculus VR product.

13

## RESPONSE TO INTERROGATORY NO. 4:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that Defendants, and not Plaintiffs, are in the best position to know "what component or combination of components are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to the request for "a specific description of every component of the technology, how the components operate, how the components are combined, [and] what component or combination of components renders the technology novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 3.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and

14

may amend and revise this Response in the course of litigation to reflect that additional information.  Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

## INTERROGATORY NO. 5:

Identify with particularity all trade secrets ZeniMax alleges Defendants misappropriated, including all "ZeniMax Trade Secrets" referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

(a) "confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset" referenced in the Complaint; and/or

(b) the "enforceable trade secret[] in the confidential, proprietary components of ZeniMax's "DOOM 3: BFG Edition" computer program code" referenced in the Complaint. With respect to each such alleged trade secret, said identification should include without limitation a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, what component or element or combination of components or elements renders the secret novel or unique, and what component or element or combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product.

## RESPONSE TO INTERROGATORY NO. 5:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity.  Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that Defendants, and not Plaintiffs, are in the best position to know "what component or element or

combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to its request for "a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, [and] what component or element or combination of components or elements renders the secret novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatories No. 3 and 4.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

16

Dated: August 11, 2014

Respectfully submitted,

_____

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
   **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*

17

## **CERTIFICATE OF SERVICE**

I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing *ZeniMax Media Inc. and id Software LLC's Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs* to be served on Defendants by electronic mail to the following addresses: lcarter@carterscholer.com, lstahl@carterscholer.com, and oculus-zenimax@bingham.com.

Dated: August 11, 2014

_____
James Y. Pak

18

## VERIFICATION

I, James L. Leder, state under penalty of perjury that I have read the foregoing Responses to Interrogatory Nos. 1, 2, 3, 4, and 5, and that based upon matters within my personal knowledge and upon information that has been assembled and provided to me, the foregoing responses are correct, to the best of my knowledge and belief.

Dated: August 11, 2014

James L. Leder
Chief Operating Officer, ZeniMax Media Inc.

on behalf of Plaintiffs
ZeniMax Media Inc. and id Software LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>      Plaintiffs,<br><br>  v.<br><br>OCULUS VR, INC. and<br>PALMER LUCKEY,<br><br>      Defendants. | §<br>§<br>§<br>§<br>§    **CIVIL CASE NO. 3:14-cv-01849-P**<br>§<br>§<br>§<br>§<br>§<br>§ |

**ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S RESPONSES AND OBJECTIONS
TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO PLAINTIFFS**

Pursuant to the Federal Rules of Civil Procedure, ZeniMax Media Inc. ("ZeniMax") and

id Software LLC ("id Software") (collectively, "Plaintiffs") hereby serve these Responses and

Objections to Defendants' First Set of Requests for Production of Documents and Things to

Plaintiffs.

## GENERAL RESPONSES AND OBJECTIONS

Plaintiffs assert the following General Objections. Each individual response to a request

is subject to, and limited in accordance with, the following General Objections, which are

incorporated as if fully set forth therein. The following General Objections are not waived, or in

any way limited by, the Specific Responses and Objections. Although Specific Objections are

also interposed in response to individual requests, Plaintiffs' failure to repeat any part of its

General Objections shall not be construed as a waiver of its objections.

1. The responses set forth below are for the purposes of discovery only, and

Plaintiffs expressly reserve any and all objections they may have to the relevance, competence,

materiality, admissibility, or use at deposition, hearing or trial of any information stated,

produced, identified, or referred to herein.  Plaintiffs also expressly reserve their right to rely upon additional documents or information not included in the Specific Responses at any later time including at deposition, hearing or trial.

2.       An objection to a specific request or a willingness to provide a response does not imply, and should not be construed as an acknowledgement, that any such records actually are available or exist.

3.       Plaintiffs object to the requests, definitions, and instructions to the extent that they purport to impose discovery obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, or any other applicable law or rule.

4.       Plaintiffs object to the requests, definitions, and instructions to the extent that they are vague, ambiguous, non-specific, or confusing and thus not susceptible to a reasoned interpretation or response.

5.       Plaintiffs object to the requests, definitions, and instructions to the extent that they seek information that is not relevant to the claims or defenses of either party, and thus not reasonably calculated to lead to the discovery of admissible evidence.

6.       Plaintiffs object to the requests, definitions, and instructions to the extent that they are duplicative, cumulative, and/or seek information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome, and/or less expensive.

7.       Plaintiffs object to the requests, definitions, and instructions to the extent they are overly broad, overly expansive, oppressive, and/or unduly burdensome and would impose upon Plaintiffs an unreasonable burden of inquiry, or to the extent they seek information not within

2

Plaintiffs' possession, custody or control.  Plaintiffs also object to the requests, definitions, and instructions as unduly burdensome to the extent that the information requested is within the knowledge of Defendants, can be determined by referring to documents within the possession, custody or control of Defendants, is within the public domain, or is otherwise more readily or equally available to Defendants and thus more conveniently obtained by Defendants.

8.      Plaintiffs object to the requests, definitions, and instructions to the extent they seek confidential and proprietary information, including but not limited to trade secrets, source code, and competitively sensitive business information, particularly where the marginal benefits of producing such information are outweighed by the burden of producing such highly sensitive materials.  Plaintiffs further object to the requests to the extent they seek confidential and proprietary information absent an agreed-upon Protective Order.

9.      Plaintiffs object to the definition of "ZeniMax," "Plaintiffs," "you," and "your" in definition No. 1 and "id Software" in definition No. 2 as overly broad and/or unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  For purposes of answering these requests, Plaintiffs use the term "ZeniMax" to mean ZeniMax Media Inc., "id Software" to mean id Software LLC, and "Plaintiffs" to mean both ZeniMax Media Inc. and id Software LLC, only.

10.     Plaintiffs object to the requests, definitions, and instructions to the extent they call for production of documents dated prior to January 1, 2011.  Such requests are overly broad and unduly burdensome because they seek documents that are not relevant to any claim or defense of any party to this litigation.  Unless otherwise noted, Plaintiffs will produce responsive documents dated on or after January 1, 2011.

3

11.     Plaintiffs object to the instructions purporting to describe the manner in which Plaintiffs are to produce documents and things.  Plaintiffs will produce documents, including electronically stored information, subject to the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, the Parties' Joint Conference Report, and any joint discovery agreements that may be executed between the Parties.

12.     Plaintiffs object to the requests, definitions, and instructions to the extent that they call for the production of information or documents subject to a claim of privilege or immunity, including the attorney-client privilege, the attorney work-product doctrine, or any other applicable evidentiary privilege or immunity from disclosure.  Plaintiffs further object to instructions B and C purporting to describe the manner in which Plaintiffs are to identify documents for which privilege and immunity is claimed.  Plaintiffs will describe privileged documents in accordance with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, and any joint discovery agreements between the Parties.  Nothing contained in these responses is intended to be nor should be considered as a waiver of any attorney-client privilege, attorney work-product protection, or any other applicable evidentiary privilege or immunity.  Moreover, the inadvertent production of any response or document subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

13.     Plaintiffs object to Defendants' demand to produce documents and things within thirty (30) days of service of these requests.  Such a demand is unreasonable given the volume and scope of Defendants' requests for which Plaintiffs must identify, collect, review, and produce

4

responsive documents.  Plaintiffs will timely produce, on a rolling basis, responsive, relevant, and non-privileged documents and things to the extent that they exist and can be identified after a reasonable, good faith search.  Plaintiffs will produce documents and things in a manner that complies with the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, and the Requirements for District Judge Jorge A. Solis.

14.    The responses set forth below are based upon Plaintiffs' interpretation of the language used in the requests, definitions, and instructions.  Plaintiffs reserve their right to amend or to supplement their responses to the requests in the event Defendants assert, or the Court adopts, an interpretation that differs from Plaintiffs' interpretation.

15.    The responses and objections herein are based on Plaintiffs' present knowledge, information and belief.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct or clarify any of the responses and/or objections herein, and indeed Plaintiffs expect to amend and revise these responses as discovery proceeds in this action.

Each of the foregoing General Responses and Objections are incorporated by reference into each and every specific response set forth below. Subject to the General Responses and Objections, and without waiver, modification or limitation thereof, Plaintiffs' Specific Responses and Objections to the request are set forth below.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST FOR PRODUCTION NO. 1:

All communications between you and Oculus VR or Luckey.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll communications." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

6

**REQUEST FOR PRODUCTION NO. 2:**

All documents and things concerning your communications to investors, media, and other Third Parties concerning this litigation, Oculus VR or Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity, or is protected under a non-disclosure, confidentiality or similar agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees

7

identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and things produced to you by any Third Party concerning the subject matter of this litigation, Oculus VR or Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity, or is protected under a non-disclosure, confidentiality or similar agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things" and "any Third Party." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it is vague and ambiguous, as it is unclear what is meant by the phrase "concerning the subject matter of this litigation." In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

8

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures regarding virtual reality technology, Oculus, and Palmer Luckey, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 4:

All documents and things concerning your document retention policies, practices and procedures, including without limitations those relating to electronic data retention, preservation, and destruction, and the retention, preservation, and destruction of paper documents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive document retention policies and document preservation directives to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 5:

Documents sufficient to identify all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

9

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to identify all "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" described as "VR Technology" in paragraph 26 of the Complaint.

10

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun

and expert discovery has yet to begin.  More importantly, the Parties have not yet designated

experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Request No. 5.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the confidential, trade secret, and copyrighted information described in the Complaint to

the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and things concerning the claim that Oculus VR or Luckey
misappropriated trade secrets owned by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of Requests No. 5 and 6.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' trade secret misappropriation claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to identify all "ZeniMax Trade Secrets" described in paragraph 106 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 5, 6 and 7.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and things concerning your precautions to "maintain the secrecy of the ZeniMax Trade Secrets," including the confidentiality provisions in key employment

13

agreements, password-protected and confidentiality agreements with third-parties to whom the information is disclosed.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is vague and ambiguous, as it is unclear what is meant by the phrase "password-protected and confidentiality agreements." Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 7.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify the efforts made to protect the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

14

**REQUEST FOR PRODUCTION NO. 10:**

All documents and things concerning the claim that Oculus VR or Luckey infringed copyrights owned by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of Request No. 5.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' copyright infringement claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

15

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things concerning any attempts to obtain copyright registration for software concerning virtual reality, whether successful or unsuccessful, including all correspondence, applications, responses, documents or other materials concerning said registrations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "any attempts to obtain copyright registration . . . whether successful or unsuccessful." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks legal conclusions. In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 10.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive copyright applications, registration certificates, deposits, and correspondence with the Copyright Office for the works identified in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and things concerning Copyright Registration No. PA0001851913, U.S. Copyright Office Application Service Request No. 1-1446269781, and U.S. Copyright Office

16

Application Service Request No. 1-1446391151, without limitation all correspondence, applications, responses, documents or other materials concerning said registrations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks legal conclusions. Plaintiffs further object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 10 and 11.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive copyright applications, registration certificates, deposits, and correspondence with the Copyright Office for the works identified in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things concerning the research and development of the "ZeniMax Copyrighted Materials" as described in paragraph 121 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working

17

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of Request No. 10.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce underlying computer source code for the copyrighted information described in the Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 14:**

All versions of the "ZeniMax Copyrighted Materials" as described in paragraph 121 of the Complaint, that you allegedly provided to Oculus VR or Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession

18

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Requests No. 10 and 13.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce the underlying computer source code

for the confidential, trade secret, and copyrighted information described in the Complaint to the

extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

## REQUEST FOR PRODUCTION NO. 15:

All documents and things concerning the claim that Oculus VR or Luckey breached any
contracts with you.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

19

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it calls for the production of confidential

and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret

information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things concerning the claim that Oculus VR or Luckey unfairly
competed with you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun

and expert discovery has yet to begin.  More importantly, the Parties have not yet designated

experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the

20

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

Plaintiffs' unfair competition claim after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and things concerning the claim that Oculus VR or Luckey committed any
wrongful conduct constituting unjust enrichment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun

and expert discovery has yet to begin.  More importantly, the Parties have not yet designated

experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

21

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' unjust enrichment claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and things concerning the claim that Oculus VR or Luckey violated violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

22

Plaintiffs' trademark infringement claim after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things concerning the claim that Oculus VR or Luckey violated
Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun

and expert discovery has yet to begin.  More importantly, the Parties have not yet designated

experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

Plaintiffs' false designation claim after a reasonably diligent search, to the extent such documents

exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

23

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things concerning the preparation, filing, prosecution and/or renewal of any applications for registration of the "ZeniMax Marks" described in paragraph 160 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin. More importantly, the

Parties have not yet designated experts. Plaintiffs further object to this request on the ground

that it calls for the production of confidential and/or trade secret information. Plaintiffs will

produce confidential and/or trade secret information once a Protective Order is in place.

Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive trademark applications,

registration certificates, specimens of use, and correspondence with the Patent and Trademark

Office for the works identified in the Complaint to the extent such documents exist, are not

privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to identify each good or service sold in the United States under or in connection with the "ZeniMax Marks" described in paragraph 160 of the Complaint, including any documents concerning the date the good or service was first offered for sale or in commerce.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

24

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Plaintiffs further object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce representative advertising including the "ZeniMax Marks" as described in the Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 22:

Documents sufficient to identify, by year and product or service, the volume or business or transactions generated in connection with the "ZeniMax Marks" described in paragraph 160 of the Complaint.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Plaintiffs further object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18, 19 and 21.

25

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 23:**

Copies of all past, current, and/or prospective advertisements and promotional marketing materials for products and services with the "ZeniMax Marks" described in paragraph 160 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce representative advertising including the "ZeniMax Marks" as described in the Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things sent or received from any Third Party concerning Oculus VR or Luckey's alleged use of any "ZeniMax Marks" described in paragraph 160 of the Complaint.

26

### RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity, or is protected under a non-disclosure, confidentiality or similar agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things . . . from any Third Party." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it assumes the truth of facts not in evidence. By responding to this request, Plaintiffs do not agree to Defendants' characterization of the facts as presented in its request. In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures regarding the "ZeniMax Marks" described in the

27

Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 25:**

All documents or things concerning statements, inquiries, comments, complaints or other
communications by or from customers, competitors, or other Third Parties, either written or oral,
concerning misdirected mail, telephone calls, or orders and/or concerning any confusion,
suspicion, belief or doubt on the part of said customer, competitor, or other Third Party as to the
relationship between, on the one hand Oculus VR or Luckey and, on the other hand you,
concerning the parties' respective products and services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground

that it is overly broad as to its request for "[a]ll documents and things." To respond to this

request would require Plaintiffs to conduct an unreasonably burdensome search into all

documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs

further object to this request on the ground that it seeks information or documents that are in the

possession of Plaintiffs' former employees now working at Oculus and not in the possession of

Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that

are in Defendants' own possession and not in the possession of Plaintiffs, including through

emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request

on the ground that it seeks legal conclusions. Additionally, Plaintiffs object to this request on the

ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin.

More importantly, the Parties have not yet designated experts. Plaintiffs also object to this

request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sufficient to evidence any confusion between the parties' respective products and services, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 26:**

All documents or things concerning any actual or possible consumer confusion or mistake as to the source, affiliation, association or sponsorship or any kind between your products and services offered in connection with any "ZeniMax Marks" described in paragraph 160 of the Complaint and any products or services offered by Oculus VR or Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. IN addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun

29

and Plaintiffs continue to investigate the issues raised by this request.  Additionally, Plaintiffs

object to this request on the ground that it calls for the production of confidential and/or trade

secret information.  Plaintiffs will produce confidential and/or trade secret information once a

Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of

Requests No. 18, 19 and 25.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications sufficient to evidence any confusion between the parties'

respective products and services, to the extent such documents exist, are not privileged, and are

in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 27:

All documents or things concerning whether you and Oculus VR or Luckey are
competitors in any product or service market.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications sufficient to evidence any competition between the parties,

to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody,

or control.

**REQUEST FOR PRODUCTION NO. 28:**

All documents or things concerning use by any Third Party of any "ZeniMax Marks"
described in paragraph 160 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation.  Plaintiffs also object to this request on the ground

that it seeks information or documents that are in the possession of Plaintiffs' former employees

now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications sufficient to identify the use of any "ZeniMax Marks"

described in the Complaint, to the extent such documents exist, are not privileged, and are in

Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 29:**

All documents or things concerning any objection, litigation, proceeding or other disputes
relating to the use of any "ZeniMax Marks" described in paragraph 160 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it assumes the

truth of facts not in evidence.  By responding to this request, Plaintiffs do not agree to

Defendants' characterization of the facts as presented in its request.  Plaintiffs further object to

this request on the ground that it seeks information or documents that are in the possession of

Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks documents that are in

Defendants' own possession and not in the possession of Plaintiffs, including through emails or

source code sent to Defendants by Plaintiffs.  Moreover, Plaintiffs object to this request on the

ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs

will produce confidential and/or trade secret information once a Protective Order is in place.

32

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sufficient to identify any litigations concerning the "ZeniMax Marks" described in the Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 30:

All documents or things concerning how and when you first became aware of Oculus VR or Luckey's alleged use of any "ZeniMax Marks" described in paragraph 160 of the Complaint and any documents and things regarding any subsequent communications concerning such use.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 18 and 19.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

33

produce responsive communications after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and things concerning any alleged harm or damages suffered by you from
any of the conduct alleged in the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.  Plaintiffs further object to this request on the ground

that it calls for the production of confidential and/or trade secret information.  Plaintiffs will

produce confidential and/or trade secret information once a Protective Order is in place.

Subject to a Protective Order entered in the case, Plaintiffs will produce responsive

documents sufficient to identify the damages suffered by Plaintiffs to the extent such documents

exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 32:**

All documents and things that tend to support or undermine any of your claims in this
litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is vague and

34

ambiguous, as it is unclear what is meant by the phrase "tend to support or undermine any of

your claims." Plaintiffs further object to this request on the ground that it seeks information or

documents that are in the possession of Plaintiffs' former employees now working at Oculus and

not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that

it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs,

including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs

object to this request on the ground that it seeks legal conclusions. Additionally, Plaintiffs object

to this request on the ground that it is premature. Fact discovery has just begun and expert

discovery has yet to begin. More importantly, the Parties have not yet designated experts.

## REQUEST FOR PRODUCTION NO. 33:

All documents and things relating to your investigation of the allegations made in the
Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.

## REQUEST FOR PRODUCTION NO. 34:

Documents sufficient to identify your current and former officers, directors, managers,
employees and consultants with personal knowledge of your alleged research or experimentation
concerning virtual reality.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify any employees and former employees involved in the research of virtual reality after a

reasonably diligent search, to the extent such documents exist, are not privileged, and are in

Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 35:

All draft and final employment agreements concerning proprietary information including employment agreements, invention assignment agreements, non-disclosure agreements and the like and all related communications between you and any current and former officers, directors, managers, employees and consultants with personal knowledge of your alleged research or experimentation concerning virtual reality.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

36

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive employment and non-

disclosure agreements for any employees and former employees involved in the research of

virtual reality after a reasonably diligent search, to the extent such documents exist, are not

privileged, and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 36:

A forensic image of all USB drives, hard drives, and similar removable media, whether
contained in laptops or desktops, used by any current and former officers, directors, managers,
employees and consultants with personal knowledge of your alleged research or experimentation
concerning virtual reality.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad

as to its request for the term "forensic image."  To respond to this request would require

Plaintiffs to forensically image at great time and cost all media associated with every current and

past employee of Plaintiffs who have ever been involved in the research of virtual reality.

Plaintiffs have preserved documents and information as explained in their letters of June 14,

2014 to Defendants.  Plaintiffs further object to this request on the ground that it seeks

37

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  In addition, Plaintiffs object to this request on

the ground that it seeks documents that are in Defendants' own possession and not in the

possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.

Moreover, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify any employees and former employees involved in the research of virtual reality and

responsive documents sufficient to identify the virtual reality research each employee or former

employee had performed after a reasonably diligent search, to the extent such documents exist,

are not privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 37:

A forensic image of all laptops or desktops used by any current and former officers,
directors, managers, employees and consultants with personal knowledge of your alleged
research or experimentation concerning virtual reality, including without limitation the
"ZeniMax computers" described in paragraph 4 of the Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad

as to its request for the term "forensic image."  To respond to this request would require

Plaintiffs to forensically image at great time and cost all media associated with every current and

38

past employee of Plaintiffs who have ever been involved in the research of virtual reality.

Plaintiffs have preserved documents and information as explained in their letters of June 14,

2014 to Defendants.  Plaintiffs further object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  In addition, Plaintiffs object to this request on

the ground that it seeks documents that are in Defendants' own possession and not in the

possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.

Moreover, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify any employees and former employees involved in the research of virtual reality and

responsive documents sufficient to identify the virtual reality research each employee or former

employee had performed after a reasonably diligent search, to the extent such documents exist,

are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and things concerning your alleged investment or abandonment thereof in
virtual reality technology including without limitation all financial records, analyses, strategies,
budgets, projections, plans, notes, reports, recommendations and documents sufficient to identify
all amounts described in paragraph 4 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

39

privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.  Plaintiffs further object to this request on the ground

that it calls for the production of confidential and/or trade secret information.  Plaintiffs will

produce confidential and/or trade secret information once a Protective Order is in place.

      Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the financial investment made by Plaintiffs in virtual reality as discussed in the

Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 39:**

      All documents and things concerning your belief in the viability or lack thereof of virtual
reality technology, including without limitation the Rift.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

      Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is vague and

ambiguous, as it is unclear what is meant by the phrase "your belief in the viability or the lack

thereof."  Plaintiffs further object to this request on the ground that it seeks information or

documents that are in the possession of Plaintiffs' former employees now working at Oculus and

not in the possession of Plaintiffs.  In addition, Plaintiffs object to this request on the ground that

it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs,

including through emails or source code sent to Defendants by Plaintiffs.  Moreover, Plaintiffs

object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 38.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify any employees and former employees involved in the research of virtual reality and responsive documents sufficient to identify the virtual reality research each employee or former employee had performed after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and things concerning your evaluation of virtual reality technology, including without limitation the Rift

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is vague and ambiguous, as it is unclear what is meant by the phrase "your evaluation." Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that

41

are in Defendants' own possession and not in the possession of Plaintiffs, including through

emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request

on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to

begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs

object to this request on the ground that it calls for the production of confidential and/or trade

secret information. Plaintiffs will produce confidential and/or trade secret information once a

Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of

Request No. 38.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify any employees and former employees involved in the research of virtual reality, and

responsive documents sufficient to identify the virtual reality research each employee or former

employee had performed after a reasonably diligent search, to the extent such documents exist,

are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and things concerning your alleged research and experimentation
concerning virtual reality, including without limitation all designs, notes, charts, schematics,
specifications and plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the

42

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify any employees and former employees involved in the research of virtual reality and

responsive documents sufficient to identify the virtual reality research each employee or former

employee had performed after a reasonably diligent search, to the extent such documents exist,

are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and things concerning your decision to stop research and experimentation
concerning virtual reality, including without limitation all communications concerning the
direction you allegedly provided to Carmack referenced in paragraph 92 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad

as to its request for "[a]ll documents and things . . . including without limitation all

communications."  To respond to this request would require Plaintiffs to conduct an

unreasonably burdensome search into all documents, including electronic mail, of every current

43

and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it assumes the truth of facts not in evidence. By responding to this request, Plaintiffs do not agree to Defendants' characterization of the facts as presented in its request. In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify any employees and former employees involved in the research of virtual reality, and responsive documents sufficient to identify the virtual reality research each employee or former employee had performed after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and things concerning your attempts to patent any technology relating to virtual reality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

44

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun

and expert discovery has yet to begin.  More importantly, the Parties have not yet designated

experts.  Additionally, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive patents, publications, and

prosecution correspondence regarding virtual reality to the extent such documents exist, are not

privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 44:

All documents and things concerning all versions and prototypes of virtual reality HMDs
and related tangible equipment that you obtained, developed, or tested, including without
limitation the "off-the-shelf headsets" described in paragraph 25 of the Complaint, the equipment
pictured in paragraph 27 of the Complaint, and all equipment you received from Virtual
Realities, eMagin, or Sony.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

      Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the headsets and equipment identified in paragraphs 25 and 27 of the Complaint, to the

extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

**REQUEST FOR PRODUCTION NO. 45:**

      All documents and things concerning "customized firmware" referenced in paragraph 55
of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

      Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the customized firmware discussed in paragraph 55 of the Complaint to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and things concerning Hillcrest Labs, including without limitation all
communications with Third Parties regarding motion sensors and related firmware offered by
Hillcrest Labs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation.  Plaintiffs also object to this request on the ground

that it is overly broad as to its request for "[a]ll documents and things . . . including without

limitation all communications."  To respond to this request would require Plaintiffs to conduct an

unreasonably burdensome search into all documents, including electronic mail, of every current

and past employee of Plaintiffs.  Plaintiffs further object to this request on the ground that it

seeks information or documents that are in the possession of Plaintiffs' former employees now

working at Oculus and not in the possession of Plaintiffs.  In addition, Plaintiffs object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production

of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications received by or sent to Carmack regarding Hillcrest Labs'

sensors and firmware, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 47:

All documents and things concerning the application of any of your games in virtual
reality, including without limitation *Doom 3 BFG*, *Rage* and *Skyrim*.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 47:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In

addition, Plaintiffs object to this request on the ground that it is premature. Fact discovery has

just begun and expert discovery has yet to begin. More importantly, the Parties have not yet

48

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce the underlying computer source code

for the confidential, trade secret, and copyrighted information described in the Complaint to the

extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and things concerning your requests for, receipt of, or use of any
hardware, software, firmware or information concerning virtual reality from Oculus VR or
Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad

as to its request for "[a]ll documents and things."  To respond to this request would require

Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic

mail, of every current and past employee of Plaintiffs.  Plaintiffs further object to this request on

the ground that it seeks information or documents that are in the possession of Plaintiffs' former

employees now working at Oculus and not in the possession of Plaintiffs.  In addition, Plaintiffs

object to this request on the ground that it seeks documents that are in Defendants' own

possession and not in the possession of Plaintiffs, including through emails or source code sent to

Defendants by Plaintiffs.  Moreover, Plaintiffs object to this request on the ground that it calls for

49

the production of confidential and/or trade secret information.  Plaintiffs will produce

confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify communications between Oculus or Palmer Luckey and employees and former

employees of Plaintiffs identified in Plaintiffs' Initial Disclosures, to the extent such documents

exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and things concerning your alleged research and experimentation
concerning the Rift, including without limitation all hardware, software and firmware
"modifications" "improvements" "enhancements" described in Paragraphs 3-9 and 29-31 of the
Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

50

production of confidential and/or trade secret information. Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the research and development of the confidential, trade secret, and copyrighted

information identified in the Complaint, to the extent such documents exist, are not privileged,

and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 50:**

All documents and things concerning any hardware, software, firmware or information
concerning virtual reality you allege you provided to Oculus VR or Luckey, including without
limitation any information you provided via a file transfer protocol.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad

as to its request for "[a]ll documents and things." To respond to this request would require

Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic

mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on

the ground that it seeks information or documents that are in the possession of Plaintiffs' former

employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs

object to this request on the ground that it seeks documents that are in Defendants' own

possession and not in the possession of Plaintiffs, including through emails or source code sent to

Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it is

premature. Fact discovery has just begun and expert discovery has yet to begin. More

51

importantly, the Parties have not yet designated experts.  In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify communications between Oculus or Palmer Luckey and employees and former employees of Plaintiffs identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 51:**

All documents and things concerning the Oculus DK1, including without limitation documents sufficient to identify any technology you allege to have contributed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

52

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Request No. 38.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding the

confidential, trade secret, and copyrighted information described in the Complaint to the extent

such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 52:**

All documents and things concerning the Oculus SDK, including without limitation your
review of the SDK prior to its publication and documents sufficient to identify any code you
allege to have contributed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

53

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Requests No. 50 and 51.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the confidential, trade secret, and copyrighted information described in the Complaint to

the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and things concerning game demonstrations you scheduled or conducted
on or around E3 2012, including without limitations the game demonstration described in
paragraphs 7 and 37-41 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the demonstrations described in the Complaint to the extent such documents exist, are

not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and things concerning your efforts to generate publicity for *Doom 3 BFG*, including without limitation financial records, analyses, strategies, budgets, projections, plans, notes, reports, recommendations, marketing materials, advertisements, presentations, promotions, and discounts offers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad

as to its request for "[a]ll documents and things." To respond to this request would require

Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic

mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on

the ground that it calls for the production of confidential and/or trade secret information.

Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in

place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 53.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the general marketing efforts by Plaintiffs in connection with the release of Doom 3

BFG Edition, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things concerning your plans to develop, pursue, invest in, abandon or reject Rift support for *Doom 3 BFG*.

55

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.  Plaintiffs object to this request on the

ground that it is duplicative of Request No. 54.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the efforts made by Plaintiffs to support or not support the Rift in Doom 3 BFG Edition,

to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody,

or control.

**REQUEST FOR PRODUCTION NO. 56:**

All documents and things concerning game demonstrations you scheduled or conducted
on or around QuakeCon 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of Request No. 54.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify the demonstrations described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 57:**

All documents and things concerning demonstrations of Rift prototypes scheduled or conducted on or around QuakeCon 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

57

ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify the demonstrations described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 58:

All documents and things concerning the panel discussion described in paragraph 67 of the Complaint.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 58:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.

## REQUEST FOR PRODUCTION NO. 59:

All documents and things concerning Oculus VR or Luckey developing, designing, programming, testing, demonstrating, and marketing of the Rift, including without limitation demonstrations conducted at QuakeCon 2012, Unite 2012, PaxPrime 2012, Gamescom 2012, and CES 2013.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.  Plaintiffs object to this request on the

ground that it is duplicative of Requests No. 53, 54, 56, 57, and 58.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the demonstrations described in the Complaint to the extent such documents exist, are

not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 60:**

All documents and things concerning game demonstrations you scheduled or conducted
on or around CES 2013.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.  Plaintiffs object to this request on the

ground that it is duplicative of Request No. 59.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the demonstrations described in the Complaint to the extent such documents exist, are

not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 61:**

Oculus VR and Luckey request that you permit the inspection of all versions and
prototypes of virtual reality hardware or software that you allege contain your proprietary
information including without limitation all hardware and software described in paragraphs 4,
24, at 155 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is seeking an

improper inspection of property pursuant to Federal Rule 34.  Plaintiffs further object to this

request on the ground that it calls for the production of confidential and/or trade secret

60

information.  Plaintiffs will produce confidential and/or trade secret information once a

Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs are willing to meet and confer regarding an

appropriate date, time, and protocol for inspection.

### REQUEST FOR PRODUCTION NO. 62:

Oculus VR and Luckey request that you permit the inspection of all versions and prototypes of virtual reality HMDs and related tangible equipment that you obtained, developed, or tested, including without limitation the "off-the-shelf headsets" described in paragraph 25 of the Complaint, the equipment pictured in paragraph 27 of the Complaint, and all equipment you received from Virtual Realities, eMagin, or Sony.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 62:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation.  Plaintiffs also object to this request on the ground

that it seeks information or documents that are in the possession of Plaintiffs' former employees

now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it is seeking an

improper inspection of property pursuant to Federal Rule 34.  Moreover, Plaintiffs object to this

request on the ground that it calls for the production of confidential and/or trade secret

information.  Plaintiffs will produce confidential and/or trade secret information once a

61

Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of

Request No. 61.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs are willing to meet and confer regarding an

appropriate date, time, and protocol for inspection.

**REQUEST FOR PRODUCTION NO. 63:**

Oculus VR and Luckey request that you permit the inspection of all hardware, software
or firmware you received from Oculus VR or Luckey, including without limitations all versions
and prototypes of the Rift prototype(s) and related tangible equipment you received in advance
of E3 2012 or QuakeCon 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is seeking an improper inspection

of property pursuant to Federal Rule 34.  Moreover, Plaintiffs object to this request on the

ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs

will produce confidential and/or trade secret information once a Protective Order is in place.

Plaintiffs object to this request on the ground that it is duplicative of Requests No. 53, 56, 57,

and 61.

62

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs are willing to meet and confer regarding an appropriate date, time, and protocol for inspection.

**REQUEST FOR PRODUCTION NO. 64:**

Oculus VR and Luckey request that you permit the inspection of all tangible equipment used or brought by you to E3 2012 for use in game demonstrations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is seeking an improper inspection of property pursuant to Federal Rule 34. Plaintiffs further object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 53, 61, and 63.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs are willing to meet and confer regarding an appropriate date, time, and protocol for inspection.

**REQUEST FOR PRODUCTION NO. 65:**

Oculus VR and Luckey request that you permit the inspection of all tangible equipment used or brought by you to QuakeCon 2012 for use in game demonstrations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected

63

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is seeking an

improper inspection of property pursuant to Federal Rule 34.  Plaintiffs further object to this

request on the ground that it calls for the production of confidential and/or trade secret

information.  Plaintiffs will produce confidential and/or trade secret information once a

Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of

Requests No. 56, 57, and 61.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs are willing to meet and confer regarding an

appropriate date, time, and protocol for inspection.

## REQUEST FOR PRODUCTION NO. 66:

All documents and things concerning the alleged "Non-Disclosure Agreement" between
you and Luckey, including without limitation all draft documents and alleged final documents
and related communications.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 66:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

64

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to identify draft and final versions of the Non-Disclosure Agreement as well as communications regarding the Non-Disclosure Agreement, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 67:**

All written documents you allege modified or amended the alleged "Non-Disclosure Agreement" between you and Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

65

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 68:**

All written documents you allege define the term "Proper Purpose" referenced in paragraph 34 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things concerning your performance or nonperformance pursuant to the alleged "Non-Disclosure Agreement" between you and Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things concerning your allegation that Oculus VR "knew and had reason to know that Luckey received [proprietary] information pursuant to the Non-Disclosure Agreement" in paragraph 135 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 71:**

All documents and things concerning your allegation that Oculus VR was bound by the "Non-Disclosure Agreement" by its "action and conduct" as reference in paragraphs 136 and 142 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

68

privilege or immunity. Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover,

Plaintiffs object to this request on the ground that it calls for the production of confidential

and/or trade secret information. Plaintiffs will produce confidential and/or trade secret

information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 72:**

All documents and things concerning any alleged breach of the "Non-Disclosure
Agreement" by Luckey or Oculus VR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity. Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

69

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it seeks legal conclusions.  Moreover,

Plaintiffs object to this request on the ground that it calls for the production of confidential

and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret

information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents regarding

Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 73:

All documents and things concerning proprietary information you allegedly provided to
Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement."

### RESPONSE TO REQUEST FOR PRODUCTION NO. 73:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

70

production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents regarding Plaintiffs' breach of contract claim after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things concerning any employment agreements between you and Carmack, including without limitation all drafts, revisions, modifications, amendments of the employment agreements and related communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between

71

Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things concerning your ownership or lack thereof of any intellectual property created by Carmack while Carmack was employed by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things concerning your performance or nonperformance pursuant to the employment agreement between you and Carmack.

72

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is not relevant to the extent it seeks documents that are beyond the scope of this litigation and not calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks legal conclusions. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things concerning any alleged breach the employment agreement between you and Carmack.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is not relevant to the extent it seeks documents that are beyond the scope of this litigation and not calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks legal conclusions. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Requests No. 56, 57, and 61.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and things concerning the expiration or renewal of employment agreement between you and Carmack, including without limitation all term sheets, draft documents and related communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and things concerning the alleged technical advisor agreement between you and Carmack, including without limitation all term sheets, draft documents and related communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks

75

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it calls for the production of

confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade

secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce written agreements between

Plaintiffs and John Carmack, and any amendments thereto, to the extent such documents exist,

are not privileged, and are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 80:

All documents and things concerning Carmack's publication of Latency Mitigation
Strategies on or about February 22, 2013, including without limitation any communications
between you and Carmack "allowing [Carmack] to publish this openly."

### RESPONSE TO REQUEST FOR PRODUCTION NO. 80:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad

as to its request for "[a]ll documents and things . . . including without limitation any

communications."  To respond to this request would require Plaintiffs to conduct an

unreasonably burdensome search into all documents, including electronic mail, of every current

and past employee of Plaintiffs.  Plaintiffs further object to this request on the ground that it

seeks information or documents that are in the possession of Plaintiffs' former employees now

76

working at Oculus and not in the possession of Plaintiffs.  In addition, Plaintiffs object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs.  Moreover, Plaintiffs object to this request on the ground that it seeks legal

conclusions.  Additionally, Plaintiffs object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.  Plaintiffs also object to this request on the ground that it

calls for the production of confidential and/or trade secret information.  Plaintiffs will produce

confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify the Latency Mitigation Strategies publication and communications related thereto, to the

extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

## REQUEST FOR PRODUCTION NO. 81:

All documents and things concerning Carmack's communications with any HMD makers
other than Oculus VR or Luckey, including but not limited to Virtual Realities, eMagin, and
Sony.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 81:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation.  Plaintiffs also object to this request on the ground

that it seeks information or documents that are in the possession of Plaintiffs' former employees

77

now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications received by or sent to Carmack regarding his virtual reality

research and development, to the extent such documents exist, are not privileged, and are in

Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 82:

All documents and things concerning Carmack's communications with any makers of
game consoles, platforms, peripherals, accessories, graphics cards, other than Oculus VR or
Luckey including but not limited to Sony, NVIDIA, and Intel.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 82:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation.  Plaintiffs also object to this request on the ground

that it seeks information or documents that are in the possession of Plaintiffs' former employees

now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this

request on the ground that it seeks documents that are in Defendants' own possession and not in

the possession of Plaintiffs, including through emails or source code sent to Defendants by

Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce responsive communications received by or sent to Carmack regarding his virtual reality

research and development, to the extent such documents exist, are not privileged, and are in

Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and things concerning the employment of Carmack or any of your former
employees by Oculus VR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is vague and

ambiguous, as it is unclear what is meant by the phrase "concerning the employment."  Plaintiffs

further object to this request on the ground that it seeks information or documents that are in the

possession of Plaintiffs' former employees now working at Oculus and not in the possession of

Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it seeks documents that

are in Defendants' own possession and not in the possession of Plaintiffs, including through

emails or source code sent to Defendants by Plaintiffs.  Moreover, Plaintiffs object to this request

on the ground that it calls for the production of confidential and/or trade secret information.

Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in

79

place.  Plaintiffs object to this request on the ground that it is duplicative of Requests No. 74, 76, and 79.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce written agreements between Plaintiffs and John Carmack and other former employees identified in paragraph 97 of the Complaint, and any amendments thereto, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and things concerning the resignation of your former employees on or around February 17, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this request on the ground that it is duplicative of Requests No. 74, 76, 79, and 83.

80

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce the employment file of John Carmack and other former employees identified in paragraph 97 of the Complaint, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 85:

If you contend that any of your former employees other than Carmack who are currently employed by Oculus VR had access to your proprietary information regarding virtual reality, documents sufficient to identify all such former employees and all such proprietary information regarding virtual reality.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 85:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

81

**REQUEST FOR PRODUCTION NO. 86:**

All documents and things concerning the Kickstarter campaign for the Oculus Rift referenced in paragraphs 48-49 and 57-63 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs also object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs further object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

82

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things concerning any partnership with, investment in, equity ownership of Oculus VR by you, including without limitation the proposals referenced in paragraphs 50, 53, 71, 74, 77-79, 82-23, 88, 91.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

83

**REQUEST FOR PRODUCTION NO. 88:**

All documents and things concerning seed funding, Series A funding or Series B funding for Oculus VR, including without limitation the "investor prospectus[es]" described in paragraphs 80 and 88 of the Complaint .

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs also object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs further object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

84

**REQUEST FOR PRODUCTION NO. 89:**

All documents and things concerning the announcement of the proposed acquisition of Oculus VR referenced in paragraph 101 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will produce responsive communications regarding the announcement of the proposed acquisition of Oculus VR sent to or received by employees and former employees identified in Plaintiffs' Initial Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 90:**

All versions of virtual reality-related Source Code you obtained, developed, or tested, including without limitation, all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks legal conclusions. Moreover, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Additionally, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 5.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce the underlying computer source code for the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

86

## REQUEST FOR PRODUCTION NO. 91:

All documents and things concerning any similarities or differences between the parties' Source Code or software products, including without limitation, all documents and things concerning the testing thereof.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 91:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce the underlying computer source code for the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

87

**REQUEST FOR PRODUCTION NO. 92:**

All documents and things concerning the destruction or loss of any virtual reality-related Source Code, including without limitation, all "copyrighted computer code, trade secret information, and technical know-how" described in paragraph 1 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.  Plaintiffs object to this

request on the ground that it is duplicative of Request No. 5.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce the underlying computer source code

for the confidential, trade secret, and copyrighted information described in the Complaint to the

extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or

control.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and things concerning any reimplementation or modification by John Carmack or any ZeniMax employee of any Source Code provided by Defendants to Plaintiffs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it seeks information or documents that are in the possession of Plaintiffs' former employees now working at Oculus and not in the possession of Plaintiffs. Plaintiffs further object to this request on the ground that it seeks documents that are in Defendants' own possession and not in the possession of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs. In addition, Plaintiffs object to this request on the ground that it is premature. Fact discovery has just begun and expert discovery has yet to begin. More importantly, the Parties have not yet designated experts. Moreover, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce the underlying computer source code for the confidential, trade secret, and copyrighted information described in the Complaint to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 94:**

All documents and things concerning any reimplementation or modification by John Carmack or any ZeniMax employee of any Source Code provided by Defendants to Plaintiffs.

89

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

Plaintiffs incorporate their response to Request No. 93.

**REQUEST FOR PRODUCTION NO. 95:**

All documents sufficient to describe the history of your business, including without limitation the date of founding, ownership changes, name changes, names of all predecessors entities, and all subsidiaries and affiliates.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity. Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents." To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs further object to this request on the ground that it is vague and ambiguous, as it is unclear what is meant by the phrase "documents sufficient to describe the history of your business." In addition, Plaintiffs object to this request on the ground that it calls for the production of confidential and/or trade secret information. Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce documents sufficient to identify the corporate relationship between Plaintiffs, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

90

**REQUEST FOR PRODUCTION NO. 96:**

All documents sufficient to demonstrate your internal organization and personnel structure, such as organization charts, internal directories, or personnel lists for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce an organizational chart of key

employees of Plaintiffs, as well as documents sufficient to identify current and former employees

of Plaintiffs, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 97:**

All documents and things concerning your revenues, earnings, or profits including without limitation investor presentations, annual reports, annual statements, corporate statements, financial statements, income statements, balance sheets, budgets, projections, business plans, marketing plans, pro formas, and the like for all time periods beginning from the first year in which you claim to have conducted research or experimentation concerning virtual reality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

91

privilege or immunity.  Plaintiffs also object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce responsive documents sufficient to

identify its annual revenues and profits for each fiscal year from 2011 to the present, and

responsive documents sufficient to identify the financial investment made by Plaintiffs in virtual

reality as discussed in the Complaint, to the extent such documents exist, are not privileged, and

are in Plaintiffs' possession, custody, or control.

### REQUEST FOR PRODUCTION NO. 98:

All documents and things concerning your annual management meetings, including
without limitation meeting agendas, presentations, reports, notes, minutes, and the like for all
time periods beginning from the first year in which you claim to have conducted research or
experimentation concerning virtual reality.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 98:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.

### REQUEST FOR PRODUCTION NO. 99:

All documents and things concerning the management committee of id Software
including without limitation meeting agendas, presentations, reports, notes, minutes, and the like
for all time periods beginning from the first year in which you claim to have conducted research
or experimentation concerning virtual reality.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 99:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things concerning your communications to investors, media, and other
Third Parties concerning virtual reality.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground

that it is overly broad as to its request for "[a]ll documents and things." To respond to this

request would require Plaintiffs to conduct an unreasonably burdensome search into all

documents, including electronic mail, of every current and past employee of Plaintiffs. Plaintiffs

further object to this request on the ground that it seeks information or documents that are in the

possession of Plaintiffs' former employees now working at Oculus and not in the possession of

Plaintiffs. In addition, Plaintiffs object to this request on the ground that it seeks documents that

are in Defendants' own possession and not in the possession of Plaintiffs, including through

emails or source code sent to Defendants by Plaintiffs. Moreover, Plaintiffs object to this request

on the ground that it calls for the production of confidential and/or trade secret information.

Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in

place. Plaintiffs object to this request on the ground that it is duplicative of Request No. 2.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

93

produce responsive documents sufficient to identify communications regarding virtual reality

sent to or received by employees and former employees identified in Plaintiffs' Initial

Disclosures, to the extent such documents exist, are not privileged, and are in Plaintiffs'

possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and things concerning your acquisition of id Software, including without limitation all communications, meeting notes, projections models, valuations, memoranda, correspondence, agreements, proposals and presentations concerning all id Software "intellectual property and franchise assets" you claim were acquired in paragraph 21 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity, or is protected under a non-disclosure, confidentiality or similar

agreement with a third-party to this litigation. Plaintiffs also object to this request on the ground

that it seeks legal conclusions. Plaintiffs further object to this request on the ground that it calls

for the production of confidential and/or trade secret information. Plaintiffs will produce

confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce documents sufficient to identify the intellectual property acquired from id Software as

referenced in paragraph 21 of the Complaint, to the extent such documents exist, are not

privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and things upon which you intend to question any witness, whether at deposition, hearing or trial, or that you intend to introduce at the trial of this matter.

94

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and things provided to any individual who you may use to present
evidence of the kind admissible under Federal Rules of Evidence 701, 702, 703, or 705.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.

**REQUEST FOR PRODUCTION NO. 104:**

All documents in any way concerning this action provided to, reviewed by, relied upon or
created by any expert witness disclosed by you pursuant to Federal Rule of Civil Procedure
26(a)(2).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

95

privilege or immunity.  Plaintiffs also object to this request on the ground that it is premature.

Fact discovery has just begun and expert discovery has yet to begin.  More importantly, the

Parties have not yet designated experts.  Plaintiffs further object to this request on the ground

that it calls for the production of confidential and/or trade secret information.  Plaintiffs will

produce confidential and/or trade secret information once a Protective Order is in place.

      Subject to and without waiver of General and Specific Objections, and subject to a

Protective Order entered in the case, Plaintiffs will produce documents relied upon by their

expert witnesses in their respective reports, to the extent such documents exist, are not

privileged, and are in Plaintiffs' possession, custody, or control.

## REQUEST FOR PRODUCTION NO. 905:

      All documents and things relating to experts or consultants retained by you in connection
with this litigation, including any retainer or consulting agreement, any *curriculum vitae*, and the
expert's or consultant's articles or other publications.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 905:

      Plaintiffs assume Defendants intended to number Request No. 905 as Request No. 105.

      Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.  Plaintiffs also object to this request on the ground that it seeks

information or documents that are in the possession of Plaintiffs' former employees now working

at Oculus and not in the possession of Plaintiffs.  Plaintiffs further object to this request on the

ground that it seeks documents that are in Defendants' own possession and not in the possession

of Plaintiffs, including through emails or source code sent to Defendants by Plaintiffs.  In

addition, Plaintiffs object to this request on the ground that it is premature.  Fact discovery has

just begun and expert discovery has yet to begin.  More importantly, the Parties have not yet

96

designated experts.  Moreover, Plaintiffs object to this request on the ground that it calls for the

production of confidential and/or trade secret information.  Plaintiffs will produce confidential

and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to any

third-party confidentiality agreements and a Protective Order entered in the case, Plaintiffs will

produce engagement agreements and *curricula vitae* for their testifying experts to the extent such

documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 106:**

All documents and things furnished to, or discussed with, any fact witness contacted,
interviewed, or consulted by you or your agents or attorneys in connection with this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.

**REQUEST FOR PRODUCTION NO. 107:**

All documents and things identified, relied upon, or referred to in preparing your
responses to interrogatories, requests for production, or requests for admission in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected

by attorney-client privilege, the work product doctrine, third-party privilege or other applicable

privilege or immunity.

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things identified, relied upon, or referred to in preparing subpoenas, interrogatories, requests for production, or requests for admission in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and things referenced, described or categorized in your Rule 26 initial disclosures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it calls for the production of confidential and/or trade secret information.  Plaintiffs will produce confidential and/or trade secret information once a Protective Order is in place.

Subject to and without waiver of General and Specific Objections, and subject to a Protective Order entered in the case, Plaintiffs will produce responsive documents after a reasonably diligent search, to the extent such documents exist, are not privileged, and are in Plaintiffs' possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 110:**

All documents and things concerning any communication to or from any of the individuals identified in in your Rule 26 initial disclosures concerning the subject matter of this litigation, Oculus VR or Luckey.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this request on the ground that it seeks the production of documents protected by attorney-client privilege, the work product doctrine, third-party privilege or other applicable privilege or immunity.  Plaintiffs also object to this request on the ground that it is overly broad as to its request for "[a]ll documents and things concerning any communication."  To respond to this request would require Plaintiffs to conduct an unreasonably burdensome search into all documents, including electronic mail, of every current and past employee of Plaintiffs.

Dated: August 11, 2014

Respectfully submitted,

_____

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
   **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*

100

## CERTIFICATE OF SERVICE

I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing *ZeniMax Media Inc. and id Software LLC's Responses and Objections to Defendants' First Set of Requests for Production of Documents and Things to Plaintiffs* to be served on Defendants by electronic mail to the following addresses: lcarter@carterscholer.com, lstahl@carterscholer.com, and oculus-zenimax@bingham.com.

Dated: August 11, 2014

_____
James Y. Pak

101

EXHIBIT 9

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August 29, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:   Plaintiffs' Responses to Defendants' Second Interrogatories
      *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

Please find enclosed ZeniMax Media Inc. and id Software LLC's Responses and Objections to Defendants' First and Second Set of Interrogatories.

Very truly yours,

*P. Anthony Sammi /clcol*

P. Anthony Sammi

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

## ZENIMAX MEDIA INC. AND ID SOFTWARE LLC'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST AND SECOND SET OF INTERROGATORIES

Pursuant to the Federal Rules of Civil Procedure, ZeniMax Media Inc. ("ZeniMax") and id Software LLC ("id Software") (collectively, "Plaintiffs") hereby serve these Responses and Objections to Defendants' First and Second Set of Interrogatories to Plaintiffs, which include restated Responses and Objections to Defendants' First Set Of Interrogatories to Plaintiffs that were originally served on Plaintiffs on August 11, 2014.

## GENERAL RESPONSES AND OBJECTIONS

Plaintiffs assert the following General Objections. Each individual Response to the Interrogatories is subject to, and limited in accordance with, the following General Objections, which are incorporated as if fully set forth therein. The following General Objections are not waived, or in any way limited by, the Specific Responses and Objections. Although Specific Objections are also interposed in response to individual Interrogatories, Plaintiffs' failure to repeat any part of their General Objections shall not be construed as a waiver of those objections.

1

1.     The Responses set forth below are for the purposes of discovery only, and Plaintiffs expressly reserve any and all objections they may have to the relevance, competence, materiality, admissibility, or use at deposition, hearing, or trial of any information stated, produced, identified, or referred to herein.  Plaintiffs also expressly reserve their right to rely, at any later time including at deposition, hearing, or trial, upon additional documents or information not included in the Specific Responses.

2.     An objection to a specific Interrogatory or a willingness to provide a response does not imply, and should not be construed as an acknowledgement, that complete answers to that Interrogatory are available or exist.

3.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they purport to impose discovery obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, the Requirements for District Judge Jorge A. Solis, or any other applicable law or rule.

4.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are vague, ambiguous, non-specific, or confusing, and thus not susceptible to a reasoned interpretation or response.

5.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they seek information that is not relevant to the claims or defenses of either party, and thus not reasonably calculated to lead to the discovery of admissible evidence.

6.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they are duplicative, cumulative, and/or seek information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome, and/or less expensive.

2

7.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent they are overly broad, overly expansive, oppressive, and/or unduly burdensome, and would impose upon Plaintiffs an unreasonable burden of inquiry, or to the extent they seek information not within Plaintiffs' possession, custody, or control.  Plaintiffs also object to the Interrogatories, Definitions, and Instructions as unduly burdensome to the extent that the information requested is within the knowledge of Defendants, can be determined by referring to documents within the possession, custody, or control of Defendants, is within the public domain, or is otherwise more readily or equally available to Defendants and thus more conveniently obtained by Defendants.

8.     The Responses set forth below are based upon Plaintiffs' interpretation of the language used in the Interrogatories, Definitions, and Instructions.  Plaintiffs reserve their right to amend or to supplement their Responses to the Interrogatories in the event Defendants assert, or the Court adopts, an interpretation that differs from Plaintiffs' interpretation.

9.     Plaintiffs object to Defendants' Definition of "ZeniMax," "Plaintiffs," "you," and "your" and "id Software" in both Defendants' First and Second Set of Interrogatories to Plaintiffs as overly broad and/or unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to discovery of admissible evidence.  For purposes of answering these Interrogatories, Plaintiffs use the term "ZeniMax" to mean ZeniMax Media Inc., "id Software" to mean id Software LLC, and "Plaintiffs" to mean both ZeniMax Media Inc. and id Software LLC, only.

10.     Plaintiffs object to Defendants' Definition of "identify," "identifying," "identity," or "identification" in both Defendants' First and Second Set of Interrogatories to Plaintiffs as unduly burdensome, beyond the discovery obligations set forth in the Federal Rules of Civil Procedure, and not reasonably calculated to lead to the discovery of admissible evidence.  For

3

the purposes of answering these Interrogatories, Plaintiffs use and interpret the terms "identify," "identifying," "identity," or "identification" according to their plain meaning and common sense usage.

11.     Plaintiffs object to the Interrogatories to the extent they seek confidential and proprietary information, including but not limited to trade secrets, source code, and competitively sensitive business information, particularly where the marginal benefits of producing such information are outweighed by the burden of producing such highly sensitive materials.  Plaintiffs further object to the Interrogatories to the extent they seek confidential and proprietary information absent an agreed-upon Protective Order.

12.     Plaintiffs object to the Interrogatories, Definitions, and Instructions to the extent that they call for the production of information or documents subject to a claim of privilege or immunity, including the attorney-client privilege, the attorney work-product doctrine, or any other applicable evidentiary privilege or immunity from disclosure.  Nothing contained in these Responses is intended to be nor should be considered as a waiver of any attorney-client privilege, work-product protection, or any other applicable evidentiary privilege or immunity.  The inadvertent production of any response or document subject to such privileges or immunities is not intended to relinquish any privilege or immunity and shall not be deemed to constitute a waiver of any applicable privilege or immunity.

13.     The Responses and Objections herein are based on Plaintiffs' present knowledge, information, and belief.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct, or clarify any of the Responses and/or Objections herein, and indeed, Plaintiffs expect to amend and revise these Responses as discovery proceeds in this action.

4

Each of the foregoing General Responses and Objections are incorporated by reference into each and every Specific Response set forth below. Subject to the General Responses and Objections, and without waiver, modification, or limitation thereof, Plaintiffs' Specific Responses and Objections to the Interrogatories are set forth below.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify each person known to you or your attorney who has or is believed to have any knowledge of any facts pertaining to any claims, defenses, facts or allegations contained in the Complaint and/or Answer. With respect to each person, said identification should include, without limitation:

(a) his or her full name;

(b) his or her present or last-known addresses;

(c) his or her present or last-known telephone numbers; and

(d) his or her present or last-known position and business affiliation.

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature, as discovery has just commenced. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Defendant Oculus VR, Inc. ("Oculus"), and not Plaintiffs, employs the majority of persons with knowledge of the circumstances of this this case, including several of Plaintiffs' former employees.

Subject to and without waiving these objections, Plaintiffs respond as follows:

5

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Persons having knowledge of the "claims, defenses, facts or allegations contained in the Complaint and/or Answer" may include the persons listed below:

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Abrash, Michael | Chief Scientist, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Andonov, Vlatko | President, Bethesda Softworks | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| Antkow, Christian | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Antonov, Michael | Chief Software Architect, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Carmack, John | Chief Technical Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Duffy, Robert | Programming Director, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Forsyth, Tom | Software Architect, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Hollenshead, Todd | Former President, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Hooper, Matthew | Director of Development, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |

6

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|---|---|---|
| Iribe, Brendan | Chief Executive Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kang, Katherine | Co-founder, Armadillo Aerospace | 201 Laurence Drive PMB# 512 Heath, TX 75032 Unknown |
| Kennickell, Gloria | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kim, Andrew | Director of Business Development, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Kim, Jason D. | Product Manager, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Leder, James | Chief Operating Officer, ZeniMax | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| Luckey, Palmer | Founder, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Malamed, Laird | Chief Operating Officer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| McCauley, Jack | Vice President of Engineering, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Mitchell, Nate | Vice President of Product, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |

7

| Name | Position & Business Affiliation | Business Address & Telephone Number (Upon Information and Belief) |
|------|-------------------------------|------------------------------------------------------------------|
| Patel, Nirav | Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Thompson, Tracey | Public Relations Director, ZeniMax | 1370 Piccard Drive Suite 120 Rockville, MD 20850 (301) 948-2200 |
| van Waveren, Jan Paul | Senior Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Willits, Tim | Studio Director, id Software | 1500 North Greenville Ave 7th Floor Richardson, TX 75081 (972) 613-3589 |
| Wright, Jonathan E. | Senior Engineer, Oculus | 19800 MacArthur Boulevard Suite 200 Irvine, CA 92612 (949) 502-2070 |
| Zuckerberg, Mark | Chief Executive Officer, Facebook, Inc. | 1601 Willow Road Menlo Park, CA 94025 (650) 543-4800 |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to further amend the foregoing Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response.

**INTERROGATORY NO. 2:**

Identify each person whom Plaintiffs expect to provide sworn testimony in this matter, at trial or otherwise, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. For each witness you expect to call to offer evidence you believe is admissible under Federal Rules of Evidence 701, 702, 703, 704, or 705, include in your description of the subject matter on which each witness is expected to testify, the substance of the facts to which each such witness is expected to testify, the substance of any opinions to which each such witness is expected to testify, and a summary of the grounds for each such opinion.

8

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature with respect to its request for "the substance of the facts to which each such witness is expected to testify," "the substance of any opinions to which each such witness is expected to testify," and "a summary of the grounds for each such opinion," particularly given that discovery has not commenced and the Parties have not yet designated expert witnesses or exchanged witness lists. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Oculus, and not Plaintiffs, employs the majority of persons who will testify or provide opinions in this matter. In addition, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 1.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

"[P]erson[s] whom Plaintiffs expect to provide sworn testimony in this matter" and "witness[es] [Plaintiffs] expect to call to offer evidence" include the following persons:

| Name | Subject Matter |
|---|---|
| Abrash, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Andonov, Vlatko | Relationship between the Parties |
| Antkow, Christian | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Antonov, Michael | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

9

| Name | Subject Matter |
|------|----------------|
| Carmack, John | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Forsyth, Tom | Relationship between the Parties;<br>Defendants' product development |
| Hollenshead, Todd | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development |
| Hooper, Matthew | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Iribe, Brendan | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Kang, Katherine | Relationship between the Parties;<br>Plaintiffs' product development;<br>Defendants' product development |
| Kennickell, Gloria | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Kim, Andrew | Defendants' marketing, business practices, and finances |
| Kim, Jason D. | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Defendants' product development and use of Plaintiffs' intellectual property |
| Leder, James | Relationship between the Parties;<br>Plaintiffs' intellectual property and product development;<br>Plaintiffs' business practices and finances |
| Luckey, Palmer | Relationship between the Parties;<br>Circumstances surrounding creation of Defendant Oculus and interaction with Plaintiffs;<br>Defendants' product development and use of Plaintiffs' intellectual property, including financial exploitation thereof;<br>Defendants' business practices and finances |
| Malamed, Laird | Relationship between the Parties;<br>Defendants' product development;<br>Defendants' business practices and finances |
| McCauley, Jack | Relationship between the Parties;<br>Defendants' product development and use of Plaintiffs' intellectual property |

10

| Name | Subject Matter |
|---|---|
| Mitchell, Nate | Relationship between the Parties; Defendants' product development and use of Plaintiffs' intellectual property |
| Patel, Nirav | Relationship between the Parties; Defendants' product development and use of Plaintiffs' intellectual property |
| van Waveren, Jan Paul | Relationship between the Parties; Plaintiffs' intellectual property and product development; Defendants' product development and use of Plaintiffs' intellectual property |
| Wright, Jonathan E. | Relationship between the Parties; Plaintiffs' intellectual property and product development; Defendants' product development and use of Plaintiffs' intellectual property |
| Zuckerberg, Mark | Defendants' product development; Defendants' product demonstrations; Acquisition of Oculus by Facebook, Inc. |

*(End of verified Response.)*

Plaintiffs specifically reserve their right to supplement this Response as discovery proceeds in this case, and further reserve their right to rely in this litigation on documents or testimony from persons not identified in this Response. Plaintiffs further reserve the right to rely in this litigation on the persons identified in this Response for testimony outside of the respective subject matter(s) identified in this Response.

**INTERROGATORY NO. 3:**

Identify all proprietary information you allegedly provided to Luckey or Oculus VR pursuant to the "Non-Disclosure Agreement" described in paragraph 32 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs further object to this Interrogatory as premature, given that discovery has

11

just commenced and the Parties have not yet designated experts.  In addition, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants were provided with ZeniMax virtual reality ("VR") Technology.  ZeniMax VR Technology consists of Plaintiffs' valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience.  ZeniMax VR Technology includes but is not limited to confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to commercially-viable virtual reality headsets, including the following:

(i)     interfaces between virtual reality headsets and interactive entertainment content and/or software;

(ii)    sensor and optical component calibration;

(iii)   latency reduction;

(iv)    low-latency head-tracking, including positional and absolute tracking;

(v)     head and neck modeling;

(vi)    predictive tracking;

(vii)   chromatic aberration reduction;

(viii)  distortion, motion blur, and jitter/judder reduction;

(ix)    pre-warping of displayed images;

(x)     combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience;

(xi)    minimizing or removing the "screen door" effect on the display;

(xii)   minimizing simulator sickness and/or motion sickness for users.

12

The ZeniMax VR Technology provided to Defendants also includes components of "DOOM 3: BFG Edition" computer program code.

Certain of Plaintiffs' former employees — specifically, John Carmack, Jan Paul van Waveren, Jonathan Wright, Jason Kim, Gloria Kennickell, Christian Antkow, and Matt Hooper — provided certain ZeniMax VR Technology to Defendants while they were still employed by Plaintiffs. They may have provided further ZeniMax VR Technology to Defendants after those employees were recruited for employment and hired by Oculus. In addition, certain ZeniMax VR Technology was identified in e-mail communications from certain of Plaintiffs' former employees to Defendants.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

**INTERROGATORY NO. 4:**

Identify with particularity the "ZeniMax VR Technology" referred to in the Complaint, including without limitation every piece of "valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous virtual reality experience" allegedly developed by ZeniMax employees, or otherwise allegedly owned by ZeniMax. With respect to each alleged technology, said identification should include without limitation a specific description of every component of the technology, how the components operate, how the components are combined, what component or combination of components renders the technology novel or unique, and what component or combination of components are incorporated in the Rift,SDK, or any other Oculus VR product.

13

## RESPONSE TO INTERROGATORY NO. 4:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that Defendants, and not Plaintiffs, are in the best position to know "what component or combination of components are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to the request for "a specific description of every component of the technology, how the components operate, how the components are combined, [and] what component or combination of components renders the technology novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatory No. 3.

Subject to and without waiving these objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and

14

may amend and revise this Response in the course of litigation to reflect that additional

information.  Additional information responsive to this Interrogatory may also be provided in

Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in

this case.

## INTERROGATORY NO. 5:

Identify with particularity all trade secrets ZeniMax alleges Defendants misappropriated, including all "ZeniMax Trade Secrets" referred to in the Complaint and including without limitation every such alleged trade secret consisting in whole or in part of:

(a) "confidential programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to virtual reality headsets; interfaces between virtual reality headsets and interactive entertainment content and/or software; sensors and optical components calibration; latency reduction; low-latency head-tracking, including positional and absolute tracking; head and neck modeling; predictive tracking; chromatic aberration reduction; distortion, motion blur, and jitter/judder reduction; pre-warping of displayed images; combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's virtual reality experience; minimizing or removing the 'screen door' effect on the display; minimizing simulator sickness and/or motion sickness for users; and creating a commercially viable virtual reality headset" referenced in the Complaint; and/or

(b) the "enforceable trade secret[] in the confidential, proprietary components of ZeniMax's "DOOM 3: BFG Edition" computer program code" referenced in the Complaint. With respect to each such alleged trade secret, said identification should include without limitation a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, what component or element or combination of components or elements renders the secret novel or unique, and what component or element or combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product.

## RESPONSE TO INTERROGATORY NO. 5:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-

client privilege, the work product doctrine or any other applicable evidentiary privilege or

immunity.  Plaintiffs also object to this Interrogatory as unduly burdensome for the reason that

Defendants, and not Plaintiffs, are in the best position to know "what component or element or

15

combination of components or elements are incorporated in the Rift, SDK, or any other Oculus VR product." Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and seeking information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly with respect to its request for "a specific description of every aspect of the secret, how the secret operates, what element or components are combined to form each secret, [and] what component or element or combination of components or elements renders the secret novel or unique." In addition, Plaintiffs object to this Interrogatory as premature, given that fact discovery has just commenced and the Parties have not yet designated experts. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order. Additionally, Plaintiffs object to this Interrogatory as duplicative of Interrogatories No. 3 and 4.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

Defendants refer to, and hereby incorporate by reference, their Response to Interrogatory No. 3.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable Plaintiffs to better ascertain the full extent and nature of the ZeniMax VR Technology that was disclosed to and used by Defendants, and may amend and revise this Response in the course of litigation to reflect that additional information. Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this case.

16

**INTERROGATORY NO. 6:**

State the factual basis for any alleged conduct described in the Complaint as improper, including without limitation identifying all communications, documents and things you assert support the allegations that:

(a)    Oculus VR or Luckey misappropriated any trade secrets owned by you;

(b)    Oculus VR or Luckey infringed any copyrights owned by you;

(c)    Oculus VR or Luckey breached any contracts with you;

(d)    Oculus VR or Luckey unfairly competed with you; or

(e)    Oculus VR or Luckey infringed any ZeniMax Marks or otherwise violated the Lanham Act.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein. Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature, as discovery has just commenced, and the parties have not yet designated experts or exchanged expert reports. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Defendants, and not Plaintiffs, are in possession of the majority of documents concerning the improper conduct in this case. In addition, Defendants, and not Plaintiffs, employ the majority of persons with knowledge of the improper conduct in this case, including several of Plaintiffs' former employees. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving these objections, upon information and belief, Plaintiffs respond as follows:

17

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

(i)     On or about June 23, 2009, ZeniMax acquired id Software, a recognized leader in the development of interactive computer graphics technology, video game engines, and video game franchises, including such popular titles as DOOM, Quake, Wolfenstein, and RAGE. Through its acquisition of id Software, ZeniMax acquired the clear and unencumbered right, title, and interest in and to all of id Software's intellectual property and franchise assets.

(ii)    On or about May 19, 2009, just prior to the completion of ZeniMax's acquisition of id Software, John Carmack, id Software's Technical Director, entered into a four (4) year term employment agreement with ZeniMax. In his employment agreement, Mr. Carmack agreed to disclose to ZeniMax inventions relating to the company's current or anticipated research and development that he created during the term of his employment, and further agreed that all such inventions would be the exclusive property of ZeniMax. (P0000230.)[1] Mr. Carmack also agreed that ZeniMax would also be the author and owner of any copyrightable works that he prepared within the scope of his employment. (Id.) ZeniMax entered into similar agreements with several other key id Software employees at the time of the acquisition. (See, e.g., P0000189; P0000200; P0000209; P0000219; P0000257; P0000268.)

(iii)   Between the 1990s and 2012, ZeniMax and id Software (collectively, for the purposes of the remaining verified Responses, "ZeniMax") pursued research in VR technology. In the process, ZeniMax amassed valuable and confidential know-how and trade secret information about how to develop, combine, and optimize hardware, firmware, and software for an improved and competitively advantageous VR experience ("ZeniMax VR Technology").

---

[1]  All citations are by way of example only, and should not be understood to be a comprehensive list of all relevant documents. Plaintiffs will supplement their citations in these Responses and Objections to the extent necessary.

18

ZeniMax had planned to demonstrate the ZeniMax VR Technology at the 2012 Electronic Entertainment Expo ("E3 2012") prior to having made contact with Defendant Palmer Luckey.

(iv)     On or about April 2012, Mr. Carmack discovered through an Internet forum that Mr. Luckey had assembled a primitive headset that Mr. Luckey termed the "Rift." Mr. Luckey lacked the technical expertise to create a viable prototype. At the time, the Rift was little more than a crude display panel, and lacked a head mount, VR specific software, integrated motion sensors, and other critical features and basic capabilities.

(v)     Between April 2012 and June 2012, ZeniMax made breakthrough modifications to the Rift prototype based upon prior research. Among other improvements, ZeniMax identified, applied, and developed proprietary solutions to address field of view, center of projection, and chromatic aberration issues; added specially-designed sensors and other hardware; and programmed software to reduce latency and to prevent distortions. Through these and other changes, ZeniMax transformed the Rift from $500 worth of optics into the "Holy Grail" combination of specially-tailored VR hardware and software.

(vi)     On or about May 22, 2012, ZeniMax and Mr. Luckey began formalizing a non-disclosure agreement ("NDA") in order to protect the ZeniMax VR Technology being used in the modified Rift. ZeniMax uses NDAs to maintain the secrecy of its trade secret and confidential information. In addition to third-party confidentiality agreements, ZeniMax also protects its trade secrets and confidential information by, inter alia, including confidentiality provisions in key employment agreements and using secured password-protected networks and databases. (See, e.g., P0000230.)

(vii)     On or about May 24, 2012, ZeniMax formalized the NDA with Mr. Luckey. (P0000054; P0000056.)  The NDA represented a valid, enforceable, and binding contract that

19

obligated Defendants to use or disclose ZeniMax's proprietary information only for a proper purpose.  Under the NDA, ZeniMax's proprietary information includes, inter alia, its business and financial information, source code, and other scientific, technical, or engineering materials. (P0000056.)  Per the parties' agreement, ZeniMax continues to be the exclusive owner of this proprietary information. (Id.)

   (viii)     Between May 2012 and July 2012, after the formal execution of the NDA, Defendants repeatedly requested additional VR Technology from ZeniMax.  ZeniMax set up a file transfer protocol site and made other arrangements to send ZeniMax VR Technology to Defendants pursuant to the NDA.  (See, e.g., P0000035; P0000038; P0000040; P0000045; P0000071; P0000077; P0000078; P0000084; P0000085.)

   (ix)     The information provided by ZeniMax to Defendants pursuant to the NDA constituted confidential and proprietary programming code, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to commercially-viable VR headsets, including but not limited to the following:

    (a)     interfaces between VR headsets and interactive entertainment content and/or software;

    (b)     sensor and optical component calibration;

    (c)     latency reduction;

    (d)     low-latency head-tracking, including positional and absolute tracking;

    (e)     head and neck modeling;

    (f)     predictive tracking;

    (g)     chromatic aberration reduction;

    (h)     distortion, motion blur, and jitter/judder reduction;

20

(i)      pre-warping of displayed images;

(j)      combining and selecting devices, displays, cables, optics, and related hardware solutions best-suited for improving the user's VR experience;

(k)      minimizing or removing the "screen door" effect on the display; and

(l)      minimizing simulator sickness and/or motion sickness for users.

The information provided to or obtained by Defendants also included ZeniMax VR Testbed Code, ZeniMax VR Implementation Code, and *DOOM 3: BFG Edition* code. (P0000339; P0000340; P0000342.)

(x)      Between June 5, 2012 and June 7, 2012, ZeniMax displayed the modified Rift with a specially-configured version of the *DOOM 3: BFG Edition* video game at E3 2012. These demonstrations were conducted by Mr. Carmack and by appointment only in the Bethesda Softworks booth manned by ZeniMax employees. The demonstrations at E3 2012 and the corresponding press interviews succeeded in garnering world-wide publicity for the modified Rift and won the modified Rift an E3 Game Critic Award for "Best Hardware/Peripheral."

(xi)      On or about June 20, 2012, Defendants looked to capitalize on the public recognition generated during E3 2012 and sought crowd sourced fundraising for the Rift through the website Kickstarter.com ("Kickstarter"). In support of their Kickstarter campaign, Defendants asked ZeniMax to put together a "cameo or blurb," and to include the modified Rift in Mr. Carmack's keynote speech at QuakeCon in August 2012, an annual convention for computer gamers sponsored by ZeniMax. (P0000044.)

(xii)      On or about July 13, 2012, in response to this request, ZeniMax proposed a call with Defendants to discuss how VR headset development should proceed moving forward. Defendants ignored ZeniMax's request. (P0000039.)

21

(xiii)     On or about July 26, 2012, after not responding to ZeniMax's request for a call, Defendants again asked ZeniMax for help with their Kickstarter video, noting that Mr. Carmack's reputation had helped the credibility of the Rift project. (P0000034.)  In subsequent emails, Mr. Carmack responded that Defendants should not show anything that could be construed as ZeniMax property, and refused Defendants' request for a clip from the *DOOM 3: BFG Edition* computer program.  (P0000069.)

(xiv)     On or about August 1, 2012, Defendants launched their Kickstarter campaign.  In blatant disregard of ZeniMax's rights, Defendants' Kickstarter video impermissibly used, copied, publicly displayed, and distributed ZeniMax's intellectual property.  Without prior authorization or commercial agreement, Defendants' Kickstarter video featured multiple clips showing *DOOM 3: BFG Edition* displayed on the modified Rift headset, used ZeniMax's *DOOM 3: BFG Edition* logo, and promised certain backers of the Kickstarter campaign copies of *DOOM 3: BFG Edition.*  The Kickstarter video further referenced ZeniMax's VR Technology as "the magic that sets the Rift apart."  Through the unauthorized use of ZeniMax's intellectual property, the Kickstarter project raised $2.44 million.

(xv)     Between August 2, 2012 and August 5, 2012, Defendants promoted the modified Rift at QuakeCon 2012.  While at QuakeCon, Defendants, lacking sufficient VR expertise, could not get the modified Rift to function properly without ZeniMax's assistance.

(xvi)     On or about August 5, 2012, Mr. Luckey appeared on a panel at QuakeCon and further promoted the modified Rift.  In that panel discussion, Mr. Luckey stated that he does not "do software at all," and acknowledged that ZeniMax's contributions were critical to the development of the modified Rift.

22

(xvii)     During the summer of 2012, Defendants also used ZeniMax VR Technology to demonstrate the modified Rift to potential investors.  For example, the Wall Street Journal reported that Oculus's current Chief Executive Officer, Brendan Iribe, met Mr. Luckey in a Long Beach, California hotel room, where Mr. Iribe saw the modified Rift in conjunction with ZeniMax's *RAGE* video game, again without ZeniMax's permission.   Based on this demonstration, Mr. Iribe and at least one of his associates became founding members, investors, and/or officers of Oculus.

(xviii)     On or about August 2012, after the Kickstarter launch, ZeniMax again reached out to Defendants to talk about working together more closely and to discuss a potential partnership with Bethesda Softworks.  ZeniMax also discussed demonstrations of the modified Rift with *DOOM 3: BFG Edition* at various upcoming conventions.  Pursuant to the parties' NDA, ZeniMax provided Defendants with an executable version of *DOOM 3: BFG Edition* but required Defendants to obtain approval from ZeniMax for each additional showing of the game.

(xix)     On or about August 7, 2012, Mr. Iribe sent an e-mail to Todd Hollenshead, President of id Software, acknowledging ZeniMax's "incredible support." (P0000089.)

(xx)     On or about August 16, 2012, after hearing no response from Defendants regarding an equity stake in Oculus, ZeniMax again requested that Defendants not disclose or discuss anything about future ZeniMax titles, release dates, timing, or future commitments. (P0000090.)

(xxi)     On August 22, 2012, Defendants informed ZeniMax that it had been performing multiple presentations of the modified Rift with *DOOM 3: BFG Edition* behind closed doors at the Gamescom, Unite, and PAX Prime computer gaming conferences.  That same day, Mr.

23

Hollenshead asked Defendants for an update on ZeniMax's proposal for an equity stake in Oculus. Defendants side-stepped ZeniMax's question regarding equity. (Id.)

(xxii)    On September 10, 2012, after multiple requests from ZeniMax to discuss compensation, Defendants drafted a proposal designed to kick off business discussions with ZeniMax. (P0000105; P0000106.)  Its proposal demanded, inter alia: (a) that ZeniMax grant Defendants a worldwide, exclusive license to programming code that had been provided by ZeniMax pursuant to the parties' NDA; (b) that ZeniMax create additional intellectual property for Defendants' sole use; (c) that ZeniMax provide extensive marketing and ten thousand free copies of *DOOM 3: BFG Edition* to Defendants; and (d) that ZeniMax permit Mr. Carmack to serve as a technical advisor to Defendants.  In return, Defendants offered ZeniMax an equity stake of 2%, subject to dilution, and other additional conditions.  Defendants also offered ZeniMax the right to pay an additional $1.2 million for an additional 3% stake in Oculus. (P0000106.)

(xxiii)   On or about September 27, 2012, Defendants sent their latest "investor prospectus" to ZeniMax.  (P0000006; P0000007.)  The prospectus, which Defendants used or intended to use to recruit new investors, listed Mr. Carmack as an "advisor/endorser" and used the id Software company logo next to Mr. Carmack's name.  (P0000007.)  id Software had not authorized the use of its names or logos in the prospectus, and had not officially endorsed the Rift.  In disregard of ZeniMax's directives not to use its property to promote the Rift, the prospectus also featured *DOOM* and other ZeniMax game logos on multiple slides.  (Id.) ZeniMax is the owner of these logos.  Defendants' investor prospectus further included a "product roadmap" representing that ZeniMax's *DOOM 3: BFG Edition* and *Skyrim* franchises

24

would be made to work with the Rift.  (Id.)  ZeniMax had reached no such agreement with Defendants.

(xxiv)    On or about October 19, 2012, ZeniMax made a counter-proposal to Defendants, agreeing to provide on-going support, including much of the support requested by Defendants, as well as a license to the ZeniMax VR Technology that had been disclosed pursuant to the parties' NDA.  In return, ZeniMax asserted its rights to a larger share of equity in Oculus to reflect ZeniMax's past and continuing contributions.  (P0000108; P0000109.)

(xxv)    On or about November 13, 2012, Defendants responded to this counter-proposal, asserting that ZeniMax's proposal "is so far out of the ballpark, we're left wondering if there's any hope."  (P0000111.)

(xxvi)    Between November 2012 and December 2012, notwithstanding Defendants' failure to engage in discussions with ZeniMax regarding these business issues, senior technical personnel at Oculus continued to reach out to and rely on ZeniMax to obtain additional ZeniMax VR Technology needed to develop the Rift.  (See, e.g., P0000001; P0000003; P0000004.)

(xxvii)    Upon information and belief, Defendants used this ZeniMax VR Technology to create a software development kit ("SDK") for the Rift and to develop, modify, and tune the Rift's hardware and firmware.  Upon information and belief, ZeniMax's copyrighted materials are embodied in, and substantially similar to, the Rift SDK.

(xxviii)    On or about December 11, 2012, Defendants responded to ZeniMax's October 19, 2012 counter-proposal.  (P0000114; P0000115.)  Defendants' revised proposal would not grant ZeniMax any equity in Oculus, but would only permit ZeniMax to purchase equity in exchange for several million dollars and additional contributions.  (P0000115.) Defendants also circulated a revised investor prospectus that contained the same unauthorized references to ZeniMax's

25

intellectual property and wrongly suggested ZeniMax's endorsement for the Rift. (See P0000118.) This investor prospectus also omitted any disclosure of Defendants' use of ZeniMax VR Technology, or Defendants' heavy reliance on ZeniMax to develop the Rift.

(xxix)   On or about January 22, 2013, Defendants began further efforts to obtain financing, and again invited ZeniMax to invest money and resources. (See P0000113.) Defendants' offer still did not provide any compensation for the contributions that ZeniMax had already made to the Rift. Defendants continued using ZeniMax VR Technology without license or permission, and further promoted themselves as the developers and owners of ZeniMax's breakthrough VR Technology.

(xxx)   During the summer of 2013, Defendants sought additional VR know-how by recruiting ZeniMax employees to Oculus.

(xxxi)   On or about June 2013, Mr. Carmack's employment agreement with ZeniMax expired. Mr. Carmack worked as a part-time technical advisor to ZeniMax for approximately two months following the expiry of his employment agreement. (See P0000344.)

(xxxii)   On or about August 2013, Mr. Carmack joined Oculus as Chief Technical Officer.

(xxxiii)   On or about September 2013, Defendants acknowledged in a press conference the enormous contribution that Mr. Carmack had made to the Rift while employed at ZeniMax.

(xxxiv)   On or about February 17, 2014, five additional senior employees of ZeniMax, all of whom had worked closely with Mr. Carmack, simultaneously resigned and immediately joined Oculus. All of those employees had access to ZeniMax confidential information and trade secrets, and all were subject to strict post-employment confidentiality and non-solicitation obligations. (P0000278; P0000285; P0000292; P0000299; P0000307; P0000313; P0000320.) At least one of the resigning employees refused to certify to ZeniMax upon his resignation that all

26

ZeniMax confidential information in his possession had been returned to ZeniMax.  (See, e.g., P0000292.)  Defendants continue to hire former ZeniMax employees who have had access to ZeniMax's intellectual property with the knowledge that those former employees will inevitably disclose ZeniMax's trade secrets.

(xxxv)    On or about March 25, 2014, Facebook, Inc. ("Facebook") announced a proposed acquisition of Oculus for $2 billion in cash and stock, thereby confirming the market value of the ZeniMax VR Technology and other intellectual property provided to Defendants pursuant to the parties' NDA.

(xxxvi)    On or about April 19, 2014, several months into his tenure at Oculus, Mr. Carmack announced that he was "in a hurry" to re-implement code.

(xxxvii)    On or about July 21, 2014, Facebook closed on its acquisition of Oculus. Facebook has noted that it considers the modified Rift the computing platform of the future, and commented that it plans to monetize the modified Rift both as a free-standing commercial product and as a social media tool integrated into its multitude of platforms.

(xxxviii)    As of the date of these Responses and Objections, ZeniMax has yet to receive any compensation for its contributions to the modified Rift.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable them to better ascertain the full extent and nature of Defendants' improper conduct in this case, including as to each of the causes of action asserted in Plaintiffs' complaint, and may amend and revise this Response to reflect that additional information.  Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order

27

entered in this action.  Plaintiffs reserve their right to rely on documents, communications, or information not identified in this Response.

### INTERROGATORY NO. 7:

Identify and describe all agreements between you on the one hand and Oculus VR or Luckey on the other, including without limitation (a) the date(s) said agreement(s) were reached, (b) the date(s) during which said agreement(s) were negotiated, (c) the individuals involved in negotiating said agreement(s), and (d) all documents evidencing said agreement(s) or negotiations.

### RESPONSE TO INTERROGATORY NO. 7:

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.  Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity.   Plaintiffs further object to this Interrogatory as premature and overbroad, particularly as to Defendants' request for "all agreements," including because discovery has just commenced in this action.  In addition, Plaintiffs object to this request on the ground that it seeks information or documents that are already in the possession of Defendants or Plaintiffs' former employees now working at Defendants.   Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving these objections, upon information and belief, Plaintiffs respond as follows:

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

(i)   On or about April 2012, Mr. Carmack discovered through an Internet forum that Mr. Luckey had assembled a primitive headset that Mr. Luckey termed the "Rift."  Mr. Luckey lacked the technical expertise to create a viable prototype.  At the time, the Rift was little more

28

than a crude display panel, and lacked a head mount, VR specific software, integrated motion sensors, and other critical features and basic capabilities.

(ii)     Between April 2012 and June 2012, ZeniMax made breakthrough modifications to the Rift prototype based upon prior research.  Among other improvements, ZeniMax identified, applied, and developed proprietary solutions to address field of view, center of projection, and chromatic aberration issues; added specially-designed sensors and other hardware; and programmed software to reduce latency and to prevent distortions.  Through these and other changes, ZeniMax transformed the Rift from $500 worth of optics into the "Holy Grail" combination of specially-tailored VR hardware and software.

(iii)     On or about May 22, 2012, ZeniMax and Mr. Luckey began formalizing a NDA in order to protect the ZeniMax VR Technology being used in the modified Rift.  ZeniMax uses NDAs to maintain the secrecy of its trade secret and confidential information.

(iv)     On or about May 24, 2012, ZeniMax formalized the NDA with Mr. Luckey. (P0000054; P0000056.)  The NDA represented a valid, enforceable, and binding contract that obligated Defendants to use or disclose ZeniMax's proprietary information only for a proper purpose.  Under the NDA, ZeniMax's proprietary information includes, inter alia, its business and financial information, source code, and other scientific, technical, or engineering materials. (P0000056.)  Per the parties' agreement, ZeniMax continues to be the exclusive owner of this proprietary information. (Id.)

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable them to better ascertain the full extent and nature of the relationship between the parties, including any agreements negotiated or executed

29

thereto, and may amend and revise this Response to reflect that additional information. Plaintiffs reserve their right to rely on documents or agreements not identified in this Response.

**INTERROGATORY NO. 8:**

State the factual basis for any alleged harm or damages suffered by you from any of the conduct alleged in the Complaint, including without limitation the form and amount of damages to which you claim you are entitled, including business losses, if any, and the factual bases, documents, calculations, and legal theories supporting or concerning that contention; if such contention regarding damages includes a claim of entitlement to statutory damages under 17 U.S.C. § 504(c), identify each work for which you believe you are entitled to recover such damages.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiffs reincorporate all of their General Objections as if specifically alleged herein.

Plaintiffs object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable evidentiary privilege or immunity. Plaintiffs also object to this Interrogatory as premature, as discovery has just commenced, and the parties have not yet designated experts or exchanged expert reports. Plaintiffs further object to this Interrogatory as overbroad and unduly burdensome because Defendants, and not Plaintiffs, are in possession of the majority of documents concerning the improper conduct in this case. In addition, Defendants, and not Plaintiffs, employ the majority of persons with knowledge of the improper conduct in this case, including several of Plaintiffs' former employees. Moreover, Plaintiffs object to providing a response to this Interrogatory in the absence of a Protective Order.

Subject to and without waiving the foregoing objections, upon information and belief, Plaintiffs respond as follows:

30

*(The following Response has been verified on behalf of Plaintiffs by an authorized representative of Plaintiffs, whose signed verification is attached to these Responses and Objections.)*

(i)      On or about April 2012, Mr. Carmack discovered through an Internet forum that Mr. Luckey had assembled a primitive headset that Mr. Luckey termed the "Rift." Mr. Luckey lacked the technical expertise to create a viable prototype. At the time, the Rift was little more than a crude display panel, and lacked a head mount, VR specific software, integrated motion sensors, and other critical features and basic capabilities.

(ii)      Between April 2012 and June 2012, ZeniMax made breakthrough modifications to the Rift prototype based upon prior research. Among other improvements, ZeniMax identified, applied, and developed proprietary solutions to address field of view, center of projection, and chromatic aberration issues; added specially-designed sensors and other hardware; and programmed software to reduce latency and to prevent distortions. Through these and other changes, ZeniMax transformed the Rift from $500 worth of optics into the "Holy Grail" combination of specially-tailored VR hardware and software.

(iii)      Between June 5, 2012 and June 7, 2012, ZeniMax displayed the modified Rift with a specially-configured version of the *DOOM 3: BFG Edition* video game at E3 2012. These demonstrations were conducted by Mr. Carmack and by appointment only in the Bethesda Softworks booth and were manned by ZeniMax employees. The demonstrations at E3 2012 and the corresponding press interviews succeeded in garnering world-wide publicity for the modified Rift and won the modified Rift an E3 Game Critic Award for "Best Hardware/Peripheral."

(iv)      On or about June 2012, Mr. Luckey, riding the wave of positive press that the modified Rift had received at E3, formed Oculus LLC, the corporate predecessor to Defendant Oculus VR, Inc.

31

(v)     Between July 2012 and November 2012, ZeniMax attempted to enter into discussions with Defendants for an equity stake in Oculus as compensation for its past and continuing support of the Rift.  Defendants never provided ZeniMax any compensation for its role in creating and promoting the Rift.  (See, e.g., P0000039; P0000090; P0000091; P0000105; P0000106; P0000108; P0000109; P0000111; P0000113; P0000114; P0000115.)

(vi)    On or about August 1, 2012, Defendants launched their Kickstarter campaign.  In blatant disregard of ZeniMax's rights, Defendants' Kickstarter video impermissibly used, copied, publicly displayed, and distributed ZeniMax's intellectual property.  The Kickstarter video further referenced ZeniMax VR Technology as "the magic that sets the Rift apart."  Through the unauthorized use of ZeniMax's intellectual property, the Kickstarter project raised $2.44 million.

(vii)   During the summer of 2012, Defendants also used ZeniMax VR Technology to demonstrate the modified Rift to potential investors.  For example, the Wall Street Journal reported that Oculus's current Chief Executive Officer, Mr. Iribe, met Mr. Luckey in a Long Beach, California hotel room, where Mr. Iribe saw the modified Rift in conjunction with ZeniMax's *RAGE* video game, again without ZeniMax's permission.  Based on this demonstration, Mr. Iribe and at least one of his associates became founding members, investors, and/or officers of Oculus.  Defendants represented in an investor prospectus that Mr. Iribe and his associates provided $2.55 million in seed funding to Oculus.  (P0000007.)

(viii)  On or about September 27, 2012, Defendants sent their "investor prospectus" to ZeniMax.  (P0000006; P0000007.)  The prospectus, which Defendants used or intended to use to recruit new investors, listed Mr. Carmack as an "advisor/endorser" and used the id Software company logo next to Mr. Carmack's name.  (P0000007.)  id Software had not authorized the use of its names and logos in the prospectus, and had not officially endorsed the Rift.  In disregard of

32

ZeniMax's directives not to use its property to promote the Rift, the prospectus also featured *DOOM* and other ZeniMax game logos on multiple slides. (Id.) ZeniMax is the owner of these logos. Defendants' investor prospectus further included a "product roadmap" representing that ZeniMax's *DOOM 3: BFG Edition* and *Skyrim* franchises would be made to work with the Rift. (Id.) ZeniMax had reached no such agreement with Defendants.

      (ix)    Defendants represented in an investor prospectus that in or about January 2013, Oculus raised $10 million in Series A funding. (Id.)

      (x)    Defendants represented in an investor prospectus that in or about September 2013, Oculus raised $30 million in Series B funding. (Id.)

      (xi)    On or about December 2013, news reports indicated that Oculus raised $75 million in venture capital funding from the Andreessen Horowitz firm.

      (xii)    On or about March 25, 2014, Facebook announced a proposed acquisition of Oculus for $2 billion in cash and stock. This valuation, along with the other rounds of funding received by Oculus, confirmed the market value of the ZeniMax VR Technology and other intellectual property provided to Defendants pursuant to the parties' NDA.

      (xiii)    On or about July 21, 2014, Facebook closed on its acquisition of Oculus. Facebook has noted that it considers the modified Rift the computing platform of the future, and commented that it plans to monetize the modified Rift both as a free-standing commercial product and as a social media tool integrated into its multitude of platforms.

      (xiv)    As of the date of these Responses and Objections, ZeniMax has yet to receive any compensation for its contributions to the modified Rift. ZeniMax therefore seeks damages that will fairly and fully compensate it for Defendants' misconduct, and requests at least the following categories of relief, in an amount to proven at trial:

33

(a)     Actual Damages;

(b)     Restitution;

(c)     Disgorgement;

(d)     Unjust Enrichment;

(e)     Equitable Relief;

(f)     Punitive and Exemplary Damages;

(g)     Statutory Damages under 17 U.S.C. § 101 et seq.;

(h)     Enhanced Damages;

(i)     Prejudgment and Post-Judgment Interest;

(j)     Court Costs;

(k)     Attorney Fees; and

(l)     All other relief to which ZeniMax is entitled.

*(End of verified Response.)*

Plaintiffs anticipate that discovery will enable them to better ascertain the full extent and nature of the harm and damages suffered as a result of Defendants' improper conduct in this case, including as to each of the enumerated grounds for relief in Plaintiffs' complaint, and may amend and revise this Response to reflect that additional information.   Additional information responsive to this Interrogatory may also be provided in Plaintiffs' expert reports that will be served in accordance with the scheduling order entered in this action.   Plaintiffs reserve their right to rely on documents, communications, or information not identified in this Response.

34

Dated: August 29, 2014                    AS TO OBJECTIONS:


_Tony Sammi/dcd_

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000


*Attorneys for Plaintiffs*

35

## CERTIFICATE OF SERVICE

I, James Y. Pak, counsel for Plaintiffs, do hereby certify that I caused a true and correct copy of the foregoing *ZeniMax Media Inc. and id Software LLC's Responses and Objections to Defendants' First and Second Set of Interrogatories* to be served on Defendants by electronic mail to the following addresses: lcarter@carterscholer.com, lstahl@carterscholer.com, and oculus-zenimax@bingham.com.

Dated: August 29, 2014

_____
James Y. Pak

36

## VERIFICATION

I, James L. Leder, state under penalty of perjury that I have read the foregoing Responses to Interrogatories No. 1, 2, 3, 4, 5, 6, 7, and 8, and that based upon matters within my personal knowledge and upon information that has been assembled and provided to me, the foregoing responses are correct, to the best of my knowledge and belief.

Dated: _Avg. 28_ , 2014

_____
James L. Leder
Chief Operating Officer, ZeniMax Media Inc.

on behalf of Plaintiffs
ZeniMax Media Inc. and id Software LLC

# EXHIBIT 10

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2546
DIRECT FAX
(917) 777-2546
EMAIL ADDRESS
JAMES.PAK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August 22, 2014

VIA FEDERAL EXPRESS

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' First Production of Documents
      *ZeniMax Media Inc. et al. v. Oculus VR, Inc. et al.*, No. 3:14-cv-01849

Dear Geoff:

Enclosed please find a disc bearing Bates numbers P0000001-P0000346. These documents are encrypted and a password will be provided electronically. Please note that certain documents contained on this disc have been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the proposed protective order currently being negotiated by the parties. Pursuant to the parties' agreement on August 20, 2014, "HIGHLY CONFIDENTIAL" documents shall be shown only to outside counsel, and "CONFIDENTIAL" documents shall be shown only to outside counsel and selected in-house counsel as identified in the current draft of the parties' proposed protective order, dated August 15, 2014.

Sincerely,

James Y. Pak

Enclosure

cc:  all counsel of record (via electronic mail w/o enclosure)

# EXHIBIT 11

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

September 5, 2014

VIA FEDERAL EXPRESS

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Second Production of Documents
      *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

Enclosed please find Plaintiffs' second production of documents to Defendants Oculus VR, LLC and Palmer Luckey only (for reasons described below). Plaintiffs' production is contained on the enclosed disc, bearing Bates numbers P0000347 - P0009985. These documents are encrypted and a password will be provided electronically.

Please note that certain documents contained on this disc have been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the proposed protective order currently being negotiated by the parties. Pursuant to the parties' agreement on August 20, 2014, "HIGHLY CONFIDENTIAL" documents shall be shown only to outside counsel of Defendants' Oculus VR, LLC and Palmer Luckey, and "CONFIDENTIAL" documents shall be shown only to outside counsel and selected in-house counsel of Defendants' Oculus VR, LLC and Palmer Luckey, as identified in the current draft of the parties' proposed protective order dated August 15, 2014.

Until such time as Defendant Facebook, Inc. becomes a party to the above-referenced August 20, 2014 agreement, or until such time as the Court enters an appropriate protective order, Plaintiffs will not be producing the enclosed documents to Defendant Facebook, Inc. If you would like to discuss terms by which Facebook,

Geoffrey Howard
September 5, 2014
Page 2


Inc. may become a party to that arrangement, let me know: we would propose the same terms, subject to agreement on the designated in-house counsel for Facebook.  Alternatively, if Facebook is represented by other counsel in this action, please inform us of the identity of that counsel, so that we may make arrangements for the service of produced documents.

Very truly yours,

P. Anthony Sammi

Enclosure

cc:  all counsel of record (via electronic mail w/o enclosure)

# EXHIBIT 12

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

September 11, 2014

VIA FEDERAL EXPRESS

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Third Production of Documents
        *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

Enclosed please find a disc containing Plaintiffs' third production of documents to Defendants Oculus VR, LLC and Palmer Luckey <u>only</u>. Plaintiffs' production bears Bates numbers P0009986 - P0010530. These documents are encrypted and a password will be provided electronically.

Pursuant to the parties' agreement on August 20, 2014, "HIGHLY CONFIDENTIAL" documents shall be shown only to outside counsel of Defendants Oculus VR, LLC and Palmer Luckey, and "CONFIDENTIAL" documents shall be shown only to outside counsel and selected in-house counsel of Defendants Oculus VR, LLC and Palmer Luckey, as identified in the current draft of the parties' proposed protective order dated August 15, 2014.

In my letter of September 5, 2014, I requested confirmation that Facebook, Inc. ("Facebook") would be subject to the same confidentiality restrictions as the other Defendants pending the Court's entry of a protective order. Having not received confirmation from Facebook, Plaintiffs <u>are not</u> producing the enclosed documents to Facebook at this time.

Very truly yours,

P. Anthony Sammi

cc:  all counsel of record (via electronic mail w/o enclosure)

# EXHIBIT 13

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

September 18, 2014

**VIA FEDERAL EXPRESS**

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Fourth Production of Documents
     *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

Enclosed please find a disc containing Plaintiffs' fourth production of documents to Defendants Oculus VR, LLC and Palmer Luckey only. Plaintiffs' production bears Bates numbers P0010531 - P0012898. These documents are encrypted and a password will be provided electronically.

Pursuant to the parties' agreement on August 20, 2014, "HIGHLY CONFIDENTIAL" documents shall be shown only to outside counsel of Defendants Oculus VR, LLC and Palmer Luckey, and "CONFIDENTIAL" documents shall be shown only to outside counsel and selected in-house counsel of Defendants Oculus VR, LLC and Palmer Luckey, as identified in the draft of the parties' proposed protective order sent from Plaintiffs to Defendants on August 15, 2014.

In my letter of September 5, 2014, I requested confirmation that Facebook, Inc. ("Facebook") would be subject to the same confidentiality restrictions as the other Defendants pending the Court's entry of a protective order. Having not received confirmation from Facebook, Plaintiffs are not producing the enclosed documents to Facebook at this time.

Very truly yours,

P. Anthony Sammi

cc: all counsel of record (via electronic mail w/o enclosure)

EXHIBIT 14

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

September 26, 2014

VIA FEDERAL EXPRESS

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:   Plaintiffs' Fifth Production of Documents
       *ZeniMax Media Inc. et al. v. Oculus VR, LLC et al.*, No. 3:14-cv-01849

Dear Geoff:

Enclosed please find a disc containing Plaintiffs' fifth production of documents to Defendants Oculus VR, LLC and Palmer Luckey <u>only</u>. Plaintiffs' production bears Bates numbers P0012899 - P0013775. These documents are encrypted and a password will be provided electronically.

Plaintiffs' fifth production of documents contains documents marked "HIGHLY CONFIDENTIAL". Pursuant to the parties' agreement on August 20, 2014, these documents shall be shown only to outside counsel of Defendants Oculus VR, LLC and Palmer Luckey. Certain documents, for example those e-mails containing source code, were redacted by Plaintiffs' counsel prior to production. Plaintiffs have moved for the entry of an order protecting confidential information exchanged in this litigation (Dkt. No. 42), and upon the Court's entry of such an order, Plaintiffs anticipate that they will either produce the e-mails without redactions or make the content of the e-mails available for review as otherwise provided in that order.

In my letter of September 5, 2014, I requested confirmation that Facebook, Inc. ("Facebook") would be subject to the same confidentiality restrictions as the other Defendants pending the Court's entry of a protective order. Having not received confirmation from Facebook, Plaintiffs <u>are not</u> producing the enclosed documents to Facebook at this time.

Very truly yours,

P. Anthony Sammi

cc: all counsel of record (via electronic mail w/o enclosure)

# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | § § § | |
| Plaintiffs, | § § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| v. | § § | |
| OCULUS VR, LLC, PALMER LUCKEY, and FACEBOOK, INC. | § § § § | |
| Defendants. | § | |

## DECLARATION OF P. ANTHONY SAMMI

P. Anthony Sammi hereby declares as follows:

1.      I am a member of Skadden, Arps, Slate, Meagher & Flom LLP, counsel for Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") in the above-captioned action.  I respectfully submit this Declaration in opposition to Defendants' Motion For Protective Order To Stay Discovery (Dkt. No. 55).

2.      In the Declaration Of Geoffrey M. Howard submitted with Defendants' Motion, Defendants' counsel Mr. Howard states as follows:

> On July 9, 2014, I attended an in-person Rule 26(f) conference with Plaintiffs' counsel.  During that meeting, I asked Mr. Sammi several times to identify what intellectual property is in dispute.  He responded that it was "something" that John Carmack did to the Rift that gave it the "wow" factor.  Mr. Sammi did not provide any more details concerning the supposed "wow" factor that Plaintiffs allegedly contributed to the Rift.

(¶ 7.)  I attended that in-person conference on behalf of ZeniMax and recall that topic of discussion, but Mr. Howard's description of our conversation is incomplete and inaccurate.

1

3.     By way of background, two weeks before Mr. Howard and I met in Dallas on July 9, 2014, Defendants Oculus and Palmer Luckey had filed a comprehensive Answer to ZeniMax's initial Complaint.  (*See* Dkt. No. 26 (filed June 25, 2014).)  That Answer included a six-page preliminary statement purporting to rebut ZeniMax's claims, as well as sixteen affirmative defenses.

4.     The agenda for the July 9, 2014, meeting in Dallas with Mr. Howard was to discuss the matters set forth in the Court's June 26, 2014 Order Requiring Attorney Conference And Proposal For Contents Of Scheduling And Discovery Order (Dkt. No. 29).  Mr. Howard did not inform me in advance of our July 9, 2014, meeting that he was having any difficulty understanding the nature of ZeniMax's claim for misappropriation of trade secrets.

5.     Mr. Howard raised with me at the conference the question of what John Carmack had contributed to Mr. Luckey's prototype headset.  I immediately referred Mr. Howard to the Complaint.  I continued by stating that although I was painting with a broad brush, the prototype developed by Mr. Luckey had a wide field of view, which was a useful feature, but much had to be done to make that prototype viable, including work on latency, the sensor array, computer program code that allowed the headset to work with content, and warping of displayed images. Those concepts are all referenced in paragraph 106 of the Complaint (which is paragraph 117 of the Amended Complaint, Dkt. No. 38).

6.     I stated to Mr. Howard that whether considered individually or together, those modifications resulted in a "Eureka moment" when people put on the modified prototype headset.  I also used the expression "'wow' factor" to express the same concept.

2

7.      Mr. Howard stated that my explanation was "very helpful" — to the best of my recollection, those were his words — and we moved on to other subjects.  I would estimate that our discussion of that subject occupied perhaps five to eight minutes of an hour-long meeting.

8.      At no time during that meeting did Mr. Howard express to me the view that discovery ought to be delayed so that Defendants could engage in motion practice regarding the adequacy of ZeniMax's description of the trade secrets which Defendants misappropriated.  Indeed, in the course of our subsequent discussion in that meeting, my colleague Kurt Hemr — who was at that point in the meeting discussing discovery scheduling — stated that ZeniMax did not believe phased discovery was necessary in this case.  Mr. Howard did not express any disagreement with that statement.

9.      At no time during that meeting did Mr. Howard express to me the view that discovery ought to be delayed so that Defendants could engage in motion practice concerning the legal sufficiency of ZeniMax's Complaint.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 1, 2014.


_____

P. Anthony Sammi


3

EXHIBIT 16

**From:**      Dalton, Joshua M. [josh.dalton@bingham.com]
**To:**          Sammi, P. Anthony (NYC)
**Subject:**   RE: ZeniMax/Oculus
**Date:**      9/11/2014 12:59:43 PM
**CC:**        Wang, Lucy; Project ZeniMax IP DL; phillip.philbin@haynesboone.com;
                michael.karson@haynesboone.com; zzm oculus/zenimax (ext);
                lcarter@carterscholer.com; lstahl@carterscholer.com

**BCC:**

**Message:**

Tony:

Geoff and I are available tomorrow at 2 pm Eastern/11 am Pacific.  Please let me know if that time works for you.

I advance of the call, I must reiterate that we have repeatedly advised you that Plaintiffs' disclosure of trade secrets in the original complaint and now amended complaint are deficient and that discovery cannot proceed until that issue is addressed.  In addition, Defendants' time to respond to the amended complaint has not passed, and their response may impact the scope of discovery.  For these reasons, we intend to move for a protective order to stay discovery until these issues are resolved.

I suggest that we meet and confer on your suggested motion to compel and our motion for protective order during our call on Friday.

Rgds.

-Josh

-----Original Message-----
From: Sammi, P. Anthony [mailto:Anthony.Sammi@skadden.com]
Sent: Thursday, September 11, 2014 11:53 AM
To: Dalton, Joshua M.
Cc: Wang, Lucy; DLPZENIMAX@skadden.com; phillip.philbin@haynesboone.com;
michael.karson@haynesboone.com; zzm oculus/zenimax (ext); lcarter@carterscholer.com;
lstahl@carterscholer.com
Subject: RE: ZeniMax/Oculus

Josh,
  We will plan on a meet and confer call tomorrow morning (Friday), I'm certain we can find a window of time, let me know if 12 pm ET (9am PT) works.
Regards,
Tony

-----Original Message-----

1

From: Dalton, Joshua M. [mailto:josh.dalton@bingham.com]
Sent: Wednesday, September 10, 2014 8:47 PM
To: Sammi, P. Anthony (NYC)
Cc: Wang, Lucy; Project ZeniMax IP DL; phillip.philbin@haynesboone.com;
michael.karson@haynesboone.com; zzm oculus/zenimax (ext); lcarter@carterscholer.com;
lstahl@carterscholer.com
Subject: Re: ZeniMax/Oculus

Tony:

We do believe a call is appropriate. I would like Geoff involved and he's in deposition
tomorrow I believe. How are you Friday morning?

Best.

-Josh

On Sep 10, 2014, at 6:05 PM, "Sammi, P. Anthony"
<Anthony.Sammi@skadden.com<mailto:Anthony.Sammi@skadden.com>> wrote:

Counsel,

 Thank you for this letter.  We do not see any reason to believe that conferring further regarding
these issues would be productive, and accordingly we will seek relief from the Court.  If you
think otherwise, please let us know when you are available to confer by phone tomorrow.

Regards,
Tony

_____

P. Anthony Sammi
Partner

Skadden, Arps et al.
Four Times Square
New York, New York 10036

Direct: 212.735.2307
Facsimile: 917.777.2307
Email:  Anthony.Sammi@Skadden.com<mailto:Anthony.Sammi@Skadden.com>

On Sep 10, 2014, at 5:45 PM, "Wang, Lucy"
<lucy.wang@bingham.com<mailto:lucy.wang@bingham.com>> wrote:

Tony,

2

Please see the attached correspondence.

Best,
Lucy

Lucy Wang | Bingham McCutchen LLP
Three Embarcadero Center | San Francisco, CA 94111 T (415) 393-2060 | F (415) 393-2286
lucy.wang@bingham.com<mailto:lucy.wang@bingham.com> |
www.bingham.com<http://www.bingham.com>

_____

Confidentiality Notice: The information in this e-mail (including attachments, if any) is
considered confidential and is intended only for the recipient(s) listed above. Any review, use,
disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the
intended recipient. If you have received this email in error, please notify me immediately by
reply email, delete this email, and do not disclose its contents to anyone.
<2014_09_10_Howard Letter re RFPs and ROGs.pdf>

# EXHIBIT 17

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2307
DIRECT FAX
(917) 777-2307
EMAIL ADDRESS
ANTHONY.SAMMI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August 28, 2014

VIA ELECTRONIC MAIL

Geoffrey Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
geoff.howard@bingham.com

RE:  Plaintiffs' Responses to Defendants' First Set Of Interrogatories
ZeniMax Media Inc. et al. v. Oculus VR, Inc. et al., No. 3:14-cv-01849

Dear Geoff:

I write in response to your letter of August 22, 2014 regarding Plaintiffs'
Responses and Objections to Defendants' First Set of Interrogatories to Plaintiffs.

As you know, Defendants served their First Set of Interrogatories to Plaintiffs
on July 11, 2014. Plaintiffs timely responded and objected to those Interrogatories,
and served their Responses and Objections on August 11, 2014. At the time
Plaintiffs served those Responses and Objections (and indeed, as I write this letter),
Defendants had not made any substantive production of documents in response to
Plaintiffs' First Set of Requests for Production and Inspection to Defendants on July
9, 2014.[1] Nor have any depositions been taken in this action.

Accordingly, in those responses, Plaintiffs stated as follows:

The Responses and Objections herein are based on Plaintiffs' present
knowledge, information and belief. Pursuant to Federal Rule of Civil
Procedure 26(e), Plaintiffs reserve the right to amend, revise, correct
or clarify any of the Responses and/or Objections herein, and indeed

———————————

[1]   Plaintiffs commenced their rolling production of documents with an initial production on August
22, 2014. To date, Defendants have not made any substantive production of documents.

Geoffrey Howard
August 28, 2014
Page 2

<u>Plaintiffs expect to amend and revise these Responses as discovery</u>
<u>proceeds in this action.</u>

(Plaintiffs' Responses & Objections, ¶ 13 (emphasis added).)

With that background as context, I now address the purported concerns raised by your letter:

With respect to <u>Interrogatory No. 1</u>, which requested that Plaintiffs identify persons with knowledge of the facts and allegations set forth in the Complaint and Answer, your letter acknowledges that Plaintiffs identified no fewer than twenty-five (25) persons, including one individual who is not employed by any party. That is a very complete response given that Plaintiffs have not yet had any substantive document or deposition discovery in this action. Your contention that the response is "evasive" is self-discrediting. Plaintiffs expect to supplement that response as discovery continues in this action, including by identifying additional third-party individuals who have knowledge of your clients' wrongful conduct.

With respect to <u>Interrogatories No. 3, 4, and 5</u>, which respectively request that Plaintiffs identify proprietary information provided to Defendants under the NDA, ZeniMax's VR Technology, and trade secrets misappropriated by Defendants, your letter asserts that Plaintiffs' response "parrot[s] the language from the Complaint." In view of the fact that Plaintiffs filed a highly detailed and particularized Complaint without the benefit of pre-suit discovery, and as yet have had no substantive document or deposition discovery in this action, Defendants should not be surprised that Plaintiffs' response to these interrogatories — at this very early stage in the proceedings — substantially tracks the information provided in Plaintiffs' Complaint. As discovery proceeds in this action, Plaintiffs expect to supplement those responses by identifying additional facts regarding Defendants' misappropriation of Plaintiffs' trade secrets and proprietary information in violation of the NDA.

More generally, there is no need for Defendants to seek the Court's imposition of any "pre-discovery identification of trade secrets" procedure here. Defendants had the Complaint for more than two months before the parties filed their Joint Proposal for Contents of Scheduling and Discovery Order (ECF No. 31) on July 28, 2014, and never proposed including any such procedure. Further, Texas law imposes no such pre-discovery identification requirement, and even if it did, Plaintiffs have already identified the trade secrets at issue with "reasonable particularity." The Complaint describes the trade secrets in detail, and specifies how and when they were conveyed to Defendants, including in e-mail communications

Geoffrey Howard
August 28, 2014
Page 3

between specified personnel for Plaintiffs and Defendants and via a file transfer protocol site set up to transfer certain identified source code. Accordingly, your assertion that the Complaint describes only "high-level generic categories such has 'know-how' and 'concepts'" is not correct. Your further demand that Plaintiffs identify specific e-mails is also premature in view of the fact that Defendants have not yet produced any e-mails.

Your purported concern that additional detail should be required now in order to "avoid[] needless discovery disputes" and to "fram[e] the appropriate scope of discovery" is misplaced. Those concerns may be implicated in cases involving different facts, but in this action, there can be no doubt whatsoever regarding the subject matter of Plaintiffs' claims. Defendant Oculus has one product, a virtual reality headset. In April 2012, Mr. Luckey had a commercially non-viable prototype of that headset. By the end of May 2012, Mr. Luckey had formalized a NDA with Plaintiffs, and a new version of that headset — modified to include Plaintiffs' proprietary technology — was being demonstrated to acclaim at an industry conference. By July 2012, just weeks later, Plaintiffs were seeking compensation from Mr. Luckey and Oculus for their contribution to this commercial venture (and no compensation has ever been provided). All of these facts are set forth in detail in Plaintiffs' Complaint. If Defendants profess that they do not "know[] what proprietary technology is at issue" in this case, they are being disingenuous.

Nor is it unreasonable for Plaintiffs here to "hope to [further] ascertain through discovery what technology was actually stolen." Some of the technology provided to Defendants was provided to Defendants via e-mail or as part of computer program code. Much of this email was sent by Plaintiffs' former employees now employed by Defendants. Moreover, as Defendants are well aware, there were also informal consultations throughout the relevant period between Plaintiffs' and Defendants' personnel. We expect that discovery will clarify the full scope of what proprietary information was provided by Plaintiffs and how Defendants made use of it. In this regard, I note that Plaintiffs are unable to confer with John Carmack, Technical Director for id Software during the relevant period, because Mr. Carmack is now employed by Oculus. We expect that the deposition of Mr. Carmack and other former employees of Plaintiffs now employed by Oculus will also provide important insights about what proprietary information Defendants received from Plaintiffs and how they made use of it.

Your citation to the court's slip opinion in *StoneEagle Servs. Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ignores important distinctions between that action and this one. The *StoneEagle* case was one of several related actions, and the parties in that action were able to make use of

Geoffrey Howard
August 28, 2014
Page 4

discovery that had already been conducted in a related action that had commenced a year earlier.  Accordingly, Magistrate Judge Horan concluded that "the unique history of this case," *id.* at *4, made it appropriate to require the plaintiffs there to provide further specification of the trade secrets at issue.  Here, Plaintiffs have had <u>no</u> meaningful document or deposition discovery, and it is appropriate for Plaintiffs to have the opportunity to supplement their responses to Defendants' contention interrogatories as discovery proceeds.[2]

I am traveling this week but will be prepared to discuss these issues by telephone at some mutually convenient time during the week of September 2, 2014, if you believe that any further discussion of these matters is necessary.  (We believe it is not, including for the reasons stated above.)

I would add that if Defendants are seeking to use a cynical profession of bafflement as to the subject matter of this action as a means of delaying their document production in this action, Plaintiffs will move to compel and seek appropriate sanctions.  Defendants have been squarely informed what is at issue, the Court has set a schedule for discovery, and it is time for that discovery to move forward.

Very truly yours,

P. Anthony Sammi

---

[2]     Your reference to *U.S. Auto. Assoc. v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D. Tex. 2013) similarly ignores important distinctions between that action in this one.  In *Mitek*, the defendant objected to generic trade secret disclosures that included such non-specific designations as the "[i]nvention," "commercial information related to the … [invention]," and "proprietary algorithms, concepts . . . and development plans related to the [invention]."  (*See U.S. Auto. Assoc. v. Mitek Sys., Inc.*, Case No. 5:12-cv-00282 (W.D. Tex.), Dkt. No. 51 at 3.)  Here, Plaintiffs' identification of trade secrets — both in Plaintiffs' Complaint and in Plaintiffs' responses and objections to interrogatories — includes a highly particularized list of specific intellectual property, not merely "high-level categories."  (*Id.*)  The defendant in *Mitek* also requested pre-discovery identification of trade secrets because it purportedly did not "understand how the trade secret claims differ[ed] from the patent claims" in that case, which necessarily involved non-secret information.  (*Id.* at 2.)  Here there is no such confusion.

EXHIBIT 18

**From:**      John Carmack [johnc@idsoftware.com]
**To:**        Duncan Welch
**Subject:**   outside line?
**Date:**      8/10/2011 3:52:36 PM
**CC:**
**BCC:**

**Message:**
What do you dial to get an outside line on the cisco phones?  I left my cell at home, and nobody down here actually knows how to use the phones... (probably a good comment on their value)

John Carmack

1