IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
FACEBOOK, INC.'S MOTION TO DISMISS COUNTS 1, 2, 4, 5, AND 6**

Phillip B. Philbin
Michael D. Karson
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

P. Anthony Sammi
Kurt Wm. Hemr
James Y. Pak
Kristen Voorhees
**SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

Dated: October 10, 2014
        Dallas, Texas

*Attorneys for Plaintiffs
ZeniMax Media Inc. and id Software LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT FACTS .................................................................................................... 3

LEGAL STANDARD ................................................................................................... 4

ARGUMENT ................................................................................................................ 5

I.      ZENIMAX HAS ALLEGED FACTS SUFFICIENT TO SUPPORT EACH OF
       ITS CLAIMS AGAINST FACEBOOK ................................................................ 5

       A.     Facebook Acquired Oculus With Reason To Know That Oculus And
             Luckey Had Misappropriated ZeniMax's Trade Secrets, And Has
             Announced Its Intent To Use The Misappropriated Trade Secrets
             Throughout Its Business *(Count 1)* ....................................................... 5

       B.     Facebook Is Also Liable For Oculus's And Luckey's Ongoing
             Infringement Of ZeniMax's Copyrights *(Count 2)* .................................. 8

       C.     Facebook Has Tortiously Interfered With ZeniMax's Rights Under Its
             Non-Disclosure Agreement With Luckey And Oculus *(Count 4)* ......... 10

       D.     Facebook's Wrongful Conduct Has Interfered With ZeniMax's Ability To
             Conduct Its Business, Which Constitutes Unfair Competition By
             Facebook *(Count 5)* ............................................................................... 12

       E.     Facebook Has Been Unjustly Enriched At ZeniMax's Expense *(Count 6)* ........... 13

II.     THE TEXAS UNIFORM TRADE SECRETS ACT DOES NOT APPLY TO
      ZENIMAX'S TRADE SECRET CLAIM AGAINST FACEBOOK, AND EVEN
      IF IT DID, ZENIMAX HAS PLEADED A CLAIM UNDER TUTSA ......................... 15

       A.     Facebook Joined In A Course Of Continuing Misappropriation Of Trade
             Secrets That Began Prior to The Effective Date Of TUTSA, And Its
             Liability Is Governed Here By Pre-TUTSA Texas Common Law ...................... 15

       B.     Even If TUTSA Did Apply, ZeniMax Has Alleged Sufficient Facts To
             State A Claim Of Misappropriation Against Facebook Under That Statute ......... 16

       C.     Even If TUTSA Did Apply, ZeniMax's Other Claims Against Facebook
             Are Not Based Solely On Misappropriation Of Trade Secrets, And
             Therefore Are Not Displaced By TUTSA .............................................. 18

1.      ZeniMax's Tortious Interference Claim (*Count 4*) Does Not Depend On A Finding That Facebook Misappropriated Trade Secrets, And Would Not Be Displaced By TUTSA ...................................19

2.      ZeniMax's Unfair Competition Claim (*Count 5*) Is Predicated On Multiple Torts, And Would Not Be Displaced By TUTSA.......................20

3.      ZeniMax's Unjust Enrichment Claim (*Count 6*) Is Based On Numerous Facts Other Than Misappropriation Of Trade Secrets, And Would Not Be Displaced By TUTSA.................................................22

4.      Facebook's Displacement Arguments Are Premature In Any Event .........23

III.    IN THE EVENT THAT THIS COURT FINDS ZENIMAX'S PLEADING TO BE IN ANY RESPECT INSUFFICIENT, IT SHOULD GRANT LEAVE TO AMEND .........................................................................................................24

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*5860-5888 Westheimer Ltd. v. Orvis Houston, Inc.*,
    No. H-08-1327, 2009 WL 47124 (S.D. Tex. Jan. 6, 2009)................................12

*Advanced Fluid Systems, Inc. v. Huber*,
    Civil Action No. 1:13-CV-3087, 2014 WL 2770231 (M.D. Pa. June 18, 2014)..............20

*Alpha Pro Tech, Inc. v. VWR International LLC*,
    984 F. Supp. 2d 425 (E.D. Pa. 2013) ........................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................4

*Bayco Products, Inc. v. Lynch*,
    No. 3:10-CV-1820-D, 2011 WL 1602571 (N.D. Tex. Apr. 28, 2011) .........................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)..............................................................4, 5

*BP Chemicals Ltd. v. Baloun*,
    183 F. Supp. 2d 1158 (E.D. Mo. 2000)....................................................16

*Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC*,
    No. 3:08-CV-1782-M, 2009 WL 1469808 (N.D. Tex. May 27, 2009) .........................15

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198 (Tex. 2002)..............................................................10

*Clearline Technologies Ltd. v. Cooper B-Line, Inc.*,
    No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012)...................................8

*Controversy Music v. Down Under Pub Tyler, Inc.*,
    488 F. Supp. 2d 572 (E.D. Tex. 2007)....................................................8

*Convolve, Inc. v. Compaq Computer Corp.*,
    No. 00CV5141, 2006 WL 839022 (S.D.N.Y. March 31, 2006)................................24

*Dickson Construction, Inc. v. Fidelity & Deposit Co.*,
    960 S.W.2d 845 (Tex. App. 1997)........................................................12

*Elledge v. Friberg-Cooper Water Supply Corp.*,
    240 S.W.3d 869 (Tex. 2007)............................................................14

*Escalon v. World Group Securities, Inc.*,
    No. 5:07-CV-214-C ECF, 2008 WL 5572823 (N.D. Tex. Nov. 14, 2008) .....................5

*Fortune Production Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000)......................................................................................14

*Gardner Denver, Inc. v. Cochrane Financial Co.*,
   No. CI 09-1279, 2009 Ohio Misc. LEXIS 542 (Ohio C.P. Sept. 30, 2009) .....................18

*General Universal Systems, Inc. v. HAL, Inc.*,
   500 F.3d 444 (5th Cir. 2007) .........................................................................................5

*Grand Time Corp. v. Watch Factory, Inc.*,
   No. 3:08-CV-1770-K, 2010 WL 92319 (N.D. Tex. Jan. 6, 2010)...................................12

*Hauck Manufacturing Co. v. Astec Industries, Inc.*,
   375 F. Supp. 2d 649 (E.D. Tenn. 2004)..............................................................18, 19, 24

*HECI Exploration Co. v. Neel*,
   982 S.W.2d 881 (Tex. 1998)..........................................................................................14

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992)............................................................................................14

*Jack Preston Wood: Design, Inc. v. B L Building Co.*,
   No. H- 03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004) .........................................8

*Janvey v. Suarez*,
   978 F. Supp. 2d 685 (N.D. Tex. 2013) ...........................................................................14

*Janvey v. Wieselberg*,
   No. 3:10-CV-1394-N, 2014 WL 2883897 (N.D. Tex. June 25, 2014)..............................14

*John M. Floyd & Associates, Inc. v. Jack Henry & Associates, Inc.*,
   No. H-05-1105, 2006 WL 1007264 (S.D. Tex. Apr. 13, 2006)...................................6, 7

*Johnson v. Affiliated Computer Services, Inc.*,
   No. 10-2333, 2011 WL 4011429 (N.D. Tex. Sept. 9, 2011) ...........................................15

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
   313 U.S. 487 (1941)........................................................................................................5

*Lamont v. Vaquillas Energy Lopeno Ltd., LLP*,
   421 S.W.3d 198 (Tex. App. –San Antonio 2013, pet. filed 2013) ...................................6

*Lycoming Engines v. Superior Air Parts, Inc.*,
   3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014) ...............................8, 13

*M-I LLC v. Stelly*,
   733 F. Supp. 2d 759 (S.D. Tex. 2010) ......................................................................12, 21

iv

*In re Mandel*,
No. 13-40751, 2014 WL 3973479 (5th Cir. Aug. 15, 2014) ............................................24

*Mayo v. Hartford Life Insurance Co.*,
354 F.3d 400 (5th Cir. 2004) ........................................................................14

*Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*,
No. 3:06-CV-0575-P, 2007 WL 2729935 (N.D. Tex. Sept. 18, 2007)............................14

*Merritt Hawkins & Associates, LLC v. Gresham*,
No. 3:13-CV-00312-P, 2014 WL 685557 (N.D. Tex. Feb. 21, 2014) ..........................4, 5

*Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*,
852 F. Supp. 2d 925 (S.D. Ohio 2012) ............................................................18, 19

*Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*,
No. 11-4380, 2012 WL 3599368 (D.N.J. Aug. 17, 2012) .................................................13

*Newington Ltd. v. Forrester*,
No. 3:08-CV-0864-G-ECF, 2008 WL 4908200 (N.D. Tex. Nov. 13, 2008)..............14, 15

*Omnitech International, Inc. v. Clorox Co.*,
11 F.3d 1316 (5th Cir. 1994) ........................................................................24

*Pension Advisory Group, Ltd.v. Country Life Insurance Co.*,
771 F. Supp. 2d 680 (S.D. Tex. 2011) ........................................................8

*Peteet v. Dow Chemical Co.*,
868 F.2d 1428 (5th Cir. 1989) ........................................................................5

*Premier Research Labs, LP v. Nurman*,
No. A-13-CA-069-SS, 2014 WL 978477 (W.D. Tex. Mar. 12, 2014) ................10, 11, 12

*Reingold v. Swiftships Inc.*,
210 F.3d 320 (5th Cir. 2000) ........................................................................24

*Richards v. British Petroleum*,
869 F. Supp. 2d 730 (E.D. La. 2012), *aff'd sub nom. Richards v. BP Exploration & Production, Inc.*, 533 F. App'x 378 (5th Cir.), *cert. denied*, 134 S. Ct. 273 (2013)........................................................................................8, 9

*Samsung Electronics Co. v. Texas Instruments Inc.*,
No. 3:96-CV-0001-P, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996)................................13

*Sefton v. Pathos*,
No. Civ.A.3:00-CV-0314-L, 2002 WL 356518 (N.D. Tex. Feb. 28, 2002) ....................9

*Settlement Capital Corp. v. BHG Structured Settlements, Inc.*,
    319 F. Supp. 2d 729 (N.D. Tex. 2004) ....................................................10, 12

*Southwestern Bell Telephone Co. v. Marketing on Hold Inc.*,
    308 S.W.3d 909 (Tex. 2010) ...............................................................14

*Staton Holdings, Inc. v. First Data Corp.*,
    No. 3:04-CV-2321P, 2006 WL 1343631 (N.D. Tex. May 16, 2006) ...............17

*Stratienko v. Cordis Corp.*,
    No. 1:02-CV-005, 2003 WL 23471546 (E.D. Tenn. Dec. 4, 2003),
    *aff'd*, 429 F.3d 592 (6th Cir. 2005) .....................................................16

*Terraspan, LLC v. Rave, LLC*,
    3:12-CV-0816-K, 2012 WL 6115721 (N.D. Tex. Dec. 10, 2012) ....................8

*Thomas & Betts Corp. v. Panduit Corp.*,
    108 F. Supp. 2d 968 (N.D. Ill. 2000) ...................................................24

*U.S. ex rel. Steury v. Cardinal Health, Inc.*,
    625 F.3d 262 (5th Cir. 2010) ..........................................................24, 25

*U.S. Legal Support, Inc. v. Hofioni*,
    No. CIV. S-13-01770 LKK/AC, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013).........23, 24

*Unisource Worldwide, Inc. v. Swope*,
    964 F. Supp. 2d 1050 (D. Ariz. 2013) ..................................................19

*VendEver LLC v. Intermatic Manufacturing Ltd.*,
    No. 3:11-CV-201-B, 2011 WL 4346324 (N.D. Tex. Sept. 16, 2011) ..............12

*Vigo v. Reed*,
    No. 3:11-CV-2044-G, 2012 WL 5363429 (N.D. Tex. Nov. 1, 2012) ................5

*Waller v. DB3 Holdings, Inc.*,
    No. 3:07-CV-0491-D, 2008 WL 373155 (N.D. Tex. Feb. 12, 2008) ...............14

## RULES

Fed. R. Civ. P. 8 .................................................................................4

Fed. R. Civ. P. 12 ...............................................................................4

## OTHER AUTHORITIES & MATERIALS CITED

2013 Tex. Sess. Law Serv. Ch. 10 (S.B. 953) § 3.......................................16

Roger M. Milgrim, *Milgrim on Trade Secrets*............................................18

Plaintiffs' Third Amended Complaint, *Premier Research Labs, LP v. Nurman*,
No. A-13-CA-069-SS (W.D. Tex. filed Nov. 22, 2013).......................................11

Restatement (Third) of Unfair Competition (1995)........................................................6

Texas Uniform Trade Secrets Act ("TUTSA"),
Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001 to 134A.008 (West Supp. 2014) ...........3

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 (West Supp. 2014) .........................16, 17

Tex. Civ. Prac. & Rem. Code Ann. § 134A.007 (West Supp. 2014) ..............................18

Uniform Trade Secrets Act § 11 cmt. (1985) .......................................................15, 16

## PRELIMINARY STATEMENT

Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") entrusted highly valuable trade secrets and virtual reality technology, developed over years at considerable cost, to Defendants Oculus VR, LLC ("Oculus") and Palmer Luckey ("Luckey") under a binding Non-Disclosure Agreement and pursuant to a confidential business relationship that began in 2012.  Defendants Facebook, Inc. ("Facebook"), Oculus, and Luckey subsequently devised, and are continuing to execute, a plan to exploit the misappropriated trade secrets and virtual reality technology of ZeniMax for their own financial benefit, leaving ZeniMax with nothing.

In late July, during the pendency of this litigation and with full knowledge of ZeniMax's claims, Facebook completed its $2 billion acquisition of Oculus, a business established with the misappropriated intellectual property of ZeniMax.  The acquisition enables Facebook to obtain unfettered access to ZeniMax's trade secrets and virtual reality technology that Oculus and Luckey had in their possession, and to leverage those trade secrets and technology to benefit Facebook's core business of online social networking and advertising.

To be clear, this is not a case where Facebook acquired a company unaware of any prior legal claim that had been asserted against the acquired company's intellectual property. ZeniMax's claims against Oculus and Luckey were a matter of public record before Facebook chose to proceed with its acquisition of Oculus, and ZeniMax sent Facebook written notice of these claims before the acquisition was completed.  Nor is this a case where Facebook acquired a company with no intention of using the intellectual property in dispute.  Facebook has announced to the world its intention to use the valuable virtual reality technology that Oculus and Luckey misappropriated <u>throughout</u> its business.  Facebook's contention that ZeniMax has "provided no facts whatsoever to justify the extraordinary theory" that Facebook is subject to liability here (*see* Dkt. No. 47, at 2) simply ignores those record facts entirely.

1

In its motion to dismiss, Facebook protests that ZeniMax's claims against it are not based on a "plausible or coherent theory of liability." (Dkt. No. 47, at 2.) In this opposition, ZeniMax sets forth numerous legal bases for its claims against Facebook. Put simply, Facebook, a highly-sophisticated party, chose to buy this valuable intellectual property off the proverbial "back of a truck," knowing that ZeniMax had asserted that it owned the acquired property that Facebook's co-defendants had misappropriated. And now while leveraging ZeniMax's property across its company, with a substantial commitment of its resources, Facebook pretends that it is an uninvolved bystander. That position has no support in the factual record or controlling legal authorities, and does not square with common sense. It is, to the contrary, entirely "plausible" and "coherent" for ZeniMax to insist that Facebook compensate ZeniMax for the harm that ZeniMax has suffered as a result of a deliberate choice by Facebook to acquire, finance, and exploit valuable technology of ZeniMax that had been originally misappropriated by its new subsidiary.

Facebook's motion to dismiss ZeniMax's claims makes two principal arguments, neither of which have merit:

*First*, Facebook asserts that ZeniMax has only made "conclusory" allegations against it. (Dkt. No. 47, at 2.) Facebook's feigned confusion — like the ignorance feigned by Oculus and Luckey in their motion to dismiss (Dkt. No. 45) — is discredited by a cursory review of ZeniMax's detailed and particularized Amended Complaint. ZeniMax's Amended Complaint describes with specificity the intellectual property conveyed to Oculus and Luckey, and how and when Oculus and Luckey misappropriated it. That Amended Complaint also describes how Facebook publicly announced its intentions to profit from the exploitation and continued

2

marketing of that valuable, (misappropriated) virtual reality technology.  Each of ZeniMax's claims against Facebook is sufficiently pleaded in that Amended Complaint.  (*See* Part I *infra*.)

**Second**, Facebook asserts that ZeniMax's state law claims against it are displaced by the recently-enacted Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001 *et seq*. (West Supp. 2014).  But by acquiring Oculus, Facebook became part of a continuing misappropriation that began when ZeniMax first entrusted its trade secrets to Oculus and Luckey in 2012.  In enacting TUTSA, the Texas legislature was careful to provide expressly that continuing misappropriations would remain subject to pre-TUTSA Texas common law.  Were it otherwise (as Facebook urges), a single jury would have to be instructed twice on the law applicable to the same course of misconduct.  And even if TUTSA governed here — which it does not — ZeniMax's Amended Complaint alleges facts sufficient to state a claim against Facebook under that statute.  Nor would TUTSA displace any of ZeniMax's other state law claims, all of which are based on facts beyond misappropriation of trade secrets alone.  (*See* Part II *infra*.)

Respectfully, the Court should deny Facebook's motion to dismiss in its entirety.

## RELEVANT FACTS

ZeniMax's Amended Complaint (Dkt. No. 38) provides a straightforward factual account:

- Virtual reality technology is a complex combination of cutting edge hardware and software which a number of major technology companies, including ZeniMax, had been researching and developing. (*See, e.g.*, *id.* ¶¶ 4, 26-27.)

- In April 2012, college-aged Palmer Luckey, who has described himself as someone who "can't do software at all," began corresponding with John Carmack — a world-renowned programmer who was at that time the Technical Director of Plaintiff id Software LLC — regarding a prototype virtual reality headset.  (*See, e.g.*, *id.* ¶¶ 4-5, 69.)

- Luckey sent Carmack a crude headset which consisted of little more than a display panel, but lacked even the most basic technology needed to create a viable product.  (*See, e.g.*, *id.* ¶¶ 30-31.)

- With ZeniMax having spent years working on virtual reality technology, Carmack made heavy modifications to the prototype headset and, in addition, developed software to demonstrate how this technology worked.  (*See, e.g.*, *id.* ¶¶ 4, 6, 31-33.)

- Luckey entered into a Non-Disclosure Agreement with ZeniMax, which expressly provided that ZeniMax owned the virtual reality technology furnished to Luckey. (*See, e.g.*, *id.* ¶¶ 34-38.)

- In June 2012, Carmack demonstrated the modified prototype headset and software at an industry convention to widespread acclaim.  (*See, e.g.*, *id.* ¶¶ 31, 42-43.) Without ZeniMax's involvement, Luckey then formed a company, Oculus LLC, the legal predecessor to Oculus VR, LLC ("Oculus"), to commercialize the headset and use as its own the proprietary VR technology that had been provided by ZeniMax.  (*See, e.g.*, *id.* ¶¶ 42-49, 64-66, 93.)

- Under the Non-Disclosure Agreement, ZeniMax provided confidential and trade secret information to Luckey and Oculus.  (*See, e.g.*, *id.* ¶¶ 45-49, 86-89, 91.)

- Oculus attracted substantial investor interest, and in 2013, Carmack was recruited to work for Oculus.  (*See, e.g.*, *id.* ¶¶ 62, 65-66, 95-97.)

- Despite ZeniMax's efforts to negotiate with Oculus, ZeniMax has never been compensated for Defendants' misappropriation of its valuable intellectual property.  (*See, e.g.*, *id.* ¶¶ 95, 115.)

- In July 2014 — after ZeniMax had asserted its claims against Oculus and Luckey in this public lawsuit — Facebook acquired Oculus for two billion dollars. Facebook has publicly stated its intention to utilize the intellectual property misappropriated by Oculus throughout its business.  (*See id.* ¶¶ 103, 107-115.)

## <u>LEGAL STANDARD</u>

A complaint need only contain "a short, plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal of a claim under Rule 12(b)(6) is warranted only where that complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The Court's focus … is not whether the non-movant should prevail on the merits but rather whether the non-movant has failed to state a claim."  *Merritt Hawkins & Assocs., LLC v.*

*Gresham*, No. 3:13-CV-00312-P, 2014 WL 685557, at *2 (N.D. Tex. Feb. 21, 2014) (Solis, Dist. J.) (citing *Twombly*, 550 U.S. at 563 n.8).

In its motion, Facebook acknowledges that Texas substantive law governs the elements of the state law claims asserted here.  (*See, e.g.*, Dkt. No. 47 *passim*.)  ZeniMax agrees, except notes that Texas courts applying doctrines of successor liability apply the law of the state whose law governed the transition between the predecessor and successor entities.[1]  This Court should do likewise.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494-96 (1941).

## ARGUMENT[2]

## I.     ZENIMAX HAS ALLEGED FACTS SUFFICIENT  TO SUPPORT EACH OF ITS CLAIMS AGAINST FACEBOOK

### A.     Facebook Acquired Oculus With Reason To Know That Oculus And Luckey Had Misappropriated ZeniMax's Trade Secrets, And Has Announced Its Intent To Use The Misappropriated Trade Secrets Throughout Its Business *(Count 1)*

To state a Texas common law trade secret misappropriation claim, plaintiffs must allege facts that establish that "'(1) a trade secret exists; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization.'"  *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007) (citation omitted).  "Whether a trade secret exists is usually a question of fact to be determined by a factfinder," and therefore "cannot be resolved before pretrial discovery."  *Vigo v. Reed*, No. 3:11-CV-2044-G, 2012 WL 5363429, at *4 (N.D. Tex. Nov. 1, 2012).

---

[1]     "Under Texas law, the buying and selling corporations' purchase agreement's choice of law provision controls the applicability of successor liability doctrines."  *Escalon v. World Grp. Sec., Inc.*, No. 5:07-CV-214-C ECF, 2008 WL 5572823, at *8 (N.D. Tex. Nov. 14, 2008).

[2]     Certain arguments made by Defendants Oculus and Luckey in their motion to dismiss (Dkt. No. 45) are purportedly incorporated by reference in Facebook's motion to dismiss.  (*See* Dkt. No. 47, at 2, 6, 12, 15.)  Those arguments are addressed in ZeniMax's opposition to Oculus's and Luckey's motion to dismiss, concurrently filed herewith.  Note that a court should not address argument raised for the first time on reply.  *See, e.g.*, *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989).

A review of the Amended Complaint demonstrates that ZeniMax's pleading of its misappropriation claim against Facebook was not conclusory.  ZeniMax describes the "kind" of trade secrets by providing a detailed list in paragraph 117 of the Amended Complaint.  ZeniMax also describes the "kind" of misappropriation:  Facebook is acting in concert with Oculus's and Luckey's continued misappropriation of ZeniMax's trade secrets through the acquisition, support, marketing and exploitation of a product that embodies ZeniMax's trade secrets.  (*See* Dkt. No. 38,  ¶¶ 86-89 (providing examples of how Defendants acquired and utilized ZeniMax's trade secrets in developing the Rift headset); ¶ 123 (Defendants used or disclosed ZeniMax's trade secrets in developing, designing, programming, testing, demonstrating, and marketing the Rift headset); ¶ 125 (Defendants will continue to exploit ZeniMax's trade secrets to benefit Facebook's core business); ¶ 126 (Defendants are acting in concert).)  Going further, ZeniMax explains the manner in which the trade secrets were "embedded in" Oculus's purported intellectual property:  Oculus and Luckey relied on ZeniMax's know-how in designing and developing the Rift, an activity which Facebook now directs and intends to continue.  (*See, e.g.*, *id.* ¶¶ 86-89.)

Facebook wrongly asserts that this claim consists of "conclusory statements of some kind of misappropriation by Facebook through some kind of access to some kind of trade secrets somehow embedded in an acquired company's IP" and should be dismissed.  (Dkt. No. 47, at 13.)  But "'[t]he acquisition of a trade secret can be improper even if the means of acquisition'" — here, acquisition of a subsidiary — "'are not independently wrongful.'"  *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 213 (Tex. Ct. App. 2013) (petition for review filed) (alteration in original) (quoting Restatement (Third) of Unfair Competition § 43 cmt. c (1995)).  For example, in *John M. Floyd & Associates, Inc. v. Jack Henry & Associates, Inc.*, No. H-05-

1105, 2006 WL 1007264 (S.D. Tex. Apr. 13, 2006), a defendant ("Pinnacle") asserted a counterclaim for misappropriation of trade secrets, alleging that the plaintiff ("Floyd") had hired two of Pinnacle's employees with knowledge of Pinnacle's trade secrets so that it could make use of those misappropriated trade secrets.  The court denied Floyd's motion to dismiss that claim:

> [T]aking as true the allegations regarding the conduct of [the employees], both before and after they were hired by Floyd, a reasonable inference arises that Floyd acquired Pinnacle's trade secrets through the breach of a confidential relationship or other improper means, and that Floyd "used" or is using those trade secrets to Pinnacle's detriment.

*Id.* at *3.  So too here:  Facebook's acquisition of Oculus so that it could make use of the trade secrets that Oculus and Luckey had misappropriated suffices to state a misappropriation claim against Facebook.

The case law cited by Facebook does not require dismissal of ZeniMax's misappropriation claim against Facebook.  In *Bayco Products, Inc. v. Lynch*, No. 3:10-CV-1820-D, 2011 WL 1602571 (N.D. Tex. Apr. 28, 2011), a trade secret misappropriation claim was dismissed because the plaintiff alleged only that a former employee had access to trade secrets, and that the employee's new employer was manufacturing a product with publicly-visible features similar to plaintiff's.  In finding those allegations insufficient, the court contrasted those allegations with a more "obvious" instance of plausible misappropriation:

> To be sure, there may be instances in which comparatively little detail need be pleaded, such as when a competing employer who has *never* produced a particular product begins to do so only after a former employee with extensive knowledge about the trade secrets that enable such production has entered its employ.

*Id.* at *5 (emphasis added).  Such an "instance" is precisely the situation alleged here:  Facebook, which had *never* been in the virtual reality business, has acquired a subsidiary whose sole line of business is virtual reality technology, and that party has been charged in this Court with misappropriating the underlying intellectual property.  Facebook has publicly announced its

intention to use that misappropriated intellectual property.  (*See* Dkt. No. 38, ¶¶ 114-115.) Accordingly, ZeniMax has pleaded a compelling claim that Facebook is jointly engaged with Oculus and Luckey in trade secret misappropriation under common law.[3]

**B.    Facebook Is Also Liable For Oculus's And Luckey's Ongoing Infringement Of ZeniMax's Copyrights**
*(Count 2)*

ZeniMax has sufficiently stated a claim for copyright infringement against Facebook under several well-recognized bases for recovery.  Contributory copyright infringement occurs when, as here, the defendant (1) knew of the infringing activity and (2) induced, caused, or materially contributed to the infringing conduct of another.  Vicarious copyright infringement occurs when, as here, the defendant (1) had a direct financial interest in the infringing activity and (2) had the right and ability to supervise the infringing party's acts which caused the infringement.  Knowledge of the infringing activity is not required.  *See Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 577 (E.D. Tex. 2007); *Jack Preston Wood: Design, Inc. v. B L Bldg. Co.*, No. H-03-713, 2004 WL 5866352, at *19 (S.D. Tex. June 22, 2004).

In contrast to the cases that Facebook cites[4] (Dkt. No. 47, at 14-15), ZeniMax alleges sufficient facts here to support its claims that Facebook is liable for both contributory and

---

[3]    Facebook's other authorities similarly fail to show why the allegations in this case are insufficient.  *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 701 (S.D. Tex. 2011) (providing no analysis as to what the allegations were or why they were inadequate); *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (finding the allegations insufficient where the plaintiff's only description of its trade secrets was "'trade secrets[] including but not limited to technical and financial information'" and plaintiff provided no allegations of use other than alleging that "products were 'virtually identical'"); *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162, 2014 WL 1976757, at *8 (N.D. Tex. May 15, 2014) (finding allegations insufficient because "no description of the actual conduct giving rise to the cause of action" was given).

[4]    *See Terraspan, LLC v. Rave, LLC*, No. 3:12-CV-0816-K, 2012 WL 6115721, at *7 (N.D. Tex. Dec. 10, 2012) (dismissing claim because plaintiff failed to identify infringing work); *Richards v. British Petroleum*, 869 F.
*(cont'd)*

vicarious liability.   Specifically, ZeniMax alleged that Facebook knew of Plaintiffs' claims against Oculus and Luckey prior to acquiring Oculus. (*See* Dkt. No. 38, ¶¶ 110-112.)  Facebook knew, prior to the date of the closing, that Oculus had been accused of copyright infringement. (*See, e.g.*, *id.* ¶ 139.)   ZeniMax has alleged that Facebook, through its acquisition, support, direction and financing of Oculus, materially contributes to the on-going infringing conduct of Oculus. (*See id.* ¶¶ 112-115.)   ZeniMax has also alleged that as the sole owner of Oculus, Facebook has the right and ability to supervise Oculus's infringing acts, such as continued use of software derived in whole or part from ZeniMax's Copyrighted Materials.  (*Id.* ¶¶ 139, 140, 141.) Facebook could at any time instruct Oculus VR, LLC to stop using software that infringes ZeniMax's Copyrighted Materials.   Facebook's failure to do so renders it subject to copyright liability.  *See Sefton v. Pathos*, No. Civ.A.3:00-CV-0314-L, 2002 WL 356518, at \*5 (N.D. Tex. Feb. 28, 2002) (stating vicarious copyright infringement claim requires proof that defendant had (1) "a direct financial interest in the infringing activity" and (2) the "right and ability to supervise the infringing party's acts or activity which caused the infringement").

Although Facebook suggests this claim is based on nothing other than the fact of Facebook's acquisition of Oculus, Facebook ignores the many allegations that connect the acquisition of Oculus and Facebooks' public statements to copyright infringement.  Indeed, each of the questions posed by Facebook is directly answered in ZeniMax's Amended Complaint:

| | |
|---|---|
| "[H]ow did Facebook 'participate[] in the [alleged] infringing activity of Oculus and Luckey'?"  (Dkt. No. 47, at 14.) | *Answer:*  Facebook participates in the infringing activity of Oculus and Luckey by authorizing, financing, supporting, and profiting from it.  (*See, e.g.*, Dkt. No. 38, ¶¶ 114-115, 136-139.) |

---

*(cont'd from previous page)*

Supp. 2d 730, 738-739 (E.D. La. 2012) (dismissing claim because, among other things, "Plaintiff alleges no circumstances concerning how these defendants could have come into possession of her intellectual property").

| | |
|---|---|
| "How did Facebook induce or contribute to any alleged infringing conduct?"  (Dkt. No. 47, at 14.) | *Answer:*  Facebook induces and/or contributes to Oculus's infringement by authorizing, financing, supporting, and profiting from the continued copying of software derived in whole or in part from ZeniMax's Copyrighted Materials.  (*See, e.g.,* Dkt. No. 38, ¶¶ 114-115, 136-139.) |
| "What 'illegal acts' did Facebook commit?"  (Dkt. No. 47, at 14.) | *Answer:*  Facebook committed the illegal act of copyright infringement, as well as misappropriation of trade secrets, tortious interference with contract, unjust enrichment, and unfair competition.  (*See, e.g.,* Dkt. No. 38, ¶¶ 130, 141, 159-160, 167-168, 181.) |

Accordingly, Facebook's motion to dismiss this claim should be denied.

### C.   Facebook Has Tortiously Interfered With ZeniMax's Rights Under Its Non-Disclosure Agreement With Luckey And Oculus (Count 4)

To state a claim for tortious interference with contract, plaintiffs must allege:  "(1) they had a valid contract;[5] (2) [defendant] willfully and intentionally interfered with the contract; (3) the interference proximately caused [p]laintiffs' injury; and (4) [p]laintiffs incurred actual damage or loss." *Premier Research Labs, LP v. Nurman*, No. A-13-CA-069-SS, 2014 WL 978477, at *2 (W.D. Tex. Mar. 12, 2014) (denying motion to dismiss tortious interference claim); *accord Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *see also Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 733-34 (N.D. Tex. 2004) (Solis, Dist. J.) (denying motion to dismiss tortious interference claim).

Here, ZeniMax has alleged each of these elements, *i.e.*, that (1) there was a valid contract in the Non-Disclosure Agreement between ZeniMax and Oculus and Luckey (*see* Dkt. No. 38,

---

5   In their motion to dismiss, Oculus and Luckey contend that the Non-Disclosure Agreement is not valid or enforceable (Dkt. No. 45, at Part IV.A.1-2), and Facebook purportedly incorporates those contentions by reference in its motion to dismiss.  (*See* Dkt. No. 47, at 15.)  As ZeniMax's opposition to Oculus's and Luckey's motion to dismiss explains, that Non-Disclosure Agreement is valid, supported by consideration, and otherwise enforceable.

¶¶ 154, 157); (2) Facebook willfully and intentionally[6] interfered with that Agreement by financing, directing, and inducing Oculus and Luckey to breach that Agreement (*see, e.g.*, *id.* ¶¶ 112-115, 125, 158-159); (3) Facebook's interference has proximately caused harm by Oculus's and Luckey's use and disclosure of ZeniMax's confidential information and technology without ZeniMax's permission (*id.* ¶¶ 115, 152, 159), which contract violations have become even more egregious since the acquisition of Oculus by Facebook (*id.* ¶¶ 112, 114-115, 158-160); and (4) Facebook's "interference proximately caused irreparable injury to ZeniMax and actual damage and loss" by, for example, depriving ZeniMax of fair compensation for the continued exploitation and loss of exclusivity of its intellectual property that ZeniMax had spent years and millions of dollars to develop (*see, e.g.*, *id.* ¶¶ 4, 115, 160, 168).

In *Premier Research*, the court denied the motion to dismiss a tortious interference with contract claim based on similar factual allegations. *See* 2014 WL 978477, at *2. There, the plaintiffs alleged that (1) they had confidentiality agreements and other agreements with two employees; (2) pursuant to those agreements, the employees were prohibited from using plaintiffs' confidential information to advance private interests and from competing against plaintiffs; (3) the employees engaged in conduct that violated those agreements and other illegal conduct while employed by the defendant, such as by using the plaintiffs' confidential information to advance their business endeavors; and (4) "the interference cause[d] [p]laintiffs' injury and [p]laintiffs suffered actual damage or loss." 3d Am. Compl. ¶¶ 23, 30, 46-49, 86, *Premier Research*, No. 1:13-CA-069-SS (W.D. Tex. filed Nov. 22, 2013), Dkt. No. 32, 2013 WL 8373165. The court found that "Plaintiffs [had] provide[d] sufficient factual allegations

---

[6]   Facebook knew about the Agreement and Oculus's false representations at the time the acquisition closed because Facebook had knowledge of the facts and legal claims asserted against Oculus and Luckey prior to closing.  (*Compare* Dkt. No. 47, at 17 ("conclusory allegations that Facebook somehow knew that Oculus falsely made these representations"), *with* Dkt. No. 38, ¶¶ 109-112.)

supporting the existence of a contract as well as the rest of the elements of tortious interference with existing contract," and denied the motion to dismiss.[7] *Premier Research*, 2014 WL 978477, at *2. Facebook's motion to dismiss this claim should be denied for the same reason.

**D.      Facebook's Wrongful Conduct Has Interfered With ZeniMax's Ability To Conduct Its Business, Which Constitutes Unfair Competition By Facebook (Count 5)**

The tort of unfair competition under Texas law has been defined as follows:

[U]nfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  To recover on this tort, a plaintiff must show an illegal act by the defendant which interfered with the plaintiff's ability to conduct his business. The illegal act must constitute at least an independent tort if not a violation of criminal law.

*Grand Time Corp. v. Watch Factory, Inc.*, No. 3:08-CV-1770, 2010 WL 92319, at *3 (N.D. Tex. Jan. 6, 2010) (footnote, citations omitted) (denying motion to dismiss unfair competition claim).

This Court has previously held that "[t]o the extent Plaintiff may have alleged an independent tort, the Court will not foreclose Plaintiff the opportunity at this stage in the proceedings to plead a claim of unfair competition." *Settlement Capital*, 319 F. Supp. 2d at 734; *see also VendEver LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011) ("This Court has already determined that VendEver's Complaint sufficiently pleads the independent torts of false advertising, business disparagement, and tortious interference with reasonable expectancy.  [Accordingly,]… Intermatic's Motion, to the extent it seeks dismissal of Count Seven (common law unfair competition), is DENIED.");

---

[7]    Facebook relies on a number of cases (Dkt. No. 47, 18-19) that are inapplicable to the facts here.  *See, e.g.*, *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774-775, 805 (S.D. Tex. 2010) (dismissing claim because plaintiff failed to "allege or designate a specific contract that is the subject of interference"); *5860-5888 Westheimer Ltd. v. Orvis Houston, Inc.*, No. H-08-1327, 2009 WL 47124, at *2-3 (S.D. Tex. Jan. 6, 2009) (dismissing claim because plaintiff did "not allege that [defendant] in any way induced [third party] to breach its agreement" with plaintiff); *Dickson Constr., Inc. v. Fid. & Deposit Co.*, 960 S.W.2d 845, 851 (Tex. App. 1997) (discussing conduct which constitutes a "continuing tort" for statute of limitations purposes).

*Samsung Elecs. Co. v. Texas Instruments Inc.*, No. 3:96-CV-0001-P, 1996 WL 343330, at *7 (N.D. Tex. Apr. 18, 1996) (Solis, Dist. J.) ("This Court finds, however, that the complaint does contain other allegations which may serve as a predicate for an unfair competition claim; .… Accordingly, TI's motion to dismiss Samsung's unfair competition claim … is DENIED.").

ZeniMax has sufficiently alleged multiple independent torts that form the basis of an unfair competition claim. Specifically, ZeniMax has alleged that Facebook is liable for trade secret misappropriation, copyright infringement, tortious interference with contract, and unjust enrichment. (*See* Parts I.A-C, E herein.) ZeniMax has also alleged that Oculus and Facebook have interfered with ZeniMax's ability to conduct its business by depriving ZeniMax of the control of its proprietary inventions and confidential know-how and by interfering with ZeniMax's ability to return value to its shareholders for the time, money, and effort invested in developing virtual reality technology.[8] (*See* Dkt. No. 38, ¶¶ 167-168.) Those torts support ZeniMax's unfair competition claim against Facebook.

### E.   **Facebook Has Been Unjustly Enriched At ZeniMax's Expense**
**(*Count 6*)**

ZeniMax has alleged that (1) Facebook knowingly obtained control of highly valuable proprietary technology that was developed using and embedded with ZeniMax's trade secrets (Dkt. No. 38, ¶¶ 103, 109-112, 180-181); (2) Facebook knowingly acquired a company built with misappropriated intellectual property of ZeniMax as well as ZeniMax's technical guidance and marketing support (*id.* ¶¶ 177-180); (3) Facebook, like Oculus and Luckey, has made clear its intent to take undue advantage of  the misappropriation of ZeniMax's technology and trade

---

[8]   The cases cited by Facebook are inapposite.  *See Lycoming Engines*, 2014 WL 1976757, at *8 (finding allegations insufficient because "no description of the actual conduct giving rise to the cause of action" was given); *Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. 11-4380, 2012 WL 3599368, at *8 (D.N.J. Aug. 17, 2012) (holding that allegation that "unfair competition involves 'misappropriation' and the Defendants engaged in 'misappropriation'" is insufficient).

secrets over ZeniMax's objections and without providing fair compensation to ZeniMax (*id.* ¶¶ 177, 179); and (4) it would "be unconscionable to permit Defendants to profit from a 'free-ride' on ZeniMax's years of work in researching and developing virtual reality technology." (*id.* ¶¶ 179, 181).

The Supreme Court of the State of Texas has repeatedly recognized claims for unjust enrichment.[9] The Fifth Circuit has also acknowledged a claim for unjust enrichment as a "cause of action," finding that a two-year statute of limitations governs "claim[s] for unjust enrichment." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) (holding that case presented only one "cause of action," either unjust enrichment or conversion). Although this Court has previously dismissed certain unjust enrichment claims,[10] other courts in this District have more recently denied motions to dismiss unjust enrichment claims. *See, e.g.*, *Janvey v. Wieselberg*, No. 3:10-CV-1394-N, 2014 WL 2883897, at *2 (N.D. Tex. June 25, 2014) (denying motion to dismiss unjust enrichment claim); *Janvey v. Suarez*, 978 F. Supp. 2d 685, 699 (N.D. Tex. 2013) (recognizing "a possible conflict among Texas courts concerning the recognition of an unjust enrichment claim as an independent cause of action," but nonetheless denying the motion to dismiss unjust enrichment claim); *see also Waller v. DB3 Holdings, Inc.*, No. 3:07-CV-0491-D, 2008 WL 373155, at *5-6 (N.D. Tex. Feb. 12, 2008) (rejecting motion to dismiss unjust enrichment claim); *Newington Ltd. v. Forrester*, No. 3:08-CV-0864-G, 2008 WL 4908200, at *4

---

[9]  *See Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920-21, 923 (Tex. 2010) (holding issues presented by unjust enrichment claims will not predominate in class action); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007) ("This case reaffirms that unjust enrichment claims are governed by the two-year statute of limitations."); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) (upholding judgment in favor of a plaintiff solely on basis of an unjust enrichment claim); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (holding two-year statute of limitations governs unjust enrichment claims); *see also Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[10]  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, No. 3:06-CV-0575-P, 2007 WL 2729935, at *11 (N.D. Tex. Sept. 18, 2007) (Solis, Dist. J.) ("Unjust enrichment is not a distinct independent cause of action, but a theory of recovery.").

(N.D. Tex. Nov. 13, 2008) (recognizing "the lack of unanimity among Texas courts" and denying motion to dismiss unjust enrichment claim).[11]   This Court should deny a motion to dismiss ZeniMax's unjust enrichment claim against Facebook.[12]

## II.   THE TEXAS UNIFORM TRADE SECRETS ACT DOES NOT APPLY TO ZENIMAX'S TRADE SECRET CLAIM AGAINST FACEBOOK, AND EVEN IF IT DID, ZENIMAX HAS PLEADED A CLAIM UNDER TUTSA

### A.   Facebook Joined In A Course Of Continuing Misappropriation Of Trade Secrets That Began Prior to The Effective Date Of TUTSA, And Its Liability Is Governed Here By Pre-TUTSA Texas Common Law

ZeniMax first entrusted its trade secrets to Oculus and Luckey in 2012, pursuant to a binding Non-Disclosure Agreement and confidential business relationship between them, and Oculus and Luckey have acknowledged that ZeniMax's trade secret claim is governed by Texas common law.   (*See* Dkt. No. 45 *passim*.)   The fact that Facebook joined in that course of misappropriation after the effective date of TUTSA does not mean that TUTSA governs Facebook's misconduct.   Facebook's construction of TUTSA would mean that the same misconduct would be subject to different law depending on the defendant at issue, and that the same jury would have to be instructed twice on ZeniMax's trade secret claim for the same course of misconduct.   When the Texas legislature enacted TUTSA, it expressly rejected such a confusing approach by providing that "[a] misappropriation of a trade secret made before and a continuing misappropriation beginning before the effective date of this Act are governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect

---

[11]   To similar effect is *Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, No. 3:08-CV-1782-M, 2009 WL 1469808, at *10 (N.D. Tex. May 27, 2009) ("While it is unclear whether unjust enrichment may stand as an independent cause of action, where a plaintiff has successfully pled a breach of contract action, it may maintain an unjust enrichment theory of recovery as well.").

[12]   The case cited by Facebook does not require dismissal here. *See Johnson v. Affiliated Computer Servs., Inc.*, No. 3:10-cv-2333-B, 2011 WL 4011429, at *8 (N.D. Tex. Sept. 9, 2011) (recognizing that "[u]njust enrichment is a quasi-contractual claim," but granting motion to dismiss because alleged "undue advantage" of compensation to a loan servicer was "fully justified" and plaintiff alleged no other facts to show undue advantage) (cited in Dkt. No. 47, at 21.).

for that purpose." 2013 Tex. Sess. Law Serv. Ch. 10 (S.B. 953) § 3 (emphasis added). Accordingly, Texas common law applies to this claim based on a continuing misappropriation that began prior to TUTSA's September 1, 2013 effective date.

Other courts applying similar provisions of the Uniform Trade Secrets Act[13] as adopted in other states have reached the same result. For example, in *BP Chemicals Ltd. v. Baloun*, 183 F. Supp. 2d 1158, 1162 (E.D. Mo. 2000), trade secrets were first taken prior to the enactment of the Missouri UTSA, but the subsequent disclosure of the trade information continued after the statute's enactment. The court held that the Missouri trade secret statute did <u>not</u> apply because the course of misconduct was a continuing violation that began prior to the enactment of the statute. *Id.* at 1163. The court further stated that the "improper acquisition and disclosure[] are necessarily linked together in order to amount to a misappropriation." *Id.*; *accord Stratienko v. Cordis Corp.*, No. 1:02-CV-005, 2003 WL 23471546, at *3 (E.D. Tenn. Dec. 4, 2003) (finding that the UTSA does not apply even though disclosures occurred after the effective date because at least some disclosures and use occurred prior to that date), *aff'd*, 429 F.3d 592 (6th Cir. 2005).

### B.    Even If TUTSA Did Apply, ZeniMax Has Alleged Sufficient Facts To State A Claim Of Misappropriation Against Facebook Under That Statute

Even if TUTSA did apply to Facebook's misconduct, ZeniMax's Amended Complaint (Dkt. No. 38) has alleged sufficient facts to state a claim of misappropriation under that statute. A "trade secret" is any information or compilation of information that derives independent economic value from not being generally known to others who can use it and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6) (West Supp. 2014). "Misappropriation" includes "acquisition of

---

[13]   *See* Unif. Trade Secrets Act § 11 cmt. (1985) ("Neither misappropriation that began and ended before the effective date nor misappropriation that began before the effective date and continued thereafter is subject to the Act.").

a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id.* § 134A.002(3)(A). Misappropriation can also occur through "disclosure or use of a trade secret of another without express or implied consent by a person who: ... (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was: ... (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use[.]" *Id.* § 134A.002(3)(B).

ZeniMax alleged that it holds valid trade secrets related to virtual reality technology, which are specified in detail in paragraph 117 of the Amended Complaint. (Dkt. No. 38.) ZeniMax alleged that the trade secrets were protected by, among other precautions, the use of confidentiality agreements and password protected computer networks and databases. (Dkt. No. 38, ¶ 120.) ZeniMax also alleged that Facebook, through its acquisition of Oculus VR, Inc., has acquired those misappropriated trade secrets. (*See id.* ¶¶ 112, 114, 115, 125.) ZeniMax alleged Facebook knew or had reason to know that the Oculus Rift was wrongfully built upon another's trade secrets. (*See id.* ¶¶ 109-112, ¶ 125.) That allegation is persuasive as the initial Complaint in this case alleged that Oculus and Luckey misappropriated ZeniMax's confidential information to develop the Rift headset, and the litigation was widely covered by national media. (*See* Dkt. No. 1, ¶¶ 110-117; Dkt. No. 38, ¶ 111.). Further, ZeniMax sent written notice of its claims to Facebook before the acquisition closed. (*See* Dkt. No. 38, ¶ 112.) As a result, Facebook knew or had reason to know at the time of the acquisition that ZeniMax's trade secrets were derived from or through Luckey and/or Oculus[14] — who, in turn, breached a legal duty to maintain secrecy by

---

[14]    In *Staton Holdings, Inc. v. First Data Corp.*, No. 3:04-cv-2321-P, 2006 WL 1343631 (N.D. Tex. May 16, 2006) (Solis, Dist. J.), on which Facebook relies (Dkt. No. 47, at 16), this Court entered summary judgment dismissing a tortious interference claim where the plaintiff failed to establish that defendant had knowledge of the existence of the contract at issue. *Id.* at *5-6. Here, by contrast, ZeniMax has alleged that Facebook knew of the existence of the Non-Disclosure Agreement prior to closing on its acquisition of Oculus. (Dkt. No. 38, ¶¶ 111, 158.)

relying on and exploiting those trade secrets in the development and commercialization of the Rift without ZeniMax's approval. (*See, e.g.*, Dkt. No. 38, ¶¶ 109-112, 122-125.) Notwithstanding this awareness, Facebook has used and intends to continue to use ZeniMax's trade secrets without ZeniMax's consent. Those facts plainly state a claim by ZeniMax against Facebook under TUTSA for misappropriation of trade secrets.

### C.     Even If TUTSA Did Apply, ZeniMax's Other Claims Against Facebook Are Not Based Solely On Misappropriation Of Trade Secrets, And Therefore Are Not Displaced By TUTSA

Even if TUTSA were applicable here, TUTSA would not displace ZeniMax's other Texas law claims against Facebook because those claims are not predicated on trade secret misappropriation alone. Under the express language of the statute, TUTSA does not affect "other civil remedies that are not based upon misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(b)(2) (West Supp. 2014). Courts construing similar language in other states have held that a claim is not displaced to the extent it relies on allegations beyond the accused defendant's misappropriation of information. *See, e.g., Gardner Denver, Inc. v. Cochrane Fin. Co.*, No. CI 09-1279, 2009 Ohio Misc. LEXIS 542, at *54 n.30 (Ohio C.P. Sept. 30, 2009) (stating that "'[t]he weight of authority is that common law claims that require allegations in addition to those necessary to state [a] claim for trade secret misappropriation are not preempted by the UTSA.'") (citing *Milgrim on Trade Secrets* § 1.01[3][a]).[15] The mere presence of a potential trade secret claim does not preclude plaintiffs from asserting any other sort of tort claim. *Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649, 657 (E.D.

---

[15]   A claim only partially based on trade secret misappropriation may be only partially preempted. *See, e.g., Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012) ("However, 'if the common-law claim possesses an "independent factual basis" separate from the factual allegations establishing a UTSA claim, then the portion of the claim supported by an independent factual basis survives preemption.'").

Tenn. 2004).   Here, each of ZeniMax's state law claims is based on facts beyond misappropriation alone and is not displaced by TUTSA.[16]

### 1.   ZeniMax's Tortious Interference Claim (*Count 4*) Does Not Depend On A Finding That Facebook Misappropriated Trade Secrets, And Would Not Be Displaced By TUTSA

A tortious interference claim is not displaced when the claim could succeed without evidence that the defendant misappropriated trade secrets. *See Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1060 (D. Ariz. 2013).  In *Unisource*, the court found that a tortious interference claim was displaced by the Arizona UTSA *only to the extent* that the plaintiff alleged the defendant had wrongfully used confidential information to interfere with certain contracts. *Id.*   To the extent the plaintiff interfered through other means (*i.e.*, without using misappropriated confidential information), the claim was not displaced.  *Id.*

Similarly, in *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 941 (S.D. Ohio 2012), the court found that the tortious interference claim survived preemption because the plaintiffs alleged "far more than the wrongful use of clients' contact information."   In that case, the plaintiffs alleged that the defendant intentionally interfered with plaintiff's relationship with various insurance agencies by "'by hindering and/or preventing [p]laintiffs from doing business with these relations.'" *Id.*   In addition, the plaintiffs alleged that the defendant "'purposely interfered with Plaintiffs' contracts with their independent agent examiners, nurses, and physicians by requiring them to utilize a central scheduling office and otherwise dictating where, when, and how they completed the contracted paramedical

---

[16]   Facebook misstates the majority rule on displacement:  the UTSA does not "preempt any tort claim to the extent it is based on proprietary information" (Dkt. No. 47, at n.2) and courts have not construed it that way because such an interpretation would threaten to undermine patent, copyright, and trademark infringement claims, all of which are torts based on proprietary information.  Instead, the cases cited by Facebook simply find that the UTSA can displace claims to the extent those claims are based on the misappropriation of information, even if that information does not rise to the level of a trade secret. (*See* Dkt. No. 47, at n.2.)

examinations.'"  *Id.*  As a result, the tortious interference claims were not preempted by the UTSA because the interference was not based solely upon the defendant's misappropriation.  *Id.*

Here, ZeniMax's allegations do not require Facebook to have misappropriated any information to establish that Facebook has tortiously interfered with Oculus's and Luckey's contract with ZeniMax.  Even if Facebook were not directly involved in any misappropriation — although ZeniMax expects that discovery will establish Facebook *is* directly involved in misappropriation — Facebook is nonetheless financing and supporting Oculus's and Luckey's wrongful conduct in an on-going breach of the Non-Disclosure Agreement with ZeniMax. (*See* Dkt. No. 38, ¶¶ 153-160.)  ZeniMax's tortious interference claim against Facebook therefore does not depend on a finding that Facebook misappropriated any trade secrets, but only requires a determination that Oculus and Luckey violated the Non-Disclosure Agreement and that Facebook induced and supported Oculus and Luckey to do so.  The tortious interference claim therefore does not rise and fall with the trade secrets claim and should not be displaced.

### 2.     ZeniMax's Unfair Competition Claim (*Count 5*) Is Predicated On Multiple Torts, And Would Not Be Displaced By TUTSA

ZeniMax has alleged facts supporting its unfair competition claim beyond the misappropriation of trade secrets.  Unfair competition claims are not displaced if the plaintiff alleges facts beyond misappropriation.  *See, e.g., Advanced Fluid Sys., Inc. v. Huber*, No. 1:13-CV-3087, 2014 WL 2770231, at *11 (M.D. Pa. June 18, 2014) ("Unfair competition contemplates conduct beyond misappropriation of a competitor's goods, and includes, *inter alia,* '"misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information."') (citation omitted).  Here, Facebook is liable for unfair competition not only based on misappropriation of trade secrets, but also tortious interference with contract, unjust enrichment, and copyright infringement.  (*See* Dkt. No.

38, ¶ 161 ("ZeniMax incorporates by reference all preceding and succeeding paragraphs of this Complaint."); ¶ 163 ("Facebook committed one or more illegal acts, including copyright infringement, … and trade secret misappropriation, by using ZeniMax's intellectual property without authorization to develop, promote, and commercialize the Rift headset."); ¶ 169 ("Facebook violated the principles of the common law of unfair competition by attempting to profit from ZeniMax's intellectual property and the wrongful acts of Oculus.").)  The facts in support of those claims are provided under each of the independent tort counts (*id.* ¶¶ 131-141 (alleging copyright infringement against Defendants); ¶¶ 153-160 (alleging tortious interference against Facebook); ¶¶ 174-184 (unjust enrichment by Defendants)), as well as the rest of the Amended Complaint that provides, among other details, specific documents and article quotes that support those claims.  (*See, e.g.,* Dkt. No. 38, ¶ 87.)  Contrary to Facebook's assertion that the unfair competition claim would "succeed or fail" depending on proof of misappropriation, the unfair competition claim would succeed based on the other illegal acts alleged in the complaint.

Indeed, Facebook concedes that TUTSA displacement applies — if at all — only "to the extent" that the claim relies on the misappropriation of trade secrets. (*See* Dkt. No. 47 at 11 ("To the extent the unfair competition claim relies on misappropriation of trade secrets...  the TUTSA preempts it ....").)  But here ZeniMax has alleged sufficient facts to support alternative bases for the claim of unfair competition.[17]  (*See, e.g.*, Dkt. No. 38, Count 2 (Copyright Infringement); Count 4 (Tortious Interference with Contract).)  Accordingly, because ZeniMax may prevail on its unfair competition claim even if Facebook did not misappropriate ZeniMax's trade secrets, TUTSA cannot displace the unfair competition claim.

---

[17]   For the same reason, Facebook cannot rely on the holding of *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 785 (S.D. Tex. 2010) as a basis to dismiss the unfair competition claim.

**3.     ZeniMax's Unjust Enrichment Claim (*Count 6*)
Is Based On Numerous Facts Other Than Misappropriation
Of Trade Secrets, And Would Not Be Displaced By TUTSA**

Unjust enrichment claims can proceed if based on allegations of misconduct beyond misappropriation alone. *See, e.g.*, *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 448 (E.D. Pa. 2013) ("However unlikely the case may be, if APT fails to prove that its coated SBP method constituted a trade secret but nonetheless proves that it was a benefit conferred by XXPC upon VWR, which unjustly retained it, APT should be able to pursue an unjust enrichment claim."). Here, ZeniMax's claim for unjust enrichment is based on facts beyond trade secret misappropriation. For example, ZeniMax alleged that Defendants have been unjustly enriched not only by access to ZeniMax's trade secrets, but also by having received:

- **marketing support** (*see, e.g.*, Dkt. No. 38, ¶¶ 39-43 (press interviews and E3 demonstrations in 2012), ¶¶ 59-64 (Kickstarter video references ZeniMax), ¶ 65 (Defendants enriched by $2.44 million trading off ZeniMax's improvements and reputation), ¶ 69 (QuakeCon panel featuring Luckey to help promote VR and Rift), ¶ 75 (describing use of modified Rift and ZeniMax's software for additional demonstrations at conventions));

- **enhanced credibility** (*see, e.g.*, Dkt. No. 38, ¶¶ 39-43 (ZeniMax promoted the Rift alongside their brand), ¶ 51 (Defendants ask for a cameo in Kickstarter video to help lend credibility to project), ¶ 59 (Luckey acknowledged ZeniMax's efforts); ¶¶ 66, 82 (Defendants used ZeniMax's intellectual property to attract investors and funding));

- **a head start in development** (*see, e.g.*, Dkt. No. 38, ¶¶ 59-63, 65, 82-83);

- **a head start in publicity** (*see, e.g.*, Dkt. No. 38, ¶¶ 39-43 (describing initial press interviews and E3 demonstrations); ¶ 66 (Luckey attracted Oculus's current CEO, Brendan Iribe, by using ZeniMax's proprietary game, *RAGE*); ¶¶ 68-69 (describing how ZeniMax assisted Luckey and Oculus in promoting the Rift at QuakeCon 2012));

- **assistance with demonstrations** (*see, e.g.*, Dkt. No. 38, ¶ 75 (Luckey used the modified Rift and ZeniMax's VR Technology in demonstrations), ¶ 68 (ZeniMax assisted Luckey and Oculus in demonstrating the Rift at QuakeCon 2012));

- **initial investor and developer attention and subsequent funding** (*see, e.g.*, Dkt. No. 38, ¶¶ 63-66, 82-83);

- **technical guidance** (*see, e.g.*, Dkt. No. 38, ¶¶ 56, 86-89); and

- **other forms of support** (*see, e.g.*, Dkt. No. 38, ¶ 48 (ZeniMax provided Defendants with cables and sensors early in development process); ¶ 72 (Defendants acknowledge "incredible support" provided by ZeniMax, without specification)).

All such benefits have been alleged, and none of which depend on the acquisition or misuse of any confidential information. All of the above benefits combined to infuse Oculus Rift with workable technology, credibility, and financial and technical support. Without these benefits, Oculus and Luckey would not have attracted the personnel and financial support necessary to develop the Rift as a viable commercial product. The present success and viability of Oculus VR, LLC and the Oculus Rift headset is inextricably linked to — indeed, would not exist without — the early stage support provided by ZeniMax. Facebook, having recognized the enormous value of the Rift only as a result of ZeniMax's developmental effort and support, has now purchased the entire enterprise with plans to exploit it further. (*See* Dkt. No. 38, ¶¶ 114-115.) Facebook has not provided any compensation to ZeniMax for the above-listed benefits. (*See id.* ¶ 115.) Facebook has thus taken undue advantage of many benefits obtained from ZeniMax by Defendants, without providing fair compensation to ZeniMax. Defendants' misappropriation of trade secrets and confidential technical information aside, Facebook and the other Defendants have been unjustly enriched by the free-ride off ZeniMax's research, technical guidance, and other valuable support. That claim does not rise and fall with the trade secrets claim against Facebook and therefore is not displaced by the Texas Uniform Trade Secrets Act.

### 4. Facebook's Displacement Arguments Are Premature In Any Event

In any event, Facebook's motion to dismiss on the basis of displacement or preemption is premature at best. Displacement determinations should be made after both sides have had an opportunity to develop the facts in discovery. *See U.S. Legal Support, Inc. v. Hofioni*, No. CIV.

S-13-01770 LKK/AC, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013).[18] Here, ZeniMax pleaded sufficient facts beyond misappropriation to establish viable claims of unjust enrichment, tortious interference with contract, and unfair competition. Were these claims to be dismissed prior to discovery, amendment of the pleadings would be required later after additional facts are revealed in discovery. The cases on which Facebook relies (Dkt. No. 47, at 6, 7-8, 10) are not to the contrary and do not require this Court to address displacement at the motion to dismiss stage.[19]

## III.   IN THE EVENT THAT THIS COURT FINDS ZENIMAX'S PLEADING TO BE IN ANY RESPECT INSUFFICIENT, IT SHOULD GRANT LEAVE TO AMEND

For the reasons set forth above, ZeniMax respectfully submits that Facebook has not identified any insufficiency in ZeniMax's pleading that warrants dismissal of any claim asserted against Defendants. Should the Court determine otherwise, ZeniMax would request leave to amend its pleading to remedy any perceived insufficiency. This litigation is at an early stage, and ZeniMax has not amended its complaint with respect to Facebook. "A district court should 'freely give leave' to amend a complaint 'when justice so requires.'" *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (quoting Fed. R. Civ. P. 15(a)(2)).[20]

---

[18]   "The court is of the view that the question of supersession is properly addressed at summary judgment.... Defendants can determine in discovery whether Plaintiff's contentions have any merit, and when appropriate, bring a summary judgment motion as to the issue of supersession." *Id.* at *11.

[19]   Facebook relies on cases decided later in litigation, such as at the summary judgment or motions in limine stage. *See Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994) (preemption addressed by district court at trial, after close of plaintiff's case); *Reingold v. Swiftships Inc.*, 210 F.3d 320, 322 (5th Cir. 2000) (preemption addressed by district court in motion in limine decision); *Convolve, Inc. v. Compaq Computer Corp.*, No. 00CV5141, 2006 WL 839022, at *6 (S.D.N.Y. March 31, 2006) (preemption addressed at summary judgment stage); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (same).

Facebook also cites *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004). (Dkt. No. 47, at 8.) But that case specifically noted that preemption would occur when the claim "necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret'" – a situation unlike the one here. *See also In re Mandel*, No. 13-40751, 2014 WL 3973479, at *6 n.8 (5th Cir. Aug. 15, 2014) (discussing TUTSA in context of Texas Theft Liability Act, which is not alleged here).

[20]   In *Steury*, the Fifth Circuit vacated a final judgment that a district court entered on a motion to dismiss before a plaintiff had opportunity to amend: "It does not appear that [plaintiff] Steury has unduly delayed this action, or *(cont'd)*

## CONCLUSION

For all of the foregoing reasons, ZeniMax respectfully requests that Facebook, Inc.'s Motion To Dismiss Counts 1, 2, 4, 5, And 6 (Dkt. No. 47) be denied in its entirety.


Dated: October 10, 2014                         Respectfully submitted,

                                                *s/ Phillip B. Philbin*
                                                PHILLIP B. PHILBIN
                                                Texas State Bar No. 15909020
                                                E-mail: phillip.philbin@haynesboone.com
                                                MICHAEL D. KARSON
                                                Texas State Bar No. 24090198
                                                E-mail: michael.karson@haynesboone.com
                                                **HAYNES AND BOONE LLP**
                                                2323 Victory Avenue, Suite 700
                                                Dallas, Texas 75219
                                                Telephone No.: 214-651-5000
                                                Facsimile No.: 214-651-5940

                                                P. ANTHONY SAMMI
                                                E-mail: Anthony.Sammi@skadden.com
                                                KURT WM. HEMR
                                                E-mail: Kurt.Hemr@skadden.com
                                                JAMES Y. PAK
                                                Texas State Bar No. 24086376
                                                E-mail: James.Pak@skadden.com
                                                KRISTEN VOORHEES
                                                E-mail: Kristen.Voorhees@skadden.com
                                                (admitted *pro hac vice*)
                                                **SKADDEN, ARPS, SLATE,**
                                                    **MEAGHER & FLOM LLP**
                                                Four Times Square
                                                New York, New York 10036
                                                Telephone No.: 212-735-3000
                                                Facsimile No.: 212-735-2000

                                                *Attorneys for Plaintiffs*
                                                *ZeniMax Media Inc. and id Software LLC*

_____
*(cont'd from previous page)*
that she is pursuing it in bad faith.  [Defendant] Cardinal has not shown that it would suffer undue prejudice if Steury were permitted to amend her complaint, and we cannot say that the defects in Steury's complaint are necessarily 'incurable' or that amendment would be futile."  *Id.* at 271.

**CERTIFICATE OF SERVICE**

On October 10, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: October 10, 2014                    _s/ Phillip B. Philbin_____
                                           Phillip B. Philbin