IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC,<br><br>         Plaintiffs,<br><br>  v.<br><br>OCULUS VR, LLC, PALMER LUCKEY, and FACEBOOK, INC.,<br><br>         Defendants. | CIVIL ACTION<br>NO. 3:14-01849-P<br><br><br><br>JURY TRIAL DEMANDED |

**REPLY IN SUPPORT OF MOTION TO QUASH AND FOR PROTECTIVE ORDER RE PLAINTIFFS' SUBPOENAS FOR PHONE RECORDS**

I.     **INTRODUCTION**

Plaintiffs' Subpoenas have no restriction to particular time periods or communications with particular individuals. Instead, Plaintiffs demand years of comprehensive phone records for not only the business line of Defendant Oculus VR, LLC ("Oculus") and the personal cell phone of Defendant Palmer Luckey, but also sixteen other numbers of Oculus employees' home lines, personal cell phones, and even cell phones of spouses and family members. Appendix in Support of Motion to Quash and for Protective Order at 154, 157, 160, 163, 166, 169, 172, 175. On their face, and by Plaintiffs' own admission, the Subpoenas seek volumes of highly private information -- including calls with doctors, lawyers, spouses and family members -- between people who (with four exceptions) have no alleged connection to this litigation. In their Opposition, Plaintiffs admit they have "no interest" in the swaths of "irrelevant" phone records that they seek in the Subpoenas. Opp'n at 24. Nonetheless, Plaintiffs insist the Subpoenas "should not be quashed or modified *in any respect*." Opp'n at 22 (emphasis added).

This is a classic case of harassment, "where a party requests information that is only remotely connected to the case, or a party has sent subpoenas for an improper purpose." *See Systems Prods. & Solutions, Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014) (cited Opp'n at 22). Plaintiffs' Opposition concedes that the subpoenas seek extensive records of private conversations, the vast majority of which are completely irrelevant. While Plaintiffs claim that courts "commonly" endorse blanket subpoenas, Plaintiffs cite no case law that supports that type of harassment. Opp'n at 4. Rather, courts require that subpoenas for private phone records be limited to *relevant time periods* and communications between *relevant individuals*. Because Plaintiffs refuse to place any reasonable restrictions on the Subpoenas, the Court should quash the Subpoenas and issue a protective order prohibiting Plaintiffs from seeking Movants' private and confidential information.

1

## II.   ARGUMENT

### A.   Plaintiffs' Blanket Subpoenas Are Overbroad and Not Reasonably Calculated To Lead to Discoverable Evidence

In Plaintiffs' own words, the Subpoenas seek two years' worth of records for every single call or text, including "telephone calls that were made in order to wish an aunt a happy birthday or to reminisce with a school friend."  Opp'n at 24.  Plaintiffs admit they have "no interest" in any of these personal conversations.  Opp'n at 24.  At the same time, Plaintiffs claim to have every right to demand records of those "irrelevant" calls.  Opp'n at 24.

Just because Plaintiffs allege that Defendants Oculus and Luckey breached a contract does not entitle them to peruse phone records about "virtually every facet" of Defendant Oculus's business and Defendant Luckey's personal life.  *See Turnbow v. Life Partners, Inc.*, No. 3:11-1030, 2013 WL 1632795 at *1-2 (N.D. Tex. Apr. 16, 2013) (Stickney, J.)  Plaintiffs certainly do not have *carte blanche* to obtain private information about every Oculus employee and their family members.  Plaintiffs' entire case rests on the theory that one former employee (Carmack) provided some unspecified "technical assistance" to Oculus.  Opp'n at 23.  Of the individuals targeted by the Subpoenas, only three allegedly "solicited" advice from Carmack (Luckey, Iribe and Antonov).  Opp'n at 23.  Yet Plaintiffs also subpoenaed the personal and family records for the remaining six individuals only because they used to work for Plaintiffs (Hooper, van Waveren, Kennickell, Kim, Wright and Antkow).  Opp'n at 23 n.16.  Plaintiffs even subpoenaed personal, home, and business records for an additional individual (Kang) only because she is married to Carmack.  Opp'n at 23 n.16.

Defendants repeatedly have asked Plaintiffs to identify which (if any) former employees they contend have knowledge relevant to this litigation.  Appendix in Support of Reply in Support of Motion to Quash and for Protective Order ("App.") at 4-8.  As counsel explained during the Rule 26(f) conference and by subsequent letter, Defendants are not aware that any former employee -- other than Carmack -- conducted work relating to the Rift, which is the sole subject of Plaintiffs' claims.  App at 2, 4-8.  Defendants asked Plaintiffs whether they have any

2

different understanding based on the employment records and e-mail archives that they have for those former employees. App. at 2. Plaintiffs responded that they presumed a connection because "no man is an island," apparently referring to Carmack and the work they allege he did. App. at 2. After months of searching, Plaintiffs still have not identified any other basis to allege this connection. Instead, Plaintiffs issued the Subpoenas apparently to find that connection in their former employee's private phone records. Plaintiffs argue that their intrusion is justified because "evidence shows that [these] individuals used their personal mobile devices for business purposes." Opp'n at 23-24. The only "evidence" that Plaintiffs provide is that Carmack *once* claimed to have difficulty with his office phone. Opp'n at 23. Employees universally complain about complicated office phones. Carmack's one time complaint about his office phone in August 2011 does not show that he (or any of the other ten individuals) were having relevant discussions on their cell phones months and years later.

Plaintiffs also contend that blanket subpoenas are "commonly used in cases of this nature." Opp'n at 4. The cases that Plaintiffs cite, however, do not authorize fishing expeditions through private information. As this Court recently articulated, and as Plaintiffs' own authorities illustrate, subpoenas must have "reasonable restriction[s] on time" and be limited to "categories of documents relating to the allegedly improper [action] that are at the heart of [the] litigation." *Turnbow*, 2013 WL 1632795 at *1-*2. Ignoring this Court's guidance, Plaintiffs refuse to restrict or modify the Subpoenas "in any respect." Opp'n at 22.

**B.      Plaintiffs Refuse To Restrict the Subpoenas to Relevant Time Periods**

Plaintiffs refuse to restrict the Subpoenas to any particular time periods. Plaintiffs claim they need years' worth of records because "the subpoenaed telecommunications providers cannot fashion their production to exclude irrelevant calls." Opp'n at 24. That is backwards. It is never up to the recipients of a subpoena to "fashion their production[s]" to exclude irrelevant information. Rather, it is Plaintiffs' obligation to "fashion" the Subpoenas to target relevant information in the first place. Here, the reason why telecommunications providers cannot exclude irrelevant calls is because Plaintiffs have not identified when (and between whom the)

relevant calls "might have occurred." Opp'n at 24. Addressing a similar subpoena, the appellate court in *In re Moor*, 14-12-00933-CV, 2012 WL 5463193, at *3-*4 (Tex. App.-Houston [14th Dist.] Nov. 8, 2012, orig. proceeding) determined that a request originally issued for two months' worth of phone records was overbroad and "appear[ed] to be an impermissible fishing expedition." The court narrowed the subpoena to records covering only two and a half hours—the time period surrounding a specific incident of misconduct at issue in the case. Opp'n at 24-25. *Moor* confirms that blanket subpoenas of phone records are impermissible and that subpoenas of such sensitive information *must* be targeted. Plaintiffs, by contrast, have yet to identify *any* specific incidents of misconduct, certainly not involving the individuals whose records they have subpoenaed. Plaintiffs contend that they cannot identify any specific dates on which communications "might have occurred" because "many telephone calls will likely not be discussed in other documents." Opp'n at 24. That is no excuse for a fishing expedition, let alone one that would expose very private telephone records. Plaintiffs cannot surmise that "something happened" and then seek all phone and text records in the hope that a record of some call or text at some time may allow them "to draw inferences" supporting their claims. Opp'n at 21.

### C. Plaintiffs Refuse To Restrict the Subpoenas to Communications Between Relevant Individuals

Plaintiffs refuse to limit the Subpoenas to communications between any particular people, arguing that unrestricted subpoenas are appropriate "in cases of this nature." Opp'n at 4, 21-22 (citing *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987 (C.D. Cal. 2012) and *Scramlin*, 2014 WL 3894385). The cases Plaintiffs cite do not support this proposition. Courts addressing cases of this nature have quashed overbroad subpoenas, like these, seeking irrelevant, private information.

Both cases that Plaintiffs cite involve contractual disputes between companies and their former employees. *Mintz*, 885 F. Supp. 2d at 989; *Scramlin*, 2014 WL 3894385, at *1. In each case, the companies subpoenaed phone records of a former employee. *Mintz*, 885 F. Supp. 2d at 989; *Scramlin*, 2014 WL 3894385, at *1. The subpoenas sought phone records directly relevant

4

to the former employee's alleged breach of contract or the former employee's counter-claims against the companies. *Mintz*, 885 F. Supp. 2d at 990; *Scramlin*, 2014 WL 3894385, at *9. Moreover, the *Mintz* subpoena was limited to records of the employee's company-paid business phone as to which he had explicitly waived all rights to any personal information. *Mintz*, 885 F. Supp. 2d at 999, 996-98.

In contrast, the Subpoenas here seek private phone records for Oculus, its employees, and family members who never consented to giving confidential information to Plaintiffs. And, while some individuals used to work for Plaintiffs, Plaintiffs do not allege that any of their former employees violated their employment agreements or otherwise engaged in any misconduct. Plaintiffs also do not allege any misconduct by the spouses and family members whose phone records Plaintiffs seek in the Subpoenas. Unlike the parties in *Mintz* and *Scramlin*, therefore, Plaintiffs did not make any attempt to target communications of individuals they allege committed the contractual breaches.

Courts quash similarly overbroad subpoenas. In *Winter v. Bisso Marine Co., Inc.*, No. 13-5191, 2014 WL 3778833 (E.D. La. July 29, 2014), for example, the court quashed a subpoena because it sought information about all incoming and outgoing calls, texts, and data transfers spanning a multi-year period. *Id.* at *2. As Plaintiffs note, the *Winter* court found the entire subpoena improper because the purported theory of relevance was "too tenuous." Opp'n at 25. Here, Plaintiffs claim that they have a basis for seeking the same types of confidential information because "it is likely that those individuals had telephone conversations *among themselves* in which they discussed ZeniMax's proprietary technology." Opp'n at 21 (emphasis added). Even that purported basis would not suffice because Plaintiffs proffer no factual predicate even for that claim; their assertion that telephone conservations "likely" happened is completely unsupported *ipse dixit*. And even assuming they could support their claim, that was not the relevance theory on which Plaintiffs originally propounded the Subpoenas because, if it were, they could easily have restricted the Subpoenas to communications *between* Carmack and the three individuals Plaintiffs allege to have "solicited technical advice" from Carmack.

5

Instead, Plaintiffs do not restrict the Subpoenas at all, including to particular conversations between particular individuals, or even to people who have knowledge about the alleged "technology."

## III.   CONCLUSION

Plaintiffs' Subpoenas are far from "narrowly tailored" as they largely seek irrelevant information about individuals who are only tangentially related to the claims.  Opp'n at 4.  Plaintiffs do not have any basis to intrude into the private business affairs of Oculus or the personal lives of its employees and their families.  Notwithstanding Plaintiffs' "commit[ment] not to use the subpoenaed information for any purpose unrelated to this litigation," Movants simply should not be subject to any unnecessary invasion of privacy.  Pursuant to Fed. R. Civ. P. 45(d)(3) and 26(b), this Court should quash Plaintiffs' subpoenas and enter a protective order prohibiting Plaintiffs from seeking these private and confidential phone records.

Dated:  October 15, 2014    Respectfully submitted,

**OCULUS VR, LLC, PALMER LUCKEY, BRENDAN IRIBE TREXLER, MICHAEL ANTONOV, MATTHEW HOOPER, JASON KIM, JOHANNES VAN WAVEREN, JONATHAN WRIGHT, GLORIA KENNICKELL, AND CHRISTIAN ANTKOW,**

By Their Attorneys,

/s/ Linda R. Stahl
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterscholer.com
**CARTER SCHOLER**
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
T: 214.550.8188
F: 214.550.8185

Geoffrey M. Howard (*pro hac vice*)
geoff.howard@bingham.com
John A. Polito (*pro hac vice*)
john.polito@bingham.com
Lucy Wang (*pro hac vice*)
lucy.wang@bingham.com
**BINGHAM MCCUTCHEN LLP**
Three Embarcadero Center
San Francisco, California  94111-4067
T: 415.393.2000
F: 415.393.2286

Joshua M. Dalton (*pro hac vice*)
josh.dalton@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
T: 617.951.8000
F: 617.951.8736

Dated:  October 15, 2014                    Respectfully submitted,

**JOHN CARMACK AND KATHERINE ANNA KANG**

By Their Attorneys,

/s/ Richard A. Smith (with permission L.W.)
Richard A. Smith
Texas Bar No. 24027990
rsmith@lynnllp.com
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
T: 214.981.3800
F: 214.981.3839

**CERTIFICATE OF SERVICE**

I Linda R. Stahl hereby certify that on October 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail

/s/ Linda R. Stahl
Linda R. Stahl