IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
AND SOURCE CODE, AND BRIEF IN SUPPORT**

Phillip B. Philbin
Michael D. Karson
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

P. Anthony Sammi
Kurt Wm. Hemr
James Y. Pak
Kristen Voorhees
Devin A. Kothari
**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

Dated: April 8, 2015
    Dallas, Texas

*Attorneys for Plaintiffs
ZeniMax Media Inc. and id Software LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

1.   Defendants Should Be Ordered To Produce All Documents Containing Or
     Commenting On Communications Between ZeniMax and Oculus and/or Luckey............3

2.   Defendants Should Be Ordered To Produce All Documents Containing Or
     Commenting On Communications With ZeniMax's Former Employees Before
     Those Employees Became Employees Of Defendant Oculus ..........................................5

3.   Defendants Should Be Ordered To Produce All Documents Concerning the Non-
     Disclosure Agreement at Issue In This Litigation...........................................................7

4.   Defendants Should Be Ordered To Produce All Documents Concerning Any
     Negotiations Between ZeniMax and Oculus For An Equity Position in Oculus...............8

5.   Defendants Should Be Ordered To Produce Source Code Associated with Each of
     Defendants' Virtual Reality Products, Including the Oculus Rift ....................................8

6.   Defendants Should Be Ordered To Produce All Documents Concerning
     Facebook's Acquisition Of Oculus ...............................................................................10

CONCLUSION.................................................................................................................... 11

# TABLE OF AUTHORITIES

*No authorities cited in this memorandum.*

## PRELIMINARY STATEMENT

Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") commenced this action nearly one year ago — on May 21, 2014 — by filing a detailed Complaint. Since the very beginning, Plaintiffs have sought basic discovery to which they are entitled on subjects squarely relevant to this case. For as long as Plaintiffs have been requesting these materials, Defendants have continuously and intentionally withheld discovery. Defendants have failed to produce any source code or make a substantial production of documents critical to the proof of ZeniMax's claims, instead producing documents that are at best marginally relevant to the categories at issue in this Motion. ZeniMax now moves this Court to enter an order requiring Defendants to produce source code and key documents forthwith.

The following examples highlight the need for this Court's urgent intervention:

• **Defendants have not produced a single line of source code.** Computer program "source code" underlying the technology at issue in this case is directly relevant to all of ZeniMax's claims, including ZeniMax's copyright infringement claims (which Defendants Oculus or Luckey have <u>never</u> moved to dismiss). Indeed, the importance of source code in this matter is underscored by Oculus's Chief Technical Officer John Carmack, who after leaving his position as ZeniMax's Technical Director for the employ of Defendants, tweeted "When . . . you wrote the e*xact needed code* (well!) at a previous job, *reimplementation grates*." (Dkt. No. 38 ¶¶ 105-06 (emphasis added) (hereinafter "Am. Compl.").) Because the need to produce and review source code was apparent from the onset of this litigation, the parties began negotiating source code production protocols as early as July 2014. Only after ZeniMax was forced to move this Court in September 2014 for entry of its proposed form of protective order, however, did Defendants finally agree on source code production protocols.

The Court entered a Protective Order two months ago, on February 9, 2015. (Dkt. No. 107.) That same day, Plaintiffs requested that Defendants cooperate to exchange source code. Plaintiffs thereafter made several further demands for Defendants to fulfill their discovery obligations. Yet, two months later, Defendants still have not provided any source code. Indeed, Defendants continue to intentionally obfuscate, stating on April 3, 2015 that "[w]e should … have a more definitive answer on when we will be able to exchange source code by next Friday." (See Point 5 infra.)

Remarkably, notwithstanding its failure to provide any virtual reality source code, Defendants have propounded a request for admission asking ZeniMax to "Admit that none of Oculus VR's products contain any ZeniMax Source Code." At the time of its Request, Defendants knew full well that they had not and would not produce any source code to ZeniMax for analysis during the time allocated for ZeniMax to respond.

Defendants' obstruction and delay do not begin and end with their failure to produce source code, but in fact pervade their entire approach to discovery in this litigation.

• **Defendants have not substantively produced communications between the parties themselves.** (See Points 1 & 2 infra.)

• **Defendants have not produced their copy of the Non-Disclosure Agreement at issue in this case**, or documents related to that Agreement. (See Point 3 infra.)

The list goes on, and is set forth in detail below. Enough is enough. ZeniMax has provided repeated, substantive productions of documents, including documents relevant to each of the disputes in this Motion. The Court should require Defendants to do the same. ZeniMax respectfully requests that the Court enter an order directing Defendants to comply forthwith with their discovery obligations, including in the respects identified below:

## ARGUMENT

**1.      Defendants Should Be Ordered To Produce All Documents Containing Or
Commenting On Communications Between ZeniMax and Oculus and/or Luckey**

This case centers on transfers of technology from ZeniMax to Oculus and Palmer
Luckey.  Accordingly, ZeniMax's very *first* request for documents, served on **July 9, 2014**,
specifically sought all communications between ZeniMax and Oculus and/or Mr. Luckey — as
well as documents in Defendants' possession commenting on such communications, which show
how Defendants made use of the technology transferred to them:

> **REQUEST FOR PRODUCTION NO. 1:**
>
> All Communications between Plaintiffs and Palmer Luckey and/or Oculus from January
> 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media,
> or file transfer protocol (including by way of example only the Communications referenced in ¶¶
> 43, 44, 49, 70, 74, 75, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or
> referencing those Communications, including but not limited to e-mail chains forwarding those
> Communications in whole or in part or commenting on those Communications.

(App'x Ex. 1 at 2.)  On **August 8, 2014**, Defendants Oculus and Luckey <u>agreed</u> to produce those
documents:

> Subject to and without waiving their objections, upon the entry of a protective order,
> Defendants will produce non-privileged, non-work product documents, if any, in their possession,
> custody, or control that are relevant and responsive to this request.

(App'x Ex. 2 at 26.)

That response notwithstanding, on **September 11, 2014**, Defendants refused to proceed
with discovery on the purported ground that ZeniMax's "disclosure of trade secrets in the original
complaint and now amended complaint are deficient [sic] and that discovery cannot proceed."
(<u>See</u> App'x Ex. 3 at 67.)  Shortly thereafter, ZeniMax filed its first motion to compel production.
(Dkt. No. 40.)  Defendants later moved to stay all discovery pending resolution of their

belatedly-filed partial motions to dismiss.  (Dkt. No. 55.)

On **January 30, 2015** — shortly after Magistrate Judge Stickney denied Defendants' motion to stay discovery (Dkt. No. 103) — ZeniMax sent Defendants a letter demanding that Defendants produce certain categories of documents promptly, including "all communications between Plaintiffs and Oculus and/or Mr. Luckey."  (See App'x Ex. 4 at 71.)  Yet, Defendants continued to refuse to produce those documents, stating that "we are waiting for the court's ruling on the pending motion regarding the adequacy of your identification of trade secrets as the next gating item for discovery" (albeit further advising that "we are in the process of getting documents that would not be implicated by that motion ready to be produced").  (See App'x Ex. 5 at 75.)

On **February 10, 2015**, ZeniMax sent a letter to Defendants noting that <u>none</u> of the categories of documents specifically requested in ZeniMax's January 30, 2015 letter (*e.g.*, communications between the parties) related <u>only</u> to ZeniMax's trade secrets claim.  (See App'x Ex. 6 at 78.)  ZeniMax therefore demanded that documents in those categories be produced regardless of Defendants' position on trade secrets, and again asked when Defendants expected to produce such documents.  (See <u>id.</u> at 78-79.)  Defendants made no production in response.

On **February 26, 2015**, after filing its Further Identification of Misappropriated Trade Secrets (Dkt. No. 120), ZeniMax sent a letter demanding that Defendants "confirm that [they] will fulfill their discovery obligations and produce documents responsive to Plaintiffs' requests forthwith."  (See App'x Ex. 7 at 81.)  Defendants acknowledged that they were indeed subject to discovery, and on **March 17, 2015** the parties made a filing with the Court memorializing that acknowledgment.  (Dkt. No. 116.)

On **March 26, 2015**, ZeniMax sent a letter again demanding the production of

communications between the parties and seeking confirmation that those documents would be produced by some specific date.  (See App'x Ex. 8 at 83-84, 87.)  On **March 30, 2015**, ZeniMax counsel conferred with Defendants' lead counsel Michael Rhodes on that issue.  Mr. Rhodes stated that he would ask his associate, Matthew Caplan, to call ZeniMax later that week to provide details about what documents Defendants intended to produce and when.  (See App'x Ex. 9 at 91.)

Thereafter, having heard nothing from Defendants' counsel, on **April 1, 2015**, ZeniMax sent a final email to Mr. Rhodes again demanding dates certain for the production of "communications between Plaintiffs and Oculus and/or Mr. Luckey."  (See App'x Ex. 9 at 91.) On **April 3, 2015**, counsel for Defendants, Mr. Caplan, responded to ZeniMax's April 1, 2015 email, stating that "we cannot give you a firm date by which our production will be complete." (See App'x Ex. 10 at 94.)

The Court should not tolerate further obstruction from Defendants.  Defendants are well-financed, represented by seasoned counsel, and surely gathered these core documents for purposes of their own analysis many months ago at the outset of this case.   Moreover, Defendants have been given ample time to conduct any conceivable search or review.  There simply is no adequate excuse for Defendants' continued, intentional delay.  The Court should direct Defendants to produce the requested documents within seven days.

2.     **Defendants Should Be Ordered To Produce All Documents Containing Or Commenting On Communications With ZeniMax's Former Employees Before Those Employees Became Employees Of Defendant Oculus**

The ZeniMax employee most heavily involved in the transfer of technology alleged in ZeniMax's Complaint was John Carmack, who was Technical Director of Plaintiff id Software before becoming an employee of Oculus in or about September 2013.  Accordingly, the *second* Request in ZeniMax's first request for documents — served on **July 9, 2014** — was a request for

all communications involving Mr. Carmack and documents referencing those communications:

> **REQUEST FOR PRODUCTION NO. 2:**
>
> All Communications involving John Carmack from January 1, 2012 to the present, whether by e-mail, private messaging or forum posts, exchange of media, or file transfer protocol (including by way of example only the Communications referenced in ¶¶ 43, 44, 49, 84, 85, 86, and 89 of the Complaint), and all Documents incorporating or referencing those Communications, including but not limited to e-mail chains forwarding those Communications in whole or in part or commenting on those Communications.

In response to this Request, Oculus and Luckey objected to producing any responsive documents. (App'x Ex. 1 at 3.)  Defendants then made it clear that they would not participate in discovery at all, and motion practice ensued as described above.

On **January 30, 2015** — shortly after Magistrate Judge Stickney denied Defendants' motion to stay discovery (Dkt. No. 103) — ZeniMax sent Defendants a letter requesting that Defendants produce certain categories of documents promptly, including  "all communications involving John Carmack from January 1, 2012 until Mr. Carmack became an employee of Oculus … <u>and</u> all documents referencing those communications, including but not limited to e-mail chains including such communications."  (App'x Ex. 4 at 71.)  The parties thereafter engaged in the back-and-forth described above.  Defendants have made no substantial production of the requested documents and have refused to commit to any date by which they will do so.

Again, enough is enough.  All documents involving ZeniMax's former employee Mr. Carmack are relevant here, and Defendants' relevance objection to this request should be overruled in its entirety.  Indeed, Defendants can have no valid objection on any ground to producing <u>their</u> communications with Mr. Carmack <u>before</u> he became an Oculus employee and was employed by or otherwise affiliated with ZeniMax.  The Court should direct Defendants to produce those communications, and any documents incorporating or referencing those communications, within seven days.

6

In addition to Mr. Carmack, Oculus hired five additional senior employees of ZeniMax who resigned on the same day, on or about February 17, 2014.  (See Am. Compl. ¶ 99.) ZeniMax's Request  No. 1 includes documents concerning or commenting on communications between those ZeniMax employees and Defendants during the time that those employees were affiliated with ZeniMax.  Oculus and Luckey agreed to produce those documents.  (See Point 1 supra.)  The Court should likewise direct Defendants to produce those communications with former ZeniMax employees, and documents incorporating or referencing those communications, within seven days.

**3.     Defendants Should Be Ordered To Produce All Documents Concerning the Non-Disclosure Agreement at Issue In This Litigation**

The technology transfer at issue in this case was governed by a Non-Disclosure Agreement ("NDA") signed by Defendant Luckey, and ZeniMax has asserted claims against Oculus and Luckey for breach of that NDA (and against Facebook for intentionally inducing that breach).  Accordingly, the *third* Request in ZeniMax's first request for documents seeks those documents and communications concerning the NDA, including drafts of the NDA itself:

> **REQUEST FOR PRODUCTION NO. 3:**
>
> Any and all Documents or Communications concerning the Non-Disclosure Agreement referenced in ¶¶ 32-36 of the Complaint, including but not limited to the Non-Disclosure Agreement itself.

(App'x Ex. 1 at 3.)  These documents are further relevant because Defendants Oculus and Luckey have moved to dismiss ZeniMax's breach of contract claim including for the reasons that the NDA is unenforceable due to the failure to define certain contract terms or provide consideration, and because there is no breach of the NDA.  (See Dkt. No. 45 at 7-10.)  Oculus and Luckey agreed to produce those documents.  (App'x Ex. 2 at 28.)  And yet again, Defendants have not fulfilled their promise, failing to even provide a copy of the NDA itself.  Further,

Defendants have refused to commit to any date by which they will produce the documents concerning the NDA.  In a case about a contract, there can be no dispute about the critical importance of documents concerning the contract itself.  Defendants certainly identified these documents long ago for purposes of their own analysis.  The Court should direct Defendants to produce those documents within seven days.

**4.  Defendants Should Be Ordered To Produce All Documents Concerning Any Negotiations Between ZeniMax and Oculus For An Equity Position in Oculus**

Prior to commencing this action, ZeniMax negotiated (unsuccessfully) with Oculus to receive compensation for the technology transferred to Oculus, including in the form of an equity stake in Oculus.  Accordingly, the ***fourth*** Request in ZeniMax's first request for documents was a request for all documents concerning those negotiations:

> **REQUEST FOR PRODUCTION NO. 4:**
>
> Any and all Documents referring to negotiations between the Parties for an equity stake in Oculus, as referenced in ¶¶ 73-91 of the Complaint, including but not limited to any and all Documents concerning each offer and counteroffer, Defendants' impressions and evaluations of each offer, and Oculus's negotiation strategy.

(App'x Ex. 1 at 3.)   Oculus and Luckey agreed to produce those documents.  (App'x Ex. 2 at 28.) Yet again, however, Defendants have not yet fulfilled their obligations and have refused to commit to any date by which they will do so.  Defendants certainly identified these documents long ago for purposes of their own analysis.  The Court should direct Defendants to produce those documents within seven days.

**5.  Defendants Should Be Ordered To Produce Source Code Associated with Each of Defendants' Virtual Reality Products, Including the Oculus Rift**

This action relates in part to computer program code transferred from ZeniMax to Defendants, and indeed ZeniMax has specifically asserted claims against Defendants for copyright infringement relating to ZeniMax's copyrighted source code.  Oculus and Luckey have

<u>never</u> moved to dismiss those claims, and ZeniMax cannot prove those claims without inspecting Defendants' source code.  Moreover, based upon public statements by key Oculus employees, including its Chief Technical Officer John Carmack, it appears that "exact" ZeniMax code is being "reimplemented" in Oculus products.  (Am. Compl. ¶¶ 105-06.)  Accordingly, the *fifth* Request in ZeniMax's first request for documents sought that source code:

> **REQUEST FOR PRODUCTION NO. 5:**
>
> Any and all versions of Source Code, including but not limited to object code, associated with each of Defendants' Products, including but not limited to the Oculus Rift, whether that Source Code is contained in electronic work directories (including, without limitation, the work directories of each of Plaintiffs' Former Employees), shared drives, common directories, or libraries.

(App'x Ex. 1 at 3.)  In response, on August 8, 2014, Oculus and Luckey refused to produce any source code, including on the ground that no protective order had been entered to govern the parties' exchange of source code.  (App'x Ex. 2 at 29.)  Thereafter, the parties engaged in motion practice on that subject (*see* Dkt. Nos. 42, 62, 72, 80) and ultimately negotiated a Protective Order setting forth an elaborate protocol for the exchange of source code, which the Court entered on **February 9, 2015**.  (Dkt. No. 107.)

Following the Court's entry of that Protective Order, ZeniMax has repeatedly requested that Defendants cooperate in the exchange of source code contemplated by that order, including in (i) ZeniMax's letter sent on **February 9, 2015** (see App'x Ex. 11 at 98); (ii) ZeniMax's letter sent on **March 26, 2015** (see App'x Ex. 8 at 84, 86); (iii) a meet-and-confer call between the parties' counsel on **March 30, 2015** (see App'x Ex. 9 at 91); and (iv) ZeniMax's e-mail sent on **April 1, 2015** (see App'x Ex. 9 at 92).  On **April 3, 2015**, counsel for Defendants, Mr. Caplan, refused ZeniMax's request to commence an exchange of source code, stating that "[w]e should be able to have a more definitive answer on when we will be able to exchange source code by next

Friday." (See App'x Ex. 10 at 94.)

In a case that is in significant part about source code, Defendants' repeated refusals to produce source code can only be seen for what it is: obstruction. ZeniMax has long been ready to exchange source code. The Court should therefore direct Defendants to provide dates and locations for the exchange of source code as contemplated by the Court's protective order within two days and produce such source code within seven days.

6.   **Defendants Should Be Ordered To Produce All Documents Concerning Facebook's Acquisition Of Oculus**

In early 2014, Defendant Facebook announced its planned acquisition of Oculus. (Am. Compl. ¶ 103.) Because the acquisition of a technology company such as Oculus involves representations as to the acquired company's ownership of its intellectual property, as well as due diligence documents relating to that subject, the *sixth* Request in ZeniMax's first request for documents sought (i) communications regarding that acquisition, (ii) a set of the transaction documents for that acquisition, and (iii) the contents of the "data room" for that acquisition transaction (*i.e.*, documents that Oculus assembled to facilitate due diligence by Facebook):

> **REQUEST FOR PRODUCTION NO. 6:**
>
>     All Documents relating to or evidencing Communications between Palmer Luckey and/or Oculus and Facebook, including but not limited to any Communications, term sheets, agreements, documents in a "data room," or other deal documents generated by Palmer Luckey, Oculus, or Facebook in reference to the proposed acquisition announced on March 25, 2014 and discussed in ¶ 101 of the Complaint.

(App'x Ex. 1 at 3.) Oculus and Luckey <u>agreed</u> to produce those documents. (App'x Ex. 2 at 30.) Nevertheless, Defendants have failed to substantively produce the requested documents and once again refused to commit to any date by which they will do so. There is no valid excuse for Defendants' continued delay in producing these documents, particularly given that the acquisition documents and data room <u>had likely already been assembled</u> at the time that

Facebook completed its acquisition of Oculus on July 21, 2014.  (*See* Am. Compl. ¶ 14.)  The Court should direct Defendants to produce those documents within seven days.

<u>**CONCLUSION**</u>

ZeniMax has made repeated efforts to resolve these issues in good faith over a period of many months, and has been met with continued and intentional obstruction and delay.  Such obstruction serves only to prejudice Plaintiffs and benefit Defendants, who have had months to review Plaintiffs' productions without providing relevant documents and source code to ZeniMax.  Defendants have already had more than enough time to get their documents and source code in order.  Accordingly, ZeniMax respectfully requests that this Court enter an Order, substantially in the form submitted herewith, directing Defendants to produce the requested documents and source code forthwith.

Dated: April 8, 2015

Respectfully submitted,

*s/ Phillip B. Philbin*
PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
MICHAEL D. KARSON
Texas State Bar No. 24090198
E-mail: michael.karson@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
(admitted *pro hac vice*)
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
(admitted *pro hac vice*)
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
(admitted *pro hac vice*)
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
(admitted *pro hac vice*)
DEVIN A. KOTHARI
E-mail: Devin.Kothari@skadden.com
(admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
    **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

## <u>CERTIFICATE OF CONFERENCE</u>

For months, P. Anthony Sammi, counsel for Plaintiffs, made efforts in good faith to confer with Michael G. Rhodes, counsel for Defendants, regarding the relief requested by this Motion.  Having been repeatedly ignored in its requests for a productive conference regarding the production of substantive documents and source code, Plaintiffs filed this motion.

<u>*s/ P. Anthony Sammi*</u>
P. Anthony Sammi

## CERTIFICATE OF SERVICE

On April 8, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: April 8, 2015                          *s/ Phillip B. Philbin*
                                               Phillip B. Philbin