IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL

Defendants' Response to ZeniMax's Motion expressly concedes that "the categories of documents identified in the Motion are properly subject to production." (Dkt. No. 143 ("Resp."), at 1.) Yet, Defendants pointedly do not — and could not — represent that they have now produced all documents in their possession that fall into those categories, *because they simply have not done so*. Instead, Defendants sent ZeniMax's counsel a letter referencing an additional production of documents approximately ten minutes before they filed their Response with this Court (*see* App'x Ex. 1), and on that basis they purport to represent to the Court that they have already produced (some) "documents responsive to the categories identified in the Motion." (*See* Resp., at 3.)

Defendants' production, even as belatedly supplemented, is plainly incomplete. It is clear that Defendants are intentionally withholding documents from production, perhaps because those documents would undermine contentions that Defendants have advanced in their pending motions to dismiss.

The Court should not abide Defendants' gamesmanship. ZeniMax is entitled to a complete production of the documents and information sought by its Motion, and the Court should direct Defendants to make that production forthwith.

In particular, Defendants' production is incomplete in at least the following respects:

**1.  Defendants Have Failed To Produce Numerous Documents Containing Or Commenting On Communications Between ZeniMax and Oculus and/or Luckey**

In October 2014, in connection with ZeniMax's opposition to Defendants' then-pending motion for a protective order, ZeniMax filed with the Court numerous communications between ZeniMax and Oculus and/or Luckey which demonstrated that technology had been transferred from ZeniMax to Defendants. (*See* Dkt. No. 60-1, Exs. 19-58 (filed Oct. 2, 2014).) ZeniMax is keenly interested not only in confirming that Defendants received those e-mails (which Defendants presumably did), but also in finding out how Defendants commented on and/or used the technology transferred to them from ZeniMax. Yet, so far as Plaintiffs have been able to determine to date, Defendants have produced virtually <u>nothing</u> on that score:

| *ECF 60-1 Ex. No.* | *ZeniMax's Starting Production No.* | *Defendant's Production* |
|---|---|---|
| 19 | P0000077 | No copy found in Defendants' production |
| 20 | P0000075 | No copy found in Defendants' production |
| 21 | P0013012 | No copy found in Defendants' production |
| 22 | P0013003 | No copy found in Defendants' production |
| 24[1] | P0012990 | No copy found in Defendants' production |
| 25 | P0012988 | No copy found in Defendants' production |
| 26 | P0012979 | No copy found in Defendants' production |
| 27 | P0013037 | No copy found in Defendants' production |
| 28 | P0013017 | No copy found in Defendants' production |
| 29 | P0010235 | No copy found in Defendants' production |
| 30 | P0013029 | No copy found in Defendants' production |
| 31 | P0013009 | No copy found in Defendants' production |

---

[1]  Certain Exhibits to Dkt. No. 60-1 (*e.g.*, Ex. 23) highlighted different portions of the same e-mail communication, and accordingly those duplicated e-mails are omitted here.

| *ECF 60-1 Ex. No.* | *ZeniMax's Starting Production No.* | *Defendant's Production* |
|---|---|---|
| 32 | P0000074 | No copy found in Defendants' production |
| 33 | P0013041 | one document at OCULUS00007014 (copy of e-mail reflecting failed attempt to forward) |
| 34 | P0013036 | one copy at OCULUS00033183 (brief reply to e-mail) |
| 37 | P0013001 | No copy found in Defendants' production |
| 38 | P0012993 | No copy found in Defendants' production |
| 39 | P0013021 | No copy found in Defendants' production |
| 40 | P0012985 | No copy found in Defendants' production |
| 44 | P0012998 | No copy found in Defendants' production |
| 45 | P0012991 | No copy found in Defendants' production |
| 49 | P0013005 | No copy found in Defendants' production |
| 50 | P0012984 | No copy found in Defendants' production |
| 54 | P0013043 | No copy found in Defendants' production |
| 55 | P0010191 | No copy found in Defendants' production |
| 56 | P0013033 | No copy found in Defendants' production |
| 58 | P0000457 | No copy found in Defendants' production |

Defendants' failure of production is not a mere accident of production mechanics: among other things, Defendants have produced documents pre-dating and post-dating those e-mails. Yet, Defendants' counsel presumably located those e-mails and other documents commenting on those e-mails many months ago for their own purposes of analysis. Indeed, in a motion just filed by Defendants seeking expanded access to ZeniMax's further identification of trade secrets, Defendants <u>acknowledge</u> their possession of those e-mails. (*See* Dkt. No. 145, at 4 (referring to "emails and files that ZeniMax consistently cites as the source of each of its trade secret claims" as "already in Defendant Oculus' possession for well over a year").)[2] Yet, Defendants appear to be withholding those documents from production while at the same time representing to the Court that they are cooperating with discovery. The Court should not be

---

[2] Discovery in this action began in July 2014, less than a year ago. Defendants are thus referring to Oculus's own copies of these e-mails and not ZeniMax's production in this case.

3

misled. Defendants should be ordered to produce those documents forthwith.

**2.      At The Last Minute, Defendants Failed To Produce Source Code**

Following ZeniMax's filing of its Motion, Defendants agreed, after further discussion, to a reciprocal exchange of source code on April 29, 2015, which was the scheduled due date for Defendants' response to the Motion. That exchange was to be made in person at the offices of the parties' respective counsel in the San Francisco area. At 1:00 a.m. Dallas time on April 28, 2015 — the day before the production was to be made — Defendants' counsel informed ZeniMax that they would not proceed with that production, ostensibly because they had just learned that there was third party code present in Defendants' code. (*See* App'x Ex. 2.)

That explanation is, on its face, incredible. Virtually every complex piece of software incorporates some "third party" program code that permits the software to interact with hardware and other software, including the computer's own operating system software. ZeniMax first requested production of computer program source code in this case on July 9, 2014, over nine months ago. (*See* Dkt. No. 122-1, App'x Ex. 1, at 3.) It is inexplicable that Defendants' seasoned counsel could have overlooked issues relating to third party program code until the early morning of the day before the agreed-upon date for the exchange of code.

Oddly, the metadata for that 1:00 a.m. e-mail message indicate that Defendants' counsel wrote that e-mail message at some time earlier than 1:00 a.m., and caused their e-mail software to <u>delay</u> sending the e-mail until that specified time.[3] (*See* App'x Ex. 3 ("header" metadata for e-mail message, with the "Deferred-Delivery" header shown highlighted); *compare* App'x Ex. 4 ("header" metadata for earlier e-mail message from that same individual, without any such

---

[3]   For example, the "Delay Delivery" option in Microsoft Outlook provides that functionality.

header).) It is unclear what if any legitimate reason Defendants' counsel could have had to cause this e-mail message to be sent in the middle of the night, rather than (for example) at the point when they first became aware of the issue.

In any event, Defendants now state that they have produced the released versions of Oculus's Software Development Kit. Defendants acknowledge that production is a fraction of the "full production" that is required (*see* Resp., at 4), and indeed Defendants could have made that limited production months ago. Defendants purport to fault ZeniMax for not having downloaded that code from Oculus's public web site (*see* Resp., at 4 n.5), but they fail to inform the Court that downloads of that code are subject to a license set forth on Oculus's web site, which includes waivers of liability. (*See* App'x Ex. 5.) ZeniMax is entitled to obtain discovery of that code without agreeing to those terms, and ZeniMax explained that to Defendants. (Defendants also fail to inform the Court of the explanation that they received from ZeniMax.)

Defendants' delay and gamesmanship are intolerable. The Court should order Defendants to produce their virtual reality source code forthwith so that both parties can begin substantive, technical analysis of source code without further delay.

**3. Defendants Have Failed To Produce A Complete Set Of Documents Concerning Facebook's Acquisition Of Oculus**

As ZeniMax pointed out in its Motion, the set of the transaction documents for Facebook's acquisition of Oculus and the contents of the "data room" for that acquisition transaction had likely already been assembled at the time that Facebook completed its acquisition of Oculus on July 21, 2014. (*See* Am. Compl. ¶ 14.) Defendants' Response does not suggest otherwise. Yet, that complete set of documents — which has been available to Defendants for nine months now, and which Defendants acknowledge must be produced — does not appear to have been produced, even in Defendants' most recent production. Certainly, Defendants do not

5

represent to the Court that those documents have been substantially produced. Instead, Defendants stop far short of such a representation, admitting only that "documents" responsive to each category have been produced. (*See* Resp., at 3 ("… Defendants have already produced documents responsive to the categories …").)

Why has the complete set of documents not been produced? Because Defendants have chosen not to produce them, and for no other reason. The Court should order that they be produced forthwith.

**4.   Defendants' Production Is Otherwise Deficient**

ZeniMax's review of Defendants' production is ongoing, but based on ZeniMax's review to date, Defendants' production appears to be deficient in respect of the other categories of documents addressed in ZeniMax's Motion. Significantly, Defendants do not and could not represent that their productions are complete as to those categories. In particular:

(a) Defendants appear not to have produced documents discussing their decision to recruit and hire ZeniMax personnel other than John Carmack who subsequently became employed by Defendants. Those documents should be produced forthwith.

(b) Defendants appear to have produced only a handful of documents concerning the Non-Disclosure Agreement at issue in this case — *i.e.*, the Agreement itself, and the e-mails exchanging the Agreement at the time that it was executed. It is extremely unlikely that that Agreement was *never* referenced again, by *anyone* associated with Defendants, in *any* privileged or non-privileged document. Defendants' counsel has likely assembled the documents concerning that Agreement for their own analysis. Those documents should be produced or disclosed on a privilege log forthwith.

(c) Defendants do not appear to have produced any substantial quantity of documents concerning ZeniMax's negotiations with Oculus and Luckey for an equity position in Oculus. Those documents should also be produced forthwith.

\* \* \*

Accordingly, ZeniMax respectfully requests that this Court enter an Order substantially in the form submitted with its Motion requiring Defendants to complete production of the documents and source code sought by the Motion.

Dated: May 8, 2015

Respectfully submitted,

*s/ Phillip B. Philbin*
PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
MICHAEL D. KARSON
Texas State Bar No. 24090198
E-mail: michael.karson@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

P. ANTHONY SAMMI
(admitted *pro hac vice*)
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
(admitted *pro hac vice*)
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
(admitted *pro hac vice*)
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
(admitted *pro hac vice*)
E-mail: Kristen.Voorhees@skadden.com
DEVIN A. KOTHARI
(admitted *pro hac vice*)
E-mail: Devin.Kothari@skadden.com
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

## **CERTIFICATE OF SERVICE**

      On May 8, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: May 8, 2015                                            *s/ Phillip B. Philbin*
                                                                               Phillip B. Philbin