IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC,<br>PALMER LUCKEY,<br>and FACEBOOK, INC.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-P** |

**PLAINTIFFS' MOTION FOR PAYMENT OF
EXPENSES AND FOR OTHER RELIEF, AND BRIEF IN SUPPORT**

Phillip B. Philbin
Michael D. Karson
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

P. Anthony Sammi
Kurt Wm. Hemr
James Y. Pak
Kristen Voorhees
Devin A. Kothari
**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

Dated: May 19, 2015
        Dallas, Texas

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

PERTINENT FACTS ...........................................................................................................1

ARGUMENT .......................................................................................................................5

1.  Defendants Have Had Over Ten Months to Prepare to Produce All Responsive Source Code and Yet Have Failed to Do So .........................................................5

2.  Defendants Knowingly Failed To Mitigate Harm to ZeniMax ...........................6

3.  ZeniMax Has Been Severely Prejudiced By Defendants' Endless Delay And Financially Harmed By Defendants' Last-Minute Withdrawal ..............................8

    *(a)*  *ZeniMax Is Financially Harmed by Defendants' Misconduct at Least In the Amount of ZeniMax's Expert's Fees and Expenses* ............................8

    *(b)*  *ZeniMax Has Been Severely Prejudiced By the Time Lost Waiting and Money Spent Asking for Defendants to Prepare Their Code* ..................9

4.  Payment of Expenses Is An Appropriate and Narrow Remedy to Discourage Future Discovery Abuse ......................................................................................10

CONCLUSION ..................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

*Dorsey v. Academy Moving & Storage, Inc.*,
 423 F.2d 858 (5th Cir. 1970) ................................................................................5

*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*,
 2 F.3d 1397 (5th Cir. 1993) ................................................................................5

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
 685 F.3d 486 (5th Cir. 2012) ................................................................................5

### STATUTES AND REGULATIONS

Fed. R. Civ. P. 37(b)(2)(A)(ii) ................................................................................5

Fed. R. Civ. P. 37(b)(2)(C) ................................................................................5

## PRELIMINARY STATEMENT

More than ten months ago, on July 9, 2014, Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") asked Defendants to produce relevant source code. Since that time, Defendants have repeatedly delayed source code production.  Indeed, it was only after repeated letter exchanges and motion practice before this Court that Defendants acquiesced to even an initial exchange of source code by counsel on April 29, 2015.  Defendants' promise to produce code on that long-overdue date, however, proved false.

In the early morning the day before the exchange was to take place, Defendants sent an e-mail that abruptly declared they were not ready to produce code and would not be ready for an additional month.  As a result of Defendants' last-minute refusal to proceed, ZeniMax incurred needless costs associated with preparing for the exchange, including paying for a technical expert to fly across the country to be available to assist with the exchange.  ZeniMax also lost an additional month in which to analyze Defendants' code, conduct fact depositions, and prepare expert reports.  Defendants have refused to fully compensate ZeniMax for that expense and refuse to provide a date by which they will produce all relevant source code.

Accordingly, ZeniMax hereby moves for payment of expenses and other relief to compensate ZeniMax for the wasted time and resources caused by Defendants' misconduct and ensure that Defendants do not continue to delay production of relevant code that should have been produced months ago.

## PERTINENT FACTS

1.      On May 21, 2014, ZeniMax filed a complaint alleging, among other claims, misappropriation of source code-based trade secrets and infringement of copyrights in computer source code.  (Dkt. No. 1, at ¶¶ 118-127.)

1

2.       On July 9, 2014, ZeniMax propounded discovery requests on Defendants Oculus and Luckey, including multiple requests for production concerning source code and associated documents.  (*See, e.g.*, App'x Ex. 1, at 3.)

3.       On September 12, 2014, having received no source code or other productions from Defendants, ZeniMax filed a motion to compel discovery and specifically requested production of source code.  (Dkt. No. 40, at 10.)

4.       On September 24, 2014, Defendants filed a motion to stay discovery.  (Dkt. No. 55.)  That motion was denied.  (Dkt. No. 103, at 1.)

5.       On February 5, 2015, the parties submitted a protective order defining the protocol for the secure exchange of source code.  (Dkt. No. 106.)

6.       On February 9, 2015, ZeniMax sent a letter requesting Defendants to "please prepare the media upon which [Defendants] will produce the source code and [ZeniMax] will coordinate timing of in-person delivery to stand-alone computer locations."  (App'x Ex. 2, at 19.)

7.       On March 26, 2015, ZeniMax sent a letter demanding Defendants produce responsive source code.  (App'x Ex. 3, at 22, 24, and 27.)

8.       On April 1, 2015, ZeniMax asked Defendants again for a date to exchange source code.  (App'x Ex. 4, at 30.)

9.       On April 3, 2015, nine months after ZeniMax first requested source code, Defendants stated they "are working with our clients to ensure that their source code repositories will be able to be exchanged without significant technical difficulties" and stated they "should be able to have a more definitive answer on when we will be able to exchange source code by next Friday" (i.e., two weeks later).  (App'x Ex. 5, at 32.)

10.      On April 8, 2015, ZeniMax filed its <u>second</u> motion to compel against Defendants,

again including a specific request for the production of source code.  (*See* Dkt. No. 121, at 10.)

11.     On April 13, 2015, ZeniMax provided specific dates and times for Defendants to produce code, starting on April 15, 2015.  (*See* App'x Ex. 6, at 36.)  Later that day, counsel for Defendants stated that one of the proposed dates "will not work for our team to produce source code," but did not propose an alternative date.  (*See* App'x Ex. 7, at 38.)

12.     On April 16, 2015, in an effort to accommodate Defendants' schedule, ZeniMax proposed exchanging a subset of each party's responsive source code – the "version control databases" – on April 29, 2015 at counsels' offices in Palo Alto, California.  (*See* App'x Ex. 8, at 43.)

13.     On April 17, 2015, Defendants confirmed the April 29, 2015 date for the first exchange of source code.  (*See* App'x Ex. 9, at 45.)

14.     On April 20, 2015, ZeniMax sent an e-mail asking Defendants to confirm that the source code exchange would occur on April 29, 2015, starting at 9:00 a.m. (App'x Ex. 10, at 49.)

15.     On April 23, 2015, the week before the anticipated exchange, ZeniMax sent an e-mail stating that ZeniMax "expect[s] the parties' reciprocal production of source code to proceed next Wednesday as previously agreed" and urged Defendants to avoid "any further delay in the production of source code."  (*See* App'x Ex. 11, at 54.)  Later that same day, ZeniMax informed Defendants in a follow-on e-mail that "[t]he persons who will be appearing at Cooley on Wednesday to produce code . . . will be [ZeniMax's counsel] James Pak" and ZeniMax's previously disclosed expert "Martin Kemp (Elysium)."   (*See* App'x Ex. 12, at 62.)

16.     Between April 17 and April 23, 2015, counsel for Defendants further held multiple calls with ZeniMax about the logistics of source code exchange.  On these calls, Defendants sought technical details from ZeniMax (*e.g.*, size of code to be exchanged), and

requested further security precautions at the locations of source code exchange.  (*See, e.g.*, App'x Ex. 11, at 54-56.)

17.     On April 27, 2015, at or around 4:51 p.m. Dallas time, Plaintiffs' technical expert departed from Boston to California.  (App'x Ex. 13, at 72.)

18.     On April 28, 2015, at 1:00 a.m. Dallas time — the day before the parties planned to exchange code, and eight hours after ZeniMax's expert left Boston — Defendants informed ZeniMax that they would not proceed with the exchange.  (*See* App'x Ex. 14, at 82.) Specifically, counsel for Defendants asserted that in the process of "finalizing the source code repositories for production" they found "various pieces of third party code" that would prohibit Defendants from producing code as planned.  (*Id.*)  Defendants stated they "anticipate being able to make a full production no later than May 22," but provided no commitment to do so.  (*Id.*)

19.     Inspection of the metadata of the "1:00 a.m." e-mail revealed that Defendants' counsel had written that e-mail at some earlier time but had used its e-mail software to delay sending the e-mail to ZeniMax until 1:00 a.m. Dallas time.  (*See* App'x Ex. 15, at 93 (e-mail header for the "1:00 a.m." e-mail with highlighting to show the deferred delivery time).)

20.     On May 11, 2015, ZeniMax sent a letter to Defendants stating that "Defendants' last-minute decision to back out of . . . [the] source code exchange resulted in the waste of significant time and expense," and stated that ZeniMax "will seek $4,981.81 in costs incurred by ZeniMax as a result of the expert's unnecessary travel and time charges." (App'x Ex. 16, at 96.)

21.     On May 12, 2015, counsel for Defendants stated that they would be "willing to reimburse reasonable airfare incurred for [ZeniMax's] technical expert's travel" but they "don't believe that time is reimbursable" because the "expert could have been working on any of a number of things for [ZeniMax's] case (or any other case)."  (*See* App'x Ex. 17, at 99.)

## ARGUMENT

ZeniMax's efforts to obtain source code have been deliberately and repeatedly frustrated by Defendants.  As demonstrated throughout this litigation, Defendants' promises and assurances of cooperation have proved unreliable and borderline deceptive.  Their approach to this litigation is the opposite of diligent cooperation and reasonable best efforts expected of parties acting in good faith, and sanctions should be imposed.

Discovery sanctions under Federal Rule of Civil Procedure 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence."  *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970).  While "[t]he Federal Rules do not explicitly provide an avenue to sanction attorneys who fail to comply with discovery orders . . . . there is no doubt" that a Court may exercise its inherent powers to sanction discovery abuses and to discipline attorneys who engage in obstructive behavior.  *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993).  Rule 37 authorizes a variety of sanctions for the failure to participate in discovery, including prohibiting the disobedient party from supporting its defenses through the exclusion of evidence.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). In addition, the Rule permits a court to impose a sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order.  *Id.* at (b)(2)(C); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

1.     **Defendants Have Had Over Ten Months to Prepare to Produce All Responsive Source Code and Yet Have Failed to Do So**

Defendants' failure to prepare their code well in advance of the planned exchange date is inexcusable.  The fact that source code would be at issue in this litigation has been apparent from the outset of the case.  (*See* Compl. (Dkt. No. 1), at ¶¶ 118-127.)  The very first discovery

requests served by ZeniMax in this litigation last summer asked Defendants to produce relevant source code.  (*See* App'x Ex. 1, at 3.)  ZeniMax filed two motions demanding production of source code, one in September of last year and one in April of this year.  (*See* Dkt. No. 40, at 10; Dkt. No. 121, at 8.)  ZeniMax repeatedly sent letters to Defendants asking for production of source code.  (*See supra* at ¶¶ 6-8.)  Defendants recently represented to this Court that they agree source code should be produced.  (Dkt. No. 143, at 1.)  And yet, after all that, Defendants found themselves at the last minute unprepared to produce code because they purportedly found third-party code less than two days before the planned exchange.  Moreover, Defendants announced that they would need nearly an entire additional month to review their code before they could be in a position to exchange the code as originally planned.  (*See* App'x Ex. 14, at 82.)

Defendants had over ten months to review their code for third party information. Complex software often contains embedded third party code, and thus reviewing for such code is one of the first checks that counsel would likely have performed in preparing to produce.  It is inexplicable that Defendants' seasoned counsel would have overlooked the presence of third party program code until two days before the agreed-upon date for the exchange of code.[1]

Given the extensive period of time Defendants had to prepare source code and ZeniMax's many efforts to precipitate that production, the explanation Defendants have put forward for their delay is utterly deficient.

**2.     Defendants Knowingly Failed To Mitigate Harm to ZeniMax**

Defendants could have avoided the last-minute cancellation by not waiting months into discovery before starting to prepare their code for production.  Defendants could also have

---

[1]   Moreover, Defendants offered no explanation for needing a full additional month to look for third-party code.  Indeed, Defendants indicated that the third-party code would trigger only a ten business-day notice period, yet stated they would not be ready to exchange any confidential source code for nearly twice that period of time.  (*See* App'x Ex. 18, at 101.)

avoided the last-minute cancellation by checking for third-party code three months ago, when ZeniMax sent a reminder letter asking for code, or two months ago when ZeniMax demanded a meet and confer to discuss production of code, or one month ago when ZeniMax provided dates and times to exchange code.   (*See supra* at ¶¶ 6, 7, 11.)  Defendants could also have avoided the last-minute cancellation by informing ZeniMax the week before the exchange that Defendants had not yet finished reviewing their code for third-party materials.

Instead, Defendants waited until the early morning hours of the day before the scheduled source code exchange to inform ZeniMax that Defendants would not produce code as planned. (App'x Ex. 14, at 82.)  Not only did Defendants fail to review their code well in advance of the exchange date, but Defendants delayed informing ZeniMax *immediately* that the exchange would not proceed.  In fact, Defendants state that they notified ZeniMax "[w]ithin hours of *learning that there was no feasible way to produce the source code*."  (*See* App'x Ex. 18, at 101 (emphasis added).)  Defendants do not state how much valuable time elapsed between when Defendants first discovered the third-party code and when they decided "there was no feasible way to produce the source code."   Even then, by their own admission, they waited *hours* to inform ZeniMax — during which time ZeniMax might have instructed its expert not to board a plane and fly across the country.  Defendants knew that ZeniMax planned to send an expert from Boston to Palo Alto for the exchange, and yet failed to take immediate action to inform ZeniMax that the exchange would not proceed.

More egregiously, Defendants appear to have intentionally delayed delivery of the cancellation until 1:00 a.m. Dallas time the day before the exchange.  The metadata for that e-mail message indicates that Defendants' counsel wrote that e-mail at some time earlier than 1:00 a.m., and caused their e-mail software to *delay* sending the e-mail until that specified time.  (*See*

App'x Ex. 15, at 93.)  Defendants have admitted that they intentionally deferred delivery of the e-mail until the middle of the night.  (*See* Dkt. No. 149-2, at 4, ¶ 18.)  Defendants further admit they drafted the message, sought and received approval to send that message, and yet set the message for delayed delivery.  (*See id.*, at 4, ¶¶ 17-18.)  Bizarrely, Defendants have characterized the deferred delivery as a contrivance to make sure that the e-mail was sent "no matter what" (*See id.*, at 4, ¶ 18) — an aim that would have been directly accomplished by sending the e-mail without arranging at all for deferred delivery.

Notwithstanding Defendants' admission that source code should be produced, Defendants put themselves in a position where they were not ready to produce code on time and then kept ZeniMax in the dark about their delinquency until the eleventh hour.

### 3. ZeniMax Has Been Severely Prejudiced By Defendants' Endless Delay And Financially Harmed By Defendants' Last-Minute Withdrawal

#### (a) *ZeniMax Is Financially Harmed by Defendants' Misconduct at Least In the Amount of ZeniMax's Expert's Fees and Expenses*

ZeniMax is obligated to compensate the technical expert for his time and expenses spent travelling to California for the exchange that never happened due to Defendants failure to adequately prepare and to immediately notify ZeniMax of that fact.  ZeniMax informed Defendants that a consultant from Boston would be present for the exchange in Palo Alto, California.  (App'x Ex. 12, at 62.)  Due to the travel distance, the consultant necessarily had to travel to Palo Alto at least a day before the exchange.  Defendants thus knew or had reason to know that ZeniMax would be incurring the cost of arranging for an expert to travel to and attend the proposed exchange.  Nonetheless, Defendants refuse to fully compensate ZeniMax for even the limited expense of the experts' travel time and expenses.  (*See* App'x Ex. 17, at 99.)

After Defendants announced that they would not produce code as planned, ZeniMax informed Defendants that ZeniMax incurred costs in the amount of $4,981.81 as a result of the

expert's unnecessary travel and time charges. (App'x Ex. 16, at 1.) That amount covers only *five* hours of the expert's roundtrip travel time coast-to-coast, and his related travel expenses. (*See* App'x Ex. 13, at 72-80 and Ex. 19, at 104-105 (invoices and receipts expert's travel time and related travel expenses).) Remarkably, Defendants stated they would reimburse for "reasonable" airfare, but nothing further. (*See* App'x Ex. 17, at 99.) Defendants are offering therefore to only pay a fraction of the cost of their misconduct.

      (b)    *ZeniMax Has Been Severely Prejudiced By the Time Lost Waiting and Money Spent Asking for Defendants to Prepare Their Code*

      Throughout this litigation, ZeniMax has had to expend considerable time and money to spur Defendants into complying with Defendants' discovery obligations. Due to Defendants' refusal to exchange critical evidence, ZeniMax has been forced to send numerous letters to Defendants asking them for assurance that they will produce responsive documents and for a commitment to substantially produce critical evidence within a reasonable time frame. (*See, e.g., supra* ¶¶ 6-8.) Defendants have repeatedly and consistently refused to do so, forcing ZeniMax to ask for relief from this Court on multiple occasions. Defendants' failure to timely prepare their code for production is yet another instance in which Defendants have demonstrated a callous indifference to the resources expended by ZeniMax in trying to move this case forward and the burden that indifference places on the Court.

      As Defendants are undoubtedly aware, each day of additional delay deprives ZeniMax of time needed to thoroughly and accurately analyze Defendants' source code. Defendants have indicated that they have at least hundreds of gigabytes of responsive source code to produce. (*See* App'x Ex. 20, at 107.) If Defendants eventually produce that evidence, ZeniMax will likely need considerable time to thoroughly review and analyze the code. By preventing access to that code until the last possible moment, Defendants ensure that ZeniMax will not have sufficient

time to analyze the code before depositions begin.  Thus, Defendants' failure to produce code causes greater harm than simply the attorney and consultant resources expended leading up to the exchange: this individual act of misconduct compresses the time left in discovery for ZeniMax to take discovery, analyze facts, and build its case.

ZeniMax will also be further prejudiced if Defendants do not produce the full set of responsive source code within the next month.  Under the current case schedule, expert reports must be served by October 1, which leaves only four full months to complete all fact discovery, technical analysis, depositions, and expert reports.  (*See* Dkt. No. 134.)  At this point, Defendants have committed only to producing a fraction of its responsive source code on May 22 and have ignored ZeniMax's request for assurance that all responsive code will be ready for production by June 1, 2015.  (*See* App'x Ex. 17, at 99.)  If Defendants delay production of code another month, that delay will further jeopardize ZeniMax's ability to prepare for depositions and expert reports.

**4.    Payment of Expenses Is An Appropriate and Narrow Remedy to Discourage Future Discovery Abuse**

Sanctions pursuant to Rule 37 can be used to deter future abuses of discovery.  Three months ago, Magistrate Judge Stickney ordered discovery to proceed and denied Defendants' motion for a protective order.  (Dkt. No. 103.)  At this point, Defendants have revealed no other basis for their refusal to produce code except their own negligence in failing to prepare the code for timely production.  Defendants' failure to produce code is not an isolated incident, but rather another instance in which Defendants have demonstrated a callous indifference to the prejudice and wasted resources caused to ZeniMax and this Court by delaying resolution of this dispute. Indeed, prior to the failed exchange, ZeniMax filed a motion to compel addressing Defendants' other failures to engage in meaningful discovery.  (Dkt. No. 121.)  Notwithstanding that pending motion, Defendants continue to promise discovery that never comes.

ZeniMax therefore requests narrow relief designed to compensate ZeniMax for direct harm suffered and prevent further prejudice to ZeniMax.  First, ZeniMax asks for the modest monetary sanction in the amount of only the *expert's* fees and expenses – not the *attorneys'* fees, disbursements, and other resources spent preparing for and coordinating the exchange that never happened.  Second, ZeniMax asks for an order directing Defendants to produce all relevant code by June 1, 2015 so that ZeniMax is not further prejudiced by waiting yet another month (or more) to receive code relevant to the core issues in this case.  These are not extraordinary requests, but rather reflect the common sense principle that one party should not bear the cost of another party's deliberate misconduct.  They should be granted.

## CONCLUSION

Accordingly, ZeniMax respectfully requests that this Court enter an Order, substantially in the form submitted herewith, directing Defendants to (i) pay ZeniMax for the full expense incurred by ZeniMax's expert in the amount of $4,981.81; and (ii) directing Defendants to substantially produce all responsive source code by June 1, 2015, and submit by June 15, 2015 a certification of counsel that all responsive source code has been produced by that date.

11

Dated: May 19, 2015

Respectfully submitted,

*s/ Phillip B. Philbin*

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
DEVIN A. KOTHARI
E-mail: Devin.Kothari@skadden.com
(the foregoing attorneys admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
   **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
MICHAEL D. KARSON
Texas State Bar No. 24090198
E-mail: michael.karson@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

## <u>CERTIFICATE OF CONFERENCE</u>

On April 28, 2015 and May 11, 2015, counsel for Plaintiffs made efforts in good faith to confer with Michael G. Rhodes counsel for Defendants, regarding the relief requested by this Motion.  Defendants agreed to cover only "reasonable" airfare incurred by Plaintiffs' expert and ignored Plaintiffs' request for a certification that Defendants will produce all responsive source code by June 1, 2015.

Dated: May 19, 2015                              *s/ P. Anthony Sammi*
                                                 P. Anthony Sammi

13

## CERTIFICATE OF SERVICE

On May 19, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: May 19, 2015                     *s/ Phillip B. Philbin*
                                        Phillip B. Philbin