**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>OCULUS VR, LLC, PALMER LUCKEY AND FACEBOOK, INC.,<br><br>        Defendants. | Civil Case No.: 3:14-cv-01849-P |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO PERMIT ADDITIONAL PERSONS TO ACCESS PROTECTED MATERIALS**

TO THE HONORABLE COURT:

As explained in Defendants' opening brief, Plaintiffs' decision to designate its Trade Secret Identification (ECF No. 113-1) as "Highly Confidential – For Outside Counsel Only" unjustifiably impedes Defendants, their fact witnesses, and their in-house counsel from knowing what Plaintiffs' claims are and assisting in the evaluation and defense of the case. In response to the motion, Plaintiffs offer four reasons why they oppose Defendants' request to allow expanded access to the Plaintiffs' descriptions of the trade secret allegations in this case. None of those provides a valid reason to prevent the people who are alleged to have been involved in misappropriation from knowing precisely what those allegations are, nor do they explain why in-house counsel cannot know with specificity and certainty what is at issue in this case.

Defendants have asked the Court to permit two groups of people to have access to the information contained in Plaintiffs' Trade Secret identification: the seven current and former employees of Oculus (including named Defendant Palmer Luckey) who ZeniMax alleges were

involved in the misappropriation of its claimed trade secrets, and the in-house counsel for Defendants who are responsible for overseeing the defense of this case. Importantly, however, ZeniMax makes no attempt whatsoever in its response to show that it will suffer any harm if those two groups of people are permitted to receive the Trade Secret Identification. This is no small matter to Defendants and their witnesses. It is one thing to point a potential deposition witness to an email discussing the use of an HDMI cable and inform the witness that ZeniMax alleges a trade secret is contained somewhere within that email. *See* Trade Secret Identification at 107 (ECF No. 113-1). It is another thing entirely for the witness to have access to ZeniMax's own description of how that HDMI cable supposedly functions as a trade secret, how its use is supposed to differ from the billions of other HDMI cables in the public domain, and how the witness is alleged to have misappropriated an HDMI cable trade secret. *Id.* at 107-11. Likewise, Defendants' in-house attorneys can be told that an email discussing the location of an IMU sensor has some sort of ZeniMax trade secret in it, but they cannot evaluate that claim or coordinate its defense without knowing what ZeniMax says the trade secret is and why ZeniMax claims the sensor location is not something that would be readily apparent to any observer. *Id.* at 25-28. Yet ZeniMax makes no attempt to claim that any harm would result if those additional persons were given access to ZeniMax's full account of its trade secret allegations.

Instead of attempting to establish that there is some risk of harm if access is expanded to include these persons, ZeniMax essentially takes the position that its use of the "Highly Confidential" designation will not unduly burden the Defendants. That is the opposite of how the Protective Order is supposed to work, since the party making the confidentiality designation is required to prove that the material should remain confidential. *See* Protective Order § 5 (ECF No. 107) (providing that on a motion challenging designations, "the Party asserting

2

confidentiality shall have the burden of proving that the material in question warrants protection under this Protective Order"). However, ZeniMax's no-harm claims also fail on their own merits.

*First*, ZeniMax claims that because Defendants' motion for additional information about the alleged trade secrets (which the Court subsequently granted) was pending when the parties were negotiating the Protective Order, Defendants should have sought expanded access as part of the Protective Order. But ZeniMax offers no explanation for why Defendants should have predicted that ZeniMax would eventually designate its Trade Secret Identification as "Highly Confidential." Nor does ZeniMax explain why the possibility of obtaining a different protective order would negate Defendants' need for expanded access under the actual Protective Order, which expressly authorizes the parties to come to Court to seek expanded access to materials produced under the Protective Order. *See* Protective Order § 13(b) (ECF No. 107). Defendants are not asking the Court to change anything these parties previously agreed to in the Protective Order, because the Court's authority to grant expanded access to confidential materials is already something the parties agreed to as part of that order.

*Second*, ZeniMax argues that because the witnesses and in-house counsel already have the ability to access documents identified within the Trade Secret Identification, they have no need to access ZeniMax's lengthy written description of what those trade secrets are. But case law establishes that it is not enough for a plaintiff to simply point to documents or materials and claim that a trade secret is somehow reflected in them. *See, e.g.*, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (holding that the document identified by the plaintiff as its trade secret "does not separate the trade secrets from the other information that goes into any software package" because the plaintiff failed to identify "[w]hich aspects are known to the trade

3

and which are not"); *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (finding that "[t]o the extent that Xerox has not specified which information contained in, referred to by, or incorporated by reference in the documents listed by Xerox are considered by Xerox to be trade secrets or confidential information, the court believes that Xerox has failed" to identify its trade secrets with reasonable specificity). The reason courts refuse to allow a trade secret plaintiff to simply point at documents is that, in doing so, the plaintiff "require[s] the defendants to guess what the trade secrets [are]: were they comprised of the many elements mentioned in the . . . documents, or only some?" *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 2156665, at *8-12 (N.D. Ill. 2007).[1] By denying access to the Trade Secret Identification, ZeniMax is forcing Defendants and their witnesses to guess where the trade secrets are within the referenced documents. Courts do not permit that approach to trade secret identification. And, in any event, Plaintiffs acknowledge that Defendants may review the substance of the alleged trade secrets via documents in their own possession. (Opposition at 2.) Plaintiffs' counsel's explanation in the Trade Secret Identification of how that information allegedly functions as a trade secret is not a further disclosure of sensitive information and does not warrant a "Highly Confidential" designation.

***Third***, ZeniMax argues that the Protective Order "strikes a balance between protection of the parties' confidential information and the necessities of litigation." *See* Response at 3 (ECF No. 161). But ZeniMax makes no attempt to prove that protection of *this* information outweighs the necessity of its use by Defendants' witnesses and in-house counsel to evaluate the trade

---

[1] *See also Dow Corning Corp. v. Jie Xiao*, 2011 WL 6739403, at *7 (E.D. Mich. 2011) (requiring the plaintiff to identify the trade secret contained in the "photographs" the plaintiff's previously identified as its trade secrets because "disclosure must be sufficient to put Defendants on actual notice of what the particular proprietary information is"); *Synygy, Inc. v. ZS Assoc., Inc.*, 2013 WL 3716518, at *5 (E.D. Penn. 2013) (granting motion to compel more specific trade secret identification where the plaintiff identified documents and reports as its trade secrets).

secret claims and prepare their defenses. Moreover, the Protective Order *already* provides ample protection against the possibility that any of the people covered by Defendants' request for expanded access will improperly disclose the contents of the Trade Secret Identification. That is because each such person will be required to execute the Undertaking that is attached as Exhibit A to the Protective Order before they can access the Trade Secret Identification. *See* Protective Order § 13(b) (ECF No. 107). That Undertaking binds them to the Protective Order, prohibits them from making any unauthorized disclosure of protected material, and renders them subject to the Court's sanctions authority. ZeniMax offers no explanation why that Undertaking would be an inadequate protection against improper disclosure.

*Fourth*, ZeniMax raises the specter of the Trade Secret Identification possibly being disclosed to "approximately 100 in-house counsel" at Facebook. That is not Defendants' actual intent, as ZeniMax essentially acknowledges. Defendants only seek to expand access to the Trade Secret Identification for "the in-house attorneys charged with evaluating the case and making decisions on behalf of the Defendants" (Motion at 1) – i.e., Defendants' in-house counsel who are managing this litigation. As such, Defendants would have no objection if the Court were to limit disclosure to those in-house counsel "to whom disclosure is reasonably necessary for this Litigation." Thus, ZeniMax's final complaint should not stand in the way of the Court ruling in favor of expanded (but far from unlimited) access to ZeniMax's description of its trade secret claims, especially because this narrow group already has access to Defendants' copies of the underlying documents cited in Plaintiffs' Trade Secret Identification.

## CONCLUSION

A protective order should serve as a shield, not a sword. By designating its Trade Secret Identification as "Highly Confidential," ZeniMax has improperly prevented the key players in the underlying facts from knowing what they stand accused of misappropriating and how they

allegedly did it. Likewise, ZeniMax's designation prevents in-house counsel for Oculus and Facebook from learning understanding exactly what this case is about and advising their clients accordingly. Because ZeniMax's designation improperly impedes Defendants' ability to prepare and present their defense to ZeniMax's claims, the Court should enter an order permitting Defendant Palmer Luckey; Oculus VR employees John Carmack, Nirav Patel, Brendan Iribe, Nate Mitchell, and Michael Antonov; and former Oculus employee Jack McCauley to access Plaintiffs' Further Identification of Misappropriated Trade Secrets (ECF No. 113-1). Defendants further request that the Court also grant access to the Trade Secret Identification for Defendants' in-house counsel, as specified in this Reply. Defendants also request all alternative or additional relief to which the court may conclude they are justly entitled.

Date: June 10, 2015　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Heidi L. Keefe*

　　　　　　　　　　　　　　　　　　　Richard A. Smith
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24027990
　　　　　　　　　　　　　　　　　　　rsmith@lynnllp.com
　　　　　　　　　　　　　　　　　　　Elizabeth Y. Ryan
　　　　　　　　　　　　　　　　　　　Texas Bar No. 24067758
　　　　　　　　　　　　　　　　　　　eryan@lynnllp.com
　　　　　　　　　　　　　　　　　　　**LYNN TILLOTSON PINKER & COX LLP**
　　　　　　　　　　　　　　　　　　　2100 Ross Avenue, Suite 2700
　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　Phone: (214) 981-3800
　　　　　　　　　　　　　　　　　　　Fax: (214) 981-3839

　　　　　　　　　　　　　　　　　　　Michael G. Rhodes (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　mrhodes@cooley.com
　　　　　　　　　　　　　　　　　　　**COOLEY LLP**
　　　　　　　　　　　　　　　　　　　101 California St., 5th Floor
　　　　　　　　　　　　　　　　　　　San Francisco, California 94111
　　　　　　　　　　　　　　　　　　　Phone: (415) 693-2000

　　　　　　　　　　　　　　　　　　　Heidi L. Keefe (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　hleefe@cooley.com
　　　　　　　　　　　　　　　　　　　Mark R. Weinstein (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　mweinstein@cooley.com
　　　　　　　　　　　　　　　　　　　**COOLEY LLP**
　　　　　　　　　　　　　　　　　　　3175 Hanover Street
　　　　　　　　　　　　　　　　　　　Palo Alto, CA 94304
　　　　　　　　　　　　　　　　　　　Phone: (650) 843-5000

## **CERTIFICATE OF SERVICE**

On June 10, 2015, I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, the foregoing document was served on all counsel who are deemed to have consented to electronic service.

                                             */s/ Heidi L. Keefe*
                                             Heidi L. Keefe