**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC<br><br>Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC, PALMER LUCKEY AND FACEBOOK, INC.,<br><br>Defendants. | Case No.: 3:14-cv-01849-P |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION (A) TO OVERRULE LIMITATIONS ON DEFENDANT FACEBOOK, INC.'S RESPONSES TO REQUESTS FOR PRODUCTION AND (B) TO COMPEL PRODUCTION OF DOCUMENTS AND SOURCE CODE WITHHELD ON THAT BASIS (ECF NO. 186)**

Plaintiffs ZeniMax Media Inc. and id Software LLC ("Plaintiffs") did not invent "virtual reality," a field that has been around since the 1950s.[1] Plaintiffs' alleged trade secrets are not coextensive with all work that could conceivably relate in any way to "virtual reality" at a large technology company such as Facebook. Yet – despite being required by this Court to specifically identify their alleged trade secrets to shape the scope of discovery in this action – Plaintiffs are seeking broad discovery from Facebook that goes well beyond their self-identified purported trade secrets. Throughout the meet and confer process, Plaintiffs repeatedly ignored Defendants' requests to explain how the source code and documents at issue in this Motion have any relevance to any of their alleged trade secrets (or any other claims at issue in this action), and Plaintiffs still have not identified any such relevance in their Motion. The Court should deny the Motion because Plaintiffs' overbroad requests seek irrelevant information.

---

[1] *See, e.g.*, The Rise and Fall and Rise of Virtual Reality, *The Verge*, http://www.theverge.com/a/virtual-reality/oral_history.

## FACTUAL BACKGROUND

Plaintiffs were required to provide a specific disclosure of their alleged trade secrets prior to seeking any discovery from Defendants. (ECF No. 109.) This Court ruled that Plaintiffs were to provide Defendants with the following:

> (1) identification of each alleged trade secret;
> (2) separately break out each of the individual alleged trade secrets that Plaintiffs claim Defendants misappropriated;
> (3) identification of all claims with sufficient particularity so that Defendants understand how each claim differs from public domain information;
> (4) to the extent that one Defendant is accused of misappropriating information different from the others, a list of which trade secrets each Defendant allegedly misappropriated.

(*Id.*) "By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to *more accurately determine relevant responses and appropriate objections*." (*Id.*, citing *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-CV-1687-P (BN), 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013) (emphasis added).) Thus, the appropriate scope of Plaintiffs' discovery requests must be determined in light of Plaintiffs' alleged trade secret identification – not "virtual reality" generally.

Through the present Motion, Plaintiffs are seeking "source code associated with Facebook's virtual reality products, including any comments or revisions made thereto" as well as "(i) technical details concerning Facebook's virtual reality products, (ii) Facebook's marketing, licensing and intellectual property documents concerning virtual reality, and (iii) Facebook's financial and business documents regarding its virtual reality enterprises." (ECF No. 186 at 2, 5.)

With respect to their request for Facebook's highly confidential source code, Plaintiffs refer to several broad discovery requests that they purport would require such production:

> 5. Any and all versions of Source Code, including but not limited

> to object code, associated with each of Defendants' Products, including but not limited to the Oculus Rift, whether that Source Code is contained in electronic work directories (including, without limitation, the work directories of each of Plaintiffs' Former Employees), shared drives, common directories, or libraries.
>
> 28. Any and all versions of Source Code, including but not limited to source code comments (*i.e.*, the narratives that programmers write to assist others analyzing code) and object code, for each of Defendants' Products, including, but not limited to the Oculus Rift.
>
> 29. All Documents that reflect current or past revisions or additions to any and all versions of the Source Code for each of Defendants' Products, including but not limited to the Oculus Rift, specifically those Documents that reflect the author of each revision or addition and the date on which each revision or addition was made.

(ECF No. 187-1 at 19, 36-38.) These already broad requests are further broadened by the definition of "Defendants' Products," as follows:

> [A]ll versions and iterations of Defendants' devices, programs, hardware, software, and other technologies and projects, regardless of whether the aforementioned were previously developed, are in development, or are planned for development, and regardless of whether the aforementioned were released to the public or offered for sale. The terms Defendants' Product(s) or Product(s) of Defendants include, but are not limited to, Defendants' Oculus Rift virtual reality headset ("Oculus Rift"), including any consumer-facing version of the Oculus Rift, and the Oculus Rift's Software Development Kit.

(App'x at 27.) Technically, this definition could encompass the entirety of Facebook's source code – including the source code underlying its core social networking products which are unrelated to virtual reality. Defendants properly objected to these requests as "overly broad and unduly burdensome," particularly as they "see[k] source code relating to Defendants' products that are not relevant to this case" and to the extent they "see[k] documents and things not relevant to the subject matter of this litigation." (ECF No. 187-1 at 19-20, 36-38.) Defendants initially agreed to produce Oculus and Luckey's source code and documents relating to the

Oculus Rift and its SDK, and to meet and confer with Plaintiffs regarding the relevancy of these requests to Facebook. Oculus and Luckey proceeded to produced terabytes of source code and hundreds of thousands of pages of documents related to the one product actually named in these requests.

With respect to Facebook, during the promised meet and confer process, Defendants listed each of the types of source code in Facebook's possession that could even possibly be related to the broad categories of "virtual reality" that Plaintiffs sought, and asked Plaintiffs to specifically identify which trade secrets any of the listed source code related to. (ECF No. 187-1 at 70.) Plaintiffs did not respond for over a month.

Then, on July 16, 2015, Plaintiffs emailed a letter to a subset of Defendants' attorneys – selectively leaving out certain members of the agreed upon service list, including, the attorney who had been Defendants' primary negotiator in the meet and confer process on this issue.[2] In the letter, Plaintiffs did not endeavor to attempt to link any of Facebook's source code to any of their alleged trade secrets. This July 16 letter was also the first time Plaintiffs addressed Defendants' responses to document requests regarding the non-source code documents sought in this Motion. Plaintiffs followed their July 16 letter with an "ultimatum" email on July 23 within hours of filing this Motion – again, sent to the same subset of attorneys.[3] While Plaintiffs "believe [their] meet and confer obligations have been satisfied," the parties had not discussed non-source code Facebook virtual reality documents sought in Plaintiff's motion prior to its

[2] Plaintiffs did not attach this letter to their Motion, so Defendants attach it here. (App'x at 4-7.) Notably, Plaintiffs' counsel correctly utilized the service list for several other discovery related correspondence sent on the same day, within the same hour, from the same attorney's email address. (App'x at 8, 9.)

[3] Plaintiffs also did not attach this letter to their Motion, nor the follow up correspondence. (App'x at. 11-13.)

filing.[4]

In response to this ultimatum email, counsel for Defendants immediately reached out to local counsel for Plaintiffs, leaving a voicemail stating that Plaintiffs failed to include all relevant attorneys on either of these letters, and to please allow Defendants a few days to respond. (App'x at 2, ¶ 6.) Counsel immediately followed up with an email confirming this voicemail and Defendants' willingness to respond to this letter. (App'x at 13.) Shortly thereafter, the ECF notice arrived for this Motion.

## ARGUMENT AND AUTHORITIES

Parties are entitled to discovery "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, the scope of discovery is appropriately limited by Plaintiffs' specification of trade secrets. *See, e.g.*, *StoneEagle Servs., Inc.*, 2013 WL 9554563, at *3 ("By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to more accurately determine relevant responses and appropriate objections."); *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 246 (W.D. Tex. 2013) (finding that early identification of trade secrets "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"). Plaintiffs are not entitled to documents and source code with no relevance to the actual claims at issue in this litigation—namely Plaintiffs' alleged trade secrets. Now that they have disclosed their alleged trade secrets, Plaintiffs may seek discovery regarding them – Plaintiffs, however, are not entitled to Facebook's unrelated source code and documents hoping to "mol[d] their claims around whatever they [find]." (ECF No. 109 at 3 (citing *StoneEagle*, at *2).)

---

[4] The parties discussed this briefly on a call on August 12, 2015, but were unable to reach agreement on the proper scope of discovery as to these document requests.

Moreover, this limitation applies to Plaintiffs' additional claims as well. Plaintiffs have previously stated that all of its alleged claims "relate to the same course of misconduct" – so Plaintiffs' allegations regarding, for example, copyright infringement are inherently tethered to Plaintiffs' trade secret allegations. (ECF No. 40 at 8 (Motion to Overrule Objections); ECF No. 38, ¶¶ 117, 132-134, 139.) This is borne out through the fact that Plaintiffs' identification of alleged trade secrets specifically refers to the source code that underlies Plaintiffs' copyright allegations. (*See generally* ECF No. 113-1; ECF No. 38, ¶ 117.) Further, with respect to Plaintiffs' unfair competition and unjust enrichment claims against Facebook, each relies on the underlying intellectual property claims. (ECF No. 38, ¶¶ 163, 179.) And Plaintiffs' tortious interference with contract claim alleges only that Facebook caused *Oculus and Luckey* to use Plaintiffs' confidential information – not any action by Facebook itself. (*Id.*, ¶ 159.)

Here, Facebook has informed Plaintiffs what source code exists that could tangentially be related to "virtual reality" and Oculus. Plaintiffs have not explained – in their letters or their Motion – how this code has any relation to their alleged trade secrets or their copyright claim. Nor could they, as the identified source code's functionality has no relation to Plaintiffs' claims. Had Plaintiffs analyzed their claims against the identified Facebook code, Plaintiffs would have been unable to make any connection between them. For example, Plaintiffs have stated in both the Amended Complaint and their disclosure of alleged trade secrets that Plaintiffs suggested a location for mounting a sensor onto a head mounted display. (ECF No. 38, ¶¶ 57; ECF No. 113-1 at 25-28.) This purported "trade secret" has no relevance to any of the Facebook source code disclosed by Defendants, which does not involve head-mounted displays or sensors.

As Plaintiffs' claims in this case do not extend to all "virtual reality," neither does the scope of discovery against Facebook in this matter. The same reasoning applies to highly

confidential, non-source code documents relating to the same functionalities, to the extent such documents exist. Facebook does not sell a virtual reality headset apart from Oculus' products. This Motion is nothing more than an attempt to burden Facebook with the production of highly confidential source code and technical information with no connection to the disputes at issue.

## CONCLUSION

The Court should deny Plaintiffs' Motion because the requests are not properly limited by the scope of discovery in this action.

Date: August 13, 2015

Respectfully submitted,

*/s/ Heidi L. Keefe*

Richard A. Smith
Texas Bar No. 24027990
rsmith@lynnllp.com
Elizabeth Y. Ryan
Texas Bar No. 24067758
eryan@lynnllp.com
**LYNN TILLOTSON PINKER & COX LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: (214) 981-3800
Fax: (214) 981-3839

Michael G. Rhodes (*pro hac vice*)
mrhodes@cooley.com
**COOLEY LLP**
101 California St., 5th Floor
San Francisco, California 94111
Phone: (415) 693-2000

Heidi L. Keefe (*pro hac vice*)
hleefe@cooley.com
Mark R. Weinstein (*pro hac vice*)
mweinstein@cooley.com
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Phone: (650) 843-5000

**CERTIFICATE OF SERVICE**

On August 13, 2015, 2015, I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  I hereby certify that I have served all counsel who are deemed to have consented to electronic service or by another manner authorized by Federal Rules of Civil Procedure 5(b)(2).

                                    */s/ Heidi L. Keefe*
                                       Heidi L. Keefe