IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and | § | |
| ID SOFTWARE LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL CASE NO. 3:14-cv-01849-P** |
| v. | § | |
| | § | |
| OCULUS VR, LLC, | § | |
| PALMER LUCKEY, | § | |
| and FACEBOOK, INC. | § | |
| | § | |
| Defendants. | § | |


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR A PROTECTIVE ORDER LIMITING THE 172 TOPICS IN
<u>DEFENDANTS' NOTICES OF RULE 30(B)(6) DEPOSITIONS</u>**


<div style="margin-left:40%">

Phillip B. Philbin
Michael D. Karson
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

P. Anthony Sammi
Kurt Wm. Hemr
James Y. Pak
Kristen Voorhees
Devin A. Kothari
**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

</div>

Date:  December 10, 2015                 *Attorneys for Plaintiffs*
Dallas, Texas                            *ZeniMax Media Inc. and id Software LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

TIMELINE OF NOTICES............................................................................................ 2

ARGUMENT ................................................................................................................ 5

I. DEFENDANTS' RULE 30(b)(6) DEPOSITION  NOTICES SHOULD BE LIMITED
    BECAUSE THEY WOULD  UNDULY BURDEN PLAINTIFFS AND
    REQUEST INFORMATION  THAT COULD BE OBTAINED FROM MORE
    CONVENIENT SOURCES............................................................................... 6

   **A.      Defendants' Notices Would Unduly Burden Plaintiffs  Because In
             Violation Of Rules 26 And 30(b)(6) They Are  Oppressively Numerous,
             Overbroad, And Would Require  Plaintiffs' Counsel To Violate The
             Protective Order In This Case** ............................................................... 7

   **B.      Recent Case Law From Other Intellectual Property Disputes Confirm
             That Defendants' Topics Are Overbroad And Impermissibly Seek
             Work Product** ......................................................................................... 9

   **C.      Defendants' Topics Suffer From The Same Deficiencies As Topics
             That Have Been Quashed By Other Courts** ...................................... 10

       **1.      Defendants Improperly Seek To Use Rule 30(b)(6) Depositions
                 To Obtain Contention Discovery And Attorney Work Product** ......... 10

       **2.      To Comply With Defendants' Notices Would Be  Impossible
                 Because Plaintiffs Are Barred From Educating  Their
                 Designees As To "All Facts" Supporting Their Claims** ...................... 14

   **D.      Defendants' Notices Would Unduly Burden Plaintiffs  Because There
             Are More Convenient And Appropriate Means Of  Obtaining The
             Discovery That Defendants' Seek And Because They Contain  Topics
             That Are Duplicative Of Other Discovery Already Provided In This
             Case** ...................................................................................................... 16

II. PLAINTIFFS HAVE COMMITTED TO PROVIDE  RULE 30(b)(6) WITNESSES
    WHERE THEY COULD DISCERN  THE INFORMATION REASONABLY
    SOUGHT BY DEFENDANTS........................................................................ 17

CONCLUSION........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                          <u>PAGE(S)</u>

<u>E.E.O.C. v. Source One Staffing, Inc.</u>, No. 11 Civ. 6754, 2013 U.S. Dist. LEXIS 361
(N.D. Ill. Jan. 2, 2013) ................................................................................................13

<u>In re Enron Creditors' Recovery</u>, No. 01-16034 (AJG), 2007 WL 2680427 (Bankr.
S.D.N.Y. Sept. 6, 2007) ...........................................................................................9, 13

<u>Gen. Foods Corp. v. Computer Election Sys., Inc.</u>, No. M8-85, 1980 WL 30300
(S.D.N.Y. Mar. 7, 1980) ................................................................................................8

<u>Hernandez v. Best Buy Co., Inc.</u> No. 13 Civ 2587-JM KSC, 2014 WL 5454505 (S.D. Cal.
Oct. 27, 2014) ...............................................................................................................14

<u>Hiskett v. Wal-Mart Stores, Inc.</u>, 180 F.R.D. 403 (D. Kan. 1998) ................................14

<u>In re Indep. Serv. Organizations Antitrust Litig.</u>, 168 F.R.D. 651, 654 (D. Kan. 1996) ................8

<u>JPMorgan Chase Bank v. Liberty Mutual Insurance Co.</u>, 209 F.R.D. 361 (S.D.N.Y. 2002) ....9, 13

<u>Lipari v. U.S. Bancorp, N.A</u>, No. CIVA 07-2146-CM-DJW, 2008 WL 4642618 (D. Kan.
Oct. 16, 2008) .................................................................................................................7

<u>Liveperson, Inc. v. 24/7 Customer, Inc.</u>, No. 14 CIV. 1559 RWS, 2015 WL 4597546
(S.D.N.Y. July 30, 2015) ........................................................................................ .9-14

<u>Martin v. Allstate Insurance Co.</u>, 292 F.R.D. 361 (N.D. Tex. 2013)...............................7

<u>Reed v. Bennett</u>, 193 F.R.D. 689 (D. Kan. 2000) ...........................................................8

<u>Trustees of Boston University v. Everlight Electronics Co., Ltd.</u>, No. 12 Civ 11935-PBS,
2014 WL 5786492 (D. Mass. Sept. 24, 2014) ................................................... 7, 9-11, 14, 15, 19

<u>United States ex. rel. Baklid-Kunz v Halifax Hospital Medical Center</u>, No. 6:09-CV-
1002-ORL-31TBS, 2012 WL 3537070 (N.D. Fla. Aug. 14, 2012)...........................9, 12

**<u>RULES</u>**                                                                                          **<u>PAGE(S)</u>**

Fed. R. Civ. P. 26(b)(1)...........................................................................................6

Fed. R. Civ. P. 26(b)(2)...........................................................................................6

Fed. R. Civ. P. 26(c)(1)...........................................................................................6

Fed. R. Civ. P. 30(b)(6).................................................................................. <u>passim</u>

Fed. R. Civ. P. 33...................................................................................................5

## PRELIMINARY STATEMENT

In September 2015, Defendants served Plaintiffs with two Rule 30(b)(6) deposition notices, one for each corporate Plaintiff, each enumerating eighty-six (86) separate topics for a total of 172 topics. Virtually all of these topics are extremely broadly framed, many seeking "all facts" or "every fact" related to Plaintiffs' contentions in this litigation. Indeed, many of those topics are framed as contention interrogatories, and thus purport to demand that Plaintiffs put forward a witness to testify as to the theories Plaintiffs' counsel intend to advance in this litigation and the facts on which Plaintiffs' counsel will rely in support of those theories.

Defendants' attempt to use the 30(b)(6) deposition procedure for this purpose is improper.[1] For Plaintiffs to prepare and put forward witnesses to testify regarding those topics would be invasive of attorney work product, as that procedure would necessarily require those witnesses to testify about the thoughts and impressions of Plaintiffs' counsel. The topics would also put Plaintiffs in the "Catch-22" position of choosing between (i) preparing the witnesses by disclosing to them documents and information that comprise or reflect discovery material designated by Defendants as "HIGHLY CONFIDENTIAL" and/or "HIGHLY SENSITIVE SOURCE CODE" pursuant to the Protective Order entered in this case (see Dkt. No. 107), or (ii) incompletely preparing those witnesses. That dilemma is particularly acute given the volume of production in this case as to which Defendants have asserted the right to confidentiality protections. Defendants have produced more than 270,000 documents and have stamped at least 190,000 of those documents as "HIGHLY CONFIDENTIAL." Defendants have also produced terabytes (i.e., trillions of bytes) of data marked as "HIGHLY SENSITIVE SOURCE CODE"

---

[1] Plaintiffs note that to the extent Defendants have propounded actual contention interrogatories, Plaintiffs have endeavored to answer those interrogatories, and intend to supplement those responses as discovery proceeds.

that includes many emails.  Synthesizing the facts gleaned from this amount of information and marshalling it in support Plaintiffs' claims requires counsel to formulate work product that cannot be shared with Plaintiffs' corporate designees without violating the Protective Order entered in this action.

Plaintiffs immediately alerted Defendants to these issues and gave Defendants the opportunity to serve Rule 30(b)(6) notices with the "reasonable particularity" and precision that the Rules demand.  But Defendants stood on their notices. In early November 2015, Plaintiffs served their responses and objections to the notices, which set forth, in painstaking detail, their specific responses and objections to each topic noticed.  Plaintiffs offered witnesses to testify on certain topics (*see infra* Argument, Section II), but could not offer witnesses on other topics due to the manifest and seemingly incurable deficiencies in those topics.  Instead of addressing those specific responses and objections, within a week of receiving them, Defendants threatened Plaintiffs with sanctions. Plaintiffs responded to that letter two days later.

Several weeks later, in December 2015, Defendants wrote another letter demanding that Plaintiffs seek a protective order to obtain relief from Defendants' improper Rule 30(b)(6) notices.  Plaintiffs thus had no choice but to file this Motion.

## TIMELINE OF NOTICES

1.      On **September 3, 2015,** Defendants served Rule 30(b)(6) deposition notices on ZeniMax and id Software seeking testimony on behalf of each company.  (App'x Ex. 1 at 2; App'x Ex. 2 at 18 (Rule 30(b)(6) Deposition Notices Served On Zenimax And id, respectively).) Each notice enumerated 86 separate deposition topics.

2.      On **September 8, 2015**, Plaintiffs emailed Defendants, noting that the 86 separate deposition topics improperly contained "numerous topics that are in the form of contention

2

interrogatories and numerous other topics that are highly general and not at all particularized." (App'x Ex. 3 at 34 (Email from P. Sammi to M. Rhodes and others).)  Plaintiffs noted that the topics were "beyond the need to trim/focus a few topics here and there" but Plaintiffs nonetheless sought to discuss the matter. (Id.)

3.    On **September 9, 2015**, Defendants responded that they "disagree[d] with [Plaintiffs'] characterization of the notices we served last week."  (App'x Ex. 4 at 36 (Email from H. Keefe to P. Sammi and others).)  Plaintiffs notified Defendants that they would undertake to provide detailed responses and objections to Defendants' notices.

4.    On **October 7, 2015**, the Court entered an amended scheduling order extending the time for discovery to accommodate scheduling of depositions.  (Dkt. No. 220.)

5.    On **November 6, 2015**, Plaintiffs served their responses and objections to Defendants' Rule 30(b)(6) notices, setting forth specific responses and objections to each of the 86 topics noticed in each of the deposition notices.  (App'x Ex. 5 at 39 (Plaintiffs' Responses And Objections To Defendants' Rule 30(b)(6) Deposition Notices).)   These responses were comprehensive and detailed. Plaintiffs variously and specifically objected to many of the topics on various grounds, including that certain of the topics (1) were not "reasonably particularized," (2) were formulated as contention interrogatories, (3) would result in the invasion of attorney-client and work-product privileges, (4) would require violating the Protective Order entered in this litigation, (5) were duplicative or sought discovery available through other, less burdensome means, or (6) sought information in possession of Defendants or Plaintiffs' former employees now working for Defendants.  Nevertheless, for many of the noticed topics, Plaintiffs committed to provide a corporate representative subject to appropriate limitations.

6.     On **November 11, 2015**, Defendants wrote a letter to Plaintiffs purporting to complain about Plaintiffs' objections, but without addressing any of the specific concerns set forth in those objections (App'x Ex. 6 at 117-18  (Letter from M. Rhodes to P. Sammi).)  Instead, Defendants threatened to bypass negotiation or ordinary discovery motion practice and seek the remedy of "eventual exclusion of <u>all</u> of Plaintiffs' evidence on the matters addressed by those topics." (<u>Id</u>. (emphasis in original).)

7.     On **November 13, 2015**, Plaintiffs responded to that letter, noting that it "ignores the objections that Plaintiffs properly interposed, offers no compromise on any point whatsoever, and simply demands maximal compliance under threat of sanction."  (App'x Ex. 7 at 120 (Letter from P. Sammi to M. Rhodes).)  Plaintiffs reiterated concerns set forth in their responses and objections, including that "[n]o witness could be prepared with reasonable effort to testify on those topics"; that "[n]umerous topics are expressly framed as contention interrogatories that improperly seek the work product of Plaintiffs' counsel"; and that "[m]any of those topics would require a witness to review documents and information that you have produced for outside counsel's eyes only, and which the witness therefore could not review without violating the court's order." (<u>Id</u>. at 120-121.)  The letter further observed that Defendants "suggest no solution for the problem of how Plaintiffs could put forward a testifying witness who is barred from reviewing the discovery material on which that work product is based." (<u>Id</u>. at 121.)

8.     On **December 2, 2015**, Defendants responded further.  (App'x Ex. 8 at 123 (Letter from M. Rhodes to P. Sammi).)  That response again ignored, among other things, Plaintiffs' concerns about invasion of attorney work-product privilege.  Instead, Defendants simply demanded that Plaintiffs provide dates in January or February on which Plaintiffs would put forward Rule 30(b)(6) witnesses on all topics.  (<u>Id</u>. at 124.)  Defendants insisted that "[i]t is

. . . your burden to seek a protective order if you truly believe these topics are objectionable," necessitating the instant motion.  (<u>Id</u>. at 123.)

## <u>ARGUMENT</u>

Defendants improperly seek to use a Rule 30(b)(6) deposition to obtain information that, to the extent it is discoverable at all, is for good reason more properly sought through other discovery vehicles made available by the Rules.  Defendants' 30(b)(6) notices would unduly burden the plaintiffs because (i) they are overbroad, (ii) they would place Plaintiffs in the untenable position of violating either Rule 30(b)(6) or the Protective Order entered in this litigation (Dkt. No. 107), (iii) they seek work product, and (iv) there are less burdensome and more convenient ways that Defendants could obtain any such discovery that they can properly seek.

In particular, many of the 86 topics noticed by Defendants require witnesses to be prepared to testify as to "all facts" supporting certain contentions.  Because Defendants have designated hundreds of thousands of documents and terabytes of data they have produced as "HIGHLY CONFIDENTIAL" or "HIGHLY SENSITIVE SOURCE CODE," Plaintiffs' counsel could not prepare a witness to testify about "all facts" without violating the Protective Order entered in this case.  Relatedly, many of Defendants' topics evince an intention to improperly seek contention discovery through Rule 30(b)(6) depositions, which would invade Plaintiffs' work product privilege.

While Defendants' approach to discovery is contrary to Rule 30(b)(6), Defendants could obtain contention discovery by propounding interrogatories pursuant to Rule 33, including properly-tailored contention interrogatories.  Indeed, Plaintiffs have responded to 50 interrogatories (25 from Oculus and/or Luckey, and 25 from Facebook), including many

contention interrogatories, and Plaintiffs will appropriately supplement their interrogatory responses in accordance with the Rules as discovery proceeds. To the extent that Defendants believe that they have not set forth adequate questioning in their interrogatories, they <u>cannot</u> use Rule 30(b)(6) as an end-run around the limits on interrogatories by asking essentially 86 additional interrogatories as Rule 30(b)(6) topics. To the extent that Defendants seek to learn facts relating to Plaintiffs' claims, they could properly obtain those facts from the fact witnesses whose depositions are well underway. In addition, during expert discovery, Plaintiffs will provide expert disclosures and make their expert witnesses available for deposition.

Plaintiffs have confirmed that they will put forward Rule 30(b)(6) witnesses to respond to topics which do not present those deficiencies, or where Plaintiffs were able to propose a slightly modified topic to avoid those deficiencies. Defendants' notices should be limited to those topics.

## I.   DEFENDANTS' RULE 30(b)(6) DEPOSITION NOTICES SHOULD BE LIMITED BECAUSE THEY WOULD UNDULY BURDEN PLAINTIFFS AND REQUEST INFORMATION <u>THAT COULD BE OBTAINED FROM MORE CONVENIENT SOURCES</u>

Under Rule 26(b), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Yet, the "court must limit the frequency or extent of discovery" that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Pursuant to Rule 26(c) a party may move the Court for an order protecting it from discovery requests that would cause "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). The Court then has broad powers to provide relief.

**A.    Defendants' Notices Would Unduly Burden Plaintiffs
Because In Violation Of Rules 26 and 30(b)(6) They Are
Oppressively Numerous, Overbroad, And Would Require
Plaintiffs' Counsel To Violate The Protective Order In This Case**

Defendants' notices each contain 86 topics, many of which are structured as contention interrogatories.  This violates not only Rule 26 described above, but Rule 30(b)(6), which requires the noticing party to "describe with reasonable particularity the matters for examination."   Fed. R. Civ. P. 30(b)(6); Martin v. Allstate Ins. Co., 292 F.R.D. 361, 364 (N.D. Tex. 2013) (Rule 30(b)(6) deposition topics cannot be overbroad); Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd. No. 12-CV-11935-PBS, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014) ("[i]f the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task".)  In particular deposition notices that would require a Rule 30(b)(6) witness to testify regarding all facts underpinning a claim are improper.  See Lipari v. U.S. Bancorp, N.A, No. CIVA 07-2146-CM-DJW, 2008 WL 4642618, at *6 (D. Kan. Oct. 16, 2008) (finding that a Rule 30(b)(6) notice seeking a deponent to testify about "all documents in its possession or control . . . hardly meets the requirement that Plaintiff designate, with painstaking specificity, the particular subject areas to be covered in the deposition") (internal quotation marks omitted).  It would be inconceivable that anyone could be prepared with reasonable effort to testify regarding the volume of information covered by the 86 topics that Defendants have propounded on Plaintiffs, especially where the topics are posed without limits — for example, Topic 20:   "All documents and/or information you provided to Defendants, including but not limited to all communications between you and Defendants." (App'x Ex. 1 at 7; App'x Ex. 2 at 23 (emphasis added).)  Where the noticed topics are overbroad or imprecise, "[i]t is not reasonable to expect one or more witnesses to remember and testify about every one of these facts." Trustees, 2014 WL 5786492,

at *4.

Courts routinely quash such expansive Rule 30(b)(6) deposition notices.  For example, in Reed v. Bennett, the court quashed a Rule 30(b)(6) notice and required the noticing party to issue a new notice because the topics were overbroad. 193 F.R.D. 689, 692 (D. Kan. 2000).  The court observed that "[a]lthough plaintiff has specifically listed the areas of inquiry for which a 30(b)(6) designation is sought, she has indicated that the listed areas are not exclusive." Id. The court noted that "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. To avoid liability, the noticed party must designate persons knowledgeable in the areas of inquiry listed in the notice." Id.; see also In re Indep. Serv. Organizations Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (granting a motion for a protective order because "[e]ven under the present-day liberal discovery rules, Xerox is not required to have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given defense or counterclaim" (internal quotation marks omitted)); Gen. Foods Corp. v. Computer Election Sys., Inc., No. M8-85, 1980 WL 30300, at *2-3 (S.D.N.Y. Mar. 7, 1980) (quashing third-party 30(b)(6) deposition subpoena that listed 143 topics without "attempting an item-by-item analysis" of each topic). The same result should follow here, where Defendants have noticed Plaintiffs with a combined 172 topics, the majority of which are unbounded by time or scope, seeking "all facts" or "every fact" or information about events that occurred at "any time."  That fact alone should be grounds to quash or limit Defendants' Rule 30(b)(6) topics.  But as this Motion will further explain, the overbreadth of Defendants' topics is especially objectionable in cases involving complex trade secrets and other proprietary information.

**B.    Recent Case Law From Other Intellectual Property Disputes Confirm That <u>Defendants' Topics Are Overbroad And Impermissibly Seek Work Product</u>**

There are many cases that demonstrate that deposition topics that seek contention discovery and work product are impermissible.[2]  But two recent patent infringement cases are especially instructive:  (i) <u>Trustees</u>, <u>supra</u>, 2014 WL 5786492 and (ii) <u>Liveperson, Inc. v. 24/7 Customer, Inc.</u>, No. 14 CIV. 1559 RWS, 2015 WL 4597546 (S.D.N.Y. July 30, 2015).

In <u>Trustees</u>, the plaintiffs noticed a Rule 30(b)(6) deposition of one of the defendant corporations.  The corporation objected, including on the grounds that some of the topics "were vague, ambiguous, overly broad and failed to describe with reasonable particularity the matters for examination," and that another topic was an improper contention interrogatory-type topic. <u>Trustees</u>, 2014 WL 5786492, at *2.  The plaintiff moved to compel.  The court agreed with the defendant as to each of the objectionable topics and denied the motion. It concluded that certain topics were "vague and/or overly broad" because they sought "testimony regarding 'all facts related to' the relationship between [defendant] and another entity." <u>Id</u>., at *3.  The court also ruled that "[a] party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through contention interrogatories and/or expert discovery." <u>Id</u>., at *4.

In <u>Liveperson</u>, another case involving highly technical material and source code, the defendants sought to compel the plaintiff to produce a Rule 30(b)(6) deponent to answer

---

[2]  <u>E.g.</u>, <u>JPMorgan Chase Bank v. Liberty Mut. Ins. Co.</u>, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); <u>United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.</u>, No. 6:09-CV-1002-ORL-31TBS, 2012 WL 3537070, at *5 (N.D. Fla. Aug. 14, 2012) (Denying a motion to compel the United States to produce a 30(b)(6) witness on contention discovery that would implicate work product); <u>In re Enron Creditors' Recovery</u>, No. 01-16034 (AJG), 2007 WL 2680427, at *3 (Bankr. S.D.N.Y. Sept. 6, 2007) (quashing a Rule 30(b)(6) notice where "contention interrogatories [were] the appropriate form of discovery").

questions about the facts underlying allegations in the complaint.  The plaintiff contended that the noticed topics were improper because they would violate the plaintiff's work-product privilege and constitute untimely contention discovery.  The court agreed and denied the defendant's motion to compel, finding that "a considerable number of the 30(b)(6) deposition topics fairly constitute contention discovery and improperly require Plaintiff to collect and synthesize all of the information in its possession . . . then impart that body of knowledge to the deponent . . . and . . . that the deponent, in turn, feed it back to the defendant in response to its deposition questions." 2015 WL 4597546, at *7 (alterations omitted).

### C.     Defendants' Topics Suffer From The Same Deficiencies As Topics That Have Been Quashed By Other Courts

Many of Defendants' noticed 30(b)(6) topics suffer from the same infirmities present in Trustees and Liveperson.  Plaintiffs will not burden the court by detailing their specific objections to each of the objectionable topics — those objections are provided in the Appendix submitted herewith (See App'x Ex. 5) — or request that the Court undertake a granular inspection of each of those topics and Plaintiffs' specific objections.  The following deficiencies are typical:

### 1.     Defendants Improperly Seek To Use Rule 30(b)(6) Depositions To Obtain Contention Discovery And Attorney Work Product

Thirty-eight of the 86 topics seek contention discovery,[3] and many more seek "all facts" supporting Plaintiffs' claims,[4] which both Trustees and Liveperson held to be improper forms of Rule 30(b)(6) topics.

---

[3]   See Topic Nos. 7, 8, 12, 18, 28-35, 37-44, 47, 52, 53, 56-58, 60, 61, 64-66, 71-76, 79.

[4]   The following proposed topics purport to require testimony regarding "all," "any" or "each" of a broad category of items (e.g., "all documents and/or information," "all communications") without sufficient further specification:  Topic Nos. 1-9, 13-15, 20-34, 40, 41, 44, 45, 49-52,

*(cont'd)*

For example, Topic 29 in <u>Trustees</u> — which that court ruled was an improper contention topic — is similar to Topic 8 propounded by Defendants:

| Topic Held Improper in Trustees | Topics Proposed Here By Defendants |
|---|---|
| "29. All facts supporting EPISTAR's non-infringement defenses and EPISTAR's contention that the ACCUSED INSTRUMENTALITIES do not infringe the '738 patent."<br><br><u>Trustees</u>, 2014 WL 5786492, at *2. | TOPIC NO. 8:<br>Identification of all alleged violations of your intellectual property rights by Defendants, and the factual basis for each allegation.<br><br>(App'x Ex. 1 at 6; App'x Ex. 2 at 22.) |

The topics propounded by Defendants here are also very similar to the topics quashed in <u>Liveperson</u> on the ground that they were improper contention topics and overbroad — for example, the following:

---

*(cont'd from previous page)*
54, 55, 57-65, 67-70, and 73-83. (App'x Exs. 1, 2.) Notwithstanding that deficiency, Plaintiffs committed to provide testifying representative witnesses for Topic Nos. 4, 6, 21, 22, 23, 27, 45, 59, 77, and 78 subject to reasonable limits on the scope of those topics that Plaintiffs articulated in their Responses and Objections. (App'x Ex. 5.) Plaintiffs additionally committed to provide testifying representative witnesses for Topic Nos. 11, 17, 19, 36, and 48. Plaintiffs could not commit to provide witnesses for Topic Nos. 10, 16, 46, and 84-86 because, as set forth in Plaintiffs' Responses and Objections, those topics had numerous deficiencies, including, among others: they (i) were not "reasonably particularized," (ii) would result in the invasion of attorney-client, work-product and other privileges, (iii) were duplicative, or (iv) sought information in the possession of Defendants or Plaintiffs' former employees. (<u>Id</u>.) Plaintiffs could not discern any apparent means of curing those deficiencies in those Topics.

8. All facts supporting LivePerson's belief that "24/7's infringement and other improper conduct began no later than 2012 and continued through the filing of this action" as referenced in paragraph 7 of the Complaint.

21. Every instance in which [24]7 engaged in "unauthorized access to LivePerson technology and systems by abusing [24]7's access to client websites," as referenced and alleged in paragraph 40 of the Complaint, including (a) the date(s) upon which the alleged access occurred; (b) the "abus[e]" to which LivePerson refers; and (c) all client websites to which LivePerson refers.

36. The alleged breach of the Co-Marketing Agreement.

(Exhibit A To Letter Motion Regarding Outstanding Notice of Rule 30(b)(6) Deposition To Plaintiff at 4, 7, 9, Liveperson, 2015 WL 4597546 (No. 68-1).)   The Liveperson court struck Defendant's contention topics, stating that "[t]o the extent that Defendant is not after contention discovery, [Defendant] is free to depose the witnesses identified by Plaintiff. . . . [which] will be more practicable and less burdensome than requiring one or more general 30(b)(6) deponents to synthesize and familiarize themselves with the facts and contentions responsive to every one of Defendant's 40 deposition topics." 2015 WL 4597546,   at *7.   Defendant has the same opportunity here.

Many other courts have also quashed Rule 30(b)(6) notices that would require disclosure of work product.   In United States. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr., the court denied a motion to compel the United States to produce a 30(b)(6) witness on certain topics because "to prepare a non-lawyer witness to testify on these topics . . . would almost certainly

result in the disclosure of work product privileged information so that the deposition of any non-lawyer would be the functional equivalent of deposing the attorneys for the United States."  No. 6:09-CV-1002-ORL-31TBS, 2012 WL 3537070, at *5 (N.D. Fla. Aug. 14, 2012). Similarly, in E.E.O.C. v. Source One Staffing, Inc., the court granted a protective order regarding topics seeking testimony "supporting or rebutting claims" because such topics "necessarily seek attorney work product and attorney-client privileged information, and it is not clear that Source One seeks anything else at this point in time, before the EEOC has had an opportunity to supplement its interrogatory answers . . . duly supplemented based on the EEOC's expert's work and otherwise."  No. 11 Civ. 6754, 2013 U.S. Dist. LEXIS 361, at *18-19 (N.D. Ill. Jan. 2, 2013) (emphasis removed); see also In re Enron Creditors' Recovery, No. 01-16034 (AJG), 2007 WL 2680427, at *3 (Bankr. S.D.N.Y. Sept. 6, 2007) (observing that the noticed 30(b)(6) topics "addressed [the company's] conclusions, opinions, and legal theory, and not solely facts," and requiring the noticing party to seek that information via "properly framed contention interrogatories");  JPMorgan Chase Bank v. Liberty Mut. Ins. Co., 209 F.R.D. 361, 362 (S.D.N.Y. 2002) (holding that legal theories are not discoverable via Rule 30(b)(6) depositions).

Because many of the facts supporting Plaintiffs' claims in this case are available only to counsel, offering a corporate designee to respond to those contention topics would require Plaintiffs to disclose work product and would be the functional equivalent of putting outside counsel in the deponent's chair.  That procedure would require "Plaintiff to collect and synthesize all of the information in its possession . . . then impart that body of knowledge to the deponent . . . and . . . that the deponent, in turn, feed it back to the defendant in response to its deposition questions." Liveperson, 2015 WL 4597546, at *7 (alterations omitted).  That is improper.

13

**2.     To Comply With Defendants' Notices Would Be
Impossible Because Plaintiffs Are Barred From Educating
Their Designees As To "All Facts" Supporting Their Claims**

The courts in <u>Trustees</u> and <u>Liveperson</u> held topics seeking "all facts" or "every fact" supporting claims particularly objectionable.  Indeed, such "all facts" discovery requests are impermissible even in the context of written interrogatories.  <u>Hiskett v. Wal-Mart Stores, Inc.,</u> 180 F.R.D. 403, 405 (D. Kan. 1998) (limiting the scope of "all facts" interrogatories because "[t]he court will generally find [interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' which supports identified allegations or defenses") (citation omitted); <u>Hernandez v. Best Buy Co., Inc.</u> No. 13 Civ. 2587-JM KSC, 2014 WL 5454505, at *6 (S.D. Cal. Oct. 27, 2014) (finding interrogatories seeking "all facts" supporting a contention "overly broad and unduly burdensome as worded and must be limited to the principal or material facts").  Indeed, if even responses to written discovery cannot be construed to require a recitation of "all facts" supporting each contention, it follows <u>a fortiori</u> that a Rule 30(b)(6) deponent cannot reasonably be asked to prepare to testify for several hours about "all facts."

It would not only be oppressive to require a witness to testify as to "all facts" concerning 86 topics — <u>Liveperson</u> involved only 40 topics, and the court found that oppressive and vexatious — but here it would be impossible.  Plaintiffs' contentions are supported by evidence gathered during discovery. Discovery in this case is complex due to the nature of the materials involved and the sheer volume of materials produced.  Indeed, because the materials in this case are sensitive — involving, for example, proprietary source code and various trade secrets — the parties agreed that the Protective Order should be entered in this case to protect their confidential information.  Pursuant to the Protective Order, information designated by a producing party as "HIGHLY CONFIDENTIAL" cannot be shared even with "officers, directors, and employees (including in-house counsel) of the Receiving Party to whom disclosure is reasonably necessary

14

for this Litigation." (Dkt. No. 107 §§ 10, 11.)  Information designated as "HIGHLY SENSITIVE SOURCE CODE" is subject to additional restrictions. (Dkt. No. 107 §§ 10, 12.)  Parties may share the information with their experts and certain consultants to support their claims or defenses. (Dkt. No. 107 §§ 10-12.)

To date, Defendants have produced at least 270,000 documents and designated more than 190,000 of those documents as "HIGHLY CONFIDENTIAL."  Defendants have also produced terabytes (i.e., trillions of bytes) of data designated as "HIGHLY SENSITIVE SOURCE CODE" that includes many emails. Synthesizing the facts gleaned from this enormous amount of information and marshalling it to identify facts in support of Plaintiffs' claims requires counsel to formulate work product based on information that counsel is barred from sharing with Plaintiffs' corporate designees. In view of the Protective Order, the nature of the evidence in this case, and the omnibus nature of Plaintiffs' topics, outside counsel cannot prepare Plaintiffs' 30(b)(6) witnesses to "answer questions fully, completely and unevasively" on the topics proposed by Defendants.  Trustees, 2014 WL 5786492, at *3.  Defendants' topics place outside counsel in an untenable position of either violating the Protective Order to comply with Rule 30(b)(6) or violating Rule 30(b)(6) to comply with the Protective Order.

Moreover, even if Plaintiffs were to violate the Protective Order and educate their designees as to "all facts," the large volume of information — and the highly technical nature of that information, based, for example, on expert opinions and analyses of source code — poses an obvious risk that a designee, even after diligent preparation, could not assimilate all the information and all the facts pertaining to each of the 86 topics.  The designee could fail to remember certain facts and answer some questions incorrectly or incompletely.  A designee may, for example, mistakenly fail to mention certain facts supporting a claim, at which point

15

Defendants would contend that the Plaintiffs have conceded that such facts do not exist or do not support that claim.  Noticing overbroad Rule 30(b)(6) deposition topics as a basis for excluding relevant evidence at trial would appear to be part of Defendants' litigation strategy.  Indeed, in their November 11 letter, Defendants tellingly threatened to bypass negotiations altogether and to seek "eventual exclusion of <u>all</u> of Plaintiffs' evidence on the matters addressed by those topics." (App'x Ex. 6 at 117  (Letter from M. Rhodes to P. Sammi) (emphasis in original).)  That gamesmanship should not be entertained.

> **D.    Defendants' Notices Would Unduly Burden Plaintiffs**
> **Because There Are More Convenient And Appropriate Means Of**
> **Obtaining The Discovery That Defendants' Seek And Because They Contain**
> <u>**Topics That Are Duplicative Of Other Discovery Already Provided In This Case**</u>

To be clear, Plaintiffs do not contend that Defendants are not entitled to learn the principal facts underlying Plaintiffs' contentions.  But abusive Rule 30(b)(6) deposition topics are an improper means of obtaining that information.  In the first instance, Defendants may review Plaintiffs' detailed Amended Complaint and pre-discovery identification of trade secrets (Dkt. No. 113-1 (under seal)).  Defendants could also seek to ascertain the facts undergirding Plaintiffs' contentions through written discovery, ordinary course fact witness depositions, and expert discovery.  To date, almost ten depositions have been taken in this case, and many more will be taken.  Written discovery is ongoing. Plaintiffs will provide expert reports and offer experts for depositions.  Plaintiffs have responded to interrogatories, including numerous contention interrogatories, and will continue to supplement them appropriately in accordance with the Rules.

Indeed, some of the deposition topics are plainly duplicative of interrogatories already answered. For example, the following proposed topic:

> 37.   The breaches of the contract you allege in Count 3 of your Complaint.

(App'x Ex. 1 at 8; App'x Ex. 2 at 24) is duplicative of part (c) of the following Interrogatory:

> **INTERROGATORY NO. 6:**
>
> State the factual basis for any alleged conduct described in the Complaint as improper, including without limitation identifying all communications, documents and things you assert support the allegations that:
>
> (a)   Oculus VR or Luckey misappropriated any trade secrets owned by you;
>
> (b)   Oculus VR or Luckey infringed any copyrights owned by you;
>
> (c)   Oculus VR or Luckey breached any contracts with you;
>
> (d)   Oculus VR or Luckey unfairly competed with you; or
>
> (e)   Oculus VR or Luckey infringed any ZeniMax Marks or otherwise violated the Lanham Act.

(App'x Ex. 10 at 145 (Defendants' Second Set of Interrogatories to Plaintiffs).)

Defendants may not use Rule 30(b)(6) as an end-run around the limits on the number of interrogatories they are permitted to propound by asking 86 additional interrogatories as Rule 30(b)(6) topics. The Rules provide Defendants with numerous means of discovering the principal facts supporting Plaintiffs' contentions that are far less burdensome than harassing Plaintiffs with overbroad, duplicative 30(b)(6) topics that propose to invade Plaintiffs' work-product privilege and are not susceptible of complete response in light of the Protective Order.

## II.   PLAINTIFFS HAVE COMMITTED TO PROVIDE RULE 30(B)(6) WITNESSES WHERE THEY COULD DISCERN THE INFORMATION REASONABLY SOUGHT BY DEFENDANTS

Notwithstanding the deficiencies with Defendants' notices, Plaintiffs, after asserting their appropriate objections, offered Rule 30(b)(6) witnesses to testify on a number of topics which

Plaintiffs attempted to properly limit.  A subset of these topics and Plaintiffs' offer to produce a witness can be found below:

- ***Topic 4 requests a witness to testify about*** "All resources you invested in research and development related to virtual reality at any time."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify generally on their behalf concerning the investments that Plaintiffs made in virtual reality research and development from the mid-1990s to the present."

- ***Topic 6 requests a witness to testify about*** "All plans, market research, competitor analyses, or any other evidence of your plans to monetize or use your virtual reality research and development."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify generally on their behalf concerning Plaintiff's intentions for the commercial use of investments that Plaintiffs made in virtual reality research and development from the mid-1990s to the present.

- ***Topic 11 requests a witness to testify about*** "Your decision not to purchase an equity stake in Oculus in 2012."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify on their behalf concerning the parties' negotiations for an "equity stake in Oculus in 2012."

- ***Topic 19 requests a witness to testify about*** "Your decision to release Doom 3 BFG Edition without support for virtual reality devices."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify generally on their behalf concerning Plaintiffs' "decision to release DOOM 3 BFG Edition without support" for the Rift."

- ***Topic 36 requests a witness to testify about*** "The contract you allege exists in Count 3 of your Complaint."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify generally on their behalf concerning the non-disclosure agreement between Plaintiffs and Defendants."

- ***Topic 45 requests a witness to testify about*** "Any negotiations you had with Defendants at any time."
  - ***Plaintiffs committed to put forward*** "one or more persons . . . to testify generally on their behalf concerning negotiations with Defendants concerning (i) the parties' non-disclosure agreement and (ii) an equity stake in Oculus."

(App'x Ex. 5 at 45-48, 52, 58, 72-73, 80.)  In addition to these topics, Plaintiffs have also offered

to produce a witness to testify as to a properly-narrowed subset of Defendants' topic nos. 17, 21-

23, 27, 48, 59, 77 and 78.  (Id. at 56, 57, 59-61, 63, 64, 82, 101-103.)

These responses reflect a thoughtful attempt to discern the information reasonably sought

by Defendants and to refine the conclusory and time-unbounded noticed topics in a way that

would enable Plaintiffs to prepare a witness to testify "fully, completely and unevasively."

Trustees, 2014 WL 5786492, at *3.  The unwillingness of Defendants to refine their other topics

in this fashion has left Plaintiffs with no choice but to seek this relief from the Court.[5]

---

[5] In Trustees, the defendant served with the improper topics "agreed to provide a witness on a
subset of each of those topics for which [it] unilaterally determined it could reasonably prepare
a witness."  Trustees, 2014 WL 5786492, at *2.  The court endorsed this approach because "the
Court has found that the deposition topics for which [plaintiff] seeks to compel a witness are
not appropriate Rule 30(b)(6) deposition topics." Id., at *5.

## CONCLUSION

For the foregoing reasons, the Court should enter a Protective Order limiting Defendants'
Rule 30(b)(6) deposition notices to the topics as to which Plaintiffs have committed to provide
testifying representative witnesses in their responses and objections to those Rule 30(b)(6)
deposition notices.


Dated: December 10, 2015

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
KRISTEN VOORHEES
E-mail: Kristen.Voorhees@skadden.com
DEVIN A. KOTHARI
E-mail: Devin.Kothari@skadden.com
(the foregoing attorneys admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE,**
**  MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

Respectfully submitted,

*s/ Phillip B. Philbin*
PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
MICHAEL D. KARSON
Texas State Bar No. 24090198
E-mail: michael.karson@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

20

## **CERTIFICATE OF CONFERENCE**

On September 8, 2015 and November 13, 2015, the undersigned counsel for Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") conferred with counsel for Defendants regarding the relief requested by this Motion.  On December 2, 2015 counsel for Defendants demanded that Plaintiffs move for a protective order to obtain any relief.

Dated: December 10, 2015                    _s/ P. Anthony Sammi_____
                                              P. Anthony Sammi

21

## CERTIFICATE OF SERVICE

On December 10, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: December 10, 2015                    *s/ Phillip B. Philbin*                          
                                            Phillip B. Philbin

22