# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| ZENIMAX MEDIA INC. and ID SOFTWARE LLC, | Case No.:  3:14-cv-01849-K |
| Plaintiffs, | Hon. Ed Kinkeade |
| v. | |
| OCULUS VR, LLC, PALMER LUCKEY, FACEBOOK, INC., BRENDAN IRIBE and JOHN CARMACK, | |
| Defendants. | |

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

TABLE OF CONTENTS

PAGE

ARGUMENT ..................................................................................................................... 1

   I.    Misappropriation of Trade Secrets (Count 1). .................................................. 1

   II.   Copyright Infringement (Count 2) ...................................................................... 7

   III.  Breach of Contract (Count 3) ............................................................................ 12

   IV.  Tortious Interference with Contract (Count 4) ............................................... 15

   V.   Unfair Competition (Count 5) .......................................................................... 17

   VI.  Conversion (Count 6) ........................................................................................ 19

   VII. Unjust Enrichment (Count 7) .......................................................................... 21

   VIII. Trademark infringement (Count 8) and False Designation (Count 9) ........... 21

   IX.  Exemplary Damages ......................................................................................... 24

CONCLUSION ................................................................................................................. 25

TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Access Telecom, Inc. v. MCI Telecomm. Corp.*,
    197 F.3d 694 (5th Cir. 1999) ................................................................14

*ACS Investors, Inc. v. McLaughlin*,
    943 S.W.2d 426 (Tex. 1997)................................................................15

*Alcatel USA, Inc. v. Cisco Sys., Inc.*,
    239 F. Supp. 2d 660 (E.D. Tex. 2002)....................................................4

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) ................................................................18

*Allied Vista Inc. v. Holt*,
    987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ................................13

*Aloe Creme Labs., Inc. v. Tex. Pharmacal Co.*, 213 F. Supp. 125 (W.D. Tex.
    1963),
    *aff'd*, 335 F.2d 72 (5th Cir. 1964)........................................................22

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
    518 F.3d 321 (5th Cir. 2008) ................................................................22

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
    521 F.3d 472 (5th Cir. 2008) ................................................................15

*Armour v. Knowles*,
    512 F.3d 147 (5th Cir. 2007) ..................................................................9

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
    562 F.3d 699 (5th Cir. 2009) ..........................................................19, 20

*Assoc. Tel. Directory Publishers, Inc. v. Five D's Publ'g Co., Inc.*,
    849 S.W.2d 894 (Tex. App.—Austin 1993, no pet.) ..............................18

*Atl. Richfield Co. v. Misty Prod., Inc.*,
    820 S.W.2d 414 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ....................2

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) ................................................................23

*Bennett v. Reynolds*,
   315 S.W.3d 867 (Tex. 2010)..............................................................................24

*Birchler v. JPMorgan Chase Bank*,
   No. 4:14-CV-81, 2015 WL 1939438 (E.D. Tex. Apr. 29, 2015).............................13

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
   780 F. Supp. 2d 1061 (D. Haw. 2011) .................................................................17

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)...........................................................................................24

*Bohnsack v. Varco, L.P.*,
   668 F.3d 262 (5th Cir. 2012) ...............................................................................3

*Boyd v. State Farm Ins. Cos.*,
   158 F.3d 326 (5th Cir. 1998) .............................................................................3, 9

*Brennan's Inc. v. Dickie Brennan & Co. Inc.*,
   376 F.3d 356 (5th Cir. 2004) ...............................................................................14

*Bridgmon v. Array Sys. Corp.*,
   325 F.3d 572 (5th Cir. 2003) ...............................................................................7

*Brown v. Petrolite Corp.*,
   965 F.2d 38 (5th Cir. 1992) .................................................................................24

*In re C.F. Bean LLC*,
   841 F.3d 365 (5th Cir. 2016) ...............................................................................3

*In re C.F. Bean LLC*,
   841 F.3d at 370–71 .............................................................................................9

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ...............................................................................19

*CCC Grp., Inc. v. S. Cent. Cement, Ltd.*,
   450 S.W.3d 191 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ......................5, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................1

*COC Servs., Ltd. v. CompUSA, Inc.*,
   150 S.W.3d 654 (Tex. App.—Dallas 2004, pet. denied)......................................16

*Coghlan v. Wellcraft Marine Corp.*,
   240 F.3d 449 (5th Cir. 2001) ...............................................................................13

*Comp. Assocs. Int'l, Inc. v. Altai, Inc.*,
   918 S.W.2d 453 (Tex. 1996) ........................................................................6

*Curtis v. M&S Petroleum, Inc.*,
   174 F.3d 661 (5th Cir. 1999) ....................................................................3, 9

*Deauville Corp. v. Federated Dep't Stores Inc.*,
   756 F.2d 1183 (5th Cir. 1985) ...................................................................16

*Dick Meyers Towing Serv., Inc. v. United States*,
   577 F.2d 1023 (5th Cir. 1978) ...................................................................16

*Doubleday & Co. v. Rogers*,
   674 S.W.2d 751 (Tex. 1984) .......................................................................24

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994) .............................................................7, 8, 11

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ........................................................................................4

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ...............................................................................10, 23

*Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*,
   No. 4:13-cv-942, 2015 WL 11120870 (N.D. Tex. Jan. 13, 2015) ..............21

*Fischer v. CTMI LLC*,
   479 S.W.3d 231 (Tex. 2016) .......................................................................12

*Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*,
   No. 3:14-CV-03871, 2016 WL 6947910 (N.D. Tex. Nov. 28, 2016) ...........12

*Gates Rubber Co. v. Bando Chem Indus., Ltd.*,
   9 F.3d 823 (10th Cir. 1993) .........................................................................7

*Gemcraft Homes, Inc. v. Sumurdy*,
   688 F. Supp. 289 (E.D. Tex. 1988) .............................................................17

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ..................................................................................3, 9

*Gen. Univ. Sys., Inc. v. HAL, Inc.*,
   500 F.3d 444 (5th Cir. 2007) .......................................................................2

*GlobeRanger Corp. v. Software AG USA, Inc.*,
   836 F.3d 477 (5th Cir. 2016) ..................................................................5, 17

*Grand Time Corp. v. Watch Factory, Inc.*,
   No. 3:08-cv-1770-K, 2010 WL 92319 (N.D. Tex. Jan. 6, 2010)............................................17

*Guile v. United States*,
   422 F.3d 221 (5th Cir. 2005) ............................................................................................3, 9

*Hagan v. Houston ISD*,
   51 F.3d 48 (5th Cir. 1995) ....................................................................................................16

*Hancock v. Chi. Title Ins. Co.*,
   635 F. Supp. 2d 539 (N.D. Tex. 2009) .................................................................................21

*Hartford Cas. Ins. Co. v. Powell*,
   19 F. Supp. 2d 678 (N.D. Tex. 1998) ...................................................................................24

*Heldenfels Bros. Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992)....................................................................................................21

*Holloway v. Skinner*,
   898 S.W.2d 793 (Tex. 1995)..................................................................................................16

*Homoki v. Conversion Servs., Inc.*,
   717 F.3d 388 (5th Cir. 2013) ................................................................................................15

*Hou. Merc. Exch. Corp. v. Dailey Petrol. Corp.*,
   930 S.W.2d 242 (Tex. App.—Houston [14th Dist.] 1996, no writ) ........................................5

*Int'l Mkt. Brands v. Martin Int'l Corp.*,
   882 F. Supp. 2d 809 (W.D. Pa. 2012)...................................................................................22

*IQ Prods. Co v. Pennzoil Prods. Co.*,
   305 F.3d 368 (5th Cir. 2002) ................................................................................................22

*Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co.*,
   695 S.W.2d 75 (Tex. App.—San Antonio 1985, no pet.)......................................................18

*Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*,
   793 S.W.2d 660 (Tex. 1990)..................................................................................................14

*King v. Ames*,
   179 F.3d 370 (5th Cir. 1999) ..................................................................................................7

*L&W, Inc. v. Shertech, Inc.*,
   471 F.3d 1311 (Fed. Cir. 2006)...............................................................................................8

*La. Contractors Licensing Serv., Inc. v. Am. Contractors Exam Servs., Inc.*,
   13 F. Supp. 3d 547 (M.D. La. 2014),
   *aff'd*, 594 Fed. App'x 243 (5th Cir. 2015)..............................................................................9

*Lawfinders Assocs., Inc. v. Legal Research Center, Inc.*,
  65 F. Supp. 2d 414 (N.D. Tex. 1998) ...................................................................1

*Leibowitz v. City of Mineola, Tex.*,
  660 F. Supp. 2d 775 (E.D. Tex. 2009) ................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)........................................................................................23

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*,
  787 F.3d 716 (5th Cir. 2015) ..............................................................................16

*Luccous v. J.C. Kinley Co.*,
  376 S.W.2d 336 (Tex. 1964)..................................................................................1

*Manon v. Tejas Toyota, Inc.*,
  162 S.W.3d 743 (Tex. App.–Houston [14th Dist.] 2005, no pet.)........................14

*Mapp v. UMG Recordings, Inc*,
  No. 15-602-JWD-RLB, 2016 WL 5329612 (M.D. La. Sept. 21, 2016) ................11

*Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.*,
  797 F.2d 227 (5th Cir. 1986) ..............................................................................15

*Masgas v. Anderson*,
  310 S.W.3d 567 (Tex. App.—Eastland 2010, pet. denied) ....................................6

*MasterCard Int'l Inc. v. Nike, Inc.*,
  164 F. Supp. 3d 592 (S.D.N.Y. 2016)..................................................................19

*Meats by Linz, Inc. v. Dear*,
  No. 3:10-cv-1511, 2011 WL 1515028 (N.D. Tex. Apr. 20, 2011)........................19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)............................................................................................11

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*,
  622 F.3d 361 (5th Cir. 2010) ................................................................................4

*Miller v. Lone Star Tavern, Inc.*,
  593 S.W.2d 341 (Tex. App.—Waco 1979, no pet.)...............................................18

*In re Mud King Prods., Inc.*,
  514 B.R. 496 (Bankr. S.D. Tex. 2014) ................................................................19

*Mylonakis v. M/T GEORGIOS M.*,
  909 F. Supp. 2d 691 (S.D. Tex. 2012) ................................................................16

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
   783 F.3d 527 (5th Cir. 2015) .......................................................................................6, 9

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
   496 F.3d 1231 (11th Cir. 2007) ........................................................................................23

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ..........................................................................................10

*Oreck Corp. v. U.S. Floor Systems, Inc.*,
   803 F.2d 166 (5th Cir. 1986) ............................................................................................22

*Paycom Payroll, LLC v. Richison*,
   758 F.3d 1198 (10th Cir. 2014) ..........................................................................................7

*Philip Morris USA, Inc. v. Lee*,
   547 F. Supp. 2d 667 (W.D. Tex. 2008).............................................................................21

*Phillips v. Frey*,
   20 F.3d 623 (5th Cir. 1994) ...........................................................................................2, 3

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997) ..................................................................................11

*R.J. Suarez Enters., Inc. v. PNYX L.P.*,
   380 S.W.3d 238 (Tex. App.—Dallas 2012, no pet.)..........................................................20

*Recursion Software Inc. v. Interactive Intelligence Inc.*,
   425 F. Supp. 2d 756 (N.D. Tex. 2006) .............................................................................21

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)............................................................................................................1

*Rhino Membranes & Coatings Inc. v. Rhino Seamless Membrane Sys., Inc.*,
   No. 4:06-CV-2112, 2008 WL 4425583 (S.D. Tex. Sept. 30, 2008) ......................................18

*Spear Mkt'g, Inc. v. BancorpSouth Bank*,
   791 F.3d 586 (5th Cir. 2015) ............................................................................................20

*Spectrum Creations, LP v. Carolyn Kinder Int'l, LLC*,
   514 F. Supp. 2d 934 (W.D. Tex. 2007)..............................................................................18

*SPFM, L.P. v. Felix*,
   No. SA-16-cv-179, 2016 WL 5854286 (W.D. Tex. Oct. 5, 2016) .........................................21

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003)...................................................................................................24, 25

*Straus v. DVC Worldwide, Inc.*,
      484 F. Supp. 2d 620 (S.D. Tex. 2007) ..............................................................10

*Sulzer Carbomedics Inc. v. Or. Cardio-Devices Inc.*,
      257 F.3d 449 (5th Cir. 2001) ............................................................................15

*Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*,
      843 S.W.2d 470 (Tex. 1992) .............................................................................15

*Sw. Energy Prod. Co. v. Berry-Helfand*,
      491 S.W.3d 699 (Tex. 2016) ....................................................................3, 4, 13

*Taylor Publ'g Co. v. Jostens, Inc.*,
      216 F.3d 465 (5th Cir. 2000) ............................................................................17

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*,
      637 F.3d 604 (5th Cir. 2011) ..............................................................................1

*Tex. S. Rentals, Inc. v. Gomez*,
      267 S.W.3d 228 (Tex. App.—Corpus Christi 2008, no pet.) ..............................13

*In re Texans CUSO Ins. Grp., LLC*,
      426 B.R. 194 (Bankr. N.D. Tex. 2010) ..............................................................14

*Thomas & Betts Corp. v. Panduit Corp.*,
      108 F. Supp. 2d 968 (N.D. Ill. 2000) .................................................................17

*Trilogy Software, Inc. v. Callidus Software, Inc.*,
      143 S.W.3d 452 (Tex. App.—Austin 2004, pet. denied) .......................................2

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
      No. 15-20084, 2017 WL 113897 (5th Cir. Jan. 11, 2017) ..............................5, 18

*United States v. Jackson*,
      771 F.3d 900 (5th Cir. 2014) ............................................................................20

*Wellogix, Inc. v. Accenture, LLP*,
      716 F.3d 867 (5th Cir. 2013) ..............................................................................2

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................23

15 U.S.C. § 1117(c) ................................................................................................23

15 U.S.C. § 1125(a) ................................................................................................22

17 U.S.C. § 102(b) ...................................................................................................8

17 U.S.C. § 507(b) ..................................................................................................................10

Copyright Act of 1976, Pub. L. 94-553, 90 Stat. 2541 ...........................................5, 17, 18, 20, 21

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ........................................................................20

Tex. Civ. Prac. & Rem. Code Ann. § 38.001 ...........................................................................14

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7)........................................................................24

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11).......................................................................24

Tex. Civ. Prac. & Rem. Code Ann. § 41.003 ............................................................................24

Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a) ........................................................................24

Tex. Civ. Prac. & Rem. Code § 134A.001–008 .......................................................................5, 6

Tex. Civ. Prac. & Rem. Code § 134A.007(a) .......................................................................17, 19

## Other Authorities

*McCarthy on Trademarks and Unfair Competition*, § 23:2.75 .....................................................22

## Rules

Fed. R. Civ. P. 5(b)(2)...........................................................................................................27

Fed. R. Civ. P. 50 ...................................................................................................................1

Fed. R. Civ. P. 50(a) ...............................................................................................................1

Fed. R. Civ. P. 50(a)(1)............................................................................................................1

Local Rule CV-5(a)................................................................................................................27

## Regulations

37 C.F.R. § 202.1(b) ...............................................................................................................8

## Constitutional Provisions

U.S. Const. amend. VII .......................................................................................................10, 23

U.S. Const. amend. XIV, § 1 ...............................................................................................11, 24

Because Plaintiffs have failed to carry their burden of proof on any of their claims, Defendants respectfully ask the Court to grant judgment as a matter of law on all claims under Federal Rule of Civil Procedure 50(a).  Judgment as a matter of law is appropriate where, as here, "a party has been fully heard on an issue during a jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  *See* Fed. R. Civ. P. 50(a)(1).  In considering a Rule 50 motion, the Court should "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation and quotation omitted).  A failure of proof on an essential element of a plaintiff's claim is grounds for judgment in favor of the defendant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

## I.  Plaintiffs' claim for misappropriation of trade secrets (Count 1) fails.

The Court should grant judgment as a matter of law on Plaintiffs' claim for misappropriation of trade secrets for the following eleven reasons.  *First,* Plaintiffs did not prove the existence of any trade secrets, which is an essential element of their claim.  *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 637 F.3d 604, 610 (5th Cir. 2011).  By definition, a trade *secret* must be a secret.  *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964).  Trade secret protection is lost if the owner discloses the secret to someone not bound to keep it or otherwise fails to take reasonable precautions to safeguard the secret.  *Lawfinders Assocs., Inc. v. Legal Research Center, Inc.*, 65 F. Supp. 2d 414, 418–19 (N.D. Tex. 1998).  Plaintiffs failed to put forward any competent evidence that their alleged trade secrets were actually secret, while Defendants' evidence established beyond any dispute that the alleged secrets were readily available public knowledge (for example, expert testimony established that the alleged secrets had been revealed, discussed, and solved in the virtual-reality literature long before 2012) and had been

1

publicly disclosed (for example, in John Carmack's white paper).

*Second*, undisputed evidence showed that Plaintiffs failed to carry their burden to show the existence of trade secrets under the other five relevant factors.  *See generally In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).  Plaintiffs took no real measures to protect their alleged trade secrets. They freely permitted Mr. Carmack's public disclosures and demonstrations, as well as the open-sourcing of their code.  They also never ascribed any value to the code before filing this lawsuit. Moreover, they expended little money or effort to develop the code; Mr. Carmack wrote it as a small, part-time project in less than a year.  Nor did Plaintiffs offer any evidence that the value of the code derived from its being kept secret or that the alleged trade secrets were important to Plaintiffs' competitive advantage.  Plaintiffs thus offered legally insufficient factual support for their claim that the code was a trade secret.

*Third*, Plaintiffs did not prove that Defendants acquired the alleged trade secrets through improper means or the breach of a confidential relationship.  *See Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir. 1994); *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 876–77 (5th Cir. 2013).  Mr. Carmack's employment contract authorized all of his activities.  To the extent the Non-Disclosure Agreement ("NDA") between Plaintiffs and Palmer Luckey is a valid contract, Luckey's conduct was at all times authorized by and consistent with the requirements of the NDA.  *See infra* section III at 12–13.  Indeed, Plaintiffs knew of and approved the displays of their demonstration software on the Rift headset and understood and agreed that these displays advanced their interests.

*Fourth*, Plaintiffs did not prove that Defendants used Plaintiffs' alleged trade secrets. "'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret."  *Gen. Univ. Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (quotation omitted).  The evidence established that the Defendants did not obtain—must less use—the source

code that embodies Plaintiffs' alleged trade secrets. Instead, Defendants independently developed their own source code for the Rift (the few lines of Plaintiffs' code that appeared in Oculus's code repository were never included in any Oculus product).[1] As to Mr. Luckey and Mr. Iribe, there was no evidence that they wrote any of the allegedly infringing source code (indeed, Plaintiffs' evidence affirmatively demonstrated that Mr. Luckey did not write any of the source code for Oculus's Software Development Kit). Plaintiffs therefore failed to adduce competent evidence that Defendants made commercial use of Plaintiffs' source code to Plaintiffs' competitive disadvantage. *See Atl. Richfield Co. v. Misty Prod., Inc.*, 820 S.W.2d 414, 422 (Tex. App.— Houston [1st Dist.] 1991, writ denied).

*Fifth*, undisputed evidence established that Plaintiffs authorized Defendants to use Plaintiffs' alleged trade secrets. *See Phillips*, 20 F.3d at 627 (explaining that "use of the trade secret without authorization from the plaintiff" is an essential element of trade secret misappropriation). Mr. Carmack's employment agreement authorized him to use and disclose the alleged trade secrets for Plaintiffs' benefit. Similarly, the "Proper Purpose" provision of the NDA authorized Mr. Luckey's use of the alleged secrets. *See infra* Section III at 12.

*Sixth*, Plaintiffs put forward legally insufficient evidence to prove that the alleged misappropriation caused any damage. Damages in trade secrets cases may include plaintiff's lost profits, defendant's actual profits, the value a reasonably prudent investor would have paid for the secret, development costs the defendant avoided, or a reasonable royalty. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710–11 (Tex. 2016). Plaintiffs here put on no evidence of their own lost profits, Defendants' actual profits, or avoided development costs. And the only evidence

---

[1] The testimony of Dr. David Dobkin, Plaintiffs' source code expert, failed to establish that Defendants used Plaintiffs' source code by non-literally copying it. *See infra* Section II at 7–9.

they offered of a reasonable royalty or of value to a reasonably prudent investor was the testimony of an expert witness, Daniel Jackson, who testified for less than 30 minutes.  His testimony was conclusory *ipse dixit*.  Damages cannot be awarded on the mere say-so of a hired expert.  *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *In re C.F. Bean LLC*, 841 F.3d 365, 370–71 (5th Cir. 2016); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668–69 (5th Cir. 1999); *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998).  Mr. Jackson's testimony was insufficient proof of damages.  And since his testimony was Plaintiffs' only proof of damages, they have no evidence to support an essential element of their claim.  *See Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279–80 (5th Cir. 2012).

*Seventh*, Mr. Jackson's damages testimony was based on insufficient facts and unreliable applications of both the reasonably-prudent-investor test and the reasonable-royalty test.  Mr. Jackson's testimony about both measures was keyed to the $2 billion acquisition price Facebook paid for Oculus.  But value to a reasonably prudent investor (just like the amount of a reasonable royalty) must be measured at the time of the alleged misappropriation, as the Court instructed the jury.  *See, e.g.*, *Berry-Helfand*, 491 S.W.3d at 711–12; *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 668–73 (E.D. Tex. 2002).  Here, the alleged misappropriation occurred in 2012 and early 2013.  Undisputed evidence showed that in 2012 and 2013—when Oculus was going out for seed financing and Series A financing—the company was valued at less than $100 million.  Mr. Jackson ignored this evidence and instead measured damages based on the $2 billion price Facebook for Oculus in March 2014, more than a year after the alleged misappropriation.  Mr. Jackson's analysis is akin to measuring the value of a lottery ticket *after* the winning numbers have been drawn.  Neither Mr. Jackson nor any other witness offered testimony about how a reasonably prudent investor would have valued Plaintiffs' alleged trade secrets in 2012 or 2013.

Moreover, Mr. Jackson's testimony improperly conflated the value that Facebook paid for Oculus with the value of a reasonably prudent investment in or reasonable royalty for Plaintiffs' seven alleged trade secrets alone.  Texas courts have never recognized the entire market value rule as a measure of trade-secret damages, and there is no reason to predict they would.  *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Even if Texas law allowed trade-secret damages to be awarded under an entire-market-value analysis, the appropriate unit of analysis is the market value of the *product* that incorporates the trade secrets, not the *company* as whole.  *Cf. Alcatel USA*, 239 F. Supp. 2d at 671–72.  In any event, Plaintiffs failed to carry their burden to show that any portion—much less the entire portion—of Oculus's value was attributable to Plaintiffs' alleged trade secrets.  *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 369–70 (5th Cir. 2010); *Hou. Merc. Exch. Corp. v. Dailey Petrol. Corp.*, 930 S.W.2d 242, 248 (Tex. App.—Houston [14th Dist.] 1996, no writ).  There was extensive and undisputed evidence at trial that refuted Mr. Jackson's entire-market-value assumption, and Mr. Jackson's attempt at an apportionment analysis was woefully inadequate (for example, he apportioned damages to parts of the hardware that Plaintiffs did not claim were part of their trade secrets).  Accordingly, his testimony failed to give the jury a valid evidentiary basis for awarding damages.

Mr. Jackson's testimony concerning a reasonable royalty was also counter-factual and unreliable.  His testimony that a reasonable royalty would have been a 20% non-dilutable equity stake in Oculus came with no reasoned explanation, was directly contrary to other evidence, was unduly speculative, and was not supported by reference to industry practice.  As these examples illustrate, Mr. Jackson's testimony failed to give the jury any evidentiary basis for awarding reasonable-royalty damages.  *Cf. CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 202 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  Since damages are an essential element of

Plaintiffs' claim, their failure to introduce legally sufficient damages evidence bars their claim.

*Eighth*, the Copyright Act preempts the claim because the alleged trade secrets are within the subject matter of copyright and the claimed rights are equivalent to exclusive rights available through copyright law. *See GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 484 (5th Cir. 2016). On the facts here, the Plaintiffs must prove the same elements in support of both their copyright and trade-secret theories: that Defendants' use of the claimed material was unauthorized. Moreover, Plaintiffs' claims are preempted because they undermine Congress's decision not to protect un-copyrightable ideas and functions. *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, No. 15-20084, 2017 WL 113897, at *4 (5th Cir. Jan. 11, 2017).

*Ninth,* the Texas Uniform Trade Secrets Act (TUTSA) preempts this claim as against Facebook. Facebook had no involvement with Oculus before September 1, 2013, and TUTSA provides the exclusive remedy for any alleged act of misappropriation that took place on or after September 1, 2013, Tex. Civ. Prac. & Rem. Code § 134A.001–008.

*Tenth*, Plaintiffs' claim against Mr. Carmack is barred by the doctrine of estoppel by contract, which "precludes parties to a valid instrument from denying its force and effect." *See Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied). In particular, the claims are inconsistent with sections 4 and 10.3(a) of Carmack's employment agreement because that agreement permitted non-competitive business activities and conduct necessary to perform Carmack's duties for the benefit of ZeniMax. All of Carmack's interactions with the Defendants were non-competitive with ZeniMax and benefitted ZeniMax.

*Finally,* the statute of limitations bars the claim against Mr. Carmack and Brendan Iribe. At trial, Plaintiffs maintained that the alleged misappropriation of trade secrets began in 2012 and had concluded by January 2013. Plaintiffs did not file suit against Carmack and Iribe until 2016,

more than three years after their claims accrued.   Accordingly, the claim against them is time-barred.   *See Comp. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455–58 (Tex. 1996).

## II.   Plaintiffs' claim of copyright infringement (Count 2) fails.

The Court should grant judgment as a matter of law on Plaintiffs' claim for copyright infringement for the following ten reasons.   *First*, Plaintiffs failed to introduce legally required evidence of substantial similarity.   A finding that Defendants' allegedly infringing work is substantially similar to the protectable elements of Plaintiffs' copyrighted work is an essential element of Plaintiffs' claim.   *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015).   A jury cannot find substantial similarity unless it has made a side-by-side comparison of the two works and found them to be, on the whole, substantially similar.   *See, e.g.*, *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999).   At trial, Plaintiffs failed to move all of the relevant source code into evidence.   Since all of the relevant source code was not in evidence, it was impossible for the jury to make a side-by-side comparison between Plaintiffs' source code and Defendants' source code.   As a consequence, the evidence was insufficient to support a finding of substantial similarity.   *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576–77 (5th Cir. 2003).

*Second,* the testimony of Plaintiffs' expert witness, Dr. David Dobkin, was Plaintiffs' only evidence of substantial similarity, and Dr. Dobkin's failure to properly conduct the abstraction-filtration-comparison test means his testimony is legally insufficient evidence of substantial similarity.   Indeed, Dr. Dobkin's analysis was fatally flawed on all three steps of that test.   Each of these three failings is an independently sufficient basis for rejecting Dr. Dobkin's analysis and granting judgment as a matter of law due to a lack of substantial similarity.

To begin, Dr. Dobkin did not perform the first step, abstraction, which contemplates "segmenting a computer program into successive levels of generality."   *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1343 (5th Cir. 1994).   In his testimony, Dr. Dobkin

never segmented Plaintiffs' computer program into successive levels of abstraction, specified the level of abstraction at which he believed copying had taken place, or documented the results of his abstraction analysis. Because Dr. Dobkin failed to undertake his abstraction analysis "conscientiously and systematically," his testimony cannot establish substantial similarity. *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1205–06 (10th Cir. 2014) (quoting *Gates Rubber Co. v. Bando Chem Indus., Ltd.*, 9 F.3d 823, 834 (10th Cir. 1993)).

In addition, Dr. Dobkin improperly applied the filtration step of the abstraction-filtration-comparison test and failed to properly distinguish between copyrightable and noncopyrightable material. Copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle or discovery." 17 U.S.C. § 102(b). It is only "the particular manner in which [ideas, procedures, processes, etc.] are expressed or described in a writing" that is copyrightable. 37 C.F.R. § 202.1(b). The purpose of the filtration analysis is to "isolate noncopyrightable elements from each particular level of a program" and filter them out of the infringement analysis. *Eng'g Dynamics*, 26 F.3d at 1344. But Dr. Dobkin's filtration analysis got things exactly backwards. He filtered out all of the copyrightable elements of Plaintiffs' program and instead focused his infringement analysis on ideas, functions, and other nonprotectable material. As a consequence, even if Dr. Dobkin's testimony is credited as true, it fails to establish that Defendants' work copied any protectable aspects of Plaintiffs' work.

Finally, Dr. Dobkin also failed to perform a proper comparison between the protectable elements of Plaintiffs' computer program and Defendants' allegedly infringing program. Dr. Dobkin's comparative testimony was too conclusory to constitute legally sufficient evidence of misappropriation. For each of the seven alleged trade secrets, Dr. Dobkin's comparison step consisted of comparing small portions of Plaintiffs' source code to small portions of a single

version of Oculus's source code (taken from the early days of the company's existence), stating that copying had occurred, and then asserting—without explanation, evidence, or support—that the same comparative analysis applied to other, newer versions of the Oculus code.  Dr. Dobkin's failure to analyze the later versions of the code vitiates his analysis.  *Cf. L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1317–18 (Fed. Cir. 2006).  Even as to the one version of the code he testified about, Dr. Dobkin's analysis consisted of nothing more than unsubstantiated assertions: he simply showed the jury several demonstrative exhibits containing colored boxes around various parts of the two codes and then promised (without explaining why) that he was absolutely certain copying had occurred.  This type of conclusory expert testimony is not competent evidence.  *See, e.g.*, *Boyd*, 158 F.3d at 331; *Guile*, 422 F.3d at 227, *Joiner*, 522 U.S. at 146.

*Third*, with respect to all of their source code except for the shader code (which is separately discussed below), Plaintiffs failed to introduce sufficient evidence of factual copying, another essential element of their claim.  *See Nola Spice Designs*, 783 F.3d at 549.  Proof that Defendants had access to the copyrighted work before creation of the infringing work can support an inference of factual copying, but Plaintiffs failed to adduce proof of access.  There was no evidence that Defendants received the relevant source code at any time (and certainly not before the Software Development Kit ("SDK") was created).  Since Plaintiffs failed to prove that Defendants had access to Plaintiffs' code (except with respect to the shader code), Plaintiffs' evidence of factual copying is legally insufficient.  *Cf. Armour v. Knowles*, 512 F.3d 147, 152–56 (5th Cir. 2007).  In addition, there was no evidence that Mr. Luckey or Mr. Iribe wrote any of allegedly infringing source code (indeed, Plaintiffs' evidence affirmatively demonstrated that Mr. Luckey did not write any of the source code for the SDK).  They could not have copied Plaintiffs' code into the Oculus SDK because they did not write the Oculus SDK.

*Fourth*, with respect to the shader code, Plaintiffs' evidence at trial was insufficient to establish that Defendants made more than de minimis use of Plaintiffs' shader code. The testimony established that Plaintiffs' shader code constituted seven lines out of millions of lines of code in Defendants' code base, that none of Defendants' software uses or implements Plaintiffs' shader code, and that Oculus employees independently developed their own shader code. In light of these facts, the portion of Plaintiffs' claim that rests on literal copying of the shader code fails due to insufficient evidence of copying that was more than de minimis. *See La. Contractors Licensing Serv., Inc. v. Am. Contractors Exam Servs., Inc.*, 13 F. Supp. 3d 547, 552–54 (M.D. La. 2014), *aff'd*, 594 Fed. App'x 243 (5th Cir. 2015) (per curiam).

*Fifth*, Plaintiffs failed to prove that they suffered any damages as a result of Defendants' alleged acts of infringement. Plaintiffs' only evidence of damages was the testimony of their expert witness, Mr. Jackson, and Mr. Jackson's only testimony specific to copyright damages was a single assertion that damages could be awarded on a reasonable-royalty basis. For the reasons explained above, this testimony was too conclusory and unsupported to be competent evidence of actual damages. *See supra* section I at 3. Moreover, statutory damages are unavailable under the Copyright Act because Plaintiffs did not argue for them at trial and the jury was not asked to award them. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347–55 (1998) (recognizing a Seventh Amendment right to trial by jury trial on statutory damages for copyright).

*Sixth*, and as explained above in the discussion of trade-secret damages, Mr. Jackson's testimony on reasonable-royalty damages was based on insufficient facts and an unreliable application of the reasonable-royalty test to the facts of this case. *See supra* section I at 3–5. As such, his testimony is legally insufficient to establish damages on Plaintiffs' claim of copyright-infringement. *See, e.g., Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1089 (9th Cir. 2014); *Straus v.*

*DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648–49 (S.D. Tex. 2007).

*Seventh*, the statute of limitations bars the claim against Mr. Carmack and Mr. Iribe. Carmack and Iribe were not joined as Defendants in this case until 2016. The evidence at trial showed that the alleged acts of infringement occurred—and that Plaintiffs knew of those acts—in 2012 and January 2013, more than three years before Plaintiffs sued Carmack and Iribe. Accordingly, Plaintiffs' claim against them is time-barred. *See* 17 U.S.C. § 507(b).

*Eighth*, the abstraction-filtration-comparison test is unconstitutionally vague and therefore void. The test fails to give persons of ordinary intelligence a reasonable opportunity to know what is prohibited, and people of common intelligence must necessarily guess at its meaning and differ as to its application. *See Leibowitz v. City of Mineola, Tex.*, 660 F. Supp. 2d 775, 786 (E.D. Tex. 2009). Accordingly, any finding of liability that depends on an application of the abstraction-filtration-comparison test (particularly as it was applied here by Dr. Dobkin) violates Defendants' rights under the Due Process Clause.

*Ninth*, the abstraction-filtration-comparison test is not a legally valid method of determining whether a software copyright has been infringed. Defendants acknowledge that this argument is foreclosed by binding precedent, *see Eng'g Dynamics*, 26 F.3d at 1342–43, and raise it here only to preserve it for further review.

*Finally*, Plaintiffs' claims for vicarious and contributory infringement fail.[2] To begin, for the reasons discussed above, Plaintiffs did not put forth sufficient evidence of direct infringement, and a "claim of vicarious or contributory infringement cannot lie absent a showing of direct infringement by a third party." *Mapp v. UMG Recordings, Inc*, No. 15-602-JWD-RLB, 2016 WL

---

[2] Plaintiffs pleaded vicarious infringement only against Mr. Carmack and Mr. Iribe, and Plaintiffs pleaded contributory infringement only against Facebook.

5329612, at *13 (M.D. La. Sept. 21, 2016) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n.12 (2005).  For contributory infringement, Plaintiffs offered no evidence that Facebook intended to induce or encourage infringement; and of course, Facebook was not even involved with Oculus at the time.  For vicarious infringement, Plaintiffs did not show that either Mr. Iribe or Mr. Carmack had the right and ability to supervise, or a direct financial interest in, the allegedly infringing conduct.  *See Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 553 (N.D. Tex. 1997).

## III.    Plaintiffs' claim for breach of contract (Count 3) fails as a matter of law.

The Court should grant judgment as a matter of law on Plaintiffs' breach-of-contract claim for the following six reasons.[3]  *First*, the NDA fails for indefiniteness and therefore is unenforceable.  The NDA permits Mr. Luckey to use Plaintiffs' "Proprietary Information" for any "Proper Purpose."  But the NDA does not define "Proper Purpose."  Instead, it expressly contemplates that there will be another, future agreement between the parties about what constitutes a Proper Purpose.  The meaning of "Proper Purpose" is a material, essential term of the NDA.  Because the NDA does not reflect an agreement as to its meaning, the NDA is an unenforceable agreement to agree.  *Cf. Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, No. 3:14-CV-03871, 2016 WL 6947910, at *7–*8 (N.D. Tex. Nov. 28, 2016).

*Second*, and in the alternative, under any reasonable definition of the contractual term "Proper Purpose," the evidence at trial established that Mr. Luckey did not breach the NDA.  The Court can use traditional tools of contract interpretation (such as implying reasonable terms or looking to course of performance) to supply the essential, missing definition of "Proper Purpose."

---

[3]  For simplicity, this section refers only to Mr. Luckey, but if the jury finds that Oculus is a party to the NDA, all of the arguments in this section apply equally to (and are made on behalf of) Oculus.

*See Fischer v. CTMI LLC*, 479 S.W.3d 231, 239–40 (Tex. 2016).   Under any reasonable definition of that term, all of the purposes for which Mr. Luckey allegedly used Plaintiffs' Proprietary Information were proper (to create publicity for *Doom 3 BFG*; to generate extra sales of the game; to create and market a new platform for which Plaintiffs can develop and sell video games; and to create an opportunity for Plaintiffs to invest in Oculus on the ground floor).   Accordingly, even assuming Mr. Luckey used or disclosed Plaintiffs' Proprietary Information, there is no evidence that he breached his obligation under the NDA to do so only for a Proper Purpose.

*Third*, there is no evidence that Mr. Luckey breached the NDA by using or disclosing Plaintiffs' Proprietary Information.   The NDA's definition of Proprietary Information excludes all information that is public knowledge, and all of the information that Plaintiffs claim Mr. Luckey used or disclosed was public information.   Mr. Luckey never had access to any of Plaintiffs' source code.   Mr. Luckey simply displayed the *Doom 3 BFG* and VR Testbed demonstrations on his Rift prototype headset.   Nothing about those demonstrations was confidential—indeed, Plaintiffs themselves publicly displayed these same demonstrations in 2012 at industry conventions such as E3 and QuakeCon.   Plaintiffs' eagerness to engage in these public displays confirms both that the demonstrations were not Proprietary Information and also that Mr. Luckey's displays could not have caused any harm to Plaintiffs.

*Fourth*, Plaintiffs produced no competent evidence of damages.   Plaintiffs' only evidence of damages was the testimony of their expert witness, Daniel Jackson.   For the reasons explained above, Mr. Jackson's testimony was too conclusory and unsupported to establish damages.   *See supra* section I at 3.

*Fifth*, Plaintiffs failed to offer proper proof of breach-of-contract damages.   "Determining the proper method for measuring [contract] damages is a question of law for the court."   *Tex. S.*

*Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 261–62 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Allied Vista Inc. v. Holt*, 987 S.W.2d 138 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)). Mr. Jackson testified—and Plaintiffs' counsel contended in closing argument—that the jury could award restitution damages on the breach-of-contract claim under a theory of unjust enrichment. Not true. Under Texas law, unjust-enrichment damages are not available for breach of contract. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001); *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81, 2015 WL 1939438, at *6 (E.D. Tex. Apr. 29, 2015); *Berry–Helfand*, 491 S.W.3d at 728 n.13. Mr. Jackson also testified that the jury could award damages on a reasonable-royalty theory, but this, too, was incorrect. Reasonable-royalty damages give a plaintiff the benefit of a bargain that was never made (a hypothetical royalty agreement), while contract plaintiffs may recover only those damages that give them the benefit of their actual bargain. *See In re Texans CUSO Ins. Grp., LLC*, 426 B.R. 194, 209 (Bankr. N.D. Tex. 2010); *see also Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 371 (5th Cir. 2004) (observing that "a reasonable royalty" is "much less familiar as a measure of contract damages"). Thus, Plaintiffs' only evidence of contract damages was keyed to two measures of damages that are unavailable as a matter of law. Plaintiffs provided no evidence that they would have made more money had the alleged breaches not occurred; in fact, Plaintiffs had no intention or capability to compete in virtual reality. Since damages are an essential element of a breach-of-contract claim, *CCC Grp.*, 450 S.W.3d at 196, Plaintiffs' failure to introduce any competent evidence of damages bars their claim.

*Sixth*, Plaintiffs' claim that they are entitled to recover attorneys' fees on their breach-of-contract claim suffers from a total failure of proof. Under Texas Civil Practice and Remedies Code § 38.001, a plaintiff seeking attorneys' fees must prove to the jury as part of the proof of damages

the amount and reasonableness of any fees incurred.  *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751–52 (Tex. App.–Houston [14th Dist.] 2005, no pet.).  Yet Plaintiffs offered no evidence of the number of hours their attorneys worked, their attorneys' rates, or the reasonableness of the fees incurred.  Therefore, Plaintiffs cannot recover their attorneys' fees as damages on this claim.

## IV.   Plaintiffs' claim for tortious interference with contract (Count 4) fails.

The Court should grant judgment as a matter of law on Plaintiffs' claim for tortious interference with contract for the following eight reasons.  *First*, the allegedly interfered-with contract (the NDA) is not valid or enforceable.  *See supra* section III at 12.  There can be no tortious interference with an invalid contract.  *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990).

*Second*, Plaintiffs did not prove that Facebook's alleged interference caused a breach of the NDA.  As discussed above, Luckey did not breach the NDA.  *See supra* section III at 12–13. "[M]erely inducing a contract obligor to do what it has a right to do is not actionable as tortious interference with a contract."  *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013) (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).  Without a breach of the NDA by Luckey, there can be no tortious interference by Facebook.

*Third*, Plaintiffs did not prove that the alleged interference caused any damage.  Damages for tortious interference are typically the same as damages for breach of contract, *see Homoki*, 717 F.3d at 398, and Plaintiffs did not show any damages for breach of contract, *see supra* Section III at 13–14.  Additional damages are limited to restoring the plaintiff's losses, not disgorging the defendant's gains.  *See Marcus, Stowell & Beye Gov't Secs., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 231–32 (5th Cir. 1986); *Sulzer Carbomedics Inc. v. Or. Cardio-Devices Inc.*, 257 F.3d 449, 455 (5th Cir. 2001).  Because Plaintiffs did not show that the alleged interference caused them to

suffer any losses, they have no evidence of damages.

*Fourth*, Plaintiffs offered no evidence that Facebook willfully and intentionally interfered with the NDA, which is an essential element of their claim. *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). To carry their burden on this point, Plaintiffs were required to show that Facebook had "actual knowledge of the contract" at the time of its alleged act of interference. *See Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008). But undisputed evidence at trial established that Facebook did not even know the NDA existed until after it made the decision to acquire Oculus. Plaintiffs argued at trial that Facebook negligently proceeded with the transaction without adequate diligence, but even if that were true (and it is not), it would not establish actionable interference with the NDA. *See Dick Meyers Towing Serv., Inc. v. United States*, 577 F.2d 1023, 1024 (5th Cir. 1978) (per curiam).

*Fifth*, Plaintiffs failed to establish a legally actionable act of interference. Under Texas law, a parent company cannot tortiously interfere with the contract of its wholly owned subsidiary. *See Deauville Corp. v. Federated Dep't Stores Inc.*, 756 F.2d 1183, 1196–97 (5th Cir. 1985); *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995). Oculus is Facebook's wholly owned subsidiary. To the extent that the jury finds Oculus is a party to the NDA, Facebook cannot be liable for tortious interference with the NDA. Similarly, Mr. Luckey is a Facebook employee. A corporation cannot tortiously interfere with a contract to which one of its employees is a party when the contract relates to the employee's job duties. *Cf. COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 675 (Tex. App.—Dallas 2004, pet. denied). Facebook cannot have tortiously interfered with the NDA simply by acquiring a party to the agreement (in the case of Oculus) or hiring a party to the agreement (in the case of Mr. Luckey).

*Sixth*, Plaintiffs offered no evidence that Facebook's alleged act of interference

proximately caused Plaintiffs' injuries.  To carry their burden on proximate cause, Plaintiffs had

to prove that Facebook took an active part in persuading Mr. Luckey to breach the NDA.  *See*

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 731 (5th Cir. 2015).  But the

evidence established that Mr. Luckey's alleged breaches of the NDA took place in 2012 and early

2013, long before he had contact with Facebook.  Where, as here, the alleged breach of contract

took place before the alleged act of interference, the act of interference cannot possibly have been

the cause of the breach.  *See Hagan v. Houston ISD*, 51 F.3d 48, 52 (5th Cir. 1995); *see also*

*Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 738 (S.D. Tex. 2012).

*Seventh*, TUTSA preempts this claim.  TUTSA preempts any claim that seeks a civil

remedy for the misappropriation of a trade secret.  Tex. Civ. Prac. & Rem. Code § 134A.007(a).

Plaintiffs' tortious-interference claim seeks such a remedy.  *See* Second Am. Compl. (Dkt. 610)

¶¶162, 176.  Accordingly, the claim is preempted.  *See, e.g.*, *BlueEarth Biofuels, LLC v. Hawaiian*

*Elec. Co.*, 780 F. Supp. 2d 1061, 1077 (D. Haw. 2011) (Hawaii law); *Thomas & Betts Corp. v.*

*Panduit Corp.*, 108 F. Supp. 2d 968, 976 (N.D. Ill. 2000) (Illinois law).

*Finally*, the Copyright Act preempts this claim.  The Copyright Act "preempts state claims

that seek to provide copyrightable subject matter with the same protections that federal law

provides."  *GlobeRanger*, 836 F.3d at 484.  Here, Plaintiffs' tortious-interference claim seeks to

provide its copyrightable source code with the same protections (specifically, protections against

unauthorized, uncompensated use) that federal law provides.  Thus, the claim is preempted.  *Cf.*

*Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 295 (E.D. Tex. 1988).

## V.      Plaintiffs' claim of unfair competition (count 5) fails.

The Court should grant judgment as a matter of law on Plaintiffs' claim for unfair

competition for the following six reasons.  *First*, Plaintiffs did not prove an act of unfair

competition.  To prevail on a common law unfair-competition claim, a plaintiff must prove an

illegal act by the defendant that interfered with the plaintiff's ability to conduct business.  *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).  The plaintiff must demonstrate "at least an independent tort if not a violation of criminal law."  *Grand Time Corp. v. Watch Factory, Inc.*, No. 3:08-cv-1770-K, 2010 WL 92319, at *3 (N.D. Tex. Jan. 6, 2010).  For all the reasons explained in this motion, Plaintiffs have failed to prove an independent tort or criminal act.  Thus, this claim fails as a matter of law.

*Second*, Plaintiffs offered no evidence that any act by Defendants proximately caused interference with Plaintiffs' ability to conduct business.  For example, Plaintiffs failed to prove that Defendants engaged in an illegal act from which "deception would naturally and probably result."  *See Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co.*, 695 S.W.2d 75, 78 (Tex. App.—San Antonio 1985, no pet.).  Nor did Plaintiffs offer sufficient evidence that Defendants wrongfully caused the departure of the so-called "id Five."  And there is no evidence that a breach of the NDA (if any) impacted Plaintiffs' business; indeed, the record is clear that Plaintiffs had neither the intention nor the capability to develop virtual reality on their own.

*Third*, Plaintiffs' evidence of damages was legally insufficient.  For the reasons explained above, the testimony of Plaintiffs' damages expert, Mr. Jackson, was too conclusory and unsupported to establish damages.  *See supra* section I at 3.

*Fourth*, Plaintiffs failed to offer proper proof of unfair-competition damages.  The only damages Mr. Jackson opined about were based on a theory of unjust enrichment.  Texas law does not recognize unjust enrichment as a valid measure of damages for an unfair competition claim. *Assoc. Tel. Directory Publishers, Inc. v. Five D's Publ'g Co., Inc.*, 849 S.W.2d 894, 898 (Tex. App.—Austin 1993, no pet,) ("The measure for damages in an action for unfair competition is lost profits"); *Miller v. Lone Star Tavern, Inc.,* 593 S.W.2d 341, 345–46 (Tex. App.—Waco 1979, no

pet.); *Rhino Membranes & Coatings Inc. v. Rhino Seamless Membrane Sys., Inc.*, No. 4:06-CV-2112, 2008 WL 4425583, at \*23 (S.D. Tex. Sept. 30, 2008).  Because Plaintiffs have no evidence of legally allowable damages, they are foreclosed from recovery.

*Fifth*, the Copyright Act preempts this claim.  Plaintiffs conceded in their complaint that this claim concerns intellectual property that is within the subject matter of copyright.  Dkt. 610 ¶¶ 179, 180, 184.  Further, the Fifth Circuit has acknowledged that "Texas's unfair competition by misappropriation action does not afford protection materially different from federal copyright law."  *Ultraflo*, *supra*, at \*4 (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787–89 (5th Cir. 1999)); *Spectrum Creations, LP v. Carolyn Kinder Int'l, LLC*, 514 F. Supp. 2d 934, 950 (W.D. Tex. 2007).  Therefore, federal copyright law preempts the unfair-competition claim.

*Finally*, as against Facebook, this claim is also preempted by TUTSA.  The claim seeks a common-law remedy based on misappropriation of trade secrets that took place on or after September 1, 2013.  *See* Tex. Civ. Prac. & Rem. Code § 134A.007(a).  Thus, it falls within the scope of TUTSA preemption.  *See, e.g.*, *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 606–07 (S.D.N.Y. 2016) (Oregon law).

## VI.    Plaintiffs conversion claim (count 6 fails).

The Court should grant judgment as a matter of law on Plaintiffs' claim for conversion for the following seven reasons.  *First,* Plaintiffs failed to offer sufficient proof that Mr. Carmack deprived them of tangible property.  Under Texas law, conversion claims only extend to physical property.  *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).  Plaintiff's claim that Carmack copied electronic documents does not give rise to a conversion claim, and Plaintiffs submitted no evidence that any physical components belonged to Plaintiffs.  *Cf. Meats by Linz, Inc. v. Dear*, No. 3:10-cv-1511, 2011 WL 1515028, at \*6 (N.D. Tex. Apr. 20, 2011).

*Second*, there is no evidence that Plaintiffs were "deprived of possession of the information

or [their] own ability to possess the data." *In re Mud King Prods., Inc.*, 514 B.R. 496, 516 (Bankr. S.D. Tex. 2014).   Carmack merely copied the files.   He did not delete them from Plaintiffs' computers or otherwise remove them from Plaintiffs' possession.   Plaintiffs never lost control over or the ability use the copied data.

*Third*, there is no evidence that Plaintiffs demanded that Mr. Carmack return the allegedly converted property.   Under Texas law, a plaintiff cannot establish a claim for conversion unless it presents evidence that it made such a demand or that such a demand would have been futile.   *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).   Plaintiffs failed to present any such evidence and, in fact, never made a demand.

*Fourth*, Texas law requires proof that "the defendant refused" to return Plaintiffs' allegedly converted property, *ibid.*, and there is no such proof here.   Uncontroverted testimony at trial established that Mr. Carmack gave Plaintiffs the USB drive containing the copied files; he also offered to delete all copies of the disputed files off of his computers.   Thus, Plaintiffs have not, and indeed cannot, prove that Carmack refused to return their allegedly converted property.

*Fifth*, Plaintiffs' conversion claim is moot.   Plaintiffs do not seek damages on this claim. The only other potential remedy is "the return of the property."   *R.J. Suarez Enters., Inc. v. PNYX L.P.*, 380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, no pet.).   But the files have already been returned; Plaintiffs have possession of the USB drive.   Plaintiffs have refused Mr. Carmack's offer to delete all copies of the files off of his personal devices, but that refusal does not give rise to an ongoing, live dispute.   Plaintiffs are the only obstacle standing in the way of the relief they seek. Because the Court's intervention is not needed to resolve this claim, it is moot.   *See United States v. Jackson*, 771 F.3d 900, 902–03 (5th Cir. 2014).

*Sixth*, the Copyright Act preempts Plaintiffs' conversion claim.   In the Fifth Circuit,

conversion claims based on alleged improper copying or use of intangible confidential information are preempted by the Copyright Act. *See Spear Mkt'g, Inc. v. BancorpSouth Bank*, 791 F.3d 586, 597–98 (5th Cir. 2015). Here, Plaintiffs claim that Carmack converted intangible digital files such as source code and e-mails. Thus, this claim is preempted.

*Seventh*, the statute of limitations bars Plaintiffs' conversion claim. The statute of limitations for conversion of personal property is two years after the day the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Here, Carmack allegedly converted the disputed files no later than June 2013. Plaintiffs did not sue him for conversion until 2016, more than two years later. Therefore, Plaintiffs' conversion claim is time-barred.

## VII.   Plaintiffs claim of unjust enrichment (count 7) fails.

The Court has already effectively dismissed Plaintiffs' unjust-enrichment claim by declining to charge the jury on it as an independent cause of action. The Court should formalize that dismissal and grant judgment as a matter of law on this claim for each of the following three reasons. *First*, under Texas law unjust enrichment is a theory of recovery on certain torts, not an independent claim. *See Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009). *Second*, Plaintiffs did not show any evidence of fraud, duress, or exercise of undue influence by Defendants, as is required for a remedy sounding in unjust enrichment. *See Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). *Third*, the Copyright Act preempts the claim because the allegations are qualitatively equivalent to copyright infringement. *See Recursion Software Inc. v. Interactive Intelligence Inc.*, 425 F. Supp. 2d 756, 768–69 (N.D. Tex. 2006).

## VIII.   Plaintiffs' claims for trademark infringement (count 8) and false designation (count 9) fail.

The Court should grant judgment as a matter of law on Plaintiffs' claims for trademark

infringement and false designation of origin for the following five reasons.[4]  *First*, Plaintiffs' false-designation claim fails because Plaintiffs did not produce any evidence that they own—or that Defendants infringed—any unregistered marks.  This is an essential element of a claim for false-designation.  *SPFM, L.P. v. Felix*, No. SA-16-cv-179, 2016 WL 5854286, at *4 (W.D. Tex. Oct. 5, 2016).  Because there is no evidence that Plaintiffs own any unregistered marks, Plaintiffs have failed to prove an essential element of their false-designation claim.

*Second*, Plaintiffs did not even attempt to offer evidence that Defendants' use of Plaintiffs' marks created a likelihood of consumer confusion.  This is an essential element of Plaintiffs' claims both for trademark infringement and false designation.  *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008); *IQ Prods. Co v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *see also* 15 U.S.C. § 1125(a).  Eight factors are relevant to whether the use of a trademark is likely to cause confusion: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."  *Am. Rice*, 518 F.3d at 329 (quoting *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)).  Typically, trademark plaintiffs offer expert testimony on these factors. *See Int'l Mkt. Brands v. Martin Int'l Corp.*, 882 F. Supp. 2d 809, 815 (W.D. Pa. 2012) (citing *McCarthy on Trademarks and Unfair Competition*, § 23:2.75)).  Here, Plaintiffs offered nothing—no testimony (expert or otherwise), no consumer surveys, no evidence of any kind—to establish a likelihood of confusion.  This total failure of proof on an essential element defeats both of Plaintiffs' claims.

---

[4] These claims are addressed together because they have essentially the same elements. *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 4:13-cv-942, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015) (citing *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008)).

*Third*, Plaintiffs offered no evidence of damages.  Plaintiffs' damages expert, Mr, Jackson, declined to offer any opinion on damages in connection with the trademark-infringement and false-designation claims.  Indeed, Mr. Jackson conceded that Plaintiffs could not show lost profits, one of the available measure of damages on these two claims.  Neither Mr. Jackson nor Robert Altman (the CEO of ZeniMax) nor any other witness testified that Plaintiffs had suffered an injury to their reputation or goodwill, seen a loss of sales or profits, or incurred expenses in preventing or correcting consumer deception.  Given the absence of any proof of pecuniary loss, Plaintiffs are not entitled to damages.  *See Aloe Creme Labs., Inc. v. Tex. Pharmacal Co.*, 213 F. Supp. 125, 128 (W.D. Tex. 1963), *aff'd*, 335 F.2d 72 (5th Cir. 1964).  Likewise, Plaintiffs cannot attain an award of Defendants' profits because they did not "prove defendant's sales."  *See* 15 U.S.C. § 1117(a).  In addition, an award of damages is inappropriate under "principles of equity."  *Id.* Finally, statutory damages are unavailable, both because Plaintiffs offered no evidence of counterfeit marks, *see id.* § 1117(c), and because Plaintiffs neither argued for them at trial nor asked the jury to award them, *cf. Feltner*, 523 U.S. at 347–55 (discussing the Seventh Amendment right to jury determination of statutory damages under the Copyright Act).

*Fourth*, Plaintiffs failed to introduce any evidence of proximate causation.   To prevail on their claims, Plaintiffs needed to "show economic or reputational injury flowing directly from" Defendants' infringement of their marks.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014).  Plaintiffs did not carry this burden.  Plaintiffs introduced no evidence of trademark-infringement or false-designation damages; their entire damages case was keyed to Defendants' alleged acts of trade-secret misappropriation and copyright infringement. Nothing in the evidence established any causal link between the alleged acts of trademark infringement and false designation and any economic or reputational injury to Plaintiffs.  Plaintiffs

thus failed to offer evidence on an essential element of their claim.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007).

*Finally*, Defendants established beyond peradventure all the essential elements of the defense of nominative fair use.  The nominative-fair-use doctrine permits one person to "use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 488 (5th Cir. 2008) (internal quotation omitted).  Here, uncontroverted testimony at trial established that, to the extent Defendants used Plaintiffs' marks, the used them to truthfully identify Plaintiffs' video games so that users would know which games would be compatible with the Rift prototype and could compare the virtual-reality experience of those games against the game experience on other platforms.  Indeed, for the same reasons, Plaintiffs themselves announced months before the Kickstarter video that their *Doom 3 BFG* game would be compatible with the Rift.  Defendants cannot be liable for repeating this fact.

## IX.    Plaintiffs' claim for exemplary damages fails.

The Court should grant judgment as a matter of law that exemplary damages are unavailable for each of the following three reasons.  *First*, Plaintiffs did not prove by clear and convincing evidence that any harm to Plaintiffs resulted from fraud, malice, or gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003; *Hartford Cas. Ins. Co. v. Powell*, 19 F. Supp. 2d 678, 682 (N.D. Tex. 1998).  Plaintiffs do not allege fraud.  Moreover, there is no evidence that Defendants acted with a "specific intent … to cause substantial injury or harm to the claimant," as required for malice, or with conscious indifference to "an extreme degree of risk, considering the probability and magnitude of the potential harm to others," as required for gross negligence.  Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7) & (11); *see also Bennett v. Reynolds*, 315 S.W.3d 867, 871–72 (Tex. 2010).  Indeed, Plaintiffs do not even claim to have suffered loss, much less that

Defendants intended or were consciously indifferent to it.

*Second*, Plaintiffs did not prove actual damages on any of their claims.  Under Texas, law, "'recovery of actual damages is a prerequisite to receipt of exemplary damages.'"  *Brown v. Petrolite Corp.*, 965 F.2d 38, 48–49 (5th Cir. 1992) (quoting *Doubleday & Co. v. Rogers*, 674 S.W.2d 751, 754 (Tex. 1984)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a).  Because Plaintiffs did not show sufficient evidence of actual damages on any claim, exemplary damages are unavailable.

*Third*, on the facts presented here the Due Process Clause prohibits any award of exemplary damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).  Plaintiffs' request for billions of dollars in punitive damages is grossly excessive and arbitrary because it is entirely unhinged from the "three guideposts" enunciated by the Supreme Court: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Campbell*, 538 U.S. at 418. Plaintiffs failed to present any evidence that would have given the jury a reasoned, evidence-based, and non-arbitrary method for determining the amount of an award of exemplary damages. In particular, any punitive award would be constitutionally "suspect" because the evidence shows none of the factors of reprehensible conduct: (a) physical rather than economic harm; (b) indifference to the health or safety of others; (c) a financially vulnerable target; (d) repeated conduct over a substantial period; or (e) intentional malice, trickery, or deceit.  *Id.* at 419.

### CONCLUSION

For all of these reasons, Defendants ask the Court to grant judgment as a matter of law on all of Plaintiffs' claims.

Dated:  January 30, 2017

Respectfully submitted,

/s/ Richard A. Smith

Michael G. Rhodes (*pro hac vice*)
mrhodes@cooley.com
**COOLEY LLP**
101 California St., 5th Floor
San Francisco, California 94111
Phone: (415) 693-2000

Richard A. Smith
Texas Bar No. 24027990
richard@rsmithpc.com
**RICHARD SMITH PC**
Campbell Centre I
8350 N. Central Expressway
Suite 1111
Dallas, Texas 75206
Phone: (214) 242-6484

Heidi L. Keefe (*pro hac vice*)
hleefe@cooley.com
Mark R. Weinstein (*pro hac vice*)
mweinstein@cooley.com
Elizabeth L. Stameshkin (*pro hac vice*)
lstameshkin@cooley.com
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Phone: (650) 843-5000

Elizabeth Y. Ryan
Texas Bar No. 24067758
eryan@lynnllp.com
**LYNN PINKER COX & HURST LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: (214) 981-3821

Beth A. Wilkinson (*pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Brant W. Bishop (*pro hac vice*)
bbishop@wilkinsonwalsh.com
Kosta S. Stojilkovic (*pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
**WILKINSON WALSH + ESKOVITZ LLP**
1900 M Street NW, Suite 800
Washington, DC 20036
Phone: (202) 847-4000

*Attorneys for Defendants*
*Oculus VR, LLC, Palmer Luckey,  Facebook, Inc.,*
*Brendan Iribe and John Carmack*

### CERTIFICATE OF SERVICE

On January 30, 2017, I hereby certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  I hereby certify that I have served all counsel who are deemed to have consented to electronic service or by another manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Heidi L. Keefe*
Heidi L. Keefe

27