IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and<br>ID SOFTWARE LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>OCULUS VR, LLC, PALMER LUCKEY,<br>FACEBOOK, INC., BRENDAN IRIBE, and<br>JOHN CARMACK,<br><br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL CASE NO. 3:14-cv-01849-K** |

## **PLAINTIFFS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**

P. Anthony Sammi
Kurt Wm. Hemr
Christopher A. Lisy
James Y. Pak
William J. Casey
**SKADDEN, ARPS, SLATE,**
　　**MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036

Dated: January 30, 2017

Phillip B. Philbin
Michael D. Karson

**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

*Attorneys for Plaintiffs*
*ZeniMax Media Inc. and id Software LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

LEGAL STANDARD...................................................................................................1

ARGUMENT ..............................................................................................................1

I.   ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
     ON THE FIRST ELEMENT OF ITS COPYRIGHT INFRINGEMENT CLAIM..............1

     A.   The Evidence Offered At Trial ...............................................................2

     B.   Argument ...............................................................................................3

II.  ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
     THAT OCULUS IS BOUND TO THE NON-DISCLOSURE AGREEMENT.................5

     A.   The Evidence Offered At Trial ...............................................................5

     B.   Argument ...............................................................................................6

III. ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
     ON ITS CONVERSION CLAIM AGAINST DEFENDANT JOHN CARMACK ...........7

     A.   The Evidence Offered At Trial ...............................................................8

     B.   Argument ...............................................................................................9

IV.  ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW
     ON BOTH OF DEFENDANT JOHN CARMACK'S COUNTERCLAIMS...................10

     A.   The Evidence Offered At Trial .............................................................10

     B.   ZeniMax Is Entitled To Judgment As A
          Matter Of Law On Carmack's First Counterclaim ...............................13

     C.   ZeniMax Is Entitled To Judgment As A
          Matter Of Law On Carmack's Second Counterclaim...........................15

     D.   Alternatively, ZeniMax Is Entitled To Judgment As A Matter Of Law On
          Its Affirmative Defenses Of Material Breach Or Waiver To Carmack's
          Counterclaims ......................................................................................16

V.   ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER
     OF LAW ON DEFENDANTS' AFFIRMATIVE DEFENSES OF
     LACHES, STATUTE OF LIMITATIONS, AND ESTOPPEL BY CONTRACT ..........18

A.      ZeniMax Is Entitled To Judgment As A
        Matter Of Law On Defendants' Laches Defense...................................................19

B.      ZeniMax Is Entitled To Judgment As A
        Matter Of Law On Carmack's And Iribe's Statute Of Limitations Defense .........20

C.      ZeniMax Is Entitled To Judgment As A
        Matter Of Law On Carmack's Estoppel By Contract Defense.............................22

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)..................................................................19

*Bennigan's Franchising Co., L.P. v. Swigonski*,
    Civ. A. No. 06-cv-2300-BH, 2008 WL 648936 (N.D. Tex. Feb. 26, 2008).....................16

*Brewer v. NationsBank of Texas, North America*,
    28 S.W.3d 801 (Tex. App.—Corpus Christi 2000) ........................................19

*Carpet Services, Inc. v. George A. Fuller Co. of Texas, Inc.*,
    802 S.W.2d 343 (Tex. App.—Dallas 1990)
    *aff'd*, 823 S.W.2d 603 (Tex. 1992) ....................................................18

*Computer Associates Int'l v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)...............................................................4

*Crocker National Bank v. Ideco Division of Dresser Industries, Inc.*,
    739 F. Supp. 338 (S.D. Tex. 1990) ........................................................9

*Crocker National Bank v. Ideco Division*,
    956 F.2d 265 (5th Cir. 1992) ..........................................................9-10

*Cuthbertson v. American Federation of Government Employees*,
    2011 WL 1427634 (N.D. Tex. Apr. 13, 2011) .............................................10

*Engenium Solutions, Inc. v. Symphonic Technologies, Inc.*,
    924 F. Supp. 2d 757 (S.D. Tex. 2013) ..................................................3, 4

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991)....................................................................1, 4

*General Universal Systems, Inc. v. Lee*,
    379 F.3d 131 (5th Cir. 2004) .............................................................1

*Golden Torch Music Corp. v. Lichelle's Inc.*,
    Civ. A. No. W–86–CA–005, 1987 WL 14543 (W.D. Tex. Jan. 26, 1987)
    *aff'd* 831 F.2d 1060 (5th Cir. 1987).......................................................4

*Goodman v. Lee*,
    78 F.3d 1007 (5th Cir. 1996)
    *cert. denied*, 519 U.S. 861 (1996)......................................................19

*Graper v. Mid-Continent Casualty Co.*,
    756 F.3d 388 (5th Cir. 2014) .........................................................20-21

*Hernandez v. Frazier*,
    No. SA-11-CA-9-FB, 2012 WL 12896913 (W.D. Tex. Jan. 26, 2012)
    *report and recommendation adopted*, No. SA-11-CA-0009-FB, 2012 WL
    12895539 (W.D. Tex. Sept. 19, 2012).....................................................22

*Hofland v. Elgin-Butler Brick Co.*,
    834 S.W.2d 409 (Tex. App.—Corpus Christi 1992, no writ)...........................................21

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
    Civ. A. No. 4:08-cv-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) .....................19

*Johnson v. Structured Asset Services, LLC*,
    148 S.W.3d 711 (Tex. App. 2004)...................................................................................22

*K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*,
    158 Tex. 594, 314 S.W.2d 782 (1958)............................................................................19

*Lewis v. Bank of America NA*,
    343 F.3d 540 (5th Cir. 2003) ..........................................................................................10

*McCullough v. Owens Enterprises, Inc.*,
    Civ. A. No. 3:07-CV-527-TLS-JCS, 2009 WL 259606 (S.D. Miss. Feb. 3, 2009)............3

*Metered Music, Inc. v. Powell Meredith Communications Co.*,
    Civ. A. No. 1:04-CV-015-C, 2005 WL 525224 (N.D. Tex. Mar. 2, 2005) ........................4

*Ray v. Alad Corp.*,
    560 P.2d 3 (Cal. 1977) ......................................................................................................5

*TPI Plastic Partners, Ltd. v. Gerber Products Co.*,
    Civ. A. No. 4:04-CV-769-Y, 2006 WL 488679 (N.D. Tex. Feb. 28, 2006)...............10, 13

*Vianet Group PLC v. Tap Acquisition, Inc.*,
    No. 3:14-cv-3601-B, 2016 WL 4368302 (N.D. Tex. Aug. 16, 2016) ..............................10

*Wells Fargo Bank Northwest, North America v. RPK Capital XVI, L.L.C.*,
    360 S.W.3d 691 (Tex. App.—Dallas 2012, no pet.)..........................................................8

*William A. Graham Co. v. Haughey*,
    568 F.3d 425 (3d Cir. 2009)......................................................................................20, 21

## STATUTES                                                    PAGE(S)

Fed. R. Civ. P. 50(a) .............................................................................................................1

17 U.S.C. § 410(c) .................................................................................................................3

17 U.S.C. § 411(b) .................................................................................................................4

17 U.S.C. § 507(b) ...............................................................................................................20

Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a) (West 2002) .............................................20

Plaintiffs ZeniMax Media Inc. and id Software LLC (collectively, "ZeniMax") hereby memorialize their motion for judgment as a matter of law made pursuant to Federal Rule of Civil Procedure 50(a) which was presented orally to the Court at the close of evidence in this case. The Court noted that the motion was timely made and was denied.  (ECF No. 900; 1/25/2017 Trial Tr. (Vol. 18) at 59:23-60:1.)  ZeniMax herein states for the record the bases on which its motion was made.

## LEGAL STANDARD

A court may not render judgment as a matter of law under Federal Rule of Civil Procedure 50(a) unless the party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.  Fed. R. Civ. P. 50(a).   ZeniMax is entitled to such relief here, however, because Defendants have not presented a legally sufficient evidentiary basis upon which a reasonable jury could find in favor of Defendants on the particular elements of ZeniMax's claims or on any of Defendants' own claims or affirmative defenses enumerated herein.

## ARGUMENT

### I.   ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE FIRST ELEMENT OF ITS COPYRIGHT INFRINGEMENT CLAIM

In order for the jury to find that ZeniMax has established its copyright infringement claim, ZeniMax — as the copyright owner — must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (internal quotation marks omitted)).  ZeniMax seeks judgment as a matter of law on the first prong of its infringement claim, that is, that ZeniMax owns valid copyrights in each of the allegedly-infringed works at issue here:  the "*DOOM 3: BFG Edition*" computer

1

program, "*ZeniMax VR Testbed Code*," "*ZeniMax VR Implementation Code*," and "*ZeniMax VR Implementation Code – Assets*" (collectively, the "Copyrighted Materials").[1]

### A. The Evidence Offered At Trial

The evidence presented at trial shows as follows:

1.      ZeniMax has obtained the following copyright registrations on its Copyrighted Materials as of the following dates, copies of which have been admitted into evidence at the following exhibits, and those registrations bear the following dates of first publication or completion:

| Product | Exhibit No. | Registration Date | Date of First Pub.; Year of Completion |
|---------|-------------|-------------------|----------------------------------------|
| *DOOM 3 BFG Edition for PC* | PX1724 | January 28, 2013 | October 15, 2012 |
| *ZeniMax VR Implementation Code* | PX1642 | May 19, 2014 | 2013 |
| *ZeniMax VR Testbed Code* | PX1327 | May 19, 2014 | 2012 |
| *ZeniMax VR Implementation Code - Assets* | PX0151 | May 9, 2016 | 2013 |

2.      No evidence has been adduced suggesting that any of ZeniMax's copyright registrations are invalid.

3.      ZeniMax's copyright registrations on the Copyrighted Materials were issued within five years of the dates of first publication or completion of those products.

---

[1]      Although the first prong of ZeniMax's infringement claim also requires a showing that ZeniMax *owns* its Copyrighted Materials, that issue is plainly not in dispute here and Defendants offered no evidence to suggest that ZeniMax was not the owner.  Thus, that issue should be resolved in ZeniMax's favor before this case goes to the jury.

## B. <u>Argument</u>

ZeniMax has duly registered the copyrights to the virtual reality demonstration and game software that it created, including the Copyrighted Materials as to which it claims infringement in this action.   Federal copyright law provides that registration of copyrights entitles the registrant — here, ZeniMax — to a <u>presumption</u> that its copyrights are valid:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of <u>the validity of the copyright</u> and of the facts stated in the certificate.

17 U.S.C. § 410(c) (emphasis added).  Put differently, "[b]y virtue of his duly issued certificate of copyright registration, [the registrant] enjoys a statutory rebuttable presumption under [§] 410(c) that his copyright is valid and enforceable."  *McCullough v. Owens Enters., Inc.*, Civ. A. No. 3:07-CV-527-TLS-JCS, 2009 WL 259606, at *1 (S.D. Miss. Feb. 3, 2009); *accord Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 776 (S.D. Tex. 2013) (holding that plaintiff's certificate of copyright registration in its software entitled plaintiff to a "rebuttable presumption of validity" for those copyrights, which defendant in that case was ultimately unable to rebut).

At trial, ZeniMax offered into evidence the copyright registrations for each of the four Copyrighted Materials such that ZeniMax is entitled to a presumption that those copyrights are valid.[2]  Defendants have offered <u>no evidence</u> to rebut that presumption, nor could they do so:

The ***first*** requirement — originality — is readily met here:  indeed, the Supreme Court has described this requirement as requiring "only that the work was independently created by the

---

[2]       ZeniMax also notes that the authenticity of those registrations has not been challenged. Further, the copyright registrations state that each of the registrations were issued within five years of the dates of first publication or completion of those products, which establishes the presumption of validity set forth in 17 U.S.C. § 410(c).

author (as opposed to copied from other works), and that it possesses at least some <u>minimal degree of creativity</u>."[3]  *Feist*, 499 U.S. at 345 (emphasis added) (further noting that "the requisite level of creativity is extremely low; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be" (citations and internal quotation marks omitted)).   Here, Defendants adduced no evidence that the portions of the Copyrighted Materials on which ZeniMax claims infringement were copied from other works not owned by ZeniMax.[4]

The ***second*** requirement, the copyrightability of ZeniMax's source code, is also readily met:  it is "well settled" that the "literal elements of computer programs, *i.e.*, their source and object codes, are the subject of copyright protection."  *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir. 1992) (collecting cases); *accord Engenium Sols.*, 924 F. Supp. 2d at 779 (same).  Defendants offered no evidence at trial to challenge the copyrightability of these works.

In sum, ZeniMax owns valid copyrights in its Copyrighted Materials, and there is no evidence in the record supporting any contrary contention.  *See Engenium Sols.*, 924 F. Supp. 2d at 779 (noting that "in seeking to rebut the presumption of originality created by the certificate of

---

[3]     Because originality is a prerequisite to a valid copyright, *see* 17 U.S.C. § 102(a), it is well settled that the statutory presumption that a registered copyright is valid necessarily includes a presumption that the registered work is also original.  *E.g., Metered Music, Inc. v. Powell Meredith Commc'ns Co.*, Civ. A. No. 1:04-CV-015-C, 2005 WL 525224, at *3 (N.D. Tex. Mar. 2, 2005) ("Plaintiffs have submitted registration certificates of each of the eight songs involved, and the certificates establish originality and authorship …"); *accord Golden Torch Music Corp. v. Lichelle's Inc.*, Civ. A. No. W–86–CA–005, 1987 WL 14543, at *2 (W.D. Tex. Jan. 26, 1987) (similarly), *aff'd* 831 F.2d 1060 (5th Cir. 1987).

[4]     Although there is no evidence in the record to support such a contention, even if the Defendants were to argue (which they did not) that there exists some error in the registrations, under the Copyright Act, inaccuracies short of willful fraud will not invalidate a copyright registration.  17 U.S.C. § 411(b)(1).  Further, § 411(b)(2) of the Copyright Act, 17 U.S.C. § 411(b)(2), provides a procedure for district courts to seek the advice of the Register of Copyrights as to the effect of allegedly "inaccurate information" on the validity of a copyright registration.  Defendants never requested that this Court avail itself of that process.

registration and argue that source code of a software program is not original or copyrightable, [d]efendants bear a <u>heavy burden</u>," and ultimately holding that defendants did not meet that burden (emphasis added)).  ZeniMax is thus entitled to judgment as a matter of law on this element of its copyright infringement claim.

## II.     ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW <u>THAT OCULUS IS BOUND TO THE NON-DISCLOSURE AGREEMENT</u>

Since the beginning of this action, Oculus has taken the position that "Luckey signed the NDA document <u>before</u> founding Oculus," such that Oculus could not be said to be bound by the terms of that agreement.  (Dkt. No. 45, at 11.)  The evidence presented at trial conclusively showed that claim to be untrue.  Instead, ZeniMax is entitled to a ruling as a matter of law that Oculus is bound to the Non-Disclosure Agreement specifically under California's "mere continuation" theory of successor liability, a theory which this Court recognized in ruling on ZeniMax's Motion For Partial Summary Judgment on this issue.  (ECF No. 792 at 9-11.)  Under that theory, Oculus will be bound to the Non-Disclosure Agreement as a "mere continuation" of Luckey's prior sole proprietorship "upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholder of both corporations."  (*Id.* at 9 (citing *Ray v. Alad Corp.*, 560 P.2d 3, 7 (Cal. 1977))).

### A.   <u>The Evidence Offered At Trial</u>

The evidence presented at trial shows as follows:

1.     Defendant Palmer Luckey was the founder of Oculus.  (1/17/2017 Trial Tr. (Vol. 6) at 127:9-11.)

2.    Luckey started using the name "Oculus" to refer to his work in the virtual reality technology sphere internally "sometime in late 2011" and started using that name publicly in March of 2012.  (*Id.* at 127:3-8; *see also* 1/18/2017 Trial Tr. (Vol. 7) at 38:8-11.)

3.    On May 24, 2012, Luckey entered into a Non-Disclosure Agreement with ZeniMax providing for the transfer of virtual reality technology, subject to specified conditions, to Luckey and his "officers, directors, employees and counsel."  (PX0001.)

4.    Nineteen days later, Luckey formally incorporated Oculus LLC and filed the Articles of Organization for that entity with the State of California Secretary of State. (DX1700.)  Luckey was the only member of Oculus at that time.

5.    On July 6, 2012, Luckey assigned his "right, title and interest" in his virtual reality technology to Oculus.  (DX0108.)  That document (which in any event substantially postdates the formation of Oculus LLC) is altogether silent as to any consideration — let alone adequate cash consideration — that Luckey received in return for that technology. (*Id.*)

**B.  <u>Argument</u>**

A strict reading of the *Ray* test for "mere continuation" liability would suggest that only one of the test's two factors — (1) inadequate consideration, and (2) "one or more persons were officers, directors, or stockholder of both corporations" — is sufficient to establish liability, the evidence adduced at trial establishes both factors.[5]

---

[5]    To be sure, Oculus is also bound to the Non-Disclosure Agreement under the terms of the Agreement itself.  Mr. Luckey has testified that at the time he signed the agreement, he was "doing business under the name Oculus."  (1/18/2017 Trial Tr. (Vol. 7) at 38:8-11.)  That agreement, by its terms, applies to Mr. Luckey and his "officers, directors, employees and counsel."  (PX0001.)  That would necessarily include the officers, directors, employees, and counsel *of Oculus*.

*First*, the finder of fact need not determine here whether Luckey received *adequate* consideration for his sole proprietorship's prior assets.  The proof shows that Luckey received <u>no</u> consideration.  When Luckey formed Oculus as an LLC in June 2012, he was its only member, and naturally did not pay himself for his own prior assets.[6]  Where Luckey received no cash consideration[7] in exchange for his prior sole proprietorship's assets, the first *Ray* element is readily met here.

*Second*, the record demonstrates that Luckey was an "officer[], director[], or stockholder" of both his sole proprietorship and Oculus.  When Oculus was subsequently organized as an LLC in June 2012, Luckey continued to be at the center of that enterprise as its sole member.  His subsequent investors Mr. Iribe, Mr. Mitchell, and Mr. Antonov did not join that enterprise until July 2012.  (1/18/2017 Trial Tr. (Vol. 7) at 41:9-15.)

Where both factors of the *Ray* test are readily met, ZeniMax is entitled to judgment as a matter of law that Oculus is bound to the Non-Disclosure Agreement.

## III.   ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CONVERSION CLAIM AGAINST DEFENDANT JOHN CARMACK

In addition to the substantial monetary damages that ZeniMax seeks from Carmack on its other claims, ZeniMax has asserted a conversion claim to compel Carmack to return the items he stole from ZeniMax.  At trial, ZeniMax pressed its conversion claim with respect to two items that Carmack admittedly stole from ZeniMax:  a USB device containing thousands of ZeniMax's

---

[6]     Even if this Court were to look to the later transactions in July 2012 when Luckey assigned his virtual reality technology to Oculus (*see* DX0108), that would not change the foregoing analysis.  That assignment agreement makes no reference to any consideration that Luckey received in exchange for that transfer.

[7]     That the first *Ray* element can only be disputed by pointing to cash consideration is addressed in ZeniMax's Reply In Further Support Of Its Motion For Partial Summary Judgment, ECF No. 717 at 5.

documents and ZeniMax's *RAGE* code contained on a laptop computer.  As ZeniMax explained in its Motion For Partial Summary Judgment, ZeniMax can prove its conversion claims by demonstrating:

> (1) [T]he plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property.

*Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.).

### A.  <u>The Evidence Offered At Trial</u>

The evidence presented at trial shows as follows:

1.     John Carmack entered into an Employment Agreement with ZeniMax on May 9, 2009.  In that agreement, Carmack expressly agreed that he would not "retain any tangible or intangible copies of any Confidential Information after [his] termination of employment for any reason.  Upon termination of [his] employment, [Carmack] <u>will not take with [him] any documents or materials or copies</u> thereof containing any Confidential Information."  (PX1486 (emphasis added).)

2.     Carmack understood that under his employment agreement, any technology that he created at id Software would be owned by ZeniMax and id Software.  (1/10/2017 Trial Tr. (Vol. 1) at 213:13-16.)

3.     During the last days of Carmack's employment at ZeniMax, he "put in a USB drive and stole 10,000 documents and thousands of lines of code."  (1/10/2017 Trial Tr. (Vol. 1) at 160:10-24.)

4.     Carmack also has in his possession a laptop computer containing ZeniMax's *RAGE* code.  (1/10/2017 Trial Tr. (Vol. 1) at 171:6-172:6.)

8

5.    Carmack expressly admitted at trial that he "fail[ed] to comply with [his employment agreement] on two of those provisions, on return and copying." (1/11/2017 Trial Tr. (Vol. 2) at 61:2-6.)

**B.  <u>Argument</u>**

The evidence offered at trial indisputably demonstrates ZeniMax's entitlement to judgment as a matter of law on its conversion claim.

*First*, the evidence at trial demonstrated that ZeniMax was "entitled to possession of" the confidential documents contained on the USB device and its own *RAGE* source code, an obvious conclusion underscored by the express terms of the employment agreement that Carmack signed and was bound to honor. (PX1486.) Indeed, Mr. Carmack agreed at trial that those technologies were owned by ZeniMax and id Software. (1/10/2017 Trial Tr. (Vol. 1) at 213:13-16.)

*Second*, the evidence at trial demonstrated that Carmack "unlawfully and without authorization, assumed and exercised dominion and control over the property" so far as he took the confidential documents contained on the USB drive and the *RAGE* source code from ZeniMax, and still maintains possession over them today.[8]

*Third*, it cannot reasonably be disputed that, both at the conclusion of his work for ZeniMax and through this action, ZeniMax has "made a demand" for the return of that stolen property. Specifically, the filing of ZeniMax's Second Amended Complaint asserting a conversion claim suffices as a demand for purposes of that claim. *Crocker Nat. Bank v. Ideco Div. of Dresser Indus., Inc.*, 739 F. Supp. 338, 340 (S.D. Tex. 1990), *aff'd sub nom. Crocker Nat.*

---

[8]    As this Court noted in denying Carmack's Motion To Dismiss, the fact that Carmack took *copies* is immaterial to the conversion claim. Instead, "Texas law also allows for a claim of conversion when a third party interferes with the property of the rightful owner." (ECF No. 788 at 17.)

*Bank v. Ideco Div.*, 956 F.2d 265 (5th Cir. 1992) (holding that "[t]he demand for return of the engines need not be titled 'demand.'  It is enough that [the defendant] knows that [the plaintiff] wants its engines back. . . . the filing of [the plaintiff's] original complaint for conversion . . . put [the defendant] on notice that [the plaintiff] was demanding the return of the engines.").

**Fourth**, Carmack has refused to return that property, such that ZeniMax maintains pursuit of its conversion claim to this day.

Where each of the elements of ZeniMax's conversion claim is readily met, ZeniMax is entitled to judgment as a matter of law on that claim.

## IV.   ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOTH OF DEFENDANT JOHN CARMACK'S COUNTERCLAIMS

Defendant John Carmack asserted two counterclaims against ZeniMax, purportedly for ZeniMax's breach of two terms of Carmack's May 19, 2009 Employment Agreement.  Under Texas law, "a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003)).  Where the defendant in a breach of contract action has not breached any duty owed under the contract, then summary judgment in the defendant's favor is appropriate.  *See, e.g.*, *Vianet Group PLC v. Tap Acquisition, Inc.*, No. 3:14-cv-3601-B, 2016 WL 4368302, at *25 (N.D. Tex. Aug. 16, 2016); *TPI Plastic Partners, Ltd. v. Gerber Products Co.*, Civ. A. No. 4:04-CV-769-Y, 2006 WL 488679, at *1 (N.D. Tex. Feb. 28, 2006).

### A.   The Evidence Offered At Trial

The evidence presented at trial shows as follows:

1.      John Carmack entered into an Employment Agreement with ZeniMax on May 9, 2009.  (PX1486.)

2.      The Employment Agreement also included a provision whereby ZeniMax acknowledged and agreed to Carmack's "participat[ing] in various business and activities that are not in competition with the Company" and that Carmack would "be permitted to serve on various boards or otherwise be involved in organizations that are not Competitors . . . so long as such activities do not materially interfere with the performance of [Carmack's] duties for the Company."  (PX1486 (§ 4) (emphasis added).)

3.      The Employment Agreement expressly defined "Competitor"  to include "any person, firm, corporation, partnership or other business entity engaged in or about to be engaged in . . .  any interactive entertainment software, tools, products, or entertainment content for any platform."  (PX1486 (§11.1).)   Oculus is a corporation that engages in interactive entertainment tools and products.

4.      The Employment Agreement, by its terms, was to continue for four years (until June 23, 2013).  (PX1486 (§ 13).)

5.      The Employment Agreement provided that Carmack's "employment with the Company shall terminate" if at least sixty days before the end of the contract, "the Company does not offer Employee a renewal of this Agreement, on substantially similar terms (or better) than this Agreement" and that such an event would be considered a "Termination Due To Non-Renewal by Company."  (PX1486 (§ 15.1(h)).)

6.      Conversely, if ZeniMax made such an offer, "but the Employee elects not to renew, then the Employee's employment with the Company will cease" and that such an event

would instead be considered a "Termination Due To Non-Renewal by Employee." (PX1486 (§ 15.1(i)).)

7.   Importantly, Carmack would be owed his base salary for a period of twelve months following his termination if ZeniMax refused to make him an offer of continued employment, but would not be so entitled if he were terminated by reason of his own non-renewal. (PX1486 (§ 16.4).)

8.   In March 2013, Carmack reached out to Oculus on a non-id Software e-mail address. (PX1282.) Carmack testified that he "absolutely intended to have some dealings with Oculus after my contract was over." (1/11/2017 Trial Tr. (Vol. 2) at 94:5-11.)

9.   After Carmack's full-time employment ended at ZeniMax, ZeniMax offered Carmack part-time employment. Mr. Carmack accepted that offer. (1/11/2017 Trial Tr. (Vol. 2) at 171:23-172:3.)

10.   At the end of that part-time employment, Carmack's wife (and business advisor) emailed ZeniMax to state that "[i]t is with a very heavy heart that this decision is being made — John will no longer work for id and ZeniMax. A huge chapter in our lives has closed and though we are greatly saddened, we wish id and the ZeniMax family the best. We will root for you from the sidelines." (DX1885.)

11.   At trial, Carmack expressly admitted that he "fail[ed] to comply with [his employment agreement] on two of those provisions, on return and copying." (1/11/2017 Trial Tr. (Vol. 2) at 61:2-6.)

**B. ZeniMax Is Entitled To Judgment As A**
**Matter Of Law On Carmack's First Counterclaim**

Courts dismiss breach of contract claims when the plaintiff alleges a breach of a contractual obligation that simply does not exist in the contract.[9]  *TPI Plastic Partners, Ltd.*, 2006 WL 488679, at *1.  That is exactly the case here:  Carmack's first counterclaim is premised on the false belief that ZeniMax "breached" certain of its promises in Carmack's Employment Agreement that simply do not exist.  Specifically, the entirety of Carmack's first counterclaim relies on the following provision of his Employment Agreement:

**4.  NON-COMPETITIVE BUSINESSES AND ACTIVITIES**

The Company acknowledges and agrees to Employee's participation in various businesses and activities that are not in competition with the Company. Accordingly, Employee shall be permitted to serve on various boards or otherwise be involved in organizations that are not Competitors (defined in Section 11.1 below), so long as such activities do not materially interfere with the performance of Employee's duties for the Company.

(PX1486 (§ 4).)  From this standard and straightforward contract provision, Carmack make-shifts his extraordinary argument of breach here:   Carmack *first* alleges that Oculus was not a competitor of ZeniMax such that Carmack was permitted to "participate" with Oculus (Countercl. ¶ 52).  But Carmack's argument fails to get out of the gate on that argument alone: the definition of "Competitor" under his agreement includes "any person, firm, corporation, partnership or other business entity engaged in or about to be engaged in . . . <u>any interactive entertainment software, tools, products,</u> or entertainment content for any platform."  (PX1486 (§11.1).)  Oculus — the maker of the Oculus Rift — is plainly included within this definition. ZeniMax could be granted judgment as a matter of law on this counterclaim where Carmack's entire counterclaim argument hinges on his mistaken belief that Oculus is not a "Competitor" as

---

[9]     ZeniMax is also entitled to judgment as a matter of law on this claim where Carmack offered <u>no</u> evidence to prove any damages he sustained as a result of this purported "breach."

defined by that agreement.  In any event, Carmack's counterclaim argument proceeds to argue *second*, that such permitted "participation" with a "non-Competitor" Oculus expressly permitted Carmack and others at Oculus to misappropriate ZeniMax's trade secrets (*id.* ¶ 53); *third*, that ZeniMax "breached" those promises by filing this lawsuit against Carmack and others (*id.*); and *fourth*, that the damages Carmack is entitled to on account of that "breach" include any and all damages ZeniMax is awarded on its trade secret misappropriation at trial (including those damages that the jury assesses against third-parties on that claim, including Defendants Palmer Luckey, Brendan Iribe, and Facebook), *id.* ¶ 55.  Carmack reads Section 4 of his contract as a unlimited green light to "participate" in any way whatsoever with non-competitors, such that he, the non-competitor company, and anyone associated with that non-competitor company are entirely immunized from ZeniMax suing them for any wrongdoing.  But that Section provides no such immunity.  For one thing, it plainly does not contain a covenant not to sue Carmack for wrongdoing.  Where Carmack's entire argument is premised on (his belief) that ZeniMax's breached this contractual provision by the simple act of filing a lawsuit, the fact that ZeniMax never promised not to sue is fatal to his claim.  In any event, ZeniMax sought and obtained leave to file claims against Carmack in this action after learning in discovery about significant wrongdoing by Carmack — none of which could be reasonably viewed as falling within Section 4 of Carmack's Employment Contract, which only permits Carmack to participate in other businesses where his activity would not "materially interfere" with the performance of his duties for ZeniMax.  That Section does not impose on ZeniMax any contractual obligation to refrain from suing Carmack for acts of wrongdoing.  Nor does ZeniMax have any contractual obligation to facilitate Carmack's post-employment work with Oculus (or any other company) by refraining from seeking remedies for demonstrable misconduct.  Carmack presented the jury with no other

14

evidence (nor could he) to suggest how ZeniMax in any way breached that section of his Employment Agreement.

In short, there is no basis on which a reasonable jury could find for Carmack on his first counterclaim, such that ZeniMax should be granted judgment as a matter of law in its favor on this claim.

### C. ZeniMax Is Entitled To Judgment As A Matter Of Law On Carmack's Second Counterclaim

Carmack's second counterclaim — through which he claims an entitlement to severance payments for his "termination" — fails for the plain and simple reason that Carmack *was not terminated* by ZeniMax. Instead, following the end of the four-year term of his Employment Agreement, Carmack continued working for ZeniMax as a Technical Advisor. The unambiguous terms of the Employment Agreement require no severance payments in that event.

Specifically, Carmack's second counterclaim is based on ZeniMax's purported breach of two provisions in his Employment Agreement that work together so as to obligate ZeniMax to pay severance payments in certain cases of termination:

**15.  TERMINATION**

Employee's employment with the Company shall terminate . . . (h) if at least sixty (60) days prior to the end of the Initial Term specific in Section 13 of this Agreement, the Company does not offer Employee a renewal of this Agreement, on substantially similar terms (or better) than this Agreement other than with respect to term, which shall be for a renewal term of one (1) year, then the Employee's employment with the Company will cease at the end of the Initial Term ("Termination Due to Non-Renewal by Company")  [. . . ]

**16.  EFFECT OF TERMINATION**  [. . . ]

16.4  *Termination Due to Non-Renewal by Company.*  In the event of any termination of this Agreement pursuant to Section 15.1(h) herein . . . the Company will continue to pay Employee the Base Salary of Employee . . . at Employee's then current salary . . . for a period equal to twelve (12) months following the date of termination and such payments shall fully satisfy the Company's severance obligation under this Agreement.

(PX1486 (§§15, 16).)  Those two contract provisions make clear that Carmack would be entitled to severance only in the event that he was terminated by ZeniMax at the end of his initial four-year term of employment there (*i.e.*, June 23, 2013).  That plainly did not occur here:  instead, Carmack continued working at ZeniMax as its Technical Advisor after that time.  (1/11/2017 Trial Tr. (Vol. 2) at 171:23-172:3.)  Further, Carmack expressly testified that it was *his* decision to leave id Software, and that he "absolutely" wanted to work at Oculus after his contract expired.  (1/11/2017 Trial Tr. (Vol. 2) at 94:5-11.)  Carmack presented the jury with no other evidence (nor could he) to corroborate any "termination" from ZeniMax.

Accordingly, ZeniMax's purported failure to pay severance to Carmack — where no such severance was required under the unambiguous terms of the Employment Agreement — does not amount to a breach of that contract.  ZeniMax is thus entitled to judgment on Carmack's second counterclaim as a matter of law and the express language of his Agreement.

### D.   Alternatively, ZeniMax Is Entitled To Judgment As A Matter Of Law On Its Affirmative Defenses Of Material Breach Or Waiver To Carmack's Counterclaims

Should the Court not grant judgment as a matter of law based on the insufficiency of the evidence that Carmack presented at trial to support his two counterclaims, the Court should instead grant judgment as a matter of law for ZeniMax on its affirmative defenses to those claims.

***ZeniMax's affirmative defense of material breach.***  ZeniMax has asserted an affirmative defense to both of Carmack's counterclaims that even if ZeniMax failed to comply with Carmack's Employment Agreement (which ZeniMax expressly denies), any such failure would be excused by Carmack's prior material breach.  *See Bennigan's Franchising Co., L.P. v. Swigonski*, Civ. A. No. 06-cv-2300-BH, 2008 WL 648936, at *4 (N.D. Tex. Feb. 26, 2008).  At trial, Mr. Carmack expressly admitted that he "fail[ed] to comply with [his employment

16

agreement] on two of those provision, on return and copying." (1/11/2017 Trial Tr. (Vol. 2) at 61:2-6.)   Specifically, Mr. Carmack agreed that during the last days of his employment at ZeniMax he "put in a USB drive and stole 10,000 documents and thousands of lines of code" and further that he still has in his possession a laptop computer containing ZeniMax's *RAGE* code. (1/10/2017 Trial Tr. (Vol. 1) at 160:10-24, 171:6-172:6.)   Both of these actions (and others) constitute material breaches of his Employment Agreement, including his agreements in that contract that (i) the intellectual property he generated in his work for ZeniMax would be the property of ZeniMax (PX1486 (§§ 5-6, 8-9)); (ii) Carmack's continuing duty to preserve the confidentiality of ZeniMax's confidential information (*id.* (§ 10)); and (iii) Carmack's duty to return ZeniMax's property to the company upon his departure (*id.* (§ 16.5)).   At trial, the jury has frequently heard that ZeniMax's ability to keep its intellectual property confidential is of premier importance, at that its intellectual property is the "crown jewels" of the company.   (*See, e.g.*, 1/25/2017 Trial Tr. (Vol. 17) at 90:24-91:4.)   Clearly, Carmack's taking of that property and maintaining that property while work at Oculus (a competitor) is a material breach of his contractual obligations.   Such a material breach on Carmack's part would excuse any violation (although ZeniMax expressly denies that any violation occurred) on ZeniMax's part as to Sections 4 or 16.4(b) of Carmack's Employment Agreement.   ZeniMax is thus entitled to judgment as a matter of law on this affirmative defense as to both of Carmack's counterclaims alleging breaches of that agreement.

   ***ZeniMax's affirmative defense of waiver.***   ZeniMax has also asserted an affirmative defense of waiver to Carmack's second counterclaim.   Specifically, Carmack's entire claim of breach relies on ZeniMax's offering Carmack continued employment less than sixty days before the completion of his contractual term of employment.   ZeniMax's failure in that regard (if any)

17

does not amount to a breach where Carmack waived his right to a timely performance by ZeniMax. Indeed, it is well settled under Texas law that contractual target dates may be waived by the conduct of the parties. *Carpet Services, Inc. v. George A. Fuller Co. of Texas, Inc.*, 802 S.W.2d 343 (Tex. App.—Dallas 1990), *aff'd*, 823 S.W.2d 603 (Tex. 1992). Here, Carmack's Employment Agreement contained no provision that time was of the essence (*see* PX1486), and the course of dealing between Carmack and ZeniMax confirms that Carmack waived any purported objection on the ground of delay by continuing to negotiate his continued employment at ZeniMax even after that sixty-day target date has passed. (*See, e.g.*, 1/10/2017 Trial Tr. (Vol. 1) at 167:15-25 (Carmack discussing part-time work at ZeniMax following the completion of his contractual term of employment); 1/11/2017 Trial Tr. (Vol. 2) at 104:25-105:13, 171:23-172:3 (Carmack discussing part-time work at ZeniMax following the completion of his contractual term of employment).) ZeniMax is thus entitled to judgment as a matter of law on this affirmative defense as to Carmack's second counterclaim alleging breach of his Employment Agreement by ZeniMax's purportedly untimely performance.

## V. ZENIMAX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DEFENDANTS' AFFIRMATIVE DEFENSES OF LACHES, STATUTE OF LIMITATIONS, AND ESTOPPEL BY CONTRACT

Defendants have also offered various affirmative defenses in their efforts to evade being held liable for ZeniMax's claims against them. Each of those defenses — including for laches, statute of limitations, and estoppel by contract — fail where Defendants have offered no evidence at trial to support them. ZeniMax is thus entitled to judgment as a matter of law on each.

**A. ZeniMax Is Entitled To Judgment As A
   Matter Of Law On Defendants' Laches Defense**

Defendants have asserted a laches defense against <u>all</u> of ZeniMax's claims in this action. In the first instance, Texas law is clear that the defense of laches is available for claims not barred by the statute of limitations only in extraordinary circumstances.[10]  Defendants have offered <u>no</u> evidence at trial that this case presents any extraordinary circumstances.  ZeniMax should be entitled to judgment as a matter of law on that basis.

In any event, even if this Court were to consider the merits of Defendant's laches defense, that defense is only applicable if Defendants prove:  (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.  *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir. 1996), *cert. denied*, 519 U.S. 861 (1996).  Further, two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.  *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1034 (Fed. Cir. 1992).  Here, Defendants have offered <u>no</u>

---

[10]     *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 791 (1958) (declining to impose laches bar in trade secrets case; "As a rule equity follows the law and generally in the absence of some element of estoppel or something akin thereto, the doctrine of laches will not bar a suit short of the period set forth in the limitation statutes."); *accord Brewer v. NationsBank of Tex., N.A.*, 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi 2000) (citing *K & G* and other cases).  Here, only two Defendants (Carmack and Iribe) have brought statute of limitations defenses. The remaining Defendants (Facebook, Oculus, and Luckey) thus do not dispute  that ZeniMax's claims are timely.  Relatedly, some federal courts have held that a laches defense to federal copyright claims is not available at all, while others permit the defense in extraordinary circumstances.  *E.g.*, *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, Civ. A. No. 4:08-cv-03181, 2010 WL 4366990, at *45 (S.D. Tex. Oct. 27, 2010) ("The Fifth Circuit has not addressed whether the laches defense applies in a case where the copyright owner files suit within the three-year statute of limitations … [O]ther circuits have acknowledged that courts should defer to the statute of limitations rather than decide copyright infringement cases on the issue of laches.").  Defendants' laches defenses are thus improper on at least these two additional bases.

evidence showing any entitlement to this defense, or any evidence suggesting that <u>any</u> of the required elements are met.   No evidence has been presented at trial showing that ZeniMax delayed bringing this action even though it actually knew that Defendants had misappropriated its trade secrets, breached its contracts, infringed its copyrights, or the like.   Instead, the evidence presented at trial has shown that Defendants repeatedly sought to conceal its misconduct from ZeniMax, both before and during this litigation.   Further, Defendants have identified <u>no</u> prejudice:   there is no loss of evidence that resulted for any "delay" on ZeniMax's part[11] and no way in which Defendants changed their position on account of ZeniMax's "delay."

### B.  ZeniMax Is Entitled To Judgment As A Matter Of Law On Carmack's And Iribe's Statute Of Limitations Defense

Defendants John Carmack and Brendan Iribe have both alleged a statute of limitations defense as to certain of ZeniMax's claims, including trade secret misappropriation, copyright infringement, and conversion (Carmack only).   ZeniMax's trade secret claims under Texas law are subject to a statute of limitations that expressly includes a discovery rule:

> A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.

Tex. Civ. Prac. & Rem. Code Ann. § 16.010(a) (West 2002).   The statute of limitations on federal copyright claims, 17 U.S.C. § 507(b), does not state whether it is governed by a discovery rule, but a majority of federal courts of appeal (including the Fifth Circuit) have held that a discovery rule applies.[12]   Those courts require a party asserting a limitations defense to

---

[11]      Indeed, the only evidence that was lost in this case was destroyed as a consequence of Defendants' own wrongdoing.

[12]      *See William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) ("[E]ight of our sister courts of appeals have applied the discovery rule to civil actions under the Copyright Act."); *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 393 (5th Cir. 2014) ("A claim accrues

*(cont'd)*

bear the burden of showing that his adversary was on notice of his claims.[13]  So, too, ZeniMax's conversion claim is governed by a discovery rule.  *Hofland v. Elgin-Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex. App.—Corpus Christi 1992, no writ).

At trial, Carmack and Iribe proffered <u>no</u> evidence showing that ZeniMax actually had any <u>facts</u> that would have provided a reasonable basis for it to believe that those Defendants were misappropriating its trade secrets, infringing its copyrights, or converting its property.  Instead, as Judge Stickney held in granting ZeniMax leave to file its Second Amended Complaint against these two Defendants last year, ZeniMax was wholly unable to assert their claims against those Defendants without the benefit of any discovery:

> The Court agrees with Plaintiffs' position here that Defendants' argument regarding Plaintiffs already having the information needed to add their claims against Iribe and Carmack is made with the benefit of hindsight, and that the full extent of the conduct Plaintiffs now seek to allege could have been substantiated by the subsequent depositions and discovery received.

(Dkt. No. 510 at 8.)  Indeed, numerous acts of Carmack's and Iribe's misconduct were only discovered in 2015 and 2016 as part of ZeniMax's discovery, and ZeniMax promptly sought leave to add those persons as Defendants immediately thereafter.  (*See* ECF No. 590 at 5-8 (detailing the misconduct discovered during discovery).)  Quite simply, Defendants proffered no evidence that ZeniMax "knew or should have known" of their misappropriation, infringement, or conversion prior to March 31, 2013, which is the operative date for application of the statute of limitations here.  ZeniMax is thus entitled to judgment as a matter of law on Defendants' affirmative defense here.

---

*(cont'd from previous page)*

once the plaintiff "kn[ows] or ha[s] reason to know of the injury upon which the claim is based.").

[13]      *See Graham*, 568 F.3d at 438 (defendants asserting statute of limitations defenses "bear the burden of demonstrating such storm warnings").

**C. ZeniMax Is Entitled To Judgment As A
Matter Of Law On Carmack's Estoppel By Contract Defense**

Defendant John Carmack has also alleged a defense of estoppel by contract against ZeniMax's claim of trade secret misappropriation.  The defense of estoppel by contract provides that "a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 722 (Tex. App. 2004).  That defense applies when it would be unconscionable to allow a person to take a position inconsistent with the terms of its contract, to the prejudice of another.  *Hernandez v. Frazier*, No. SA-11-CA-9-FB, 2012 WL 12896913, at *21 (W.D. Tex. Jan. 26, 2012), *report and recommendation adopted*, No. SA-11-CA-0009-FB, 2012 WL 12895539 (W.D. Tex. Sept. 19, 2012).  Carmack's argues that this defense is applicable because (in his view) his own misappropriation of ZeniMax's trade secrets was permitted by his Employment Agreement with ZeniMax.  (PX1486.)  This argument is illogical, lacks any evidentiary support, and otherwise fails for all of the reasons that ZeniMax discussed in moving for judgment as a matter of law on Carmack's first counterclaim.  (*See supra*.)  The Court should also grant judgment as a matter of law for ZeniMax on this affirmative defense.

## CONCLUSION

For the foregoing reasons, ZeniMax respectfully requests that this Court enter judgment as a matter of law in ZeniMax's favor on each of the claims and defenses identified above.

22

Dated: January 30, 2017

Respectfully submitted,

_s/ Phillip B. Philbin_

P. ANTHONY SAMMI
E-mail: Anthony.Sammi@skadden.com
KURT WM. HEMR
E-mail: Kurt.Hemr@skadden.com
CHRISTOPHER A. LISY
E-mail: Christopher.Lisy@skadden.com
JAMES Y. PAK
Texas State Bar No. 24086376
E-mail: James.Pak@skadden.com
WILLIAM J. CASEY
E-mail: William.Casey@Skadden.com
(the foregoing attorneys admitted _pro hac vice_)
**SKADDEN, ARPS, SLATE,**
**    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Telephone No.: 212-735-3000
Facsimile No.: 212-735-2000

PHILLIP B. PHILBIN
Texas State Bar No. 15909020
E-mail: phillip.philbin@haynesboone.com
MICHAEL D. KARSON
Texas State Bar No. 24090198
E-mail: michael.karson@haynesboone.com
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone No.: 214-651-5000
Facsimile No.: 214-651-5940

_Attorneys for Plaintiffs_
_ZeniMax Media Inc. and id Software LLC_

23

## <u>CERTIFICATE OF SERVICE</u>

On January 30, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Dated: January 30, 2017                         <u>*s/ Phillip B. Philbin*</u>
                                                           Phillip B. Philbin

24