**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and | § | |
| ID SOFTWARE, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1849-K |
| | § | |
| OCULUS VR LLC, PALMER LUCKEY, | § | |
| FACEBOOK, INC., BRENDAN IRIBE, | § | |
| and JOHN CARMACK, | § | |
| | § | |
| Defendants. | § | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon the lawyers for each of the parties will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.  After the opening statements, the plaintiffs will call witnesses and present evidence.  Then, the defendants will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, the plaintiffs will be permitted to present rebuttal evidence.  After all the

evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law.   You will then retire to deliberate on a verdict.

Keep an open mind during the trial.   Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.   If you would like to take notes during the trial, you may do so.   If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony.   Do not be unduly influenced by the notes of other jurors.   A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony. Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.   On the other hand, any exhibits admitted during the trial will be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.   Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.   I know that many of you use cell phones, iPhones, Blackberries, the internet and other tools of technology. You also must not talk to anyone about this case or use

these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking websites, including Facebook, MySpace, LinkedIn, and YouTube. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the court immediately.   Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them.   It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.   Do not learn anything about the case from any other source.

Throughout these instructions, I may refer to Zenimax and id Software, as "the "the plaintiffs."   I may refer to Oculus, Facebook, Luckey Palmer, Brendan Iribe, and John Carmack as "the defendants."   During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.   I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of the trial.

The evidence in this case will consist of the following:

1.   The sworn testimony of all witnesses, no matter who called a witness.

2.   All exhibits received in evidence, regardless of who may have produced the

exhibits.

3.  All facts that may have been stipulated or judicially noticed that you must take as true for purposes of this case.

A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proved.   The parties have agreed, or stipulated, that the following fact is not in dispute and will require no proof at trial.

1.  The trademarks that are the subject of Plaintiffs' claims based on trademark law are legally protectable trademarks.

I may take "judicial notice" of certain facts or events.   When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.   If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

During the trial, the lawyers may make objections to questions asked or answers given.   That simply means that the lawyer is requesting that I make a decision on a particular rule of law.   Do not draw any conclusion from such objections or from my rulings on the objections.   These relate only to the legal questions that I must determine and should not influence your thinking.   If I sustain an objection to a question, the witness cannot answer it.   Do not attempt to guess what answer might have been given had I allowed the question to be answered.   If I overrule an objection, treat the answer like any other.   Additionally, some evidence may be admitted for a

limited purpose only.   When I instruct you that an item of evidence has been admitted for a limited purpose only, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.   From the facts that you believe have been proved, you may draw such reasonable inferences or conclusions as you feel are justified in light of your experience.   You will hear evidence related to the alleged acts or omissions of both parties and non-parties to this case, and will be asked to determine whether they are or are not at fault.   Whether or not an individual or company is or is not a party to this case should not be a concern to you, and should not influence your findings as to causation or fault.

It is now time for opening statements.

## POST-EVIDENCE INSTRUCTIONS

MEMBERS OF THE JURY:

Now that you have heard all the evidence in this case, I will instruct you on the law that you must apply.

## GENERAL INSTRUCTIONS

It is your duty to follow the law as I give it to you in this Charge. On the other hand, you the jury are the judges of the facts.   Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.   Remember that any statements or arguments made by the

lawyers are not evidence and are not instructions on the law.   They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.   Your answers and your verdict must be unanimous.   Many of the claims and defenses in this case must be proven by a preponderance of the evidence. The Plaintiffs must prove each essential part of their claims by a preponderance of the evidence.   Defendants must also prove each essential part of its defenses by a preponderance of the evidence.   Mr. Carmack must prove each essential part of his counter claim by a preponderance of the evidence. The Plaintiffs must prove each essential part of its defenses to Mr. Carmack's counterclaims by a preponderance of the evidence. The preponderance of the evidence means the greater weight and degree of credible evidence before you.   In other words, to establish a claim or defense by a "preponderance of the evidence" means to prove that the claim is more likely so than not so.   In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of the plaintiffs' claims by a preponderance of the evidence, you should find for the defendants as to that claim.

The Plaintiffs have also asked for an award of exemplary damages in relation to some of their claims in this lawsuit. This must be decided under a higher standard of proof than the preponderance of the evidence. This higher burden of proof is "clear and

convincing," which means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

You are the sole judges of the "credibility" or believability of each witness and the weight to be given to the witness's testimony.   In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.   So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field–he or she is called an expert witness–is permitted to state his opinions on those technical matters. However, you are not required to accept that opinion.   As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.   In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence you may consider in properly finding the truth as to the facts in the case. One is direct evidence.   A fact is established by direct evidence when proved by witnesses who saw the act done or heard the words spoken or by documentary evidence. The other is indirect or circumstantial evidence–the proof of a chain of circumstances indicating the existence or nonexistence of certain other facts. Direct proof of a state of mind is almost never available and is not required.   As a general rule, the law makes no distinction between direct and circumstantial evidence,

but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

You have heard conflicting evidence in this case that certain electronically stored information may have been deleted or lost and therefore not available for use as evidence at trial. If you find that any of these Defendants caused any of these actions to occur, you may, but you are not required to, infer that the information was unfavorable to those Defendants.

Do not let bias, prejudice or sympathy play any part in your deliberations.   A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.   This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

Now I will turn to the requirements of each of the legal claims and defenses that the parties have brought in this case.

## A. Common Law Misappropriation of Trade Secrets

### 1. Common Law Misappropriation of Trade Secrets: Liability

Plaintiffs ZeniMax and id Software contend that Defendants misappropriated what Plaintiffs regard as their trade secrets. In this action, Plaintiffs have asserted that the following of their technologies are trade secrets:

1.  Distortion correction technology;

2.  Chromatic aberration correction method;

3.  Gravity orientation and sensor drift correction technology;

4.   Head and neck modeling technology;

5.   HMD view bypass technology;

6.   Predictive tracking technology; and

7.   Time warping methodology.

To be successful on a claim for trade secret misappropriation against Defendants, ZeniMax and id Software must prove each of the following elements:

1.   the existence of a trade secret;

2.   that Defendants acquired the trade secret through the breach of a confidential relationship or by improper means;

3.   that Defendants made commercial use of the trade secret in their business without authorization; and

4.     that Plaintiffs suffered damages as a result.

A trade secret is defined as a formula, pattern, device or compilation of information used in a business which gives its owner an opportunity to obtain an advantage over his competitors who do not know or use it.

A trade secret differs from other secret information in a business in that it is not simply information as to single, ephemeral, short lived, or transitory events in the conduct of the business. A trade secret is a process or device for continuous use in the operation of the business.

You should consider the following factors in determining whether the information claimed by ZeniMax and id Software is a trade secret:

(1) the extent to which the information is known outside their business;

(2) the extent to which it is known by employees and others involved in their business;

(3) the extent of measures taken to safeguard the secrecy of the information;

(4) the value of the information to Plaintiffs and to their competitors;

(5) the amount of effort or money expended in developing the information;

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Because trade secrets do not fit neatly into each factor every time, all six factors need not be satisfied, rather, you should weigh these factors

Matters of general knowledge in an industry cannot be appropriated by one as his trade secret. Moreover, a former employee may use the general knowledge, skills, and experience acquired during his prior employment to compete with a former employer and even do business with the former employer's customers.

The subject matter of a trade secret must be secret and must not be public knowledge in the trade or business. Information that is generally known in the industry, readily ascertainable by inspection or independent investigation, or publicly disclosed is not a trade secret. Trade secret protection is lost if one voluntarily discloses information to another who has no obligation to keep the information secret or if one otherwise fails to take reasonable precautions to ensure its secrecy. A trade secret is not required to be novel or unique and it may consist of a combination of simple and otherwise known components. But if a process or idea is so common, well known, or readily ascertainable that it lacks all novelty, uniqueness, and originality, then it lacks the necessary privacy of a trade secret.

If you find that ZeniMax owned any valid trade secrets, you must determine whether ZeniMax has proven by a preponderance of the evidence that Defendants acquired any of those trade secrets as a result of a breach of a confidential relationship between the parties or other improper means.

A person discovers another's trade secret through "improper means" when he acts below the generally accepted standards of commercial morality and reasonable conduct. To discover a trade secret by "improper means" requires that the Defendant have notice of the fact the information is a trade secret. It is not improper to obtain knowledge of a trade secret where the owner of the alleged trade secret voluntarily discloses it or fails to take reasonable precautions to ensure its secrecy.

To find a confidential relationship existed between ZeniMax and one or more Defendants, you must find an express or implied agreement existed between the parties in which they both understood or ought to have understood the terms of the agreement. You may find such a relationship was implied by the business relationship or by the circumstances surrounding the dealings between the parties. A breach of a confidentiality agreement can establish a breach of a confidential relationship.

A person "makes commercial use" of a trade secret when he seeks to profit from the use of the secret. As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to a Defendant is commercial use of that trade secret. Marketing goods that embody a trade secret, employing a trade secret in manufacturing or production, relying on a trade secret to assist or accelerate research or development, or soliciting customers through the use of

information that is trade secret all constitute use of a trade secret.

## 2. Common Law Misappropriation of Trade Secrets: Defenses

Defendants John Carmack and Brendan Iribe assert as a defense that the statute of limitations bars ZeniMax and id Software's claim for Mr. Carmack's and Mr. Iribe's alleged misappropriation of trade secrets.

A statute of limitations is a law that provides that a suit is barred if a plaintiff does not bring it within a prescribed period of time. The time period within which a lawsuit for alleged misappropriation of a particular trade secret must be brought begins when ZeniMax and id Software first discovered, or by the exercise of reasonable diligence should have discovered, the facts that form the basis of its alleged claim that a particular trade secret was misappropriated. The question is whether the plaintiffs have knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights.

The applicable statute of limitations period for Plaintiffs' misappropriation claim is three years. For the purposes of the statute of limitations, you may consider the suit against Mr. Carmack and Mr. Iribe as being filed on March 31, 2016.

Defendants Mr. Carmack and Mr. Iribe have the burden of proving the statute of limitations defense.   In other words, Mr. Carmack and Mr. Iribe must prove by a preponderance of the evidence that ZeniMax and id Software did not bring their claim for misappropriation of a trade secret within the applicable time period.

Defendants assert that the defense of laches bars Plaintiffs' misappropriation of alleged trade secrets. Laches is an equitable defense with three elements: (1) delay in

asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

Defendant Mr. Carmack contends that he is not liable for trade secret misappropriation because of a doctrine called estoppel by contract. Estoppel by contract prevents a party from denying the terms of a valid of fully executed contract. Estoppel by contract applies when a party to a contract attempts to take a position inconsistent with the contract's provision, to the prejudice of another. Here, Mr. Carmack claims that ZeniMax should be prevented from denying the terms of Mr. Carmack's 2009 employment agreement with ZeniMax and that the position that the Plaintiffs have taken in this litigation is inconsistent with the terms of that agreement. Mr. Carmack must prove this defense by a preponderance of the evidence.

### 3. Common Law Misappropriation of Trade Secrets: Damages

If you find that the Plaintiffs have proved their claim against any Defendant by a preponderance of the evidence, you must determine the damages to which the

Plaintiffs are entitled. You should not interpret the fact that I am giving instructions about the Plaintiffs' damages as an indication in any way that I believe the Plaintiffs should, or should not, win this case. It is your task to decide whether any Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendant is liable and that the Plaintiffs are entitled to recover money from any Defendant.

If you find that any Defendant is liable to the Plaintiffs, then you must determine an amount that is fair compensation for the Plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make ZeniMax and id Software whole — that is, to compensate them for the damage that they have suffered.

You may award compensatory damages only for injuries that ZeniMax and id Software prove were proximately caused by Defendants' allegedly wrongful conduct. Proximate cause means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The damages that you award must be fair compensation for all of ZeniMax and id Software's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which ZeniMax and id

Software have actually suffered or that ZeniMax and id Software are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that ZeniMax and id Software prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You may impose damages on a claim solely upon a Defendant or Defendants that you find are liable on that claim. Although there are multiple Defendants in this case, it does not necessarily follow that if one is liable, all or any of the others are also liable. Each Defendant is entitled to a fair, separate, and individual consideration of its case without regard to your decision as to the other Defendants. If you find that only one Defendant is responsible for a particular injury, then you must award damages for that injury only against that Defendant. If you find that any Defendant is liable to the Plaintiffs, bear in mind that ZeniMax is only entitled to be made whole once, and may not recover more than it has lost.

In an action for trade secret misappropriation, Plaintiffs can recover actual damages based on the value of what has been gained by the Defendants by their

misappropriation. The value of what the Defendants have gained as a result of the misappropriation can be measured by a number of methods:

1. One of the ways used to measure this value is the actual profits resulting from the use or disclosure of the trade secrets;

2. Damages may also be measured by the amount that a reasonably prudent investor would have paid for the trade secrets at the time the trade secrets were misappropriated;

3. Damages may also be measured by the costs saved by the Defendants; and

4. Damages may be measured by a reasonable royalty, which would be an amount of money that would have been agreed to, at the time the trade secrets were misappropriated, in a hypothetical arm's-length negotiation between a willing licensor and a willing licensee for the trade secrets. In determining the amount of a reasonable royalty, you may consider evidence of any of the following factors:

(1)   the resulting and foreseeable changes in the parties' competitive posture;

(2)   prices past purchasers or licensees may have paid;

(3)   the total value of the secret to ZeniMax and id Software, including Zenimax and id Software's development cost and the importance of the secret to Zenimax and id Software's business;

(4)   the nature and extent of the use Defendants intended for the trade secrets; and

(5)   whatever other unique factors that might have been affected by the parties' agreement.

Plaintiffs also contend that the Defendants were unjustly enriched in

connection with their act of misappropriation. Unjust enrichment is an equitable principle holding that one who unjustly receives benefits should make restitution for those benefits, and is typically found where one person has obtained a benefit from another by fraud, duress, or taking of an undue advantage or has passively accepted benefits that it would be unjust for that person to retain.

If you find the Defendants were unjustly enriched by their act of misappropriation and should make restitution for any property or benefits they may have recieved, you should award that amount of money against Defendants and in favor of Plaintiffs.

### 4. Common Law Misappropriation of Trade Secrets: Jury Questions

**QUESTION 1:**

Did ZeniMax prove, by a preponderance of the evidence, that any Defendant misappropriated the trade secrets claimed by ZeniMax and id Software?

Answer "Yes" or "No" for each Defendant.

Oculus: _____no_____

Facebook: _____no_____

Palmer Luckey: _____no_____

Brendan Iribe: _____no_____

John Carmack: _____no_____

**QUESTION 2:**

If you answered "Yes" to Question 1 for Brendan Iribe or John Carmack, answer this question for each of these Defendants that you answered "Yes" in Question 1. Otherwise, do not answer this question and skip to Question 3.

Do you find that the statute of limitations bars ZeniMax and id Software's claim for trade secret misappropriation against John Carmack and/or Brendan Iribe?

Answer "Yes" or "No" for each Defendant.

Brendan Iribe: _____n/a_____

John Carmack: _____n/a_____

## QUESTION 3:

If you answered "Yes" to Question 1 for John Carmack, answer this question. Otherwise, do not answer this question and skip to Question 4.

Do you find that the doctrine of estoppel by contract bars ZeniMax and id Software's claim for trade secret misappropriation against John Carmack?

Answer "Yes" or "No".

John Carmack: _____n/a_____

## QUESTION 4:

If you answered "Yes" to any part of Question 1 for any Defendant, answer this question for each of the Defendants that you answered "Yes" in Question 1. Otherwise, do not answer this question and skip to Question 7.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for trade secret misappropriation?

Answer "Yes" or "No" for each Defendant:

Oculus: _____n/a_____

Facebook: _____n/a_____

Palmer Luckey: _____n/a_____

Brendan Iribe: _____n/a_____

John Carmack: _____n/a_____

## QUESTION 5:

Answer this question if you answered "Yes" in Question 1 for any Defendant and "No" in Question 2, Question 3, and Question 4 for that Defendant. Otherwise, do not answer this question and skip to Question 7.

What amount of damages, if any, did Zenimax and id Software prove were proximately caused by Defendants' misappropriation?

Answer in dollars and cents, if any.

$ _____n/a_____

## QUESTION 6:

Answer this question if you assessed damages in Question 5. Otherwise do not answer this question and skip to Question 7.

For each person you found caused or contributed to cause the damages to Plaintiffs, find the percentage of responsibility attributable to each. Assign percentages of responsibility only to those Defendants you found caused or contributed to cause the damages for misappropriation of trade secret. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

Oculus: _____n/a_____ %

Facebook:                       _n/a__ %

Palmer Luckey:                  _n/a__ %

Brendan Iribe:                  _n/a__ %

John Carmack:                   _n/a__ %

Total:                          __100__ %

## B. Copyright Infringement

### 1. Copyright Infringement: Liability

The Plaintiffs have also asserted claims of copyright infringement against the Defendants. Plaintiffs' claims of copyright infringement are based on their allegation that Defendants copied some of Plaintiffs' computer code. Plaintiffs do not assert a copyright infringement claim based on any other type of copyrighted work or any use of copyrighted works by Defendants in promotional materials such as the Oculus Kickstarter.

Copyright is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. "Author" is the term we use in copyright law for the creator of an original work.

This case involves computer programs. A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result. A computer program can be a copyrightable work. ZeniMax and id Software own a copyright in a particular computer program if they created the work, or received the copyright from someone else who owned it.

In no case does copyright protection for an original work of authorship extend

to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. Accordingly, you must filter out those elements of the computer program which are unprotectable. Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, scenes a faire material, and other unprotectable elements suggested by the particular facts of the computer program under examination.

Under the merger doctrine, copyright protection is denied to expression that is inseparable from or merged with the ideas, processes, or discoveries underlying the expression.

Under the scenes a faire doctrine, protection is denied to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting. Furthermore, where a particular expression is common to the treatment of a particular idea, process, or discovery, it is lacking in the originality that is necessary for copyright protection.

Copyright protection automatically exists in a work the moment it is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

The evidence in this case includes certificates of copyright registration for ZeniMax and id Software's computer software from the Copyright Office. If you find with respect to a particular certificate that the certificate was issued within five years after first publication of the ZeniMax and id Software's software program referenced in that certificate, you are instructed that that certificate is itself evidence of the facts stated in the certificate.

To succeed on their claim, ZeniMax and id Software must prove the following things:

(1)     The computer program in question is the subject of a valid copyright;

(2)     ZeniMax and id Software own the copyright; and

(3)     Defendants copied protected expression contained in ZeniMax and id Software's copyrighted work.

Plaintiffs' certificates of registration of Plaintiffs' copyrights are what is called prima facie evidence of the element of ownership. In other words, if there is no evidence against ZeniMax and id Software as to that element, the registration certificate alone is sufficient to establish ownership.

To be eligible for copyright protection, a work must be original and in a form that can be seen, heard, reproduced, or communicated, either directly or with the aid of a machine or device. A work is original if it was created independently, as opposed to being copied from another work. It must contain at least some minimal degree of creativity. The work need not be completely new. A work can be original even if it incorporates elements that are not original to the author. However, only the original

elements added by the author are protected by copyright.

Plaintiffs' certificates of registration of Plaintiffs' copyrights are what is called prima facie evidence that ZeniMax and id Software's copyrights are valid. Relatedly, those registrations are prima facie evidence that those registered works are original. In other words, if there is no evidence against ZeniMax and id Software as to the originality of the registered works, the registration certificates alone are sufficient to establish originality.

Copyright protection extends not only to the literal elements of a computer program, for example, its source code, but also to its non-literal elements, such as the program architecture, structure, sequence and organization, operation modules and computer-user interface.

To determine if Defendants infringed any of ZeniMax and id Software's copyrights, you must consider two separate questions. The first is whether Defendants actually copied from any of ZeniMax and id Software's copyrighted computer programs. This is known as "factual copying" and may be proved by direct evidence of copying, or by circumstantial evidence.

Circumstantial evidence may support an inference of copying if ZeniMax and id Software prove that Defendants had access to any of ZeniMax and id Software's copyrighted computer programs when Defendants created their own programs, and that the two works are so similar that a reasonable person would conclude that the similarities could only be due to copying.

Such an inference of copying may be rebutted, i.e., countered, by evidence that

the accused work was created independently. If Defendants offer evidence of independent creation, ZeniMax and id Software have the burden of proving that Defendants in fact copied protected material from ZeniMax and id Software.

If you find that actual copying occurred, however, that does not by itself show copyright infringement. ZeniMax and id Software also must prove that the work they claim is an infringement is "substantially similar" to its copyrighted work. To do this, ZeniMax and id Software must prove that the copying of protected material was so extensive that it renders the accused work and the copyrighted work substantially similar. A quantitatively small amount of copied material may justify a finding of substantial similarity, or may be so small as to not justify a finding of substantial similarity. To make this determination, you must make a side-by-side comparison between the two works, including literal and non-literal elements, and determine whether you find them, on the whole, to be substantially similar.

Establishing substantial similarity for non-literal elements of a computer program is a three-part analysis that involves:

(1)    breaking down ZeniMax and id Software's computer program into its constituent parts;

(2)    examining each of the constituent parts for such things as incorporated ideas, expression that is necessarily incidental to those ideas, and elements that are taken from the public domain, to sift out all non-protectable material; and

(3)    comparing this material with the Defendants' program to determine whether the protectable elements of the programs are substantially similar as to warrant a finding of

infringement.

This is known as the "abstraction-filtration-comparison" test, which I will explain in more detail in a moment.

In making this determination, you must remember that not all similarities give rise to copyright infringement. Copyright protection does not extend to any of the ideas, procedures, methods of operation, concepts, or principles embodied in a work, but only to the particular form in which those ideas, procedures, etc., are expressed. Thus, while the original expression of an idea may be protected, the idea itself is not. Anyone is free to copy the idea, so long as they do not copy the author's original way of expressing that idea, but develop their own form of expression.

Likewise, similarities that serve a functional purpose or that are due to external factors do not give rise to a claim of infringement. In the area of computer programs, these external factors include hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices and demands, and computer industry programming practices. Thus, for example, similarities resulting from the fact that two works perform the same function, or that are dictated by industry requirements or programming standards, will not support a claim of copyright infringement.

The term used for describing the operations of a computer at higher and higher levels is "abstraction." For a computer program, there are generally six levels of abstraction (1) the main purpose; (2) the program structure or architecture; (3) modules; (4) algorithms and data structures; (5) source code; and (6) object code.

At the level of object code, there is no abstraction, because the object code controls each smallest step of the computer. As we go to higher levels we abstract from, that is, leave out more and more detail of the procedures that the program performs, until we reach the highest level of abstraction, at which we simply describe the ultimate purpose of the program, such as calculating the Dow Jones average, or for a word-processing program, creating a document.

Abstraction is the first part of the three-part test for infringement. When we are determining whether a computer program has been infringed, we have to take into account the fact that, just as a program can be described at various levels, it can be copied at various levels. If someone wants to copy another's program, he might simply copy the program's object code or source code. But he might also, without copying the literal object code or source code itself, copy the substance of each instruction that the code gives the computer, perhaps paraphrasing the source code (just as one might paraphrase a standard literary work), or perhaps using a different programming language. Or he might copy the program at higher levels of abstraction by, for example, copying the way in which the low-level procedures prescribed by the program are organized and work together so as to carry out higher-level procedures. Since a typical commercial computer program contains thousands of procedures, which are written and organized so as to operate in certain sequences and combinations, there are many ways in which parts of a program can be copied so that another programmer does not have to create his work anew. Just as someone may infringe the copyright in a short story if he copies the story but paraphrases each paragraph, someone may infringe the

copyright in a computer program by copying at some level of abstraction, the procedures that it causes the computer to carry out, or the sequence or organization of those procedures.

The abstraction-filtration-comparison test is necessary in order to detect infringement at levels of abstraction above that of object code or source code. In the abstraction part of the test, we can describe a computer program at various levels of abstraction, from the levels of object code all the way up to the program's ultimate purpose. However, in this case it is necessary for you to consider the program only at levels of abstraction at which Plaintiffs have claimed there is infringement.

The second part of the three-part test is filtration. Computer programs, like standard literary works, contain unprotected as well as protected matter, and it is only the copying of protected matter that counts toward infringement. Therefore, at each level of abstraction that you consider, it is necessary to "filter out" unprotected matter. As in the case of standard literary works, ideas are unprotectable matter. However, computer programs can also contain other types of unprotected matter. Just as we want to leave ideas unprotected by copyright so that they are available for use by others, we do not want copyright protection to extend to a computer program's functionality. The purpose of a computer program is its function. For example the function of a word processor program is to create documents. Although a programmer may have written a program that adequately performs a certain function, we want other programmers to be able to write other programs that perform the same function. The functions performed by a program are therefore unprotectable matter.

In addition, at a certain level of abstraction, the procedures that a program uses to carry out its functions are also unprotected. Just as copyright protection does not extend to the idea or function of creating a document, it does not extend to the procedure of putting letters onto the computer monitor or to the other procedures that it is necessary for a word processor to perform.

Therefore, at a certain level of abstraction, similar to the level of ideas, another person can copy the procedures that a program causes a computer to carry out because they are unprotected matter. Standard procedures, methods, and programming techniques that programmers regularly use are not protected by copyright.

There are also other aspects of a computer program that are not protected by copyright. Each computer must have an operating system program, which controls its basic operations such as the computer's use of its memory, accepting input, creating files, or producing output to a monitor. Application programs, such as word processing or spreadsheet programs, are designed to run on particular operating systems. Those aspects of an application program that are necessary in order for it to be able to run on a certain operating system, or are necessary for it to be able to operate with other programs are unprotected matter. There are also characteristics that a program may not be required to have in order to run at all, but which it must have if it is to operate reasonably efficiently. Those characteristics are also unprotected matter. In general, aspects of a program that are reasonably required in order for the program to accomplish the functions for which it was designed, or that are reasonably required by external factors such as hardware or other software, or for reasonably efficient

operation, are not protected by copyright.

However, where there are reasonable alternatives to elements of a program that do not involve a significant loss of functionality or efficiency, you may find such elements to be protected matter.

The third part of the abstraction-filtration-comparison test is comparison. Here, at each level of abstraction that you are considering, you must compare the protected matter in the Plaintiffs' programs — the parts that have not been filtered out — with the code used by the Defendants. When you make that comparison, you should take into account any relevant expert testimony presented by the Plaintiffs or Defendants.

You must decide whether, taking into account copying at all levels of abstraction, the Plaintiffs have proven by a preponderance of the evidence that Defendants copied substantial protected matter.

A copyright may also be infringed by vicariously infringing. A person is liable for copyright infringement by another if the person has a financial interest and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.

In order to prove vicarious copyright infringement, Plaintiffs have the burden of proving by a preponderance of the evidence that:

1. One of the Defendants infringed Plaintiffs' copyrights, as defined in the instructions I have already given you;

2. Another Defendant profited from that initial infringement; and

3. That other Defendant had the right and ability to stop or limit the initial

infringement but failed to do so.

A copyright may also be infringed by contributory infringement. With certain exceptions, a person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces, causes, or materially contributes to the activity.

In order to prove contributory copyright infringement, Plaintiffs have the burden of proving by a preponderance of the evidence that:

1. One of the Defendants infringed Plaintiffs' copyrights, as defined in the instructions I have already given you; and

2. Another Defendant knew or should have known of that initial infringement; and

3. That other Defendant induced, caused, or materially contributed to the initial infringement.

## 2. Copyright Infringement: Defenses

Defendants claim that they are not liable for copyright infringement because they hold a license to use the Plaintiffs' copyrighted works. A license is essentially a promise by the licensor not to sue the licensee. A license authorizing the use of copyrighted material can be express or implied. An express license could take the form of a written or oral agreement. An implied license is one which may be inferred from the circumstances surrounding the use of the copyrighted material and the behavior of the licensor regarding use of the copyrighted material, including for example, knowledge of the use and lack of any objection to use. In considering whether an implied license existed, you may consider what the parties said and did in light of the surrounding

circumstances, including any earlier course of dealing. If you find by a preponderance of the evidence that Defendants had an express or implied license to use the Plaintiffs' copyrighted material, your verdict must be for Defendants.

Defendants also contend that they are not liable for copyright infringement because any use they made of the Plaintiffs' copyrighted work was de minimis. For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement. This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial.

A use is considered de minimis if it is so meager and fragmentary that the average audience would not recognize the appropriation. Copying might also be considered de minimus when the use of the work is so fleeting or trivial that it is a trifle with which the law should not be concerned. Sometimes even copying the entire work or much of the work can be de minimus under this definition.

Defendants must prove by a preponderance of the evidence that any protected material that they might have copied was de minimus.

Defendants John Carmack and Brendan Iribe assert as a defense that the statute of limitations bars ZeniMax and id Software's copyright infringement claim. As we have discussed, a statute of limitations is a law that provides that a suit is barred if Plaintiffs do not bring it within a prescribed period of time. The time period within which the copyright infringement suit must be brought begins when ZeniMax and id Software first knew, or by the exercise of reasonable care should have known, of the facts that form the

basis of their copyright infringement claim. The applicable statute of limitations period for a claim of copyright infringement is three years. For these purposes you can consider that this suit against Defendants Mr. Carmack and Mr. Iribe was filed on March 31, 2016.

For copyright infringement, each act gives rise to a discrete claim with its own statute of limitations period. So, when a person has engaged in a series of discrete infringing acts, the copyright holder's suit may be timely with respect to more recent acts of infringement, but untimely with respect to prior acts of the same or similar kind.

Defendants Mr. Carmack and Mr. Iribe have the burden of proving the statute of limitations defense by a preponderance of the evidence.

Defendants also assert that the defense of laches bars Plaintiffs' claim of copyright infringement. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

### 3. Copyright Infringement: Damages

If you find that the Plaintiffs have proved their claim against any Defendant by a preponderance of the evidence, you must determine the damages to which the Plaintiffs are entitled. You should not interpret the fact that I am giving instructions about the Plaintiffs' damages as an indication in any way that I believe the Plaintiffs should, or should not, win this case. It is your task to decide whether any Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendant is liable and that the Plaintiffs are entitled to recover money from any Defendant.

ZeniMax and id Software must prove damages by a preponderance of the evidence. ZeniMax and id Software may recover for any actual losses they suffered because of the infringement, plus any profits that Defendants made from the infringement to the extent not taken into account in Plaintiffs' losses. I will define these terms in the following instructions.

Examples of actual losses from copyright infringement can include the profits that ZeniMax and id Software prove they would have made without the infringement. Profits are the revenue ZeniMax and id Software would have made on sales they would have made without the infringement, less any additional expenses ZeniMax and id Software would have incurred in making the sales.

Actual losses can also be measured by determining a "reasonable royalty." With respect to their copyright infringement claim, a "reasonable royalty" would measure the royalty that would have resulted from a hypothetical arm's length negotiation between a

willing buyer and ZeniMax and id Software to obtain a license to copy and use ZeniMax and id Software's copyrighted works.

Determining a reasonable royalty from a hypothetical license price requires an objective, not a subjective, analysis of the fair market value of the license, and excessively speculative claims must be rejected. An objective non-speculative license price could be established through objective evidence of benchmark transactions.

In addition to recovering for its actual losses, if any, ZeniMax and id Software are entitled to recover the profits that Defendants made because of the infringement. Defendants' profits are recoverable, however, only to the extent that you have not taken them into account in determining ZeniMax and id Software's actual losses.

Defendants' profits are revenues that Defendants made because of the infringement minus their expenses in developing, producing, distributing, marketing, and selling their computer programs.

ZeniMax and id Software need only prove Defendants' revenues. Defendants must prove their own expenses and any portion of their profits that resulted from factors other than infringement of ZeniMax and id Software's copyrights.

### 4. Copyright Infringement: Jury Questions

QUESTION 7:

Did any of the following Defendants directly infringe upon any of ZeniMax or id Software's copyrights?

Answer "Yes" or "No" for each Defendant:

Oculus: _____ yes _____

Facebook:          _____No_____

Palmer Luckey:     _____No_____

John Carmack:      _____No_____

## QUESTION 8:

Did any of the following Defendants vicariously infringe upon any of ZeniMax or id Software's copyrights?

Answer "Yes" or "No" for each Defendant:

Oculus:            _____No_____

Facebook:          _____No_____

Palmer Luckey:     _____Yes_____

Brendan Iribe:     _____Yes_____

John Carmack:      _____No_____

## QUESTION 9:

Did any of the following Defendants contributorily infringe upon any of ZeniMax or id Software's copyrights?

Answer "Yes" or "No" for each Defendant:

Oculus:            _____No_____

Facebook:          _____No_____

Palmer Luckey:     _____Yes_____

Brendan Iribe:     _____Yes_____

John Carmack:      _____Yes_____

**QUESTION 10:**

If you answered "Yes" to Question 7, 8, or 9 for Brendan Iribe and/or John Carmack, answer this question for each of these Defendants that you answered "Yes" in Question 7, 8, or 9. Otherwise, do not answer this question and skip to Question 12.

Do you find that of all ZeniMax and id Software's claims for copyright infringement against John Carmack and/or Brendan Iribe are barred by the statute of limitations?

Answer "Yes" or "No" for each Defendant:

Brendan Iribe:   _No_

John Carmack:   _No_

**QUESTION 11:**

If you answered "No" to Question 10 for Brendan Iribe and/or John Carmack, answer this question for each of these Defendants that you answered "No" in Question 10. Otherwise, do not answer this question and skip to Question 12.

Do you find that of a portion of ZeniMax and id Software's claims for copyright infringement against John Carmack and/or Brendan Iribe is barred by the statute of limitations?

Answer "Yes" or "No" for each Defendant:

Brendan Iribe:   _No_

John Carmack:   _No_

**QUESTION 12:**

If you answered "Yes" to any part of Questions 7, 8, or 9 then answer this question for each Defendant that you answered "Yes" in Question 7, 8, or 9. Otherwise, do not answer this question and skip to Question 15.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for copyright infringement?

Answer "Yes" or "No" for each Defendant:

Oculus:          _No_____

Facebook:        _n/a____

Palmer Luckey:   _No_____

Brendan Iribe:   _No_____

John Carmack:    _No_____

**QUESTION 13:**

If you answered "Yes" to any part of Questions 7, 8, or 9 then answer this question for each Defendant that you answered "Yes" in Question 7, 8, or 9. Otherwise, do not answer this question and skip to Question 15.

Do you find that either of the defenses of license or de minimis use bars ZeniMax's claim for copyright infringement?

Answer "Yes" or "No" for each Defendant:

Oculus:          _No_____

Facebook:        _n/a____

Palmer Luckey:   _yes____

Brendan Iribe: ___*yes*___

John Carmack: ___*yes*___

## QUESTION 14:

Only answer this question for each Defendant that you answered "Yes" in Questions 7, 8, or 9 and also answered "No" in Questions 10, 12, or 13. For Brendan Iribe and John Carmack, if you answered "Yes" to Question 11 for these Defendants, only include actual damages and/or profits, if any, that are based on the portion of ZeniMax and id Software's copyright infringement claims that are not barred by the statute of limitations.

    1.   What amount of actual damages, if any, did ZeniMax and id Software suffer as a result of the infringement by each of the Defendants that you found in response to Questions 7, 8, or 9?

Answer in dollars and cents, if any.

Oculus:        $ ___*50,000,000.00*___

Facebook:     $ ___*n/a*___

Palmer Luckey: $ ___*n/a*___

Brendan Iribe:   $ ___*n/a*___

John Carmack: $ ___*n/a*___

    2.   What amount of profits, if any, do you find that Defendants earned as a result of that infringement that was not taken into account in computing any of ZeniMax and id Software's actual damages?

Answer in dollars and cents, if any.

Oculus: $ _____0_____

Facebook: $ _____n/a_____

Palmer Luckey: $ _____n/a_____

Brendan Iribe: $ _____n/a_____

John Carmack: $ _____n/a_____

## C. Zenimax and id Software's Breach of Contract Claim

### 1. Breach of Contract: Liability

ZeniMax and id Software also allege that they had a contract - the Non-Disclosure Agreement - with Defendants Palmer Luckey and Oculus.

To succeed on their breach of contract claim, ZeniMax and id Software must prove the following things by a preponderance of the evidence:

1. The existence of a valid, enforceable contract between Plaintiffs and Defendant Mr. Luckey and/or Oculus;

2. Plaintiffs performed their obligations under that contract;

3. Defendant Mr. Luckey and/or Oculus breached that contract; and

4. Plaintiffs sustained damages as a result of that breach.

ZeniMax and id Software must first prove by a preponderance of the evidence that such a contract existed and who are the parties to the contract. In deciding whether the parties reach an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

You must also consider who is a party to the contract, if any. In particular, Oculus disputes that it is a party to the Non-Disclosure Agreement. There are a number of ways by which you might find that Oculus is a party to that agreement:

1. Oculus will be bound to the Non-Disclosure Agreement if you find that Oculus is a "mere continuation" of Luckey's prior business. A business that takes over assets from a prior business, whether that prior business be a corporation or sole proprietor, may succeed to the prior business's rights and obligations when the new business is a mere continuation of the prior business. In determining whether Oculus is a mere continuation of Palmer Luckey's business you may consider two factors. First, if Palmer Luckey was fully paid for the assets of his prior business, that would tend to show that the new business was not a mere continuation. If, however, you find that Mr. Luckey was not fully paid for the assets of his prior business that would tend to show that Oculus was a mere continuation. Second, if you find that one or more persons were officers, directors, or key employees of both Mr. Luckey's prior business and Oculus, that would also tend to show that the new business was a mere continuation.

2. Oculus will be bound to the Non-Disclosure Agreement if you find that Oculus manifested acceptance of the Non-Disclosure Agreement through its conduct. By this we ask: was there an implied agreement between Oculus and Plaintiffs that Oculus would be bound to the Non-Disclosure Agreement? An implied agreement is one whose existence and terms are shown by conduct rather than by words. Such an agreement may arise from the parties' conduct and course of dealing if it demonstrates that their minds met on the terms of the agreement. A contract implied from the facts and

circumstances in evidence is as binding as would be an expressed one. Accordingly, in deciding whether the parties reached an agreement through their conduct, you may consider their conduct in light of the surrounding circumstances, including any course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

3. Oculus will be bound to the Non-Disclosure Agreement if you find that Mr. Luckey assigned his obligations under that agreement under a theory of quasi-estoppel. This principle prevents a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party. The doctrine applies where it would be unconscionable to allow a party to maintain a position inconsistent with one in which they acquiesced, or of which they previously accepted a benefit.

ZeniMax and id Software must lastly prove by a preponderance of the evidence that Luckey and/or Oculus breached the Non-Disclosure Agreement and that Plaintiffs suffered damages as a result.

### 2. Breach of Contract: Defenses

Defendants assert that if they failed to comply with the contract then this failure is excused. Failure to comply with a term in an agreement is excused if the parties agreed, verbally or through their course of performance, that a new or different term would take its place. In making this determination, you may consider whether the contract involved repeated occasions for performance of the term by one party and whether the other party, with knowledge of the nature of the party's performance, accepted or otherwise acquiesced in the performance by the party. You may also consider whether the parties had a common basis of understanding for interpreting their

expressions and other conduct.

Defendants Mr. Luckey and Oculus also contend that they are not liable for breach of contract because of the doctrine of laches, which we have already discussed. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

Defendants Mr. Luckey and Oculus also assert as a defense that they were excused from technical compliance with the Non-Disclosure Agreement because ZeniMax waived its rights under the Non-Disclosure Agreement.

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. If you find by a preponderance of the evidence that ZeniMax intentionally surrendered its rights under the Non-Disclosure Agreement or intentionally conducted itself in ways that were inconsistent with claiming the rights that ZeniMax asserts it held under the Non-Disclosure Agreement, then your verdict

should be for Defendants Mr. Luckey and Oculus on this claim.

### 3. Breach of Contract: Damages

Should you find that ZeniMax and id Software have proven their breach of contract claim, you must compensate them with a sum of money, if paid now in cash, that would fairly and reasonably compensate Plaintiffs for their damages that were proximately caused by Mr. Luckey's and/or Oculus's breach of any agreement they had with Plaintiffs relating to the Non-Disclosure Agreement.

You should not interpret the fact that I am giving instructions about damages as an indication in any way that I believe the Plaintiffs should, or should not, prevail on this claim. It is your task to decide whether Defendants Mr. Luckey and/or Oculus are liable. I am instructing you on damages only so that you will have guidance in the event you decide that either Defendant is liable and that ZeniMax and id Software are entitled to recover money.

If you decide so, the Plaintiffs are entitled to recover their direct damages, which are those damages which naturally and necessarily flow from the breach, if any, and consequential damages, which are those damages that are the natural, probable, and foreseeable consequence of the breach, if any. If you award any contract damages, those damages should be measured at the time of the breach and not at the time of trial.

Damages awarded must be proximately caused by the Defendants' failure to comply with the Non-Disclosure Agreement. Proximate cause means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission

complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

### 4. Breach of Contract: Jury Questions

**QUESTION 15:**

Did Palmer Luckey fail to comply with the Non-Disclosure Agreement?

Answer "Yes" or "No." __*yes*__

**QUESTION 16:**

Only answer this question if you answered "Yes" to Question 15. Otherwise, do not answer this question and skip to Question 19.

Do you find that the doctrine of laches bars ZeniMax and id Software's breach of contract claim against Palmer Luckey?

Answer "Yes" or "No": __*yes*__

**QUESTION 17:**

Only answer this question if you answered "Yes" to Question 15. Otherwise, do not answer this question and skip to Question 19.

Do you find that the doctrine of waiver bars ZeniMax and id Software's breach of contract claim against Palmer Luckey?

Answer "Yes" or "No": __*no*__

**QUESTION 18:**

Only answer this question if you answered "Yes" to Question 15. Otherwise, do not answer this question and skip to Question 19.

Do you find that Palmer Luckey's failure to comply was excused?

Answer "Yes" or "No": _No_

## QUESTION 19:

Do you find that Oculus is a party to the document entitled "Non-Disclosure Agreement" dated May 24, 2012 because Oculus is a mere continuation of Palmer Luckey?

Answer "Yes" or "No." _yes_

## QUESTION 20:

Do you find that Oculus is a party to the document entitled "Non-Disclosure Agreement" dated May 24, 2012 because Oculus manifested its acceptance of that agreement through its conduct?

Answer "Yes" or "No." _yes_

## QUESTION 21:

Do you find that Oculus is a party to the document entitled "Non-Disclosure Agreement" dated May 24, 2012 because Palmer Luckey assigned his obligations under that agreement to Oculus under a theory of quasi-estoppel?

Answer "Yes" or "No." _yes_

## QUESTION 22:

Only answer this question if you answered "Yes" to Question 19, 20, or 21. Otherwise, do not answer this question and skip to Question 26.

Did Oculus fail to comply with the Non-Disclosure Agreement?

Answer "Yes" or "No." _yes_

**QUESTION 23:**

Only answer this question if you answered "Yes" to Question 22. Otherwise, do not answer this question and skip to Question 26.

Do you find that the doctrine of laches bars ZeniMax and id Software's breach of contract claim against Oculus?

Answer "Yes" or "No": ___No___

**QUESTION 24:**

Only answer this question if you answered "Yes" to Question 22. Otherwise, do not answer this question and skip to Question 26.

Do you find that the doctrine of waiver bars ZeniMax and id Software's breach of contract claim against Oculus?

Answer "Yes" or "No": ___No___

**QUESTION 25:**

Only answer this question if you answered "Yes" to Question 22. Otherwise, do not answer this question and skip to Question 26.

Do you find that Oculus' failure to comply was excused?

Answer "Yes" or "No": ___no___

**QUESTION 26:**

Only answer this question if you answered "Yes" to Question 15 and "No" to Question 16, Question 17, and Question 18. Otherwise, do not answer this question and skip to Question 27.

What sum of money, if paid now in cash, would fairly and reasonably

47

compensate ZeniMax and id Software for their injuries that resulted from Palmer Luckey's failure to comply with the Non-Disclosure Agreement?

Do not add any amount for interest on damages, if any.

Answer in dollars and cents as to damages, if any, that were sustained by ZeniMax and id Software in the past:

Answer: $ _____n/a_____

Answer in dollars and cents as to damages, if any, that ZeniMax and id Software, in reasonable probability, will sustain in the future:

Answer: $ _____n/a_____

## QUESTION 27:

Only answer this question if you answered "Yes" to Question 22 and "No" to Question 23, Question 24, and Question 25. Otherwise, do not answer this question and skip to Question 28.

What sum of money, if paid now in cash, would fairly and reasonably compensate ZeniMax and id Software for their injuries that resulted from Oculus's failure to comply with the agreement.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents as to damages, if any, that were sustained by ZeniMax and id Software in the past:

Answer: $ _____200,000,000.00_____

Answer in dollars and cents as to damages, if any, that ZeniMax and id Software, in reasonable probability, will sustain in the future:

Answer: $ ____0_____

## D. Tortious Interference with Contract

### 1. Tortious Interference with Contract: Liability

ZeniMax and id Software have made a claim that Facebook has tortiously interfered with its Non-Disclosure Agreement with Mr. Luckey and/or Oculus.

In order to establish a tortious interference with contract claim, the Plaintiffs must prove by a preponderance of the evidence:

1) a contract existed between ZeniMax and id Software on the one hand and Mr. Luckey and/or Oculus on the other that was subject to interference;

2) Defendant Facebook willfully and intentionally interfered with the contract;

3) the act of interference was a proximate cause of damage to ZeniMax and id Software; and

4) ZeniMax and id Software suffered actual damage or loss.

Interference is "intentional" if committed with the desire to induce the breach of the contract or with the belief that interference is substantially certain to result. Interference can include conduct that prevents performance of a contract or makes performance of a contract impossible, more burdensome, or more difficult or of less or no value to the one entitled to performance.

The Defendant's intentional making of a contract with a party and proceeding to carry out such contract, knowing that the party's performance of its contract with the Defendant would be contrary to and in violation of the party's contract with the Plaintiffs, may be used to show the Defendant's inducement of the breach.

## 2. Tortious Interference with Contract: Defenses

Defendant Facebook contends that it is not liable for breach of tortious interference with contract because of the doctrine of laches, which we have already discussed. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendant has the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

## 3. Tortious Interference with Contract: Damages

If you find that Facebook tortiously interfered with ZeniMax's Non-Disclosure Agreement with Mr. Luckey and/or Oculus, then you must determine whether such interference proximately caused ZeniMax's damages, and, if so, what sum of money would fairly and reasonably compensate ZeniMax for their damages. The measure of damages for tortious interference with contract is the same as for breach of contract.

Damages awarded must be proximately caused by the Defendants' failure to comply with the Non-Disclosure Agreement. Proximate cause means a cause that was a

substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Plaintiffs also contend that the Facebook was unjustly enriched in connection with its act of tortious interference with contract. Unjust enrichment is an equitable principle holding that one who unjustly receives benefits should make restitution for those benefits, and is typically found where one person has obtained a benefit from another by fraud, duress, or taking of an undue advantage or has passively accepted benefits that it would be unjust for that person to retain.

If you find that Facebook was unjustly enriched by its act of tortious interference with contract and should make restitution for any property or benefits they may have received, you should award that amount of money against Facebook and in favor of Plaintiffs.

### 4. Tortious Interference with Contract: Jury Questions

**QUESTION 28:**

Did Facebook tortiously interfere with ZeniMax and id Software's contract with Palmer Luckey and/or Oculus?

Answer "Yes" or "No." _no_

**QUESTION 29:**

Answer this question if you answered "Yes" to Question 28. Otherwise, do not answer this question and skip to Question 31.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for tortious interference against Facebook?

Answer "Yes" or "No."   *n/a*

**QUESTION 30:**

Answer this question if you answered "Yes" to Question 28 and "No" to Question 29. Otherwise, do not answer this question and skip to Question 31.

What sum of money, if paid now in cash, would fairly and reasonably compensate ZeniMax and id Software for their damages, if any, proximately caused by such interference?

Do not add any amount for interest on damages, if any.

Answer in dollars and cents as to damages that were sustained by ZeniMax and id Software in the past:

Answer: $   *n/a*

Answer in dollars and cents as to damages that ZeniMax and id Software, in reasonable probability, will sustain in the future:

Answer: $   *n/a*

## E. Unfair Competition

### 1. Unfair Competition: Liability

ZeniMax and id Software claim that Defendants Oculus and Facebook engaged in "unfair competition" with respect to ZeniMax and id Software's contracts, copyrights, trademarks, and/or trade secrets. "Unfair competition" is a form of unlawful business injury arising out of business conduct which is contrary to honest practice in industrial or commercial matters. That is, while the law protects and encourages competition between businesses, that competition must be fair and must not run contrary to accepted business ethics. A claim of unfair competition requires that the Plaintiffs show an illegal act by the Defendants that interfered with the Plaintiffs' ability to conduct their business. The illegal act need not necessarily violate criminal law, but must at least be an independent wrong.

In order to prove that Oculus committed an "illegal act" for purposes of Plaintiffs' unfair competition claim, ZeniMax and id Software must prove one of the following: that Oculus (1) misappropriated Plaintiffs' trade secrets; (2) infringed Plaintiffs' copyrights; (3) infringed Plaintiffs' trademarks; or (4) breached a contract it had with Plaintiffs.

In order to prove that Facebook committed an "illegal act" for purposes of Plaintiffs' unfair competition claim, ZeniMax and id Software must prove one of the following: that Facebook (1) misappropriated Plaintiffs' trade secrets; (2) infringed Plaintiffs' copyrights; or (3) tortiously interfered with the Non-Disclosure Agreement.

In order to prevail on its unfair competition claim, ZeniMax and id Software

must then prove by a preponderance of the evidence that Oculus' or Facebook's illegal act interfered with ZeniMax and id Software's ability to conduct their business.

### 2. Unfair Competition: Defenses

Defendants Facebook and Oculus contend that they are not liable for unfair competition because of the doctrine of laches, which we have already discussed. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

### 3. Unfair Competition: Damages

If you find that Defendants are liable to Plaintiffs ZeniMax and id Software under Plaintiffs' unfair competition claim, then you must determine an amount that is fair compensation for all of Plaintiffs' damages. These damages are called compensatory damages.

The purpose of compensatory damages is to make Plaintiffs whole — that is, to

compensate Plaintiffs for the damage that they have suffered. Compensatory damages are not limited to expenses that Plaintiffs may have incurred because of their injury.

The fact that I am giving you instructions concerning damages relating to ZeniMax and id Software's unfair competition claim does not mean that I think ZeniMax and id Software have established the elements of that claim or that I believe that ZeniMax and id Software should or should not prevail on this claim.

You should not award damages for ZeniMax's unfair competition claim that you already took into account with regard to ZeniMax's other claims. You may award compensatory damages only for injuries that Plaintiffs prove were proximately caused by Defendants' allegedly wrongful conduct. Proximate cause means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The damages that you award must be fair compensation for all of Plaintiffs' damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiffs have actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiffs prove the amount of their losses with mathematical

precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. Do not add any amount of interest on damages, if any.

Plaintiffs also contend that Facebook and Oculus were unjustly enriched in connection with their act of unfair competition. Unjust enrichment is an equitable principle holding that one who unjustly receives benefits should make restitution for those benefits, and is typically found where one person has obtained a benefit from another by fraud, duress, or taking of an undue advantage or has passively accepted benefits that it would be unjust for that person to retain.

If you find the Facebook and Oculus were unjustly enriched by their act of unfair competition and should make restitution for any property or benefits they may have received, you should award that amount of money against Facebook and Oculus and in favor of Plaintiffs.

### 4. Unfair Competition: Jury Questions

**QUESTION 31:**

Did Defendants Facebook and/or Oculus engage in unfair competition against ZeniMax and id Software?

Answer "Yes" or "No" for each Defendant:

Facebook: ___No___

Oculus: ___No___

**QUESTION 32:**

If you answered "Yes" to any part of Question 31, then answer this question for each Defendant that you answered "Yes" in Question 31. Otherwise, do not answer this question and skip to Question 35.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for unfair competition?

Answer "Yes" or "No" for each Defendant:

Facebook: _n/a_

Oculus: _n/a_

**QUESTION 33:**

Answer this question if you answered "Yes" to Question 31 for any Defendant and also answered "No" to Question 32 for that Defendant. Otherwise, do not answer this question and skip to Question 35.

What amount of damages, if any, did Zenimax and id Software prove were proximately caused by Defendants' unfair competition?

Answer in dollars and cents, if any.

$ _n/a_

**QUESTION 34:**

Answer this question if you assessed damages in Question 33. Otherwise do not answer this question and skip to Question 35.

For each person you found caused or contributed to cause the damages to Plaintiffs, find the percentage of responsibility attributable to each. Assign percentages

of responsibility only to those Defendants you found caused or contributed to cause the damages for unfair competition. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

     Facebook: _n/a_

     Oculus: _n/a_

     Total: _100%_

## F. Conversion

### 1. Conversion: Liability

Plaintiffs ZeniMax and id Software also contend that Defendant John Carmack converted ZeniMax and id Software's property. The term "converted" generally means that one wrongfully exercised control over another's property. Here, ZeniMax and id Software contend that Mr. Carmack converted their property.

To prevail on their conversion claim, ZeniMax and id Software must prove, by a preponderance of the evidence, each of the following:

1) Plaintiffs owned, had legal possession of, or were entitled to possession of the property;

2) Mr. Carmack, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, Plaintiffs' rights;

3) Plaintiffs made a demand for the property; and

4) Mr. Carmack refused to return the property.

## 2. Conversion: Defenses

Mr. Carmack asserts as a defense that the statute of limitations bars ZeniMax and id Software's claim for Mr. Carmack's conversion.

A statute of limitations is a law that provides that a suit is barred if a plaintiff does not bring it within a prescribed period of time. The time period within which a lawsuit for alleged conversion must be brought begins when ZeniMax and id Software first discovered, or by the exercise of reasonable diligence should have discovered, the facts that form the basis of its alleged conversion claim.

The applicable statute of limitations period for conversion is two years. For the purposes of the statute of limitations, you may consider the suit against Mr. Carmack as being filed on March 31, 2016. Mr. Carmack must prove by a preponderance of the evidence that ZeniMax and id Software did not bring their claim for conversion within the applicable time period.

Mr. Carmack contends that he is not liable for conversion because of the doctrine of laches, which we have already discussed. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

### 3. Conversion: Jury Questions

**QUESTION 35:**

Did Defendant John Carmack convert ZeniMax and id Software's property?

Answer "Yes" or "No" for each item:

ZeniMax's documents on USB drive: _Yes_

RAGE code: _Yes_

**QUESTION 36:**

If you answered "Yes" to any part of Question 35, answer this question for the items for which you answered "Yes" in Question 35. Otherwise, do not answer this question and skip to Question 38.

Do you find that the statute of limitations bars ZeniMax and id Software's claim for conversion against John Carmack?

Answer "Yes" or "No" for each item:

ZeniMax's documents on USB drive: _No_

RAGE code: _No_

**QUESTION 37:**

If you answered "Yes" to any part of Question 35, answer this question for the items for which you answered "Yes" in Question35. Otherwise, do not answer this question and

skip to Question 38.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for conversion?

Answer "Yes" or "No" for each item:

ZeniMax's documents on USB drive: __no__

RAGE code: __no__

## G. Trademark Infringement and False Designation

### 1. Trademark Infringement and False Designation: Liability

Plaintiffs ZeniMax and id Software also claim that Defendants Oculus, Mr. Luckey, and Mr. Iribe have infringed Plaintiffs' trademarks. A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product. I will sometimes refer to a "trademark" simply as a "mark."

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

In order to establish trademark infringement, ZeniMax must prove by a preponderance of the evidence that:

1) ZeniMax owned legally protectable trademarks; and

2) Defendants Oculus, Mr. Luckey, and/or Mr. Iribe used one or more of the ZeniMax's trademarks, without ZeniMax's consent, in connection with the offer of products in a manner that was likely to cause confusion as to the source, affiliation, or

sponsorship of the products.

The parties do not dispute that ZeniMax owned legally protectable trademarks.

In this case ZeniMax asserts the following trademarks:

1) The "DOOM" name,

2) The "DOOM 3" name,

3) The "DOOM II" name and design



4) The "ID" name,

5) The "RAGE" name and design



6) The "SKYRIM" name,

Likelihood of confusion means a probability of confusion, which is more than a mere possibility of confusion. It is not necessary that the mark used by Defendants be an exact copy of Plaintiffs' marks. Rather, Plaintiffs must demonstrate that, when viewed in its entirety, the marks used by Defendants are likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

In evaluating whether or not there is a likelihood of confusion, you are to

consider various factors, including:

1) Strength or weakness of Plaintiffs' mark. Strong marks receive a broad level of protection under the trademark laws; weak marks receive a narrower range of protection. In evaluating the strength of Plaintiffs' mark, you should not rely solely on the fact that Plaintiffs have a registered trademark as an indicator of strength. A mark's strength is measured by both its inherent strength (how distinctive it is) and by its acquired strength (the degree of consumer recognition it has obtained in the marketplace). The more that purchasers or users associate Plaintiffs' trademark uniquely with a single source of a product, then the stronger Plaintiffs' mark.

2) Degree of similarity or dissimilarity between the two marks. In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.

3) Similarity of the parties' products. If both Plaintiffs and Defendants use their marks to market the same, related, or complementary types of products, then the likelihood of confusion increases. If the parties' respective products are unrelated, then

the likelihood of confusion decreases.

4) Outlet and Purchaser Identity. If purchasers and purchasing outlets for the Defendants' and Plaintiffs' products are the same, there may be a greater likelihood of confusion about the source of goods than otherwise.

5) Advertising Media Identity. If Defendants and Plaintiffs advertise, market, and publicize their products over the same media, there may be a greater likelihood of confusion about the source of goods than otherwise.

6) Actual confusion. Actual confusion is not required for you to find a likelihood of confusion. However, if Defendants' use of Plaintiffs' marks has led to instances of actual confusion among relevant consumers, this may be a strong indication that confusion is likely. Even if there are instances of actual confusion, you may conclude that there is no likelihood of confusion if, for example, the instances of actual confusion were rare and infrequent.

7) Defendants' intent. In other words, Defendants' good or bad faith in adopting and using their mark. Proof of Defendants' intent to confuse or deceive consumers by adopting and using a mark that is the same or similar to Plaintiffs' mark is not necessary to establish a likelihood of confusion, but is relevant to determining whether or not confusion is likely. If Defendants intended to cause confusion, it may be more likely that confusion will occur. Conversely, if Defendants used Plaintiffs' marks in good faith and without an intent to cause confusion, then likely confusion decreases.

8) Sophistication of buyers. More sophisticated buyers, or purchasers of more sophisticated products, are likely to be more careful and discriminating when

purchasing those products. Consequently, such purchasers may be less likely to be confused by Defendants' use of Plaintiffs' marks. Conversely, if the potential buyers of the products in question are less sophisticated, or if the products in question are commodity items, the likelihood of confusion may increase.

These factors are simply a guide to help you determine whether confusion is likely to result from simultaneous use of the Plaintiffs' and Defendants' marks. No single factor or consideration is dispositive, and Plaintiffs need not prove that all, or even most, of the factors are present in any particular case to be successful. Nor are you limited to consideration of only these factors. You must consider and weigh all of the relevant evidence in determining whether there is a likelihood of confusion.

Plaintiffs ZeniMax and id Software also bring a claim for false designation against Oculus, Mr. Luckey, and Mr. Iribe. Any person who makes commercial use of any word, term, name, or symbol, or combination thereof that is likely to cause confusion as to that person's affiliation, connection, or association with another person, or that misrepresents in advertising the nature, characteristics, quality, or geographic origin of that person's goods or services is liable to any person who is or is likely to be damaged by the false designation of origin. A person may recover for false designation of origin even though the person is not the owner of a trademark for the word, term, name, symbol, or combination used by another person.

## 2. Trademark Infringement and False Designation: Defenses

Defendants Oculus, Mr. Luckey, and Mr. Iribe claim that they are not liable for trademark infringement or false designation because they had a license to use

ZeniMax's trademarks. A license is essentially a promise by the licensor not to sue the licensee for use of the marks.

A license authorizing the use of trademarks can be express or implied. An express license could take the form of a written or oral agreement. An implied license is one which may be inferred from the circumstances surrounding the use of the marks and the behavior of the licensor regarding the use of the marks, including for example, knowledge of the use and lack of any objection to the use. The burden is on the Defendants to prove the existence of a license by a preponderance of the evidence. If the Defendants satisfy this burden then, in order for ZeniMax to prevail, ZeniMax must prove by a preponderance of the evidence that Defendants' copying was not authorized by the license.

Defendants Oculus, Mr. Luckey, and Mr. Iribe also claim that they are not liable for trademark infringement or false designation because ZeniMax has acquiesced in their use of any ZeniMax trademark. The acquiescence defense requires Defendants to establish the following:

1) Assurance by ZeniMax, which may be express or implicit, that Defendants could use the ZeniMax trademarks;

2) Reliance by the Defendants upon that assurance; and

3) Undue prejudice to Defendants.

If you find by a preponderance of the evidence that Defendants Oculus, Mr. Luckey, and/or Mr. Iribe have established the above elements, your verdict must be for Defendants on this claim.

An unlicensed owner is unduly prejudiced when the user makes major business investments or expansions that depend on the use of the marks; these investments and expansions would suffer appreciable loss if the marks were enforced; and this loss would not have been incurred had the trademark owner not given assurance that the Defendants could use the mark.

Defendants also assert that they are not liable for trademark infringement or false designation under a doctrine called "nominative fair use." A defendant makes nominative fair use of a mark when the defendant uses it as other than a trademark, to accurately describe the Plaintiffs' goods or services.

The Defendants have the burden of proving its nominative fair use of the mark by a preponderance of the evidence. Defendants make nominative fair use of trademarks when they:

1) Use the mark in connection with the Plaintiffs' product or services, which was not readily identifiable without use of those marks;

2) Used only so much of the trademarks as was reasonably necessary to identify the product or services in question; and

3) Did not do anything that would in connection with the trademarks to suggest sponsorship or endorsement of the Defendants' product or service by the Plaintiffs.

The fact that any use by Defendants of a ZeniMax trademark may bring Defendants a profit does not mean the use was not a fair use.

Defendants Oculus, Mr. Luckey, and Mr. Iribe contend that they are not liable for trademark infringement because of the doctrine of laches, which we have already

discussed. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. Defendants have the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that a Defendant has unclean hands, then you should not find that Defendant has established the defense of laches.

### 3. Trademark Infringement and False Designation: Damages

If you find for Plaintiffs ZeniMax and id Software on their infringement or false designation claims, you must determine their damages. ZeniMax and id Software have the burden of proving damages by a preponderance of the evidence.

In order for Plaintiffs ZeniMax and id Software to recover damages on their trademark claim, Plaintiffs have the burden of proving by a preponderance of the evidence that the Defendants had either statutory or actual notice that Plaintiffs' trademarks were registered. Defendants have statutory notice if any of the following factors are satisfied:

1) Plaintiffs displayed with the trademark the words "Registered in U.S. Patent and Trademark Office" or,

2) Plaintiffs displayed with the trademark the words "Reg. U.S. Pat & Tm. Off.", or

3) Plaintiffs displayed the trademarks with the letter "R" enclosed within a circle.

Display of these statutory words or symbols are immaterial, or unnecessary, if the Defendants had actual notice of the trademarks being registered.

Actual damages means the amount of money that will reasonably and fairly compensate ZeniMax and id Software for any injury you find was proximately caused by the Defendants' infringement of Plaintiffs' registered trademarks or by Defendants' false designation. Proximate cause means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

You should consider whether any of the following exists, and if so to what extent, in determining ZeniMax and id Software's damages:

1) Any injury to their reputations;

2) Any injury to their goodwill, including any injury to their general business reputations;

3) Any loss of their sales as a result of the Defendants' infringement or false designation;

4) Any loss of their profits;

5) Any expense of preventing customers from being deceived;

6) Any cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement or false designation; and

7) Any other factors that bear on their actual damages.

When considering damages, you must not over-compensate. Any award should not exceed the actual damage to the value of ZeniMax and id Software's marks at the time of the infringement or false designation by the Defendants. Plaintiffs are not entitled to recover the same damages for trademark infringement and false designation — that is, Plaintiffs may not recover twice for the same injury.

In addition to actual damages, ZeniMax is entitled to any profits earned by Defendants Oculus, Mr. Luckey, and/or Mr. Iribe that are attributable to the trademark infringement or false designation. However, you may not include in any award of profits any amount that you included in determining actual damages.

In assessing the Defendants' profits the Plaintiffs are only required to prove the Defendants' sales. The Defendants must prove all costs or deductions that they claim reduced their profits. An award of the Defendants' profits, if any, should be attributable to the unlawful use of the Plaintiffs' marks.

In addition, in determining whether an award of profits is appropriate and the appropriate amount of an award, you may consider the following factors:

1) Whether the Defendants had the intent to confuse or deceive;

2) Whether sales have been diverted;

3) The adequacy of other remedies;

4) Unreasonable delay by ZeniMax in asserting its rights;

5) Public interest in making the misconduct unprofitable;

6) Whether it is a case of palming off (that is, to pass off one's products as products of another).

If you find Defendants have infringed ZeniMax and id Software's trademarks or otherwise engaged in false designation, you must also determine whether Defendants did so intentionally and with knowledge of that infringement or false designation.

## 4. Trademark Infringement and False Designation: Jury Questions

### QUESTION 38:

Did ZeniMax prove, by a preponderance of the evidence, that Defendants Brendan Iribe, Palmer Luckey, and/or Oculus infringed any of ZeniMax's trademarks? Answer "Yes" or "No" for each Defendant:

Oculus: _____Yes_____

Palmer Luckey: _____No_____

Brendan Iribe: _____Yes_____

### QUESTION 39:

If you answered "Yes" to any part of Question 38, answer this question for each Defendant which you answered "Yes" in Question 38. Otherwise, do not answer this question and skip to Question 43.

Do you find that any of the defenses of license, acquiescence, or nominal fair use bars ZeniMax's claim for trademark infringement?

Answer "Yes" or "No" for each Defendant:

Oculus:        _No_

Palmer Luckey:  _n/a_

Brendan Iribe:  _No_

## QUESTION 40:

If you answered "Yes" to any part of Question 38, answer this question for each Defendant which you answered "Yes" in Question 38. Otherwise, do not answer this question and skip to Question 43.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for trademark infringement?

Answer "Yes" or "No" for each Defendant:

Oculus:        _No_

Palmer Luckey:  _n/a_

Brendan Iribe:  _no_

## QUESTION 41:

Answer this question for each Defendant for which you answered "Yes" to Question 38 and "No" to both Question 39 and Question 40. Otherwise, do not answer this question and skip to Question 43.

1.  What amount of actual damages, if any, did ZeniMax and id Software suffer as a result of all trademark infringement by each of the Defendants? Answer in dollars and cents, if any.

Oculus:        $ _0_

Palmer Luckey:  $ _n/a_

Brendan Iribe:    $ _____0_____

2.   What amount of the Defendants' profits that were not taken into account in computing any of ZeniMax and id Software's damages, if any, do you find that should be awarded against each Defendant and to the Plaintiffs for each Defendants' trademark infringement?

Answer in dollars and cents, if any.

Oculus:         $ ___0_____

Palmer Luckey:  $ ___n/a_____

Brendan Iribe:  $ ___0_____

## QUESTION 42:

Answer this question for each Defendant for which you answered "Yes" to Question 38.

Did any Defendant intentionally and knowingly infringe ZeniMax and id Software's rights in their trademarks:

Answer "Yes" or "No" for each Defendant:

Oculus:         ___yes____

Palmer Luckey:  ___n/a____

Brendan Iribe:  ___yes____

## QUESTION 43:

Did ZeniMax prove, by a preponderance of the evidence, that Defendants Brendan Iribe, Palmer Luckey, and/or Oculus are liable for false designation?

Answer "Yes" or "No" for each Defendant:

Oculus:         ___yes____

Palmer Luckey: _Yes_____

Brendan Iribe: _Yes_____

## QUESTION 44:

If you answered "Yes" to any part of Question 43, answer this question for each Defendant which you answered "Yes" in Question 43. Otherwise, do not answer this question and skip to Question 48.

Do you find that any of the defenses of license, acquiescence, or nominal fair use bars ZeniMax's claim for false designation?

Answer "Yes" or "No" for each Defendant:

Oculus: _No_____

Palmer Luckey: _No_____

Brendan Iribe: _No_____

## QUESTION 45:

If you answered "Yes" to any part of Question 43, answer this question for each Defendant which you answered "Yes" in Question 43. Otherwise, do not answer this question and skip to Question 48.

Do you find that the doctrine of laches bars ZeniMax and id Software's claim for false designation?

Answer "Yes" or "No" for each Defendant:

Oculus: _No_____

Palmer Luckey: _No_____

Brendan Iribe: _No_____

**QUESTION 46:**

Answer this question for each Defendant for which you answered "Yes" to Question 43 and "No" to both Question 44 and Question 45. Otherwise, do not answer this question and skip to Question 48.

1.   What amount of actual damages, if any, did ZeniMax and id Software suffer as a result of false designation by each of the Defendants?

Answer in dollar and cents, if any.

Oculus:           $ _50,000,000.00_

Palmer Luckey:    $ _50,000,000.00_

Brendan Iribe:    $ _150,000,000.00_

2.   What amount of the Defendants' profits that were not taken into account in computing any of ZeniMax and id Software's damages, if any, do you find that should be awarded against each Defendant and to the Plaintiffs for each Defendants' false designation?

Answer in dollar and cents, if any.

Oculus:           $ _0_

Palmer Luckey:    $ _0_

Brendan Iribe:    $ _0_

**QUESTION 47:**

Answer this question for each Defendant for which you answered "Yes" to Question 43. Otherwise, do not answer this question and skip to Question 48.

Did any Defendant intentionally and knowingly engaged in the false

designation?

Answer "Yes" or "No" for each Defendant:

Oculus:            _ues_____

Palmer Luckey:   _ues_____

Brendan Iribe:   _ues_____

## H. Exemplary Damages

### 1. Exemplary Damages: Standards

ZeniMax and id Software have also made a claim for exemplary damages in connection with their claims for misappropriation of trade secrets, tortious interference with contract, and unfair competition.

The purpose of exemplary damages is to punish and deter, not to compensate. Exemplary damages serve to punish a defendant and by doing so, to deter others from engaging in similar conduct in the future. You are not required to award exemplary damages. If you decide to award exemplary damages, you must use sound reason in setting the amount. Your award of exemplary damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that the Plaintiffs have been made whole by compensatory damages, so exemplary damages should be awarded only if a Defendant's misconduct is so reprehensible as to warrant imposition of further sanctions to achieve punishment or deterrence.

You may impose exemplary damages against one or more of Defendants and not others. You may also award different amounts against different Defendants. Exemplary damages may be awarded only if you are unanimous in regard to finding liability for

and the amount of exemplary damages. You are instructed that, in order for you to find exemplary damages, your answer to the question regarding the amount of damages must be unanimous.

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

If you find in favor of ZeniMax and id Software one of these claims, and you find by clear and convincing evidence that the harm to ZeniMax and id Software associated with one of these claims resulted from malice, fraud, or gross negligence, you may assess against Defendants and award to ZeniMax and id Software exemplary damages for Defendants' conduct in connection with those claims.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established. This involves a greater degree of persuasion than is necessary to meet the "preponderance of the evidence" standard I provided to you earlier.

"Malice" means a specific intent by Defendants to cause substantial injury or harm to ZeniMax and id Software.

"Fraud" occurs when (a) a party makes a material misrepresentation, and (b) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and (c) the misrepresentation is made with the intention that it should be acted on by the other party, and (d) the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact.

Fraud also occurs when (a) a party fails to disclose a material fact within the knowledge of that party, and (b) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and (c) the party intends to induce the other party to take some action by failing to disclose the fact, and (d) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Gross negligence" means an act or omission by Defendants, which (a) when viewed objectively from the standpoint of Defendants at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (b) of which Defendants have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others.

Factors you shall consider in awarding exemplary damages, if any, are:

(a)     The nature of the wrong.

(b)     The character of the conduct involved.

(c)     The degree of culpability of Defendant.

(d)     The situation and sensibilities of the parties concerned.

(e)     The extent to which such conduct offends a public sense of justice and propriety.

(f)     The net worth of Defendant.

You may also find that a corporation, here Oculus and Facebook, are liable for exemplary damages because of the acts of their agents, if:

(a) Oculus or Facebook authorized the doing and the manner of the act; or

(b) The agent was unfit and Oculus or Facebook was reckless in employing him; or

(c) The agent was employed in a managerial capacity and was acting in the scope of his employment; or

(d) Oculus or Facebook or another manager of Oculus or Facebook ratified or approved the agent's act.

### 2. Exemplary Damages: Jury Questions

**QUESTION 48:**

Answer this question for each Defendant for which you answered "Yes" in Question 1 and for which you also answered "No" in Question 2, Question 3, and Question 4. Otherwise, do not answer this question and skip to Question 50.

Do you find by clear and convincing evidence that the harm to ZeniMax and id Software resulting from that misappropriation resulted from malice, fraud, or gross negligence?

Answer "Yes" or "No" for each Defendant:

Oculus: _____n/a_____

Facebook: _____n/a_____

Palmer Luckey: _____n/a_____

Brendan Iribe: _____n/a_____

John Carmack: _____n/a_____

**QUESTION 49:**

If you answered Yes to Question 48 for any Defendant, then answer this question for those Defendants for which you answered "Yes" in Question 48. Otherwise, do not answer this question and skip to Question 50.

What sum of money, if any paid now in cash, should be assessed against any Defendant and awarded to ZeniMax and id Software as exemplary damages, if any, for the conduct found in response to Question 48?

Answer in dollars and cents, if any.

Oculus:             $ ___n/a_____

Facebook:           $ ___n/a_____

Palmer Luckey:      $ ___n/a_____

Brendan Iribe:      $ ___n/a_____

John Carmack:       $ ___n/a_____

**QUESTION 50:**

Answer this question if you answered "Yes" to Question 28 and "No" to Question 29. Otherwise do not answer this question and skip to Question 52.

Do you find by clear and convincing evidence that the harm to ZeniMax and id Software resulting from that tortious interference resulted from malice, fraud, or gross negligence?

Answer "Yes" or "No." ___n/a___

**QUESTION 51:**

Answer this question if you answered "Yes" to Question 50. Otherwise, do not answer this question and skip to Question 52.

What sum of money, if any paid now in cash, should be assessed against Facebook and awarded to ZeniMax and id Software as exemplary damages, if any, for the conduct found in response to Question 50?

Answer in dollars and cents, if any.

Answer: $ ___n/a___

**QUESTION 52:**

Answer this question for each Defendant that you answered "Yes" to Question 31 and also answered "No" to Question 32 for that Defendant. Otherwise, do not answer this question and skip to Question 54.

Do you find by clear and convincing evidence that the harm to ZeniMax and id Software resulting from that unfair competition resulted from malice, fraud, or gross negligence?

Answer "Yes" or "No" for each Defendant:

Facebook: ___n/a___
Oculus: ___n/a___

**QUESTION 53:**

Answer this question for each Defendant that you answered "Yes" in Question 52. Otherwise, do not answer this question and skip to Question 54.

What sum of money, if any paid now in cash, should be assessed against Facebook and/or Oculus and awarded to ZeniMax and id Software as exemplary damages, if any, for the conduct found in response to Question 52?

Answer in dollars and cents, if any.

Facebook:  $ _n/a_____

Oculus:  $ _n/a_____

## I. John Carmack's Breach of Contract Claim

### 1. Breach of Contract: Liability

Mr. Carmack also alleges that Zenimax is liable to him for breach of his 2009 employment contract with Zenimax. Specifically, Mr. Carmack alleges that Zenimax breached section 4 and section 16.4(b) of the contract.

To succeed on his breach of contract claim, Mr. Carmack must prove the following things by a preponderance of the evidence:

1. The existence of a valid, enforceable contract between Mr. Carmack and ZeniMax;

2. Mr. Carmack performed his obligations under that contract;

3. ZeniMax breached that contract; and

4. Mr. Carmack sustained damages as a result of that breach.

### 2. Breach of Contract: Defenses

ZeniMax asserts as a defense that they were excused from technical compliance with the employment agreement because Mr. Carmack waived his rights under the

employment agreement.

Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. If you find by a preponderance of the evidence that Mr. Carmack intentionally surrendered his rights under the employment agreement or intentionally conducted himself in ways that were inconsistent with claiming the rights that Mr. Carmack asserts he held under the employment agreement, then your verdict should be for ZeniMax on this claim.

ZeniMax asserts that the defense of laches bars Mr. Carmack's breach of contract claim. Laches is an equitable defense with three elements: (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted.

Two kinds of prejudice may support a defense of laches: (1) the delay has resulted in the loss of evidence; or (2) ZeniMax has changed its position in a way that would not have occurred if Mr. Carmack had not delayed. ZeniMax has the burden of proving the laches defense by a preponderance of the evidence.

A party asserting the defense of laches must have "clean hands": that is, the party must have acted fairly and without fraud or deceit as to the controversy in issue. If you find that ZeniMax has unclean hands, then you should not find that ZeniMax has established the defense of laches.

ZeniMax also asserts that Mr. Carmack failed to comply with a material term of the employment agreement such that ZeniMax's failure to perform under that agreement, if any, was excused. Failure to comply by ZeniMax is excused by Mr.

Carmack's previous failure to comply with a material obligation of the employment agreement. To determine the materiality of a breach, you may consider the following:

(1) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(2) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(3) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(4) The greater or lesser hardship on the party failing to perform in terminating the contract;

(5) The willful, negligent, or innocent behavior of the party failing to perform; and

(6) The greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract.

### 3. Breach of Contract: Damages

Should you find that Mr. Carmack has proven his breach of contract claim, you must compensate him with a sum of money, if paid now in cash, that would fairly and reasonably compensate Mr. Carmack for his damages that were proximately caused by ZeniMax's breach of the employment it had with Mr. Carmack. If you award contract damages, those damages should be measured at the time of the breach and not at the time of the trial.

Proximate cause means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be

a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

You should not interpret the fact that I am giving instructions about damages as an indication in any way that I believe Mr. Carmack should, or should not, prevail on this claim. It is your task to decide whether ZeniMax is liable. I am instructing you on damages only so that you will have guidance in the event you decide that ZeniMax is liable and that Mr. Carmack is entitled to recover money.

If you decide so, Mr. Carmack is entitled to recover his direct damages, which are those damages which naturally and necessarily flow from the breach, if any, and consequential damages, which are those damages that are the natural, probable, and foreseeable consequence of the breach, if any.

### 4. Breach of Contract: Jury Questions

**QUESTION 54:**

Did ZeniMax fail to comply with its employment agreement with John Carmack?

Answer "Yes" or "No": _no_

**QUESTION 55:**

Answer this question if you answered "Yes" to Question 54. Otherwise, do not answer anymore questions, including this one.

Do you find that the doctrine of waiver bars John Carmack's breach of contract

claim against ZeniMax?

Answer "Yes" or "No": _n/a_

**QUESTION 56:**

Do you find that the doctrine of laches bars John Carmack's breach of contract

claim against ZeniMax?

Answer "Yes" or "No": _n/a_

**QUESTION 57:**

Was ZeniMax's failure to comply excused?

Answer "Yes" or "No: _n/a_

**QUESTION 58:**

Answer this question if you answered "Yes" to Question 54 and "No" to Questions 55,

56, and 57. Otherwise, do not answer anymore questions, including this one.

What sum of money, if any, if paid now in cash, would fairly and reasonably

compensate John Carmack for his damages, if any, that resulted from ZeniMax's failure

to comply with the employment agreement?

Do not add any amount for interest on damages, if any.

Answer in dollars and cents.

$ _n/a_

## POST-ARGUMENT INSTRUCTIONS

You are the sole and exclusive judges of the facts.  You should determine these facts without any bias, prejudice, sympathy, fear, or favor, and this determination should be made from a fair consideration of all the evidence that you have seen and heard in this trial.  Do not speculate on matters that are not in evidence.  Keep constantly in mind that it would be a violation of your own sworn duty to base a verdict on anything but the evidence in the case.  Your answers and verdict must be unanimous; that is, all of you must agree to each of your answers.  You will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

The fact that I have given you instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted by you in any way as an indication that I believe a particular party should, or should not, prevail in this case.  Also, you should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case.

Remember that any notes you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.   Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong.   However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.   Your only interest is to seek the truth from the evidence in the case.   You will now retire to the jury room.   In a few minutes I will send you this charge and the exhibits the Court has admitted into evidence.   Upon receiving the exhibits and charge, you should select a foreperson and commence deliberations.   Do not deliberate unless all of you are present in the jury room.   In other words, if one or more of you go to lunch together or are together outside the jury room, do not discuss the case.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a note signed by the foreperson.   I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.   I caution you, however, with respect to any message or question you might send that you should never state or specify your numerical division at the time.

During your deliberations you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long.

After you have reached your verdict, you will return this charge together with your written answers to the foregoing questions.   Do not reveal your answers to anyone besides other members of the jury until such time as you are discharged, unless otherwise directed by me.   After you have reached a verdict, you are not required to talk with anyone about the case.

Your foreperson will sign in the space provided on the following page after you have reached your verdict.

DATED: January 26, 2017.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE

# VERDICT OF THE JURY

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same into court as our verdict.

DATED: ~~January~~ February ____1____, 2017.

FOREPERSON