IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZENIMAX MEDIA INC. and | § | |
| ID SOFTWARE, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1849-K |
| | § | |
| OCULUS VR LLC, PALMER LUCKEY, | § | |
| FACEBOOK, INC., BRENDAN IRIBE, | § | |
| and JOHN CARMACK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Plaintiffs' Renewed Motion for Judgment as a Matter of Law on Their Claim for Breach of Contract Against Defendant Palmer Luckey and Request for New Trial Solely on Damages Caused by that Breach (Doc. No. 994); (2) Defendants' Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b) (Doc. No. 997); and (3) Defendants' Amended Motion in the Alternative for Partial New Trial Under Federal Rule of Civil Procedure 59(a) (Doc. No. 1004).

The Court has carefully considered the motions, the responses, the replies, the supporting appendices, the applicable law, and any relevant portions of the record. The Court **DENIES** Plaintiffs' Renewed Motion for Judgment as a Matter of Law. The Court also **DENIES** Defendants' Amended Motion for Partial New Trial. The Court **GRANTS in part** Defendants' Motion for Judgment as a Matter of Law only

- 1 -

as to Plaintiffs' false designation claims because the evidence establishing any damages and also the proximate cause of those damages as awarded by the jury is legally insufficient. The Court **DENIES** all other relief requested in Defendants' Motion for Judgment as a Matter of Law.

I.  **Procedural Background**

After trial of this case, the jury returned a verdict, finding in relevant part that Defendants Oculus VR, LLC ("Oculus"), Mr. Palmer Luckey ("Luckey"), and Mr. Brendan Iribe ("Iribe") were liable for false designation. The jury also awarded Plaintiffs actual damages for false designation in the amounts of $50,000,000.00 as to Oculus, $50,000,000.00 as to Mr. Luckey, and $150,000,000.00 as to Mr. Iribe.

In their Motion for Judgment as a Matter of Law ("Defendants' Rule 50(b) Motion"), Defendants argue they are entitled to judgment as matter of law on Plaintiffs' claim of false designation because the record lacks legally sufficient evidence as to the proximate cause of injury and as to the amount of damages suffered.

II.  **Legal Standards for Judgment as a Matter of Law**

Courts apply the same standard to a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) as applies to motions for directed verdict under Federal Rule of Civil Procedure 50(a). *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008). The court may grant judgment as a matter of law "when a party has been fully heard on an issue during a jury trial and the court finds that a

reasonable jury would not have legally sufficient evidentiary basis to find for a party on that issue." *Hurst v. Lee Cty., Miss.*, 764 F.3d 480, 483 (5th Cir. 2014); *see* FED. R. CIV. P. 50(a). "'In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 385 (5th Cir. 2017)(quoting *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir. 1997)). Judgment as a matter of law should be granted only when "'the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict.'" *Janvey*, 856 F.3d at 384-85 (quoting *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012)). The court must be "'especially deferential'" to the jury's verdict. *Janvey*, 856 F.3d at 385.

III. Legal Analysis

    A. **Proof of Damages and Proximate Cause of Those Damages for False Designation**

Defendants argue several reasons the Court should grant judgment as a matter of law in favor of Defendants on Plaintiffs' false designation claim. One argument put forth by Defendants is that Plaintiffs did not present any evidence proving they suffered any damages related to Defendants' act of false designation. In their response, Plaintiffs contend there is legally sufficient evidence supporting the jury's damages award for Plaintiffs' reputational injuries and Defendants' unjust

enrichment.

A false designation claim derives from a provision of 15 U.S.C. § 1125. The statute provides, in relevant part, protection from the unauthorized use of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). Any person who commits false designation shall be liable to another who is damaged by the false designation. *Id.* at § 1125(a)(1). The damages suffered must be proximately caused by the act of the false designation. *Lexmark Int'l. Inc. v. Static Control Components, Inc.*, — U.S. —, 134 S. Ct. 1377, 1390 (2014). "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's [actions]. . . ." *Id.* at 1391.

The jury awarded a total of $250,000,000.00 against three Defendants for false designation. Defendants argue Plaintiffs have provided no evidence at all of false designation damages because their damages expert testified only as to damages resulting from stolen trade secrets, not damages suffered from Defendants' use of Plaintiffs' marks in the context of false designation. In their response, Plaintiffs contend that Defendants were unjustly enriched by their act of false designation

when Defendant Facebook, Inc. ("Facebook") purchased Oculus for approximately $2 billion. The jury's award of $250,000,000.00 in comparison to the Facebook purchase price is, according to Plaintiffs, "causally connected" to the Defendants' false designation, so the jury "was entirely reasonable and within its 'broad latitude' to infer proximate cause" in awarding that sum. Plaintiffs also respond that the jury's award was within their "'broad latitude'" as for Plaintiffs' reputational injury.

    1.    <u>No Evidence of Damages</u>

Defendants argue Plaintiffs produced no evidence at all of false designation damages through their expert witness on damages. The Lanham Act prevents a person from improperly profiting from another's goodwill or reputation and from causing damage to another's goodwill or reputation. *Id.* at 1389-90. The harm that proximately flows from this type of wrongdoing would include loss of a plaintiff's profits, a defendant's gain of profits, and harm to the plaintiff's reputation. *Id.*

Mr. Dan Jackson, Plaintiffs' damages expert, testified only as to damages resulting from stolen trade secrets; there was no testimony regarding any loss incurred by Plaintiffs, including reputational injury, or any gains earned by Defendants from their act of false designation. In their response, Plaintiffs do not address the deficiencies of Mr. Jackson's testimony regarding damages resulting from any false designation. Instead, Plaintiffs contend their damages stem from Defendants' unjust enrichment and Plaintiffs' reputational injury resulting from the false designation, and the evidence of these support the jury's monetary award.

For an act of false designation, the plaintiff may, subject to the principles of equity, recover damages based on loss suffered by the plaintiff and profits realized by the defendant. 15 U.S.C. § 1117(a). The Court agrees there is no evidence regarding any actual damages Plaintiffs suffered from Defendants' unauthorized use of Plaintiffs' marks that would support the jury's monetary award. Mr. Jackson, Plaintiffs' damages expert, did not testify as to any damages Plaintiffs suffered from Defendants' unauthorized use of Plaintiffs' marks, such as injury to Plaintiffs' reputation, profits earned by Defendants, or some other form of Plaintiffs' loss or Defendants' gain. Mr. Jackson also did not testify Plaintiffs suffered a specific amount of monetary damages resulting from Defendants' false designation. Plaintiffs simply did not present any evidence establishing they suffered actual damages as a result of Defendants' unauthorized use of their mark in the promotional items.

Although Plaintiffs do not address the insufficient evidence, or complete lack thereof, presented through Mr. Jackson, they do argue there is other "evidence" of damage to Plaintiffs' reputation and the unjust enrichment of Defendants, both of which support the jury's monetary award. Regarding their reputational injury, Plaintiffs cite the Court to the testimony of Mr. Todd Hollenshead, former President of Plaintiff id Software. Plaintiffs characterize one of his statements as evidence that establishes "how Oculus put ZeniMax's reputation at risk by demonstrating ZeniMax's software in secret, without notifying ZeniMax." First, this testimony was Mr. Hollenshead's general statement that, as President of id Software, he "would

have been and always was very concerned about the use of preleased software in any public demonstration that id Software was not controlling." Furthermore, this statement was made in response to being asked whether he was told "to watch out" for the software being used "based on an NDA?" This is not evidence of damage to Plaintiffs' reputation based on the false designation. Plaintiffs also cite the Court to three other items that supposedly evidence their reputational injury: (1) false representations Oculus made in the press regarding Mr. Luckey's "collaborat[ion]" with Mr. Carmack, when "there was no actual affiliation between ZeniMax and Oculus"; (2) Oculus leading Mr. Mark Zuckerberg to believe that Oculus, not ZeniMax, "was miles ahead of everyone else" as to virtual reality technology; and (3) Mr. Zuckerberg's testimony that ZeniMax "came out of the woodwork" when the Facebook purchase was announced. These three items are even further from being evidence of reputational injury than Mr. Hollenshead's testimony, and Plaintiffs simply make a conclusory leap that they are evidence of "reputational injury that the jury rationally and fairly traced back to Oculus's acts of false designation." There is simply no evidence of reputational injury to prove Plaintiffs' damages resulting from Defendants' false designation.

Plaintiffs also argue there is evidence of Defendants' unjust enrichment which supports the jury's monetary award. Citing to two pieces of "evidence," Plaintiffs direct the Court to excerpts from Mr. Jackson's testimony as well as from Defendant John Carmack's ("Carmack") testimony. In the specific cite to Mr. Jackson's

have been and always was very concerned about the use of preleased software in any public demonstration that id Software was not controlling." Furthermore, this statement was made in response to being asked whether he was told "to watch out" for the software being used "based on an NDA?" This is not evidence of damage to Plaintiffs' reputation based on the false designation. Plaintiffs also cite the Court to three other items that supposedly evidence their reputational injury: (1) false representations Oculus made in the press regarding Mr. Luckey's "collaborat[ion]" with Mr. Carmack, when "there was no actual affiliation between ZeniMax and Oculus"; (2) Oculus leading Mr. Mark Zuckerberg to believe that Oculus, not ZeniMax, "was miles ahead of everyone else" as to virtual reality technology; and (3) Mr. Zuckerberg's testimony that ZeniMax "came out of the woodwork" when the Facebook purchase was announced. These three items are even further from being evidence of reputational injury than Mr. Hollenshead's testimony, and Plaintiffs simply make a conclusory leap that they are evidence of "reputational injury that the jury rationally and fairly traced back to Oculus's acts of false designation." There is simply no evidence of reputational injury to prove Plaintiffs' damages resulting from Defendants' false designation.

Plaintiffs also argue there is evidence of Defendants' unjust enrichment which supports the jury's monetary award. Citing to two pieces of "evidence," Plaintiffs direct the Court to excerpts from Mr. Jackson's testimony as well as from Defendant John Carmack's ("Carmack") testimony. In the specific cite to Mr. Jackson's

testimony, he addresses the "reasonable royalty" he calculated Plaintiffs and Defendants would likely have agreed upon had they successfully negotiated a deal, then he answers questions about the "unjust enrichment" realized by Oculus, Mr. Luckey, and Mr. Iribe after the Facebook purchase. But none of this testimony cited by Plaintiffs references false designation, let alone how the damages calculation Mr. Jackson computed for trade secret violations also relate to Defendants' act of false designation and any injury to Plaintiffs. The excerpt of Mr. Carmack's testimony Plaintiffs cite is even less convincing. In it, Mr. Carmack merely confirms he wrote to Mr. Robert Altman in an email that "Oculus wouldn't exist as a funded company if it weren't for [Plaintiffs'] involvement". There is no testimony addressing how Defendants "were massively and unjustly enriched" in relation to his statement. And Plaintiffs fail to expound on this. Plaintiffs' argument that this is somehow evidence of unjust enrichment which establishes Plaintiffs' damages also fails.

Plaintiffs' responsive brief appears to advance an argument that the purchase price Facebook paid is itself somehow evidence of Plaintiffs' damages. In an abundance of caution, the Court will address the argument. Standing alone, the purchase price Facebook paid for Oculus is legally insufficient evidence to prove damages Plaintiffs allegedly suffered as a result of Defendants' act of false designation. Facebook did not purchase Oculus until 2014, almost two years after Defendants used their promotional items containing Plaintiffs' marks without authorization. There is simply no evidence connecting the unauthorized use of

Plaintiffs' mark(s) in the Kickstarter video and investor materials to the more than $2 billion paid by Facebook for Oculus. The Court concludes the purchase price, or even a portion of it, is not proof Plaintiffs suffered damages from Defendants' act of false designation.

The Court finds there is no legally sufficient evidence of any actual damages Plaintiffs suffered to support the jury's damages award for false designation. Defendants' are entitled to judgment as a matter of law on Plaintiffs' false designation claim for this reason.

### 2. Proximate Causation

Even if there was evidence of actual damages they suffered, Plaintiffs failed to establish a causal connection between any alleged damages and Defendants' unauthorized use of Plaintiffs' marks.

Plaintiffs argue the jury is vested with "broad latitude to infer proximate cause" which they did here in awarding monetary damages, having clearly found a causal connection between Defendants' act of false designation and the damages of Plaintiffs' reputational injury and Defendants' unjust enrichment. As for damages based on Defendants' unjust enrichment, Plaintiffs point to the approximately $2 billion dollars Facebook paid for Oculus, as well as the millions of dollars Mr. Luckey and Mr. Iribe each personally received from the proceeds of this sale. According to Plaintiffs, this purchase indisputably establishes "that the Defendants were massively enriched by upwards of $3 billion as a direct result of their proclaimed association

with [Plaintiffs]" based on Defendants' unauthorized use of the marks. Plaintiffs contend these facts alone are sufficient for a jury to find that at least some of the money received by Oculus, Mr. Luckey, and Mr. Iribe from the Facebook purchase was related to their act of false designation, thereby supporting the jury's $250 million damages award.

Judicial remedies "'cannot encompass every conceivable harm that can be traced to an alleged wrongdoing.'" *Lexmark Int'l.*, 134 S.Ct. at 1390 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 536 (1983)). For any claim involving loss, proximate cause is a required element, including a claim under Section 1225(a). *Lexmark Int'l.*, 134 S.Ct. at 1390. The proximate cause analysis requires the alleged harm to be sufficiently close in connection to the actions violating the statute. *Id*. In other words, the requirement of proximate cause precludes claims for any alleged harm considered "'too remote' from the defendant's unlawful conduct." *Id.* The nature of the claim controls the analysis of proximate cause of harm flowing from the wrongdoing. *Id*.

The Lanham Act identifies its purposes within the statute itself, specifying the intention to protect against, among other things, "fraud and deception" through "the use of reproductions, copies, counterfeits, or colorable imitations of registered marks". 15 U.S.C. §1127; *see id.* at 1389-90. The statute prevents a person from improperly profiting from another's goodwill or reputation and from causing damage to another's goodwill or reputation. *Lexmark Int'l.*, 134 S.Ct. at 1389-90. The harm that

proximately flows from this type of wrongdoing would include loss of a plaintiff's profits, a defendant's gain of profits, and harm to the plaintiff's reputation, all of which flows from the act of false designation. *Id.*

The evidence that was presented at trial establishes Defendants used Plaintiffs' marks for promotional purposes to raise initial investment capital. As argued by Plaintiffs, Defendants used Plaintiffs' marks without permission in investment presentation materials, in a "Kickstarter" video prepared and distributed by Defendants, and in materials designed to promote general interest in the Oculus Rift at various trade shows. The jury found Oculus, Mr. Luckey, and Mr. Iribe liable for false designation by using Plaintiffs' marks without permission in at least one of these situations. Despite evidence of the unauthorized use of the marks, no evidence was presented that the unauthorized use of Plaintiffs' marks harmed or reduced Plaintiffs' reputation, resulted in lost profits for Plaintiffs or profits earned by Defendants, and certainly no evidence that any harm flowed from the unauthorized use of the marks.

Plaintiffs appear to argue that the approximately $2 billion purchase price of Oculus in and of itself is enough evidence for the jury to infer that the purchase price, or part of it, was the proximate result of the wrongful use of the Plaintiffs' marks. This argument lacks merit. First, no evidence was presented showing that the acts of false designation caused Facebook to believe Plaintiffs were somehow associated with the Defendants and this led Facebook to purchase Oculus. Next, almost two years passed between Defendants' acts of false designation and the actual purchase of

Oculus. The time and intervening facts between these events alone makes the approximately $2 billion purchase price too remote to have been the proximate result of Defendants' acts of false designation. At trial, the evidence showed that in those two years, millions of dollars were invested into Oculus by multiple investors. The facts also showed that substantial time and effort invested during that two-year period contributed to the development of the Oculus Rift from a prototype device into a functioning device with market potential. The product that came out of this development effort was the product that attracted Facebook to acquire Oculus. Because of the intervening actions that occurred between the false designation and the purchase of Oculus, there is no sufficiently close connection between the acts of false designation and the approximately $2 billion paid to purchase Oculus. *See id.* at 1390 (the alleged harm must have "a sufficiently close connection to the conduct the statute prohibits.").

Plaintiffs provided legally insufficient evidence to support a finding that Defendants' false designation of Plaintiffs' marks proximately caused Plaintiffs $250 million dollars in harm and that the purchase price Facebook paid for Oculus, or even a portion of it, flowed from the Defendants' false designation. There was simply no evidence presented that the purchase price Facebook paid for Oculus proves any of the harms against which Section 1225 protects. *See id.* Moreover, there was no evidence that this purchase price flows from Defendants' acts of false designation. *See id.*

Besides the purchase price, the only other evidence arguably proving proximate cause of harm flowing from the false designation is the money Defendants raised from investors in direct connection with their use of the promotional materials containing Plaintiffs' marks. Although there was testimony that Defendants prepared and distributed these promotional materials, there is no evidence establishing how much money was actually generated from these specific efforts using Plaintiffs' marks without permission.

The evidence did establish that Defendants raised about $2.4 million dollars from the Kickstarter video. But there is no evidence proving what portion of this $2.4 million is attributable to the unauthorized use of Plaintiffs' marks. No evidence, testimony or other, was presented regarding the values of these marks to an investor or that someone invested because of the use of Plaintiffs' marks. Furthermore, while the Kickstarter video does display Plaintiffs' marks and contains an endorsement by Mr. Carmack, who was employed by Plaintiffs at that time, this is merely a minor portion of the entire video. In contrast, the video dedicates a substantial amount of time to the discussion of the invention and technological improvements of the Oculus Rift without making any reference to Plaintiffs or displaying of any of Plaintiffs' marks. The video also contains references to and endorsements from other companies and people in the industry that are unconnected to Plaintiffs, such as USC's MxR Lab, Epic Games, Unity, and Valve. The use of Plaintiffs' marks, although unauthorized, is diluted by these endorsements of others as well as the

support of Plaintiffs' competitors. The Court finds the evidence is legally insufficient to establish a sufficiently close connection between the total amount raised from this Kickstarter video, $2.4 million, to the acts of false designation. *See id.*

The Court acknowledges that the invention and technology of the Oculus Rift was a major issue in dispute in this matter, specifically applying to Plaintiffs' trade secret and copyright claims. These issues though play no role in a proximate cause analysis as to the false designation claims because the Lanham Act is intended to protect from harm related to the improper use of a mark and not intended to protect inventor's rights. *See* 15 U.S.C. §1127; *Lexmark Int'l.*, 134 S.Ct. at 1389-90. The evidence regarding Plaintiffs' trademark and copyright claims add nothing to further a finding of proximate cause of a harm related to the money raised by this Kickstarter video.

Absent further proof of proximate cause, there is no evidence as a matter of law to support a finding that the $2.4 million dollars raised by this Kickstarter video would represent damages proximately caused by Defendants' unauthorized use of Plaintiffs' marks in the Kickstarter video. There is simply no proof of a substantial connection between the use of the marks and the money raised from the Kickstarter campaign.

Even assuming there was legally sufficient evidence of any actual damages Plaintiffs suffered to support the jury's damages award, the Court concludes the evidence is legally insufficient to establish any damages were proximately caused by

and flowed from Defendants' acts of false designation.

IV.     Conclusion

Plaintiffs' claims for false designation against Defendants Oculus, Mr. Palmer Luckey, and Mr. Brenden Iribe fail as a matter of law because there is insufficient evidence to prove damages.  Even if there had been sufficient evidence regarding Plaintiffs' damages, Plaintiffs' claim would still fail because the evidence is insufficient to prove any alleged damages were proximately caused by the Defendants' act of false designation.

For these reasons, the Court **GRANTS** Defendants' 50(b) Motion as to the request for judgment as a matter of law on Plaintiffs' claims of false designation in favor of Defendants.  All other relief not expressly granted herein is **DENIED**.

**SO ORDERED.**

Signed June 27th, 2018.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE